UNITED STATES OF AMERICA,

     Plaintiff,

v.

GREG E. LINDBERG,

     Defendant.

**ORDER**

**THIS MATTER** is before the Court on the Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies (Doc. No. 66) (the "Motion"), filed by Joseph W. Grier, III, in his capacity as the Special Master in this action (the "Special Master"), with the consent of the United States and the Defendant, Greg E. Lindberg ("Defendant"). The Motion is **GRANTED**.

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

1. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

2. Clanwilliam is among the "Primary Restitution Assets," as defined in the Special Master Order.

3. Prior to entry of the Special Master Order, the Wake County Superior Court entered the Wake County Clanwilliam Order, which partially modified a preexisting injunction in order to permit the sale of Clanwilliam under certain conditions. The Wake County Clanwilliam Order details how any sale proceeds net of all closing costs and legitimate contractual obligations of

Clanwilliam must be distributed, specifying a distribution waterfall that, in effect, would preclude any of the proceeds flowing to and through the Special Master.

4. Various subsequent disputes arose concerning the distribution of the Clanwilliam Proceeds. The potential Purchaser of Clanwilliam insists on certain conditions being satisfied before consummating the transaction, including the resolution of the referenced disputes. The purchase and sale agreement also explicitly provides that the Proceeds are to be delivered only to a deposit account approved by the Wake County Superior Court.

5. Given the impediments to the Clanwilliam closing and fearing the loss of an opportunity to provide meaningful value to Defendant's victims in the near future, the Special Master, the United States, Defendant, the North Carolina Insurance Companies, the Bermuda Insurance Companies, ULICO, NHC, and Vista worked together to try to find a solution that would allow the Clanwilliam transaction to close.

6. The result of those negotiations is the following proposal by and among the above-referenced parties (the "Clanwilliam Proposal"):

    a. The North Carolina Insurance Companies and other parties to the MOU Action shall seek entry of an order by the Wake County Superior Court amending the relief granted pursuant to the Wake County Clanwilliam Order to permit distribution of the Proceeds to the Special Master at a deposit account designated by the Special Master to the Purchaser in writing.

    b. The Bermuda Insurance Companies shall withdraw the Bermuda Suit as against the Clanwilliam group of companies, subject to the approval of the Bermuda Supreme Court and the United States Bankruptcy Court overseeing the Bermuda Insurance Companies' chapter 15 proceedings.

    c. Defendant shall withdraw the claims in the Wilson Suits related to the Clanwilliam sale transaction.

    d. The Proceeds shall be disbursed as soon as reasonably practicable and only as follows:

        i. $14,112,426 to the Special Master as a reserve for satisfying administrative expenses incurred in connection with this case, including those of

Defendant's criminal defense counsel, and approved pursuant to the procedure set forth in the Special Master Order;

ii.   $108,195,266 to the Bermuda Insurance Companies, to be allocated as follows (subject to approval of the Bermuda Supreme Court): $80,993,997 for PBLA (and, by extension, for ULICO), $18,868,418 for Northstar, $3,714,041 for Omnia, and $4,618,810 for PBIHL;

iii.   $23,520,710 to Vista; and

iv.   $172,171,598 allocated to the North Carolina Insurance Companies to be disbursed in accordance with subpart (f) below.

e.   To the extent the Proceeds are more or less than $318,000,000, the Special Master, the Bermuda Insurance Companies, Vista, and the North Carolina Insurance Companies shall share in the gain or loss *pro rata* based on the foregoing distribution amounts (*i.e.*, 4.438% to the administrative expense reserve, 34.024% to the Bermuda Insurance Companies, 7.396% to Vista, and 54.142% to the North Carolina Insurance Companies).

f.   The Special Master shall, as soon as reasonably practicable, disburse the North Carolina Insurance Companies' $172,171,598 share of the Proceeds, as adjusted pursuant to subpart (e) above, to first directly pay the North Carolina Insurance Companies' policyholders with uncovered losses such uncovered loss amounts as restitution pursuant to 18 U.S.C. § 3664(j)(1), with the remaining balance to be distributed to the North Carolina Insurance Companies for distribution pursuant to the North Carolina insurance liquidation priority statute(s), including to, or for the benefit of, state guaranty associations as Class 2 claimants.

g.   The Bermuda Insurance Companies shall cause fifty percent (50%) of the Paradigm Park Holdings, LLC funds currently held at Metropolitan Commercial Bank in the amount of $1,979,879.79 (as of June 10, 2025) (the "Paradigm Funds") to be disbursed to the Katten Muchin Rosenman LLP ("Katten") trust account, which funds may only be disbursed to satisfy the fees and expenses of Katten and Wyatt & Blake as approved by the Court, and for no other purpose whatsoever absent the prior approval of the Court.

