**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:23-cr-48-MOC**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **GREG E. LINDBERG** | ) | |
| | ) | |
| ______________________________ | ) | |

**THIS MATTER** is before the Court on a First Motion for Payment of Fees and Expenses, filed by Katten Muchin Rosenman LLP ("Katten"), through Ryan J. Meyer as counsel of record for Defendant Greg Lindberg, (Doc. No. 73). Defense counsels assert that the fee petition was presented to the Special Master for review, and he does not oppose the entry of an order approving these fees. For the following reasons, the motion is granted, and the fees and expenses are approved.

## I. BACKGROUND

As counsels explain in their pleadings in support of the motion, Defendant has been subject to a series of interrelated criminal and civil actions by the United States Attorney's Office ("USAO"), the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") since 2019. As a part of Defendant's plea agreement in this case, the USAO and the DOJ agreed to a multi-step process for approval and payment of Defendant's counsel's fees whereby they would be subject to review by the Special Master appointed in this case and then approval by the Court. This process was memorialized in the Order Appointing the Special Master in this case. (FN. Doc. No. 56).[1]

[1] "FN Doc. No." refers to the docket of this case.

DOJ indicted Defendant in this district in March 2019, along with co-defendants John Gray, John Palermo, and Robin Hayes in a five-count indictment. (Case No. 5:19-cr-22 (W.D.N.C.) (the "Public Corruption case"), Br. Doc. No. 3). Lindberg, Gray, and Palermo were indicted on two counts. Hayes alone was charged on all five counts, including three false statement counts (18 U.S.C. § 1001).

After being convicted in an initial trial in February and March 2020, Defendant's conviction was vacated by the Fourth Circuit and remanded for re-trial. As more fully discussed below, Defendant's retrial was conducted in May 2024. Defendant was convicted at his retrial and is currently awaiting sentencing before this Court. (Br. Doc. No. 497 at p.2; Br. Doc. No. Text Order on July 22, 2025).

In August 2022, the SEC filed a civil complaint against Defendant in the Middle District of North Carolina, alleging that he and two co-conspirators (Christopher Herwig and Standard Advisory Services Limited) violated the antifraud provisions of the Investment Advisers Act of 1940 by improperly directing investments from his insurance companies into a series of related operating companies through a series of complex investment structures. (Case No. 1:22-cv-715 (M.D.N.C.) (the "SEC case"), Doc. No. 1). As more fully discussed below, the factual allegations in the SEC case are substantially identical to a portion of the Financial case. Defendant litigated the SEC case throughout 2024 as a means of preparing for potential trials in both the SEC and Financial cases. Following Defendant's plea agreement in the Financial case, Defendant reached a bifurcated settlement with the SEC in March 2025. (SEC Doc. No. 117). A final judgment will be entered in the SEC case following Defendant's sentencing in this case.

In February 2023, Defendant was indicted in this district in a thirteen-count indictment, charging him with one count of conspiracy to commit crimes in connection with the insurance

business, wire fraud, and investment adviser fraud; one count of wire fraud; four counts of false insurance business statements presented to regulators; six counts of false entries about the financial condition or solvency of an insurance business; and one count of conspiracy to commit money laundering. (Case No. 3:23-cr-48 (W.D.N.C.) (the "Financial case"), Doc. No. 1)). Defendant's co-conspirators Chris Herwig (also a co-defendant in the SEC case) and Devin Solow were charged separately by information in 2022.

On November 12, 2024, Defendant pleaded guilty to Counts One (conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment advisor fraud) and Thirteen (money laundering conspiracy) of the Financial case, pursuant to a written plea agreement. (FN Doc. No. 40). Among other things, Defendant agreed to the appointment of a Special Master in the Financial Case to determine and pay restitution to the victims in this case as well as pay fees for his counsel following approval of such fees by this Court. Following a joint motion by DOJ and Defendant, this Court appointed Joseph W. Grier, III, as special master to, among other things, "pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court." (FN Doc. Nos. 54, 55, 56).

**A. Public Corruption Retrial**

Before the first trial, Mr. Hayes entered a plea deal with DOJ to one false statement count and a dismissal of the other charges against him. (Br. Doc. No. 70). Mr. Hayes was sentenced to one year of probation, Br. Doc. No. 257, and was subsequently pardoned.

At the first trial, Mr. Palermo was acquitted. Defendant was convicted on both counts and sentenced to 87 months of imprisonment and three years of supervised release. (Br. Doc. No. 261). Mr. Gray was also convicted on both counts and sentenced to 30 months of imprisonment and two years of supervised release. (Br. Doc. No. 262). The Fourth Circuit then vacated the

convictions and remanded for re-trial. In the meantime, with respect to the Financial Fraud Case at hand, Defendant was indicted on February 23, 2023. (FN Doc. No. 1). The indictment generated new discovery which had to be reviewed for the public corruption retrial.

Defense counsels assert that Katten's work required for the retrial from April to November 2024 can be broken down into the following categories: reevaluating the legal landscape and evolving law while preparing for retrial; developing a new litigation strategy in light of the appellate court's ruling; trial preparation, including witnesses, exhibits, and experts for trial; jury selection; voir dire strategy; pretrial and post-conviction motions; and physical trial time.

