**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>*Defendant*. | Case No. 3:23-CR-48-MOC |

**STATEMENT IN SUPPORT OF SPECIAL MASTER'S REPORT AND RECOMMENDATIONS WITH RESPECT TO THE DESIGNATION OF THE INSOLVENT NORTH CAROLINA INSURANCE COMPANIES AS VICTIMS ENTITLED TO RESTITUTION**

NOW COMES the National Organization of Life and Health Insurance Guaranty Associations ("NOLHGA"), in its associational capacity on behalf of its affected member State Life and Health Insurance Guaranty Associations, and files this *Statement in Support of the Special Master's Report and Recommendations with Respect to the Designation of the Insolvent North Carolina Insurance Companies as Victims Entitled to Restitution*.[1]

## INTRODUCTION

NOLHGA submits this Statement to support designating the insolvent North Carolina Insurance Companies ("N.C. Insurance Companies")[2] as victims entitled to restitution, consistent

[1] This Statement relates only to the aspects of the Special Master's Report and Recommendations Regarding Restitution ("SM Report") which relate to the designation of the N.C. Insurance Companies as victims entitled to restitution. ECF 106. NOLHGA takes no position with respect to any other aspects of the SM Report. Additionally, as explained in the SM Report, the Special Master intends to subsequently address any issues beyond the proposed preliminary restitution order, including, for example, pro-rata distribution and priority issues. *Id.* at 1-2, 5, 7. NOLHGA reserves the right to file any additional response related to these subsequently addressed issues.

[2] The N.C. Insurance Companies include the following: Southland National Insurance Company ("SNIC"); Southland National Reinsurance Corporation ("SNRC"); Colorado Bankers Life Insurance Company ("CBL"); and Bankers Life Insurance Company ("BLIC"). SM Report at 6.

with extensive federal precedent. State Life and Health Insurance Guaranty Associations (the "Guaranty Associations") around the country provided statutory benefits to policyholders of the N.C. Insurance Companies which, in aggregate, represented liabilities of over $1.8 billion. In turn, the N.C. Insurance Companies now owe the Guaranty Associations an amount equivalent to the statutory benefits they provided. The claims of the Guaranty Associations and other creditors of the N.C. Insurance Companies are now being resolved in the state court liquidation proceeding pending in Wake County Superior Court. *See Causey v. Southland Nat'l Ins. Corp.*, No. 19 CVS 008664-910.

## I. The N.C. Insurance Companies were proximately and directly harmed by Lindberg's crimes and should be designated as victims entitled to restitution.

NOLHGA agrees with the Special Master that the N.C. Insurance Companies are victims of Lindberg's crimes who "should be considered primary payees of restitution in this Case." ECF 106 at 2. Indeed, the gravamen of Lindberg's scheme—siphoning off massive amounts of assets from these victim companies for inappropriate uses and through a series of falsities—makes clear that the N.C. Insurance Companies were defrauded. Ultimately, Lindberg's scheme directly and proximately caused the N.C. Insurance Companies to become insolvent and to be placed into receivership and ultimately liquidation.

## II. NOLHGA's member Guaranty Associations protect policyholders of insolvent insurers like the N.C. Insurance Companies.

Guaranty Associations are nonprofit legal entities established by state statute. They exist to protect policyholders of insolvent insurers against their insurer's failure to fulfill its contractual obligations. Every state and the District of Columbia have enacted statutes creating Guaranty Associations. *See, e.g.*, N.C. Gen. Stat. § 58-62-1 *et seq.* Under these state statutes, when an insurer is placed under an order of liquidation with a finding of insolvency, the relevant Guaranty

Associations are authorized to provide statutory benefits to policyholders, which can include administering the policies, continuing coverage, and paying claims. *See* N.C. Gen. Stat. § 58-62-36(d). NOLHGA is a not-for-profit corporation whose members are the Guaranty Associations of the fifty states and the District of Columbia. NOLHGA coordinates affected Guaranty Association activities related to providing statutory benefits in order to achieve efficiencies for policyholders, insurers, and regulators.

When Lindberg's fraud rendered the N.C. Insurance Companies insolvent, the Guaranty Associations provided statutory benefits to policyholders totaling more than ***$1.8 billion***. Appendix 2 to SM Report at 26-27, ECF 106-3. According to the state statutory scheme, the N.C. Insurance Companies now owe these amounts to the Guaranty Associations as part of an exclusive state liquidation process, making those Guaranty Associations (among others) creditors in the state liquidation proceeding. N.C. Gen. Stat. §§ 58-30-220 and 58-62-61(c); *see also* Ord. Denying Def.'s Motion to Preclude Damages and Notice of Full Payment to All Policyholders at 33-36, *Southland Nat'l Ins. Corp. v. Lindberg*, No. 19 CVS 013093-910 (N.C. Super. Apr. 16, 2026) (detailing the amounts owed to state Guaranty Associations as required by statute and other creditors because of the insurance company insolvencies).

