**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC |

**THE BERMUDA INSURANCE COMPANIES' RESPONSE AND PROPOSED MODIFICATION TO THE REPORT AND RECOMMENDATIONS OF THE SPECIAL MASTER**

John Johnston and Elizabeth Cava ("JOLs/JPLs"), as the Joint Official Liquidators on behalf of PB Life and Annuity Co., Ltd. ("PBLA"), and as the Joint Provisional Liquidators of Northstar Financial Services (Bermuda) Ltd. ("Northstar"), Omnia Ltd. ("Omnia"), and PB Investment Holdings Ltd. ("PBIHL"; collectively, the "Bermuda Insurance Companies"), by and through their undersigned counsel, file this response and proposed modification to the Report and Recommendations of the Special Master (the "Special Master Report" or the "Report").

The Bermuda Insurance Companies and the Special Master have worked collaboratively to reach a consensus on nearly all relevant aspects of the Special Master Report. The Special Master has, however, reserved opinion on the Bermuda Insurance Companies' legal right under the Mandatory Victims Restitution Act ("MVRA") to receive full payment of restitution before any payment is made to the North Carolina Insurance Companies to satisfy their subrogation claims.[1] For the reasons stated below, the Court should follow a two-step sequential process, prioritizing full payment of restitution to victims, including the Bermuda Insurance Companies.

[1] Report & Recommendations Regarding Restitution at p. 33, *United States v. Lindberg*, No. 3:23-cr-48-MOC-DCK (W.D.N.C. Apr. 3, 2026), ECF No. 106 ("the Special Master is not seeking to resolve, and makes no recommendations at this stage concerning . . . whether partial restitution payments should be divided proportionately among the foregoing payees or whether some payees should receive some priority in payment over other payees.").

## I. <u>The North Carolina Insurance Companies Should Only Be Paid After All Victim Claims Have Been Satisfied</u>

Under the MVRA, the Bermuda Insurance Companies—as direct victims—have priority over the North Carolina Insurance Companies. This is because the North Carolina Insurance Companies' claims to restitution stem from the fact that they compensated direct victims for their losses. In contrast, the Bermuda Insurance Companies are *themselves* direct victims. On the other hand, policyholders of the North Carolina Insurance Companies have been fully paid by various Guaranty Associations (as coordinated by NOLHGA). Therefore, any payments that are made from restitution assets to the North Carolina Insurance Companies will not be used to make restitution to victims as contemplated under the MVRA, but will instead be used to satisfy the subrogation claims of those Guaranty Associations. Placing the North Carolina Insurance Companies in *pari passu* with direct victims risks substantial dilution of the limited funds available to compensate direct victims, like the Bermuda Insurance Companies.

18 U.S.C. § 3664(j)(1) explains that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, *but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.*" (emphasis added).

The MVRA thus contemplates a two-step sequential process for restitution. First, victims (like the Bermuda Insurance Companies) are to be made whole. Only *after* those victims have been fully paid can those who *compensated* victims be paid. *See, e.g.*, *United States v. Patel*, No. 1:09CR342-2, 2012 WL 2505822 at *2 (N.D. Ohio June 28, 2012) (recognizing "the two-step sequential process set forth in the [MVRA], 18 U.S.C. § 3664(j), which provides for payment to an insurer so long as all victims have already been made whole."); *In re Petition of Korff*, No. 13-

CR-20600, 2016 WL 4537815, at *9 (E.D. Mich. Aug. 31, 2016) ("Only if amounts remain in the restitution fund after all patient victims have been compensated under the claims process will any funds be available for other victims of Fata's crimes, i.e. private, non-patient victims (health care benefit programs) and government victims (Medicare).").

In this case, the absence of a clear sequencing procedure will generate confusion and invite parties with statutorily inferior rights to try to undermine the distribution scheme mandated by the MVRA. Indeed, a framework that prioritizes payment to victims over payments to entities who compensated victims avoids the worst-case scenario where the North Carolina policy holders are paid in full, the Guaranty Associations are made whole again, but victims like the individual Bermuda policy holders receive less than full payment, and possibly substantially less, depending on the value of Lindberg's potential equity in difficult to value indirect investments. The statute requires sequencing specifically to avoid prioritizing a guaranty association, reinsurance company, or other entity designed to mitigate catastrophe, over a person swindled out of their life's savings.

Here, the North Carolina Insurance Companies and Guaranty Associations are mere subrogees who are expressly subordinated to true victims such as the Bermuda Insurance Companies. At the appropriate time, this Court should issue an order to explicitly recognize this fact and provide for the two-step sequencing procedure outlined above.

## II. **The Bermuda Insurance Companies Continue Negotiations with the Special Master and Reserve the Right to File Supplemental Responses**

The Bermuda Insurance Companies further respond to the Special Master Report insofar as they have identified various discrepancies and inaccuracies with the restitution amounts calculated therein. The Bermuda Insurance Companies have been communicating these concerns, outlined below, to the Special Master and believe that the parties are close to consensus on most issues, although the Special Master does not presently intend to update his restitution claim

amounts until he has had an opportunity to review all objections and responses. The Bermuda Insurance Companies respectfully request that these discrepancies be corrected in an amendment to the Report. If the Special Master is not inclined to amend the Report, the Bermuda Insurance Companies reserve all rights to file supplemental responses to the Report.

