**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:23-CR-48-MOC |
| GREG E. LINDBERG | |

### SPECIAL MASTER'S FOURTH STATUS REPORT

NOW COMES Joseph W. Grier, III, as special master appointed pursuant to 18 U.S.C. § 3664(d)(6) (the "Special Master"), by and through counsel, who files this *Special Master's Fourth Status Report* (this "Report") pursuant to this Court's *Order Appointing Special Master* entered on January 23, 2025 (Doc. No. 56) (the "Special Master Order"), covering the period beginning on December 16, 2025, and ending on April 30, 2026 (the "Reporting Period").

### I.     PROCEDURAL BACKGROUND

The procedural background sections found in the Special Master's first three Status Reports (Doc Nos. 65, 80, and 94)[1] covering the history of the above-captioned case (this "Case"), from the indictment of Greg E. Lindberg ("Defendant") through the appointment of the Special Master, are incorporated herein by reference.

### II.     SUMMARY OF SPECIAL MASTER'S ACTIVITIES

### A.  Payments to Policyholders with Uncovered Claims

This Court's July 22, 2025, *Order* approving the *Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies*, Doc. No. 68 (the "Clanwilliam Order"), directed the Special Master to pay the North Carolina Insurance

---

[1]     Capitalized terms not otherwise defined in this Report have the meanings assigned to them in the Special Master's first three Status Reports.

Companies' share of the Clanwilliam proceeds first to the NCICs' policyholders with claims not covered by applicable state guaranty associations (the "Policyholders with Uncovered Claims"), with the remainder then paid to the North Carolina Insurance Companies.

The Special Master, the Special Master's financial advisor, Paladin Management Group ("Paladin"), and the Special Master's distribution agent, Epiq Corporate Restructuring, LLC ("Epiq"), worked to verify the identities, addresses, and claim amounts of the Policyholders with Uncovered Claims. Epiq then began issuing checks to the Policyholders with Uncovered Claims. Throughout the Reporting Period, Epiq monitored the status of payments, reissued checks upon the request of policyholders, and researched issues related to uncleared checks. Epiq maintained a call center and dedicated email inbox to answer policyholder inquiries related to those payments and has continuously worked with policyholders to answer their questions and resolve their issues related to the payments. After calculating the amount due to the Policyholders with Uncovered Claims, the Special Master paid the remainder of the North Carolina Insurance Companies' share of the Clanwilliam proceeds directly to the NCICs.

As of the close of the Reporting Period, more than $150,000,000 of the nearly $158,000,000 (*i.e.*, 95%) of the funds the Special Master distributed to Policyholders with Uncovered Claims had been deposited. Expressed in terms of number of checks, 32,375 of the 43,793 (*i.e.*, 74%) checks that were issued by the Special Master had cleared by the end of the Reporting Period. The Special Master extended the deadline for Policyholders with Uncovered Claims to request reissued checks; Epiq reissued nearly 1,000 checks during the Reporting Period.

To date, only one (1) of the Policyholders with Uncovered Claims has contacted the Special Master to dispute the amount of the distribution received through the Special Master. The Special

Master's counsel was in the process of preparing a formal response to said policyholder at the close of the Reporting Period.

### B.  Preparation of Memorandum and Recommendations as to Restitution

The Special Master and Paladin focused their efforts during the Reporting Period on investigating the losses resulting from the Defendant's activities identified in the indictment in preparation of the Special Master's *Report and Recommendations Regarding Restitution*, Doc. No. 106 (the "Restitution Report"), which was filed on April 3, 2026.  Throughout the Reporting Period, the Special Master and Paladin continued to:  (i) review documentation provided by alleged victims, Defendant, and others concerning the multitude of transactions comprising the massive insurance fraud scheme; (ii) interview representatives of different potential victim constituencies; and (iii) conduct its own calculations and analyses to verify alleged loss amounts. The Special Master and Paladin engaged in extensive discussions with the alleged victims, Defendant's counsel, the U.S. Attorney's office, and other interested parties about the nature and extent of the losses, various potential offsetting credits due to the Defendant for property previously returned to the victims, and issues relating to the priority of restitution payments. Because these discussions revealed numerous points of contention among the parties about various aspects of the Special Master's ultimate restitution recommendations, the Special Master and Paladin worked to achieve a precise understanding of the positions taken by the parties with respect to these issues and to resolve as many of the disagreements as possible in advance of filing the Report.

