**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREG E. LINDBERG,<br>Defendant. | Case No. 3:23-CR-48-MOC |

**KATTEN MUCHIN ROSENMAN LLP'S MEMORANDUM IN SUPPORT OF UNOPPOSED FOURTH MOTION FOR PAYMENT OF FEES AND EXPENSES**

Katten Muchin Rosenman LLP ("Katten"), through Ryan J. Meyer as counsel of record for Mr. Lindberg, hereby submits this *Memorandum in Support of Unopposed Fourth Motion for Payment of Fees and Expenses* (this "Memorandum") in support of *Katten Muchin Rosenman's Fourth Unopposed Motion for Payment of Fees and Expenses*.

The Motion and this Memorandum were presented to the Special Master for review and he does not oppose the entry of orders approving these fees.

## I. INTRODUCTION

1. As more fully discussed below, Mr. Lindberg has been subject to a series of interrelated criminal and civil actions by the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") since 2019. As a part of Mr. Lindberg's plea agreement in the present case, the DOJ agreed to a multi-step process for the approval and payment of Mr. Lindberg's counsel's fees whereby they were subject to review by the Special Master appointed in this case and then approval by the Court. The Court memorialized this process in the Order

Appointing the Special Master. FN[1] Dkt. 56. This Motion and supporting Memorandum are submitted to the Court for its review in accordance with that process.

2. DOJ indicted Mr. Lindberg in the Western District of North Carolina in March 2019, along with co-defendants John Gray, John Palermo, and Robin Hayes in a five-count indictment. Case No. 5:19-cr-22 in the Western District of North Carolina (the "Public Corruption case"). Case No. 5:19-cr-22 ("Br. Dkt."), Br. Dkt. 3. Messrs. Lindberg, Gray, and Palermo were indicted on two counts. Mr. Hayes alone was charged on all five counts, including three false statement counts (18 U.S.C. § 1001). After being convicted in an initial trial in February and March 2020, Mr. Lindberg's conviction was vacated by the Fourth Circuit and remanded for re-trial. Mr. Lindberg's retrial was conducted in May 2024. Mr. Lindberg was convicted at his retrial and is currently awaiting sentencing before this Court. Br. Dkt. 497 at p.2; Br. Dkt. Text Order on July 22, 2025.

3. In August 2022, the SEC filed a civil complaint against Mr. Lindberg in the Middle District of North Carolina alleging that he and two co-conspirators (Christopher Herwig and Standard Advisory Services Limited) violated the antifraud provisions of the Investment Advisers Act of 1940 by improperly directing investments from his insurance companies into a series of related operating companies through a series of complex investment structures. Case No. 1:22-cv-715 in the Middle District of North Carolina (the "SEC case"). SEC Dkt. 1. As more fully discussed below in Sections A.ii and A. iii, the factual allegations in the SEC case are substantially identical to a portion of the Financial case, so Mr. Lindberg litigated the SEC case throughout 2024 as a means of preparing for potential trials in both the SEC and Financial cases. Following Mr. Lindberg's plea agreement in the Financial case, Mr. Lindberg reached a bifurcated settlement

[1] "FN Dkt." refers to the docket of this case.

with the SEC in March 2025. SEC Dkt. 117. A final judgment will be entered in the SEC case following Mr. Lindberg's sentencing in this case.

4. In February 2023, Mr. Lindberg was indicted in the Western District of North Carolina in a thirteen-count indictment charging him with one count of conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment adviser fraud; one count of wire fraud; four counts of false insurance business statements presented to regulators; six counts of false entries about the financial condition or solvency of an insurance business; and one count of conspiracy to commit money laundering. Case No. 3:23-cr-48 in the Western District of North Carolina (the "Financial case"). FN Dkt. 1. Mr. Lindberg's co-conspirators Chris Herwig (also a co-defendant in the SEC case) and Devin Solow were charged separately by information in 2022. On November 12, 2024, Mr. Lindberg pleaded guilty to Counts One (conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment advisor fraud) and Thirteen (money laundering conspiracy) of the Financial case, pursuant to a written plea agreement. FN Dkt. 40. Among other things, Mr. Lindberg agreed to the appointment of a Special Master in the Financial Case to determine and pay restitution to the victims in this case as well as pay fees for his counsel following approval of such fees by this Court. Following a joint motion by DOJ and Mr. Lindberg, this Court appointed Joseph W. Grier, III as special master to, among other things, "pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court." FN Dkt. 54, 55, 56.

