**EXHIBIT A12**



April 19, 2016

**VIA ELECTRONIC MAIL**

Jessica Price, CPA CFE
Senior Financial Analyst
North Carolina Department of Insurance
1203 Mail Service Center
Raleigh, NC 27699-1203
Jessica.Price@ncdoi.gov

Re:    Review Letter 1 – December 31, 2015, Annual Statement Financial Review

Dear Ms. Price:

In regards to Review Letter 1, dated April 11, 2016, Southland National Insurance
Corporation ("the Company" or "SNIC") provides our written responses as follows:

1. *Non-Investment Grade Securities & Affiliated Debt Investments*
   *The Department has the understanding that the Company had agreed to not invest
   more than 40% of total admitted assets in affiliates. Excluding the investments in
   insurance company affiliates, it appears at December 31, 2015, that the Company
   has 50% of total admitted assets invested in affiliates. The Company is directed
   to refrain from investing further in affiliates and to provide a plan outlining how
   it will return to compliance with the 40% agreed upon limit.*

   **Response:** As per our investment policy, we interpreted the 40% limit to apply to
   affiliated sub-investment grade investments, not to affiliated investments in total.
   We will correct this before year-end by selling a group of affiliated securities to
   unaffiliated special purpose vehicles and/or transferring control of specific
   borrower operating companies to unaffiliated entities. After these proposed
   transactions, our total affiliate investments (not including affiliated insurance
   investments) will be below 40% of total assets. We will update our investment
   policy accordingly as well to comply with this 40% limit on all non-insurance

SOUTHLAND NATIONAL INSURANCE CORPORATION
2015 AYRSLEY TOWN BLVD. STE 202  ■  CHARLOTTE, NC 28273
POST OFFICE BOX 1520  ■  TUSCALOOSA, ALABAMA 35403
(205) 343-1250

WWW.SOUTHLANDNATIONAL.COM

affiliated investments. Please see attached sheet illustrating the minimum required to be transferred to implement this change per our calculations.

2. **_Composition of Affiliated Debt Investments_**
   *Please indicate how much of the existing affiliated debt held by the Company is junior lien, senior lien, payment-in-kind, and cash pay.*

   **Response:** As of December 31, 2015 the existing affiliate debt was broken down by junior lien, senior lien, payment-in-kind, and cash pay with percentages of 66.56%, 33.44%, 66.56%, and 33.44%, respectively. The sale/transfer proposed in response #1 will also involve a conversion of a portion of the current payment in kind investments to all cash pay. This is similar to the previous special purposes vehicles transactions where some payment in kind assets were converted to all cash pay when they were purchased by the SPV.

3. **_Bond Designation Discrepancies_**
   *Please provide documentation to support the FE bond designation for each of the affiliated bonds listed on Attachment A, which have been noted as designation exceptions per the NAIC.*

   **Response:** Please see attachment 3 for supporting ratings documentation.

4. **_Ceding Commission/Surplus Relief from SNRC Reinsurance Agreements_**
   *Based upon the Department's review of the annual statements, it appears that the Company has reported $25,979,165 of commissions and expense allowances on reinsurance ceded, which is partially offset by $5,152,317 of commissions and expense allowances on reinsurance assumed. In addition, the Company has reported $4,991,119 of unamortized ceding commission and expense allowance as surplus relief, which per Note 21 is the unamortized portion of the ceding commission related to the NC Mutual retrocession to Southland National Reinsurance Corporation ("SNRC") and SNG Holdings & Reinsurance Company ("SNG"). Note 21 also indicates that the $500,000 ceding commission for the Funds Withheld Reinsurance Agreement with SNRC has been fully amortized into surplus. However, the Department is unable to reconcile the agreements in place and approved by the Department to the amounts reported. As such, the Company is requested to provide the following:*

   a. *Detail the source agreement and substance of the remaining $20,759,526 in commissions and expense allowances on reinsurance ceded.*

