# EXHIBIT A14

## Memorandum of Understanding

This Memorandum of Understanding (this "MOU") is made and entered into as of this 27th day of June, 2019 (the "Effective Date") by and among SOUTHLAND NATIONAL INSURANCE CORPORATION ("SNIC"), BANKERS LIFE INSURANCE COMPANY ("BLIC"), COLORADO BANKERS LIFE INSURANCE COMPANY ("CBL"), SOUTHLAND NATIONAL REINSURANCE CORPORATION ("SNRC") (each a "North Carolina Insurance Company" and collectively, the "North Carolina Insurance Companies"), ACADEMY ASSOCIATION, INC. ("AAI"), a North Carolina corporation, the SPECIFIED AFFILIATED COMPANIES (as hereinafter defined), EDWARDS MILL ASSET MANAGEMENT, LLC, as holder of certain Class A common units of the special purpose vehicles set forth on Exhibit A attached hereto ("EMAM"), the AGENTS (as hereinafter defined), and GREG E. LINDBERG, individually and as attorney-in-fact for each of the Specified Affiliated Companies and Agents ("Lindberg") (each of the North Carolina Insurance Companies, Lindberg, AAI, the Specified Affiliated Companies, EMAM and the Agents are sometimes referred to herein as a "Party" and collectively as the "Parties").

### RECITALS:

A.   Pursuant to an Order dated as of October 18, 2018, issued under the provisions of N.C. Gen. Stat. § 58-30-60 et seq., the Commissioner of Insurance of North Carolina placed the North Carolina Insurance Companies under confidential administrative supervision (such Order, as amended and extended from time to time, the "Supervision Order").

B.   Lindberg, directly or indirectly, through one or more intermediaries, owns 100% of the shares of stock of all classes of each of the North Carolina Insurance Companies. Lindberg is the sole and exclusive owner of 100% of the shares of stock of all classes of AAI. Except with respect to the Prime Entities (as defined below), either AAI, Lindberg or EMAM "Controls" (as such term is defined in N.C. Gen. Stat. § 58-19-5) the companies listed on Exhibit A hereto (each a "Specified Affiliated Company" and collectively, the "Specified Affiliated Companies"), all of which Specified Affiliated Companies are Affiliates (as such term is defined herein below) of AAI, Lindberg or EMAM. Lindberg is the beneficiary of that certain Prime Trust created under the Amended and Restated Trust Agreement dated as of April 25, 2019 ("Prime Trust"), pursuant to which TAC Holdings, LLC, a North Carolina limited liability company, beneficially owns the equity of TAC Investments, LLC, a North Carolina limited liability company, which owns 100% of the outstanding preferred stock of GoPrime Mortgage, Inc., a North Carolina corporation (collectively, the "Prime Entities"), and that certain voting trust which holds, or which shall shortly hold, the voting common equity of AAPC Holdings, LLC, a North Carolina limited liability company ("Voting Trust"; together with the Prime Trust, the "Excluded Trusts"), which are all Affiliated trusts and represent all Affiliates that operate as trusts of which AAI or Lindberg is a beneficiary. For purposes of this MOU, an *Affiliate* of, or person *Affiliated* with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

C.   As attorney-in-fact of each of the Specified Affiliated Companies, Agents, NHC Exclusions (as defined below), and Other Affiliates (as defined below), Lindberg is duly

authorized to act on behalf of the Specified Affiliated Companies, Agents, NHC Exclusions, and Other Affiliates to bind each to the terms and conditions set forth in this MOU, the Interim Loan Amendment (as hereinafter defined), and any other agreement, instrument, document, or consent contemplated in this MOU.

D. CBL, SNIC, New England Capital, LLC, a North Carolina limited liability company ("NEC"), and Private Bankers Life and Annuity Co., Ltd., a Bermuda limited company ("PBLA," and, together with CBL, SNIC, and NEC, each, an "Agent" and collectively, the "Agents"), are each Affiliates of AAI and Lindberg.

E. The Agents serve as agents under the senior term loan agreements in which lenders, including one or more of the North Carolina Insurance Companies, have extended credit facilities to certain of the Specified Affiliated Companies (collectively, the "Senior Debt") in the amounts and pursuant to the agreements set forth on Schedule 1 attached hereto (the "Senior Debt Agreements"). Each of the Agents, as applicable, has the unilateral authority to act for and bind the lenders of such Senior Debt with respect to the Senior Debt Agreements to which such lenders are a party and wherein each such Agent is identified as an agent.

F. The Agents serve as agents under the subordinated debt arrangements in which lenders, including one or more of the North Carolina Insurance Companies, have extended credit facilities to certain of the Specified Affiliated Companies (collectively, the "Junior Debt") in the amounts and pursuant to the agreements set forth on Schedule 2 attached hereto (the "Junior Debt Agreements"). Each of the Agents, as applicable, has the unilateral authority to act for and bind the lenders of such Junior Debt with respect to the Junior Debt Agreements to which such lenders are a party and wherein each such Agent is identified as an agent.

G. The Agents serve as agents under the preferred equity financing arrangements in which lenders, including one or more of the North Carolina Insurance Companies, have provided preferred equity financing (the "Preferred Equity") to certain of the Specified Affiliated Companies in the amounts and pursuant to the agreements set forth on Schedule 3 attached hereto (the "Preferred Equity Agreements"). Each of the Agents, as applicable, has the unilateral authority to act for and bind the lenders of such Preferred Equity with respect to the Preferred Equity Agreements to which such lenders are a party and wherein each such Agent is identified as an agent.

H. Lenders, including one or more of the North Carolina Insurance Companies, have provided certain credit facilities and preferred equity financing to an Affiliate of Lindberg, AGH Parent, LLC, a Delaware limited liability company ("AGH"), and its subsidiaries (the "Agera Debt") in the amounts and pursuant to the agreements set forth on Schedule 4 attached hereto (the "Agera Debt and Preferred Equity Agreements"). Each of the Agents, as applicable, has the unilateral authority to act for and bind the lenders of such Agera Debt with respect to the Agera Debt and Preferred Equity Agreements to which such lenders are a party and wherein each such Agent is identified as an agent.

2

I. PBLA has provided certain credit facilities to certain Affiliates of AAI (the "PBLA Loans") in the amounts and pursuant to the agreements set forth on Schedule 5 attached hereto (the "PBLA Loan Agreements").

J. Lenders, including one or more of the North Carolina Insurance Companies, have provided certain credit facilities and preferred equity financing ("Excluded Loans") to certain of the Affiliates of Lindberg and AAI set forth on Exhibit B attached hereto (the "NHC Exclusions"), in the amounts and pursuant to the agreements set forth on Schedule 6 attached hereto (the "Excluded Loan Agreements"). Each of the Agents, as applicable, has the unilateral authority to act for and bind the lenders of such Excluded Loans with respect to the Excluded Loan Agreements to which such lenders are a party and wherein each such Agent is identified as an agent.

K. Lenders, including one or more of the North Carolina Insurance Companies, have provided certain credit facilities and preferred equity financing ("Insurance HoldCo Debt"; together with the Senior Debt, the Junior Debt, the Preferred Equity, the Agera Debt, the PBLA Loans, and the Excluded Loans, collectively, the "Loans") to certain of the Affiliates of Lindberg and AAI set forth on Exhibit C attached hereto, in the amounts and pursuant to the agreements set forth on Schedule 7 attached hereto (the "Insurance HoldCo Debt Agreements"; together with the Senior Debt Agreements, Junior Debt Agreements, Preferred Equity Agreements, Agera Debt and Preferred Equity Agreements, PBLA Loan Agreements, and Excluded Loan Agreements, the "Loan Agreements"). Each of the Agents, as applicable, has the unilateral authority to act for and bind the lenders of such Insurance HoldCo Debt with respect to the Insurance HoldCo Debt Agreements to which such lenders are a party and wherein each such Agent is identified as an agent.

L. EMAM is the holder of certain Class A common units of the special purpose vehicles (the "SPVs") set forth on Exhibit D attached hereto. The SPVs are borrowers and lenders under certain financing transactions, and EMAM is joining this agreement on behalf of such SPVs to agree to cause the transactions contemplated hereby and related to the SPVs to occur.

M. Lindberg, or EMAM directly or indirectly, through one or more intermediaries, Controls each of AAI, the North Carolina Insurance Companies, the Specified Affiliated Companies, the Agents, the NHC Exclusions, the Other Affiliates and AGH.

N. The Parties intend that this MOU and the transactions contemplated herein will serve to protect the best interests of the policyholders of each of the North Carolina Insurance Companies (and any other Affiliated insurance companies) (hereinafter the "Policyholders"). In so doing, the Parties also intend to increase the long-term equity value of the Specified Affiliated Companies, so long as it is consistent with the protection of the best interests of the Policyholders and in accordance with North Carolina law.

O. The Parties are executing this MOU to set forth their agreements regarding, among other things, (i) the immediate partial amendment of, among other things, the interest rate and repayment terms of the Loans (the "Interim Loan Amendment"); (ii) the global

3

restructuring of the Specified Affiliated Companies through the formation of a new holding company (the "Global Restructuring"); and (iii) the global restructuring and modification of all Loans, including assignment of the Loans to such new holding company (the "Global Loan Amendments"), all in the manner and according to the terms and conditions more particularly set forth in this MOU.

NOW, THEREFORE, in consideration of these premises, the agreements and covenants of the Parties set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties intending to be legally bound hereby agree as follows:

## AGREEMENT

## ARTICLE I. Interim Loan Amendment

Concurrently with the execution of this MOU, and effective as of the Effective Date, the North Carolina Insurance Companies, the Agents, AAI, Lindberg and EMAM (collectively on behalf of all the Specified Affiliated Companies, the NHC Exclusions, and the Other Affiliates) shall execute and deliver the Interim Loan Amendment attached hereto as Attachment A.

## ARTICLE II. Global Restructuring

1. **Global Restructuring**. The Parties agree to restructure the Specified Affiliated Companies to become subsidiaries, either directly or indirectly, of a newly formed holding company ("NHC"), a wholly-owned subsidiary of AAI, on or before September 30, 2019 in accordance with the terms and conditions of this Article II. For the avoidance of doubt, any Affiliate of Lindberg, AAI or EMAM not identified on the attached Exhibit A as a Specified Affiliated Company shall not be a subsidiary of NHC and shall not be subject to the restructuring set forth in this Article II.

2. **Prime Trust Termination**. On or prior to the transactions contemplated in Article II, Section 1 above, Lindberg will take such actions as shall be required to terminate the Prime Trust, and shall contribute the Prime Entities to NHC, after which the Prime Entities shall be treated as Specified Affiliated Companies for all purposes hereof. For the avoidance of doubt, the Loans with respect to the Prime Entities shall not be amended by the Interim Loan Amendment, but shall be amended in connection with the contribution of the Prime Entities to NHC in accordance with the provisions of Article III, Section 1 below.

3. **Governance of NHC**. NHC shall be a manager-managed North Carolina limited liability company. NHC and AAI (as the sole member of NHC) shall promptly execute and deliver an operating agreement for NHC that will provide for, among other things as may be negotiated in good faith by the North Carolina Insurance Companies (as third party beneficiaries to the operating agreement with right to enforce such operating agreement) and AAI, the following terms and conditions (which terms and conditions shall be binding on NHC and AAI until such time as the North Carolina Insurance Companies and AAI agree otherwise, and shall be binding on NHC and AAI in the event such an operating agreement is not executed and delivered as required hereunder, and in such latter instance shall serve as the de facto operating agreement of NHC regarding the matters described

4

below. Without the written consent of each of the North Carolina Insurance Companies, AAI shall be prohibited from amending any operating agreement of NHC.

i. NHC will be governed by a board of managers fashioned as a "Board of Directors" (hereinafter, the "NHC Board"). The NHC Board will have the exclusive authority to manage the business and affairs of NHC subject to any specific delegation to an Executive Committee approved by the majority vote of the NHC Board. The NHC Board will be composed of seven (7) directors made up of two (2) directors appointed by AAI (each an "AAI Director", and collectively, the "AAI Directors"), three (3) directors appointed by the North Carolina Insurance Company designated by the North Carolina Insurance Companies (each a "Insurance Company Director", and collectively, the "Insurance Company Directors," and together with the AAI Directors, the "Electing Directors"), and two (2) independent directors (which may be nominated by any member of the NHC Board) elected by a majority of the Electing Directors (each an Independent Director and collectively, the "Independent Directors"). If the appointing authority of a director determines that such director (i) breached such director's duties of good faith and care owed by a manager of a limited liability company under North Carolina law or (ii) was convicted of a felony, then the appointing authority shall immediately remove such director and appoint a replacement director. Each of the directors shall have one (1) vote on all matters considered by the NHC Board, and all matters shall be determined by majority vote of the full NHC Board (all seven (7) members), such that any action of the NHC Board will require the affirmative consent of no less than four (4) directors. Notwithstanding the foregoing, provided that there is no default under any Loan, the NHC Board may not approve the sale of the assets or stock of NHC or any NHC subsidiary without the affirmative consent of at least one AAI Director. The initial directors to the NHC Board shall be as follows:

1. Chris Herwig and Lindberg will be the AAI Directors.

2. Mike Dinius ("Dinius") will be one of the Insurance Company Directors (the other two Insurance Company Directors shall be designated before the formation of NHC).

3. The appointed Insurance Company Directors shall have no past or present employment with the North Carolina Department of Insurance.

4. The chairman of the NHC Board will be appointed by the NHC Board from among its members; provided, however, should the action captioned United States of America v. Greg E. Lindberg et al, Docket No. 5:19-CR-22, pending in the United States District Court for the Western District of North Carolina (the "Pending Lindberg Matter") conclude without Lindberg being convicted of a

5

felony, then the NHC Board shall promptly cause Lindberg to be appointed as chairman of the NHC Board. The chairman of the NHC Board shall have such duties and authority as determined by the NHC Board acting in the manner provided above.

ii. The NHC Board shall take such actions as the NHC Board deems necessary to protect the best interests of the Policyholders. In so doing, the NHC Board will seek to increase the long-term equity value of the Specified Affiliated Companies, so long as it is consistent with the protection of the best interests of the Policyholders and in accordance with North Carolina law.

iii. The NHC Board will set the budgets for all Specified Affiliated Companies and cause each of the Specified Affiliated Companies to operate in a manner intended to allow each to repay or refinance or support the repayment, redemption or refinancing of, the Senior Debt, Junior Debt, and Preferred Equity in full on or before December 31, 2029.

iv. The NHC Board will promptly engage M-III Partners, LP and Mohsin Meghji as the Chief Restructuring Officer ("CRO") to assist NHC with the Global Restructuring plan set forth herein, under such terms and conditions as may be determined by the NHC Board.

v. The NHC Board shall appoint an executive committee of the NHC Board made up of three directors to include one AAI Director, one Insurance Company Director and one Independent Director (the "Executive Committee") with such delegated authority as the NHC Board determines in its discretion. The Executive Committee will meet in between meetings of the NHC Board with such frequency as determined by the majority vote of the Executive Committee. The members of the Executive Committee shall be appointed by and serve at the will of the NHC Board. The chairman of the Executive Committee shall be the Independent Director, who shall have the responsibilities, duties and authority as determined by the NHC Board. Each member of the Executive Committee shall have one (1) vote on all matters presented to the Executive Committee, and any action will require the affirmative vote of a majority of the Executive Committee. The Executive Committee shall not take action without all members being present at a meeting either by telephone, video conference, or in person. The NHC Board shall have the authority to override, veto, amend or modify any decision of the Executive Committee as the NHC Board determines from time to time.

Lindberg and Dinius shall be appointed as two of the three members of the initial Executive Committee.

vi. Unless the NHC Board determines otherwise, and subject to the foregoing subpart (v), the Executive Committee shall perform the following tasks:

6

1. Set the agendas for the board meetings.

2. Determine Independent Director compensation.

3. Meet at least on a monthly basis, either in person or via telephone or video conference, with the appointed Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and CRO of NHC.

4. Subject to the NHC Board's authority to take action independent of the Executive Committee, review and approve all transactions over $250,000 in advance.

5. Recommend to the NHC Board the annual operating budgets of NHC and all subsidiaries, provided, however, Lindberg, if then serving as an AAI Director, will present the budgets to the Executive Committee in the presence of the CEO, CFO and CRO.

4. **NHC Management of Subsidiaries**. NHC will be responsible for all management functions solely for NHC and its subsidiaries pursuant to management services agreements between NHC and each subsidiary as determined by the NHC Board. The management functions NHC will provide for its subsidiaries will include, without limitation, human resources, legal, operations, investment management and cash management. Companies that are not subsidiaries of NHC will not be managed by NHC and will not enter into management services agreements with NHC.

5. **Day to Day Management of NHC; Officers.** Day-to-day management of NHC shall be conducted by officers determined and directed by the NHC Board. The officers will serve at the will of the NHC Board, and may be removed and replaced at any time and from time to time by the NHC Board. All officers shall report directly to the NHC Board, and each will have such authority as is usual and customary for each such position and as otherwise may be determined by the NHC Board. The initial officers of NHC shall be:

1. Jason VandenAkker will be appointed as Chief Executive Officer.

2. Christa Miller will be appointed Chief Financial Officer and Treasurer to oversee the accounting of the various operating companies and assist with the preparation of annual budgets.

3. Peter Nordberg will be appointed Chief Legal Officer and Secretary.

6. **Indemnification of Directors and Officers**. The members of the NHC Board and NHC's officers in their capacities as directors and officers will be indemnified by NHC to the fullest extent permitted by North Carolina law. NHC will promptly procure and maintain usual and customary D&O insurance for the members of the NHC Board and NHC's officers.

7. **NHC Exclusions**. The NHC Exclusions shall not become subsidiaries of NHC in connection with the Global Restructuring, and shall remain effective as of the Effective

7

Date under sole management and control of Lindberg, and shall not be subject to restrictions on distributions, dividends, loans or management fees.

8. **Other Affiliates**. The Affiliates of Lindberg and AAI set forth on Exhibit C attached hereto (the "Other Affiliates") shall not become subsidiaries of NHC in connection with the Global Restructuring.

## ARTICLE III. GLOBAL LOAN AMENDMENTS

1. **Global Loan Amendments**. Except as provided below, all Loans, as amended by the Interim Loan Amendment, shall be assumed by and assigned to NHC as borrower and further amended to provide for, among such other things as negotiated in good faith by the Parties, the terms and conditions set forth in this Article III, Section 1 (which terms and conditions shall be binding on all parties to the Loan Agreements from and after the Effective Date until such time as the Parties agree otherwise); provided, however, that the Excluded Loans shall be subject to the Interim Loan Amendment and the terms and conditions set forth in this Article III, Section 1 but shall not be assumed by or assigned to NHC; provided, further, however, that the Agera Debt and the PBLA Loans shall be subject to the Interim Loan Amendment but shall not be subject to the terms and conditions set forth in this Article III, Section 1(i)-(ii) and also shall not be assumed by or assigned to NHC. In addition, the obligations of Eli Global, LLC set forth on Exhibit B.1 attached hereto ("Seller Notes") shall be assigned to either Lindberg or AAI prior to the Global Restructuring and shall not be assumed by or assigned to NHC. The Parties hereto hereby agree to promptly take all actions, execute all such documents, and deliver all such agreements as reasonably necessary to more fully amend the Loan Agreements on or before September 30, 2019, or such later date as the Parties might agree, such that all Loan Agreements shall thereupon, except as otherwise provided in the Interim Loan Amendment (the terms of which shall be permanent and remain unaffected by the Global Loan Amendments) or herein, reflect commercially reasonable and arm's length terms as are usual and customary for the lending transactions of a similar nature, including without limitation the following terms and conditions:

   i. (a) all Loans, except for the Preferred Equity, will be adequately collateralized, including without limitation a grant to the applicable Affiliated lender of a first-priority lien on all of the applicable borrower's/obligor's assets, unless the borrower's assets are already subject to a first-priority lien by an unaffiliated third party, in which case the Affiliated lender to such borrower/obligor shall use commercially reasonable efforts to enter into customary intercreditor agreements with the unaffiliated lender(s), and in the interim each of the Specified Affiliated Companies, acting through Lindberg as its attorney-in-fact, hereby grants to its Affiliated lender(s) a security interest in all of its goods, accounts, equipment, inventory, chattel paper, instruments, general intangibles, deposit accounts and investment property, whether now existing or hereafter acquired, to secure its repayment of the applicable Loan extended by such Affiliated lender(s); (b) all Loans will be personally guaranteed by Lindberg (subject to subpart (iii) below); (c) all Loans will include adequate

8

insurance requirements; (d) all applicable borrowers/obligors will provide regular financial reporting of at least review quality; (e) all Loans will contain agreed financial covenants, including reasonable affirmative and negative covenants; (f) all Loans shall contain agreed upon terms for permitted tax distributions required to pay amounts legitimately due and owing by the shareholder(s) of AAI for taxes related to NHC income; (g) all Loans will be subject to events of default and remedies for events of default set forth on Attachment B attached hereto (the "Default and Remedy Terms"). The Parties agree to execute any agreement, certificate, instrument, and document and do and perform, or cause to be done and performed, all such acts and things that are reasonably necessary to effectuate the restructuring and modifications contemplated herein.

ii.     All subsidiaries shall be co-borrowers and shall jointly and severally guaranty the obligations of NHC as borrower under the Loans, and shall provide collateral support as determined by NHC.

iii.    Lindberg shall personally guaranty all Loans; provided, however, such personal guaranty will become void if the NHC Board does not offer to Lindberg a reasonable opportunity to review and recommend improvements to organic EBITDA growth to the NHC Board, NHC's Executive Committee and NHC's executive management team. Reasonable opportunity to review and recommend organic EBITDA growth means (a) the opportunity to recommend in good faith to NHC management the termination of any employee except for the officers of NHC, (b) the opportunity to recommend and review in good faith budgets for subsidiaries of NHC, (c) the opportunity to recommend and review in good faith implementation of operating efficiencies such as elimination of management, consolidation of subsidiary companies, consolidation of offices, and moving positions to lower cost locations, including opening of new offices in lower cost locations, (d) the opportunity to recommend in good faith new organic growth pilot project initiatives such as sales, marketing, and digital strategies, (e) the opportunity to meet with all officers (including portfolio managers), and directors for NHC and all subsidiary companies, with prior notification and at reasonable times, and (f) usual and customary rights to receive promptly any and all reasonable requests for information regarding the operations of NHC and all NHC subsidiary companies, including all payroll and accounting data; provided, however, that the NHC Board shall have the unilateral right to terminate Lindberg's opportunity to review and recommend as described herein in the event the NHC Board reasonably determines that Lindberg (i) breached the duties of good faith and care owed by a manager of a limited liability company under North Carolina law or (ii) was convicted of a felony. The NHC Board shall thoughtfully discuss and consider in good faith any such recommendations. The NHC Board acting through its management team shall exercise reasonable efforts to implement recommendations consistent with (i) protection of the best interests of the Policyholders; (ii) the goal of debt

9

CHAR2\2152487v3///WM#39671286_8

reduction and improving cash flow; and (iii) the overall strategy and budgets approved by the NHC Board. To maximize effectiveness and efficiency of the new governance and management process, there will be a documented operating protocol reasonably determined by the NHC Board. In addition, Lindberg prior to receiving any information regarding NHC or the subsidiaries or payroll and accounting data, Lindberg shall promptly execute and deliver a usual and customary non-disclosure and confidentiality agreement in favor of NHC and the subsidiaries.

2. **Operating Plan and Cashflow Budget**: The NHC management team will prepare a "bottoms up" operating plan and cashflow budget by operating company/unit for the period of July 1, 2019 to December 31, 2021, which will be presented to the NHC Board for its consideration by August 15, 2019.

3. **Lindberg Management Service Agreement**. To align incentives on redemption of all obligations at the soonest opportunity, NHC and Lindberg will enter into a usual and customary management services agreement providing for, among other things, NHC to pay Lindberg (or Lindberg's estate in the event of his death) a success fee of one and one-half percent (1.5%) (the "Success Fee") for all net principal reduction in Senior Debt, Junior Debt, Preferred Equity, and the Agera and PBLA zero-coupon notes held by Specified Affiliate Company lenders. Payment of the Success Fee will be paid for each $25 million of net principal reduction. For the avoidance of doubt, payment of the Success Fee is not contingent on Lindberg maintaining his position on the NHC Board or any other board of directors; provided, however, if Lindberg is convicted of a felony, then no Success Fee shall be paid to Lindberg and instead any Success Fee that becomes due shall be granted to an irrevocable trust which has an independent trustee and is established exclusively for the benefit of Lindberg's children.

## ARTICLE IV. ADDITIONAL TERMS AND CONDITIONS

1. Representations and Warranties. Each of AAI, Lindberg, the Agents and the Specified Affiliated Companies hereby represent and warrant to the North Carolina Insurance Companies that (i) each of the Recitals (each of which are hereby incorporated herein by reference as if fully set forth), the Schedules, and Exhibits to this MOU is true and accurate in all respects; that (ii) Schedules 1, 2, 3, 4, 5, 6 and 7 attached hereto set forth all loan, financing, and investment arrangements of any nature by the North Carolina Insurance Companies with any party; that (iii) included on either Exhibit A or Exhibit B or Exhibit C to this MOU is every Affiliate of Lindberg or AAI; that (iv) the execution and delivery of this MOU, the performance of their obligations hereunder, and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action on the part of them, and this MOU constitutes the legal, valid, and binding obligations of each of them, enforceable against each of them in accordance with its terms; and that (v) neither the execution and delivery of this MOU, nor the consummation of the transactions contemplated hereby, will violate any law to which they are subject or any provision of their organizational documents or conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, cancel, or require any notice or consent under any contract to which any of them

10

CHAR2\2152487v3///WM#39671286_8

is a party or by which any of them is bound or to which any of their assets are subject. EMAM hereby represents and warrants that the execution and delivery of this Amendment, the performance of its obligations hereunder, and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action on the part EMAM, and this Amendment constitutes the legal, valid, and binding obligations of EMAM, enforceable against EMAM in accordance with its terms.

2. <u>Public Disclosure</u>. The Parties will use reasonable efforts to preserve the confidentiality of all matters related to this MOU. None of the Parties will, and each of them will cause their respective affiliates and representatives not to, directly or indirectly, make any public release of information or other public reference regarding the matters contemplated in this MOU, without the prior written approval of the other except to the extent compelled by applicable law (in which case the party required by law to make such release or announcement will provide, as promptly as practicable, prior notice to the other party). .

3. <u>Governing Law</u>. This MOU and all transactions, documents, and actions contemplated herein shall be governed by, and construed in accordance with, the laws of the State of North Carolina, without regard to conflicts of laws principles. In connection with any dispute arising out of or relating to this MOU, the negotiation, execution, delivery, performance or validity of this MOU, or the transactions, documents, and actions contemplated hereby, each of the Parties irrevocably and unconditionally consents to submit to the state court located in Wake County, North Carolina

4. <u>No Third-Party Beneficiary</u>. Except as expressly provided herein, this MOU is for the sole benefit of the Parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this MOU.

5. <u>Entire Agreement</u>. This MOU, along with all Exhibits, Schedules, and Attachments attached hereto, sets forth the entire understanding of the Parties with respect to the transactions contemplated hereby. Any and all previous agreements and understandings between or among the Parties regarding the subject matter hereof, whether written or oral, are superseded by this MOU. This MOU may not be amended with the written consent of all Parties.

6. <u>No Assignment</u>. Neither this MOU nor any right or obligation hereunder may assigned by any Party without the written consent of the other Parties.

7. <u>Notices</u>. All notices, requests, consents, demands and other communications given in connection with this MOU (collectively, "**Notices**" and each, a "**Notice**") must be in writing and delivered to the Parties at the addresses set forth beneath the Parties' signatures below or to such other address as may be designated by the receiving party in a Notice given in accordance with this <u>Article IV, Section 7 by certified US mail</u>, return receipt requested. Notwithstanding the foregoing, each of Lindberg, AAI, Agents and the Specified Affiliated Companies hereby irrevocably appoints Lindberg as its sole

11

representative for the purposes of receiving Notices, and all Notices to such Parties shall be delivered to Lindberg. All Notices shall be effective upon actual receipt.

8.  Severability. Any term or provision of this MOU that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the invalid or unenforceable term or provision in any other situation or in any other jurisdiction. If a final judgment of a court of competent jurisdiction declares that any term or provision hereof is invalid or unenforceable, then the Parties agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration, or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this MOU shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

9.  Counterparts. This MOU may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this MOU delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this MOU.

10. Specific Performance. The Parties agree that irreparable damage would occur if any provision of this MOU were not performed in accordance with the terms hereof, and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

[Signatures on following page]

12

IN WITNESS WHEREOF, the Parties intending to be legally bound hereby have executed this MOU as of the day and year first above written.

**GREG E. LINDBERG**, Individually

_____ (SEAL)

Address for Notice: 3406 Stagecoach Rd Durham NC 27713

**SPECIFIED AFFILIATED COMPANIES**

_____ (SEAL)

Name: Greg E. Lindberg, Attorney-In-Fact of each Specified Affiliated Company

**AGENTS**

_____ (SEAL)

Name: Greg E. Lindberg, Attorney-In-Fact of each Agent

**ACADEMY ASSOCIATION, INC.**

_____ (SEAL)

Name: Greg E. Lindberg

Title: Chairman

IN WITNESS WHEREOF, the Parties intending to be legally bound hereby have executed this MOU as of the day and year first above written.

**SOUTHLAND NATIONAL INSURANCE CORPORATION**

_____ (SEAL)
Name: Lou E. Hensley
Title: CEO / President

Address for Notice: 2327 Englert Drive
Durham, NC 27713


**BANKERS LIFE INSURANCE COMPANY**

_____ (SEAL)
Name: Lou E. Hensley
Title: CEO / President

Address for Notice: 2327 Englert Drive
Durham, NC 27713


**COLORADO BANKERS LIFE INSURANCE COMPANY**

_____ (SEAL)
Name: Lou E. Hensley
Title: CEO / President

Address for Notice: 2327 Englert Drive
Durham, NC 27713


**SOUTHLAND NATIONAL REINSURANCE CORPORATION**

_____ (SEAL)
Name: Lou E. Hensley
Title: CEO / President

Address for Notice: 2327 Englert Drive
Durham, NC 27713


[Signature Page to Memorandum of Understanding]

IN WITNESS WHEREOF, the Parties intending to be legally bound hereby have executed this MOU as of the day and year first above written.

