**EXHIBIT B12**


# Fwd: following up - communication problems continue

1 message

**McCarthy, Brandon N.** <brandon.mccarthy@katten.com>                    Thu, Apr 16, 2026 at 12:14 PM
To: Greg Lindberg <gel@greglindberg.com>
Cc: Tug Swaffar <tugs@apexinternationalsas.com>

Fyi
Per your request on our call, here is the email that I originally sent. Version 5 as it were.


Sent from my iPhone

Begin forwarded message:


> **From:** "McCarthy, Brandon N." <brandon.mccarthy@katten.com>
> **Date:** April 11, 2026 at 6:12:47 PM CDT
> **To:** "Ryan, Daniel (USANCW)" <Daniel.Ryan@usdoj.gov>
> **Subject: following up - communication problems continue**



> Dan-
>
> I know we have gone back and forth on this access issue a few times now.  And I am not trying to beat a dead horse or be annoying.  But we really are having serious access problems -- at a time when we really need to be able to fully respond and communicate with Greg.  And I really can't temporarily move to Kentucky.  I have not been able to talk to him once since he got moved.  I am able to talk to his assistant but now his access has been cut off too.
>
>
> Greg's assistant that we communicate through was cut off from access today.  He gave me the argument below. Greg is insisting we file a motion that this is a breach of the PA.  Naturally, I do not want to have to do any of that.  So I am reaching out to you, to see if there is something we can do without having to repeat another hearing like we did before with the Mag.  For example, could USMS move him somewhere else?  That would be the easiest way to fix the issue since you are opposed to work release.  Or can we do a brief work release for a few days a week.  All I need is about 2 hours a day.   The best argument below for a move would be: Judge K's order -- **"the United States Marshals Service make decisions regarding Defendant's assigned housing that are consistent with his unusual needs for access to counsel, such that he is afforded reasonable opportunity for private consultation with counsel while detained."**
>
>
> Here is the request from Greg below and the legal basis he wanted me to send you.  I know some of the requests are not possible.  But some of the legal basis here is solid.
>
>
> Anyway, not trying to stir up a hornet's nest at all.  But if you can help me try to come up with a solution that you all could live with, I would really appreciate it.
>
>
> Thanks
>
> Brandon

-----------------------------------------------------------------------------------------------------------------------------

**TO:** Daniel S. Ryan, Assistant United States Attorney

Taylor G. Stout, Assistant United States Attorney

Lyndie M. Freeman, Trial Attorney, DOJ Fraud Section


**FROM:** Greg E. Lindberg, Defendant

c/o Brandon N. McCarthy, Esq.

Katten Muchin Rosenman LLP


**RE:** EMERGENCY NOTICE — BREACH OF PLEA AGREEMENT AND

SPECIAL MASTER ORDER; DENIAL OF ACCESS TO COUNSEL

AND FINANCIAL RECORDS; CONSTITUTIONAL VIOLATION;

PREVENTION OF CONTRACTUAL PERFORMANCE; PLAIN ERROR

WARNING


## INTRODUCTION

This Notice is issued on an emergency basis. Greg E. Lindberg is currently detained at Grayson County Detention Center ("GCDC") in Leitchfield, Kentucky, at the single most critical juncture of the restitution process in this case. He is required, within days, to respond to the Special Master's restitution report with detailed financial information documenting restitution offsets, prior payments, and credits against obligations measured in hundreds of millions of dollars. That response requires daily, uninterrupted access to computers, the internet, telephone, legal counsel, and his accounting team.

**He has none of these things.**

The conditions of Mr. Lindberg's confinement at GCDC have severed him from the tools, counsel, and financial records without which he cannot participate in the very restitution process that the Plea Agreement and the Special Master Order were designed to govern. This constitutes: (1) a material breach of the September 27, 2024 Plea Agreement; (2) a breach of the Court's Order Appointing the Special Master (Doc. 56, Jan. 23, 2025) (the "Special Master Order"); (3) a violation of the Government's obligation under Paragraph 9 of the Plea Agreement to permit Mr. Lindberg to comply with the Special Master Order — compliance upon which his express contractual right to appeal depends; (4) activation of the contractual prevention doctrine, which bars the Government from asserting non-compliance as a breach when its own conduct made compliance impossible; (5) a violation of 18 U.S.C. § 3664's procedural framework governing restitution proceedings; (6) a violation of Mr. Lindberg's Sixth Amendment right to counsel at a critical stage; (7) a violation of his Fifth Amendment due process rights; and (8) a plain error of constitutional dimension that will infect any restitution order entered under these conditions and require its reversal on appeal.

