IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | Case No. 3:23-CR-48-MOC |
| GREG E. LINDBERG, | | |
| Defendant. | | |

**DEFENDANT GREG E. LINDBERG'S RESPONSE IN OPPOSITION TO THE OBJECTION AND MOTION FOR RECONSIDERATION OF CELL 1.16'S REHABILITATOR**

NOW COMES Defendant Greg E. Lindberg, by and through undersigned counsel, and respectfully submits this Response in opposition to the Objection and Motion for Reconsideration of Cell 1.16's Rehabilitator to the Preliminary Order of Restitution and Judgment (Doc. No. 171) (the "Motion"), filed by the Commissioner of the Vermont Department of Financial Regulation, Kaj Samsom, solely in his capacity as Rehabilitator of Vista Life & Casualty Reinsurance Company's Protected Cell 1.16, n/k/a ViUS PC 2016-A IC, Inc. ("Cell 1.16"). For the reasons set forth below, the Motion should be denied.

**INTRODUCTION**

The Court has already adopted the Special Master's recommendation and excluded Cell 1.16 from restitution. *See* Doc. Nos. 161, 162. Nothing in the Motion warrants disturbing that ruling. To the contrary, the recent decision of the United States Court of Appeals for the Fourth Circuit denying restitution to the Conservatrix petitioners in this very case confirms that Cell 1.16 is not a "victim" entitled to restitution. *See* Doc. No. 203. Like Conservatrix, Cell 1.16 points to unfulfilled financial commitments and disappointed expectations, but it does not—and cannot— tie those harms to the conduct inherent in Defendant's offense. And as the Special Master recognized, Cell 1.16 cannot establish the single element it concedes is in dispute—material misrepresentation or concealment—because the persons who directed Cell 1.16's investments were fully apprised of the affiliated-investment strategy. There was nothing to conceal.

1

**ARGUMENT**

I.   The Fourth Circuit's Decision Denying Restitution to Conservatrix Forecloses Cell 1.16's Materially Identical Claim.

Restitution under the Mandatory Victims Restitution Act (the "MVRA") is available only to a "victim," defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2); *accord* 18 U.S.C. § 3771(e)(2)(A) (defining "crime victim" in identical terms). Restitution is limited to "the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990); *see id.* at 420 ("the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order"). It is therefore not enough that a claimant was harmed by some conduct of the defendant that might, in another forum, be actionable; the harm must be "closely related to the conduct inherent to the offense, rather than merely tangentially linked." Doc. No. 203, at 4–5 (quoting *In re McNulty*, 597 F.3d 344, 352 (6th Cir. 2010)).

Applying that standard in this very case, the Fourth Circuit denied the Conservatrix petition with prejudice, explaining:

> Petitioners fail to sufficiently connect the harm suffered by Conservatrix with Lindberg's criminal conduct. Direct harm to a victim, giving rise to an entitlement to restitution under the CVRA, requires the harm to be "closely related to the conduct inherent to the offense, rather than merely tangentially linked." *In re McNulty*, 597 F.3d 344, 352 (6th Cir. 2010). Petitioners have described Lindberg's failure to replenish the company's capital and to maintain [certain ratios] as agreed. But Petitioners do not identify facts closely tying those failures to Lindberg's criminal activities. Without more, we cannot find the district court to have abused its discretion in excluding Conservatrix from its restitution order and judgment.

Doc. No. 203, at 4–5.

Cell 1.16's claim is materially identical, and it fails for the same reason. Cell 1.16 rests on two asserted harms: (i) Defendant's alleged failure to honor a "buy-back" of the affiliated investments at their presumed values, *see* Doc. No. 171, at 4–5; and (ii) the provision of rating reports said to contain inflated ratings, *see id.* Neither is tied to the conduct inherent in the offense. The first is the very type of unfulfilled financial commitment—indistinguishable from the failure "to replenish the company's capital" and to "maintain [certain ratios] as agreed"—that the Fourth Circuit held insufficient as to Conservatrix. Doc. No. 203, at 4–5. The Special Master correctly

recognized that "[s]imilar reasoning applies here." Doc. No. 206, ¶ 3. The second was very well known to Don Solow as he advised on the ratings process and was intimately familiar with the process to secure the ratings of these very assets. In fact, Defendant provided this evidence to the Government on or around January 16, 2026.

II. Cell 1.16 Cannot Establish the Misrepresentation-or-Concealment Element, Because the Persons Who Directed Its Investments Were Fully Apprised of the Affiliated-Investment Strategy.

Cell 1.16 concedes that, to qualify as a victim, it must show that Defendant or his agents "made material misrepresentations or omissions concerning those affiliated investments or asset management strategies," and it acknowledges that this is "[t]he sole element about which Cell 1.16 and the Special Master disagree." Doc. No. 171, at 4. Cell 1.16 cannot carry that burden, for the simple reason that there was no concealment in the first place.

