# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

GREG E. LINDBERG,

      Defendant.

No. 5:19-CR-22-MOC
No. 3:23-CR-48-MOC

**EMERGENCY MOTION**

## DEFENDANT GREG E. LINDBERG'S EMERGENCY MOTION FOR AN ORDER DIRECTING THE BUREAU OF PRISONS TO PERMIT DAILY ACCESS TO COUNSEL AND THE USE OF A COMPUTER AND CASE RECORDS IN THE PRESENCE OF COUNSEL

Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

J. Alex Little (*pro hac vice*)
Brent A. Hannafan (*pro hac vice*)
Edward J. Canter (*pro hac vice*)
Litson PLLC
54 Music Square E, Suite 300
Nashville, Tennessee 37203
Tel: (615) 985-8205

*Counsel for Greg E. Lindberg*

Case 3:23-cr-00048-MOC-DCK   Document 225   Filed 06/24/26   Page 1 of 14

# TABLE OF AUTHORITIES

***Cases***

*Bounds v. Smith,*
    430 U.S. 817 (1977).................................................................................................6

*Ellingburg v. United States,*
    607 U.S. ___, 2026 WL 135982 (2026).....................................................................2

*Lewis v. Casey,*
    518 U.S. 343 (1996).................................................................................................6

*Mempa v. Rhay,*
    389 U.S. 128 (1967).................................................................................................5

*Santobello v. New York,*
    404 U.S. 257 (1971).................................................................................................7

*Townsend v. Burke,*
    334 U.S. 736 (1948).................................................................................................7

*United States v. Cronic,*
    466 U.S. 648 (1984).................................................................................................5

***Statutes***

18 U.S.C. § 3621....................................................................................................2

18 U.S.C. § 3664....................................................................................................5

***Constitutional Provisions***

U.S. Const. amend. V.............................................................................................7

U.S. Const. amend. VI............................................................................................2

Defendant Greg E. Lindberg respectfully moves this Court for an order directing the Bureau of Prisons to restore, and then to maintain for so long as the restitution proceedings in these cases remain pending, Mr. Lindberg's (i) daily access to his counsel and (ii) daily use of a computer and the documents, accounting statements, emails, and records relating to more than 300 companies, and other information, necessary to litigate restitution (collectively, the "Case Records"), in the presence of counsel; and recommending, under 18 U.S.C. § 3621(b), that the Bureau of Prisons hold Mr. Lindberg over at, or designate him to, a local detention facility at which that access is possible, such as the Montgomery County Detention Center, or the Pike County Detention Center in Pikeville, Kentucky. In support, Mr. Lindberg states as follows.

**INTRODUCTION**

Restitution in these cases is not final. The Special Master has recommended a restitution figure of approximately $1.6 billion. Mr. Lindberg has filed objections and contends—through mandatory offsets, prior payments, and credits—that restitution is fully paid. The Court has not yet held a restitution hearing or entered a final restitution order. Given the sum involved, one of the most consequential phases of Mr. Lindberg's sentence is still being litigated.

That litigation is part of his criminal sentence. In *Ellingburg v. United States*, the Supreme Court held that restitution under the Mandatory Victims Restitution Act is "plainly criminal punishment," imposed "together with other criminal punishments such as imprisonment and fines." *Ellingburg v. United States*, 607 U.S. 163, 166 (2026). Because the contested restitution determination is part of sentencing, it is a critical stage of Mr. Lindberg's criminal case at which the Sixth Amendment right to the assistance of counsel attaches.

Mr. Lindberg cannot meaningfully participate in that stage from his current confinement. To contest the Special Master's figure, he must work with counsel—daily—to reconstruct and

present the voluminous documents, accounting statements, emails, and records relating to more than 300 companies that document the offsets, prior payments, and causation on which his position depends. He recently retained new counsel, who must review those same records with him before the restitution figure is fixed. That access has now been cut off. The Bureau of Prisons has taken Mr. Lindberg into custody and is moving him through the federal transfer system—he was recently held at the Federal Transfer Center in Oklahoma City, where he had no access to the Case Records, or to daily consultation with counsel—and his designation and transfer to an institution such as the Federal Prison Camp in Montgomery, Alabama, or the Federal Prison Camp in Manchester, Kentucky, are already underway. The tools and access on which his participation depends have been severed, and each day they remain severed compounds the prejudice.

