# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

GREG E. LINDBERG,

      Defendant.

Case No. 3:23-CR-48-MOC

Judge Max O. Cogburn, Jr.

## DEFENDANT GREG E. LINDBERG'S RESPONSE IN OPPOSITION TO CELL 1.16'S MOTION FOR RESTITUTION UNDER THE CRIME VICTIMS' RIGHTS ACT

Defendant Greg E. Lindberg respectfully submits this Response in opposition to Cell 1.16's Motion for Restitution Pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771 (Doc. No. 221), and the supporting Memorandum (Doc. No. 222) (together, the "Motion"), filed by the Commissioner of the Vermont Department of Financial Regulation, Kaj Samsom, solely in his capacity as Rehabilitator of Vista Life & Casualty Reinsurance Company's Protected Cell 1.16, n/k/a ViUS PC 2016-A IC, Inc. ("Cell 1.16"). For the reasons set forth below, the Motion should be denied.

## INTRODUCTION

Cell 1.16's Motion is its second effort to obtain a restitution award that the Special Master considered and declined to recommend and this Court has already denied. The Motion rests on "the same underlying facts as set forth in" the Objection and Motion for Reconsideration, Doc. No. 171—principally the Declaration of Donald D. Solow (Doc. No. 113)—now repackaged under the Crime Victims' Rights Act. *See*

1

Doc. No. 222, at 1 n.1. The new label changes nothing. The Special Master, with the full record before him, found that Cell 1.16 "satisf[ies] almost all of the elements" of his definition of a restitution victim but "fall[s] short" on the single element in dispute: it has not "pointed to specific instances where Defendant misrepresented or concealed the nature of the Affiliate Investments." Doc. No. 106-3, at 23. This Court adopted that recommendation. The Motion supplies no new evidence and no basis to revisit it—and, as shown below, the contemporaneous correspondence of Cell 1.16's own declarant affirmatively refutes the misrepresentation theory on which the Motion depends. Independently, Cell 1.16's own filing concedes that "[m]any of the same loans" underlying its claimed loss "were also held by the North Carolina and Bermuda insurance companies and underlie those insurers' entitlement to restitution," Doc. No. 222, at 2—so an award to Cell 1.16 on those loans would be an impermissible double recovery. The Motion should be denied.

ARGUMENT

**I.** **The Motion Merely Reargues Cell 1.16's Reconsideration Motion on Identical Facts, and Entertaining a Successive, Repetitive Request Would Unfairly Prejudice the Defendant.**

This is not the first time—nor the second, nor the third—that Cell 1.16 has sought restitution on this record. Cell 1.16 objected to the Special Master's Report (Doc. No. 115), renewed that objection after the Special Master's Supplement (Doc. No. 153), and moved for reconsideration of the Court's Preliminary Order of Restitution and Judgment (Doc. No. 171). The present Motion expressly "relies on the same underlying facts as set forth in" the reconsideration motion, Doc. No. 171—

2

principally the Declaration of Donald D. Solow (Doc. No. 113). Doc. No. 222, at 1 n.1. Re-labeling the request—from a motion for reconsideration to a motion under the Crime Victims' Rights Act—does not transform a repetitive request into a new one. Cell 1.16 identifies no newly discovered evidence, no intervening change in the controlling law, and no error in the Court's prior determination; it merely re-presents the same facts and asks for a different result.

The claim Cell 1.16 re-raises has already been considered and resolved. The Special Master addressed it in his Report (Doc. No. 106) and again in his Supplement (Doc. No. 146), and he continues to oppose it. *See* Doc. No. 222, at 1 n.1. The Court adopted the Special Master's recommendation in its Preliminary Order of Restitution (Doc. No. 161) and Judgment (Doc. No. 162). Nor does the procedure referenced in the Fourth Circuit's decision authorize this successive filing: Cell 1.16 had already raised its restitution claim with this Court in Doc. No. 171, *see* Doc. No. 203, and nothing in that decision licenses a second motion re-presenting facts the Court has already weighed. The Crime Victims' Rights Act guarantees a victim the right to be reasonably heard; it does not entitle a claimant to relitigate the same claim, on the same record, seriatim until it obtains a different answer.

