# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:23-CR-48-MOC**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **FINAL ORDER OF RESTITUTION** |
| **GREG E. LINDBERG** | |

**THIS MATTER** is before the Court on the Second Supplement to Report and Recommendations Regarding Restitution submitted by Joseph W. Grier, III, the Special Master (the "Special Master") appointed by this Court in the Order Appointing Special Master (the "Special Master Order," Doc. No. 56), and on various motions and other filings submitted by Defendant and other interested parties regarding restitution. This Order represents the Court's findings and conclusions regarding all such filings as they relate to restitution.

On February 23, 2023, in a thirteen-count Bill of Indictment, Greg E. Lindberg ("Defendant") was charged with: conspiracy, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. § 1343; making false insurance business statements presented to regulators, in violation of 18 U.S.C. § 1033(a); making false entries about the financial condition or solvency of an insurance business, in violation of 18 U.S.C. § 1033(c); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). (Doc. No. 1). Defendant pled guilty to Count One (conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment advisor fraud) and Count Thirteen (money laundering conspiracy) pursuant to a written plea agreement. As part of his plea agreement, Defendant agreed to pay restitution to victims of the conduct charged in the indictment and to the appointment of a special master to "identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court."

1

On December 5, 2024, the United States and Defendant jointly moved the Court to enter an order appointing a special master and requesting that the Court provide the Special Master with various powers and duties regarding the restitution process. (Doc. No. 54). The Court entered the Special Master Order on January 23, 2025. (Doc. No. 56). As requested by the parties, the Special Master Order directed the Special Master to, among other things: (a) verify and quantify the losses suffered by each victim and any amounts already received by each victim to compensate for such losses; and (b) fashion a proposed restitution order. As set forth in the Special Master Order, in order to "fashion a restitution order, the Court must consider and determine: (a) which entities and individuals are properly considered "victims" pursuant to 18 U.S.C. § 3663A(a)(2); (b) the proper amount of restitution owed to each victim pursuant to 18 U.S.C. §§ 3663A(b) and 3664(e); and (c) an appropriate payment schedule pursuant to, among other sections, 18 U.S.C. § 3664(i)."

On March 20, 2026, the Special Master filed his Report and Recommendations Regarding Restitution (Doc. No. 106) (the "Initial Report," and collectively with a first supplement to the report filed on May 15, 2026 (Doc. No. 146) (the "First Supplement") and a final supplement to the report filed on July 23, 2026 (Doc. No. ___) (the "Final Supplement"), the "Restitution Report").[1] The Initial Report and First Supplement: (1) focused on the first two of the foregoing three determinations sought by the Special Master Order, (A) who the payees of restitution are in this Case and (B) the amount of restitution ordered for each payee; and (2) deferred issues concerning the timing or priority of payments to the payees of restitution until a later time.

The Initial Report triggered several responses from third parties interested in the outcome of the restitution process in this Case, including by: the Commissioner of the Vermont Department of Financial Regulation, Kaj Samsom, solely in his capacity as Rehabilitator of Vista Life &

---

[1]     Capitalized terms not defined herein shall have the meanings assigned thereto in the Restitution Report.

# EXHIBIT A

Casualty Reinsurance Company's Protected Cell 1.16, n/k/a ViUS PC 2016-A IC, Inc. ("Vista") (Doc. No. 115); the North Carolina Insurance Companies (Doc. No. 123); Eleonora L. Zetteler, LLM and J. Robert van Faassen, LLM, in their capacities as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij Van Levensverzekering "Conservatrix" N.V. ("Conservatrix") (Doc. No. 130); ULICO (Doc. No. 136); NOLHGA (Doc. No. 137); and the Bermuda Insurance Companies (Doc. No. 138) (collectively, the "Non-Defendant Responses"). Defendant also filed an initial response to the Initial Report on May 4, 2026 (Doc. No. 132) ("Defendant's Initial Response").

After taking into consideration all of the various positions advanced and arguments made within Defendant's Initial Response and the Non-Defendant Responses, the Special Master filed the First Supplement on May 15, 2026, adjusting some of the Special Master's recommendations to the Court, leaving most of the recommendations unchanged, and holding open for further investigation and consideration certain newly identified arguments that the Special Master lacked the time to fully consider in advance of Defendant's sentencing hearing.

The sentencing hearing in this Case occurred on May 26, 2026 (the "Sentencing Hearing"). During the Sentencing Hearing, the Court orally pronounced the sentence upon Defendant and signed a consent order and judgment of forfeiture (Doc. No. 160) and a preliminary order of restitution (Doc. No. 161) (the "Preliminary Restitution Order"). The Court subsequently issued a written judgment on May 29, 2026 (Doc. No. 162), incorporating its oral pronouncement of the sentence, the consent order and judgment of forfeiture, and the Preliminary Restitution Order. As indicated by Defendant's counsel and attorneys for the government during the sentencing hearing and as expressly stated in the Preliminary Restitution Order, the Special Master was to further

investigate the specifically enumerated open restitution issues in the 60 days following sentencing and make a final recommendation to the Court during such period.