h.   If NHC determines, in its discretion and in the ordinary course of managing its affairs, that any of the following SACs has no further material value to NHC and NHC does not otherwise intend to sell such SAC, then the Special Master shall have the option of assuming ownership and control of such SAC upon terms and conditions mutually acceptable to the Special Master and NHC:  SixSails, LLC; Certitrek Group, LLC; ELP Holdings, LLC; Global TIC CE, LLC; Fiasco Fine Wine, LLC; Century Vision Global, LLC; Marval Investments Limited; and Intralan Investments Limited.

i.   To the extent the reasonable and necessary Irish Tax Liabilities and Triton Closing Costs are less than $20,000,000, NHC and/or Triton, as appropriate, shall pay such

3

excess amount to the Special Master for subsequent distribution consistent with the percentages outlined in subpart (e) above. To the extent the reasonable and necessary Irish Tax Liabilities and Triton Closing Costs are more than $20,000,000, NHC and/or Triton, as appropriate, shall be entitled to receive or retain out of the net sales proceeds received from any subsequent sale of a SAC an amount equal to such shortfall.

j. Notwithstanding any of the foregoing to the contrary, in recognition that certain of the potential Irish Tax Liabilities would result from a formalistic perspective of various transactions and structures implemented by Defendant that ignores the remedial reality of the transaction, the Bermuda Insurance Companies and/or ULICO, with the consent of Clanwilliam and the Special Master, as necessary, may take any actions consistent with applicable law, including without limitation relinquishing or abandoning interests in SACs, transferring interests in SACs to the special master, and/or receiving the distribution referenced in subpart (d) above directly from Clanwilliam, if deemed appropriate to maximize victim recoveries; provided that the Bermuda Insurance Companies and/or ULICO shall not take any such actions without the prior written approval of the Special Master, Vista, and the North Carolina Insurance Companies.

7. Although the Special Master remains in the early phases of his investigation, the best interests of the victims would be served by the immediate entry of an Order directing the Special Master to disburse the Proceeds in conformance with the Clanwilliam Proposal and to otherwise perform in accordance with the terms and conditions of the Clanwilliam Proposal.

8. In addition, although the Special Master is not disbursing funds directly to ULICO pursuant to the Clanwilliam Proposal, the Special Master reports that ULICO, the sole policyholder of PBLA under Bermuda law and beneficiary of the PBLA-ULICO Trust, stands to receive the bulk of the Bermuda Insurance Companies' portion of the Proceeds.

**IT IS, THEREFORE, ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that:

A. In the event the Clanwilliam Proceeds are disbursed to the Special Master, the Special Master shall dispose of such funds as soon as reasonably practicable and only as follows:

i. $14,112,426 to the Special Master as a reserve for satisfying administrative expenses incurred in connection with this case, including those of

4

Defendant's criminal defense counsel, and approved pursuant to the procedure set forth in the Special Master Order;

ii. $108,195,266 to the Bermuda Insurance Companies;

iii. $23,520,710 to Vista; and

iv. $172,171,598 allocated to the North Carolina Insurance Companies to be disbursed as set forth below.

B. To the extent the Proceeds are more or less than $318,000,000, the Special Master, the Bermuda Insurance Companies, Vista, and the North Carolina Insurance Companies shall share in the gain or loss *pro rata* based on the foregoing distribution amounts (*i.e.*, 4.438% to the administrative expense reserve, 34.024% to the Bermuda Insurance Companies, 7.396% to Vista, and 54.142% to the North Carolina Insurance Companies).

C. The Special Master shall, as soon as reasonably practicable, disburse the North Carolina Insurance Companies' $172,171,598 share of the Proceeds, as adjusted pursuant to the above-referenced percentages, to first directly pay the North Carolina Insurance Companies' policyholders with uncovered losses such uncovered loss amounts as restitution pursuant to 18 U.S.C. § 3664(j)(1), with the remaining balance to be distributed to the North Carolina Insurance Companies for distribution pursuant to the North Carolina insurance liquidation priority statute(s), including to, or for the benefit of, state guaranty associations as Class 2 claimants.

D. The Special Master is authorized to perform in accordance with Clanwilliam Proposal.

5

E.    All amounts distributed under this Order to the North Carolina Insurance Companies, the Bermuda Insurance Companies, and Vista (to the extent Vista is determined to be a victim entitled to restitution) shall be credited toward Defendant's ultimate restitution obligations as determined by a future order of restitution entered by this Court.

**SO ORDERED**.

Signed: July 22, 2025

Max O. Cogburn Jr
United States District Judge