Defense counsels assert that, although defense counsel previously tried this case, the effort to prepare for a retrial did not duplicate past work. Rather, preparing for and trying this case required a reconstruction of strategy and legal framing in light of new circumstances, legal clarification, and trial dynamics. This included reviewing thousands of pages of transcripts, updating legal theories, and preparing for cross-examinations that would address both prior testimony and appellate guidance.

Defense counsels further assert that, following Defendant's conviction in May 2024, Katten also spent significant resources researching and drafting post-conviction motions and preparing for a potential appeal, until that was mooted at DOJ's request as a part of the plea agreement in the Financial case.

**B. Financial Case**

As discussed above, Defendant was charged by indictment in this case on February 23, 2023. Katten has served as counsel for Defendant since 2019—from investigation through to present. DOJ's lengthy investigation required countless meetings internally and externally,

witness interviews, strategy sessions, document review, legal research, and numerous other tasks to support Defendant's defense.

Defense counsels assert that, post-indictment, Katten has zealously advocated for Defendant, including participating in plea negotiations, discovery, witness interviews, motion drafting, legal research on multiple unique and complex issues raised by this case, strategy sessions, physical court time, and numerous other tasks necessary for Defendant's defense. After Defendant's guilty plea, which itself required significant effort to negotiate given the complex and multi-faceted nature of this matter, Katten has represented Defendant with respect to cooperation with the appointment of a special master and the underlying requirements for that, including ensuring Defendant assigned assets to the special master, constant communication with the special master and all parties involved, facilitating sales to generate fund to pay victims—potentially in full—discussions with interested third parties, and assisting the parties' interactions with the same. Defense counsels assert that working to meet Defendant's obligations has required a significant amount of legal work, such as developing strategies for maximizing value, advocating for Defendant's positions based on review and research, and reviewing numerous lengthy documents and agreements to unwind a complex web of entities to ensure victims are maximally compensated.

With respect to representing Defendant in assisting with the special master's duties, the special master noted himself in his Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies the sheer complexity of the disposition of assets to meet future restitution obligations. (FN Doc. No. 66).

The docket entries in this matter indicate a significant number of filings by Defendant, which further underscores the depth, complexity, and cost of the representation. Further,

Defendant's plea agreement specifically provides for payment of his legal fees. (FN Doc. No. 40).

**C. SEC Case**

As noted above, the SEC case contains factual allegations that are substantially similar to multiple counts in the Financial case. In addition, the document discovery in the SEC case contained several million pages of documents also produced in the Financial case, and key witnesses significantly overlapped in both cases. Moreover, while defending the SEC case, Katten addressed a number of the same factual issues that arose in the Financial case, including a massive amount of discovery review that required parsing and organizing millions of documents for targeted review. This extensive review necessitated progressive level review by an outside contractor and then Katten attorneys. Katten's review strategy was developed based on countless research topics and as discovery progressed, which required constant attention to the posture of the case.

Defense counsels further assert that Katten also had to perform multiple witness interviews to gather discovery and for the deposition preparation of numerous witnesses. Katten also took the depositions of the other two parties in the SEC case (several over multiple days) as well as a dozen third-party fact witnesses (all of whom likely would have been fact witnesses in the Financial case). Katten also had to prepare and defend Defendant for his own deposition in the SEC case.

The SEC also forced Katten to engage in defending a motion to compel and filed at least one motion to compel a third-party fact witness (and drafted several more for witnesses who ultimately decided to cooperate). Additionally, Katten kept in frequent contact with the SEC to argue and resolve factual disputes, discuss motions and filings, and ultimately reached a

conclusion of the matter by accepting SEC allegations via a no-contest motion for summary judgment on February 27, 2025. (SEC Doc. No. 106, 112). The court rendered judgment on March 13, 2025, and retained jurisdiction to determine penalties within ten days of Defendant's sentencing. (SEC Doc. No. 117).

For the above-described work, Katten respectfully requests the payment of its fees and expenses for the period of April 1, 2024, through June 30, 2025. Katten requests that the Court approve, and the Special Master be directed to pay, fees in the amount of $2,153,156.02[2] and expenses in the amount of $897,148.84—a total of $3,050,304.86. (See Ex. A-1). Counsels have attached the Declaration of Brandon N. McCarthy (the "McCarthy Declaration"), in support of their argument that the fees are reasonable and necessary. (See Ex. A). In addition, Katten has ensured that its staffing on these matters is as efficient as possible given the complex nature of the myriad issues presented by Defendant's proceedings and has not billed for any duplicative work.

Katten asserts that, in recognizing the unique nature of this payment process, Katten's fee request of $2,153,156.02 already represents a 15% reduction of the billing rates for all timekeepers on these matters. As a result, Katten's fee request represents a total discount of $379,968.71.