## III. There is substantial precedent for federal courts to designate insolvent insurance companies as victims for restitution purposes.

Clear precedent supports designating an insolvent insurance company as a victim for restitution purposes under such circumstances. *See, e.g.*, Judgment at 6, *United States v. Reifler*, No. 1:20-CR-512, ECF 117 (M.D.N.C. Nov. 7, 2022) (in a case where defendant diverted approximately $34 million in assets belonging to the North Carolina Mutual Life Insurance

Company ("N.C. Mutual"), noting at sentencing[3] that the "real loss" was in "betray[ing] the insurance company," and ordering $20M in restitution to the N.C. Commissioner of Insurance as receiver of N.C. Mutual); Judgment at 6, *United States v. Weiss*, No. 6:98-CR-99-ORL-19A, ECF 2223 (M.D. Fla. Jul. 16, 2009) (ordering defendant to pay $125M in restitution to the "Commissioner of Insurance for State of Delaware as Receiver for National Heritage Life Insurance Company (in Liquidation)"); Restitution Order at 1-3, *United States v. Frankel*, No. 3:99-CR-235, ECF 496 (D. Conn. Dec. 10, 2004) (ordering co-defendants, including Martin R. Frankel, to pay approximately $204M in joint and several restitution to the state insurance commissioners acting as receivers for seven insolvent insurance companies); Superseding Indictment at ¶ 21, *Frankel*, No. 3:99-CR-235, ECF 15 (D. Conn. Jan. 5, 2001) (explaining defendants' scheme to defraud was "all to the detriment of the victim insurance companies, their policy holders and where applicable, their shareholders").[4] Those receivers, in turn, make distributions to Guaranty Associations and other creditors according to state laws governing the priorities and payments of claims against insolvent insurers.

This well-established approach to restitution involving insolvent insurers applies here. The insolvent insurers are rightly designated as the victims.

[3] *See Reifler*, No. 1:20-CR-512, ECF 115, Sentencing Transcript at 95 (Oct. 31, 2022).

[4] More examples abound. *See, e.g.*, Judgment at 5, *United States v. Ford*, No. 97-184-CR-orl-19B (M.D. Fla. April 28, 1998) (ordering defendant to make approximately $16M in restitution payments made to "Commissioner of Insurance for the State of Delaware as Receiver for National Heritage Life Insurance Company (in liquidation)"); Amended Judgment at 6, *United States v. Sutton*, No. 4:09-CR-00507-JCH-1 (E.D. Mo. Nov. 19, 2013) (ordering defendant to pay approximately $435M in joint and several restitution payments to "Special Deputy Receiver" as related to Lincoln Memorial Life Insurance Company liquidation); Judgment at 6, *United States v. Province*, No. 4:09-CR-00507-JCH-2 (E.D. Mo. Nov. 2013) (same, across judgments for multiple additional defendants).

## CONCLUSION

For these reasons, NOLHGA respectfully requests that the Court enter a preliminary order that designates the N.C. Insurance Companies as victims entitled to restitution.

Dated: May 4, 2026

Respectfully submitted,

*/s/ Jason H. Cowley*

Jason H. Cowley (Bar No. 32636)
**MCGUIREWOODS LLP**
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2030
*jcowley@mcguirewoods.com*

Joel A. Glover
**Faegre Drinker Biddle & Reath LLP**
1144 15th Street, Suite 3400
Denver, Colorado 80202, USA
(303) 607-3648
*joel.glover@faegredrinker.com*
(*pro hac vice* application pending)

Eric F. Au
**Faegre Drinker Biddle & Reath LLP**
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
(215) 988-2544
*eric.au@faegredrinker.com*
(*pro hac vice* application pending)

***Counsel for NOLHGA***

## CERTIFICATION

Pursuant to this Court's Order regarding the use of artificial intelligence, the undersigned states that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: May 4, 2026.

*/s/ Jason H. Cowley*
Jason H. Cowley (Bar No. 32636)
**MCGUIREWOODS LLP**

***Counsel for NOLHGA***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2026, a copy of the foregoing document was electronically filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Jason H. Cowley*

Jason H. Cowley (Bar No. 32636)
**McGuireWoods LLP**
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2030
*jcowley@mcguirewoods.com*