The JOLs/JPLs are court appointed fiduciaries who were not present when the subject sham transactions were effectuated.[2] Thus, the information presented in this Response is based on secondhand knowledge, and the JOLs/JPLs have relied on the Bermuda Insurance Companies' books and records, the IALA, documents obtained in discovery, and documents and or information provided by third parties. No representations or warranties can be made with respect thereto.

Paladin, the financial advisor to the Special Master, utilized schedules provided by Mike Dinius, liquidator for the North Carolina Insurance Companies, to calculate the restitution claims of the Bermuda Insurance Companies. There are a number of discrepancies in restitution amounts as calculated by the Bermuda Insurance Companies and Mr. Dinius. Among the most significant differences are the Northstar assets Yarrow Three ($6,569,224) and Beaufort ($10,112,004). The JOLs/JPLs have been coordinating with Paladin and believe that Paladin will agree to the JOLs/JPLs' calculations.

Furthermore, the Bermuda Insurance Companies believe that it is appropriate to add non-IALA assets to the Special Master's starting point list of stolen assets and then deduct the Bermuda Insurance Companies' recoveries therefrom. The non-IALA assets and recoveries are set forth in Exhibit A attached hereto. There is the possibility that additional assets may be found by the JOLs/JPLs, and the JOLs/JPLs hereby reserve all of their rights. For instance, the JOLs/JPLs are

[2] The JOLs/JPLs were duly appointed as the authorized foreign representatives of the Bermuda Insurance Companies by the Supreme Court of Bermuda ("Bermuda Proceedings"). The United States Bankruptcy Court of the Southern District of New York has granted recognition of the Bermuda Proceedings as foreign main proceedings pursuant to Chapter 15 of the United States Bankruptcy Code.

aware that certain assets were removed from the PBLA ULICO Trust prior to the creation of the schedules annexed to the IALA, which the Special Master has utilized as his starting point to calculate victim restitution claims. Assets were allegedly removed because they were non-performing, but removing non-performing assets would be inconsistent with Greg Lindberg's continuous efforts to take valuable assets from insurance companies and replace them with phony assets. The JOLs/JPLs are continuing to investigate these and other suspicious transactions.

Finally, the JOLs/JPLs note that PBLA Main was a PBLA account. In other words, PBLA Main *is* PBLA. Lindberg has argued that PBLA Main is separate and did not have any "real" capital or liquidity but instead held only sham assets. Indeed, as described by Lindberg's attorneys in an April 20, 2026, memo, "most of the PBLA Main Loans did not involve funds from ULICO." While the Bermuda Insurance Companies obviously reject Lindberg's attempts to deflect and obfuscate the losses caused by the sham loans held by PBLA Main, this implies, at a minimum, that at least *some* of the loans involved funds stolen from ULICO. Indeed, so far, the JOLs/JPLs have identified the following funds were moved from the PBLA ULICO reinsurance trusts: (i) at least one transfer in the amount of $8,584,800 to PBLA Main; (ii) at least $5,290,225 to Standard Financial Ltd. (believed to be a Maltese entity); and (iii) at least $2,462,000 to Standard Advisory Services Ltd. (believed to be a Maltese entity)[3]. These moneys may have been used to purchase sham assets or the assets listed in Exhibit E of the IALA, which the Report currently disregards in the Special Master's restitution calculations for PBLA.

[3] The Lindberg Bill of indictment repeatedly asserts Standard Advisory Services Ltd. (abbreviated in the Bill of Indictment as SASL), owed the Bermuda Insurance Companies a fiduciary duty by dint of SASL's role as financial advisor, and breached said duty by causing the Bermuda Insurance Companies to "transition existing investments from the SPVs to the FinCos to benefit LINDBERG at the expense of the [Bermuda Insurance Companies]". *See* Bill of Indictment at ¶¶ 7(e), 81. Count One of the Indictment – Conspiracy – alleges Lindberg and other conspirators willfully and knowingly caused SASL to engage in investment adviser fraud with the purpose of defrauding the Bermuda Insurance Companies. Bill of Indictment at ¶¶ 191, 192.

The Bermuda Insurance Companies remain optimistic that the above items will be reflected in an amendment to the Report but nonetheless reserve their rights to file supplemental responses in the absence of corrective action by the Special Master.

This the 1st day of May, 2026

**LONGLEAF LAW PARTNERS**

/s/ Benjamin L. Worley__________
Benjamin L. Worley
North Carolina State Bar No. 29527
4509 Creedmoor Road, Suite 302
Raleigh, NC 27612
919-645-4302 (p)
bworley@longleaflp.com
*Attorneys for the John Johnston and Elizabeth Cava in their capacity as Joint Official Liquidators and Joint Provisional Liquidators*

**CERTIFICATE OF SERVICE**

Counsel for the undersigned does hereby certify that copies of the foregoing were served on all counsel of record and parties requesting notice via ECF follows:

This the 4th day of May, 2026

/s/ Benjamin L. Worley__________
Benjamin L. Worley
North Carolina State Bar No. 29527