### C.  Efforts to Liquidate Other Restitution Assets

One of the Primary Restitution Assets is currently conducting a sale process. The Special Master has participated in numerous conferences with the management, general inside counsel, general outside counsel, and outside "deal" counsel for that asset to facilitate the sale process. Specifically, the Special Master has assisted in efforts to devise a streamlined plan to secure both

the court approvals and releases of liability that a buyer of the asset is likely to demand, as well to determine the distribution of funds upon the sale of the asset.

Similar discussions were had during the Reporting Period with respect to other Primary Restitution Assets. As the Special Master's appointee on the NHC board, Don Harer of Paladin has been kept apprised of NHC's discussions and general plans to monetize Specified Affiliated Companies. Many of the issues that presented themselves during the Clanwilliam sale process (and which required extensive negotiation to resolve) are likely to recur during the sale of other Specified Affiliated Companies. Representatives of the Special Master have continued to work with various NHC stakeholders in an attempt to reach a global resolution of, or at least help alleviate, the common sale and distribution barriers burdening the process for monetizing the Specified Affiliated Companies

### D. Other Miscellaneous Efforts and Activities

On January 12, 2026, the Special Master and members of his law firm participated in a status conference before the Court regarding the Special Master's effort in the case and the expected completion date of the Restitution Report.

During the Reporting Period, the Special Master continued to have weekly video conferences with the Defendant's counsel and the Assistant U.S. Attorneys handling this matter. Similarly, the Special Master's team has maintained open and frequent communications with representatives of the Primary Restitution Assets, the likely victim constituencies, and other interested parties impacted by Defendant's conduct.

Numerous Specified Affiliated Companies have continued to face problems with corporate registration and banking "know-your-customer" ("KYC") regulations due to the Defendant's former ownership interests in the Specified Affiliated Companies. The Special Master has continued to work with counsel for NHC and the Specified Affiliated Companies to provide

4

documentation showing that the Special Master is the ultimate beneficial owner of the Specified Affiliated Companies for KYC regulation purposes.

Relatedly, the complex corporate governance structure of NHC and the Specified Affiliated Companies continues to cause significant administrative burdens. The Special Master, NHC, and other stakeholders are exploring options to streamline and simplify the structure of NHC, the Specified Affiliated Companies, and the related trusts.

The Special Master has made efforts to stay abreast of Defendant's lawsuits and other court filings that impact alleged victims, including those in a case filed by Defendant against ULICO in the U.S. District Court for the District of Puerto Rico,[2] as well as arguments made by the Defendant in the MOU Action.[3]

### III.  RECEIPTS AND DISBURSEMENTS

The Special Master did not receive any funds during the Reporting Period other than interest on already-deposited funds.

Pursuant to the Clanwilliam Order, the Special Master issued 43,793 checks to the NCICs' Policyholders with Uncovered Claims in the aggregate amount of $157,989,655.  Again, as of the close of the Reporting Period, approximately 95% in amount and approximately 74% in number of checks have cleared.

The Special Master paid the remainder of the North Carolina Insurance Companies' share of the proceeds directly to the North Carolina Insurance Companies in the aggregate amount of $20,010,220.27, comprising $16,646,502.24 to Colorado Bankers Life Insurance Company,

---

[2]  Case no. 8:24-CV-02602.

[3]  Case no. 19CVS013093-910 in the North Carolina General Court of Justice, Superior Court Division, Wake County.  At a hearing in the MOU Action during the Reporting Period, the supervising judge expressed a desire for the Special Master and this Court to review the hearing's transcript.  The Special Master has reviewed this hearing transcript (and others) from the MOU Action.  If the Court is interested in reviewing said transcript, the Special Master can file a copy on the docket in this Case.

$968,494.66 to Bankers Life Insurance Company, and $2,395,223.37 to Southland National Insurance Corporation.

In December 2025, this Court entered Orders approving the applications for fees and expenses of and approval of retainers for the Special Master and Paladin (Doc. No. 104, approving application at Doc. No 95), Katten Muchin Rosenman LLP ("Katten") (Doc. No. 105, approving application at Doc. No. 97), and Wyatt & Blake, LLP ("Wyatt") (Doc. No. 103, approving application at Doc. No. 96). In accordance with those Orders, the Special Master disbursed $252,119.88 to Grier Wright Martinez, PA, $891,527.63 to Paladin, $593,991.54 to Katten, and $117,376.85 to Wyatt. The Special Master also disbursed $308,572.43 to Epiq during the Reporting Period for services rendered in connection with the management and disbursement of restitution funds. A summary of account balances and cash flows is attached to this Report as **Exhibit A**.

### IV.    REQUEST FOR APPROVAL OF COMPENSATION

Contemporaneously with the submission of this report, the Special Master intends to file a separate application for compensation seeking court approval of the fees and expenses incurred by Paladin and Grier Wright Martinez, PA in connection with this Case during the Reporting Period.