## II. LEGAL WORK DURING TIME PERIOD OF FOURTH MOTION FOR PAYMENT OF FEES AND EXPENSES

5. During the time period covered by this Fourth Motion for Payment of Fees and Expenses, Katten has been working to cooperate with the Special Master and the government to fulfill Mr. Lindberg's obligations under the Plea Agreement in the Financial case and the Order Appointing Special Master in order to maximize the restitution available to the victims, as well as preparing for a complex and potentially lengthy sentencing hearing.

6. Among other tasks, Katten has been involved in weekly meetings with the Special Master, the Special Master's Financial Advisor (Paladin), and the Department of Justice to facilitate maximizing the amount of restitution available to the victims as well as ensuring that restitution payments are made to individuals as quickly as possible. In addition, Katten has also been involved in multiple meetings with the Special Master, Paladin, and the Department of Justice regarding numerous complicated issues related to the potential restitution in the Financial case. Katten has also had numerous other meetings and communications with the Special Master and Paladin in order to facilitate Mr. Lindberg's cooperation with the Special Master. Finally, Katten has had numerous meetings, including in-person, with Paladin personnel to review and inform the preliminary conclusions reached by the Special Master regarding restitution in his April 3, 2026 Report and Recommendations Regarding Restitution ("Special Master's Restitution Report"). FN Dkt. 106. These voluminous meetings and communications have helped to narrow the restitution issues in this case and to facilitate the Special Master's Restitution Report.

7. Katten's work has also included research relating to, and the drafting of, a Joint Motion to Bifurcate the Sentencing Hearing (FN Dkt. 107; Br. Dkt. 504), analysis of the Special Master's Restitution Report, preparation of Mr. Lindberg's detailed Response and Objection to the Special Master's Restitution Recommendation (FN Dkt. 132), the drafting of a detailed Sentencing

Memorandum (FN Dkt. 145; Br. Dkt. 507), analyzing victim impact statements produced by both DOJ and the North Carolina Insurance Companies, and preparing for the sentencing and restitution hearings. Katten has also conducted additional meetings with Paladin personnel to review and discuss the assertions in Mr. Lindberg's detailed Response and Objection to the Special Master's Restitution Recommendation to see if the issues in dispute could be narrowed before the Court hold's a hearing on the final restitution order.

8. The sentencing proceedings in the Financial case and Public Corruption case have been consolidated, and it is anticipated that the May 26, 2026 sentencing hearing will be extremely complicated and lengthy. Indeed, the Court recently entered an Order bifurcating the sentencing hearing from the hearing on restitution. See Fin. Dkt. Entry No. 108; PC Dkt. Entry No. 505. Among other things, the Court must determine complicated restitution issues (victim classification, restitution amounts, and payment priority). To this end, Katten's work during the time period of this Motion includes legal research and analysis related to myriad restitution issues—such as the validity of multiple restitution claims, victim identification, victim classification, restitution amounts, restitution credits and offsets, and restitution payment priority. In addition, Katten has been involved in drafting and revising a lengthy Sentencing Memorandum that was filed on May 14, 2026. *See* FN Dkt. 145; Br. Dkt. 507.

9. Working to meet Mr. Lindberg's obligations relating to restitution has required a significant amount of legal work by Katten, including strategizing with Mr. Lindberg and separately with the Special Master and Paladin regarding the maximization of the value of the Primary Restitution Assets, advocating for Mr. Lindberg's positions based on its analysis and research, determining restitution amounts, including potential offsets and credits, classifying and

prioritizing victims, and reviewing numerous lengthy documents and agreements to untie a complex web of entities to ensure victims are maximally compensated.