      **Response:** Please see attachment 4 for a detailed breakdown.

   b. *The Department calculates that the Company has received approximately $13.0 million in surplus relief from the cession of Interest Maintenance Reserve ("IMR") to SNRC as a result of the Funds Withheld Reinsurance Agreement and the Funds Withheld Retrocession Agreement between the Company and SNRC, which became effective as of January 1, 2015. However, it appears that the $13.0 million in surplus relief has not been identified separately in the December 31, 2015, Annual Statement as an aggregate write-in for gains and losses in surplus in the Capital and Surplus Account in accordance with G.S. 58-7-*

2 | P a g e

*31(d)(2). Please explain where the surplus relief associated with the IMR has been reported in the Annual Statement and why the Company has not accounted for the surplus relief in accordance with G.S. 58-7-31(d)(2).*

**Response:** As noted in the attachment, the Company viewed and recorded the amount as part of the Ceding Commission & Expense Allowance and not as an aggregate write-in for gains and losses in surplus. SNIC proposes that the correction be made as of March 31, 2016 as an aggregate write-in for gains and losses in surplus.

5. ***Other Debits and Miscellaneous Credits with Unauthorized Reinsurers***
*The Department has identified the following concerns related to Schedule S - Part 4, which should be addressed by the Company:*

   a. *The Company included a <u>credit</u> amount of $12,737,990 in column 7, "other debits." Please identify the composition of this credit balance.*

   **Response:** Please see attachment 5.a. and 5.c – Other Debits and Misc Credits with Unauth Reins.

   b. *Per the NAIC Annual Statement Instructions, the IMR should be included as a <u>debit</u> in column 7, "other debits." Please provide an explanation for why this has not been included.*

   **Response:** We will include the IMR relief in column 7 as well as the Parental and Personal Guarantees in column 13.

   c. *Please identify the composition of the "miscellaneous balance (credit)" in the amount of $966,515.*

   **Response:** Please see attachment 5.a. and 5.c – Other Debits and Misc Credits with Unauth Reins.

6. ***Group Service and Administration Fees***
*Group service and administration fees have increased 315.6% or $4.0 million. Although it appears that $3.3 million can be attributed to the Service Agreement with Southland National Holdings, Inc. that became effective in 2015, please provide the underlying reasons for this significant increase.*

**Response:** As noted above, under a Services Agreement with its parent, Southland National Holdings, the Company paid $3,274,854.71 for investment management services in 2015. This compares to approximately $201,000 paid in 2014 under agreements active prior to the sale of the Company.

In addition, under Management Agreements with Southland Benefit Solutions, LLC (SBS), the Company paid a total of $1,874,797 for services in 2015. This includes a full 12 months totaling $583,797 for Dental Insurance Administration

3 | P a g e

($487,925 in 2014) and $1,291,000 under the Third Party Administrative Services contract. In 2014, the Third Party Administrative Services contract covered only the months of September – December ($442,000). The increase under the Dental Insurance Administration agreement is related to the 20% increase in collected premium.

| | 2015 | 2014 | Diff | % |
|---|---|---|---|---|
| MGMT FEE-CML (Jan - Aug 2014) | - | 134,429 | (134,429) | |
| MGMT FEE-COLLAT, INC (Jan - Aug 2014) | - | 66,560 | (66,560) | |
| ASO Services TPA Contracts (Sept - Dec 2014) | 1,291,000 | 442,000 | 849,000 | |
| Dental Services Agreement | 583,797 | 487,925 | 95,872 | |
| MGMT FEE- SNH | 3,274,855 | - | 3,274,855 | |
| TRUST MGMT FEE-REGIONS | 128,685 | 139,116 | (10,431) | |
| Group Service and Administrative Fees | 5,278,337 | 1,270,030 | 4,008,307 | 315.6% |