**EDWARDS MILL ASSET MANAGEMENT, LLC**

By: _____

Name:  William N. Wofford

Title:  Member

Address for Notice:

3110 Edwards Mill Road, Suite 300

Raleigh, NC  27612

[Signature Page to Memorandum of Understanding]

<u>**Schedule 1**</u>

**Senior Debt Agreements**

[See attached.]

**MOU Schedule 1 - Senior Debt Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Academy Financial Assets LLC | 3,232,865 |
| BLIC | Academy Financial Assets LLC | 2,278,723 |
| BLIC | Augusta Asset Management Inc | 4,314,946 |
| BLIC | Baldwin Asset Management Inc | 1,072,923 |
| BLIC | BMO | 5,000,000 |
| BLIC | Capital Asset Fund I LLC | 3,364,629 |
| BLIC | Capital Asset Fund IV LLC | 4,145,226 |
| BLIC | Capital Asset Fund V LLC | 4,338,657 |
| BLIC | Gilford Asset Management Inc | 4,548,100 |
| BLIC | Hampton Asset Management Inc | 880,483 |
| BLIC | Iron City Asset Management Inc | 865,056 |
| BLIC | iTech Funding LLC | 1,050,160 |
| BLIC | Jackson Asset Management Inc | 770,361 |
| BLIC | Pierre Mendes | 6,014,000 |
| BLIC | Summerville Asset Management Inc | 1,125,155 |
| BLIC | TAC Investments LLC | 5,526,880 |
| CBL | Academy Financial Assets LLC | 22,787,229 |
| CBL | Academy Financial Assets LLC | 20,071,227 |
| CBL | Academy Financial Assets LLC | 8,695,851 |
| CBL | Alpharetta LLC | 2,280,034 |
| CBL | AR Purchasing Solutions 2 LLC | 3,044,729 |
| CBL | AR Purchasing Solutions LLC | 2,651,081 |
| CBL | AT Denmark Investments ApS - (Arcane Tinmen) | 8,725,262 |
| CBL | Augusta Asset Management Inc | 4,314,946 |
| CBL | Baldwin Asset Management Inc | 26,060,515 |
| CBL | Blue Violet | 21,706,922 |
| CBL | BMO | 62,200,000 |
| CBL | Capital Asset Fund I LLC | 63,336,059 |
| CBL | Capital Asset Fund IV LLC | 41,452,259 |
| CBL | Capital Asset Fund V LLC | 43,386,570 |
| CBL | Capital Asset Management III LLC | 30,055,675 |
| CBL | Chatsworth Asset Management Inc | 22,558,543 |
| CBL | ComplySmart LLC | 3,088,811 |
| CBL | Damascus Asset Management Inc | 18,923,312 |
| CBL | Ephesus Asset Management Inc | 25,358,720 |
| CBL | Forest Park Asset Management Inc | 17,362,684 |
| CBL | Hampton Asset Management Inc | 22,335,739 |
| CBL | HPCSP Investments LLC | 7,165,647 |
| CBL | Intralan Investments Limited | 4,245,435 |
| CBL | Iron City Asset Management Inc | 25,548,789 |
| CBL | iTech Funding LLC | 19,845,403 |
| CBL | Jackson Asset Management Inc | 22,752,035 |
| CBL | Kite Asset Management Inc | 35,210,195 |
| CBL | Lares LLC | 4,552,507 |

| | | |
|---|---|---:|
| CBL | Lily Asset Management Inc | 33,635,618 |
| CBL | Marshall Asset Management Inc | 31,511,141 |
| CBL | Medical Physics LLC | 2,973,195 |
| CBL | Medical Physics LLC | 928,430 |
| CBL | Paradise Asset Management Inc | 40,477,331 |
| CBL | PCF LLC | 3,226,527 |
| CBL | Pierre Mendes | 60,140,000 |
| CBL | Rockdale Asset Management Inc | 40,437,953 |
| CBL | Standard Financial Limited | 3,978,284 |
| CBL | Summerville Asset Management Inc | 24,543,869 |
| CBL | Tybee Island Asset Management Inc | 28,783,693 |
| NORTHSTAR | Alta Billing LLC | 1,097,542 |
| NORTHSTAR | AR Purchasing Solutions LLC | 883,694 |
| NORTHSTAR | Baldwin Asset Management Inc | 1,103,332 |
| NORTHSTAR | Barrington LLC | 2,272,126 |
| NORTHSTAR | Berlin LLC | 4,330,990 |
| NORTHSTAR | Chatsworth Asset Management Inc | 1,102,821 |
| NORTHSTAR | Conway LLC | 1,107,604 |
| NORTHSTAR | Damascus Asset Management Inc | 325,833 |
| NORTHSTAR | Ephesus Asset Management Inc | 1,102,818 |
| NORTHSTAR | Goffstown LLC | 1,915,279 |
| NORTHSTAR | Hansen Aerospace LLC | 77,120 |
| NORTHSTAR | HPCSP Investments LLC | 11,420,872 |
| NORTHSTAR | IMW EMR LLC | 2,224,523 |
| NORTHSTAR | Intralan Investments Limited | 1,106,744 |
| NORTHSTAR | iTech Funding LLC | 1,105,288 |
| NORTHSTAR | Jaffrey LLC | 2,147,128 |
| NORTHSTAR | Lares LLC | 1,105,661 |
| NORTHSTAR | LMG Holdings LLC | 2,118,125 |
| NORTHSTAR | Marval Investments Limited | 3,439,155 |
| NORTHSTAR | Medical Physics LLC | 225,708 |
| NORTHSTAR | MRX Holdings LLC/ M plus | 1,088,602 |
| NORTHSTAR | Standard Financial Limited | 1,130,107 |
| NORTHSTAR | Standard Malta Holdings Limited | 1,918,702 |
| NORTHSTAR | Summerville Asset Management Inc | 201,232 |
| NORTHSTAR | TAC Investments LLC | 1,106,777 |
| NORTHSTAR | Yarrow Three LLC | 6,569,224 |
| OMNIA | Yarrow Three LLC | 1,945,676 |
| PBLA | ASIM Holdings LLC | 152,142 |
| PBLA | Atkinson LLC | 4,133,151 |
| PBLA | Augusta Asset Management Inc | 6,800,354 |
| PBLA | Begonia Eight LLC | 9,679,519 |
| PBLA | Blue Daffodil LLC | 21,625,091 |
| PBLA | Blue Violet | 29,229,535 |
| PBLA | Capital Asset Fund I LLC | 18,261,922 |
| PBLA | Carnation Three LLC | 18,371,782 |
| PBLA | Chatsworth Asset Management Inc | 6,654,403 |

| | | |
|---|---|---|
| PBLA | Chrysanthemum Two LLC | 10,778,042 |
| PBLA | CMC Holding Company LLC | 2,240,751 |
| PBLA | Daisy Seven LLC | 15,930,817 |
| PBLA | Drummond Group LLC | 2,158,498 |
| PBLA | Epping LLC | 4,133,151 |
| PBLA | Flowery Branch LLC | 10,493,670 |
| PBLA | Forsyth LLC | 16,076,953 |
| PBLA | Fortrex LLC | 1,002,947 |
| PBLA | Geranium Two LLC | 17,887,912 |
| PBLA | Gilford Asset Management Inc | 10,612,233 |
| PBLA | Greenfield Capital LLC | 13,078,801 |
| PBLA | Hansen Aerospace LLC | 3,642,656 |
| PBLA | Hooksett LLC | 4,133,151 |
| PBLA | IMW EMR LLC | 11,152,081 |
| PBLA | Red Begonia LLC | 18,775,227 |
| PBLA | Sedwick LLC | 3,751,358 |
| PBLA | Summerville Asset Management Inc | 3,665,941 |
| PBLA | TAC Investments LLC | 4,396,382 |
| PBLA | Weare LLC | 2,066,575 |
| PBLA | Yellow Lotus | 22,151,393 |
| PBLA | Academy Financial Assets LLC | 18,243,836 |
| PBLA | BLH Capital LLC | 10,000,000 |
| PBLA | Capital Asset Management II LLC | 6,080,022 |
| PBLA | Capital Asset Management III LLC | 25,333,425 |
| PBLA | Hampton Asset Management Inc | 17,183,973 |
| PBLA | Iron City Asset Management Inc | 17,183,973 |
| PBLA | Jackson Asset Management Inc | 21,127,973 |
| PBLA | Netherlands Insurance Holdings Inc | 8,000,000 |
| PBLA | Parallel Capital Assets | 14,151,507 |
| PBLA | Standard Investment Capital Ltd | 25,000,000 |
| SNIC | Academy Financial Assets LLC | 5,696,807 |
| SNIC | Augusta Asset Management Inc | 5,177,935 |
| SNIC | Baldwin Asset Management Inc | 8,737,614 |
| SNIC | BMO | 10,000,000 |
| SNIC | Capital Asset Fund I LLC | 6,729,259 |
| SNIC | Capital Asset Fund IV LLC | 6,217,839 |
| SNIC | Capital Asset Fund V LLC | 6,507,986 |
| SNIC | Damascus Asset Management Inc | 6,952,050 |
| SNIC | Ephesus Asset Management Inc | 9,556,890 |
| SNIC | Forest Park Asset Management Inc | 7,957,897 |
| SNIC | Hampton Asset Management Inc | 7,190,615 |
| SNIC | HPCSP Investments LLC | 1,107,502 |
| SNIC | Iron City Asset Management Inc | 3,460,225 |
| SNIC | iTech Funding LLC | 7,679,295 |
| SNIC | Jackson Asset Management Inc | 3,081,444 |
| SNIC | Pierre Mendes | 9,021,000 |
| SNIC | Summerville Asset Management Inc | 8,227,695 |

| | | |
|---|---|---:|
| SNIC | TAC Investments LLC | 3,282,303 |
| VISTA/USAP | Academy Financial Assets LLC | 10,884,397 |
| VISTA/USAP | Academy Financial Assets LLC | 10,091,362 |
| VISTA/USAP | Amherst LLC | 4,546,079 |
| VISTA/USAP | Augusta Asset Management Inc | 9,445,416 |
| VISTA/USAP | Barnstead LLC | 2,020,479 |
| VISTA/USAP | Bow LLC | 4,515,349 |
| VISTA/USAP | Canaan LLC | 3,051,781 |
| VISTA/USAP | Claremont LLC | 4,487,630 |
| VISTA/USAP | Deering LLC | 4,872,488 |
| VISTA/USAP | Derry LLC | 7,891,892 |
| VISTA/USAP | Dunbarton LLC | 3,051,781 |
| VISTA/USAP | Durham LLC | 4,046,292 |
| VISTA/USAP | Effingham LLC | 4,304,546 |
| VISTA/USAP | Farmington LLC | 4,046,292 |
| VISTA/USAP | Fiasco Fine Wine LLC | 4,261,718 |
| VISTA/USAP | Gilford Asset Management Inc | 7,580,166 |
| VISTA/USAP | Goshen LLC | 5,116,800 |
| VISTA/USAP | Henniker LLC | 4,577,671 |
| VISTA/USAP | Littleton LLC | 1,489,392 |
| VISTA/USAP | Londonderry LLC | 5,116,800 |
| VISTA/USAP | Meredith LLC | 4,487,630 |
| VISTA/USAP | Merrimack LLC | 5,117,295 |
| VISTA/USAP | Nashua LLC | 3,051,781 |
| VISTA/USAP | Rindge LLC | 4,703,541 |
| VISTA/USAP | Rumney LLC | 3,242,337 |
| VISTA/USAP | Standard Financial Limited | 10,258,620 |
| VISTA/USAP | Standard Malta Holdings Limited | 10,520,304 |
| VISTA/USAP | Stoddard LLC | 4,539,381 |
| VISTA/USAP | Summerville Asset Management Inc | 3,420,020 |
| VISTA/USAP | Swanzey LLC | 2,123,863 |
| VISTA/USAP | Tybee Island Asset Management Inc | 4,996,086 |
| VISTA/USAP | Wolfeboro LLC | 4,487,630 |
| | | |
| Subtotal | | 1,701,325,388 |
| | Less | |
| CBL | Duplicates through FinCos and PPNs | (222,277,091) |
| BLIC | Duplicates through FinCos and PPNs | (17,728,395) |
| SNIC | Duplicates through FinCos and PPNs | (37,586,499) |
| PBLA | Duplicates through FinCos and PPNs | (39,434,813) |
| Northstar | Duplicates through FinCos and PPNs | (10,128,707) |
| OMNIA | Duplicates through FinCos and PPNs | (1,861,232) |
| Vista/USAP | Duplicates through FinCos and PPNs | (72,302,989) |
| | | |
| Total | | 1,300,005,663 |

<u>**Schedule 2**</u>

**Junior Debt Agreements**

[See attached.]

**MOU Schedule 2 - Junior Debt Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Academy Financial Assets LLC | 2,052,643 |
| BLIC | HPCSP Investments LLC | 600,136 |
| CBL | Academy Financial Assets LLC | 24,672,849 |
| CBL | HPCSP Investments LLC | 7,213,662 |
| NORTHSTAR | 3BL Media LLC | 2,938,071 |
| NORTHSTAR | CBV Collections Limited | 1,800,627 |
| NORTHSTAR | CMC Holding Company LLC | 2,968,406 |
| NORTHSTAR | IMW EMR LLC | 1,015,552 |
| NORTHSTAR | MRX Holdings LLC/ M plus | 388,695 |
| PBLA | ASIM Holdings LLC | 690,017 |
| PBLA | Certification for Long-Term Care LLC (CLTC) | 17,777 |
| SNIC | Academy Financial Assets LLC | 4,105,287 |
| SNIC | HPCSP Investments LLC | 1,200,273 |
| STANDARD RE | CBV Collections Limited | 963,886 |
| Total | | 50,627,880 |

## Schedule 3

## Preferred Equity Agreements

[See attached.]

**MOU Schedule 3 - Preferred Equity Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Barclays | 6,039,266 |
| BLIC | Capital Asset Fund II LLC | 3,358,610 |
| BLIC | Capital Asset Management II LLC | 1,870,357 |
| BLIC | CV Investments LLC | 1,183,512 |
| BLIC | Franklin Street | 4,993,750 |
| BLIC | Gilford Asset Management Inc | 2,213,163 |
| BLIC | Nom GB 2018 | 1,799,325 |
| CBL | Barclays | 76,706,790 |
| CBL | Capital Asset Fund II LLC | 36,956,583 |
| CBL | Capital Asset Management II LLC | 20,580,545 |
| CBL | CV Investments LLC | 13,022,822 |
| CBL | Franklin Street | 47,998,543 |
| CBL | Gilford Asset Management Inc | 1,740,435 |
| CBL | Nom GB 2018 | 2,189,610 |
| NORTHSTAR | ASL Holding LLC | 10,363,000 |
| NORTHSTAR | Daisy Seven LLC | 1,753,310 |
| NORTHSTAR | Damovo | 2,640,975 |
| NORTHSTAR | iTech Funding LLC | 13,439,503 |
| NORTHSTAR | Konnect Net Holdings LLC | 763,012 |
| NORTHSTAR | Triton Financial Limited | 22,728,850 |
| OMNIA | Flagship Holding LLC | 89,654 |
| OMNIA | MBW Interco LLC | 2,218,741 |
| PBIHL | Flagship Holding LLC | 29,361,871 |
| PBLA | BRC Holding LLC | 3,575,000 |
| PBLA | iTech Funding LLC | 5,727,000 |
| PBLA | LMG Holding LLC | 393,483 |
| PBLA | Nom GB 2018 | 11,826,260 |
| SNIC | Barclays | 10,000,000 |
| SNIC | Capital Asset Fund II LLC | 6,679,361 |
| SNIC | Capital Asset Management II LLC | 3,719,632 |
| SNIC | CV Investments LLC | 2,353,684 |
| SNIC | Franklin Street | 9,999,696 |
| SNIC | Gilford Asset Management Inc | 314,558 |
| SNIC | Nom GB 2018 | 9,368,245 |
| VISTA/AIC | Nom GB 2018 | 22,313,975 |
| Vista/USAP | Barclays | 9,453,943 |
| | | |
| Subtotal | | 399,737,065 |
| Less | | |
| CBL | Duplicates through FinCos and PPNs | (116,169,036) |
| BLIC | Duplicates through FinCos and PPNs | (12,626,835) |
| SNIC | Duplicates through FinCos and PPNs | (28,206,079) |
| PBLA | Duplicates through FinCos and PPNs | (16,217,518) |
| Vista/USAP | Duplicates through FinCos and PPNs | (4,181,196) |

| Vista/AIC | Duplicates through FinCos and PPNs | (22,313,975) |
| --- | --- | --- |
| Total | | 200,022,425 |

## Schedule 4

### Agera Debt and Preferred Equity Agreements

[See attached.]

**MOU Schedule 4 - Agera Debt and Preferred Equity Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Baldwin Asset Management Inc | AGH Parent LLC | 400,401 |
| Capital Asset Fund II LLC | AGH Parent LLC | 2,354,229 |
| Capital Asset Fund IV LLC | Agera Holdings LLC | 10,408,082 |
| Capital Asset Fund V LLC | Agera Holdings LLC | 5,300,000 |
| CBL | Agera Energy LLC | 36,060,940 |
| Derry LLC | Mckinley Ventures Group LLC | 7,891,892 |
| Effingham LLC | AGH Parent LLC | 6,027,503 |
| Iron City Asset Management Inc | AGH Parent LLC | 4,018,683 |
| Littleton LLC | Mckinley Ventures Group LLC | 1,489,392 |
| NORTHSTAR | AGH Parent LLC | 695 |
| OMNIA | AGH Parent LLC | 15,882,097 |
| OMNIA | AGH Parent LLC | 2,265,925 |
| OMNIA | AGH Parent LLC | 20,642,300 |
| Paradise Asset Management Inc | Agera Holdings LLC | 4,548,966 |
| Paradise Asset Management Inc | Red River Developments LLC | 6,039,501 |
| PBIHL | AGH Parent LLC | 9,781,992 |
| PBIHL | AGH Parent LLC | 2,600,000 |
| PBIHL | AGH Parent LLC | 657,288 |
| PBLA | AGH Parent LLC | 3,300 |
| PBLA | AGH Parent LLC | 110,460 |
| PBLA | AGH Parent LLC | 705,575 |
| Rockdale Asset Management Inc | Agera Holdings LLC | 1,900,000 |
| Rockdale Asset Management Inc | Red River Developments LLC | 9,195,384 |
| Stoddard LLC | Mckinley Ventures Group LLC | 4,539,381 |
| Summerville Asset Management Inc | AGH Parent LLC | 658,028 |
| Yarrow Three LLC | AGH Parent LLC | 9,781,992 |
| Yarrow Three LLC | Red River Developments LLC | 23,438,326 |
| Total | | 186,702,332 |

## Schedule 5

## PBLA Loan Agreements

[See attached.]

**MOU Schedule 5 - PBLA Loan Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| PBLA Main | AAPC Holdings LLC | 913,970 |
| PBLA Main | AGH Parent LLC | 7,472 |
| PBLA Main | Academy Financial Assets LLC | 35,080,571 |
| PBLA Main | GBIG Capital LLC | 718,765 |
| PBLA Main | GBIG Capital LLC | 110,599,220 |
| PBLA Main | Flagship Holding LLC | 14,000,000 |
| PBLA Main | Academy Financial Assets LLC | 56,078,258 |
| PBLA Main | Capital Asset Fund I LLC | 28,023,819 |
| PBLA Main | Capital Asset Management II LLC | 11,692,000 |
| PBLA Main | Yarrow Three LLC | 2,285,295 |
| Total | | 259,399,370 |

## Schedule 6

## Excluded Loan Agreements

[See attached.]

**MOU Schedule 6 - Excluded Loan Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Baldwin Asset Management Inc | BCC Research | 1,484,924 |
| Baldwin Asset Management Inc | UKAT Investment | 2,245,277 |
| Capital Asset Fund I LLC | BCC Holdings LLC | 381,196 |
| Capital Asset Fund I LLC | BCC Research | 209,246 |
| Capital Asset Fund I LLC | PBO Holdings Inc | 123,365 |
| Capital Asset Fund II LLC | BCC Research | 651,473 |
| Capital Asset Fund II LLC | UKAT Investment | 1,808,507 |
| Capital Asset Fund IV LLC | UKAT Investment | 322,948 |
| Capital Asset Fund V LLC | UKAT Investment | 342,821 |
| Chatsworth Asset Management Inc | Automotive Fleet Inv. Ltd | 325,814 |
| Chatsworth Asset Management Inc | UKAT Investment | 566,400 |
| Damascus Asset Management Inc | Automotive Fleet Inv. Ltd | 276,942 |
| Damascus Asset Management Inc | Proactive Software Holdings | 1,017,587 |
| Damascus Asset Management Inc | UKAT Investment | 2,232,427 |
| Ephesus Asset Management Inc | Automotive Fleet Inv. Ltd | 1,345,799 |
| Ephesus Asset Management Inc | UKAT Investment | 1,726,550 |
| Forest Park Asset Management Inc | Automotive Fleet Inv. Ltd | 2,892,516 |
| Forest Park Asset Management Inc | UKAT Investment | 802,691 |
| Gilford Asset Management Inc | BCC Research | 569,222 |
| Gilford Asset Management Inc | UKAT Investment | 1,696,418 |
| Hampton Asset Management Inc | Global Data Insights Limited | 81,392 |
| Hampton Asset Management Inc | UKAT Investment | 2,052,158 |
| Iron City Asset Management Inc | Automotive Fleet Inv. Ltd | 81,453 |
| Iron City Asset Management Inc | Proactive Software Holdings | 708,000 |
| Iron City Asset Management Inc | Proactive Software Holdings | 3,087,565 |
| Iron City Asset Management Inc | UKAT Investment | 372,632 |
| Jackson Asset Management Inc | UKAT Investment | 1,029,896 |
| Kite Asset Management Inc | BCC Research | 2,112,129 |
| Kite Asset Management Inc | UKAT Investment | 1,272,367 |
| Lily Asset Management Inc | Automotive Fleet Inv. Ltd | 3,082,574 |
| Lily Asset Management Inc | UKAT Investment | 535,540 |
| Marshall Asset Management Inc | Automotive Fleet Inv. Ltd | 1,704,194 |
| Marshall Asset Management Inc | BCC Research | 2,274,902 |
| Marshall Asset Management Inc | UKAT Investment | 54,546 |
| NORTHSTAR | Automotive Fleet Inv. Ltd | 5,813,153 |
| NORTHSTAR | UKAT Investment | 18,552,987 |
| PBLA | UKAT Investment | 1,729,032 |
| Pierre Mendes | Global Data Insights Limited | 12,294,382 |
| Pierre Mendes | UKAT Investment | 1,127,833 |
| Summerville Asset Management Inc | Automotive Fleet Inv. Ltd | 456,139 |
| Summerville Asset Management Inc | Global Data Insights Limited | 3,956,083 |
| Swanzey LLC | BCC Holdings LLC | 2,123,863 |
| Tybee Island Asset Management Inc | Automotive Fleet Inv. Ltd | 59,733 |
| Tybee Island Asset Management Inc | UKAT Investment | 536,590 |

Total                                                86,121,265

## Schedule 7

## Insurance HoldCo Debt Agreements

[See attached.]

**MOU Schedule 7 - Insurance HoldCo Debt Agreements**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Alstead LLC | GBIG Capital LLC | 4,006,239 |
| Augusta Asset Management Inc | GBIG Capital LLC | 1,250,019 |
| Augusta Asset Management Inc | GBIG Holdings Inc | 7,278,633 |
| Baldwin Asset Management Inc | GBIG Holdings Inc | 4,632,127 |
| Baldwin Asset Management Inc | PBX Bermuda Holdings Ltd | 563,731 |
| BLIC | Netherlands Insurance Holdings Inc | 804,200 |
| Bow LLC | GBIG Capital LLC | 4,515,349 |
| Canaan LLC | GBIG Holdings Inc | 3,051,781 |
| Capital Asset Fund II LLC | GBIG Capital LLC | 387,888 |
| Capital Asset Fund II LLC | PBX Bermuda Holdings Ltd | 268,443 |
| Capital Asset Fund IV LLC | Beaufort Holding S.A. | 4,205,470 |
| Capital Asset Fund IV LLC | PBX Bermuda Holdings Ltd | 429,509 |
| Capital Asset Fund IV LLC | PBX Bermuda Holdings Ltd | 10,637,608 |
| Capital Asset Fund IV LLC | PBX Holdings LLC | 440,745 |
| Capital Asset Fund V LLC | GBIG Holdings Inc | 1,525,890 |
| Capital Asset Fund V LLC | Netherlands Insurance Holdings Inc | 5,026,250 |
| Capital Asset Fund V LLC | PBX Bermuda Holdings Ltd | 536,887 |
| CBL | Beaufort Holding S.A. | 5,346,223 |
| CBL | Netherlands Insurance Holdings Inc | 12,083,106 |
| Chatsworth Asset Management Inc | GBIG Holdings Inc | 3,051,781 |
| Chrysanthemum Two LLC | PBX Holdings LLC | 10,832,753 |
| Claremont LLC | NIH Capital LLC | 4,487,630 |
| Daisy Seven LLC | Netherlands Insurance Holdings Inc | 17,826,787 |
| Damascus Asset Management Inc | GBIG Holdings Inc | 4,247,993 |
| Damascus Asset Management Inc | PBX Bermuda Holdings Ltd | 322,132 |
| Dunbarton LLC | GBIG Holdings Inc | 3,051,781 |
| Ephesus Asset Management Inc | GBIG Holdings Inc | 4,069,041 |
| Hampton Asset Management Inc | GBIG Holdings Inc | 4,308,585 |
| Hampton Asset Management Inc | Netherlands Insurance Holdings Inc | 3,585,483 |
| Hampton Asset Management Inc | PBX Holdings LLC | 2,031,695 |
| Henniker LLC | GBIG Holdings Inc | 4,577,671 |
| Iron City Asset Management Inc | GBIG Holdings Inc | 2,300,855 |
| Jackson Asset Management Inc | GBIG Capital LLC | 2,079,105 |
| Jackson Asset Management Inc | GBIG Holdings Inc | 1,802,044 |
| Kite Asset Management Inc | PBX Bermuda Holdings Ltd | 993,240 |
| Lily Asset Management Inc | Netherlands Insurance Holdings Inc | 450,171 |
| Londonderry LLC | NIH Capital LLC | 5,118,640 |
| Marshall Asset Management Inc | GBIG Capital LLC | 739,052 |
| Marshall Asset Management Inc | PBX Bermuda Holdings Ltd | 429,509 |
| Marshall Asset Management Inc | PBX Holdings LLC | 2,708,188 |
| Meredith LLC | NIH Capital LLC | 4,487,630 |
| Nashua LLC | GBIG Holdings Inc | 3,051,781 |
| New Ipswich LLC | GBIG Capital LLC | 4,515,349 |
| NORTHSTAR | Beaufort Holding S.A. | 14,252,312 |

| | | |
|---|---|---:|
| NORTHSTAR | Beaufort Holding S.A. | 2,270,310 |
| NORTHSTAR | Beaufort Holding S.A. | 5,101,016 |
| NORTHSTAR | GBIG Capital LLC | 10,900,000 |
| NORTHSTAR | GBIG Capital LLC | 20,936,657 |
| NORTHSTAR | PBX Bermuda Holdings Ltd | 8,243,544 |
| OMNIA | GBIG Capital LLC | 172,504 |
| Paradise Asset Management Inc | Netherlands Insurance Holdings Inc | 158,884 |
| Paradise Asset Management Inc | PBX Bermuda Holdings Ltd | 214,755 |
| PBIHL | GBIG Capital LLC | 958,353 |
| PBLA | GBIG Capital LLC | 10,100,000 |
| PBLA | New England Capital LLC | 11,891,244 |
| Pierre Mendes | GBIG Capital LLC | 719,930 |
| Rockdale Asset Management Inc | PBX Bermuda Holdings Ltd | 429,509 |
| SNIC | GBIG Holdings Inc | 6,103,562 |
| SNIC | Netherlands Insurance Holdings Inc | 2,010,500 |
| SNIC | PBX Bermuda Holdings Ltd | 212,978 |
| STANDARD RE | GBIG Holdings Inc | 686,651 |
| Stratham LLC | GBIG Capital LLC | 3,864,696 |
| Summerville Asset Management Inc | GBIG Capital LLC | 9,178,526 |
| Summerville Asset Management Inc | GBIG Capital LLC | 382,785 |
| Tybee Island Asset Management Inc | GBIG Capital LLC | 413,507 |
| Tybee Island Asset Management Inc | GBIG Holdings Inc | 4,623,343 |
| Wolfeboro LLC | NIH Capital LLC | 4,487,630 |
| | | |
| Total | | 276,372,192 |

# EXHIBIT A

## Specified Affiliated Companies

[See attached.]