This Notice is provided now — in real time, before any adverse restitution order is entered — to preserve the record and to afford the Special Master, the Government, and the Court the opportunity to remedy these violations immediately. Contemporaneous objection is essential because the Fourth Circuit requires that such claims be preserved at the trial level. *See Puckett v. United States*, 556 U.S. 129, 134 (2009).

## I. FACTUAL BACKGROUND

### A. The Plea Agreement's Active and Continuing Obligations

The Plea Agreement of September 27, 2024, imposes specific, ongoing, and affirmative obligations on Mr. Lindberg that require active daily participation in the restitution process and, critically, active daily access to financial records, counsel, and electronic communications infrastructure.

**Paragraph 9 — The Special Master Compliance Obligation and Express Appeal Right.**  Paragraph 9 of the Plea Agreement provides that the defendant agrees to the appointment of a special master to identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court. The special master shall be governed by the terms of a mutually agreed Order which shall define the terms of full restitution such that if complied with no forfeiture proceedings shall be pursued by the United States.

Paragraph 9 then provides the following critical language: "To the extent that the defendant complies with the terms of the special master Order and the court does not accept the sentencing recommendations per paragraph 8(d)(i) and 8(d)(ii) then defendant shall have fair and just grounds to appeal the sentence on the basis of payment of full restitution."

This provision is one of the most consequential in the entire Agreement. It creates an express contractual right of appeal — independent of and superior to the general appeal waiver in Paragraph 18 — that is conditioned specifically on Mr. Lindberg's compliance with the Special Master Order. Conditions of confinement that make such compliance impossible do not merely breach the Agreement's restitution provisions: they directly destroy Mr. Lindberg's express, bargained-for contractual right to seek appellate review of his sentence. That is an injury of the highest order.

The no-forfeiture protection in Paragraph 9 is equally consequential. The Agreement expressly provides that full compliance with the Special Master Order means "no forfeiture proceedings shall be pursued by the United States." Conditions that prevent compliance thereby expose Mr. Lindberg to forfeiture proceedings the Agreement otherwise forecloses — a devastating additional consequence of the Government's failure to remedy the current situation.

**Paragraph 10(a) — Full Restitution to Named Entities.**  Paragraph 10(a) commits Mr. Lindberg to entry of an order for full restitution to all persons directly or indirectly harmed, including Southland National Insurance Company, Southland National Reinsurance Corporation, Bankers Life Insurance Company, Colorado Bankers Life Insurance Company, Universal Life Insurance Company of Puerto Rico, PB Life and Annuity Co., Ltd., Omnia Ltd., Northstar Financial Services (Bermuda) Ltd., PB Investment Holdings Ltd., and Universal Life Insurance Company. Accurately documenting prior payments, credits, and offsets against these obligations — which is the heart of the current Special Master process — requires daily access to financial records and accounting professionals. GCDC's conditions make that impossible.

## B. The Special Master Order's Requirements

The Court's Special Master Order, signed January 23, 2025 by United States District Judge Max O. Cogburn Jr. (Doc. 56), creates a structured bilateral framework with affirmative obligations running to and from all parties, including the defendant.

The Order vests the Special Master with authority to identify, receive, apportion, and distribute funds for restitution. This function is not self-executing. The Special Master cannot accurately identify the net restitution amount without financial information from Mr. Lindberg — **the only person with firsthand knowledge of prior payments, asset valuations, transfer histories, and the transactions forming the basis of the restitution offset claims.**

Paragraph 15 of the Special Master Order expressly provides that "the parties and/or the Special Master shall be authorized to make motion or application to this Court to expand or narrow the scope of Primary Restitution Assets, which shall be heard upon notice and hearing." This is a court-ordered participatory right conferred directly on Mr. Lindberg as a party. That right is rendered illusory if he cannot consult counsel, review financial records, or communicate with his accounting team.