As the Special Master explained, Cell 1.16 "fails to identify with specificity where the defendant 'mask[ed the defendant's] affiliated investments or asset management strategies.'" Doc. No. 206, ¶ 3 (quoting Doc. No. 203, at 3). To the contrary, "the person(s) at Vista Life & Casualty Reinsurance Company who turned over control of its investing activities to the defendant were well apprised of the defendant's affiliated loan investing strategy, such that there was nothing for the defendant to hide." *Id.*

The Rehabilitator's own evidence confirms the same thing. The supporting affidavit of the Special Deputy Rehabilitator [Doc. No. ___] ("Leslie Aff.") admits that the cell's investment manager was itself a disclosed Lindberg entity: "New England Capital, LLC, initially acted as the investment manager for the trust account." Leslie Aff. ¶ 6. It further admits that the cell's Participant, Cygnet 2016-A, was "majority owned by New England Capital, LLC, which is ultimately owned by Greg Lindberg," and was "also the partial owner of Vista Re" itself. *Id.* ¶ 4. An affiliated-investment strategy in which the affiliate is the openly designated investment manager—and a part-owner of the reinsurer—cannot have been "mask[ed]" from the cell it managed. The party now seeking restitution has itself pleaded the very transparency that defeats the concealment element.

In short, the affiliated investments and asset-management strategy were not "mask[ed]"; they were known to, and jointly managed by, Cell 1.16's own principals. *See* Doc. No. 203, at 3. That is fatal to the only element Cell 1.16 must prove—and cannot.

III.   Cell 1.16's Remaining Theories Are, at Most, Tangentially Linked to the Offense; and an Award on the Same Loans Underlying Other Recoveries Would Be an Impermissible Double Recovery.

Even setting aside the absence of any concealment, Cell 1.16's theories cannot satisfy the proximate-cause requirement that the MVRA and the Crime Victims' Rights Act impose. Proximate cause "preclude[s] liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline v. United States*, 572 U.S. 434, 445 (2014). And because the Supreme Court has now confirmed that restitution under the MVRA is criminal punishment, the Act's threshold requirements must be construed and applied with corresponding rigor. *See Ellingburg v. United States*, 607 U.S. ___, 2026 WL 135982 (U.S. Jan. 20, 2026) (holding that MVRA restitution "is plainly criminal punishment for purposes of the Ex Post Facto Clause"). Defendant's alleged failure to honor a buy-back—an unfulfilled financial undertaking—is a quintessential subject of civil contract litigation, not criminal restitution, and it is no nearer to the offense than the unmet capital and ratio commitments the Fourth Circuit rejected. *See* Doc. No. 203, at 4–5; *Hughey*, 495 U.S. at 413, 420. The asserted inflated ratings fare no better. Cell 1.16's own principal dealt directly with the rating agencies concerning the trust's assets confirming a sophisticated and hands-on role inconsistent with passive reliance; and, in all events, the causal link between any rating report and Cell 1.16's ultimate loss on the loans is far too attenuated to satisfy the proximate-cause requirement.

There is, moreover, an independent bar that Cell 1.16's own filing supplies. Cell 1.16 admits that its claimed losses arise from "loans in Lindberg entities—many of the same loans [that] were also held by the North Carolina and Bermuda insurance companies and underlie those insurers' entitlement to restitution." Doc. No. 171, at 2. Those losses—which the Rehabilitator quantifies at $148,097,749 in principal and $87,795,079 in accrued interest across twenty-seven enumerated loans, *see* Leslie Aff. ¶ 6 & Ex. A—thus overlap, on Cell 1.16's own admission, with the very loans underlying other victims' awards. Restitution under the MVRA is compensatory: the court orders restitution "to each victim in the full amount of each victim's losses," 18 U.S.C.

4

§ 3664(f)(1)(A), not multiple recoveries upon a single underlying loss. An award to Cell 1.16 premised on the same defaulted loans that already underlie other recipients' awards would be duplicative and would inflate aggregate restitution beyond the actual loss caused. The Special Master himself flagged the need, before any such award, to "confirm that Cell 1.16's restitution amount is calculated consistently with all other persons awarded restitution in this case." Doc. No. 206, ¶ 4. And the proponent bears the burden of proving any loss amount by a preponderance of the evidence, *see* 18 U.S.C. § 3664(e); *United States v. Catone*, 769 F.3d 866, 876 (4th Cir. 2014)—a burden the bare schedule of defaulted loans, unadjusted for collateral, recoveries, or the conceded overlap, does not satisfy. That overlap is a further reason to deny the Motion or, at the very least, to defer any award pending a hearing at which the issue—and Defendant's right to be heard—may be addressed.

Finally, notwithstanding anything herein above, the Defendant reserves all rights to argue for a return of approximately $23.5 million which was paid to Vista under the Clanwilliam sale order despite the Special Master admitting that Vista is not a victim or make other arguments to offset this payment against any restitution determination.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny the Objection and Motion for Reconsideration (Doc. No. 171) and adhere to its Preliminary Order of Restitution (Doc. No. 161) and Judgment (Doc. No. 162) excluding Cell 1.16 from restitution. To the extent the Court is inclined to revisit that determination, Defendant respectfully requests an opportunity to be heard and an evidentiary hearing addressing both Cell 1.16's asserted victim status and the avoidance of any duplicative recovery.

Respectfully submitted, this _____ day of June, 2026.

/s/ Kenneth Barnes
Kenneth Barnes Legal, PLLC
N.C. Bar No. 14035
356 Travel Lite Dr., Raleigh, NC 27603
Tel: (919) 524-1977
Email: barnesatty@aol.com
Counsel for Defendant Greg E. Lindberg

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: June 17, 2026

/s/ Kenneth Barnes
Kenneth Barnes
Counsel for Defendant Greg E. Lindberg

6

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

This the 17th day of June, 2026.

/s/ Kenneth Barnes
Kenneth Barnes
Counsel for Defendant Greg E. Lindberg

7