The relief Mr. Lindberg seeks is narrow and urgent: an order restoring daily access to counsel and the ability to review the Case Records on a computer in counsel's presence.

## BACKGROUND

1. In May 2024, Mr. Lindberg was convicted by a jury in Case No. 5:19-cr-22. On November 12, 2024, he pleaded guilty in Case No. 3:23-cr-48 and began serving his sentence that day. The Court bifurcated sentencing from the determination of restitution and appointed a Special Master to assist in the restitution process.

2. The restitution amount is actively contested. For roughly sixteen months, Mr. Lindberg has worked daily with counsel to develop and present the offsets, prior payments, credits, and causation evidence that, he contends, establish that restitution is fully paid. That work has required—and has been conducted through—daily access between Mr. Lindberg and his counsel; and at the Pike County Detention Center Mr. Lindberg was permitted to use a computer and the internet to review records with counsel and to prepare and present his position on restitution.

3.  Mr. Lindberg was sentenced on May 26, 2026, to a term of 144 months' imprisonment. At sentencing, the Court recognized the importance of Mr. Lindberg's continued participation in the contested restitution proceedings and recommended that he remain at the Pike County Detention Center.

4.  The restitution proceedings remain active and unresolved. The Special Master's report recommends restitution of approximately $1.6 billion. Mr. Lindberg has filed objections asserting offsets, prior payments, and credits that, if credited, establish that restitution is fully paid. Additional filings, a restitution hearing, and a final restitution order are anticipated.

5.  Mr. Lindberg's prior counsel have been substituted, and he is now represented by new counsel of record. New counsel must review the Case Records with Mr. Lindberg to present the offset and causation analysis before the restitution figure is fixed.

6.  Mr. Lindberg's access has now been cut off. The Bureau of Prisons has taken him into custody and is moving him through the federal transfer system; he was recently held at the Federal Transfer Center in Oklahoma City, the Bureau's central transit hub, where he had no access to a computer, no access to the Case Records, and no ability to consult daily with counsel. His designation and transfer to a federal institution, such as the Federal Prison Camp in Montgomery, Alabama, or the Federal Prison Camp in Manchester, Kentucky, are already underway. Absent an order restoring that access, Mr. Lindberg cannot consult counsel daily or review the records necessary to contest the Special Master's figure.

## ARGUMENT

**I.**   **The Contested Restitution Determination Is Part of Mr. Lindberg's Criminal Sentence and a Critical Stage of His Criminal Case.**

In *Ellingburg v. United States*, a unanimous Supreme Court held that restitution under the MVRA "is plainly criminal punishment for purposes of the Ex Post Facto Clause." 607 U.S. 163, at 166. Restitution is "imposed during 'sentencing' for the offense" and is ordered "together with other criminal punishments such as imprisonment and fines." *Id.* The Court reaffirmed that the MVRA "requires courts 'to impose restitution as part of the sentence.'" *Id* at 167. (quoting *Manrique v. United States*, 581 U.S. 116, 118 (2017)). And it emphasized that, at a sentencing proceeding where restitution is ordered, the party adverse to the defendant is the Government. *Id.*

It follows directly that the restitution determination still pending in these cases is part of Mr. Lindberg's criminal sentence. That determination is no formality. Under 18 U.S.C. § 3664(e), "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," and "[t]he burden of demonstrating the financial resources of the defendant . . . shall be on the defendant." The statute also provides that any amount paid under an order of restitution is reduced by any amount later recovered as compensatory damages for the same loss. 18 U.S.C. § 3664(j)(2). The offsets, prior payments, and credits Mr. Lindberg presses are thus not collateral to the restitution inquiry—under the governing statute, they define it, and Mr. Lindberg bears the burden of proving them by a preponderance of the evidence.

Because the contested restitution determination is part of sentencing, it is a critical stage of Mr. Lindberg's criminal case. The Supreme Court has long held that the time of sentencing is a critical stage in a criminal case and that the right to counsel attaches "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389

U.S. 128, 134 (1967). Few stages affect a defendant's substantial rights more than one that will fix an obligation the Special Master places at roughly $1.6 billion.