Entertaining successive motions that recycle the same record would unfairly prejudice the Defendant. Each repetitive filing forces the Defendant—who is incarcerated and is simultaneously litigating restitution and related matters on multiple fronts—to expend limited resources re-answering a claim that has already been briefed, weighed by the Special Master, and decided. It invites inconsistent

rulings and indefinitely defers the finality of the restitution determination, to the prejudice not only of the Defendant but of the other Insurance Companies.[1] The Court may properly decline to entertain Cell 1.16's repetitive request, and—for this reason and those that follow—should deny the Motion.

## II. The Motion Provides No Basis to Disturb the Special Master's Considered Finding on the Same Record.

The Crime Victims' Rights Act defines a "crime victim" as a person "directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A); *accord* 18 U.S.C. § 3663A(a)(2) (Mandatory Victims Restitution Act). Restitution reaches only "the loss caused by the specific conduct that is the basis of the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 413 (1990), and—as the Fourth Circuit held in this case—the harm must be "closely related to the conduct inherent to the offense, rather than merely tangentially linked," Doc. No. 203, at 4–5; *see In re McNulty*, 597 F.3d 344, 350 (6th Cir. 2010) (the CVRA's directness requirement encompasses both but-for and proximate causation); *Paroline v. United States*, 572 U.S. 434, 445 (2014) (restitution requires proximate causation).

The Special Master applied that framework through the multi-element definition he developed and that Cell 1.16 "generally accepts." Doc. No. 222, at 11. Having reviewed the Solow Declaration, the rating reports, and the buy-back letter on which the Motion now relies, he concluded that Cell 1.16 did not satisfy the

---

[1] The Court has yet to determine, de novo, causation, offsets, and credits—whether on motions practice or at the hearing—which will further change the restitution determination. Defendant expressly reserves this determination.

misrepresentation-or-concealment element. Doc. No. 106-3, at 23. This Court adopted that recommendation in its Preliminary Order of Restitution (Doc. No. 161) and Judgment (Doc. No. 162). The Motion offers no new evidence; it re-argues the same facts the Special Master already weighed. A party's disagreement with the Special Master's considered assessment is not a ground to disturb it.

To the extent the Motion relies on Judge King's separate opinion for the proposition that a CVRA "motion" is the proper vehicle, *see* Doc. No. 222, at 1, that opinion concurred in part and dissented in part; it is not the holding of the Court. Doc. No. 203. And the panel majority's reasoning—declining to disturb the exclusion of a claimant who "fail[ed] to sufficiently connect the harm suffered ... with Lindberg's criminal conduct," *id.* at 4–5—counsels denial here.

III. **Cell 1.16 Cannot Establish the Misrepresentation-or-Concealment Element, and the Contemporaneous Correspondence of Its Own Declarant Refutes It.**

Cell 1.16 concedes that the only disputed element is whether "the Defendant or his agents made material misrepresentations or omissions concerning those Affiliate Investments or asset management strategies to Cell 1.16 or its regulator." Doc. No. 222, at 2. It cannot carry that burden—and the contemporaneous correspondence of its own declarant, Donald D. Solow, refutes it. That correspondence was previously furnished to the Special Master; and it is included as exhibits. The statements set out below are Mr. Solow's own—the principal of Vista/Cell 1.16 and the declarant on whose Declaration (Doc. No. 113) the Motion principally relies.

### A. Cell 1.16's own principal knew the investments were affiliated with the Defendant.

The Motion's own account establishes that Cell 1.16's investing was structured, from inception, as an affiliated-investment arrangement. New England Capital, LLC ("NEC")—"ultimately owned by Defendant Lindberg," Doc. No. 222, at 5—capitalized Cell 1.16, held the Series 2016-A and 2016-B certificates, and served as Collateral Manager directing the Reinsurance Trust's investments into "Lindberg-related loans." *Id.* at 5–7. The affiliation is not merely the Defendant's allegation; Cell 1.16's own principal acknowledged it contemporaneously and in writing. In July 2019, Mr. Solow reported that Vermont's regulator had sent a "letter from VT DFR ordering us to sever ties to the Eli Global group," which required, among other things, that Vista "terminate contracts with New England Capital." Ex. A (Solow, July 29, 2019). Where the affiliated character of the investments was understood by those directing them—indeed, by Cell 1.16's own principal—it was not concealed. The Special Master reached the same conclusion: those persons "were well apprised of the defendant's affiliated loan investing strategy, such that there was nothing for the defendant to hide." Doc. No. 206, ¶ 3.