Following entry of the Preliminary Restitution Order: Vista filed a motion seeking reconsideration of Vista's exclusion from the parties awarded restitution in this Case (Doc. No. 171) (the "Reconsideration Motion"); Defendant filed a supplement to the Defendant's Initial Response (Doc. Nos. 174–88) and various emergency motions, objections, and other documents, within which various restitution-related arguments were embedded (Doc. Nos. 172, 173, 190, 198, 201, 202, 211, 212, 213, 219, 220, 234, & 238) (collectively, "Defendant's Supplemental Responses")[2]; Conservatrix filed with the Fourth Circuit Court of Appeals a petition for writ of mandamus to compel this Court to treat Conservatrix among the parties awarded restitution in this Case, which petition the Fourth Circuit denied with prejudice (*see* Doc. Nos. 189, 193, 203 & 204); and Vista filed a motion affirmatively seeking restitution from the Court pursuant the Crime Victims' Rights Act,18 U.S.C. § 3771 (Doc. No. 221) (the "CVRA Motion").

Thereafter, the Special Master filed the Final Supplement, which made recommendations to the Court concerning the timing or priority of payments to the payees of restitution, restated the Special Master's positions on the arguments made in the Non-Defendant Responses and Defendant's Initial Response, and addressed Defendant's contentions from Defendant's Supplemental Responses.

Based on the Court's review of (I) the Restitution Report, the Non-Defendant Responses, Defendant's Initial Response, Defendant's Supplemental Responses, Vista's Reconsideration Motion, and Vista's CVRA Motion, (II) the arguments and representations made by Defendant during the Sentencing Hearing, (III) the evidence and arguments presented during a hearing held

---

[2] Defendant also filed a Notice of Appeal of the judgment, order of restitution, and consent order and judgment of forfeiture on June 11, 2026. (Doc. Nos. 191 & 192).

# EXHIBIT A

to consider restitution-related issues in this Case, (IV) victim impact statements submitted to the Court, and (V) the record in this Case more generally, the Court finds and concludes as follows[3]:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Special Master has conducted a thorough and impartial investigation of all the restitution-related issues relevant to this Case in accordance with the power and duties set forth in the Special Master Order. At the Sentencing Hearing, Defendant specifically "recognize[d] the excellent work of the Special Master and of its financial advisor in this case."

Except as expressly provided otherwise herein, the Court generally agrees with the Special Master's factual findings and legal conclusions appearing in the Restitution Report, all of which are incorporated herein by reference and adopted as the Court's own findings and conclusions. The Court's omission in this Order of a specific reference to any finding or conclusion in the Restitution Report shall not imply that the Court failed to review, or did not concur, with such finding or conclusion. Defendant has not raised genuine issues of material fact that affect the Court's general view of the factual findings and legal conclusions appearing in the Restitution Report.

Pursuant to the Plea Agreement, Defendant committed to paying "full restitution" to CBL, BLIC, SNIC, SNRC, Northstar, Omnia, PBLA, ULICO, and PBIHL for the conduct charged in the Bill of Indictment.

Based on the Bill of Indictment and the particular circumstances of this Case, a person must meet the following criteria in order to potentially qualify as a person due restitution in connection with this Case:

Either (1)
- an insurance company,

---

[3] To the extent any finding of fact includes conclusions of law, such finding shall be also deemed a conclusion of law, and vice versa.

- the assets of which Defendant or Defendant's agents had some power to invest or otherwise control, directly or indirectly,
- which assets were in fact diverted to a Defendant-affiliated entity,
- to whom, or to whose regulators, Defendant or Defendant's agents made material misrepresentations or omissions concerning those affiliated investments or asset management strategies, and
- which diverted assets actually lost value as a proximate result of Defendant's activities.

Or (2)

- an insured of an insurance company described above (or a subrogee thereof),
- which actually suffered damages as a proximate result of Defendant's fraudulent activities.

The following victims qualify for restitution based on the foregoing criteria: CBL; BLIC; SNIC; SNRC; Northstar; Omnia; PBLA (including ULICO); and PBIHL.

Conservatrix does not qualify as a person due restitution because no unreturned assets belonging to Conservatrix were diverted to a Defendant-affiliated entity. It also appears that neither Defendant nor Defendant's agents made material misrepresentations or omissions concerning those affiliated investments or asset management strategies to Conservatrix or Conservatrix's regulator(s).