## II. DISCUSSION

Courts have relied on the recommendations of a special master in determining distribution of legal fees without any further analysis of reasonableness under a factor test. For

---

[2] For comparison's sake, the North Carolina Insurance Companies paid attorney's fees and expenses of approximately $4,431,093 for their related litigation against Defendant in calendar year 2024. See, e.g., Quarterly Rehabilitation Reports for Colorado Bankers Life Insurance, Bankers Life Insurance Company, and Southland National Life Insurance Corporation, available at: https://cblife.com/quarterly-rehabilitation-reports/.

example, a case involving life insurance companies with numerous impacted policyholders adopted the report of a Special Master approving an attorneys' fees award of approximately $8 million. See Dickman v. Banner Life Ins. Co., 660 F. Supp. 3d 436, 439–40 (D. Md. 2023). The court declined to consider any other factors for the reasonableness of fees. Id. Katten's requested fees—roughly 33% of those awarded in Dickman—represent reasonable and efficient advocacy in a complex and lengthy series of cases.

Alternatively, the Fourth Circuit evaluates the reasonableness of requested attorneys' fees by looking to twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Barber v. Kimbrell's, Inc., 557 F.2d 216, 226 n.28 (4th Cir. 1978); see also Hogan v. Cherokee Cnty., No. 1:18-cv-00096-MR-WCM, 2022 WL 526008, at *2 (W.D.N.C. Feb. 22, 2022) (evaluating the reasonableness of attorneys' fees under the twelve factors).

The Court finds that the relevant factors weigh in favor of a finding that Katten's requested attorneys' fees are reasonable. Defense counsel expended the necessary amount of time to defend a sprawling and complex series of interrelated enforcement and litigation matters that included numerous legal projects as set forth previously and below. (See Ex. A).

Defendant's defense, ongoing after more than five years, involved difficult and complex questions requiring significant skill to navigate and address As is evident from the Indictment, the Plea Agreement, the Special Master Order, and as is addressed in the Special Master's First Status Report, this Case involves complicated issues because, among other reasons: there are several insurance company victims with tens of thousands of impacted policyholders; several of the insurance company victims are in liquidation proceedings; several victims have received, or will receive, compensatory payments from other sources; certain of the Defendant's assets are subject to substantial third-party claims; certain victims have civil judgments for money damages against Defendant and his assets; and Defendant's assets are not readily convertible to cash. (FN Doc. No. 56 at 2). Other complicating factors include the complex corporate governance structure of the Primary Restitution Assets, the secured debt obligations on unfavorable terms encumbering the Defendant's assets, and the numerous pending civil actions with the potential to disrupt the Special Master's efforts.

In addition, the complexity of these issues is further demonstrated given the interrelated nature of each of the cases. As noted throughout, each case involved overlapping evidence of relevant conduct despite each case targeting different specific legal issues. Each case required different defense strategies, filings, negotiations, depositions, discovery productions, witness interviews, among numerous other required tasks. For example, handling the civil SEC case in parallel with the criminal Financial case required special attention to the effect of certain actions and discovery. One strategy could be beneficial to one case while being detrimental to the other. This required a tight rope balancing act, which underscores the interrelatedness of the cases and global case considerations.

Indeed, the status report filed in the SEC Case on August 1, 2025, specifically notes the interrelatedness of the SEC claims and Financial Case:

> The victims and facts underlying Lindberg's and Herwig's pleas [in the Financial case] largely mirror the allegations in the SEC's Complaint. Accordingly, the sentencing and orders of restitution and/or forfeiture in Lindberg's and Herwig's criminal cases may materially impact what monetary relief, if any, the SEC seeks against Lindberg, Herwig, and SASL in the SEC case.

(SEC Doc. No. 119). The Special Master confirmed the sheer complexity of these matters cogently in the Special Master's First Status Report over the course of five pages of discussion: Defendant amassed ownership in a complicated web of hundreds of companies across various industries financed through an even more complicated web of lending arrangements with Defendant's insurance company affiliates that the Special Master is investigating. For example, NHC, one of the Primary Restitution Assets, comprises more than three hundred (300) individual SACs. The corporate governance structure of NHC and the SACs is not simple. (FN Doc. No. 65 at pp. 4–9). As set forth in the McCarthy Declaration, Katten's fees and expenses in the Public Corruption case, Financial case, and SEC case were reasonable and necessary to defend Mr. Lindberg in these interrelated enforcement actions by DOJ and SEC. All requested fees reflect the hours actually worked by Katten and the hourly rates in effect at the time that the services were rendered. Defendant's defense team was appropriately staffed with a blend of more experienced and more junior lawyers, each of whom charged not just a market-appropriate rate for the work they performed, but all attorneys performed work on a 15% discounted hourly rate.

All requested expenses reflect the actual and necessary expenses of Katten and are billed at the actual amounts paid by Katten for the said expenses. The Court will grant Katten's request for its fees and expenses resulting from Defendant's defense.

## III. CONCLUSION

For the reasons stated herein, the First Motion for the Payment of Fees and Expenses, (Doc. No. 73) is **GRANTED**, and it is **ORDERED** that the requested fees and reimbursement of expenses are approved. The Special Master is directed to distribute funds to Katten for fees in the amount of $2,153,156.02 and expenses in the amount of $897,148.84.

**SO ORDERED**.

Signed: November 5, 2025

Max O. Cogburn Jr.
United States District Judge