### V.    REPORT INTENDED AS A SUMMARY

The narrative description of the Special Master's activities in this report is intended to summarize some of the more significant tasks that the Special Master undertook—through Paladin, the special master's law firm, or otherwise—in connection with this Case during the Reporting Period and is not intended to reflect a detailed account of the same.  Similarly, the narrative description of the Special Master's activities in this report is not a comprehensive accounting of each and every task performed by the Special Master during the Reporting Period.  The Special Master is ready to provide additional documents or information to the Court pertaining to any of

6

the matters referenced in this report upon request, provided that any confidential proprietary

information be provided to the Court under seal.

Respectfully submitted this 15th day of May, 2026.

/s/  Michael L. Martinez
Joseph W. Grier, III (State Bar No. 7764)
Michael L. Martinez (State Bar No. 39885)
Benjamin D. Rhodes (State Bar No. 62618)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax:  704.332.0215
Email:  mmartinez@grierlaw.com

*Attorneys for the Special Master*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

The undersigned hereby certifies that: no artificial intelligence was knowingly employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this 15th day of May, 2026.

*/s/  Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing *Special Master's Fourth Status Report* were served on following parties by electronic mail as indicated below.

Daniel Ryan (Daniel.ryan@usdoj.gov)
Benjamin Bain-Creed (Benjamin.Bain-Creed@usdoj.gov)
Assistant U.S. Attorney(s)
U.S. Attorney's Office

Lyndie Freeman (Lyndie.Freeman@usdoj.gov)
Criminal Division
U.S. Department of Justice

James F. Wyatt, III (jwyatt@wyattlaw.net)
Wyatt & Blake, LLP
*Attorneys for Defendant*

Ryan J. Meyer (ryan.meyer@katten.com)
Brandon McCarthy (brandon.mccarthy@katten.com)
Katten Muchin Rosenman LLP
*Attorneys for Defendant*

Wes J. Camden (wcamden@williamsmullen.com)
Caitlin M. Poe (cpoe@williamsmullen.com)
Lauren E. Fussell (lfussell@williamsmullen.com)
Williams Mullen
*Attorneys for the N.C. Insurance Companies*

Benjamin L. Worley (bworley@longleaflp.com)
Longleaf Law Partners
*Attorneys for the Bermuda Ins. Companies*

Luis F. Llach-Zúñiga (LLlach@cstlawpr.com)
Casillas Santiago Torres LLC
*Attorneys for ULICO*

Charles A. (Tony) Jones (tony.jones@troutman.com)
Chris Browning (chris.browning@troutman.com)
R. Kyle Driggers (kyle.driggers@troutman.com)
troutman pepper locke
*Attorneys for ULICO*

J. Walton Milam III (wmilam@rosenwoodrose.com)
Rosenwood, Rose & Litwak, PLLC
*Attorneys for Vista/Cell 1.16*

Jeffrey E. Oleynik (JOleynik@BrooksPierce.com)
D.J. O'Brien III (dobrien@brookspierce.com)
Kate E. Giduz (KGiduz@BrooksPierce.com)
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
*Attorneys for Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.*

8

Jason Cowley (jcowley@mcguirewoods.com)
McGuireWoods LLP
*Attorneys for NOLHGA*

Joel Glover (joel.glover@faegredrinker.com)
Eric Au (eric.au@faegredrinker.com)
Faegre Drinker Biddle & Reath LLP
*Attorneys for NOLHGA*

Respectfully submitted this 15th day of May, 2026.

/s/  Michael L. Martinez
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax:  704.332.0215
Email:  mmartinez@grierlaw.com

9

# EXHIBIT A

**USA vs Lindberg**

*Special Master Cash Summary*

| Balances at 04/30/26: | Account | | Balance |
|---|---|---|---|
| Primary Account | 7844 | $ | 1,183,298.66 |
| Primary Account | 2737 | $ | - |
| Professional Account | 7836 | $ | 7,456,660.62 |
| Disbursment Account | 7852 | $ | 7,225,744.33 |
| Total Funds on Deposit | | $ | 15,865,703.61 |

| Activity Summary (8/19/25 to 04/30/26): | | Net Activity |
|---|---|---|
| Receipts (note) | $ | 350,414,053.79 |
| Disbursements (note) | $ | (334,548,350.18) |
| Net Activity | $ | 15,865,703.61 |

Note: Total receipts includes $112,027,404.60 of proceeds from the CWG sale that were remitted directly to the Bermuda
JPLs for their share.  While these amounts were not deposited in the Special Master's cash accounts, these are reported
as receipts and disbursements for tracking purposes.