10. With respect to representing Mr. Lindberg in assisting with the Special Master's duties, the Special Master noted in his *Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies* the sheer complexity of the disposition of assets to meet future restitution obligations. FN Dkt 66.

11. Further, Mr. Lindberg's plea agreement specifically provides for payment of his legal fees. FN Dkt. 40.

## III. REQUEST TO PAY FEES AND EXPENSES

12. For the above-described work, Katten respectfully requests the payment of its fees and expenses for the period of December 4, 2025 through April 30, 2026.

13. The Motion and Memorandum was presented to the Special Master for review and he does not oppose the entry of orders approving these fees.

14. Katten requests that the Court approve, and the Special Master be directed to pay, fees in the amount of $1,095,135.73 and expenses in the amount of $15,337.10—a total of $1,110,472.83.[2] As more fully set forth in the Declaration of Brandon N. McCarthy (the "McCarthy Declaration"), attached hereto as Exhibit A, these fees are reasonable and necessary. In addition, Katten has ensured that its staffing on these matters is as efficient as possible given the complex nature of the myriad issues presented by Mr. Lindberg's proceedings and has not billed for any duplicative work.

[2] Katten's redacted invoices are attached at Exhibit A-1.

15. In recognition of the unique nature of this payment process, Katten's fee request of $1,095,135.73 *already* represents a 15% reduction of the billing rates for all timekeepers on these matters. Katten's 15% reduction of billing rates has resulted in savings of $193,259.27.

| Fees & Expenses Request – Katten | | |
|---|---|---|
| | Hours | Fees/Amount |
| Brandon N. McCarthy (Partner) | 346.9 | $440,520.58 |
| Ryan J. Meyer (Partner) | 302.4 | $356,110.05 |
| Robert T. Smith (Partner) | 43.5 | $55,277.63 |
| Rachel Riley (Partner) | 45.8 | $53,334.10 |
| Ryan C. Dean (Associate) | 52.8 | $58,119.6 |
| Andrew J. Pecoraro (Associate) | 90.8 | $101,376.95 |
| Casey McClaren | 3.8 | $2,923.15 |
| Michael Lockwood (Senior Paralegal) | .6 | $326.40 |
| Joshua Upthegrove (Senior Paralegal) | 48 | $25,500.00 |
| Sara K. Brown (Senior Paralegal) | 3.9 | $1,647.30 |
| *Total Fees* | | *$1,095,135.73* |
| *Total Expenses* | | *$15,337.10* |
| **Total Fees and Expenses** | | **$1,110,472.83** |

## IV. THE MOTION SHOULD BE GRANTED

18. The Court should grant Katten's request for its fees and expenses resulting from Mr. Lindberg's defense. Because Mr. Lindberg's plea agreement contemplated that Katten would be compensated for its attorneys' fees and because, as set forth below, Katten's fees are reasonable, and this Court should enter an order to distribute funds to Katten for fees in the amount of $1,095,135.73 and expenses in the amount of $15,337.10.

19. Courts have relied on the recommendations of a special master in determining distribution of legal fees without any further analysis of reasonableness under a factor test. For example, a case involving life insurance companies with numerous impacted policyholders adopted the report of a Special Master approving an attorneys' fees award of approximately $8 million. *See Dickman v. Banner Life Ins. Co.*, 660 F. Supp. 3d 436, 439-40 (D. Md. 2023). The court declined to consider any other factors for reasonableness of fees. *Id.* Katten's requested

fees—roughly 33% of those awarded in *Dickman*—represent reasonable and efficient advocacy in a complex and lengthy series of cases.

20. In the alternative, the Fourth Circuit evaluates the reasonableness of requested attorneys' fees by looking to twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 557 F.2d 216, 226 n.28 (4th Cir. 1978); *see also Hogan v. Cherokee County*, No. 1:18-cv-00096-MR-WCM, 2022 WL 526008, at *2 (W.D.N.C. Feb. 22, 2022) (evaluating the reasonableness of attorneys' fees under the twelve factors).