7. *Investment Income Due and Accrued*
   *At December 31, 2015, the Company is reporting investment income due and accrued of $8,155,759, which represents a 286.6% or $6.0 million increase as compared to prior year end. Please provide an aging of this balance due as of December 31, 2015, and subsequent settlement information.*

   **Response:** The majority of accrued interest at 12/31/2015 is attributable to affiliate loans. At 12/31/2015, cumulative accrued interest on affiliate loans was approximately $7.8 million net of interest payments received and interest capitalizations. There was no interest due and unpaid on affiliate loans at 12/31/2015. Remaining accrued bond interest totaled approximately $263k, excluding affiliate loans, and none of it was due on or before 12/31/2015 and unpaid. There is a discrepancy in the aging file of approximately 118k. This discrepancy can be attributed to interest that was accrued on loans that were acquired through note purchases and already had that accrued interest prior to being owned by the Company.

   The only accrued investment income due and unpaid at 12/31/2015 was short-term interest totaling $1,701 and was paid in total on 01/04/2016. See the attachment 7 and tabs "STAT Receivables at 123115" and "STAT Interest Income Received" pulled from Clearwater Analytics, the Company's investment accounting TPA.

8. *Adjustment Related to SNRC Reinsurance Agreement*
   *In correspondence received from the Company in December 2015, the Company indicated that it would be reporting a correction of an error in relation to the Funds Withheld Reinsurance Agreement with SNRC in its December 31, 2015, Annual Statement. The Department understands that this error is the result of IMR amortization expense being improperly netted in the funds withheld calculation associated with this*

4 | P a g e

*reinsurance agreement. However, Note 2 of the Annual Statement indicates that there are no corrections of errors. Please correct this Note 2 reporting discrepancy as the Company had previously indicated it would.*

**Response:** We have attached a copy of our letter (see attachment 8) whereby we informed the NCDOI that we would reference the change in Note 2 of the 2015 Annual Statement. Our intent was to inform the NCDOI that the amount of reserves ceded reported as part of the approval process had been increase due to an error in calculating the amount of IMR ceded. Since these amounts were reported in the 2015 Statement (subject to the correction in items 4 and 5 above, no correction appears to be required in Note 2. It was our error to inform the NCDOI that a correction would be made.

9. ***Revisions to Funds Withheld Reinsurance Agreement and Retrocession Agreement***
   *As noted in the Department's letter dated February 12, 2016, Article V, Section 5.3(e) of the Funds Withheld Reinsurance Agreement, and Article V, Section 5.2(e) of the Funds Withheld Retrocession Agreement between SNIC and SNRC, which were approved by the Department on May 14, 2015, should be updated to conform to Article V, Section 5.2(e) of the Funds Withheld Retrocession Agreement with SNG. Please submit the revised executed agreements.*

   **Response:** We will provide you the amended agreements under separate cover.

10. ***Southland Benefits Solution, LLC***
    *Pursuant to G.S. 58-34-2, please provide the following information related to Southland Benefits Solutions, LLC ("SBS"), with whom the Company maintains an active MGA relationship:*

    a.  *An audited financial report for SBS as of December 31, 2015, which is due by June 1.*

        **Reponse:** Please see attachment 10.a. for a copy of the SBS Audited Financial Report as of December 31, 2015

    b.  *The most recent semiannual review for SBS, which has been conducted by the Company.*

        **Response:** Please see attachment 10.b for a copy of the 2015 – SNIC Review of SBS.

11. ***$24M CBL Preferred Stock Investment (SVO Review)***
    *At December 31, 2015, the Company is reporting its $24.0 million preferred stock investment in Colorado Bankers Life Insurance Company ("CBL") with an NAIC designation of P2KZ. As such, it appears that the Company has filed this investment with the Securities Valuation Office ("SVO"), as is required by Part Two, Section 8 of the Purposes and Procedures Manual of the NAIC Investment Analysis Office. Please provide the results of the SVO's review of this preferred stock investment.*

**5 |** P a g e

**Response:** We are still in the process of filing this security. There was a delay in receipt of the CUSIP for the security; however, now that we have received it, we are in discussions with Jill Youtey of the SVO. In order to file this, we have submitted form ATF SUB-1. The P2KZ designation was not originally accurate in that the K resembles that the security was pending analysis by the SVO at year end. However, it is now accurate since we have filed with the SVO.