**MOU Exhibit A - Specified Affiliated Companies**

| NHC | Legal Entity Name |
|---|---|
| Clanwilliam Headquarters Limited | Clanwilliam Headquarters Limited |
| | Clanwilliam Investments Ireland Limited |
| | Analytical Medical Insight Limited |
| | Claimsure Slainte (Ireland) Limited |
| | Clanwilliam Health (Socrates) Limited |
| | Epic Care Home Technologies Limited |
| | Epic Solutions Limited |
| | HH Spiral Holdings Limited |
| | Helix Health Group Limited |
| | Clanwilliam Health Limited |
| | Clanwilliam Ventures Limited |
| | Clanwilliam Investments (U.K.) Limited |
| | A.C.J. Computer Services Limited |
| | Bluespier International Limited |
| | Clanwilliam Health (DGL) Limited |
| | Clanwilliam Health (Rx Web) Limited |
| | Dictate IT Limited |
| | British Orient Infotel Private Limited |
| | Informatica Systems Limited |
| | Maxwell Stanley Consulting Investments Limited |
| | Maxwell Stanley Consulting Limited |
| | Obsidian Healthcare Group Limited |
| | Connect2 CME Limited |
| | Elements Communications Limited |
| | |
| | Connect 2 Medical Communications Limited |
| | PharmaSys Investments Limited |
| | PharmaSys Limited |
| | Professional Medical Management Services Limited |
| | MBS Investments PTY. LTD. |
| | Medical Business Systems PTY LTD |
| | Clanwilliam NZ Limited |
| | HealthLink Group Limited |
| | Healthlink Group Pty Limited |
| | Healthlink Research Limited |
| | Konnect Net Limited |
| | Toniq Limited |
| | Notochord Limited |
| | UK Atlanta Holdings, LLC |
| | Atlanta TopCo Limited |
| | Atlanta MidCo Limited |
| | Atlanta BidCo Limited |
| Damoco Holdco Limited | Damoco Holdco Limited |
| | Damoco Midco Limited |
| | Damoco Bidco Limited |

| | |
|---|---|
| | Damovo Belgium NV/SA |
| | Damovo Costa Rica SRL |
| | Damovo Deutschland GmbH & Co. KG |
| | Damovo Holdings Deutschland GmbH |
| | Damovo Deutschland Verwaltungs GmbH |
| | Damovo Global Services (UK) Limited |
| | Netfarmers GmbH |
| | Damovo Ireland Limited |
| | Damovo Luxembourg S.a.r.l. |
| | Damovo Österreich GmbH |
| | Damova Polska sp. Zo.o |
| | Damovo Schweiz AG |
| | Voice & Data Network AG |
| | Damovo USA, Inc. |
| CBV Collection Services Ltd | CBV Collection Services Ltd. |
| | CV Holdings, LLC |
| | CV Investments, LLC |
| | Claris Vision Holdings, LLC |
| Claris Vision LLC | Claris Vision LLC |
| | Candescent Eye Health Surgicenter LLC |
| | Candescent Eye Surgicenter LLC |
| Patriot Group Holdings LLC | Patriot Group Holdings, LLC |
| | Boston Laser-Eye & Lasik Specialists Holdings, LLC |
| | Boston Laser Holdings, LLC |
| | Boston Laser Eye Care Management, LLC |
| | Eye & LASIK Holdings, LLC |
| | Eye & LASIK Eye Care Management, LLC |
| | Eye & LASIK Optical, LLC |
| | MBW Holdco, LLC |
| | MBW Interco, LLC |
| McCarthy Burgess & Wolff Inc | McCarthy, Burgess & Wolff, Inc. |
| Prairie E&L Holdings LLC | Prairie E&L Holdings, LLC |
| | Prairie E&L Management, LLC |
| | Client Services Holdings, LLC |
| CSI Interco LLC | CSI Interco, LLC |
| Client Services Inc | Client Services, Inc. |
| | Client Services CSICR, SRL |
| | 3BL Holdings, LLC |
| 3BL Media LLC | 3BL Media, LLC |
| Dunstans Publishing Limited | Dunstans Publishing Limited |
| | The Corporate Responsibility Board, LLC |
| AT Denmark Investments ApS | AT Denmark Investments ApS |
| | GamesPro Global Group ApS |
| | Arcane Tinmen ApS |
| | AT Private Labels APS |
| | Fafnir Distribution ApS |
| | MDO Group Holdings, LLC |
| MD OFFICE LLC | MD OFFICE, LLC |

| | MNI Holdings, LLC |
| Insight Software LLC | Insight Software, LLC |
| | SP HoldCo, LLC |
| | Stratford HoldCo, LLC |
| Stratford Pharmaceuticals, LLC | Stratford Pharmaceuticals, LLC |
| | MDX, LLC |
| Medflow Holdings LLC | Medflow Holdings, LLC |
| | TAC Holdings, LLC |
| | TAC Home Mortgage, LLC |
| TAC Investments LLC | TAC Investments, LLC |
| | GoPrime Mortgage, Inc. (fka Prime Mortgage Lending, Inc.) |
| | The River Source Solution Holdings Company, LLC |
| | The River Source Solutions, LLC |
| The River Source Treatment Center- Casa Grande LLC | The River Source Treatment Center - Casa Grande LLC |
| | Addiction Recovery Helpline LLC |
| Drummond Group LLC | Drummond Group, LLC |
| | Integrity EMR Holdings, LLC |
| Integrity EMR LLC | Integrity EMR, LLC |
| Marval Investments Limited | Marval Investments Limited |
| | Marval Group Limited |
| | Marval Software Limited |
| | MRX Holdings, LLC |
| The HOEHNE Group - Software Division Inc | The HOEHNE Group - Software Division, LLC |
| | ARA Group Holdings, LLC |
| A/R Allegiance Group LLC | A/R Allegiance Group, LLC |
| | CMC Holding Company, LLC |
| | Collections Management Holdings, LLC |
| Collection Management Company | Collection Management Company |
| ASiM Holdings LLC | ASiM Holdings, LLC |
| ASiM CE LLC | ASiM CE, LLC |
| eRADIMAGING LLC | eRADIMAGING, LLC |
| | IMW Holdings, LLC |
| IMW EMR LLC | IMW EMR, LLC |
| iMedicWare Inc | iMedicWare Inc. |
| | Northeast LMG Holdings, LLC |
| LMG Holdings LLC | LMG Holdings, LLC |
| | Delmar Center Holdings, LLC |
| | Delmar Surgical Center, LLC |
| | LMG Management Holdings, LLC |
| | LMG Management, LLC |
| GHTG Investment LLC | GHTG Investment, LLC |
| | EGX Holdings, LLC |
| | Eye Care Leaders Portfolio Holdings, LLC |
| | Eye Care Leaders Holdings, LLC |
| | Alcohol & Data Holdings, LLC |
| Fiasco Fine Wine LLC | Fiasco Fine Wine, LLC |

| | |
|---|---|
| | ECL Holdings, LLC |
| ECL Group LLC | ECL Group, LLC |
| | Alta Billing Holdings, LLC |
| Alta Billing LLC | Alta Billing, LLC |
| | PI Software Holdings, LLC |
| | PI Software, LLC |
| | Global TIC CE, LLC |
| | Pharma Database, LLC |
| | Media Product Services, LLC |
| | Transcontinental Holdings, LLC |
| Trans-Continental Credit & Collection Corp | Trans-Continental Credit & Collection Corp |
| Global Health Technology Group LLC | Global Health Technology Group, LLC |
| | ASL Holdings, LLC |
| | Prolimiate Solutions Holdings, LLC |
| Prolimiate Solutions LLC | Prolimiate Solutions, LLC |
| AR Purchasing Solutions 2 LLC | AR Purchasing Solutions 2, LLC |
| GCC Interco LLC | GCC Interco, LLC |
| | AFFGLO Holding Inc. |
| | Agence de Recouvrement Global Inc. |
| Global Credit and Collections Inc | Global Credit and Collections Inc. |
| | GCC Holdings US, LLC |
| Global Credit & Collection Corporation | Global Credit & Collection Corporation |
| | Global Credit & Collection (Indiana) Corporation |
| | WWS Holdings, LLC |
| WW Staffing LLC | WW Staffing, LLC |
| | BKX Holdings, LLC |
| | Beckett Collectibles Holdings, LLC |
| Beckett Collectibles Inc | Beckett Collectibles, LLC |
| | Beckett Authentication Services, LLC |
| | Beckett Business Solutions, LLC |
| | Beckett Coin & Rock, LLc |
| | Beckett Conferences, LLC |
| | Creative Collectible Company, LLC |
| | Non Sport Update Holdings, LLC |
| | Non Sport Update, LLC |
| AR Purchasing Solutions LLC | AR Purchasing Solutions, LLC |
| | Fortrex Holdings, LLC |
| Fortrex LLC | Fortrex, LLC |
| | MedClaims Holdings, LLC |
| Med Claims International LLC | Med Claims International, LLC |
| | EG Media Holdings, LLC |
| EG Media Investments LLC | EG Media Investments, LLC |
| | PMX, LLC |
| Penn Medical Informatics Systems LLC | Penn Medical Informatics Systems, LLC |
| | IOPW Holdings, LLC |
| IO Practiceware Inc | IO Practiceware Inc. |
| | CBCS Holdings, LLC |
| CBCS Operations LLC | CBCS Operations, LLC |

| | |
|---|---|
| | Engaged Media Holdings, LLC |
| Engaged Media Inc | Engaged Media, LLC |
| | Beckett Auction Holdings, LLC |
| Beckett Auctions LLC | Beckett Auctions, LLC |
| | KeyMed Holdings, LLC |
| KeyMed LLC | KeyMed, LLC |
| | CCM Holdings, LLC |
| CCM Investments LLC | CCM Investments, LLC |
| | Inkop, LLC |
| Castle & Cooke Mortgage LLC | Castle & Cooke Mortgage LLC |
| Triton Financial Limited | Triton Financial Limited |
| | American Healthcare Alliance Limited |
| | Clanwilliam Software Limited |
| | Health Ireland Partners Limited |
| | Helix Health Software Limited |
| | Medicom Medical Computer Solutions Limited |
| | PMMS Investments Limited |
| | Socrates Healthcare Inc. |
| | Vision Care Services Holdings, LLC |
| Carolina Eye Center | Vision Care Services, LLC |
| | PCF Holdings, LLC |
| Prime Case Funding, LLC | PCF, LLC |
| Eli Global, LLC | Eli Global, LLC |
| | Autonomy Holdings, LLC |
| HME/Autonomy Investments, LLC | Autonomy Investments, LLC |
| | Home Medical Equipment Specialists, LLC |
| HPCSP Holdings, LLC | HPCSP Holdings, LLC |
| | HPCSP Investments, LLC |
| | |
| | Hemophilia Preferred Care of Memphis, Inc. |
| | Hemophilia Preferred Care of Mississippi, Inc. |
| | Hemophilia Preferred Care of Oklahoma, Inc. |
| | HPC Biologicals, Inc. |
| | HPC, LLC |
| | HPCNC, Inc. |
| | HPC Specialty Rx of Kansas, Inc. |
| | HPC Specialty Rx Reed, Inc. |
| | HPC Specialty Rx West Virginia, Inc. |
| Intralan | UK Intralan Investments, LLC |
| | Intralan Investments Limited |
| | GMK Pepper Holdings Limited |
| NEBB | NEBB Holdings, LLC |
| | ISBA-International Society of Business Appraisers, LLC |
| | NEBB Institute, LLC |

| | |
|---|---|
| | CAPLOC HOLDINGS, LLC |
| Caploc | CAPLOC, LLC |
| | CLTC Holdings, LLC |
| CLTC | Certification for Long-Term Care, LLC |
| | Dental Management Holdings, LLC |
| DMO | Dental Management Operations, LLC |
| | FIA Holdings, LLC |
| IDFA | Financial Institute Advisors, LLC |
| Financial Institute Advisors | |
| Med Attend | MedAttend, LLC |
| | Tier 1 Lending Holdings, LLC |
| Tier 1 Lending | Tier 1 Lending, LLC |
| | VRC Holdings, LLC |
| Van Ru | VR Collections, LLC |
| | Van Ru Credit Corporation |
| | Van Ru International, Inc. |
| | WesternB Holdings, LLC |
| | WesternB Investments, LLC |
| Western Bancorp | Western Bancorp |
| | GBC Holdings, LLC |
| GB Capital | GB Capital, LLC |
| | GBC Advisors, LLC |
| Sedwick, LLC | Sedwick, LLC |
| | Standard Advisory Services Limited |
| | Standard Malta Holdings Limited |
| | Standard Investment Holdings Ltd. |
| | Standard Investment Capital Ltd. |
| | Standard Life Holdings Limited |
| | Standard Life Limited |
| SASL and all other Malta cos | Standard Malta Limited |
| | Sirius Capital Holdings Limited |
| | SN Malta Services Limited |
| | Standard Holdings Limited |
| | Wilmington Holdings Limited |
| | Standard Financial Limited |
| | ELI BPO INDIA PRIVATE LIMITED |
| | GBIG Business Solutions Private Limited |
| | |
| | Eli Revenue Cycle Solutions Private Limited |
| | Eli Shared Services Private Limited |
| | DJRTC, LLC |
| | Medflow, Inc. |
| | AAM Holdings, LLC |
| | Andover Asset Management, LLC |
| | AAM Holdings I, LLC |
| | Augusta Asset Management, LLC |
| | BAM Holdings I, LLC |
| | Baldwin Asset Management, LLC |
| | CAM Holdings I, LLC |

Chatsworth Asset Management, LLC
DAM Holdings I, LLC
Damascus Asset Management, LLC
EAM Holdings I, LLC
Ephesus Asset Management, LLC
FPAM Holdings I, LLc
Forest Park Asset Management, LLC
GAM Holdings I, LLc
Gilford Asset Management, LLC
HAM Holdings I, LLC
Hampton Asset Management, LLC
ICAM Holdings I, LLC
Iron City Asset Management, LLC
JAM Holdings I, LLC
Jackson Asset Management, LLC
KITE Holdings I, LLC
Kite Asset Management, LLC
LAM Holdings I, LLC
Lilly Asset Management, LLC
MAM Holdings I, LLC
Marshall Asset Management, LLC
NAM Holdings I, Inc.
Nice Asset Management, Inc.
OAM Holdings I, Inc.
Oatman Asset Management, Inc.
PAM Holdings I, LLC
Paradise Asset Management, LLC
QAM Holdings I, Inc.
Queenstown Asset Management, Inc.
Rock Holdings I, LLC
Rockdale Asset Management, LLC
SAM Holdings I, LLC
Summerville Asset Management, LLC
TIAM Holdings I, LLC
Tybee Island Asset Management, LLC
UAM Holdings I, Inc.
Utopia Asset Management, Inc.
VAM Holdings I, Inc.
Ventura Asset Management, Inc.
WACO Holdings I, Inc.
Waco Asset Management, Inc.
ZAM Holdings I, Inc.
Zion Asset Management, Inc.
iTech Funding, LLC
Capital Assets Management II, LLC
Capital Assets Management III, LLC
Parallel Capital Assets, LLC
CAF Holdings, LLC
Capital Assets Fund I, LLC

CAF II Holdings, LLC
Capital Assets Fund II, LLC
CAF III Holdings, LLC
Capital Assets Fund III, LLC
CAF IV Holdings, LLC
Capital Assets Fund IV, LLC
CAF V Holdings, LLC
Capital Assets Fund V, LLC
NHA Holdings, LLC
New Hill Asset Management, LLC
Secured Loan-Backed Funding I, LLC
Secured Loan-Backed Funding II, LLC
Secured Loan-Backed Funding III, LLC
Secured Loan-Backed Funding IV, LLC
Secured Loan-Backed Funding V, LLC
Secured Loan-Backed Funding VI, LLC
Secured Loan-Backed Funding VII, LLC
Secured Loan-Backed Funding VIII, LLC
Secured Loan-Backed Funding IX, LLC
Secured Loan-Backed Funding X, LLC
Secured Loan-Backed Funding XI, LLC
Secured Loan-Backed Funding XII, LLC
Secured Loan-Backed Funding XIII, LLC
Secured Loan-Backed Funding XIV, LLC
Secured Loan-Backed Funding XV, LLC
Secured Loan-Backed Funding XVI, LLC
Secured Loan-Backed Funding XVII, LLC
Alstead, LLC
Amherst, LLC
Atkinson, LLC
Barnstead, LLC
Barrington, LLC
Berlin, LLC
Bow, LLC
Canaan, LLC
Claremont, LLC
Conway, LLC
Deering, LLC
Derry, LLC
Dunbarton, LLC
Durham, LLC
Effingham, LLC
Epping, LLC
Farmington, LLC
Franconia, LLC
Gilford, LLC
Goffstown, LLC
Goshen, LLC
Hampstead, LLC

SPVs

Henniker, LLC
Hooksett, LLC
Hopkinton, LLC
Jaffrey, LLC
Laconia, LLC
Littleton, LLC
Londonderry, LLC
Loudon, LLC
Madbury, LLC
Meredith, LLC
Merrimack, LLC
Nashua, LLC
New Ipswich, LLC
Plaistow, LLC
Raymond, LLC
Rindge, LLC
Rumney, LLC
Sandown, LLC
Somersworth, LLC
Stoddard, LLC
Stratham, LLC
Swanzey, LLC
Weare, LLC
Wolfeboro, LLC
Anaconda, LLC
Athens, LLC
Augusta, LLC
Berkeley Lake, LLC
Cobra, LLC
Columbus, LLC
Macon, LLC
Shirt, LLC
Tornado, LLC
Valdosta, LLC
Ahoskie, LLC
Asheboro, LLC
Casar, LLC
Clayton, LLC
Cowper, LLC
Creston, LLC
Faison, LLC
Fayetteville, LLC
Greenville, LLC
Holt, LLC
Iredell, LLC
Jacksonville, LLC
Kenly, LLC
Louisburg, LLC
Morresville, LLC

Norlina, LLC
Whitaker Mill, LLC
Williamson, LLC
AAH Loan-Backed Funding, LLC
BCC Junior Loan-Backed Funding, LLC
BCC Senior Loan-Backed Funding, LLC
BKT Loan-Backed Funding, LLC
CLTC Junior Loan-Backed Funding, LLC
CLTC Senior Loan-Backed Funding, LLC
CMC Loan-Backed Funding, LLC
SFM Loan-Backed Funding, LLC
TCC Junior Loan-Backed Funding, LLC
TCC Senior Loan-Backed Funding, LLC
TCI Loan-Backed Funding, LLC
ELP Holdings, LLC
SCMA, LLC
Career Health, LLC
Healthcare Jobs, LLC
Compliance Services, LLC
DGX Holdings, LLC
WC Holdings, LLC
Web Courseworks, LLC
Elevate Portfolio, LLC
Enterprises Services, LLC
Entrust Global Group, LLC
HRWeb Holdings, LLC
HRWeb Software, LLC
Southern Hobby Holdings, LLC
Southern Hobby Distribution, LLC
ARREVIO, LLC
Atlas Global Holdings, LLC
Atlas Global, LLC
FTGU Holdings, LLC
FTGU Medical Billing, LLC
Century Vision Global, LLC
Global Vision Growth, LLC
NWES Holdings, LLC
NW Eye Surgeons Holdings, LLC
NW Eye Care Management, LLC
R&A Eye Holdings, LLC
Reynolds & Anliker Holdings, LLC
R&A Eye Management, LLC
Pelton Holdings, LLC
Pelton Group, LLC
RHS Holdings, LLC
Revenue Health Solutions, LLC
Eli Research India Private Limited
Eli Knowledge Services (India) Private
Limited

Nationwide Recovery Holdings, LLC
Nationwide Recovery Systems, Ltd.
Harvard Collect, LLC
Harvard Collection Services, LLC
4839 N. Elston LLC
The American Council, Inc.
CWNP, LLC
The American Council on English Language Program Ce
Canta Health, LLC
Lares Holdings, LLC
Lares, LLC
ComplySmart Holdings, LLC
ComplySmart, LLC
Academy Financial Holdings, LLC
Academy Financial Assets, LLC
Certitrek Group, LLC
Flagship Holdings, LLC
GC Holdings, LLC
Greenfield Capital, LLC
NEC Holdings, LLC
New England Capital, LLC
Eli Research, LLC
Finanzen Holdings, LLC
Mercato Leadmanagement Investments Holdings GmbH
BlackFin Finanzen SAS
finanzen.de Vermittlungsgesellscaft fÜr Verbrauchervertr
2B4A Sàrl
2media GmbH
Demand Side Media, Ltd.
Finanzen.de Maklerservice GmbH
Finanzen France SAS
K2B Sàrl
toconnect GmbH
E-finity Leads Ltd.
AGT Media Ltd.
Medical Physics, LLC
NPC National Physics Consultants, LLC
OMPC, LLC
RPI Radiological Physics, LLC
ZapIT Medical Physics, LLC

| Trust Name | Company(ies) in Trust |
|---|---|
| Prime Trust | TAC Investments, LLC |

# EXHIBIT B

## NHC Exclusions

[See attached.]

**MOU Exhibit B - NHC Exclusions**

**Entity Name**
Shop Loc Holdings, LLC
Shopper Local, LLC
Market Tech Media Corporation
TV Fanfare Canada, LTD.
Global Operations Services, LLC
Independent Contractor Services, LLC
ProActive Software Holdings, LLC
P A S Holding Limited
ProActive Software Limited
UKAT Holdings, LLC
UKAT InterCo Limited
UKAT Investments Limited
UK Addiction Treatment Group Limited
UK Addiction Treatment Limited
Blue Skies Addiction Centre Ltd.
Liberty House Clinic Limited
Treatment Direct Limited
Sanctuary Banbury Limited
Care Referrals Limited
Recovery Web Solutions Limited
The Recovery House Limited
Targeted Metrics, LLC
PBO Holdings, Inc.
Online Reputations Manager, LLC
Patent Review Score, Inc.
Global A&D Holdings, LLC
Global Data Insights Limited
Futuresource Holdings Limited
Futuresource Consulting Limited
ProEdTech, LLC
AudioEducator, LLC
AudioSolutionz, LLC
Health Audio, LLC
BCC Holdings, LLC
BCC Research, LLC
Fleet Assist Interco Limited
Automotive Fleet Investments Limited
Fleet Assist Limited
WPP Capital, LLC
Practice Builders, LLC

# EXHIBIT B.1

## Seller Notes

[See attached.]

**Exhibit B.1**

| | Seller Notes/EEAs to be assigned |
|---|---|
| UKAT | 44,072,263 |
| Fleet Assist | 1,300,000 |
| Future Source | 1,393,000 |
| **TOTALS:** | **46,765,263** |

| Future Source Entities | UKAT Entities | Fleet Assist Entities |
|---|---|---|
| Futuresource Holdings Limited | UKAT Holdings, LLC | Fleet Assist Interco Limited |
| Futuresource Consulting Limited | UKAT InterCo Limited | Automotive Fleet Investments Limited |
| | UKAT Investments Limited | Fleet Assist Limited |
| | UK Addiction Treatment Group Limited | |
| | UK Addiction Treatment Limited | |

## EXHIBIT C

## Other Affiliates

[See attached.]

Case 3:23-cr-00048-MOC-DCK    Document 177    Filed 06/09/26    Page 53 of 154

**MOU Exhibit C - Other Affiliates**
**Entity Name**
Academy Association, Inc.
AAPC Holdings, LLC
American Academy Holdings, LLC
American Academy of Professional Coders Chapter Association
Audit Services Group, LLC
Healthicity, LLC
AAPC Investments, LLC
Alpine Capital, LLC*
ASL New Holdings, LLC
American Academy Holdings Ltd.
Compliance Services Ltd.
Eli Global Philippines Resources Operations Center, Inc.
NSX Wilmington Limited
Eli Health Solutions Pvt. Ltd.
Autonomy Healthcare Management, LLC
Cato Holdings, Inc.
CBS Group Holdings, LLC
CBS Group Services, LLC
CRI Holdings, LLC
Carolina Longevity Institute, LLC
Research Triangle Clinical Development
DSE Holdings, LLC
Elevate Healthcare, Inc.
Eli Germany Holdings, LLC
Eli Deutschland GmbH
ENX, LLC
ERX Holdings, LLC
Coding Institute, LLC
FMX Holdings, LLC
F1rstmark, LLC
GB UK Investments, LLC
Foxford Investments Limited*
Global Mortgage Capital Holdings, LLC
GP Management, LLC
Inhealthcare, LLC
Miracard, LLC
Phenna Holdings, LLC
HA Windup 1, LLC
P Windup2 Limited
P Windup1 Limited
PPH Holdings, LLC
SAF Holdings I, LLC
Standard Assets Fund I, LLC
SAF Holdings II, LLC
Standard Assets Fund II, LLC
SAF Holdings III, LLC
Standard Assets Fund III, LLC
SAF Holdings IV, LLC
Standard Assets Fund IV, LLC
SIC US Holdings, LLC

Talent Acquisition Innovation Holdings, LLC
Talent Acquisition Innovation, LLC
UK Asset Fund Holdings, LLC
Wsam Holdings Limited
William Street Asset Management Limited
VR Enterprises, LLC
Advantage Capital Investments, LLC
AFP, LLC
America Free Press, LLC
Resolute Free Press, LLC
Apache Junction, LLC
APAC Holdco, LLC
Eli Global Asia Pacific Limited
Apex International, LLC
Apio Local, LLC
ARREVIO Holdings, LLC
Ascendent D4K Holdings, LLC
Ascendent Dental Management D4K, LLC
Autonomy Holdings, LLC
Benson, LLC
Bisbee, LLC
BMX Holdings, LLC
BMX Bermuda Holdings, Ltd.
Northstar Financial Services (Bermuda) Ltd.
Diversified Terra Holdings, Ltd.
NSES B, Inc.
NSES C, Inc.
NSES D, Inc.
NSES E, Inc.
NSES F, Inc.
NSES G, Inc.
NSES H, Inc.
Prospect Ridge Energy, LLC
NSES 13, LLC
GSRE 29, LLC
NS EBR, LLP
NSES Funding 10, LLC
DTH Holdings Ltd.
GSRE 27, LLC
Northstar Financial Services (Bermuda) Ltd.
PB Investment Holdings Ltd.
BHLN-Agera Corp.
PB Investment Company Ltd.
BRC Capital, LLC
BRC Holdings, Inc.
BRCB (Barbados) Capital, Ltd.
BRCB (Barbados) Holdings, Ltd.
Bankers Reinsurance Company Ltd.
American Yacht Charters, LLC
Bullhead City, LLC
Camp Verde, LLC
Capital Lending Partners, Inc.

Cave Creek, LLC
CEIC Capital, LLC
CEIC Holdings, Inc.
CFH Holdings, LLC
Assistive Partner Investments Limited
CVE Holdings, LLC
CV Equipment Leasing, LLC
Dunhill Holdings, LLC
Englert Holdings, LLC
Horizon Holdings I, LLC
Unit 77, LLC
East Hill Holdings, LLC
Eiffel Holdings, LLC
ELT Groupe
Eli Denmark Investments, LLC
Eli Equity, LLC
Beckett Media, LLC
Eli New Media, LLC
Eli Ventures, LLC
ENG Holdings, LLC
Engagement Group, LLC
First International Financial, Inc.
Farrington Mill Holdings, LLC
FS Windup, LLC
Fortrex Technologies Holdings, LLC
GBIG Capital, LLC
GBIG Holdings, Inc.
Bankers Life Insurance Company
Colorado Bankers Life Insurance Company
Global Bankers Insurance Group, LLC
Northstar Financial Insurance Services, LLC
Pavonia Life Insurance Company of Michigan
Preferred Financial Corporation, LLC
SN Group Development, LLC
Sirius Capital Holdings Limited
SN Malta Services Limited
SNH Acquisition, LLC
Southland National Insurance Corporation
American Funeral and Cremation Plans, LLC
Southland National Reinsurance Corporation
Capstone Preneed Funeral and Burial Association
GBI Group, LLC
GBVF Holdings, LLC
GB Venture Fund, LLC
GCC Holdings, LLC
Global ETC, LLC
Global Mortgage Capital, Inc.
GTIC Holdings, LLC
GTIC&A, LLC
Healthlink Holdings, LLC
HealthLink Investments, LLC
HealthLink Group Investments Limited

Health Through Information
Konnect Net Holdings, LLC
Konnect Net Investments Limited
Master Procure, LLC
Bidworld Private Limited
McKinley Ventures Group, LLC
Metronome Holdings, LLC
Metronome Financial, LLC
NEI Holdings, LLC
NEI Investments, LLC
NEI Management, LLC
NIH Capital, LLC
Netherlands Insurance Holdings, Inc.
Trier Holding B.V.
Conservatrix Leven, NV
NLC Holdings, LLC
NLC Investments, LLC
Ocean Ophthalmology Management Holdings, LLC
Ocean Ophthalmology Management, LLC
PBX Holdings, LLC
PBX Bermuda Holdings, Ltd.
Omnia Ltd.
BOLN-Agera Corp.
Private Bankers Life and Annuity Co., Ltd.
PBLA ULICO
BHLN-286 Spring Corp.
BOLN-286 Spring Corp.
Erie Properties, LLC
Limitless Research Inc.
Morning Mountain Holdings, LLC
Paradigm Park Holdings, LLC
286 Spring PH Holdings Corp.
TUX Holdings, LLC
Pharma Holdings, LLC
Red River Developments, LLC
BBLN-Agera Corp.
Skyworld Corporation
SNA Funding, LLC
Southeast Insurance Capital, LLC
Northeast Insurance Holdings, Inc.
Beaufort Holding S.A.
Bankers Insurance Holdings S.A.
GBIG Portugal, S.A.
GB Life Luxembourg S.A.
SSH Capital, LLC
South Hill Holdings, LLC
Standard Insurance Holdings, Inc.
Standard LC Capital, LLC
Standard LC Holdings, Inc.
Standard Pacific Investments PTY LTD
SW Holdings, LLC
Hybrid Treatment Solutions, LLC

Talaria Global Health, LLC
UK Automotive Holdings, LLC
UK Fintech Holdings, LLC
UK Informatica Investments, LLC
Informatica Investments Limited
UK Investment Holdings, LLC
UK Marval Investments, LLC
Understand.com Holding, LLC
Understand.com, LLC
United Staffing Solutions, LLC
Vision Care Alliance, LLC
WPSC HoldCo, LLC
WPSC Investments, LLC
Yaras Group, LLC
AGH Parent LLC
Agera Holdings, LLC
Acquired Development, LLC
AGX Holdings, LLC

*Loan servicing transferred to GBIG


**For avoidance of doubt, and notwithstanding anything herein
to the contrary,
the following assets and related liabilities shall be retained by
AAI or GEL:**

All assets and all liabilities related to any watercraft (M/Y Double Down)
or aircraft (N280GL and N84GV)
One-time cash in from the STD RE wind-up net of all debt
One-time cash in from the sale of the rights to the Portugal contract
All assets and all liabilities related to loans to or from shareholder

## EXHIBIT D

### SPVs

Secured Loan-Backed Funding I, LLC
Secured Loan-Backed Funding II, LLC
Secured Loan-Backed Funding III, LLC
Secured Loan-Backed Funding IV, LLC
Secured Loan-Backed Funding V, LLC
Secured Loan-Backed Funding VI, LLC
Secured Loan-Backed Funding VII, LLC
Secured Loan-Backed Funding VIII, LLC
Secured Loan-Backed Funding IX, LLC
Secured Loan-Backed Funding X, LLC
Secured Loan-Backed Funding XI, LLC
Secured Loan-Backed Funding XII, LLC
Secured Loan-Backed Funding XIII, LLC
Secured Loan-Backed Funding XIV, LLC
Secured Loan-Backed Funding XV, LLC
Secured Loan-Backed Funding XVI, LLC
Secured Loan-Backed Funding XVII, LLC
Alstead, LLC
Amherst, LLC
Atkinson, LLC
Barnstead, LLC
Barrington, LLC
Berlin, LLC
Bow, LLC
Canaan, LLC
Claremont, LLC
Conway, LLC
Deering, LLC
Derry, LLC
Dunbarton, LLC
Durham, LLC
Effingham, LLC

Epping, LLC

Farmington, LLC

Franconia, LLC

Gilford, LLC

Goffstown, LLC

Goshen, LLC

Hampstead, LLC

Henniker, LLC

Hooksett, LLC

Hopkinton, LLC

Jaffrey, LLC

Laconia, LLC

Littleton, LLC

Londonderry, LLC

Loudon, LLC

Madbury, LLC

Meredith, LLC

Merrimack, LLC

Nashua, LLC

New Ipswich, LLC

Plaistow, LLC

Raymond, LLC

Rindge, LLC

Rumney, LLC

Sandown, LLC

Somersworth, LLC

Stoddard, LLC

Stratham, LLC

Swanzey, LLC

Weare, LLC

Wolfeboro, LLC

Anaconda, LLC

Athens, LLC

Augusta, LLC

Berkeley Lake, LLC

Cobra, LLC

Columbus, LLC

Macon, LLC

Shirt, LLC

Tornado, LLC

Valdosta, LLC

Ahoskie, LLC

Asheboro, LLC

Casar, LLC

Clayton, LLC

Cowper, LLC

Creston, LLC

Faison, LLC

Fayetteville, LLC

Greenville, LLC

Holt, LLC

Iredell, LLC

Jacksonville, LLC

Kenly, LLC

Louisburg, LLC

Morresville, LLC

Norlina, LLC

Whitaker Mill, LLC

Williamson, LLC

AAH Loan-Backed Funding, LLC

BCC Junior Loan-Backed Funding, LLC

BCC Senior Loan-Backed Funding, LLC

BKT Loan-Backed Funding, LLC

CLTC Junior Loan-Backed Funding, LLC

CLTC Senior Loan-Backed Funding, LLC

CMC Loan-Backed Funding, LLC

SFM Loan-Backed Funding, LLC

TCC Junior Loan-Backed Funding, LLC

TCC Senior Loan-Backed Funding, LLC

TCI Loan-Backed Funding, LLC

# ATTACHMENT A

## Interim Loan Amendment

[See attached.]