Paragraph 16 of the Special Master Order provides that none of the authority vested in the Special Master is intended to compel or authorize the Special Master to violate any other federal or state court orders. This limitation reflects the Court's understanding that the Special Master process operates within a system of legal constraints that includes the defendant's constitutional rights. The Order does not contemplate a process that strips the defendant of his Sixth Amendment right to counsel or his Fifth Amendment right to due process.

## C. Magistrate Keesler's November 22, 2024 Order Independently Required Adequate Access

The denial order entered by Magistrate Judge Keesler on November 22, 2024 (Doc. 52) expressly recommended that "the United States Marshals Service make decisions regarding Defendant's

**assigned housing that are consistent with his unusual needs for access to counsel, such that he is afforded reasonable opportunity for private consultation with counsel while detained."** Placement at GCDC without computer access, internet access, or an unmonitored telephone line violates this judicial recommendation on its face. It is not merely an administrative inconvenience — it is a placement that directly contravenes a prior judicial directive in this very case, entered with full awareness of Mr. Lindberg's unique obligations under the Plea Agreement.

### D. The Current Denial of Access at Grayson County Detention Center

As confirmed by multiple communications among defense counsel and Mr. Lindberg's support team on April 3–8, 2026, Mr. Lindberg currently has no access to email, the internet, or computers at GCDC. He cannot review, analyze, or respond to the Special Master's report. He cannot consult with counsel without a confidential, unmonitored telephone line. He cannot meet his obligations under the Plea Agreement, the Special Master Order, or 18 U.S.C. § 3664 without the tools that any financial professional would require as a minimum.

## II. BREACH OF THE PLEA AGREEMENT AND SPECIAL MASTER ORDER

### A. The Governing Legal Standard: Heightened Scrutiny and Construction Against the Drafter

Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain, but plea agreements must be analyzed at a more stringent level than a commercial contract because the rights involved are generally fundamental and constitutionally based. *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). Both constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant for imprecisions or ambiguities in plea agreements. *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). Any ambiguities are construed against the government as drafter. *United States v. Tate*, 845 F.3d 571, 575 (4th Cir. 2017).

### B. The Government's Failure to Ensure Performance Conditions Is a Material Breach

When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971). The Plea Agreement's restitution and Special Master provisions — the no-forfeiture protection, the concurrent-sentence recommendation, the express appeal right — were among the most material inducements for Mr. Lindberg's guilty plea. That bargain is hollow if the Government permits or acquiesces in conditions of confinement that structurally prevent performance.

In *United States v. Ringling*, 988 F.2d 504 (4th Cir. 1993), the Fourth Circuit vacated a sentence because the Government failed to take a single step necessary for its own performance obligations. The Court held that the Government's inaction, regardless of excuse, did not relieve it of its contractual obligations. *Id.* at 506. The parallel is direct. The Government controls Mr. Lindberg's placement. The Government has the practical power to remedy the access deprivation immediately. The failure to do so is a material breach.

### C. The Prevention Doctrine: The Government Cannot Claim Breach That It Caused

The Plea Agreement's Paragraph 3 defines breach as the defendant's failure to fully comply with any provision of the Agreement. But Paragraph 4's consequence — that the defendant's breach relieves the Government of its obligations — cannot be invoked when the Government's own conduct made the defendant's performance impossible. The prevention doctrine is a fundamental principle of contract law: a party who prevents or makes impossible the performance of a condition cannot take advantage of its non-occurrence. *See Harvey*, 791 F.2d at 300 (the Government is held to a greater degree of responsibility for conditions of performance under a plea agreement it drafted). This principle has full force here.