**II.     Severing Daily Access to Counsel and the Tools to Analyze the Offsets Denies Mr. Lindberg the Assistance of Counsel Guaranteed by the Sixth Amendment.**

The Sixth Amendment guarantees the assistance of counsel at every critical stage. That guarantee is not satisfied by the mere formal availability of a lawyer; it requires the access necessary for counsel to function. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic*, 466 U.S. 648, 654 (1984) (citation omitted). For that reason, the denial of counsel at a critical stage of the proceedings may constitute "a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659.

Here, the denial is functional but no less complete. Mr. Lindberg is held without a computer and without a telephone; he cannot consult counsel daily, and he cannot review the Case Records—the documents, accounting statements, emails, and company records that are the entire substance of his restitution defense. A lawyer who cannot meet with the client, and a client who cannot examine the very documents on which the disputed restitution figure turns, cannot subject the Special Master's recommendation to meaningful adversarial testing. The problem is acute because Mr. Lindberg bears the statutory burden on offsets, *see* 18 U.S.C. § 3664(e), and because newly retained counsel must review the underlying records with him before the figure is fixed. Denying that access at this stage is, in practical effect, a denial of counsel where it matters most.

**III.     The Right of Access to the Courts Independently Requires That Mr. Lindberg Be Given the Tools to Litigate Restitution.**

Independent of the Sixth Amendment, Mr. Lindberg has a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). That right imposes on

custodial authorities an affirmative duty to provide prisoners "adequate law libraries or adequate assistance from persons trained in the law"—and, more broadly, the tools needed to litigate. *Id.* The Supreme Court has made clear that this right seeks to ensure prisoners have "[t]he tools . . . to attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

The denial of access here falls squarely within that right. Under *Ellingburg*, the restitution determination is part of Mr. Lindberg's sentence; litigating it is an effort "to attack [his] sentence." *Lewis*, 518 U.S. at 355. The deprivation of a computer, counsel access, and the Case Records is "presently hindering" Mr. Lindberg's ability to pursue a serious claim—that restitution is fully paid—against a deadline-driven report recommending $1.6 billion. *Id.* at 343.

Due process under the Fifth Amendment points the same way. A criminal sentence may not rest on materially false or incomplete information that the defendant had no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 740–41 (1948). Denying Mr. Lindberg the access necessary to present his offsets risks fixing a restitution figure—part of his sentence—on an incomplete record he was never able to contest.

## IV. The Plea Agreement and the Special Master Order Require the Government to Facilitate This Access.

The access Mr. Lindberg seeks is also the access the restitution framework presupposes. Under the Plea Agreement, Mr. Lindberg must truthfully complete, under penalty of perjury, a financial statement, update it within seven days of any material change, and make full disclosure of all current and projected assets. *See* Plea Agreement ¶ 10(c). That obligation cannot be met without consistent computer and internet access to monitor, compile, and verify financial information in real time. The Agreement separately requires Mr. Lindberg to comply with the Special Master Order and to take "all necessary and reasonable steps in the defendant's power to

secure assets sufficient to pay full restitution" to the insurance companies it identifies. *Id.* ¶¶ 8(d), 9, 10(a). And the Order Appointing the Special Master (Doc. 56, Jan. 23, 2025) reserves to the parties—including Mr. Lindberg—the express right to "make motion or application to this Court to expand or narrow the scope of Primary Restitution Assets, which shall be heard upon notice and hearing." Order Appointing Special Master ¶ 15. None of these obligations or rights can be performed or exercised from a cell with no computer and no internet access; the framework that requires Mr. Lindberg's participation necessarily carries with it the Government's corresponding obligation to make that participation possible.

The Court should enforce the plea agreement here. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). The access secured through the parties' restitution framework is not a discretionary courtesy or a bargaining chip; it is the means by which Mr. Lindberg performs his end of the agreement and, at the same time, exercises his constitutional rights to counsel, to due process, and to access the courts in the proceeding that will fix his punishment.

## V. Emergency Consideration Is Warranted, and the Relief Requested Is Narrow.

Emergency consideration is appropriate because the harm is occurring now. Designation and transfer are already underway, and Mr. Lindberg's access to counsel and to the Case Records has already been cut off. He is being moved through the transfer system as this motion is filed, and with each day that he is without counsel and the Case Records he cannot answer a report recommending approximately $1.6 billion. The ordinary notice schedule cannot keep pace with an in-progress transfer, and Mr. Lindberg may be designated to and confined at an institution where

the access cannot be provided at all. The Court can end that irreparable disruption by acting now to restore the access that Mr. Lindberg had throughout the restitution process.