### B. Cell 1.16 did not rely on the agency ratings as truthful representations of value; its own principal treated them as unreliable and sought any rating, however low, for regulatory purposes.

Recognizing that the affiliated nature of the investments was known, the Motion shifts ground: it argues the misrepresentation lay in "rating reports with ratings inflated" by asset-shuffling, on which Cell 1.16 says it relied without knowing

the ratings were unsound. Doc. No. 222, at 2, 14. The Motion asserts that the Defendant "does not provide any 'evidence' of familiarity with the ratings process," and that "[n]either the Special Master nor Lindberg contend that Cell 1.16 was aware" the ratings were unreliable. *Id.* at 15. The record goes the other way, and the evidence is Cell 1.16's own declarant's contemporaneous words.

Mr. Solow did not treat the agency ratings as reliable indicators of the investments' value. In the spring of 2019 he advised that prospective buyers were "interested in your credit memos, not the rating agency reports," that they "don't want to rely on the ratings reports," that the assets were "essentially mini-CLOs," and that the parties were "aware of the headlines" concerning the affiliated enterprise. Ex. B (Solow, Mar. 31, 2019). Far from treating the ratings as honest valuations, Mr. Solow pursued any rating—however low—to preserve the trust's regulatory reserve credit. In January 2020 he asked whether the agencies could "assign ratings, even if the ratings are NAIC-5 ('CCC')," explaining that "[a] rating of NAIC-5 would work" and that "[t]he key is that there needs to be some rating, even if it's very low." Ex. C (Solow, Jan. 2020). And in May 2019 he urged that it was "imperative that we get all the assets in the trust rated by May 15th, or swap out the unrated assets," so that the trust's assets would not be treated as unrated for reserve purposes. Ex. D (Solow, May 3, 2019).

A claimant whose own principal regarded the ratings as something buyers would not "rely on," who described the assets as low-grade "mini-CLOs," and who solicited any rating—even "CCC"—to satisfy regulatory reserve requirements did not

rely on those ratings as truthful representations of the investments' value. Reliance is essential to any theory of misrepresentation, and Cell 1.16's own contemporaneous conduct negates it. That defeats the element claimant disputes.

The Motion's ratings theory fails for an additional, independent reason. The ratings were issued by independent agencies—Egan-Jones and HR de Mexico, *see* Doc. No. 222, at 7—not authored by the Defendant or NEC as representations to Cell 1.16; NEC's having "provided" a third party's rating report is not itself a misrepresentation by the Defendant. And the Special Master had these very rating reports before him—they are exhibits to the Solow Declaration that the Motion relies on—and nonetheless found no specific instance of misrepresentation or concealment. Doc. No. 106-3, at 23. The Special Master's considered conclusion on the same materials should stand.

### C. The buy-back letter is a collateral guarantee, not a misrepresentation concerning the investments, and its breach is not closely related to the offense.

The Motion separately contends that the Defendant "misrepresented his willingness and ability to repurchase the Affiliated Investments" in a letter agreement dated November 16, 2018. Doc. No. 222, at 13. But a personal commitment to buy back assets in the event of default is a collateral financial guarantee; it is not a "misrepresentation or omission concerning those affiliated investments or asset management strategies," which is the element at issue. The harm from an unperformed guarantee sounds in contract, and—like the harm the Fourth Circuit found insufficient in the related proceeding—is at most tangentially linked to, rather

8

than closely related to, the conduct inherent in the offense. *See* Doc. No. 203, at 4–5; *In re McNulty*, 597 F.3d at 352.

## IV. An Award to Cell 1.16 on the Same Loans Underlying Other Victims' Restitution Would Be an Impermissible Double Recovery.