Vista does not qualify as a person due restitution because it does not appear that Vista relied on any material misrepresentations or omissions concerning those affiliated investments or asset management strategies made by Defendant or Defendant's agents to Vista or Vista's regulator(s), at least not in the same manner as those described in the indictment.

Defendant agrees with the Special Master that Defendant's restitution responsibility should be calculated based on the outstanding balances owed on Affiliate Investments, using the principal balances shown in the IALA as the starting point. The Court finds this to be an appropriate methodology for calculating restitution losses in this Case, including the exclusion of "non-IALA" investments from the analysis.

# EXHIBIT A

To the extent the Special Master's recommendations deviate from the principal balances agreed to by the Defendant and the North Carolina Insurance Companies in the IALA, the Special Master's recommended deviations are fair and appropriate and the Court adopts them.

Defendant's acquisition of Agera—and assurances that Defendant would be able to rehabilitate, or otherwise adequately address the insurance companies' hardships attributable to, Agera—was critical to Defendant's fraud on the Bermuda Insurance Companies. Defendant benefitted substantially from all of the Affiliate Investments in Agera, even those that were made before Defendant controlled the investing insurance company or before Defendant controlled Agera. As such, Defendant should not receive any credit or offsets towards restitution based upon the Agera investments.

Given the substantial amount of time that has elapsed since the restitution losses were incurred and the circumstances of this Case more generally, it is necessary to apply an interest component to the Affiliate Investments' unpaid principal to account for the "time value of money." An interest rate equal to 2.19% per annum fairly and reasonably accounts for the time value of money under the circumstances present in this Case and is necessary to make the victims whole in this Case. The Court does not believe, or intend, that such interest honors the victims' disappointed expectations or provides the victims the benefit of any bargain they had with Defendant. Indeed, this interest rate is not only less than the interest rate Defendant agreed to pay in the Affiliate Investments themselves and is less than the reduced interest rates Defendant agreed to pay in the IALA, but it is also less—as the North Carolina Insurance Companies highlight in their objection—than the "applicable federal rate" used to avoid adverse tax consequences triggered by "interest free loans."

7

# EXHIBIT A

The Special Master's analysis appropriately accepts and immediately accounts for Defendant's following Asserted Recoveries: quarterly interest payments and other partial payments made by Defendant to the victims on Affiliate Investments; a $25 million partial payment made directly to ULICO; the $289 million in aggregate sale proceeds distributed to the victims from the sale of the Clanwilliam Group of Companies; and approximately $39 million of the requested approximately $80 million in certain preferred equity payments made to the victims itemized in the Final Supplement.

Defendant's following Asserted Recoveries were made for consideration independent of paying down the Affiliate Investments' balances: $5 million redemption fee paid to CBL; the approximately $28 million in reimbursements to expenses incurred by SNIC; $3 million subordination fee paid to CBL; CBL's purchase of "Eye Care Leaders" out of bankruptcy; ULICO's sales of real estate; and the Bermuda Insurance Companies' sales of assets unrelated to the IALA totaling approximately $9.8 million. As such, Defendant should not receive any credit or offsets towards restitution for these Asserted Recoveries.

Defendant has failed to rebut with genuine issues of material fact the recommendations of the Special Master that Defendant's restitution obligation should NOT be reduced on account of the following requested offsets: 2018 value of the equity interest in the North Carolina Insurance Companies; the North Carolina Insurance Companies' failure to refinance "UKAT"; the "Insurance-Holdco Debt" attributable "to acquisitions driven by the GBIG management team"; proceeds from sales of "zero coupon bonds"; "losses" based on the early liquidation of the "zero coupon bonds"; the "below-market" sale of CWG; and the sale of "Finnazen/Blue Violet." As such, Defendant should not receive any credit or offsets towards restitution for these Asserted Recoveries.

Case 3:23-cr-00048-MOC-DCK    Document 245-1    Filed 07/23/26    Page 8 of 12

# EXHIBIT A

Except as otherwise included in the Special Master's calculations, the Bermuda Insurance Companies and the North Carolina Insurance Companies failed to demonstrate that transfers by those entities to entities referred to as "SFL" or "SASL" should be counted toward Defendant's restitution obligation.

ULICO has not unreasonably failed to monetize the preferred equity interest referenced in the Defendant's Initial Response and Defendant's Supplemental Responses. As such, Defendant should not receive any credit or offsets towards restitution at this point. Defendant's restitution obligations shall be reduced as appropriate if and when ULICO monetizes this interest.

None of the $20 million placed in escrow to resolve possible Irish income tax liabilities that may result from the sale of the Clanwilliam Group of Companies have been paid to persons due restitution in this Case. As such, Defendant should not receive any credit or offsets towards restitution at this point. Defendant's restitution obligations shall be reduced if and when any of that $20 million is distributed to persons due restitution in this Case.