21. Each of the relevant factors weighs in favor of a finding that Katten's requested attorneys' fees are reasonable. Mr. Lindberg's counsel expended the necessary amount of time to defend a sprawling and complex series of interrelated enforcement and litigation matters that included numerous legal projects as set forth previously and below. *See* Exhibit A.

22. Mr. Lindberg's defense, ongoing after more than five years, involved difficult and complex questions requiring significant skill to navigate and address. As is evident from the Indictment, the Plea Agreement, the Special Master Order, and as is addressed in the Special Master's First, Second, Third, and Fourth Status Reports (FN Dkt. Nos. 65, 80, 94, 147), this Case involves complicated issues because, among other reasons: there are several insurance company

victims with tens of thousands of impacted policyholders; several of the insurance company victims are in liquidation proceedings; several victims have received, or will receive, compensatory payments from other sources; certain of the Defendant's assets are subject to substantial third-party claims; certain victims have civil judgments for money damages against Defendant and his assets; and Defendant's assets are not readily convertible to cash. FN Dkt. 56, at 2. Other complicating factors include the complex corporate governance structure of the Primary Restitution Assets, the secured debt obligations on unfavorable terms encumbering the Defendant's assets, and the numerous pending civil actions with the potential to disrupt the Special Master's efforts.

23. The Special Master confirmed the sheer complexity of these matters cogently in the Special Master's First Status Report over the course of five pages of discussion:

> Defendant amassed ownership in a complicated web of hundreds of companies across various industries financed through an even more complicated web of lending arrangements with Defendant's insurance company affiliates that the Special Master is investigating. For example, NHC, one of the Primary Restitution Assets, comprises more than three hundred (300) individual SACs. The corporate governance structure of NHC and the SACs is not simple.

FN Dkt. 65 at p. 4–9.

24. As set forth in the McCarthy Declaration, Katten's fees and expenses in the Financial case were reasonable and necessary to defend Mr. Lindberg in these interrelated enforcement actions by DOJ and SEC.

25. All requested fees reflect the hours actually worked by Katten and the hourly rates in effect at the time that the services were rendered. Mr. Lindberg's defense team was appropriately staffed with a blend of more experienced and more junior lawyers, each of whom charged not just a market-appropriate rate for the work they performed, but all attorneys performed work on a 15% discounted hourly rate.

26. All requested expenses reflect the actual and necessary expenses of Katten and are billed at the actual amounts paid by Katten for the said expenses.

27. The Motion and this Memorandum were presented to the Special Master for review and he does not oppose the entry of orders approving these fees.

## V. CONCLUSION

**WHEREFORE**, Katten respectfully requests that the Court grant the Fourth Unopposed Motion for the Payment of Fees and Expenses.

Date: May 19, 2026 Respectfully Submitted:

**KATTEN MUCHIN ROSENMAN LLP**


Robert T. Smith (*pro hac vice*)
robert.smith1@katten.com
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
(202) 625-3500 – telephone

*/s/ Ryan J. Meyer*
Ryan J. Meyer (*pro hac vice*)
Texas SBN: 24088053
Ryan.meyer@katten.com
Brandon N. McCarthy (*pro hac vice*)
Texas SBN: 24027486
Brandon.mccarthy@katten.com
Rachel M. Riley (*pro hac vice*)
Texas SBN: 24093044
Rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl Street
Suite 1100
Dallas, Texas 75201
(214) 765-3600 – telephone
(214) 765-3602 – facsimile

*Counsel for Defendant Greg E. Lindberg*

<u>**CERTIFICATION**</u>

Pursuant to the Court's June 18, 2024 Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 19th day of May, 2026.

*<u>/s/ Ryan J. Meyer</u>*
Ryan J. Meyer (*pro hac vice*)
Texas SBN: 24088053
Ryan.meyer@katten.com
Brandon N. McCarthy (*pro hac vice*)
Texas SBN: 24027486
Brandon.mccarthy@katten.com
Rachel M. Riley (*pro hac vice*)
Texas SBN: 24093044
Rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl Street
Suite 1100
Dallas, Texas 75201
(214) 765-3600 – telephone
(214) 765-3602 – facsimile

*Counsel for Defendant Greg E. Lindberg*