12. *Foreign "U" Rated Stock*
*The Company has reported a common stock investment on Schedule D Part 2, Section 2 in "IFA Systems Ord," which is a foreign investment with a NAIC Market Indicator of "U" and a book adjusted carrying value of $3,736,024. Please provide information to support the $14.865 rate per share (carrying value) at December 31, 2015, for this security.*

**Response:** Our custodian, Regions Bank uses a sub custodian for this asset. Regions explained the pricing they received from their sub custodian here: "This global security is held in custody at the Bank of New York Mellon (BNYM). As our Global Custodian, BNYM gathers local market prices from the respective local markets for each of our global securities, and then it creates a converted US Dollar market value data (based upon the best foreign currency exchange rates) which we use to create a monthly global security pricing file. This file is processed within the first two business days after month end. Global pricing is not available through our primary pricing vendor, Interactive Data, or on Bloomberg. So, we rely on BNYM to provide all global pricing. The pricing data that it provides has been consistently accurate. There are variables, such as foreign currency exchange rates reported by various sources, that may cause global pricing to vary amongst possible global pricing sources, but we trust BNYM to provide the most accurate pricing based on its consistency in acquiring accurate local market pricing and accurate foreign currency exchange rates."

13. *Management Agreement Supplement*
*The Company has not disclosed information regarding its management agreements with SBS on the Management Agreement Supplement. Please provide the information required pursuant to G.S. 58-34-10(d) for SBS at this time. Also, please make sure that management agreements are reflected correctly on the Management Agreement Supplement in all future filings.*

**Response:** Under Management Agreements with Southland Benefit Solutions, LLC (SBS), the Company paid a total of $1,874,797 for services in 2015. This includes $583,797 for Dental Insurance Administration and $1,291,000 for Records, Administration, Accounting and Reporting fees.

We have revised the Management Agreement Supplement template to include SBS in all future filings.

14. *Active Contract Listing*

6 | P a g e

*Please provide a listing of all active contracts, which should be filed with the Department pursuant to Chapter 58 of the North Carolina General Statutes, including but not limited to all management agreements and material affiliated agreements.*

**Response:** Southland National Insurance Corporation has the following active agreements in place, which have been submitted previously for review to the Department:

1. Third Party Administrative Services Agreement between Southland Benefits Solutions, LLC and Southland National Insurance Corporation
2. Dental Administration Agreement between Southland Benefits Solutions, LLC and Southland National Insurance Corporation
3. Dental Marketing Agreement between Southland Benefits Solutions, LLC and Southland National Insurance Corporation
4. Services Agreement between Southland National Insurance Corporation and Southland National Holdings, LLC
5. Custody Agreement between Southland National Insurance Corporation and Regions Bank
6. Funds Withheld Reinsurance Agreement and Funds Withheld Retrocession Agreement by and between Southland National Insurance Corporation and Southland National Reinsurance Corporation
7. Recapture Agreement between Southland National Insurance Corporation and Southland National Reinsurance Corporation
8. Funds Withheld Retrocession Agreement between Southland National Insurance Corporation and SNG Holdings & Reinsurance Company Inc.
9. Reinsurance and Administration Agreement between North Carolina Mutual Life Insurance Company and Southland National Insurance Corporation
10. Trust Agreement between Southland National Insurance Corporation, North Carolina Mutual Life Insurance Company and Regions Bank
11. Out-of-State Books, Records and Operations Agreement
12. Reinsurance Agreement between Southland National Insurance Corporation and Southern Financial Life Insurance Company (an agreement in force prior to the sale and redomestication of Southland National Insurance Corporation)
13. Reinsurance Trust Agreement between Southland National Insurance Corporation, Southern Financial Life Insurance Company and Bank One Trust Company, N.A. (an agreement in force prior to the sale and redomestication of Southland National Insurance Corporation)
14. Coinsurance Agreement between USAble Life Insurance Company and Southland National Insurance Corporation (agreement in force prior to the sale and redomestication of Southland National Insurance Corporation)