## INTERIM AMENDMENT TO LOAN AGREEMENTS

This INTERIM AMENDMENT TO LOAN AGREEMENTS (this "**Amendment**") is made and entered into as of June 27, 2019 (the "**Execution Date**"), by and among Colorado Bankers Life Insurance Company, a North Carolina insurance corporation ("**CBL**"), Southland National Insurance Corporation, a North Carolina insurance corporation ("**SNIC**"), New England Capital, LLC, a North Carolina limited liability company ("**NEC**"), Private Bankers Life and Annuity Co., Ltd., a Bermuda limited company ("**PBLA**", and together with CBL, SNIC, and NEC, each, an "**Agent**," and, collectively, the "**Agents**"), each of the borrowers set forth on the exhibits hereto (each, a "**Borrower**," and, collectively, the "**Borrowers**"), each of the holders of preferred equity set forth on the exhibits hereto (each, a "**Preferred Equity Owner**," and, collectively, the "**Preferred Equity Owners**"), each of the issuers of preferred equity set forth on the exhibits hereto (each, a "**Preferred Equity Issuer**," and, collectively, the "**Preferred Equity Issuers**"), AGH Parent, LLC, a Delaware limited liability company ("**AGH**"), Academy Association, Inc., a North Carolina corporation ("**AAI**"), Edwards Mill Asset Management, LLC, as holder of certain Class A common units of the special purpose vehicles ("**SPVs**") set forth on **Exhibit H** attached hereto ("**EMAM**") and Greg E. Lindberg, individually and as attorney-in-fact for each of the Borrowers, the Preferred Equity Owners and the Preferred Equity Issuers to the extent they are not included in the Affiliated Trusts, ("**Lindberg**", and together with the Agents, Borrowers, Preferred Equity Owners, Preferred Equity Issuers, AGH, AAI, and EMAM collectively, the "**Parties**" and, each, a "**Party**").

## RECITALS

WHEREAS, each of the senior term loan agreements set forth on **Exhibit A** attached hereto and incorporated herein by reference (the "**Senior Loans**") and each of the junior term loan agreements set forth on **Exhibit B** attached hereto and incorporated herein by reference (the "**Junior Loans**") provides for one of the Agents to serve as the agent of such loan; and

WHEREAS, each of the Agents has the unilateral authority to act for and bind the lenders of the Senior Loans and Junior Loans (the "**Lenders**") with respect to the Senior Loans and/or Junior Loans on which it serves as the agent; and

WHEREAS, as attorney-in-fact of each of the Borrowers, Preferred Equity Owners and Preferred Equity Issuers, and Lindberg are duly authorized to act on behalf of the Borrowers, Preferred Equity Owners and Preferred Equity Issuers and to bind the Borrowers, Preferred Equity Owners and Preferred Equity Issuers to the terms and conditions set forth in this Amendment and any other agreement, instrument, document, or consent related to this Amendment; and

WHEREAS, certain of the Lenders, as set forth on **Exhibit A**, have provided the Senior Loans to certain of the Borrowers, as set forth on **Exhibit A**, which Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit A**; and

WHEREAS, certain of the Lenders, as set forth on **Exhibit B**, have provided the Junior Loans to certain of the Borrowers, as set forth on **Exhibit B**, which Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit B**; and

WHEREAS, the Preferred Equity Owners set forth on **Exhibit C** have provided preferred equity financing to the Preferred Equity Issuers, which Preferred Equity Issuers are each controlled by AAI and Lindberg, in the amounts set forth on **Exhibit C** (the "**Preferred Equity**"), pursuant to the governing documents of the Preferred Equity Issuers (the "**Governing Documents**"); and

WHEREAS, certain lenders, as set forth on **Exhibit D**, have provided certain loans and preferred equity financing to AGH and its subsidiaries (the "**Agera Financing Documents**"), in the principal amounts set forth on **Exhibit D**, and one of the Agents serves as the agent of each such loan agreement or preferred equity financing arrangement and has the unilateral authority to act for and bind the lenders and preferred equity owners of the Agera Financing Documents; and

WHEREAS, PBLA has provided the loans set forth on **Exhibit E** (the "**PBLA Loans**") to certain of the Borrowers, as set forth on **Exhibit E**, which Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit E**; and

WHEREAS, certain lenders and preferred equity owners set forth on **Exhibit F** have provided certain loans and preferred equity financing (the "**Loans Excluded From NHC**") to certain borrowers (the "**NHC Excluded Borrowers**"), as set forth on **Exhibit F**, which NHC Excluded Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit F**, and one of the Agents serves as the agent of each such loan agreement or preferred equity financing arrangement and has the unilateral authority to act for and bind the lenders and preferred equity owners of the Loans Excluded From NHC.

WHEREAS, certain lenders set forth on **Exhibit G** have provided certain loans and preferred equity financing (the "**Insurance Hold Co-Related Debt**") to certain affiliated insurance holding companies, which insurance holding companies are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit G** and one of the Agents serves as the agent of each such loan agreement or preferred equity financing arrangement and has the unilateral authority to act for and bind the lenders and preferred equity owners of the Insurance Hold Co-Related Debt.

WHEREAS, EMAM, in its capacity as the Class A Member of SPVs, consents on behalf of such SPVs (a) to the herein described amendments to the Loans, to the extent such SPVs are parties thereto and (b) to promptly execute and deliver any and all such further instruments and documents and take such further action as the Agents may reasonably request to obtain the full benefits of this Amendment.

WHEREAS, the Parties desire to amend the Senior Loans, the Junior Loans, the Preferred Equity, the Agera Financing Documents, Loans Excluded From NHC, Insurance Hold Co-Related Debt, and the PBLA Loans (collectively, the "**Loans**") on the terms described herein, effective immediately upon the effective date hereof (the "**Amendment Effective Date**"); and

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which hereby are acknowledged, the Parties hereto agree as follows:

AGREEMENT

1.  Amendments to Senior Loans. Each of the Senior Loans is hereby amended by replacing the definition of "Base Interest Rate," or any corresponding term set forth therein describing the interest rate payable thereunder in the ordinary course, with "five percent (5%) per annum." In addition, notwithstanding anything in the Senior Loans to the contrary: (a) for the first six (6) month period following the Amendment Effective Date (the "**Senior Loan Deferral Period**"), each of the Senior Loans shall accrue interest at the Base Interest Rate as set forth herein, but the accrued interest on each Senior Loan shall not be payable and instead shall be added to the principal of the applicable Senior Loan upon the end of the Senior Loan Deferral Period; (b) after the Senior Loan Deferral Period, such capitalized interest shall bear interest along with the principal amount of such loan at the Base Interest Rate; (c) beginning February 1, 2020, interest on the Senior Loans shall be payable quarterly in cash at the Base Interest Rate as set forth

herein; (d) from and after the Amendment Effective Date, any prepayment penalties in the Senior Loans shall equal zero percent (0%); and (e) the maturity date of each Senior Loan shall be December 31, 2029.

2.    Amendments to Junior Loans. Each of the Junior Loans is hereby amended by replacing the definition of "Base Interest Rate," or any corresponding term set forth therein describing the interest rate payable thereunder in the ordinary course, with "five and one half percent (5.5%) per annum." In addition, notwithstanding anything in the Junior Loans to the contrary: (a) for the first twelve (12) month period following the Amendment Effective Date (the "**Junior Loan Deferral Period**"), each of the Junior Loans shall accrue interest at the Base Interest Rate as set forth herein, but the accrued interest on each Junior Loan shall not be payable and instead shall be added to the principal of the applicable Junior Loan upon the end of the Junior Loan Deferral Period; (b) after the Junior Loan Deferral Period, such capitalized interest shall bear interest along with the principal amount of such loan at the Base Interest Rate as set forth herein; (c) beginning February 1, 2021, such interest on the Junior Loans shall be payable quarterly in cash at the Base Interest Rate as set forth herein; (d) from and after the Amendment Effective Date, any prepayment penalties in the Junior Loans shall equal zero percent (0%); and (e) the maturity date of each Junior Loan shall be June 30, 2029.

3.    Amendments to Preferred Equity. Each of the Governing Documents is hereby amended as follows: (a) the definition of "Preferred Return," or any corresponding term set forth therein describing the accrued return with respect to preferred units of the applicable Preferred Equity Issuer, shall be modified to mean six percent (6%) per annum (the "**Preferred Return**"), calculated with respect to the aggregate capital contribution with respect to the applicable preferred units as set forth on **Exhibit C** attached hereto; (b) provide that the Preferred Return shall accrue but not compound on an annual basis, and shall be payable as, when, and if declared by the managers of the applicable Preferred Equity Issuer; and (c) require that such preferred units shall be mandatorily redeemed by the applicable Preferred Equity Issuer on the ten (10)-year anniversary of the Amendment Effective Date, and may be redeemed by the applicable Preferred Equity Issuer at any time prior to such date without penalty, in each case, for the sum of the capital contribution with respect to such preferred units plus the then-accrued Preferred Return, but shall not be required to be redeemed prior to such date. For avoidance of doubt, the Preferred Equity shall at all times be unsecured.

4.    Amendments to Agera Loans. Each of the Agera Financing Documents is hereby amended by providing that: (a) no interest shall accrue or be paid or payable from and after the Amendment Effective Date; (b) there shall be no prepayment fee applicable to any such loan; and (c) the maturity date shall be June 30th, 2029. For avoidance of doubt, the Agera Loans shall not contain any financial performance covenants.

5.    Amendments to PBLA Loans. Each of the PBLA Loans is hereby amended by providing that: (a) no interest shall accrue or be paid or payable from and after the Amendment Effective Date; (b) there shall be no prepayment fee applicable to any such loan; and (c) the maturity date shall be June 30th, 2029. For avoidance of doubt, the PBLA Loans shall not contain any financial performance covenants.

6.    Amendments to Loans Excluded From NHC. Each of the Loans Excluded from NHC is hereby amended by replacing the definition of "Base Interest Rate," or "Preferred Return" or any corresponding term set forth therein describing the interest rate payable or dividend yield thereunder in the ordinary course, with "five percent (5%) per annum." In addition, notwithstanding anything in the Loans Excluded From NHC to the contrary: (a) for the first forty-eight (48) month period following the Amendment Effective Date (the "**Loans Excluded From NHC Deferral Period**"), each of the Loans Excluded From NHC shall accrue interest at the Base Interest Rate or Preferred Return as set forth herein, but the accrued interest on each Loans Excluded From NHC shall not be payable and instead shall be added to the principal of the applicable Loans Excluded From NHC upon the end of the Loans Excluded From

NHC Deferral Period; (b) after the Loans Excluded From NHC Deferral Period, such capitalized interest shall bear interest along with the principal amount of such loan at the Base Interest Rate or Preferred Return; (c) beginning July 1, 2023, interest on the Loans Excluded From NHC shall be payable quarterly in cash at the Base Interest Rate or Preferred Return as set forth herein; (d) from and after the Amendment Effective Date, any prepayment penalties in the Loans Excluded From NHC shall equal zero percent (0%); and (e) the maturity date shall be June 30, 2024. The sole financial covenant for the Loans Excluded From NHC shall be as follows: Net Senior Indebtedness to EBITDA of no greater than 9.50 to 1.00. Furthermore, <u>solely</u> as it relates to the Loans Excluded From NHC, each of the Agents and the Preferred Equity owners shall covenant and agree that, in the event any of the NHC Excluded Borrowers, or any successor thereof, is able to obtain senior secured financing from a third party, such parties agree to enter into any commercially reasonable subordination provisions, so long as the proceeds of such facility are used exclusively to: (a) pay third-party fees incurred in connection with such financing and pay any third party seller notes, earnouts, and Equity Equivalence Agreement payments due; (b) prepay the Senior Debt; (c) prepay the Junior Debt; and (d) redeem the Preferred Equity, in the order set forth herein, and, in each case, to the extent of the amount of such facility.

7. <u>Insurance Hold Co-Related Debt</u>. Each of the Insurance Hold Co-Related Debt instruments is hereby amended by providing that: (a) no interest shall accrue or be paid or payable from and after the Amendment Effective Date; (b) there shall be no prepayment fee applicable to any such loan; and (c) the maturity date shall be June 30th, 2026.

8. <u>Further Amendment to Loans</u>. Each of the Loans is hereby amended by providing that it shall be an "Event of Default" if the Borrowers, except for the NHC Excluded Borrowers, fail to satisfy the Curtailment Requirements (as hereinafter defined) or fail to pay the balance in full when due at the end of the term.

9. <u>Curtailment Requirements</u>. Notwithstanding anything in any of the Loans or this Amendment to the contrary, the Borrowers (other than the NHC Excluded Borrowers) shall be jointly and severally responsible for making a first curtailment of the aggregate principal balance outstanding on all Senior Loans in the amount of Four Hundred Million and No/100 Dollars ($400,000,000.00) on or before December 31, 2023, to the extent such amounts are not already paid, and for making the second curtailment of the aggregate principal balance outstanding on all Senior Loans in the amount of Six Hundred Million and No/100 Dollars ($600,000,000.00) on or before December 31, 2027, to the extent such amounts are not already paid.

10. <u>Representations and Warranties</u>. Each of the Agents, Lenders, Borrowers, Preferred Equity Owners, Preferred Equity Issuers, AGH, AAI, and Lindberg hereby represent and warrant that (i) each of the Recitals (each of which are hereby incorporated herein by reference as if fully set forth) and Exhibits A, B, C, D, E, F, G and H to this Amendment is true and accurate in all respects; that (ii) the execution and delivery of this Amendment, the performance of their obligations hereunder, and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action on the part of them, and this Amendment constitutes the legal, valid, and binding obligations of each of them, enforceable against each of them in accordance with its terms; that (iii) neither the execution and delivery of this Amendment, nor the consummation of the transactions contemplated hereby, will violate any law to which they are subject or any provision of their organizational documents or conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, cancel, or require any notice or consent under any contract to which any of them is a party or by which any of them is bound or to which any of their assets are subject; and that (iv) as of the moment of execution of this Amendment, this Amendment becomes immediately binding on all Lenders and Borrowers. EMAM hereby represents and warrants that the execution and delivery of this Amendment, the performance of their obligations hereunder, and the consummation of the transactions contemplated hereby have been duly

authorized by all requisite action on the part of them, and this Amendment constitutes the legal, valid, and binding obligations of each of them, enforceable against each of them in accordance with its terms.

11.    Default Interest Rate. If an Event of a Default related to payment occurs under any of the Loans the default interest rate shall be double the Base Interest Rate.

12.    Notices.  All notices, requests, consents, demands and other communications given in connection with this Amendment (collectively, "**Notices**" and each, a "**Notice**") must be in writing and delivered to the parties at the addresses set forth beneath the parties' signatures below or to such other address as may be designated by the receiving party in a Notice given in accordance with this Section 12. Notwithstanding the foregoing, each of Lindberg, AAI, the Agents, the Borrowers, the Preferred Equity Issuers, the Preferred Equity Owners, and AGH hereby irrevocably appoints Lindberg as its sole representative for the purposes of receiving Notices, and all Notices to such Parties shall be delivered to Lindberg. All Notices shall be effective upon actual receipt by the notified party.

13.    Effect of Amendments.  Except as expressly amended hereby, the Loans shall be and remain in full force and effect.  This Amendment shall become a part of the Loans, as applicable, by reference and nothing contained herein shall impair any security held for the obligations arising under the Loans, nor waive, annul, vary or affect any provision, condition, covenant or agreement contained in the Loans except as herein amended, nor affect or impair any rights, powers or remedies under the Loans as hereby amended. Each Lender shall reserve all rights and remedies it may have as against all Borrowers and any other party who may be or may hereafter become primarily or secondarily liable for the repayment of the Loans.  Notwithstanding anything herein to the contrary, Each Lender hereby waives any and all claims for any Events of Default prior to the Amendment Effective Date. This Amendment and such original agreements embody the entire agreement between parties relating to the subject matter hereof.

14.    Ratification; No Novation. Each Borrower promises and agrees to pay all amounts due and to perform all of its requirements, conditions and obligations arising under the Loan(s) to which it is a borrower in accordance with the terms of the Loans and the Loan Documents, in each case as hereby modified and amended, All such Loans and Loan Documents being hereby ratified and affirmed. The execution and delivery of this Amendment shall not constitute a novation or accord and satisfaction, or a modification of any lien, encumbrance or security title of the Loans or other Loan Documents. Without limiting the generality of the foregoing, all collateral given by any Borrower prior to the date hereof to secure repayment of the Loans does and shall continue to secure the obligations of the Borrowers under the Loans and Loan Documents, in each case as hereby modified and amended and, no such collateral shall be released until such obligations are satisfied and completely discharged.  Each Borrower expressly reaffirms, ratifies, confirms and approves all of the security interests, liens, pledges and mortgages made by it in favor of any Lender prior to the date hereof, all of which shall be security for the prompt payment in full when due.

15.    Counterparts.  This Amendment may be executed in any number of separate counterparts and by different parties to this Amendment on such separate counterparts, each of which when executed shall be deemed an original, but all of which taken together constitute one and the same instrument. Any signature delivered by a party by .pdf or by facsimile transmission shall be deemed to be an original signature to this Amendment.

16.    Governing Law.   THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF NORTH CAROLINA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**GREG E. LINDBERG**

By: _____
Greg E. Lindberg, an Individual

Address for Notice: 3406 Stagecoach Rd
Durham NC 27713

**AAI**
ACADEMY ASSOCIATION, INC.

By: _____
Greg E. Lindberg, President

**BORROWERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of
each of the Borrowers

**NHC EXCLUDED BORROWERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of
each of the Borrowers

**PREFERRED EQUITY OWNERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of each of
the Preferred Equity Owners

**PREFERRED EQUITY ISSUERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of each of
the Preferred Equity Issuers

[Signature Page to Interim Amendment to Loan Agreements]

Case 3:23-cr-00048-MOC-DCK   Document 177   Filed 06/09/26   Page 68 of 154

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**AGENTS**

COLORADO BANKERS LIFE INSURANCE COMPANY

By: _~~Z L 2~~_
Name: _Lou E. Hensley_
Title: _CEO and President_

SOUTHLAND NATIONAL INSURANCE CORPORATION

By: _~~Z L 2~~_
Name: _Lou E. Hensley_
Title: _CEO & President_

NEW ENGLAND CAPITAL, LLC

By: _____
Name: _____
Title: _____

PRIVATE BANKERS LIFE AND ANNUITY CO., LTD.

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**AGENTS**

COLORADO BANKERS LIFE INSURANCE COMPANY

By: _____

Name: _____

Title: _____


SOUTHLAND NATIONAL INSURANCE CORPORATION

By: _____

Name: _____

Title: _____


NEW ENGLAND CAPITAL. LLC

By: *Christa M Miller*

Name: Christa Miller

Title: Manager


PRIVATE BANKERS LIFE AND ANNUITY CO., LTD.

By: _____

Name: _____

Title: _____

[Signature Page to Interim Amendment to Loan Agreements]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

AGENTS
COLORADO BANKERS LIFE INSURANCE COMPANY

By: _____
Name: _____
Title: _____

SOUTHLAND NATIONAL INSURANCE CORPORATION

By: _____
Name: _____
Title: _____

NEW ENGLAND CAPITAL, LLC

By: _____
Name: _____
Title: _____

PRIVATE BANKERS LIFE AND ANNUITY CO., LTD.

By: _____
Name: CHRISTOPHER HERWIG
Title: DIRECTOR

[Signature Page to Interim Amendment to Loan Agreements]

Case 3:23-cr-00048-MOC-DCK    Document 177    Filed 06/09/26    Page 71 of 154

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**AGH**
AGH PARENT, LLC

By:    AGX Holdings, LLC
Its:    Manager

By:    _Christa M Miller_
Name:  Christa Miller
Its:    Manager

[Signature Page to Interim Amendment to Loan Agreements]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**EMAM**

EDWARDS MILL ASSET MANAGEMENT, LLC

By: _____

Name:  William N. Wofford

Title:  Member

Address for Notice:

3110 Edwards Mill Road, Suite 300

Raleigh, NC  27612

[Signature Page to Interim Amendment to Loan Agreements]

# EXHIBIT A

## SENIOR LOANS

[See attached.]

**ILA Exhibit A - Senior Loans**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Academy Financial Assets LLC | 3,232,865 |
| BLIC | Academy Financial Assets LLC | 2,278,723 |
| BLIC | Augusta Asset Management Inc | 4,314,946 |
| BLIC | Baldwin Asset Management Inc | 1,072,923 |
| BLIC | BMO | 5,000,000 |
| BLIC | Capital Asset Fund I LLC | 3,364,629 |
| BLIC | Capital Asset Fund IV LLC | 4,145,226 |
| BLIC | Capital Asset Fund V LLC | 4,338,657 |
| BLIC | Gilford Asset Management Inc | 4,548,100 |
| BLIC | Hampton Asset Management Inc | 880,483 |
| BLIC | Iron City Asset Management Inc | 865,056 |
| BLIC | iTech Funding LLC | 1,050,160 |
| BLIC | Jackson Asset Management Inc | 770,361 |
| BLIC | Pierre Mendes | 6,014,000 |
| BLIC | Summerville Asset Management Inc | 1,125,155 |
| BLIC | TAC Investments LLC | 5,526,880 |
| CBL | Academy Financial Assets LLC | 22,787,229 |
| CBL | Academy Financial Assets LLC | 20,071,227 |
| CBL | Academy Financial Assets LLC | 8,695,851 |
| CBL | Alpharetta LLC | 2,280,034 |
| CBL | AR Purchasing Solutions 2 LLC | 3,044,729 |
| CBL | AR Purchasing Solutions LLC | 2,651,081 |
| CBL | AT Denmark Investments ApS - (Arcane Tinmen) | 8,725,262 |
| CBL | Augusta Asset Management Inc | 4,314,946 |
| CBL | Baldwin Asset Management Inc | 26,060,515 |
| CBL | Blue Violet | 21,706,922 |
| CBL | BMO | 62,200,000 |
| CBL | Capital Asset Fund I LLC | 63,336,059 |
| CBL | Capital Asset Fund IV LLC | 41,452,259 |
| CBL | Capital Asset Fund V LLC | 43,386,570 |
| CBL | Capital Asset Management III LLC | 30,055,675 |
| CBL | Chatsworth Asset Management Inc | 22,558,543 |
| CBL | ComplySmart LLC | 3,088,811 |
| CBL | Damascus Asset Management Inc | 18,923,312 |
| CBL | Ephesus Asset Management Inc | 25,358,720 |
| CBL | Forest Park Asset Management Inc | 17,362,684 |
| CBL | Hampton Asset Management Inc | 22,335,739 |
| CBL | HPCSP Investments LLC | 7,165,647 |
| CBL | Intralan Investments Limited | 4,245,435 |
| CBL | Iron City Asset Management Inc | 25,548,789 |
| CBL | iTech Funding LLC | 19,845,403 |
| CBL | Jackson Asset Management Inc | 22,752,035 |
| CBL | Kite Asset Management Inc | 35,210,195 |
| CBL | Lares LLC | 4,552,507 |

| | | |
|---|---|---|
| CBL | Lily Asset Management Inc | 33,635,618 |
| CBL | Marshall Asset Management Inc | 31,511,141 |
| CBL | Medical Physics LLC | 2,973,195 |
| CBL | Medical Physics LLC | 928,430 |
| CBL | Paradise Asset Management Inc | 40,477,331 |
| CBL | PCF LLC | 3,226,527 |
| CBL | Pierre Mendes | 60,140,000 |
| CBL | Rockdale Asset Management Inc | 40,437,953 |
| CBL | Standard Financial Limited | 3,978,284 |
| CBL | Summerville Asset Management Inc | 24,543,869 |
| CBL | Tybee Island Asset Management Inc | 28,783,693 |
| NORTHSTAR | Alta Billing LLC | 1,097,542 |
| NORTHSTAR | AR Purchasing Solutions LLC | 883,694 |
| NORTHSTAR | Baldwin Asset Management Inc | 1,103,332 |
| NORTHSTAR | Barrington LLC | 2,272,126 |
| NORTHSTAR | Berlin LLC | 4,330,990 |
| NORTHSTAR | Chatsworth Asset Management Inc | 1,102,821 |
| NORTHSTAR | Conway LLC | 1,107,604 |
| NORTHSTAR | Damascus Asset Management Inc | 325,833 |
| NORTHSTAR | Ephesus Asset Management Inc | 1,102,818 |
| NORTHSTAR | Goffstown LLC | 1,915,279 |
| NORTHSTAR | Hansen Aerospace LLC | 77,120 |
| NORTHSTAR | HPCSP Investments LLC | 11,420,872 |
| NORTHSTAR | IMW EMR LLC | 2,224,523 |
| NORTHSTAR | Intralan Investments Limited | 1,106,744 |
| NORTHSTAR | iTech Funding LLC | 1,105,288 |
| NORTHSTAR | Jaffrey LLC | 2,147,128 |
| NORTHSTAR | Lares LLC | 1,105,661 |
| NORTHSTAR | LMG Holdings LLC | 2,118,125 |
| NORTHSTAR | Marval Investments Limited | 3,439,155 |
| NORTHSTAR | Medical Physics LLC | 225,708 |
| NORTHSTAR | MRX Holdings LLC/ M plus | 1,088,602 |
| NORTHSTAR | Standard Financial Limited | 1,130,107 |
| NORTHSTAR | Standard Malta Holdings Limited | 1,918,702 |
| NORTHSTAR | Summerville Asset Management Inc | 201,232 |
| NORTHSTAR | TAC Investments LLC | 1,106,777 |
| NORTHSTAR | Yarrow Three LLC | 6,569,224 |
| OMNIA | Yarrow Three LLC | 1,945,676 |
| PBLA | ASIM Holdings LLC | 152,142 |
| PBLA | Atkinson LLC | 4,133,151 |
| PBLA | Augusta Asset Management Inc | 6,800,354 |
| PBLA | Begonia Eight LLC | 9,679,519 |
| PBLA | Blue Daffodil LLC | 21,625,091 |
| PBLA | Blue Violet | 29,229,535 |
| PBLA | Capital Asset Fund I LLC | 18,261,922 |
| PBLA | Carnation Three LLC | 18,371,782 |
| PBLA | Chatsworth Asset Management Inc | 6,654,403 |