The Government drafted the Agreement. The Government negotiated the restitution compliance obligations in Paragraphs 8(d), 9, and 10(c). The Government placed Mr. Lindberg at GCDC. The Government controls the conditions of his pretrial detention. The Government cannot now point to Mr. Lindberg's inability to perform Paragraph 10(c)'s financial disclosure obligations — an inability directly caused by GCDC's conditions — and claim those obligations have been breached. That is exactly the conduct the Fourth Circuit condemned in *Ringling* and *Harvey*. The Government cannot simultaneously prevent performance and claim breach.

### D. The Breach of Paragraph 9 Is Particularly Egregious Because It Destroys an Express Contractual Right

In *United States v. Warner*, 820 F.3d 678, 685 (4th Cir. 2016), the Fourth Circuit held the government's breach material where the government's departure from its promised position "was critical to [the defendant's] acceptance of the plea agreement, as manifested by the negotiations." Here, Mr. Lindberg's

express contractual appeal right under Paragraph 9 — the right to appeal the sentence "on the basis of payment of full restitution" if the court does not accept the Paragraph 8(d) sentencing recommendations — was plainly critical to his acceptance of the plea. Conditions that prevent the Special Master Order compliance upon which that right depends are a breach at the core of the Agreement's most fundamental bargain.

The appeal waiver in Paragraph 18 does not bar this claim. Paragraph 18 waives "all rights to contest the conviction and sentence." But Paragraph 9's express preservation of appeal rights is a specific provision that supersedes the general waiver under the well-established principle that specific terms control over general ones. *See United States v. Edgell*, 914 F.3d 281, 287 (4th Cir. 2019) (a defendant's waiver of appellate rights cannot foreclose an argument that the government breached its obligations under a plea agreement). Moreover, the breach claims raised herein fall squarely within Paragraph 18's exempt categories: (1) the prevention of counsel access is ineffective assistance of counsel, which Paragraph 18 expressly exempts from the waiver; and (2) the Government's deliberate or negligent acquiescence in conditions that prevent performance constitutes prosecutorial misconduct, which Paragraph 18 also expressly exempts.

### E. The Special Master Order Independently Provides Grounds for Relief

The Special Master Order is a court order — not merely a contractual instrument — whose violation is independently cognizable as a breach of the Court's authority. Paragraph 15 of the Order grants Mr. Lindberg a court-ordered right to seek judicial modification of the scope of Primary Restitution Assets. Conditions that render him incapable of exercising that right violate the Order itself. As the Supreme Court held in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), formal procedural rights are constitutionally inadequate when stripped of the practical ability to exercise them. That principle applies with equal force to rights conferred by court order.

The Special Master, as a court-appointed fiduciary, has obligations running to the Court and to all parties. He is obligated to ensure that his final report and account are based on complete and accurate financial information. A Special Master who proceeds to finalize restitution determinations while the defendant is structurally prevented from providing financial information — without taking reasonable steps to ensure the defendant's access — is not fulfilling his fiduciary obligations under the Order.

### III. THE DENIAL OF ACCESS VIOLATES MR. LINDBERG'S CONSTITUTIONAL RIGHTS

### A. Sixth Amendment — Right to Counsel at a Critical Stage

The restitution phase is a critical stage of Mr. Lindberg's criminal case. The preparation of his response to the Special Master's report will directly determine the restitution amount imposed as part of his criminal sentence under 18 U.S.C. § 3664. The Sixth Amendment's guarantee of counsel at every critical stage attaches here. *United States v. Wade*, 388 U.S. 218, 226 (1967); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967) (right to counsel attaches at sentencing-related proceedings where defendant's substantial rights are at stake). Paragraph 18 of the Plea Agreement expressly preserves claims of ineffective assistance of counsel from its appeal waiver. The structural denial of counsel access is precisely such a claim.

The right to counsel at a critical stage requires the ability to consult freely, confidentially, and with sufficient frequency to permit meaningful preparation. Mr. Lindberg's current conditions — no email, no internet, no confidential telephone — prevent any meaningful consultation with Katten Muchin Rosenman counsel and accounting professionals. This is not a de minimis restriction; it is a complete structural severance.