The relief requested is correspondingly modest. Mr. Lindberg seeks no advantage in the merits of the restitution dispute—only the restoration of daily access to counsel and the ability to review the Case Records on a computer in counsel's presence, conditions he had until his transfer, that the Court recognized at sentencing, and that impose no cognizable burden on the Government. To the contrary, the requested access serves the Government's interest in an accurate restitution determination. This Court has authority over the criminal proceedings before it to protect Mr. Lindberg's rights and to direct the conditions necessary for him to participate at this critical stage.

The Government does not oppose the core of this relief. Mr. Lindberg has conferred with counsel for the Government and its position is the following: "The Government objects to the Court ordering the Bureau of Prisons to take, or not take, any specific actions regarding the confinement of Mr. Lindberg. That said, the Government does not object to the Court recommending that the Bureau of Prisons allow regular access to his criminal counsel of record in this case including regular use of a computer and the Case Records, in the presence of such criminal counsel, consistent with the needs and resources of the Bureau of Prisons. At this time, the Government objects to the remaining relief requested by Defendant." The access at the heart of Mr. Lindberg's request—regular consultation with counsel and review of the Case Records on a computer—thus falls within the relief the Government does not oppose.

To make Mr. Lindberg's access workable, the Court may make recommendations as to where Mr. Lindberg is held. The Bureau of Prisons must "place the prisoner in a facility" and may "designate any available penal or correctional facility . . . whether maintained by the Federal Government or otherwise," 18 U.S.C. § 3621(b)—language that reaches not only federal

institutions but also local detention facilities that house Bureau inmates under intergovernmental or contract agreements. The Bureau must consider "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate." *Id.* § 3621(b)(4). While the Bureau's ultimate designation "is not reviewable by any court," *id.* § 3621(b), this Court may recommend that the Bureau hold Mr. Lindberg at a local detention facility that houses Bureau inmates under contract and at which daily counsel access and supervised computer use are possible—including, once he is designated, a facility paired with the camp to which he is sent: a holdover at the Montgomery County Detention Center if Mr. Lindberg is designated to the Federal Prison Camp in Montgomery, Alabama, or a holdover at the Pike County Detention Center in Pikeville, Kentucky (where Mr. Lindberg previously was afforded such access) if he is designated to the Federal Prison Camp in Manchester, Kentucky—rather than continue to route him through a transfer center or complete his transfer to a facility where the records review essential to the pending proceeding is impossible. Such a recommendation imposes nothing on the Bureau; it supplies only the Court's view that this defendant's participation in an ongoing critical stage warrants a facility where counsel access and record review can occur.

## CONCLUSION

For these reasons, Mr. Lindberg respectfully requests that the Court enter the accompanying order directing the Bureau of Prisons to restore, and then to maintain for so long as the restitution proceedings remain pending: (1) daily access to his counsel; and (2) daily use of a computer and the Case Records, in the presence of counsel; further recommending, under 18 U.S.C. § 3621(b), that the Bureau hold Mr. Lindberg over at a local detention facility at which that access is possible—including, once designated, a facility paired with his destination: a holdover at the Montgomery County Detention Center if he is designated to the Federal Prison Camp in

Montgomery, Alabama, or a holdover at the Pike County Detention Center in Pikeville, Kentucky if he is designated to the Federal Prison Camp in Manchester, Kentucky—rather than continue to route him through a transfer center or complete his transfer to a facility where that access cannot be provided; and granting any other relief that the Court deems just and proper.

Dated: June 24, 2026

Respectfully submitted,

/s/ Kenneth N. Barnes

Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

Alex Little (pro hac vice)
Edward M. Canter (pro hac vice)
Brent Hannafan (pro hac vice)
Litson PLLC
54 Music Square E, Suite 300
Nashville, Tennessee 37203
Tel: (615) 985-8205

*Counsel for Greg E. Lindberg*

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

Pursuant to the Court's June 18, 2024 Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 24th day of June, 2026.


*/s/ Kenneth N. Barnes*
Kenneth N. Barnes

*Counsel for Greg E. Lindberg*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 24, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Kenneth N. Barnes
Kenneth N. Barnes

Case 3:23-cr-00048-MOC-DCK     Document 225     Filed 06/24/26     Page 14 of 14