Even if Cell 1.16 could establish victim status, its requested award founders on double recovery. Cell 1.16 admits that "many of the same loans" underlying its claimed loss "were also held by the North Carolina and Bermuda insurance companies and underlie those insurers' entitlement to restitution." Doc. No. 222, at 2; *see also id.* ¶¶ 15, 22 (describing the same Lindberg-related loans, in which the North Carolina and Bermuda insurers also participated). Restitution is compensatory, not multiplicative: the Court orders restitution "to each victim in the full amount of each victim's losses," 18 U.S.C. § 3664(f)(1)(A)—not multiple recoveries upon a single underlying loss. An award to Cell 1.16 premised on the same defaulted loans that already underlie other recipients' awards would inflate aggregate restitution beyond the actual loss caused and produce a windfall. The Special Master himself flagged the need, before any such award, to "confirm that Cell 1.16's restitution amount is calculated consistently with all other persons awarded restitution in this case." Doc. No. 206, ¶ 4. And the proponent bears the burden of proving any loss amount by a preponderance. 18 U.S.C. § 3664(e); *United States v. Catone*, 769 F.3d 866, 876 (4th Cir. 2014).[2] Cell 1.16's assertion of "$131,207,799 of

---

[2] Defendant applies the preponderance standard of 18 U.S.C. § 3664(e) for purposes of this Response without conceding its constitutionality. Because restitution under the Mandatory Victims Restitution Act is criminal punishment, *see Ellingburg v. United States*, 607 U.S. 163 (2026), Defendant contends that the Sixth Amendment

impaired assets," Doc. No. 222, at 9—unadjusted for the conceded overlap with other victims' awards, for collateral, or for recoveries—does not satisfy that burden.

## V. The PBLA/ULICO Analogy Does Not Aid Cell 1.16, and Its Harm Is, at Most, Tangentially Linked to the Offense.

Cell 1.16's contention that it is "similarly situated to PBLA," Doc. No. 222, at 17, underscores rather than cures the problem. The Special Master declined restitution to Cell 1.16 in part because there was no misrepresentation-or-concealment element. The distinction Cell 1.16 dismisses as one "without a difference" is "Lindberg did not directly control Cell 1.16." *Id.* That Cell 1.16 was controlled by parties who themselves understood and directed the affiliated investing—and whose own principal treated the ratings as unreliable—is precisely why the concealment element is absent here, and why Cell 1.16's situation differs from that of an insurer Lindberg controlled outright. The double-recovery overlap, present for Cell 1.16's loans but addressed by the Special Master for the awarded insurers, further distinguishes Cell 1.16. At bottom, Cell 1.16 asks the Court to override the Special Master's element-by-element findings on the same record; it has not shown those findings to be wrong.

---

requires the facts necessary to support a restitution award—including the identification of any victim and the amount of loss—to be found by a jury beyond a reasonable doubt, not by the Court by a preponderance of the evidence. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (applying *Apprendi* to criminal fines). Defendant expressly reserves and preserves this issue and does not waive any Sixth Amendment, Ex Post Facto, or related challenge to the restitution determination.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Cell 1.16's Motion for Restitution (Doc. Nos. 221, 222) and adhere to its Preliminary Order of Restitution (Doc. No. 161) and Judgment (Doc. No. 162) excluding Cell 1.16 from restitution. To the extent the Court is inclined to revisit that determination, Defendant respectfully requests an opportunity to be heard and an evidentiary hearing addressing both Cell 1.16's asserted victim status and the avoidance of any duplicative recovery.

Dated: June 29, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*

Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

Alex Little (pro hac vice)
Edward M. Canter (pro hac vice)
Brent Hannafan (pro hac vice)
Litson PLLC
54 Music Square E, Suite 300
Nashville, Tennessee 37203
Tel: (615) 985-8205

*Counsel for Greg E. Lindberg*

# ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Standing Order *In Re: Use of Artificial Intelligence* entered by this Court on June 18, 2024, the undersigned certifies that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg. The undersigned further certifies that every statement and every citation to an authority contained in this document has been checked for accuracy by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: June 29, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes

*Counsel for Greg E. Lindberg*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: June 29, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes

*Counsel for Greg E. Lindberg*