The Guaranty Associations did not provide compensation to the North Carolina Insurance Companies within the meaning of 18 U.S.C. § 3664(j)(1), and the facts and circumstances of this Case do not justify treating the Bermuda Insurance Companies differently than the North Carolina Insurance Companies for purposes of restitution. As such, partial restitution payments should be paid to all payees awarded restitution through this Order *pari passu* and *pro rata* based on the restitution loss amounts set forth herein.

Having reviewed the entire written record in this Case, and viewing the facts in a light most favorable to Defendant, the Court finds that there are no contested material factual issues regarding restitution that require an evidentiary hearing. The findings of fact and law by the Special Master

# EXHIBIT A

have not been successfully rebutted by any party and are hereby adopted. Based upon the foregoing Findings of Fact and Conclusions of Law, **IT IS, THEREFORE ORDERED** that:

Defendant shall make restitution to the following payees in the amounts listed below.

| NAME OF PAYEE | RESTITUTION AMOUNT |
|---|---|
| Colorado Bankers Life Insurance Company | $795,000,000 |
| Bankers Life Insurance Company | $18,000,000 |
| Southland National Insurance Company | $124,000,000 |
| Southland National Reinsurance Corporation | $0.00 |
| Northstar Financial Services (Bermuda) Ltd. | $179,000,000 |
| Omnia Ltd. | $43,000,000 |
| PB Life and Annuity Co., Ltd. / Universal Life Ins. Co. | $413,000,000 |
| PB Investment Holdings Ltd. | $44,000,000 |
| **TOTAL** | **$1,616,000,000** |

The restitution recovery of any payee is limited to the amount of their loss, and Defendant's liability to a payee under this Order ceases if and when the payee receives full restitution.

As the assets available to pay restitution are liquidated into cash, the Special Master would distribute the available funds (net of an administrative expenses incurred by the Special Master, or funding or replenishing any administrative expense reserves, as approved by the Court) to the persons due restitution on a *pari passu* and *pro rata* basis based on the restitution loss amounts awarded by the Court in this Case; *provided, however*, that, the loss amounts for each of the persons due restitution shall be reduced, credited, or otherwise adjusted downward to the extent any persons due restitution receives compensation for the same loss(es) comprising their restitution award through any source, including, without limitation, execution on a judgment, payments to release litigation claims, or cash extracted from assets previously transferred by the Defendant to reduce such loss(es) and for no other independent consideration.

# EXHIBIT A

Defendant shall notify the Court, the Special Master, the U.S. Attorney's Office, and, during any period of supervised release, the U.S. Probation Office of any material change in Defendant's economic circumstances that might affect Defendant's ability to pay restitution.

Pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

Nothing in this order shall impair, limit, or alter the civil rights otherwise available to any person, including, without limitation, any right to enforce judgments, contractual obligations, or other claims against Defendant for dollar amounts that may exceed the restitution assigned herein.

Defendant shall receive a credit reducing the foregoing restitution amounts for: (i) all future cash payments made to the foregoing payees by Defendant, through the Special Master or otherwise, with respect to the same loss(es); (ii) for all cash received by any of the foregoing payees from any of the "Primary Restitution Assets" or "Secondary Restitution Assets," as those terms are defined in the Special Master Order; and (iii) for all civil damages recovered by the foregoing payees as compensation for the same loss(es). The foregoing restitution amounts already account for monetary recoveries realized by the payees prior to the entry of this Order.

Defendant shall remain responsible for paying all Court-approved fees, expenses, and other compensation incurred by the Special Master in fulfilling the Special Master's duties under the Special Master Order. Defendant shall not receive a credit reducing the foregoing restitution amounts for the Court-approved administrative expenses incurred by the Special Master and paid by Defendant. Defendant shall not receive a credit reducing the foregoing restitution amounts for any incurred expenses of any kind by any party (including resulting income taxes) incidental to liquidating any of the "Primary Restitution Assets" or "Secondary Restitution Assets."

11

# EXHIBIT A

The restitution ordered herein shall be enforceable as a judgment of the United States pursuant to 18 U.S.C. §§ 3664 and 3613. At the request of any payee named in this Order, the Clerk of Court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such payee in the amount specified above. Likewise, at the request of the Special Master, the Clerk of Court shall issue an abstract of judgment certifying that a judgment has been entered in favor of the Special Master in the aggregate amount of restitution imposed by this Order.

This Order is subject to amendment by the Court sua sponte or upon application by any interested party, including the Special Master.

The restitution ordered herein shall be due and payable immediately.

Vista's Reconsideration Motion is **DENIED**.

Vista's CVRA Motion is **DENIED**.

To the extent not previously addressed, all additional relief requested in Defendant's Supplemental Responses is **DENIED**.

**SO ORDERED**.

Signed: _____ _____, 2026

_____
Max O. Cogburn Jr.
United States District Judge

12