15. *Note 23(A) – Ceded Reinsurance Report*
    *In response to Note 23(A), Section 3 - Ceded Reinsurance Report - Part B, Question #2, the Company has indicated that it did not have any new agreements that have been executed since January 1, 2015, which included policies or contracts that were in force*

7 | P a g e

Case 3:23-cr-00048-MOC-DCK    Document 176    Filed 06/09/26    Page 8 of 12

*or which had existing reserves established by the Company as of the effective date of the agreement. This appears to be the incorrect response, for the Company executed two funds withheld reinsurance arrangements with SNRC as of January 1, 2015, which included business for which reserves had already been established. As such, please provide the proper response to Note 23(A), Section 3 - Ceded Reinsurance Report - Part B, Question #2 at this time.*

**Response:** The response to Note 23(A), Section 3 should have been "Yes" with $151,567,912 of "reserve credits' at December 31, 2015. This amount is made up of $138,497,376 of reserve credit taken on the two agreements less certain other debits, plus $15,611,137 in IMR credits at the inception of the treaty less $2,540,601 in IMR amortization released from the IMR reserve during 2015 (IMR net $13,070,536), which will be added to column 7 with back up in attached Item 4 worksheet.

### 16. *Note 10 Discrepancy*
*At December 31, 2015, the Company is reporting related-party liabilities of $547,718 in Note 10(D). However, the Company is reporting payables to parent, subsidiaries and affiliates of $554,117. Please provide an explanation for this discrepancy and make sure that all related-party liabilities are properly reported in the Notes to Financial Statements in all future filings.*

**Response:** The Company reported a total of $547,710 in Note 10(D) which is the correct amount. An item in the amount of $6,407 was miscoded to a Payable "Header" account which flowed into the Annual Statement mapping to Page 3, Line 24.04 in error. The amount should have been included in Line 12, General Expenses Due or accrued. The Company has corrected this as of 03/31/2016 and has taken steps to prevent this from occurring again.

### 17. *Incomplete Notes and General Interrogatories*
*At December 31, 2015, the below Notes to Financial Statements and General Interrogatories appeared to be incomplete. Please provide a response to each of the following:*

    a. *The Company has answered YES in response to GI Part 1 #4.1, indicating that there are personnel or facilities of the Company that are used by another entity or personnel or facilities of another entity that are used by the Company. However, it appears the Company has not responded GI Part 2 #4.2 regarding the net reimbursement of such expenses paid or received. Please provide a response to GI Part 2 #4.2 at this time.*

    **Response:**
    4.2    Net reimbursement of such expenses between reporting entitites:
        4.21 Paid        <u>$0</u>
        4.22 Received    <u>$0</u>

    b. *It appears that the Company has not responded to GI Part 2 #6.1, which requires the total amount paid in by stockholders as surplus funds since the organization of the Company. Please provide a response to GI Part 2 #6.1 at this time.*

**8** | P a g e

**Response:** $31,348,042.This is the amount reported as Gross paid in and contributed surplus Page 3 line 33.

c. *In GI Part 1 #28.01 and GI Part 1 #28.02, the Company is reporting Regions Bank as its only custodian. However, Schedule E - Part 1 indicates that the Company has cash deposits at Investor's Bank and Wells Fargo Bank, NA. Please indicate if there are any custodial agreements in place with Investor's Bank or Wells Fargo Bank, NA and provide a copy of such agreements.*