| | | |
|---|---|---:|
| PBLA | Chrysanthemum Two LLC | 10,778,042 |
| PBLA | CMC Holding Company LLC | 2,240,751 |
| PBLA | Daisy Seven LLC | 15,930,817 |
| PBLA | Drummond Group LLC | 2,158,498 |
| PBLA | Epping LLC | 4,133,151 |
| PBLA | Flowery Branch LLC | 10,493,670 |
| PBLA | Forsyth LLC | 16,076,953 |
| PBLA | Fortrex LLC | 1,002,947 |
| PBLA | Geranium Two LLC | 17,887,912 |
| PBLA | Gilford Asset Management Inc | 10,612,233 |
| PBLA | Greenfield Capital LLC | 13,078,801 |
| PBLA | Hansen Aerospace LLC | 3,642,656 |
| PBLA | Hooksett LLC | 4,133,151 |
| PBLA | IMW EMR LLC | 11,152,081 |
| PBLA | Red Begonia LLC | 18,775,227 |
| PBLA | Sedwick LLC | 3,751,358 |
| PBLA | Summerville Asset Management Inc | 3,665,941 |
| PBLA | TAC Investments LLC | 4,396,382 |
| PBLA | Weare LLC | 2,066,575 |
| PBLA | Yellow Lotus | 22,151,393 |
| PBLA | Academy Financial Assets LLC | 18,243,836 |
| PBLA | BLH Capital LLC | 10,000,000 |
| PBLA | Capital Asset Management II LLC | 6,080,022 |
| PBLA | Capital Asset Management III LLC | 25,333,425 |
| PBLA | Hampton Asset Management Inc | 17,183,973 |
| PBLA | Iron City Asset Management Inc | 17,183,973 |
| PBLA | Jackson Asset Management Inc | 21,127,973 |
| PBLA | Netherlands Insurance Holdings Inc | 8,000,000 |
| PBLA | Parallel Capital Assets | 14,151,507 |
| PBLA | Standard Investment Capital Ltd | 25,000,000 |
| SNIC | Academy Financial Assets LLC | 5,696,807 |
| SNIC | Augusta Asset Management Inc | 5,177,935 |
| SNIC | Baldwin Asset Management Inc | 8,737,614 |
| SNIC | BMO | 10,000,000 |
| SNIC | Capital Asset Fund I LLC | 6,729,259 |
| SNIC | Capital Asset Fund IV LLC | 6,217,839 |
| SNIC | Capital Asset Fund V LLC | 6,507,986 |
| SNIC | Damascus Asset Management Inc | 6,952,050 |
| SNIC | Ephesus Asset Management Inc | 9,556,890 |
| SNIC | Forest Park Asset Management Inc | 7,957,897 |
| SNIC | Hampton Asset Management Inc | 7,190,615 |
| SNIC | HPCSP Investments LLC | 1,107,502 |
| SNIC | Iron City Asset Management Inc | 3,460,225 |
| SNIC | iTech Funding LLC | 7,679,295 |
| SNIC | Jackson Asset Management Inc | 3,081,444 |
| SNIC | Pierre Mendes | 9,021,000 |
| SNIC | Summerville Asset Management Inc | 8,227,695 |

| | | |
|---|---|---:|
| SNIC | TAC Investments LLC | 3,282,303 |
| VISTA/USAP | Academy Financial Assets LLC | 10,884,397 |
| VISTA/USAP | Academy Financial Assets LLC | 10,091,362 |
| VISTA/USAP | Amherst LLC | 4,546,079 |
| VISTA/USAP | Augusta Asset Management Inc | 9,445,416 |
| VISTA/USAP | Barnstead LLC | 2,020,479 |
| VISTA/USAP | Bow LLC | 4,515,349 |
| VISTA/USAP | Canaan LLC | 3,051,781 |
| VISTA/USAP | Claremont LLC | 4,487,630 |
| VISTA/USAP | Deering LLC | 4,872,488 |
| VISTA/USAP | Derry LLC | 7,891,892 |
| VISTA/USAP | Dunbarton LLC | 3,051,781 |
| VISTA/USAP | Durham LLC | 4,046,292 |
| VISTA/USAP | Effingham LLC | 4,304,546 |
| VISTA/USAP | Farmington LLC | 4,046,292 |
| VISTA/USAP | Fiasco Fine Wine LLC | 4,261,718 |
| VISTA/USAP | Gilford Asset Management Inc | 7,580,166 |
| VISTA/USAP | Goshen LLC | 5,116,800 |
| VISTA/USAP | Henniker LLC | 4,577,671 |
| VISTA/USAP | Littleton LLC | 1,489,392 |
| VISTA/USAP | Londonderry LLC | 5,116,800 |
| VISTA/USAP | Meredith LLC | 4,487,630 |
| VISTA/USAP | Merrimack LLC | 5,117,295 |
| VISTA/USAP | Nashua LLC | 3,051,781 |
| VISTA/USAP | Rindge LLC | 4,703,541 |
| VISTA/USAP | Rumney LLC | 3,242,337 |
| VISTA/USAP | Standard Financial Limited | 10,258,620 |
| VISTA/USAP | Standard Malta Holdings Limited | 10,520,304 |
| VISTA/USAP | Stoddard LLC | 4,539,381 |
| VISTA/USAP | Summerville Asset Management Inc | 3,420,020 |
| VISTA/USAP | Swanzey LLC | 2,123,863 |
| VISTA/USAP | Tybee Island Asset Management Inc | 4,996,086 |
| VISTA/USAP | Wolfeboro LLC | 4,487,630 |
| | | |
| Subtotal | | 1,701,325,388 |
| | Less | |
| CBL | Duplicates through FinCos and PPNs | (222,277,091) |
| BLIC | Duplicates through FinCos and PPNs | (17,728,395) |
| SNIC | Duplicates through FinCos and PPNs | (37,586,499) |
| PBLA | Duplicates through FinCos and PPNs | (39,434,813) |
| Northstar | Duplicates through FinCos and PPNs | (10,128,707) |
| OMNIA | Duplicates through FinCos and PPNs | (1,861,232) |
| Vista/USAP | Duplicates through FinCos and PPNs | (72,302,989) |
| | | |
| Total | | 1,300,005,663 |

## EXHIBIT B

## JUNIOR LOANS

[See attached.]

**ILA Exhibit B - Junior Loans**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Academy Financial Assets LLC | 2,052,643 |
| BLIC | HPCSP Investments LLC | 600,136 |
| CBL | Academy Financial Assets LLC | 24,672,849 |
| CBL | HPCSP Investments LLC | 7,213,662 |
| NORTHSTAR | 3BL Media LLC | 2,938,071 |
| NORTHSTAR | CBV Collections Limited | 1,800,627 |
| NORTHSTAR | CMC Holding Company LLC | 2,968,406 |
| NORTHSTAR | IMW EMR LLC | 1,015,552 |
| NORTHSTAR | MRX Holdings LLC/ M plus | 388,695 |
| PBLA | ASIM Holdings LLC | 690,017 |
| PBLA | Certification for Long-Term Care LLC (CLTC) | 17,777 |
| SNIC | Academy Financial Assets LLC | 4,105,287 |
| SNIC | HPCSP Investments LLC | 1,200,273 |
| STANDARD RE | CBV Collections Limited | 963,886 |
| Total | | 50,627,880 |

Exhibit C

## EXHIBIT C

### PREFERRED EQUITY

[See attached.]

**ILA Exhibit C - Preferred Equity**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Barclays | 6,039,266 |
| BLIC | Capital Asset Fund II LLC | 3,358,610 |
| BLIC | Capital Asset Management II LLC | 1,870,357 |
| BLIC | CV Investments LLC | 1,183,512 |
| BLIC | Franklin Street | 4,993,750 |
| BLIC | Gilford Asset Management Inc | 2,213,163 |
| BLIC | Nom GB 2018 | 1,799,325 |
| CBL | Barclays | 76,706,790 |
| CBL | Capital Asset Fund II LLC | 36,956,583 |
| CBL | Capital Asset Management II LLC | 20,580,545 |
| CBL | CV Investments LLC | 13,022,822 |
| CBL | Franklin Street | 47,998,543 |
| CBL | Gilford Asset Management Inc | 1,740,435 |
| CBL | Nom GB 2018 | 2,189,610 |
| NORTHSTAR | ASL Holding LLC | 10,363,000 |
| NORTHSTAR | Daisy Seven LLC | 1,753,310 |
| NORTHSTAR | Damovo | 2,640,975 |
| NORTHSTAR | iTech Funding LLC | 13,439,503 |
| NORTHSTAR | Konnect Net Holdings LLC | 763,012 |
| NORTHSTAR | Triton Financial Limited | 22,728,850 |
| OMNIA | Flagship Holding LLC | 89,654 |
| OMNIA | MBW Interco LLC | 2,218,741 |
| PBIHL | Flagship Holding LLC | 29,361,871 |
| PBLA | BRC Holding LLC | 3,575,000 |
| PBLA | iTech Funding LLC | 5,727,000 |
| PBLA | LMG Holding LLC | 393,483 |
| PBLA | Nom GB 2018 | 11,826,260 |
| SNIC | Barclays | 10,000,000 |
| SNIC | Capital Asset Fund II LLC | 6,679,361 |
| SNIC | Capital Asset Management II LLC | 3,719,632 |
| SNIC | CV Investments LLC | 2,353,684 |
| SNIC | Franklin Street | 9,999,696 |
| SNIC | Gilford Asset Management Inc | 314,558 |
| SNIC | Nom GB 2018 | 9,368,245 |
| VISTA/AIC | Nom GB 2018 | 22,313,975 |
| Vista/USAP | Barclays | 9,453,943 |
| | | |
| Subtotal | | 399,737,065 |
| Less | | |
| CBL | Duplicates through FinCos and PPNs | (116,169,036) |
| BLIC | Duplicates through FinCos and PPNs | (12,626,835) |
| SNIC | Duplicates through FinCos and PPNs | (28,206,079) |
| PBLA | Duplicates through FinCos and PPNs | (16,217,518) |
| Vista/USAP | Duplicates through FinCos and PPNs | (4,181,196) |

| Vista/AIC | Duplicates through FinCos and PPNs | (22,313,975) |
|-----------|-----------------------------------|--------------|
| Total | | 200,022,425 |

# EXHIBIT D

## AGERA FINANCING DOCUMENTS

[See attached.]

Exhibit D

**ILA Exhibit D - Agera Financing Documents**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Baldwin Asset Management Inc | AGH Parent LLC | 400,401 |
| Capital Asset Fund II LLC | AGH Parent LLC | 2,354,229 |
| Capital Asset Fund IV LLC | Agera Holdings LLC | 10,408,082 |
| Capital Asset Fund V LLC | Agera Holdings LLC | 5,300,000 |
| CBL | Agera Energy LLC | 36,060,940 |
| Derry LLC | Mckinley Ventures Group LLC | 7,891,892 |
| Effingham LLC | AGH Parent LLC | 6,027,503 |
| Iron City Asset Management Inc | AGH Parent LLC | 4,018,683 |
| Littleton LLC | Mckinley Ventures Group LLC | 1,489,392 |
| NORTHSTAR | AGH Parent LLC | 695 |
| OMNIA | AGH Parent LLC | 15,882,097 |
| OMNIA | AGH Parent LLC | 2,265,925 |
| OMNIA | AGH Parent LLC | 20,642,300 |
| Paradise Asset Management Inc | Agera Holdings LLC | 4,548,966 |
| Paradise Asset Management Inc | Red River Developments LLC | 6,039,501 |
| PBIHL | AGH Parent LLC | 9,781,992 |
| PBIHL | AGH Parent LLC | 2,600,000 |
| PBIHL | AGH Parent LLC | 657,288 |
| PBLA | AGH Parent LLC | 3,300 |
| PBLA | AGH Parent LLC | 110,460 |
| PBLA | AGH Parent LLC | 705,575 |
| Rockdale Asset Management Inc | Agera Holdings LLC | 1,900,000 |
| Rockdale Asset Management Inc | Red River Developments LLC | 9,195,384 |
| Stoddard LLC | Mckinley Ventures Group LLC | 4,539,381 |
| Summerville Asset Management Inc | AGH Parent LLC | 658,028 |
| Yarrow Three LLC | AGH Parent LLC | 9,781,992 |
| Yarrow Three LLC | Red River Developments LLC | 23,438,326 |
| Total | | 186,702,332 |

**PBLA LOANS**

[See attached.]

**ILA Exhibit E - PBLA Loans**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| PBLA Main | AAPC Holdings LLC | 913,970 |
| PBLA Main | AGH Parent LLC | 7,472 |
| PBLA Main | Academy Financial Assets LLC | 35,080,571 |
| PBLA Main | GBIG Capital LLC | 718,765 |
| PBLA Main | GBIG Capital LLC | 110,599,220 |
| PBLA Main | Flagship Holding LLC | 14,000,000 |
| PBLA Main | Academy Financial Assets LLC | 56,078,258 |
| PBLA Main | Capital Asset Fund I LLC | 28,023,819 |
| PBLA Main | Capital Asset Management II LLC | 11,692,000 |
| PBLA Main | Yarrow Three LLC | 2,285,295 |
| Total | | 259,399,370 |

# EXHIBIT F

## NHC EXCLUDED BORROWERS
## & LOANS EXCLUDED FROM NHC

[See attached.]

**ILA Exhibit F - NHC Excluded Borrowers & Loans Excluded from NHC**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Baldwin Asset Management Inc | BCC Research | 1,484,924 |
| Baldwin Asset Management Inc | UKAT Investment | 2,245,277 |
| Capital Asset Fund I LLC | BCC Holdings LLC | 381,196 |
| Capital Asset Fund I LLC | BCC Research | 209,246 |
| Capital Asset Fund I LLC | PBO Holdings Inc | 123,365 |
| Capital Asset Fund II LLC | BCC Research | 651,473 |
| Capital Asset Fund II LLC | UKAT Investment | 1,808,507 |
| Capital Asset Fund IV LLC | UKAT Investment | 322,948 |
| Capital Asset Fund V LLC | UKAT Investment | 342,821 |
| Chatsworth Asset Management Inc | Automotive Fleet Inv. Ltd | 325,814 |
| Chatsworth Asset Management Inc | UKAT Investment | 566,400 |
| Damascus Asset Management Inc | Automotive Fleet Inv. Ltd | 276,942 |
| Damascus Asset Management Inc | Proactive Software Holdings | 1,017,587 |
| Damascus Asset Management Inc | UKAT Investment | 2,232,427 |
| Ephesus Asset Management Inc | Automotive Fleet Inv. Ltd | 1,345,799 |
| Ephesus Asset Management Inc | UKAT Investment | 1,726,550 |
| Forest Park Asset Management Inc | Automotive Fleet Inv. Ltd | 2,892,516 |
| Forest Park Asset Management Inc | UKAT Investment | 802,691 |
| Gilford Asset Management Inc | BCC Research | 569,222 |
| Gilford Asset Management Inc | UKAT Investment | 1,696,418 |
| Hampton Asset Management Inc | Global Data Insights Limited | 81,392 |
| Hampton Asset Management Inc | UKAT Investment | 2,052,158 |
| Iron City Asset Management Inc | Automotive Fleet Inv. Ltd | 81,453 |
| Iron City Asset Management Inc | Proactive Software Holdings | 708,000 |
| Iron City Asset Management Inc | Proactive Software Holdings | 3,087,565 |
| Iron City Asset Management Inc | UKAT Investment | 372,632 |
| Jackson Asset Management Inc | UKAT Investment | 1,029,896 |
| Kite Asset Management Inc | BCC Research | 2,112,129 |
| Kite Asset Management Inc | UKAT Investment | 1,272,367 |
| Lily Asset Management Inc | Automotive Fleet Inv. Ltd | 3,082,574 |
| Lily Asset Management Inc | UKAT Investment | 535,540 |
| Marshall Asset Management Inc | Automotive Fleet Inv. Ltd | 1,704,194 |
| Marshall Asset Management Inc | BCC Research | 2,274,902 |
| Marshall Asset Management Inc | UKAT Investment | 54,546 |
| NORTHSTAR | Automotive Fleet Inv. Ltd | 5,813,153 |
| NORTHSTAR | UKAT Investment | 18,552,987 |
| PBLA | UKAT Investment | 1,729,032 |
| Pierre Mendes | Global Data Insights Limited | 12,294,382 |
| Pierre Mendes | UKAT Investment | 1,127,833 |
| Summerville Asset Management Inc | Automotive Fleet Inv. Ltd | 456,139 |
| Summerville Asset Management Inc | Global Data Insights Limited | 3,956,083 |
| Swanzey LLC | BCC Holdings LLC | 2,123,863 |
| Tybee Island Asset Management Inc | Automotive Fleet Inv. Ltd | 59,733 |
| Tybee Island Asset Management Inc | UKAT Investment | 536,590 |

Total                                                                                   86,121,265

# EXHIBIT G

## INSURANCE HOLD CO-RELATED DEBT

[See attached.]

**ILA Exhibit G - Insurance Hold Co-Related Debt**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Alstead LLC | GBIG Capital LLC | 4,006,239 |
| Augusta Asset Management Inc | GBIG Capital LLC | 1,250,019 |
| Augusta Asset Management Inc | GBIG Holdings Inc | 7,278,633 |
| Baldwin Asset Management Inc | GBIG Holdings Inc | 4,632,127 |
| Baldwin Asset Management Inc | PBX Bermuda Holdings Ltd | 563,731 |
| BLIC | Netherlands Insurance Holdings Inc | 804,200 |
| Bow LLC | GBIG Capital LLC | 4,515,349 |
| Canaan LLC | GBIG Holdings Inc | 3,051,781 |
| Capital Asset Fund II LLC | GBIG Capital LLC | 387,888 |
| Capital Asset Fund II LLC | PBX Bermuda Holdings Ltd | 268,443 |
| Capital Asset Fund IV LLC | Beaufort Holding S.A. | 4,205,470 |
| Capital Asset Fund IV LLC | PBX Bermuda Holdings Ltd | 429,509 |
| Capital Asset Fund IV LLC | PBX Bermuda Holdings Ltd | 10,637,608 |
| Capital Asset Fund IV LLC | PBX Holdings LLC | 440,745 |
| Capital Asset Fund V LLC | GBIG Holdings Inc | 1,525,890 |
| Capital Asset Fund V LLC | Netherlands Insurance Holdings Inc | 5,026,250 |
| Capital Asset Fund V LLC | PBX Bermuda Holdings Ltd | 536,887 |
| CBL | Beaufort Holding S.A. | 5,346,223 |
| CBL | Netherlands Insurance Holdings Inc | 12,083,106 |
| Chatsworth Asset Management Inc | GBIG Holdings Inc | 3,051,781 |
| Chrysanthemum Two LLC | PBX Holdings LLC | 10,832,753 |
| Claremont LLC | NIH Capital LLC | 4,487,630 |
| Daisy Seven LLC | Netherlands Insurance Holdings Inc | 17,826,787 |
| Damascus Asset Management Inc | GBIG Holdings Inc | 4,247,993 |
| Damascus Asset Management Inc | PBX Bermuda Holdings Ltd | 322,132 |
| Dunbarton LLC | GBIG Holdings Inc | 3,051,781 |
| Ephesus Asset Management Inc | GBIG Holdings Inc | 4,069,041 |
| Hampton Asset Management Inc | GBIG Holdings Inc | 4,308,585 |
| Hampton Asset Management Inc | Netherlands Insurance Holdings Inc | 3,585,483 |
| Hampton Asset Management Inc | PBX Holdings LLC | 2,031,695 |
| Henniker LLC | GBIG Holdings Inc | 4,577,671 |
| Iron City Asset Management Inc | GBIG Holdings Inc | 2,300,855 |
| Jackson Asset Management Inc | GBIG Capital LLC | 2,079,105 |
| Jackson Asset Management Inc | GBIG Holdings Inc | 1,802,044 |
| Kite Asset Management Inc | PBX Bermuda Holdings Ltd | 993,240 |
| Lily Asset Management Inc | Netherlands Insurance Holdings Inc | 450,171 |
| Londonderry LLC | NIH Capital LLC | 5,118,640 |
| Marshall Asset Management Inc | GBIG Capital LLC | 739,052 |
| Marshall Asset Management Inc | PBX Bermuda Holdings Ltd | 429,509 |
| Marshall Asset Management Inc | PBX Holdings LLC | 2,708,188 |
| Meredith LLC | NIH Capital LLC | 4,487,630 |
| Nashua LLC | GBIG Holdings Inc | 3,051,781 |
| New Ipswich LLC | GBIG Capital LLC | 4,515,349 |
| NORTHSTAR | Beaufort Holding S.A. | 14,252,312 |

| | | |
|---|---|---:|
| NORTHSTAR | Beaufort Holding S.A. | 2,270,310 |
| NORTHSTAR | Beaufort Holding S.A. | 5,101,016 |
| NORTHSTAR | GBIG Capital LLC | 10,900,000 |
| NORTHSTAR | GBIG Capital LLC | 20,936,657 |
| NORTHSTAR | PBX Bermuda Holdings Ltd | 8,243,544 |
| OMNIA | GBIG Capital LLC | 172,504 |
| Paradise Asset Management Inc | Netherlands Insurance Holdings Inc | 158,884 |
| Paradise Asset Management Inc | PBX Bermuda Holdings Ltd | 214,755 |
| PBIHL | GBIG Capital LLC | 958,353 |
| PBLA | GBIG Capital LLC | 10,100,000 |
| PBLA | New England Capital LLC | 11,891,244 |
| Pierre Mendes | GBIG Capital LLC | 719,930 |
| Rockdale Asset Management Inc | PBX Bermuda Holdings Ltd | 429,509 |
| SNIC | GBIG Holdings Inc | 6,103,562 |
| SNIC | Netherlands Insurance Holdings Inc | 2,010,500 |
| SNIC | PBX Bermuda Holdings Ltd | 212,978 |
| STANDARD RE | GBIG Holdings Inc | 686,651 |
| Stratham LLC | GBIG Capital LLC | 3,864,696 |
| Summerville Asset Management Inc | GBIG Capital LLC | 9,178,526 |
| Summerville Asset Management Inc | GBIG Capital LLC | 382,785 |
| Tybee Island Asset Management Inc | GBIG Capital LLC | 413,507 |
| Tybee Island Asset Management Inc | GBIG Holdings Inc | 4,623,343 |
| Wolfeboro LLC | NIH Capital LLC | 4,487,630 |
| | | |
| Total | | 276,372,192 |

## EXHIBIT H

### SPVs

Secured Loan-Backed Funding I, LLC
Secured Loan-Backed Funding II, LLC
Secured Loan-Backed Funding III, LLC
Secured Loan-Backed Funding IV, LLC
Secured Loan-Backed Funding V, LLC
Secured Loan-Backed Funding VI, LLC
Secured Loan-Backed Funding VII, LLC
Secured Loan-Backed Funding VIII, LLC
Secured Loan-Backed Funding IX, LLC
Secured Loan-Backed Funding X, LLC
Secured Loan-Backed Funding XI, LLC
Secured Loan-Backed Funding XII, LLC
Secured Loan-Backed Funding XIII, LLC
Secured Loan-Backed Funding XIV, LLC
Secured Loan-Backed Funding XV, LLC
Secured Loan-Backed Funding XVI, LLC
Secured Loan-Backed Funding XVII, LLC
Alstead, LLC
Amherst, LLC
Atkinson, LLC
Barnstead, LLC
Barrington, LLC
Berlin, LLC
Bow, LLC
Canaan, LLC
Claremont, LLC
Conway, LLC
Deering, LLC
Derry, LLC
Dunbarton, LLC
Durham, LLC

Effingham, LLC

Epping, LLC

Farmington, LLC

Franconia, LLC

Gilford, LLC

Goffstown, LLC

Goshen, LLC

Hampstead, LLC

Henniker, LLC

Hooksett, LLC

Hopkinton, LLC

Jaffrey, LLC

Laconia, LLC

Littleton, LLC

Londonderry, LLC

Loudon, LLC

Madbury, LLC

Meredith, LLC

Merrimack, LLC

Nashua, LLC

New Ipswich, LLC

Plaistow, LLC

Raymond, LLC

Rindge, LLC

Rumney, LLC

Sandown, LLC

Somersworth, LLC

Stoddard, LLC

Stratham, LLC

Swanzey, LLC

Weare, LLC

Wolfeboro, LLC

Anaconda, LLC

Athens, LLC

Augusta, LLC

Berkeley Lake, LLC

Cobra, LLC

Columbus, LLC

Macon, LLC

Shirt, LLC

Tornado, LLC

Valdosta, LLC

Ahoskie, LLC

Asheboro, LLC

Casar, LLC

Clayton, LLC

Cowper, LLC

Creston, LLC

Faison, LLC

Fayetteville, LLC

Greenville, LLC

Holt, LLC

Iredell, LLC

Jacksonville, LLC

Kenly, LLC

Louisburg, LLC

Morresville, LLC

Norlina, LLC

Whitaker Mill, LLC

Williamson, LLC

AAH Loan-Backed Funding, LLC

BCC Junior Loan-Backed Funding, LLC

BCC Senior Loan-Backed Funding, LLC

BKT Loan-Backed Funding, LLC

CLTC Junior Loan-Backed Funding, LLC

CLTC Senior Loan-Backed Funding, LLC

CMC Loan-Backed Funding, LLC

SFM Loan-Backed Funding, LLC

TCC Junior Loan-Backed Funding, LLC

TCC Senior Loan-Backed Funding, LLC

TCI Loan-Backed Funding, LLC

**ATTACHMENT B**

**Default and Remedy Terms**

**Events of Default**

If any of the following events shall occur and be continuing, it shall be an event of default ("**Event of Default**"):

      a.     <u>Non-Payment</u>. The borrower fails to pay any principal of the outstanding principal balance of the Loan payable by the borrower to its lender pursuant to the applicable Loan Agreement when due, or the borrower fails to pay any interest or any other sums payable by the borrower to its lender pursuant to the applicable Loan Agreement to its lender within ten (10) days after any such interest or other sum payable is due;

      b.     <u>Representations</u>. Any representation or warranty made by the borrower in connection with the Loan proves to have been incorrect in any material respect when made;

      c.     <u>Breach of Negative Covenants</u>. The borrower fails to observe or comply with any negative covenants contained in the applicable Loan Agreement;

      d.     <u>Breach of Covenants</u>. The borrower fails to perform or observe any other term, covenant or agreement contained in the applicable Loan Agreement, and such failure has not been cured within thirty (30) days after the borrower's lender has notified the borrower of such failure;

      e.     <u>Insolvency</u>. The borrower generally fails to pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the borrower seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property; or the borrower shall take any corporate action to authorize any of the actions set forth above in this subsection;

      f.     <u>Judgments</u>. Any judgment or order for the payment of money shall be rendered against the borrower and either (i) enforcement proceedings shall have been commenced by any creditor upon such judgment or order, or (ii) there shall be any period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect;

      g.     <u>Non-Monetary Judgments</u>. Any non-monetary judgment or order shall be rendered against the borrower that could reasonably be expected to have a material adverse effect, and there shall be a period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect;

h.     Change of Control. A Change of Control shall occur or exist (as used herein, "Change of Control" means any transaction of the borrower involving (i) the merger or consolidation of the borrower into or with another entity where the borrower's membership interest holders receive less than fifty percent (50%) of the voting securities of the new or continuing entity, (ii) the sale or all or substantially all of the borrower's assets or properties, (iii) any person not already a membership interest holder (other than the estate of such interest holder, his/her family and/or a trust maintained for the benefit of any of the foregoing) of the borrower becoming a beneficial owner, directly or indirectly, of the securities of the borrower representing fifty percent (50%) or more of the combined voting power of the borrower's then outstanding securities, (iv) a change in the manager(s) of the borrower, or (v) the borrower terminating its business or liquidating its assets); or

i.     Material Adverse Effect. Any event or circumstance occurs that has a material adverse effect.

## Remedies for Events of Default

Upon the occurrence of any Event of Default, the borrower's lender shall have the right:

a.     Further Advances. To declare the Loan and any commitment of the lender to make advances under the Loan terminated, whereupon such commitment and obligation shall be terminated;

b.     Acceleration. To declare the outstanding principal balance of the Loan and all interest accrued thereon and all other amounts payable under the applicable Loan Agreement to be immediately due and payable whereupon all such indebtedness of the borrower to its lender shall become and be immediately due and payable without presentment, demand, protest, or further notice of any kind, all of which are hereby expressly waived by the borrower;

c.     Default Interest. Declare that the borrower shall pay default interest, which shall be the lesser of the maximum rate chargeable under applicable law and twelve percent (12%) per annum, on the outstanding principal balance of the Loan;

d.     Security Interest Enforcement. Repossess and/or foreclose upon any collateral supporting the obligations under the Loan; or

e.     Other Rights. To exercise any other rights or remedies available to it whether under the applicable Loan Agreement or at law or in equity.

## INTERIM AMENDMENT TO LOAN AGREEMENTS

This INTERIM AMENDMENT TO LOAN AGREEMENTS (this "**Amendment**") is made and entered into as of June 27, 2019 (the "**Execution Date**"), by and among Colorado Bankers Life Insurance Company, a North Carolina insurance corporation ("**CBL**"), Southland National Insurance Corporation, a North Carolina insurance corporation ("**SNIC**"), New England Capital, LLC, a North Carolina limited liability company ("**NEC**"), Private Bankers Life and Annuity Co., Ltd., a Bermuda limited company ("**PBLA**", and together with CBL, SNIC, and NEC, each, an "**Agent**," and, collectively, the "**Agents**"), each of the borrowers set forth on the exhibits hereto (each, a "**Borrower**," and, collectively, the "**Borrowers**"), each of the holders of preferred equity set forth on the exhibits hereto (each, a "**Preferred Equity Owner**," and, collectively, the "**Preferred Equity Owners**"), each of the issuers of preferred equity set forth on the exhibits hereto (each, a "**Preferred Equity Issuer**," and, collectively, the "**Preferred Equity Issuers**"), AGH Parent, LLC, a Delaware limited liability company ("**AGH**"), Academy Association, Inc., a North Carolina corporation ("**AAI**"), Edwards Mill Asset Management, LLC, as holder of certain Class A common units of the special purpose vehicles ("**SPVs**") set forth on **Exhibit H** attached hereto ("**EMAM**") and Greg E. Lindberg, individually and as attorney-in-fact for each of the Borrowers, the Preferred Equity Owners and the Preferred Equity Issuers to the extent they are not included in the Affiliated Trusts, ("**Lindberg**", and together with the Agents, Borrowers, Preferred Equity Owners, Preferred Equity Issuers, AGH, AAI, and EMAM collectively, the "**Parties**" and, each, a "**Party**").