### B. Fifth Amendment — Due Process

The Fifth Amendment requires that before any criminal defendant is subjected to an adverse restitution determination, he must be afforded a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Formal participation stripped of practical meaning is not constitutionally adequate due process. *See Turner v. Rogers*, 564 U.S. 431, 448–49 (2011) (due process requires adequate procedural safeguards when a party cannot meaningfully participate in a hearing affecting his substantial interests).

### C. The MVRA's Statutory Framework Independently Guarantees the Right to Participate

The Mandatory Victims Restitution Act, 18 U.S.C. § 3664, establishes the procedural framework governing the restitution determination in this case. Section 3664(e) expressly places on the defendant the burden of demonstrating his financial resources bearing on the restitution amount. That statutory burden cannot be discharged without access to financial records, accounting professionals, and counsel. Section 3664(f)(2) requires the court to consider the defendant's financial resources and obligations in ordering restitution — a determination that depends entirely on whether Mr. Lindberg can provide complete financial information to

the Special Master and the Court. *See Dolan v. United States*, 560 U.S. 605, 611 (2010) (MVRA restitution proceedings require meaningful procedural participation by the parties).

## IV. THE COMPOUNDING EFFECT: THREE INDEPENDENT FRAMEWORKS DEMAND THE SAME REMEDY

Three independent bodies of law — the Plea Agreement's contractual framework, the Special Master Order's court-ordered procedural framework, and the MVRA's statutory framework — all converge on the identical conclusion: Mr. Lindberg must have the practical ability to participate in the restitution process. Their combined effect creates a triply reinforced obligation on the Government and the Special Master to ensure that participation is possible.

The interaction of these frameworks also creates compounding legal exposure for any restitution order entered under these conditions. A restitution order entered in breach of a plea agreement is vulnerable on contract grounds. *Warner*, 820 F.3d at 683. A restitution order entered in violation of a defendant's Sixth Amendment right to counsel is vulnerable on constitutional grounds. *Wade*, 388 U.S. at 226. A restitution order entered without the defendant's ability to discharge his statutory burden under Section 3664(e) is vulnerable on MVRA grounds. *Dolan*, 560 U.S. at 611. Any restitution order entered under the current conditions will face challenge on all three grounds simultaneously. The Government and the Special Master should not enter an order that is certain to face reversal on appeal.

## V. FAILURE TO REMEDY WILL CONSTITUTE PLAIN ERROR ON APPEAL

The Fourth Circuit's plain error standard requires: (1) an error; (2) that is plain; (3) affecting substantial rights; and (4) seriously affecting the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009). All four prongs are satisfied here.

**Error.** Depriving a defendant of computer, internet, and counsel access during the critical restitution-response phase of a complex financial sentencing proceeding is constitutional error. Preventing the defendant from discharging his statutory burden under 18 U.S.C. § 3664(e) is statutory error. Breaching the conditions of performance under a plea agreement is contract error. Parties to a plea agreement should receive the benefit of their bargain. *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997). Mr. Lindberg cannot receive the benefit of his bargain — including the Paragraph 9 appeal right and the Paragraph 8(d) concurrent-sentence recommendation — without the tools to comply with the Special Master Order. The most recent Fourth Circuit authority confirms this principle: while the government has a duty to disclose relevant information at sentencing, it "may not hide behind" that duty "to advocate a position that contradicts its promises in a plea agreement"; instead, "the government must carefully balance its duty of candor to the sentencing court with the sometimes competing—but equally solemn—duty to honor its commitments under a plea agreement." *United States v. Wilson*, 149 F.4th 448, 456 (4th Cir. 2025) (quoting *Edgell*, 914 F.3d at 288). That balance is "achieved where the government makes the necessary disclosures to the sentencing court, but nevertheless continues to advocate for acceptance of the agreement." *Id.* The Government has done neither here.