**Response:** The amounts held in Investor's Bank and Wells Fargo Bank, NA are cash accounts. There are no stocks, bonds, short term investments, or other securities held in these accounts. Therefore, we do not believe a custodial agreement is required for these accounts.

d. *For Note 5(A), the Company has not included the taxes, assessments and any amounts advanced and not included in the mortgage loan total as required by the NAIC Life Annual Statement Instructions. Please provide this information at this time.*

**Response:** The Company is not aware of any taxes, assessment of amounts advanced related to the single mortgage loan held.

e. *In Note 9(F)(1), the Company has indicated that the following entities, in addition to the Company itself, are included in the consolidated federal income tax return:*

> *Southland National Holdings, Inc. ("SNH")*
> *American Funeral & Cremation Plans, LLC*
> *Mothe Life Holdings, LLC*
> *Southland National Reinsurance Corporation ("SNRC")*
> *SN Group Development, LLC*
> *Preferred Financial Corporation*
> *Colorado Bankers Life Insurance Company ("CBL")*

*Based on the Department's review of the Tax Sharing Agreement, which was effective December 31, 2015, the only entities included in the Tax Sharing Agreement were the Company, SNRC, SNH, and CBL. As such, please provide an explanation for this discrepancy.*

**Response:** American Funeral & Cremation Plans, LLC; Mothe Life Holdings, LLC; SN Group Development, LLC; and Preferred Financial Corporation are not tax paying entities. In other words, these entities are ignored for tax purposes and there is nothing to share via a tax sharing agreement. As such, it is not necessary to specifically identify them as part of the Tax Sharing Agreement.

9 | P a g e

f. *The Company has not included the par value of the common stock in Note 13(1). Please provide this information at this time.*

**Respose:** The Company has 1,250,000 shares authorized with 250,453 shares issued and outstanding at a par value of $6.00.

g. *Note 21(C), Paragraph 1 provides the following: "Additionally, trust agreements between SNRC as grantor, the Company as beneficiary and Regions Bank as trustee." This statement appears to be incomplete. As such, please provide any missing information at this time.*

**Response:** We believe this should say "Additionally, trust agreements between SNRC as grantor, the Company as beneficiary and Regions Bank as trustee have been approved by the NCDOI.

18. *Pledged Asset Supplement*
*On the December 31, 2015, Pledged Asset Supplement, the Company has indicated that title to assets are vested in Regions Bank. However, the Pledged Asset Supplement should indicate that title to assets are vested in Southland National Insurance Corporation. Please make sure that the Pledged Asset Supplement is completed correctly in all future filings.*

**Response:** The Company has updated the template for the Pledged Asset Supplement and it will be correct in all future filings.

19. *Cash Deposits in Excess of FDIC Insured Limits*
*At December 31, 2015, the Company is reporting cash deposits in Investor's Bank and Wells Fargo for $5.0 million and $46.0 million, respectively, which exceed the FDIC insured limits. Please indicate how the Company monitors the financial condition of these two financial institutions.*

**Response:** The Company monitors the financial condition of these institutions using NRSRO ratings. Currently, Investor's Bank is rated AA1 by Moody's and Wells Fargo is rated AA by S&P.

20. *Reinsurance Intermediaries*
*Please provide a list of the reinsurance intermediaries, if any, that are being used by the Company.*

**Response:** SNIC does not utilize reinsurance intermediaries.

SNIC is committed to complete and accurate regulatory filings and appreciates the feedback provided by the NCDOI. The number of discrepancies is unusual for SNIC and the Company believes it is a temporary condition brought about by significant changes from the acquisition and change in domicile. We are also actively seeking to improve our management team and have recently made offers to a new Chief Actuary/Head of Risk and new CEO.

10 | P a g e

SNIC will continue to work with the NCDOI to ensure better reporting in the future. We appreciate your patience and help as we work to that end.


Sincerely,

Greg E. Lindberg
Chief Executive Officer and President
Southland National Insurance Corporation