### RECITALS

WHEREAS, each of the senior term loan agreements set forth on **Exhibit A** attached hereto and incorporated herein by reference (the "**Senior Loans**") and each of the junior term loan agreements set forth on **Exhibit B** attached hereto and incorporated herein by reference (the "**Junior Loans**") provides for one of the Agents to serve as the agent of such loan; and

WHEREAS, each of the Agents has the unilateral authority to act for and bind the lenders of the Senior Loans and Junior Loans (the "**Lenders**") with respect to the Senior Loans and/or Junior Loans on which it serves as the agent; and

WHEREAS, as attorney-in-fact of each of the Borrowers, Preferred Equity Owners and Preferred Equity Issuers, and Lindberg are duly authorized to act on behalf of the Borrowers, Preferred Equity Owners and Preferred Equity Issuers and to bind the Borrowers, Preferred Equity Owners and Preferred Equity Issuers to the terms and conditions set forth in this Amendment and any other agreement, instrument, document, or consent related to this Amendment; and

WHEREAS, certain of the Lenders, as set forth on **Exhibit A**, have provided the Senior Loans to certain of the Borrowers, as set forth on **Exhibit A**, which Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit A**; and

WHEREAS, certain of the Lenders, as set forth on **Exhibit B**, have provided the Junior Loans to certain of the Borrowers, as set forth on **Exhibit B**, which Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit B**; and

WHEREAS, the Preferred Equity Owners set forth on **Exhibit C** have provided preferred equity financing to the Preferred Equity Issuers, which Preferred Equity Issuers are each controlled by AAI and Lindberg, in the amounts set forth on **Exhibit C** (the "**Preferred Equity**"), pursuant to the governing documents of the Preferred Equity Issuers (the "**Governing Documents**"); and

WHEREAS, certain lenders, as set forth on **Exhibit D**, have provided certain loans and preferred equity financing to AGH and its subsidiaries (the "**Agera Financing Documents**"), in the principal amounts set forth on **Exhibit D**, and one of the Agents serves as the agent of each such loan agreement or preferred equity financing arrangement and has the unilateral authority to act for and bind the lenders and preferred equity owners of the Agera Financing Documents; and

WHEREAS, PBLA has provided the loans set forth on **Exhibit E** (the "PBLA Loans") to certain of the Borrowers, as set forth on **Exhibit E**, which Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit E**; and

WHEREAS, certain lenders and preferred equity owners set forth on **Exhibit F** have provided certain loans and preferred equity financing (the "**Loans Excluded From NHC**") to certain borrowers (the "**NHC Excluded Borrowers**"), as set forth on **Exhibit F**, which NHC Excluded Borrowers are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit F**, and one of the Agents serves as the agent of each such loan agreement or preferred equity financing arrangement and has the unilateral authority to act for and bind the lenders and preferred equity owners of the Loans Excluded From NHC.

WHEREAS, certain lenders set forth on **Exhibit G** have provided certain loans and preferred equity financing (the "**Insurance Hold Co-Related Debt**") to certain affiliated insurance holding companies, which insurance holding companies are each controlled by AAI and Lindberg, in the principal amounts set forth on **Exhibit G** and one of the Agents serves as the agent of each such loan agreement or preferred equity financing arrangement and has the unilateral authority to act for and bind the lenders and preferred equity owners of the Insurance Hold Co-Related Debt.

WHEREAS, EMAM, in its capacity as the Class A Member of SPVs, consents on behalf of such SPVs (a) to the herein described amendments to the Loans, to the extent such SPVs are parties thereto and (b) to promptly execute and deliver any and all such further instruments and documents and take such further action as the Agents may reasonably request to obtain the full benefits of this Amendment.

WHEREAS, the Parties desire to amend the Senior Loans, the Junior Loans, the Preferred Equity, the Agera Financing Documents, Loans Excluded From NHC, Insurance Hold Co-Related Debt, and the PBLA Loans (collectively, the "**Loans**") on the terms described herein, effective immediately upon the effective date hereof (the "**Amendment Effective Date**"); and

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which hereby are acknowledged, the Parties hereto agree as follows:

AGREEMENT

1.      Amendments to Senior Loans. Each of the Senior Loans is hereby amended by replacing the definition of "Base Interest Rate," or any corresponding term set forth therein describing the interest rate payable thereunder in the ordinary course, with "five percent (5%) per annum." In addition, notwithstanding anything in the Senior Loans to the contrary: (a) for the first six (6) month period following the Amendment Effective Date (the "**Senior Loan Deferral Period**"), each of the Senior Loans shall accrue interest at the Base Interest Rate as set forth herein, but the accrued interest on each Senior Loan shall not be payable and instead shall be added to the principal of the applicable Senior Loan upon the end of the Senior Loan Deferral Period; (b) after the Senior Loan Deferral Period, such capitalized interest shall bear interest along with the principal amount of such loan at the Base Interest Rate; (c) beginning February 1, 2020, interest on the Senior Loans shall be payable quarterly in cash at the Base Interest Rate as set forth

herein; (d) from and after the Amendment Effective Date, any prepayment penalties in the Senior Loans shall equal zero percent (0%); and (e) the maturity date of each Senior Loan shall be December 31, 2029.

2.     <u>Amendments to Junior Loans</u>. Each of the Junior Loans is hereby amended by replacing the definition of "Base Interest Rate," or any corresponding term set forth therein describing the interest rate payable thereunder in the ordinary course, with "five and one half percent (5.5%) per annum." In addition, notwithstanding anything in the Junior Loans to the contrary: (a) for the first twelve (12) month period following the Amendment Effective Date (the "**Junior Loan Deferral Period**"), each of the Junior Loans shall accrue interest at the Base Interest Rate as set forth herein, but the accrued interest on each Junior Loan shall not be payable and instead shall be added to the principal of the applicable Junior Loan upon the end of the Junior Loan Deferral Period; (b) after the Junior Loan Deferral Period, such capitalized interest shall bear interest along with the principal amount of such loan at the Base Interest Rate as set forth herein; (c) beginning February 1, 2021, such interest on the Junior Loans shall be payable quarterly in cash at the Base Interest Rate as set forth herein; (d) from and after the Amendment Effective Date, any prepayment penalties in the Junior Loans shall equal zero percent (0%); and (e) the maturity date of each Junior Loan shall be June 30, 2029.

3.     <u>Amendments to Preferred Equity</u>. Each of the Governing Documents is hereby amended as follows: (a) the definition of "Preferred Return," or any corresponding term set forth therein describing the accrued return with respect to preferred units of the applicable Preferred Equity Issuer, shall be modified to mean six percent (6%) per annum (the "**Preferred Return**"), calculated with respect to the aggregate capital contribution with respect to the applicable preferred units as set forth on **Exhibit C** attached hereto; (b) provide that the Preferred Return shall accrue but not compound on an annual basis, and shall be payable as, when, and if declared by the managers of the applicable Preferred Equity Issuer; and (c) require that such preferred units shall be mandatorily redeemed by the applicable Preferred Equity Issuer on the ten (10)-year anniversary of the Amendment Effective Date, and may be redeemed by the applicable Preferred Equity Issuer at any time prior to such date without penalty, in each case, for the sum of the capital contribution with respect to such preferred units plus the then-accrued Preferred Return, but shall not be required to be redeemed prior to such date. For avoidance of doubt, the Preferred Equity shall at all times be unsecured.

4.     <u>Amendments to Agera Loans</u>. Each of the Agera Financing Documents is hereby amended by providing that: (a) no interest shall accrue or be paid or payable from and after the Amendment Effective Date; (b) there shall be no prepayment fee applicable to any such loan; and (c) the maturity date shall be June 30th, 2029. For avoidance of doubt, the Agera Loans shall not contain any financial performance covenants.

5.     <u>Amendments to PBLA Loans</u>. Each of the PBLA Loans is hereby amended by providing that: (a) no interest shall accrue or be paid or payable from and after the Amendment Effective Date; (b) there shall be no prepayment fee applicable to any such loan; and (c) the maturity date shall be June 30th, 2029. For avoidance of doubt, the PBLA Loans shall not contain any financial performance covenants.

6.     <u>Amendments to Loans Excluded From NHC</u>. Each of the Loans Excluded from NHC is hereby amended by replacing the definition of "Base Interest Rate," or "Preferred Return" or any corresponding term set forth therein describing the interest rate payable or dividend yield thereunder in the ordinary course, with "five percent (5%) per annum." In addition, notwithstanding anything in the Loans Excluded From NHC to the contrary: (a) for the first forty-eight (48) month period following the Amendment Effective Date (the "**Loans Excluded From NHC Deferral Period**"), each of the Loans Excluded From NHC shall accrue interest at the Base Interest Rate or Preferred Return as set forth herein, but the accrued interest on each Loans Excluded From NHC shall not be payable and instead shall be added to the principal of the applicable Loans Excluded From NHC upon the end of the Loans Excluded From

NHC Deferral Period; (b) after the Loans Excluded From NHC Deferral Period, such capitalized interest shall bear interest along with the principal amount of such loan at the Base Interest Rate or Preferred Return; (c) beginning July 1, 2023, interest on the Loans Excluded From NHC shall be payable quarterly in cash at the Base Interest Rate or Preferred Return as set forth herein; (d) from and after the Amendment Effective Date, any prepayment penalties in the Loans Excluded From NHC shall equal zero percent (0%); and (e) the maturity date shall be June 30, 2024. The sole financial covenant for the Loans Excluded From NHC shall be as follows: Net Senior Indebtedness to EBITDA of no greater than 9.50 to 1.00. Furthermore, solely as it relates to the Loans Excluded From NHC, each of the Agents and the Preferred Equity owners shall covenant and agree that, in the event any of the NHC Excluded Borrowers, or any successor thereof, is able to obtain senior secured financing from a third party, such parties agree to enter into any commercially reasonable subordination provisions, so long as the proceeds of such facility are used exclusively to: (a) pay third-party fees incurred in connection with such financing and pay any third party seller notes, earnouts, and Equity Equivalence Agreement payments due; (b) prepay the Senior Debt; (c) prepay the Junior Debt; and (d) redeem the Preferred Equity, in the order set forth herein, and, in each case, to the extent of the amount of such facility.

7.    Insurance Hold Co-Related Debt. Each of the Insurance Hold Co-Related Debt instruments is hereby amended by providing that: (a) no interest shall accrue or be paid or payable from and after the Amendment Effective Date; (b) there shall be no prepayment fee applicable to any such loan; and (c) the maturity date shall be June 30th, 2026.

8.    Further Amendment to Loans. Each of the Loans is hereby amended by providing that it shall be an "Event of Default" if the Borrowers, except for the NHC Excluded Borrowers, fail to satisfy the Curtailment Requirements (as hereinafter defined) or fail to pay the balance in full when due at the end of the term.

9.    Curtailment Requirements. Notwithstanding anything in any of the Loans or this Amendment to the contrary, the Borrowers (other than the NHC Excluded Borrowers) shall be jointly and severally responsible for making a first curtailment of the aggregate principal balance outstanding on all Senior Loans in the amount of Four Hundred Million and No/100 Dollars ($400,000,000.00) on or before December 31, 2023, to the extent such amounts are not already paid, and for making the second curtailment of the aggregate principal balance outstanding on all Senior Loans in the amount of Six Hundred Million and No/100 Dollars ($600,000,000.00) on or before December 31, 2027, to the extent such amounts are not already paid.

10.    Representations and Warranties. Each of the Agents, Lenders, Borrowers, Preferred Equity Owners, Preferred Equity Issuers, AGH, AAI, and Lindberg hereby represent and warrant that (i) each of the Recitals (each of which are hereby incorporated herein by reference as if fully set forth) and Exhibits A, B, C, D, E, F, G and H to this Amendment is true and accurate in all respects; that (ii) the execution and delivery of this Amendment, the performance of their obligations hereunder, and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action on the part of them, and this Amendment constitutes the legal, valid, and binding obligations of each of them, enforceable against each of them in accordance with its terms; that (iii) neither the execution and delivery of this Amendment, nor the consummation of the transactions contemplated hereby, will violate any law to which they are subject or any provision of their organizational documents or conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, cancel, or require any notice or consent under any contract to which any of them is a party or by which any of them is bound or to which any of their assets are subject; and that (iv) as of the moment of execution of this Amendment, this Amendment becomes immediately binding on all Lenders and Borrowers. EMAM hereby represents and warrants that the execution and delivery of this Amendment, the performance of their obligations hereunder, and the consummation of the transactions contemplated hereby have been duly

authorized by all requisite action on the part of them, and this Amendment constitutes the legal, valid, and binding obligations of each of them, enforceable against each of them in accordance with its terms.

11.     Default Interest Rate. If an Event of a Default related to payment occurs under any of the Loans the default interest rate shall be double the Base Interest Rate.

12.     Notices.  All notices, requests, consents, demands and other communications given in connection with this Amendment (collectively, "**Notices**" and each, a "**Notice**") must be in writing and delivered to the parties at the addresses set forth beneath the parties' signatures below or to such other address as may be designated by the receiving party in a Notice given in accordance with this Section 12. Notwithstanding the foregoing, each of Lindberg, AAI, the Agents, the Borrowers, the Preferred Equity Issuers, the Preferred Equity Owners, and AGH hereby irrevocably appoints Lindberg as its sole representative for the purposes of receiving Notices, and all Notices to such Parties shall be delivered to Lindberg. All Notices shall be effective upon actual receipt by the notified party.

13.     Effect of Amendments.  Except as expressly amended hereby, the Loans shall be and remain in full force and effect.  This Amendment shall become a part of the Loans, as applicable, by reference and nothing contained herein shall impair any security held for the obligations arising under the Loans, nor waive, annul, vary or affect any provision, condition, covenant or agreement contained in the Loans except as herein amended, nor affect or impair any rights, powers or remedies under the Loans as hereby amended. Each Lender shall reserve all rights and remedies it may have as against all Borrowers and any other party who may be or may hereafter become primarily or secondarily liable for the repayment of the Loans.  Notwithstanding anything herein to the contrary, Each Lender hereby waives any and all claims for any Events of Default prior to the Amendment Effective Date. This Amendment and such original agreements embody the entire agreement between parties relating to the subject matter hereof.

14.     Ratification; No Novation. Each Borrower promises and agrees to pay all amounts due and to perform all of its requirements, conditions and obligations arising under the Loan(s) to which it is a borrower in accordance with the terms of the Loans and the Loan Documents, in each case as hereby modified and amended, All such Loans and Loan Documents being hereby ratified and affirmed. The execution and delivery of this Amendment shall not constitute a novation or accord and satisfaction, or a modification of any lien, encumbrance or security title of the Loans or other Loan Documents. Without limiting the generality of the foregoing, all collateral given by any Borrower prior to the date hereof to secure repayment of the Loans does and shall continue to secure the obligations of the Borrowers under the Loans and Loan Documents, in each case as hereby modified and amended and, no such collateral shall be released until such obligations are satisfied and completely discharged.  Each Borrower expressly reaffirms, ratifies, confirms and approves all of the security interests, liens, pledges and mortgages made by it in favor of any Lender prior to the date hereof, all of which shall be security for the prompt payment in full when due.

15.     Counterparts.  This Amendment may be executed in any number of separate counterparts and by different parties to this Amendment on such separate counterparts, each of which when executed shall be deemed an original, but all of which taken together constitute one and the same instrument. Any signature delivered by a party by .pdf or by facsimile transmission shall be deemed to be an original signature to this Amendment.

16.     Governing Law.   THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF NORTH CAROLINA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**GREG E. LINDBERG**

By: _____
Greg E. Lindberg, an Individual

Address for Notice: 3406 Stagecoach Rd Durham NC 27713

**AAI**
ACADEMY ASSOCIATION, INC.

By: _____
Greg E. Lindberg, President

**BORROWERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of each of the Borrowers

**NHC EXCLUDED BORROWERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of each of the Borrowers

**PREFERRED EQUITY OWNERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of each of the Preferred Equity Owners

**PREFERRED EQUITY ISSUERS**

By: _____
Greg E. Lindberg, Attorney-In-Fact of each of the Preferred Equity Issuers

[Signature Page to Interim Amendment to Loan Agreements]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**AGENTS**
COLORADO BANKERS LIFE INSURANCE COMPANY

By: _Lou E. Hensley_
Name: _Lou E. Hensley_
Title: _CEO and President_

SOUTHLAND NATIONAL INSURANCE CORPORATION

By: _Lou E. Hensley_
Name: _Lou E. Hensley_
Title: _CEO & President_

NEW ENGLAND CAPITAL, LLC

By: _____
Name: _____
Title: _____

PRIVATE BANKERS LIFE AND ANNUITY CO., LTD.

By: _____
Name: _____
Title: _____

[Signature Page to Interim Amendment to Loan Agreements]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**AGENTS**

COLORADO BANKERS LIFE INSURANCE COMPANY

By: _____
Name: _____
Title: _____

SOUTHLAND NATIONAL INSURANCE CORPORATION

By: _____
Name: _____
Title: _____

NEW ENGLAND CAPITAL. LLC

By: *Christa M Miller*
Name: Christa Miller
Title: Manager

PRIVATE BANKERS LIFE AND ANNUITY CO., LTD.

By: _____
Name: _____
Title: _____

[Signature Page to Interim Amendment to Loan Agreements]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

AGENTS
COLORADO BANKERS LIFE INSURANCE COMPANY

By: _____
Name: _____
Title: _____

SOUTHLAND NATIONAL INSURANCE CORPORATION

By: _____
Name: _____
Title: _____

NEW ENGLAND CAPITAL, LLC

By: _____
Name: _____
Title: _____

PRIVATE BANKERS LIFE AND ANNUITY CO., LTD.

By: _____
Name: CHRISTOPHER HERWIG
Title: DIRECTOR

[Signature Page to Interim Amendment to Loan Agreements]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**AGH**
AGH PARENT, LLC

By: AGX Holdings, LLC
Its: Manager

By: _Christa M Miller_
Name: Christa Miller
Its: Manager

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Execution Date to be effective as of the Execution Date.

**EMAM**

EDWARDS MILL ASSET MANAGEMENT, LLC

By: _____

Name: William N. Wofford

Title: Member

Address for Notice:

3110 Edwards Mill Road, Suite 300

Raleigh, NC 27612

[Signature Page to Interim Amendment to Loan Agreements]

Case 3:23-cr-00048-MOC-DCK     Document 177     Filed 06/09/26     Page 110 of 154

# EXHIBIT A

## SENIOR LOANS

[See attached.]

Exhibit A

**ILA Exhibit A - Senior Loans**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Academy Financial Assets LLC | 3,232,865 |
| BLIC | Academy Financial Assets LLC | 2,278,723 |
| BLIC | Augusta Asset Management Inc | 4,314,946 |
| BLIC | Baldwin Asset Management Inc | 1,072,923 |
| BLIC | BMO | 5,000,000 |
| BLIC | Capital Asset Fund I LLC | 3,364,629 |
| BLIC | Capital Asset Fund IV LLC | 4,145,226 |
| BLIC | Capital Asset Fund V LLC | 4,338,657 |
| BLIC | Gilford Asset Management Inc | 4,548,100 |
| BLIC | Hampton Asset Management Inc | 880,483 |
| BLIC | Iron City Asset Management Inc | 865,056 |
| BLIC | iTech Funding LLC | 1,050,160 |
| BLIC | Jackson Asset Management Inc | 770,361 |
| BLIC | Pierre Mendes | 6,014,000 |
| BLIC | Summerville Asset Management Inc | 1,125,155 |
| BLIC | TAC Investments LLC | 5,526,880 |
| CBL | Academy Financial Assets LLC | 22,787,229 |
| CBL | Academy Financial Assets LLC | 20,071,227 |
| CBL | Academy Financial Assets LLC | 8,695,851 |
| CBL | Alpharetta LLC | 2,280,034 |
| CBL | AR Purchasing Solutions 2 LLC | 3,044,729 |
| CBL | AR Purchasing Solutions LLC | 2,651,081 |
| CBL | AT Denmark Investments ApS - (Arcane Tinmen) | 8,725,262 |
| CBL | Augusta Asset Management Inc | 4,314,946 |
| CBL | Baldwin Asset Management Inc | 26,060,515 |
| CBL | Blue Violet | 21,706,922 |
| CBL | BMO | 62,200,000 |
| CBL | Capital Asset Fund I LLC | 63,336,059 |
| CBL | Capital Asset Fund IV LLC | 41,452,259 |
| CBL | Capital Asset Fund V LLC | 43,386,570 |
| CBL | Capital Asset Management III LLC | 30,055,675 |
| CBL | Chatsworth Asset Management Inc | 22,558,543 |
| CBL | ComplySmart LLC | 3,088,811 |
| CBL | Damascus Asset Management Inc | 18,923,312 |
| CBL | Ephesus Asset Management Inc | 25,358,720 |
| CBL | Forest Park Asset Management Inc | 17,362,684 |
| CBL | Hampton Asset Management Inc | 22,335,739 |
| CBL | HPCSP Investments LLC | 7,165,647 |
| CBL | Intralan Investments Limited | 4,245,435 |
| CBL | Iron City Asset Management Inc | 25,548,789 |
| CBL | iTech Funding LLC | 19,845,403 |
| CBL | Jackson Asset Management Inc | 22,752,035 |
| CBL | Kite Asset Management Inc | 35,210,195 |
| CBL | Lares LLC | 4,552,507 |

| | | |
|---|---|---:|
| CBL | Lily Asset Management Inc | 33,635,618 |
| CBL | Marshall Asset Management Inc | 31,511,141 |
| CBL | Medical Physics LLC | 2,973,195 |
| CBL | Medical Physics LLC | 928,430 |
| CBL | Paradise Asset Management Inc | 40,477,331 |
| CBL | PCF LLC | 3,226,527 |
| CBL | Pierre Mendes | 60,140,000 |
| CBL | Rockdale Asset Management Inc | 40,437,953 |
| CBL | Standard Financial Limited | 3,978,284 |
| CBL | Summerville Asset Management Inc | 24,543,869 |
| CBL | Tybee Island Asset Management Inc | 28,783,693 |
| NORTHSTAR | Alta Billing LLC | 1,097,542 |
| NORTHSTAR | AR Purchasing Solutions LLC | 883,694 |
| NORTHSTAR | Baldwin Asset Management Inc | 1,103,332 |
| NORTHSTAR | Barrington LLC | 2,272,126 |
| NORTHSTAR | Berlin LLC | 4,330,990 |
| NORTHSTAR | Chatsworth Asset Management Inc | 1,102,821 |
| NORTHSTAR | Conway LLC | 1,107,604 |
| NORTHSTAR | Damascus Asset Management Inc | 325,833 |
| NORTHSTAR | Ephesus Asset Management Inc | 1,102,818 |
| NORTHSTAR | Goffstown LLC | 1,915,279 |
| NORTHSTAR | Hansen Aerospace LLC | 77,120 |
| NORTHSTAR | HPCSP Investments LLC | 11,420,872 |
| NORTHSTAR | IMW EMR LLC | 2,224,523 |
| NORTHSTAR | Intralan Investments Limited | 1,106,744 |
| NORTHSTAR | iTech Funding LLC | 1,105,288 |
| NORTHSTAR | Jaffrey LLC | 2,147,128 |
| NORTHSTAR | Lares LLC | 1,105,661 |
| NORTHSTAR | LMG Holdings LLC | 2,118,125 |
| NORTHSTAR | Marval Investments Limited | 3,439,155 |
| NORTHSTAR | Medical Physics LLC | 225,708 |
| NORTHSTAR | MRX Holdings LLC/ M plus | 1,088,602 |
| NORTHSTAR | Standard Financial Limited | 1,130,107 |
| NORTHSTAR | Standard Malta Holdings Limited | 1,918,702 |
| NORTHSTAR | Summerville Asset Management Inc | 201,232 |
| NORTHSTAR | TAC Investments LLC | 1,106,777 |
| NORTHSTAR | Yarrow Three LLC | 6,569,224 |
| OMNIA | Yarrow Three LLC | 1,945,676 |
| PBLA | ASIM Holdings LLC | 152,142 |
| PBLA | Atkinson LLC | 4,133,151 |
| PBLA | Augusta Asset Management Inc | 6,800,354 |
| PBLA | Begonia Eight LLC | 9,679,519 |
| PBLA | Blue Daffodil LLC | 21,625,091 |
| PBLA | Blue Violet | 29,229,535 |
| PBLA | Capital Asset Fund I LLC | 18,261,922 |
| PBLA | Carnation Three LLC | 18,371,782 |
| PBLA | Chatsworth Asset Management Inc | 6,654,403 |

| | | |
|---|---|---:|
| PBLA | Chrysanthemum Two LLC | 10,778,042 |
| PBLA | CMC Holding Company LLC | 2,240,751 |
| PBLA | Daisy Seven LLC | 15,930,817 |
| PBLA | Drummond Group LLC | 2,158,498 |
| PBLA | Epping LLC | 4,133,151 |
| PBLA | Flowery Branch LLC | 10,493,670 |
| PBLA | Forsyth LLC | 16,076,953 |
| PBLA | Fortrex LLC | 1,002,947 |
| PBLA | Geranium Two LLC | 17,887,912 |
| PBLA | Gilford Asset Management Inc | 10,612,233 |
| PBLA | Greenfield Capital LLC | 13,078,801 |
| PBLA | Hansen Aerospace LLC | 3,642,656 |
| PBLA | Hooksett LLC | 4,133,151 |
| PBLA | IMW EMR LLC | 11,152,081 |
| PBLA | Red Begonia LLC | 18,775,227 |
| PBLA | Sedwick LLC | 3,751,358 |
| PBLA | Summerville Asset Management Inc | 3,665,941 |
| PBLA | TAC Investments LLC | 4,396,382 |
| PBLA | Weare LLC | 2,066,575 |
| PBLA | Yellow Lotus | 22,151,393 |
| PBLA | Academy Financial Assets LLC | 18,243,836 |
| PBLA | BLH Capital LLC | 10,000,000 |
| PBLA | Capital Asset Management II LLC | 6,080,022 |
| PBLA | Capital Asset Management III LLC | 25,333,425 |
| PBLA | Hampton Asset Management Inc | 17,183,973 |
| PBLA | Iron City Asset Management Inc | 17,183,973 |
| PBLA | Jackson Asset Management Inc | 21,127,973 |
| PBLA | Netherlands Insurance Holdings Inc | 8,000,000 |
| PBLA | Parallel Capital Assets | 14,151,507 |
| PBLA | Standard Investment Capital Ltd | 25,000,000 |
| SNIC | Academy Financial Assets LLC | 5,696,807 |
| SNIC | Augusta Asset Management Inc | 5,177,935 |
| SNIC | Baldwin Asset Management Inc | 8,737,614 |
| SNIC | BMO | 10,000,000 |
| SNIC | Capital Asset Fund I LLC | 6,729,259 |
| SNIC | Capital Asset Fund IV LLC | 6,217,839 |
| SNIC | Capital Asset Fund V LLC | 6,507,986 |
| SNIC | Damascus Asset Management Inc | 6,952,050 |
| SNIC | Ephesus Asset Management Inc | 9,556,890 |
| SNIC | Forest Park Asset Management Inc | 7,957,897 |
| SNIC | Hampton Asset Management Inc | 7,190,615 |
| SNIC | HPCSP Investments LLC | 1,107,502 |
| SNIC | Iron City Asset Management Inc | 3,460,225 |
| SNIC | iTech Funding LLC | 7,679,295 |
| SNIC | Jackson Asset Management Inc | 3,081,444 |
| SNIC | Pierre Mendes | 9,021,000 |
| SNIC | Summerville Asset Management Inc | 8,227,695 |

| | | |
|---|---|---:|
| SNIC | TAC Investments LLC | 3,282,303 |
| VISTA/USAP | Academy Financial Assets LLC | 10,884,397 |
| VISTA/USAP | Academy Financial Assets LLC | 10,091,362 |
| VISTA/USAP | Amherst LLC | 4,546,079 |
| VISTA/USAP | Augusta Asset Management Inc | 9,445,416 |
| VISTA/USAP | Barnstead LLC | 2,020,479 |
| VISTA/USAP | Bow LLC | 4,515,349 |
| VISTA/USAP | Canaan LLC | 3,051,781 |
| VISTA/USAP | Claremont LLC | 4,487,630 |
| VISTA/USAP | Deering LLC | 4,872,488 |
| VISTA/USAP | Derry LLC | 7,891,892 |
| VISTA/USAP | Dunbarton LLC | 3,051,781 |
| VISTA/USAP | Durham LLC | 4,046,292 |
| VISTA/USAP | Effingham LLC | 4,304,546 |
| VISTA/USAP | Farmington LLC | 4,046,292 |
| VISTA/USAP | Fiasco Fine Wine LLC | 4,261,718 |
| VISTA/USAP | Gilford Asset Management Inc | 7,580,166 |
| VISTA/USAP | Goshen LLC | 5,116,800 |
| VISTA/USAP | Henniker LLC | 4,577,671 |
| VISTA/USAP | Littleton LLC | 1,489,392 |
| VISTA/USAP | Londonderry LLC | 5,116,800 |
| VISTA/USAP | Meredith LLC | 4,487,630 |
| VISTA/USAP | Merrimack LLC | 5,117,295 |
| VISTA/USAP | Nashua LLC | 3,051,781 |
| VISTA/USAP | Rindge LLC | 4,703,541 |
| VISTA/USAP | Rumney LLC | 3,242,337 |
| VISTA/USAP | Standard Financial Limited | 10,258,620 |
| VISTA/USAP | Standard Malta Holdings Limited | 10,520,304 |
| VISTA/USAP | Stoddard LLC | 4,539,381 |
| VISTA/USAP | Summerville Asset Management Inc | 3,420,020 |
| VISTA/USAP | Swanzey LLC | 2,123,863 |
| VISTA/USAP | Tybee Island Asset Management Inc | 4,996,086 |
| VISTA/USAP | Wolfeboro LLC | 4,487,630 |
| | | |
| Subtotal | | 1,701,325,388 |
| | Less | |
| CBL | Duplicates through FinCos and PPNs | (222,277,091) |
| BLIC | Duplicates through FinCos and PPNs | (17,728,395) |
| SNIC | Duplicates through FinCos and PPNs | (37,586,499) |
| PBLA | Duplicates through FinCos and PPNs | (39,434,813) |
| Northstar | Duplicates through FinCos and PPNs | (10,128,707) |
| OMNIA | Duplicates through FinCos and PPNs | (1,861,232) |
| Vista/USAP | Duplicates through FinCos and PPNs | (72,302,989) |
| | | |
| Total | | 1,300,005,663 |

**EXHIBIT B**

**JUNIOR LOANS**

[See attached.]