**Plain.** The right to counsel at critical stages of criminal proceedings is among the most well-established principles in American constitutional law. *Wade*, 388 U.S. at 226. The prevention doctrine — that a party cannot claim breach it caused — is equally foundational. *Harvey*, 791 F.2d at 300. The government's obligations under a plea agreement must be fulfilled when they form part of the consideration for the defendant's plea. *Santobello*, 404 U.S. at 262. These are not novel propositions: they are the bedrock of plea agreement law. The Fourth Circuit has made clear that a breach is "plain" when the government's "duties pursuant to the plea agreement were sufficiently clear" and "unambiguous." *United States v. Wilson*, 149 F.4th 448, 458 (4th Cir. 2025) (quoting *Edgell*, 914 F.3d at 289). In *Wilson*, the government's conduct in contradicting its plea-agreement stipulations was described as "troubling," but the majority stopped short of plain error solely because the agreement there did not clearly prohibit the conduct and "left some doubt about the extent of the government's ability to argue." *Id.* No such doubt exists here. Mr. Lindberg's Plea Agreement expressly conditions his contractual appeal right and his no-forfeiture protection on compliance with the Special Master Order. The Government's obligations are unambiguous. The breach is plain.

**Substantial Rights.** Mr. Lindberg's restitution obligations are measured in hundreds of millions of dollars. His ability to document offsets, credits, and prior payments — confirmed by the December 2025 Special Master distribution that has already resulted in full or substantially full policyholder payment — directly affects the restitution amount. Beyond the financial impact, Mr. Lindberg's express contractual right to appeal under Paragraph 9 — a right bargained for at the time of plea — is at stake. An inaccurate restitution determination, and the forfeiture of a contractual appeal right, caused by structural inability to participate, imposes an enormous, legally unwarranted burden on his substantial rights.

**Fairness and Integrity.** The government's breach of a plea agreement constitutes a particularly egregious error that, in the absence of strong countervailing factors, seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Edgell*, 914 F.3d 281, 291 (4th Cir. 2019). Such a breach "involves the honor of the government, [and] public confidence in the fair administration of justice." *Id.* (quoting *United States v. McQueen*, 108 F.3d at 66 (quoting *Harvey*, 791 F.2d at 300)). No court can claim to have conducted a fair restitution proceeding when the obligor was denied access to the records, counsel, and infrastructure necessary to participate. A restitution order entered under these conditions would seriously undermine public confidence in the integrity of these proceedings.

## VI. DEMANDS FOR IMMEDIATE REMEDY

Mr. Lindberg demands, on an emergency basis, that the following be implemented within 24 hours of receipt of this Notice:

1. **Computer and Internet Access.** Mr. Lindberg must be provided with daily, unsupervised access to a computer with internet connectivity at GCDC to review financial records and communicate with his accounting team. This is the minimum necessary to discharge his obligations under the plea agreement and to prepare his response to the Special Master's report. This access is available through the GCDC's work release program which is available to low-level custody inmates such as Mr. Lindberg, who has self-surrendered twice, has no record of violence, and has no record of any infractions while incarcerated.

2. **Confidential Telephone Access.** Mr. Lindberg must have daily, unmonitored telephone access to communicate with legal counsel (Katten Muchin Rosenman LLP) and his accounting team. Monitored or recorded attorney-client communications constitute an independent constitutional violation and are expressly preserved from the Paragraph 18 waiver. This level of access is likewise available through the GCDC's work release program which is available to low-level custody inmates such as Mr. Lindberg, who has self-surrendered twice, has no record of violence, and has no record of any infractions while incarcerated.

3. **USAO Letter to GCDC.** The United States Attorney's Office must immediately direct the US Marshals Service to write to Grayson County Detention Center directing the facility to place him in GCDC's work-release program on an emergency basis. The USAO has the authority and the obligation under the Plea Agreement to facilitate Mr. Lindberg's compliance with his performance obligations.

4. **Special Master's Affirmative Steps.** The Special Master must take affirmative steps — including direct communication with GCDC, the U.S. Marshals Service, and the USAO — to ensure the access conditions necessary for the process he was appointed to administer. The Special Master's fiduciary obligation to the Court compels this action. A Special Master who proceeds to finalize restitution determinations while the defendant is structurally prevented from providing financial information is not fulfilling the mandate the Court conferred.