Exhibit B

**ILA Exhibit B - Junior Loans**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Academy Financial Assets LLC | 2,052,643 |
| BLIC | HPCSP Investments LLC | 600,136 |
| CBL | Academy Financial Assets LLC | 24,672,849 |
| CBL | HPCSP Investments LLC | 7,213,662 |
| NORTHSTAR | 3BL Media LLC | 2,938,071 |
| NORTHSTAR | CBV Collections Limited | 1,800,627 |
| NORTHSTAR | CMC Holding Company LLC | 2,968,406 |
| NORTHSTAR | IMW EMR LLC | 1,015,552 |
| NORTHSTAR | MRX Holdings LLC/ M plus | 388,695 |
| PBLA | ASIM Holdings LLC | 690,017 |
| PBLA | Certification for Long-Term Care LLC (CLTC) | 17,777 |
| SNIC | Academy Financial Assets LLC | 4,105,287 |
| SNIC | HPCSP Investments LLC | 1,200,273 |
| STANDARD RE | CBV Collections Limited | 963,886 |
| Total | | 50,627,880 |

# EXHIBIT C
## PREFERRED EQUITY

[See attached.]

Exhibit C

**ILA Exhibit C - Preferred Equity**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| BLIC | Barclays | 6,039,266 |
| BLIC | Capital Asset Fund II LLC | 3,358,610 |
| BLIC | Capital Asset Management II LLC | 1,870,357 |
| BLIC | CV Investments LLC | 1,183,512 |
| BLIC | Franklin Street | 4,993,750 |
| BLIC | Gilford Asset Management Inc | 2,213,163 |
| BLIC | Nom GB 2018 | 1,799,325 |
| CBL | Barclays | 76,706,790 |
| CBL | Capital Asset Fund II LLC | 36,956,583 |
| CBL | Capital Asset Management II LLC | 20,580,545 |
| CBL | CV Investments LLC | 13,022,822 |
| CBL | Franklin Street | 47,998,543 |
| CBL | Gilford Asset Management Inc | 1,740,435 |
| CBL | Nom GB 2018 | 2,189,610 |
| NORTHSTAR | ASL Holding LLC | 10,363,000 |
| NORTHSTAR | Daisy Seven LLC | 1,753,310 |
| NORTHSTAR | Damovo | 2,640,975 |
| NORTHSTAR | iTech Funding LLC | 13,439,503 |
| NORTHSTAR | Konnect Net Holdings LLC | 763,012 |
| NORTHSTAR | Triton Financial Limited | 22,728,850 |
| OMNIA | Flagship Holding LLC | 89,654 |
| OMNIA | MBW Interco LLC | 2,218,741 |
| PBIHL | Flagship Holding LLC | 29,361,871 |
| PBLA | BRC Holding LLC | 3,575,000 |
| PBLA | iTech Funding LLC | 5,727,000 |
| PBLA | LMG Holding LLC | 393,483 |
| PBLA | Nom GB 2018 | 11,826,260 |
| SNIC | Barclays | 10,000,000 |
| SNIC | Capital Asset Fund II LLC | 6,679,361 |
| SNIC | Capital Asset Management II LLC | 3,719,632 |
| SNIC | CV Investments LLC | 2,353,684 |
| SNIC | Franklin Street | 9,999,696 |
| SNIC | Gilford Asset Management Inc | 314,558 |
| SNIC | Nom GB 2018 | 9,368,245 |
| VISTA/AIC | Nom GB 2018 | 22,313,975 |
| Vista/USAP | Barclays | 9,453,943 |
| | | |
| Subtotal | | 399,737,065 |
| Less | | |
| CBL | Duplicates through FinCos and PPNs | (116,169,036) |
| BLIC | Duplicates through FinCos and PPNs | (12,626,835) |
| SNIC | Duplicates through FinCos and PPNs | (28,206,079) |
| PBLA | Duplicates through FinCos and PPNs | (16,217,518) |
| Vista/USAP | Duplicates through FinCos and PPNs | (4,181,196) |

| | | |
|---|---|---|
| Vista/AIC | Duplicates through FinCos and PPNs | (22,313,975) |
| Total | | 200,022,425 |

# EXHIBIT D

## AGERA FINANCING DOCUMENTS

[See attached.]

**ILA Exhibit D - Agera Financing Documents**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Baldwin Asset Management Inc | AGH Parent LLC | 400,401 |
| Capital Asset Fund II LLC | AGH Parent LLC | 2,354,229 |
| Capital Asset Fund IV LLC | Agera Holdings LLC | 10,408,082 |
| Capital Asset Fund V LLC | Agera Holdings LLC | 5,300,000 |
| CBL | Agera Energy LLC | 36,060,940 |
| Derry LLC | Mckinley Ventures Group LLC | 7,891,892 |
| Effingham LLC | AGH Parent LLC | 6,027,503 |
| Iron City Asset Management Inc | AGH Parent LLC | 4,018,683 |
| Littleton LLC | Mckinley Ventures Group LLC | 1,489,392 |
| NORTHSTAR | AGH Parent LLC | 695 |
| OMNIA | AGH Parent LLC | 15,882,097 |
| OMNIA | AGH Parent LLC | 2,265,925 |
| OMNIA | AGH Parent LLC | 20,642,300 |
| Paradise Asset Management Inc | Agera Holdings LLC | 4,548,966 |
| Paradise Asset Management Inc | Red River Developments LLC | 6,039,501 |
| PBIHL | AGH Parent LLC | 9,781,992 |
| PBIHL | AGH Parent LLC | 2,600,000 |
| PBIHL | AGH Parent LLC | 657,288 |
| PBLA | AGH Parent LLC | 3,300 |
| PBLA | AGH Parent LLC | 110,460 |
| PBLA | AGH Parent LLC | 705,575 |
| Rockdale Asset Management Inc | Agera Holdings LLC | 1,900,000 |
| Rockdale Asset Management Inc | Red River Developments LLC | 9,195,384 |
| Stoddard LLC | Mckinley Ventures Group LLC | 4,539,381 |
| Summerville Asset Management Inc | AGH Parent LLC | 658,028 |
| Yarrow Three LLC | AGH Parent LLC | 9,781,992 |
| Yarrow Three LLC | Red River Developments LLC | 23,438,326 |
| Total | | 186,702,332 |

**EXHIBIT E**

**PBLA LOANS**

[See attached.]

**ILA Exhibit E - PBLA Loans**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| PBLA Main | AAPC Holdings LLC | 913,970 |
| PBLA Main | AGH Parent LLC | 7,472 |
| PBLA Main | Academy Financial Assets LLC | 35,080,571 |
| PBLA Main | GBIG Capital LLC | 718,765 |
| PBLA Main | GBIG Capital LLC | 110,599,220 |
| PBLA Main | Flagship Holding LLC | 14,000,000 |
| PBLA Main | Academy Financial Assets LLC | 56,078,258 |
| PBLA Main | Capital Asset Fund I LLC | 28,023,819 |
| PBLA Main | Capital Asset Management II LLC | 11,692,000 |
| PBLA Main | Yarrow Three LLC | 2,285,295 |
| | | |
| Total | | 259,399,370 |

# EXHIBIT F

## NHC EXCLUDED BORROWERS
## & LOANS EXCLUDED FROM NHC

[See attached.]

Exhibit F

**ILA Exhibit F - NHC Excluded Borrowers & Loans Excluded from NHC**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Baldwin Asset Management Inc | BCC Research | 1,484,924 |
| Baldwin Asset Management Inc | UKAT Investment | 2,245,277 |
| Capital Asset Fund I LLC | BCC Holdings LLC | 381,196 |
| Capital Asset Fund I LLC | BCC Research | 209,246 |
| Capital Asset Fund I LLC | PBO Holdings Inc | 123,365 |
| Capital Asset Fund II LLC | BCC Research | 651,473 |
| Capital Asset Fund II LLC | UKAT Investment | 1,808,507 |
| Capital Asset Fund IV LLC | UKAT Investment | 322,948 |
| Capital Asset Fund V LLC | UKAT Investment | 342,821 |
| Chatsworth Asset Management Inc | Automotive Fleet Inv. Ltd | 325,814 |
| Chatsworth Asset Management Inc | UKAT Investment | 566,400 |
| Damascus Asset Management Inc | Automotive Fleet Inv. Ltd | 276,942 |
| Damascus Asset Management Inc | Proactive Software Holdings | 1,017,587 |
| Damascus Asset Management Inc | UKAT Investment | 2,232,427 |
| Ephesus Asset Management Inc | Automotive Fleet Inv. Ltd | 1,345,799 |
| Ephesus Asset Management Inc | UKAT Investment | 1,726,550 |
| Forest Park Asset Management Inc | Automotive Fleet Inv. Ltd | 2,892,516 |
| Forest Park Asset Management Inc | UKAT Investment | 802,691 |
| Gilford Asset Management Inc | BCC Research | 569,222 |
| Gilford Asset Management Inc | UKAT Investment | 1,696,418 |
| Hampton Asset Management Inc | Global Data Insights Limited | 81,392 |
| Hampton Asset Management Inc | UKAT Investment | 2,052,158 |
| Iron City Asset Management Inc | Automotive Fleet Inv. Ltd | 81,453 |
| Iron City Asset Management Inc | Proactive Software Holdings | 708,000 |
| Iron City Asset Management Inc | Proactive Software Holdings | 3,087,565 |
| Iron City Asset Management Inc | UKAT Investment | 372,632 |
| Jackson Asset Management Inc | UKAT Investment | 1,029,896 |
| Kite Asset Management Inc | BCC Research | 2,112,129 |
| Kite Asset Management Inc | UKAT Investment | 1,272,367 |
| Lily Asset Management Inc | Automotive Fleet Inv. Ltd | 3,082,574 |
| Lily Asset Management Inc | UKAT Investment | 535,540 |
| Marshall Asset Management Inc | Automotive Fleet Inv. Ltd | 1,704,194 |
| Marshall Asset Management Inc | BCC Research | 2,274,902 |
| Marshall Asset Management Inc | UKAT Investment | 54,546 |
| NORTHSTAR | Automotive Fleet Inv. Ltd | 5,813,153 |
| NORTHSTAR | UKAT Investment | 18,552,987 |
| PBLA | UKAT Investment | 1,729,032 |
| Pierre Mendes | Global Data Insights Limited | 12,294,382 |
| Pierre Mendes | UKAT Investment | 1,127,833 |
| Summerville Asset Management Inc | Automotive Fleet Inv. Ltd | 456,139 |
| Summerville Asset Management Inc | Global Data Insights Limited | 3,956,083 |
| Swanzey LLC | BCC Holdings LLC | 2,123,863 |
| Tybee Island Asset Management Inc | Automotive Fleet Inv. Ltd | 59,733 |
| Tybee Island Asset Management Inc | UKAT Investment | 536,590 |

Total            86,121,265

# EXHIBIT G

## INSURANCE HOLD CO-RELATED DEBT

[See attached.]

**ILA Exhibit G - Insurance Hold Co-Related Debt**

| Lender | Borrower | Principal and Interest |
|---|---|---|
| Alstead LLC | GBIG Capital LLC | 4,006,239 |
| Augusta Asset Management Inc | GBIG Capital LLC | 1,250,019 |
| Augusta Asset Management Inc | GBIG Holdings Inc | 7,278,633 |
| Baldwin Asset Management Inc | GBIG Holdings Inc | 4,632,127 |
| Baldwin Asset Management Inc | PBX Bermuda Holdings Ltd | 563,731 |
| BLIC | Netherlands Insurance Holdings Inc | 804,200 |
| Bow LLC | GBIG Capital LLC | 4,515,349 |
| Canaan LLC | GBIG Holdings Inc | 3,051,781 |
| Capital Asset Fund II LLC | GBIG Capital LLC | 387,888 |
| Capital Asset Fund II LLC | PBX Bermuda Holdings Ltd | 268,443 |
| Capital Asset Fund IV LLC | Beaufort Holding S.A. | 4,205,470 |
| Capital Asset Fund IV LLC | PBX Bermuda Holdings Ltd | 429,509 |
| Capital Asset Fund IV LLC | PBX Bermuda Holdings Ltd | 10,637,608 |
| Capital Asset Fund IV LLC | PBX Holdings LLC | 440,745 |
| Capital Asset Fund V LLC | GBIG Holdings Inc | 1,525,890 |
| Capital Asset Fund V LLC | Netherlands Insurance Holdings Inc | 5,026,250 |
| Capital Asset Fund V LLC | PBX Bermuda Holdings Ltd | 536,887 |
| CBL | Beaufort Holding S.A. | 5,346,223 |
| CBL | Netherlands Insurance Holdings Inc | 12,083,106 |
| Chatsworth Asset Management Inc | GBIG Holdings Inc | 3,051,781 |
| Chrysanthemum Two LLC | PBX Holdings LLC | 10,832,753 |
| Claremont LLC | NIH Capital LLC | 4,487,630 |
| Daisy Seven LLC | Netherlands Insurance Holdings Inc | 17,826,787 |
| Damascus Asset Management Inc | GBIG Holdings Inc | 4,247,993 |
| Damascus Asset Management Inc | PBX Bermuda Holdings Ltd | 322,132 |
| Dunbarton LLC | GBIG Holdings Inc | 3,051,781 |
| Ephesus Asset Management Inc | GBIG Holdings Inc | 4,069,041 |
| Hampton Asset Management Inc | GBIG Holdings Inc | 4,308,585 |
| Hampton Asset Management Inc | Netherlands Insurance Holdings Inc | 3,585,483 |
| Hampton Asset Management Inc | PBX Holdings LLC | 2,031,695 |
| Henniker LLC | GBIG Holdings Inc | 4,577,671 |
| Iron City Asset Management Inc | GBIG Holdings Inc | 2,300,855 |
| Jackson Asset Management Inc | GBIG Capital LLC | 2,079,105 |
| Jackson Asset Management Inc | GBIG Holdings Inc | 1,802,044 |
| Kite Asset Management Inc | PBX Bermuda Holdings Ltd | 993,240 |
| Lily Asset Management Inc | Netherlands Insurance Holdings Inc | 450,171 |
| Londonderry LLC | NIH Capital LLC | 5,118,640 |
| Marshall Asset Management Inc | GBIG Capital LLC | 739,052 |
| Marshall Asset Management Inc | PBX Bermuda Holdings Ltd | 429,509 |
| Marshall Asset Management Inc | PBX Holdings LLC | 2,708,188 |
| Meredith LLC | NIH Capital LLC | 4,487,630 |
| Nashua LLC | GBIG Holdings Inc | 3,051,781 |
| New Ipswich LLC | GBIG Capital LLC | 4,515,349 |
| NORTHSTAR | Beaufort Holding S.A. | 14,252,312 |

| | | |
|---|---|---:|
| NORTHSTAR | Beaufort Holding S.A. | 2,270,310 |
| NORTHSTAR | Beaufort Holding S.A. | 5,101,016 |
| NORTHSTAR | GBIG Capital LLC | 10,900,000 |
| NORTHSTAR | GBIG Capital LLC | 20,936,657 |
| NORTHSTAR | PBX Bermuda Holdings Ltd | 8,243,544 |
| OMNIA | GBIG Capital LLC | 172,504 |
| Paradise Asset Management Inc | Netherlands Insurance Holdings Inc | 158,884 |
| Paradise Asset Management Inc | PBX Bermuda Holdings Ltd | 214,755 |
| PBIHL | GBIG Capital LLC | 958,353 |
| PBLA | GBIG Capital LLC | 10,100,000 |
| PBLA | New England Capital LLC | 11,891,244 |
| Pierre Mendes | GBIG Capital LLC | 719,930 |
| Rockdale Asset Management Inc | PBX Bermuda Holdings Ltd | 429,509 |
| SNIC | GBIG Holdings Inc | 6,103,562 |
| SNIC | Netherlands Insurance Holdings Inc | 2,010,500 |
| SNIC | PBX Bermuda Holdings Ltd | 212,978 |
| STANDARD RE | GBIG Holdings Inc | 686,651 |
| Stratham LLC | GBIG Capital LLC | 3,864,696 |
| Summerville Asset Management Inc | GBIG Capital LLC | 9,178,526 |
| Summerville Asset Management Inc | GBIG Capital LLC | 382,785 |
| Tybee Island Asset Management Inc | GBIG Capital LLC | 413,507 |
| Tybee Island Asset Management Inc | GBIG Holdings Inc | 4,623,343 |
| Wolfeboro LLC | NIH Capital LLC | 4,487,630 |
| | | |
| Total | | 276,372,192 |

# EXHIBIT H
## SPVs

Secured Loan-Backed Funding I, LLC

Secured Loan-Backed Funding II, LLC

Secured Loan-Backed Funding III, LLC

Secured Loan-Backed Funding IV, LLC

Secured Loan-Backed Funding V, LLC

Secured Loan-Backed Funding VI, LLC

Secured Loan-Backed Funding VII, LLC

Secured Loan-Backed Funding VIII, LLC

Secured Loan-Backed Funding IX, LLC

Secured Loan-Backed Funding X, LLC

Secured Loan-Backed Funding XI, LLC

Secured Loan-Backed Funding XII, LLC

Secured Loan-Backed Funding XIII, LLC

Secured Loan-Backed Funding XIV, LLC

Secured Loan-Backed Funding XV, LLC

Secured Loan-Backed Funding XVI, LLC

Secured Loan-Backed Funding XVII, LLC

Alstead, LLC

Amherst, LLC

Atkinson, LLC

Barnstead, LLC

Barrington, LLC

Berlin, LLC

Bow, LLC

Canaan, LLC

Claremont, LLC

Conway, LLC

Deering, LLC

Derry, LLC

Dunbarton, LLC

Durham, LLC

Effingham, LLC

Epping, LLC

Farmington, LLC

Franconia, LLC

Gilford, LLC

Goffstown, LLC

Goshen, LLC

Hampstead, LLC

Henniker, LLC

Hooksett, LLC

Hopkinton, LLC

Jaffrey, LLC

Laconia, LLC

Littleton, LLC

Londonderry, LLC

Loudon, LLC

Madbury, LLC

Meredith, LLC

Merrimack, LLC

Nashua, LLC

New Ipswich, LLC

Plaistow, LLC

Raymond, LLC

Rindge, LLC

Rumney, LLC

Sandown, LLC

Somersworth, LLC

Stoddard, LLC

Stratham, LLC

Swanzey, LLC

Weare, LLC

Wolfeboro, LLC

Anaconda, LLC

Athens, LLC

Augusta, LLC

Berkeley Lake, LLC

Cobra, LLC

Columbus, LLC

Macon, LLC

Shirt, LLC

Tornado, LLC

Valdosta, LLC

Ahoskie, LLC

Asheboro, LLC

Casar, LLC

Clayton, LLC

Cowper, LLC

Creston, LLC

Faison, LLC

Fayetteville, LLC

Greenville, LLC

Holt, LLC

Iredell, LLC

Jacksonville, LLC

Kenly, LLC

Louisburg, LLC

Morresville, LLC

Norlina, LLC

Whitaker Mill, LLC

Williamson, LLC

AAH Loan-Backed Funding, LLC

BCC Junior Loan-Backed Funding, LLC

BCC Senior Loan-Backed Funding, LLC

BKT Loan-Backed Funding, LLC

CLTC Junior Loan-Backed Funding, LLC

CLTC Senior Loan-Backed Funding, LLC

CMC Loan-Backed Funding, LLC

SFM Loan-Backed Funding, LLC

TCC Junior Loan-Backed Funding, LLC

TCC Senior Loan-Backed Funding, LLC

TCI Loan-Backed Funding, LLC

## REVOLVING CREDIT AGREEMENT

THIS REVOLVING CREDIT AGREEMENT (this "**Agreement**") is entered into as of June 27, 2019 to be effective as of June 6, 2019 (the "**Effective Date**") by and between Academy Financial Assets, LLC, a North Carolina limited liability company (the "**Borrower**" or "**Company**"), and Colorado Bankers Life Insurance Company, a North Carolina insurance company (the "**Lender**").

WHEREAS, the Borrower desires to obtain from the Lender, and the Lender desires to provide to the Borrower, an unsecured revolving loan facility permitting the Borrower to obtain credit extensions periodically from the Lender upon request, subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants contained in this Agreement, the Borrower and the Lender agree as follows:

1. TERMS OF BORROWING.

a. <u>Credit Facility</u>. Subject to the following terms and conditions, the Lender agrees to make a credit facility available to the Borrower (the "**Credit Facility**") in the maximum amount of forty million and 00/100 Dollars ($40,000,000) (the "**Maximum Credit Balance**") pursuant to which the Lender will make loans to the Borrower (each, an "**Advance**") in such amounts as the Borrower may request from time to time. The aggregate outstanding principal balance of all Advances made hereunder may not exceed the Maximum Credit Balance. Amounts borrowed under the Credit Facility may be repaid prior to the Termination Date (defined below) without penalty and may be re-borrowed subject to the terms hereof. The Lender shall maintain a record of all Advances made hereunder, all interest accrued hereunder, and all payments and prepayments made by the Borrower, and shall provide such record to the Borrower promptly upon request. Absent demonstrated error, such record shall be binding on the Borrower. It is agreed that (x) the $5 million advance made by the Lender to the Borrower in April 2019 and (y) the $6 million advance made by the Lender to the Borrower on June 6, 2019 are deemed, and shall be, amounts outstanding hereunder as of the Effective Date.

i. the Lender's commitment to lend hereunder terminates on June 30th, 2020 (the "**Termination Date**"), if not sooner terminated under Section 7 below.

ii. the Lender shall not be obligated to make any Advance which would cause the outstanding principal balance of the Credit Facility (the "**Credit Balance**") to exceed the Maximum Credit Balance.

iii. the Lender shall not be obligated to make any Advance if an Event of Default, as defined below, or an event which, with the giving of notice or lapse of time, or both, would become an Event of Default (a "**Potential Default**") has occurred and has not been waived by the Lender or cured by the Borrower.

b.      Interest.  The Borrower agrees to pay interest on the Credit Balance from time to time as provided herein.  Interest will accrue on the daily outstanding Credit Balance at the rate of five percent (5%) per annum (the "**Applicable Interest Rate**").  All interest owing hereunder shall be computed on the basis of a year of 365 days and calculated in each case for the actual number of days elapsed.  All accrued interest hereunder shall be due on each monthly anniversary of the Effective Date (each, an "**Interest Payment Date**"); provided, however, that on the first two Interest Payment Dates hereunder, all interest accrued hereunder shall not be payable in cash but shall be added to the Credit Balance as an additional Advance and shall subsequently bear interest at the Applicable Interest Rate (or the interest rate per annum as provided under clause (c) immediately below, if applicable).

c.      Default Interest.  After the occurrence and during the continuance of an Event of Default, at the Lender's option, the interest rate applicable to the then-outstanding Credit Balance may be increased to the lesser of the maximum rate chargeable under applicable law and twelve percent (12%) per annum ("**Default Interest**").

d.      Repayment of Principal and Interest.  The Borrower agrees to repay all Advances made hereunder. The Credit Balance and all accrued, unpaid interest thereon, if any, will be due and payable on June 30th, 2020 (the "**Maturity Date**"), subject to acceleration upon the occurrence of an Event of Default as provided herein.  The Borrower may prepay accrued interest and/or the principal of the Credit Balance in whole or in part at any time without penalty.

e.      Method of Borrowing.  Requests for Advances may be submitted by the Borrower in writing utilizing the Advance Request Certificate in the form of **Exhibit A** hereto. The Lender shall be required to honor any such request it reasonably believes to be genuine. Advances shall be disbursed directly to the Borrower or as determined by the Lender with the written consent of the Borrower.

f.      Optional Reduction. Upon at least two (2) business days' prior written notice (or telephonic notice promptly confirmed in writing) to the Lender (which notice shall be irrevocable), the Borrower may reduce the Maximum Credit Balance in part or terminate the Credit Facility in whole; provided, that no such reduction shall be permitted which would reduce the Maximum Credit Balance (after giving effect thereto) to an amount less than the Credit Balance then outstanding.

g.      Late Charge. In the event that any payment due under this Section 1 is not received by the Lender within fifteen (15) days of the date such payment is due (inclusive of the date when due), the Borrower shall pay to the Lender a late charge equal to five percent (5%) of such payment. Such fee shall be payable on the earlier of (i) the date of demand by the Lender and (ii) the date that the Borrower makes the late payment.

2.  REPRESENTATIONS AND WARRANTIES.

To induce the Lender to enter into this Agreement, the Borrower represents and warrants as follows:

2

a.  Formation. The Borrower is a limited liability company duly organized, validly existing, and in good standing under the laws of its state of formation, has all requisite power and authority to carry on its business as now conducted, and, except as would not be expected to result in a Material Adverse Effect, is duly qualified or licensed and in good standing to do business as a foreign entity in all jurisdictions in which the Borrower does business. As used herein, "**Material Adverse Effect**" means any of the following: (i) a material adverse change in, or material adverse effect upon, the business, condition (financial or otherwise), operations, performance or properties of the Borrower; (ii) a material impairment of the ability of the Borrower to perform its obligations under this Agreement; or (iii) a material adverse effect upon the legality, validity, binding effect or enforceability of the Agreement or the rights and remedies of the Lender under the Agreement.

b.  Borrower's Authorization. The execution, delivery and performance by the Borrower of this Agreement and any and all other instruments, agreements, documents and writings executed in connection with this agreement (the "**Loan Documents**") (i) are within the Borrower's powers, (ii) have been authorized by all necessary limited liability company action, and (iii) do not and will not contravene the Borrower's articles of organization or operating agreement, violate any provision of law or result in a breach of or default under any other material agreement to which the Borrower is a party.

c.  Litigation. There is no pending action, claim, lawsuit, investigation or proceeding against the Borrower before any court, governmental agency, arbitrator or arbitration panel, which if decided adversely to the Borrower would have a Material Adverse Effect or would draw into question the validity or enforceability of this Agreement or any other Loan Document ("**Material Litigation**").

d.  Valid Obligations. This Agreement and all Loan Documents constitute legal, valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with their terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to principles of equity, regardless of whether considered in a proceeding in equity or at law.

e.  Taxes. The Borrower (i) has filed all tax reports and returns, if any, required to be filed, including but not limited to reports and returns concerning income, franchise, employment, sales and use, and property taxes; and (ii) has paid all of its tax liabilities, if any, which were due on or prior to the date hereof.

f.  No Default in Other Agreements. The Borrower is not in default under any material contract or other material binding obligation. The execution, delivery and performance by the Borrower of this Agreement and each of the other Loan Documents (i) will not violate or result in a default under any indenture, material agreement or other material instrument binding on the Borrower or any of its affiliates or any of its assets or give rise to a right thereunder to require any payment to be made by the Borrower or any of its affiliates and (ii) will not result in the creation or imposition of any lien on any asset of the Borrower or any of its affiliates, except liens (if any) created under the Loan Documents.

3

g.      Governmental Approvals. The execution, delivery and performance by the Borrower of this Agreement and each of the other Loan Documents (i) do not require any consent or approval of, registration or filing with, or any action by, any governmental authority, except those as have been obtained or made and are in full force and effect or where the failure to do so, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect, and (ii) will not violate any order of any Governmental Authority.

h.      Compliance with Laws and Agreements. The Borrower and each of its affiliates is in compliance with (i) all applicable laws, rules, regulations and orders of any governmental authority, and (ii) all indentures, agreements or other instruments binding upon it or its properties, except where non-compliance, either singly or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

i.      Investment Company Act, Etc.  The Borrower is not an "investment company," as defined in, or subject to regulation under, the Investment Company Act of 1940, as amended, or is otherwise subject to any other regulatory scheme limiting its ability to incur debt.

j.      Disclosure. The Borrower has disclosed to the Lender all agreements, instruments, and corporate or other restrictions to which the Borrower or any of its affiliates is subject, and all other matters known to any of them, that, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect.  None of the reports (including without limitation all reports that the Borrower is required to file with the Securities and Exchange Commission, if any), financial statements, certificates or other information furnished by or on behalf of the Borrower to the Lender in connection with the negotiation of this Agreement or any other Loan Document or delivered hereunder or thereunder (as modified or supplemented by any other information so furnished) contains any material misstatement of fact or omits to state any material fact necessary to make the statements therein, taken as a whole, in light of the circumstances under which they were made, not misleading.

k.      Solvency. After giving effect to the execution and delivery of the Loan Documents and the making of the Advances under this Agreement, the Borrower is solvent.

l.      Anti-Corruption Laws and Sanctions. The Borrower has implemented and maintains in effect policies and procedures designed to ensure compliance in all material respects by the Borrower and its directors, officers, employees and agents with all laws, rules, and regulations of any jurisdiction applicable to the Borrower from time to time concerning or relating to bribery or corruption ("**Anti-Corruption Laws**") and applicable economic or financial sanctions or trade embargoes administered or enforced from time to time by (a) the U.S. government, including those administered by OFAC or the U.S. Department of State or (b) the United Nations Security Council, the European Union or Her Majesty's Treasury of the United Kingdom ("**Sanctions**"), and the Borrower and its directors, officers and employees and to the knowledge of the Borrower its agents, are in compliance with Anti-Corruption Laws and applicable Sanctions.  None of (i) the Borrower, any affiliate of Borrower or any of its or their respective directors, officers or employees, or (ii) to the knowledge of the Borrower, any agent of the Borrower or any affiliate of Borrower that will act in any capacity in connection with or benefit from the Credit Facility, is a Sanctioned Person. The term "**Sanctioned Person**" means (x) a

4

person listed in any Sanctions-related list of designated persons maintained by OFAC, the U.S. Department of State, the United Nations Security Council, the European Union or any EU member state, (y) a person located, organized or resident in a country, region or territory that is, or whose government is, the subject or target of any Sanctions ("**Sanctioned Country**") or (z) a person controlled by any such person. No Credit Facility, Advance, use of proceeds or other transactions will violate Anti-Corruption Laws or applicable Sanctions.