5. **Extension of Response Deadline.** The deadline for Mr. Lindberg's response to the Special Master's restitution report must be extended by no less than the number of days of access deprivation to date, plus an additional fourteen days to permit meaningful preparation with full electronic access.

6. **Written Confirmation.** Written confirmation of the steps being taken and a specific implementation timeline must be provided to brandon.mccarthy@katten.com within 24 hours of receipt of this Notice.

## VII. NOTICE OF FURTHER ACTION

If the above remedies are not confirmed within 24 hours and implemented within 48 hours, Mr. Lindberg will:

1. File an Emergency Motion with the Court seeking an order directing immediate provision of the access described herein, supported by this Notice and the authorities cited above;

2. File a Notice of Breach of Plea Agreement and Violation of Court Order pursuant to the framework of *Santobello v. New York*, 404 U.S. 257 (1971), *United States v. Warner*, 820 F.3d 678 (4th Cir. 2016), and *United States v. Edgell*, 914 F.3d 281 (4th Cir. 2019), seeking specific performance of the Agreement's restitution participation provisions and the Special Master Order's party participation provisions, including Paragraph 15;

3. Move the Court to enforce the Special Master Order's terms and order specific performance of the Plea Agreement, *see Santobello v. New York*, 404 U.S. 257, 262–63 (1971) (on breach of a plea agreement, court may order specific performance as the appropriate remedy, with the defendant's preference accorded "considerable, if not controlling, weight"); *United States v. Peglera*, 33 F.3d 412, 413–14 (4th Cir. 1994) ("[b]ecause a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be

tolerated"; specific performance ordered and resentencing directed before different judge), on the ground that Mr. Lindberg cannot exercise his court-ordered participatory rights without the access demanded herein;

4.  Object to any restitution order entered before adequate access is restored, on grounds of breach of the Plea Agreement (including Paragraphs 8(d), 9, and 10(c)), violation of the Special Master Order, violation of 18 U.S.C. § 3664, violation of the Sixth and Fifth Amendments, activation of the prevention doctrine, and plain error; and

5.  Appeal any adverse restitution order, invoking Mr. Lindberg's express contractual right of appeal under Paragraph 9 of the Plea Agreement, the Paragraph 18 exemptions for ineffective assistance of counsel and prosecutorial misconduct, and incorporating this Notice as part of the contemporaneous preserved record.

**CONCLUSION**

The harm here is concrete, immediate, and entirely preventable. The Government and the Special Master have the practical power to remedy this situation today.

The Plea Agreement gives Mr. Lindberg something specific and valuable: if he complies with the Special Master Order and the Court does not accept the Paragraph 8(d) sentencing recommendations, he has the right to appeal his sentence. The Government gave him that right. The Government's acquiescence in conditions that make compliance impossible takes that right away. That is not how plea agreements work.

The Government also gave Mr. Lindberg a no-forfeiture protection conditioned on Special Master compliance. This commitment is now in jeopardy because of GCDC's conditions — conditions the Government controls.

Mr. Lindberg needs a computer. He needs a phone. He needs to be able to speak confidentially with his lawyers, accountants, and employees. These are not extraordinary requests; they are the minimum conditions for participation in a process that the parties themselves designed — and that the Court ordered — to be participatory.

As the Fourth Circuit held in *Harvey*: the Government is held to a greater degree of responsibility than the defendant for the conditions of performance under a plea agreement it drafted. 791 F.2d at 300. The Government drafted the Agreement. The Government controls Mr. Lindberg's placement. The Government can fix this today.

I respectfully demand that it do so.

Respectfully submitted,

/s/Greg E. Lindberg

Greg E. Lindberg, Defendant

c/o Brandon N. McCarthy, Esq.

 Katten Muchin Rosenman LLP

 brandon.mccarthy@katten.com

**Brandon N. McCarthy**
Partner

**Katten**

2121 North Pearl Street, Suite 1100 | Dallas, TX 75201-2591
direct +1.214.765.3680
brandon.mccarthy@katten.com | katten.com
Bio | vCard

============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction or sanction. Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
============================================================
NOTIFICATION: Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).
============================================================