3. CONDITIONS PRECEDENT.

a.　　Conditions Precedent to All Advances. The obligation of the Lender to make each Advance, including the initial Advance (unless expressly provided otherwise), shall be subject to satisfaction of the following conditions precedent, unless unambiguously waived by Lender in writing:

i.　　the Borrower shall have duly executed and delivered to the Lender this Agreement;

ii.　　the Borrower shall have duly executed and delivered to the Lender a promissory note evidencing the Credit Facility;

iii.　　the Borrower shall have delivered to the Lender a certificate of the Secretary or Assistant Secretary of the Borrower, attaching and certifying copies of its limited liability company operating agreement and of the resolutions of its managers or members or other appropriate officers, authorizing the execution, delivery and performance of this Agreement and all Loan Documents and certifying the name, title and true signature of each officer of the Borrower executing the Loan Documents;

iv.　　the Borrower shall have delivered to the Lender certified copies of the articles of organization of the Borrower, together with certificates of good standing or existence, as may be available from the Secretary of State of the jurisdiction of organization of the Borrower and each other jurisdiction where Borrower is required to be qualified to do business as a foreign limited liability company;

v.　　except with respect to the initial Advance, the Borrower shall have executed and delivered to the Lender an Advance Request Certificate in the form of **Exhibit A** attached hereto;

vi.　　the Borrower shall have duly executed and delivered to the Lender a funds disbursement agreement;

vii.　　the Borrower shall have delivered to the Lender all documentation and other information with respect to the Borrower that the Lender reasonably believes is required by regulatory authorities under applicable "know-your-customer" and anti-money laundering rules and regulations, including without limitation the Patriot Act;

5

viii.     the representations and warranties contained in <u>Section 2</u> above and all Loan Documents shall be true and correct in all respects on and as of the date of such Advance as though made on and as of such date;

ix.     no event has occurred and is continuing, or would result from such Advance immediately after giving effect thereto, which constitutes an Event of Default or Potential Default;

x.     no proceeding in bankruptcy shall have been commenced against or involving the Borrower or its affiliates, and the Borrower and all of its affiliates shall not be insolvent or have made an assignment for the benefit of its creditors; and no event or series of events shall have occurred which in the opinion of the Lender has had or could reasonably be expected to have a Material Adverse Effect;

xi.     the Borrower shall have delivered to the Lender a certificate signed by an authorized representative of Borrower confirming compliance with the conditions set forth in items (viii)-(x); and

xii.     the Borrower shall have delivered to the Lender such other documents, certificates, information or legal opinions as the Lender may reasonably request, all in form and substance satisfactory to the Lender.

The making of each Advance shall be deemed to constitute a representation and warranty by the Borrower on the date thereof as to the matter specified in items (viii)-(x) above.

4.  AFFIRMATIVE COVENANTS.

So long as any Credit Balance or any Debt (as hereinafter defined) of the Borrower to the Lender remains unpaid or the Lender has any commitment to lend hereunder, the Borrower will:

a.     <u>Corporate Existence</u>.  Preserve and maintain its existence, rights, licenses, permits, privileges, material intellectual property and franchises in its state of formation and which are material to the conduct of its business and, except as would not reasonably be expected to result in a Material Adverse Effect, qualify and remain qualified and in good standing as a foreign entity in each jurisdiction in which such qualification is necessary in view of its operation or ownership of its properties;

b.     <u>Payment of Obligations</u>.  Pay or discharge when due all obligations including but not limited to wages, trade accounts, and taxes of all kinds, except those which the Borrower is in good faith contesting by appropriate proceedings;

c.     <u>Notice of Default, Change in Entity, Litigation and Material Events</u>.  Promptly notify the Lender in writing, which such writing shall include a written statement of an officer of Borrower setting forth the details of the event or development requiring such notice and any action taken or proposed to be taken with respect thereto, of (i) the occurrence of any Event of Default or Potential Default; (ii) any change in its name, address, form of entity or organizational or capital

6

structure; (iii) the threat of or commencement of any Material Litigation; and (iv) any other development that results in, or could reasonably be expected to result in, a Material Adverse Effect;

d. <u>Compliance with Laws</u>. Comply with all applicable laws, rules, regulations and orders except where failure to do so would not reasonably be expected to result in a Material Adverse Effect;

e. <u>Conduct of Business</u>. Maintain and conduct the business of the Borrower in the ordinary course without any material change in the nature of the Borrower's business.

f. <u>Books and Records</u>. Keep proper books of record and account in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities to the extent necessary to prepare financial statements in conformity with generally accepted accounting principles in the United States consistently applied ("**GAAP**").

g. <u>Taxes, Charges and Liens</u>. Pay and discharge when due all of its indebtedness, liabilities and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens of every kind and nature, imposed upon them or their properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of their properties, income, or profits except that which the Borrower is in good faith contesting by appropriate proceedings;

h. <u>Performance</u>. Perform and comply in all material respects, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, the Loan Documents and all other instruments and agreements between the Borrower and the Lender;

i. <u>Compliance with Governmental Requirements</u>. Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of its properties, business and operations; and

j. <u>Use of Proceeds</u>. Use the proceeds of each Advance only for working capital needs and for other general corporate purposes of the Borrower and any of its subsidiaries; provided, there shall be no restriction on use of proceeds to pay down insurance-related obligations and pay insurance-related interest, and all such uses are deemed approved; provided, further, that: (i) use of proceeds of any Advance must be approved by the Lender prior to distribution of the Advance; (ii) no part of the proceeds of any Advance will be used, whether directly or indirectly, for any purpose that would violate any rule or regulation of the Board of Governors of the Federal Reserve System, including Regulations T, U or X, or in any manner which would cause the representations contained in <u>Section 2.1</u> of this Agreement to be false; (iii) the Borrower will not request any Advance, and the Borrower will not use, and procure that its affiliates and its and their respective directors, officers, employees and agents will not use, the proceeds of any Advance (x) in the furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any person in violation of any Anti-Corruption Laws, (y) for the purpose of funding, financing or facilitating any activities, business or transaction of or with any Sanctioned Person, or in any Sanctioned Country, to the extent such activities, businesses or transaction would be prohibited by Sanctions if conducted by a corporation incorporated in the

7

United States or in an European Union member state or (z) in any manner that would result in the violation of any Sanctions applicable to any party hereto; and (iv) for the avoidance of doubt, no proceeds of any Advance may be used for payments on homes, airplanes or yachts.

## 5. NEGATIVE COVENANTS.

So long as any Credit Balance or any Debt (as hereinafter defined) of the Borrower to the Lender remains unpaid or the Lender has any commitment to lend hereunder, without the prior written consent of the Lender, the Borrower will not:

a. Guaranty. Guarantee or become liable in any way as surety for, or pledge or hypothecate any assets as security for, any liability or obligation of any other person or entity;

b. Merger or Sale. Merge into or consolidate with any corporation or other entity, or sell, lease, assign or otherwise transfer or dispose of any material portion of its assets;

c. Debt. Create, incur, assume or permit to exist, any Debt (as defined below) which is senior to or pari passu with the Debt incurred pursuant to this Agreement, except (i) Debt to the lenders identified under that certain Loan and Security Agreement dated as of March 31, 2017 in which Lender serves as administrative agent for the lenders thereto or (ii) Debt incurred by the Borrower in the ordinary course of business for the acquisition of goods or services. "**Debt**" means all (i) obligations of Borrower for borrowed money or for the deferred purchase price of goods or services; (ii) obligations of Borrower as lessee under leases which shall have been or should be, in accordance with GAAP, recorded as capital leases on a balance sheet of the Borrower under GAAP, and the amount of such obligations shall be the capitalized amount thereof determined in accordance with GAAP (provided, however, notwithstanding anything to the contrary herein, for purposes of determining the amount of any outstanding Debt, no effect shall be given to (a) any election by the Borrower to measure an item of Debt using fair value (as permitted by Financial Accounting Standards Board Accounting Standards Codification 825-10-25 (formerly known as FASB 159) or any similar accounting standard) or (b) any accounting treatment pursuant to GAAP resulting from the implementation of Financial Accounting Standards Board ASU No. 2016-02, Leases (Topic 842), to the extent such adoption would require recognition of a lease liability where such lease (or similar arrangement) would not have required a lease liability under GAAP as in effect on December 31, 2018); (iii) obligations of Borrower under direct or indirect guaranties in respect of, and obligations (contingent or otherwise) to purchase or otherwise acquire, or otherwise assure a creditor against loss in respect of, indebtedness or obligations of the kinds referred to in clause (i) or (ii) above; (iv) obligations of Borrower evidenced by bonds, debentures, notes or other similar instruments; (v) obligations of Borrower under any conditional sale or other title retention agreement(s) relating to property acquired by the Borrower; (vi) obligations, contingent or otherwise, of Borrower in respect of letters of credit, acceptances or similar extensions of credit; and (vii) indebtedness of a third party secured by any lien on property owned by Borrower, whether or not such indebtedness has been assumed by such person; and (viii) all obligations of Borrower, contingent or otherwise, to purchase, redeem, retire, or otherwise acquire for value any capital stock of borrower.

d.    Change of Control.  Allow a Change of Control of the Borrower.  For the purposes of this Agreement, "**Change of Control**" means any transaction of the Borrower involving (i) the merger or consolidation of the Borrower into or with another entity where the Borrower's membership interest holders receive less than fifty percent (50%) of the voting securities of the new or continuing entity, (ii) the sale or all or substantially all of the Borrower's assets or properties, (iii) any person not already a membership interest holder (other than the estate of such interest holder, his/her family and/or a trust maintained for the benefit of any of the foregoing) of the Borrower becoming a beneficial owner, directly or indirectly, of the securities of the Borrower representing fifty percent (50%) or more of the combined voting power of the Borrower's then outstanding securities, (iv) a change in the manager(s) of the Borrower, or (v) the Borrower terminating its business or liquidating its assets.  For purposes of clarity, any Change of Control anticipated by the MOU (defined below) and approved by the Lender shall be permitted hereunder;

e.    Charter Documents.  Amend, repeal or change, directly or indirectly, any of the provisions of the articles of organization, or operating agreement, of the Borrower without the written consent of the Lender;

f.    Liquidations or Recapitalization.  Authorize or effect any transaction that results, directly or indirectly, in the liquidation or dissolution of the Borrower or effect a recapitalization or reorganization of the Borrower in any form of transaction;

g.    Negative Pledge. Create, incur, assume or suffer to exist, or permit any of its subsidiaries to create, incur, assume or suffer to exist, any lien on any of its assets or property now owned or hereafter acquired, except for (i) liens created in favor of Lender pursuant to the Loan Documents; (ii) liens imposed by law for taxes not yet due or which are being contested in good faith by appropriate proceedings and with respect to which adequate reserves are being maintained in accordance with GAAP; (iii) statutory liens of landlords and liens of carriers, warehousemen, mechanics, materialmen and other liens imposed by law created in the ordinary course of business for amounts not yet due or which are being contested in good faith by appropriate proceedings and with respect to which adequate reserves are being maintained in accordance with GAAP; (iv) pledges and deposits made in the ordinary course of business in compliance with workers' compensation, unemployment insurance and other social security laws or regulations; (v) deposits to secure the performance of bids, trade contracts, leases, statutory obligations, surety and appeal bonds, performance bonds and other obligations of a like nature, in each case in the ordinary course of business; (vi) judgment and attachment liens not giving rise to an Event of Default or liens created by or existing from any litigation or legal proceeding that are currently being contested in good faith by appropriate proceedings and with respect to which adequate reserves are being maintained in accordance with GAAP; and (vii) easements, zoning restrictions, rights-of-way and similar encumbrances on real property imposed by law or arising in the ordinary course of business that do not secure any monetary obligations and do not materially detract from the value of the affected property or materially interfere with the ordinary conduct of business of the Borrower taken as a whole (provided, that nothing described in items (ii) through (vii) shall include any lien securing indebtedness).

h.    Investments, Loans, Etc. Purchase, hold or acquire (including pursuant to any merger with any entity that was not a wholly-owned subsidiary prior to such merger), any stock,

9

evidence of indebtedness or other securities (including any option, warrant, or other right to acquire any of the foregoing) of, make or permit to exist any loans or advances to, guarantee any obligations of, or make or permit to exist any investment or any other interest in, any other entity (all of the foregoing being collectively called "**Investments**"), or purchase or otherwise acquire (in one transaction or a series of transactions) any assets of any other entity that constitute a business unit, except: (i) direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States (or by any agency thereof to the extent such obligations are backed by the full faith and credit of the United States), in each case maturing within one year from the date of acquisition thereof; (ii) commercial paper having the highest rating, at the time of acquisition thereof, of S&P or Moody's and in either case maturing within six (6) months from the date of acquisition thereof; (iii) certificates of deposit, bankers' acceptances and time deposits maturing within one hundred eighty (180) days of the date of acquisition thereof issued or guaranteed by or placed with, and money market deposit accounts issued or offered by, any domestic office of any commercial bank organized under the laws of the United States or any state thereof which has a combined capital and surplus and undivided profits of not less than $500,000,000.00; (iv) fully collateralized repurchase agreements with a term of not more than thirty (30) days for securities described in item (i) above and entered into with a financial institution satisfying the criteria described in item (iii) above; (v) mutual funds investing solely in any one or more of the Investments described in clauses (i) through (iv) above; (vi) Investments existing on the date hereof and disclosed to Lender prior to the execution hereof; and (vii) extensions of credit in the nature of accounts receivable or notes receivable arising from the grant of trade credit in the ordinary course of business, Investments received in satisfaction thereof from financially troubled account debtors if reasonably necessary to limit loss, and Investments received in connection with the bankruptcy or reorganization of suppliers and customers.

i.      Restricted Payments. Without the prior written consent of the Lender, the Borrower will not declare or make, or agree to pay or make, directly or indirectly, any distributions on any class of its capital stock or make any payment on account of, or set apart assets for a sinking or other analogous fund for, the purchase, redemption, retirement, defeasance or other acquisition of, any shares of capital stock, except for a tax distribution, provided, that no Potential Default or Event of Default has occurred and is continuing at the time such tax distribution is made.

j.      Transactions with Affiliates. The Borrower will not, and will not permit any of its subsidiaries to, sell, lease or otherwise transfer any property or assets to, or purchase, lease or otherwise acquire any property or assets from, or otherwise engage in any other transactions with, any of its affiliates, except (a) in the ordinary course of business at prices and on terms and conditions not less favorable to the Borrower or such subsidiary than could be obtained on an arm's-length basis from unrelated third parties, (b) transactions between or among the Borrower and its subsidiaries not involving any other affiliates, and (c) as permitted by the MOU (as defined below).

k.      Amendment to Material Documents. The Borrower will not, and will not permit any subsidiary to, amend, modify or waive any of its rights in a manner materially adverse to the Lender under its articles of organization, operating agreement or other organizational documents.

10

l.      Accounting Changes. The Borrower will not, and will not permit any subsidiary to, make any significant change in accounting treatment or reporting practices, except as required by GAAP, or change the fiscal year of the Borrower or of any subsidiary, except to change the fiscal year of a subsidiary to conform its fiscal year to that of the Borrower.

6. DEFAULT.

If any of the following events shall occur and be continuing, it shall be an event of default ("**Event of Default**"):

a.      Non-Payment. The Borrower fails to pay any principal of the Credit Balance payable by the Borrower to the Lender pursuant to this Agreement when due, or the Borrower fails to pay any interest or any other sums payable by the Borrower to the Lender pursuant to the Agreement to the Lender within ten (10) days after any such interest or other sum payable is due;

b.      Representations. Any representation or warranty made by the Borrower herein or in connection herewith proves to have been incorrect in any material respect when made;

c.      Breach of Negative Covenants. The Borrower fails to observe or comply with any of the covenants in Section 5 of this Agreement;

d.      Breach of Covenants. The Borrower fails to perform or observe any other term, covenant or agreement contained in this Agreement, and such failure has not been cured within thirty (30) days after the Lender has notified the Borrower of such failure;

e.      Insolvency. The Borrower generally fails to pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the Borrower seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property; or the Borrower shall take any corporate action to authorize any of the actions set forth above in this subsection;

f.      Judgments. Any judgment or order for the payment of money shall be rendered against the Borrower and either (i) enforcement proceedings shall have been commenced by any creditor upon such judgment or order, or (ii) there shall be any period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect;

g.      Non-Monetary Judgments. Any non-monetary judgment or order shall be rendered against the Borrower that could reasonably be expected to have a Material Adverse Effect, and there shall be a period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect;

11

h.      Change of Control. A Change of Control shall occur or exist;

i.      Material Adverse Effect. Any event or circumstance occurs that has a Material Adverse Effect; or

j.      Restructuring Plan. The restructuring plan set forth in the agreed Memorandum of Understanding by and among Lender, certain affiliates of Borrower, and the other parties named therein (the "**MOU**") terminates or is not effective as of March 31, 2020.

7.  REMEDIES.

Upon the occurrence of any Event of Default, the Lender shall have the right:

a.      Further Advances.  To declare the Credit Facility and its commitment to make Advances terminated, whereupon such commitment and obligation shall be terminated;

b.      Acceleration.  To declare the Credit Balance and all interest accrued thereon and all other amounts payable under this Agreement to be immediately due and payable whereupon all such indebtedness of the Borrower to the Lender shall become and be immediately due and payable without presentment, demand, protest, or further notice of any kind, all of which are hereby expressly waived by the Borrower;

c.      Default Interest. Declare that Borrower shall pay Default Interest on the Credit Balance; and

d.      Other Rights.  To exercise any other rights or remedies available to it whether under this Agreement or at law or in equity.

provided, however, that upon the occurrence of an actual or deemed entry of an order for relief with respect to Borrower under the Bankruptcy Code of the United States, the obligation of Lender to make Advances shall automatically terminate and the Credit Balance and all interest and other amounts shall automatically become due and payable, in each case without further act of Lender.

8.  MISCELLANEOUS.

a.      Waiver.  No waiver by the Lender of any of its rights and privileges under this Agreement nor any consent of the Lender to any failure to comply with the terms hereof by the Borrower shall be effective unless made in writing and signed by the Lender.  No waiver by the Lender of any default or of any right to enforce this Agreement shall operate as a waiver of any other default, or of the same default on a future occasion, or of the right to enforce this Agreement on any future occasion.  No delay in or discontinuance of the enforcement of this Agreement, nor the acceptance by the Lender of installments of principal or interest after the occurrence of any Event of Default, shall operate as a waiver of any defaults.

b.      Rights Cumulative.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies afforded by any promissory note or other agreement executed in connection herewith, or provided by law.  The Lender's remedies may be exercised concurrently or separately, in any order, and the election of one remedy shall not be deemed a waiver of any other remedy.

c.      Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Borrower, the Lender and their respective successors and assigns.  However, the Borrower shall not be permitted to assign or otherwise transfer any rights under this Agreement without the Lender's prior written consent (and any attempted assignment or transfer by the Borrower without such consent shall be null and void). The Lender may at any time assign to one or more assignees all or a portion of its rights and obligations under this Agreement and the other Loan Documents; provided, that the Borrower must give its prior written consent (which consent shall not be unreasonably withheld or delayed) to any assignment, except an assignment to an affiliate of the Lender or during the occurrence and continuation of an Event of Default.

d.      Governing Law.  This Agreement shall be construed in accordance with, governed by and enforced under the laws of the State of North Carolina.

e.      Notices.  All notices, requests and demands given to or made upon either party must be in writing and shall be deemed to have been given or made when personally delivered or two (2) days after having been deposited in the United States Mail, first class postage prepaid, addressed as follows:

If to the Borrower:
Academy Financial Assets, LLC
c/o Eli Global, LLC
2222 Sedwick Rd.
Durham, NC 27713
Attn: Greg Lindberg, Christa Miller, Peter Nordberg
Via email: gelindberg@gmail.com

If to the Lender:
Colorado Bankers Life Insurance Company
2327 Englert Rd.
Durham, NC 27713
Attn: Lou Hensley
Via email: lou.hensley@globalbankers.com

f.      Expenses. The Borrower shall pay (i) all reasonable, out-of-pocket costs and expenses of the Lender (including, without limitation, the reasonable fees, charges and disbursements of outside counsel and the allocated cost of inside counsel) in connection with the preparation and administration of the Loan Documents and any amendments, modifications or waivers thereof (whether or not the transactions contemplated in this Agreement or any other Loan Document shall be consummated), and (ii) all out-of-pocket costs and expenses (including, without limitation, the reasonable fees, charges and disbursements of outside counsel and the allocated cost

13

of inside counsel) incurred by the Lender in connection with the enforcement or protection of its rights in connection with this Agreement, including its rights under this Section, or in connection with the Advances made, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Advances.

g.       Indemnification. The Borrower shall indemnify the Lender and its directors, managers, officers, employees, agents, and advisors (each, an "**Indemnitee**") against, and hold each of them harmless from, any and all costs, losses, liabilities, claims, damages and related expenses, including the fees, charges and disbursements of any counsel for any Indemnitee, which may be incurred by or asserted against any Indemnitee arising out of, in connection with or as a result of (i) the execution or delivery of any this Agreement or any other agreement or instrument contemplated hereby, the performance by the parties hereto of their respective obligations hereunder or the consummation of any of the transactions contemplated hereby, (ii) any Advance or any actual or proposed use of the proceeds therefrom, and (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort, or any other theory and regardless of whether any Indemnitee is a party thereto; provided, that the Borrower shall not be obligated to indemnify any Indemnitee for any of the foregoing arising out of such Indemnitee's gross negligence or willful misconduct as determined by a court of competent jurisdiction in a final and nonappealable judgment. The Borrower shall pay, and hold the Lender harmless from and against, any and all present and future stamp, documentary, and other similar taxes with respect to this Agreement and any other Loan Documents, any collateral described therein, or any payments due thereunder, and save the Lender harmless from and against any and all liabilities with respect to or resulting from any delay or omission to pay such taxes. To the extent permitted by applicable law, the Borrower shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to actual or direct damages) arising out of, in connection with or as a result of, this Agreement or any agreement or instrument contemplated hereby, the transactions contemplated therein, any Advance or the use of proceeds thereof. All amounts due under this Section shall be payable promptly after written demand therefor.

h.       Counterparts; Integration. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by telecopy), and all of said counterparts taken together shall be deemed to constitute one and the same instrument. This Agreement, the other Loan Documents, and any separate letter agreement(s) relating to any fees payable to the Lender constitute the entire agreement among the parties hereto and thereto regarding the subject matters hereof and thereof and supersede all prior agreements and understandings, oral or written, regarding such subject matters.

i.       Survival. All covenants, agreements, representations and warranties made by the Borrower herein and in the certificates or other instruments delivered in connection with or pursuant to this Agreement shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of this Agreement and the making of any Advances, regardless of any investigation made by any such other party or on its behalf and notwithstanding that the Lender may have had notice or knowledge of any Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of or any accrued interest on any Advance or any fee or

14

any other amount payable under this Agreement is outstanding and unpaid and so long as the Credit Facility has not expired or terminated. All representations and warranties made herein, in the certificates, reports, notices, and other documents delivered pursuant to this Agreement shall survive the execution and delivery of this Agreement and the other Loan Documents, and the making of the Advances.

j.  Severability. Any provision of this Agreement or any other Loan Document held to be illegal, invalid or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such illegality, invalidity or unenforceability without affecting the legality, validity or enforceability of the remaining provisions hereof or thereof; and the illegality, invalidity or unenforceability of a particular provision in a particular jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

k.  Interest Rate Limitation. Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any Advance, together with all fees, charges and other amounts which may be treated as interest on such Advance under applicable law (collectively, the "**Charges**"), shall exceed the maximum lawful rate of interest (the "**Maximum Rate**") which may be contracted for, charged, taken, received or reserved by the Lender in accordance with applicable law, the rate of interest payable in respect of such Advance hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate and, to the extent lawful, the interest and Charges that would have been payable in respect of such Advance but were not payable as a result of the operation of this Section shall be cumulated and the interest and Charges payable to such Lender in respect of other Advances or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the Federal Funds Rate to the date of repayment, shall have been received by the Lender.

l.  Patriot Act. The Lender hereby notifies the Borrower that, pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies each obligor, which information includes the name and address of such obligor(s) and other information that will allow the Lender to identify such obligor(s) in accordance with the Patriot Act.

m.  Entire Agreement. This Agreement and any Advance Request Certificates constitute the sole agreement between the parties with respect to the subject matter hereof. Any representation, understanding or promise concerning the subject matter hereof, which is not expressly set forth in any of such documents, shall not be enforceable by any party hereto or its successors or assigns.

[Signature Page Follows]

15

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.

BORROWER:

Academy Financial Assets, LLC

By: _____ (Seal)
Name: _____
Its: _____

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.

LENDER:

Colorado Bankers Life Insurance Company

By: _____(Seal)
Name: Lou Hensley
Its:     Chief Executive Officer

# EXHIBIT A

## ADVANCE REQUEST CERTIFICATE

Pursuant to Section 1(e) of that certain Revolving Credit Agreement, dated as of June 27, 2019, by and between Academy Financial Assets, LLC, a North Carolina limited liability company (the "**Borrower**") and Colorado Bankers Life Insurance Company (the "**Lender**"), the Borrower hereby requests an Advance from the Lender under the Agreement for an amount equal to [_____] ($_____) (the "**Agreement**"). All capitalized but undefined terms used herein shall have the meaning attributed to them in the Agreement.

In connection with this Advance Request, the Borrower certifies to the Lender as follows:

(1)     All representations and warranties contained in Section 2 of the Agreement are true and correct with the same force and effect as though such representations and warranties had been made on and as of the date hereof;

(2)     No Default or potential Event of Default exists as of the date hereof; and

(3)     No Material Adverse Event has occurred.


ACADEMY FINANCIAL ASSETS, LLC


_____
Name:_____
Title:_____

Dated _____ ____, 20__



June 26, 2019

Southland National Insurance Corporation
2327 Englert Drive
Durham, NC 27713

Southland National Reinsurance Corporation
2327 Englert Drive
Durham, NC 27713

Bankers Life Insurance Company
2327 Englert Drive
Durham, NC 27713

Colorado Bankers Life Insurance Company
2327 Englert Drive
Durham, NC 27713

Greg E. Lindberg
2327 Englert Drive
Durham, NC 27713

RE:  Memorandum of Understanding between Southland National Insurance Corporation
("SNIC"), Southland National Reinsurance Corporation ("SNRC"), Bankers Life
Insurance Company ("BLIC"), Colorado Bankers Life Insurance Company ("CBL")
(collectively, the "North Carolina Insurance Companies"); Academy Association Inc.
("AAI"); Specified Affiliated Companies[1]; Trustee of the Affiliated Trusts; Edwards Mill
Asset Management, LLC; Agents; and, Greg E. Lindberg, as attorney-in-fact for each of
the Specified Affiliated Companies and Agents

To Whom It May Concern:

On October 18, 2018, a Consent Order for Administrative Supervision was entered into between
Mike Causey, the Commissioner of Insurance of the State of North Carolina ("the Commissioner")
and the North Carolina Insurance Companies, in which the North Carolina Insurance Companies
consented to administrative supervision, pursuant to the provisions of N.C. Gen. Stat. § 58-30-60
*et seq.* Pursuant to N.C. Gen. Stat. § 58-30-60 (c), the Commissioner appointed Noble Consulting

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the MOU.

Case 3:23-cr-00048-MOC-DCK    Document 177    Filed 06/09/26    Page 153 of 154

Services, Inc. ("Noble") as the Appointed Supervisor on behalf of the Commissioner, during the period of Administrative Supervision of the North Carolina Companies.

Pursuant to the Administrative Supervision, a Memorandum of Understanding was negotiated between the North Carolina Insurance Companies, AAI, the Specified Affiliated Companies, the Trustee of the Affiliated Trusts, Edwards Mill Asset Management, LLC, the Agents, and Greg E. Lindberg, as attorney-in-fact for each of the Specified Affiliated Companies and Agents.

Pursuant to N.C. Gen. Stat. § 58-30-60(c) and N.C. Gen. Stat. § 58-30-62(g), Noble, as Appointed Supervisor of the North Carolina Insurance Companies, has reviewed the Memorandum of Understanding ("MOU") negotiated and entered into on June 26, 2019, between the North Carolina Insurance Companies, AAI, the Specified Affiliated Companies, the Trustee of the Affiliated Trusts, Edwards Mill Asset Management, LLC, the Agents, and, Greg E. Lindberg, as attorney-in-fact for each of the Specified Affiliated Companies and Agents. The Appointed Supervisor has determined, after thorough review of the surrounding facts and circumstances, that signing and performance of the MOU is in the best interests of the North Carolina Insurance Companies and their respective policyholders ("Policyholders"), and hereby approves the North Carolina Insurance Companies entering into and performing such MOU with the intention of protecting the best interests of the Policyholders. In so doing, the Appointed Supervisor intends to increase the long-term equity value of the Specified Affiliated Companies, so long as it is consistent with the protection of the best interests of the Policyholders and in accordance with North Carolina law.

Mike Dinius, CEO
Noble Consulting Services, Inc.
Appointed Supervisor of the North Carolina Companies (SNIC, SRNC, BLIC, CBL)