# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr.<br><br><br>EXPEDITED CONSIDERATION REQUESTED |

**DEFENDANT'S MOTION FOR ISSUANCE OF SUBPOENAS DUCES TECUM TO MICHAEL DINIUS, TO THE SPECIAL MASTER AND NHC HOLDINGS, LLC ("NEWHOLDCO"), TO PALADIN MANAGEMENT, TO THE NCICS FOR THE COMMUNICATIONS OF COMMISSIONER MICHAEL CAUSEY, TO THE BERMUDA INSURANCE COMPANIES THROUGH THEIR JOINT PROVISIONAL LIQUIDATORS, AND TO WES CAMDEN, LAUREN FUSSELL, AND THEIR FIRM, PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17, WITH INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ........................................................................... 3

ARGUMENT ............................................................................................... 6

    I.     Legal Standard. ........................................................................... 6

    II.    The *Nixon* Factors Are Satisfied. ................................................... 7

    III.   The MVRA Itself Requires Production of These Records, and Requires Time to Cure Deficiencies Before the Hearing. ........................................ 9

CONCLUSION AND RELIEF REQUESTED ................................................... 11

CONSULTATION STATEMENT .................................................................. 13

ARTIFICIAL INTELLIGENCE CERTIFICATION ...................................... 14

CERTIFICATE OF SERVICE ....................................................................... 15

# TABLE OF AUTHORITIES

*Cases*

*Apprendi v. New Jersey* .................................................................. 7 n.1

    530 U.S. 466 (2000)

*Ellingburg v. United States* ............................................................. 6 n.1

    607 U.S. 163, 146 S. Ct. 564 (2026)

*Khouj v. Darui* .................................................................................... 10

    248 F.R.D. 729 (D.D.C. 2008)

*Robers v. United States* ......................................................................... 7

    572 U.S. 639 (2014)

*Southern Union Co. v. United States* ............................................... 7 n.1

    567 U.S. 343 (2012)

*United States v. Bendawald* .................................................................. 6

    No. 24-cr-146, 2025 WL 711725 (D. Idaho 2025)

*United States v. DNRB, Inc.* .................................................................. 6

    257 F. Supp. 3d 1033 (W.D. Mo. 2017)

*United States v. Karam* ..................................................................... 2, 10

    201 F.3d 320 (4th Cir. 2000)

*United States v. Krane* .......................................................................... 6

    625 F.3d 568 (9th Cir. 2010)

*United States v. Nixon* ...................................................... 2, 6, 7, 8, 9, 11

    418 U.S. 683 (1974)

*United States v. Ritchie* ....................................................................... 10

    858 F.3d 201 (4th Cir. 2017)

***Statutes***

18 U.S.C. § 3663A(b)(1)(B)(ii) ........................................................................................ 9

18 U.S.C. § 3664(d)(6) ............................................................................................... 2, 7

18 U.S.C. § 3664(e) .............................................................................................. 2, 6, 9, 10

18 U.S.C. § 3664(j)(2) ............................................................................................ 7, 9–10

***Rules***

Fed. R. Crim. P. 17 ...................................................................................... passim

Fed. R. Evid. 803(6) ...................................................................................... 8

# INTRODUCTION

Defendant Greg E. Lindberg moves, pursuant to Federal Rule of Criminal Procedure 17, for issuance of (i) a subpoena duces tecum to Michael Dinius, Special Deputy Rehabilitator of the North Carolina insurance companies (Colorado Bankers Life Insurance Company, Bankers Life Insurance Company, Southland National Insurance Corporation, and Southland National Reinsurance Corporation (the "NCICs")) and a principal of Noble Consulting Services, Inc., commanding production of the documents identified in Exhibit A hereto; (ii) a subpoena duces tecum to Joseph W. Grier, III, as Special Master, and to NHC Holdings, LLC ("NewHoldCo"), as custodians of the records of the companies Defendant surrendered to the Special Master's administration, commanding production of the documents identified in Exhibit B hereto; (iii) a subpoena duces tecum to Paladin Management Group, the Special Master's court-approved financial advisor, commanding production of the documents identified in Exhibit C hereto; (iv) a subpoena duces tecum to the NCICs, through the Rehabilitator as their custodian of records, commanding production of the documents identified in Exhibit D hereto; (v) a subpoena duces tecum to the Bermuda insurance companies identified in the Restitution Report (including PB Life and Annuity Co., Ltd. and Northstar Financial Services (Bermuda) Ltd.), through their Joint Provisional Liquidators as custodians of records, commanding production of the documents identified in Exhibit E hereto; (vi) a subpoena duces tecum to Wes Camden, Lauren Fussell, and their law firm, as counsel to the NCICs, commanding production of the documents identified in Exhibit F hereto; each in advance of the evidentiary hearing on the disputed restitution issues, pursuant to Rule 17(c)(1).

1

Compulsory process is necessary because Defendant does not have these records; the subpoenaed parties do. Control of the relevant companies and their books and records passed out of Defendant's hands twice: first in 2019, when, under the Memorandum of Understanding executed June 27, 2019 and the ensuing rehabilitation, the Rehabilitator's team under Mr. Dinius took over the companies and their records; and again under the Appointment Order (Doc. No. 56), when Defendant turned the companies over to the Special Master's administration, where they are now held by or through NewHoldCo. Defendant retained neither the companies nor their records. The documents that answer the open offset and causation questions sit in the files of Mr. Dinius, of the Special Master and NewHoldCo, and of Paladin. No witness is more central to the questions this Court must decide *de novo* under 18 U.S.C. § 3664(d)(6) than Mr. Dinius, who personally directed the estates' administration. The documents sought are specific, admissible, and relevant under *United States v. Nixon*, 418 U.S. 683, 700 (1974), and the Court must resolve the disputed offset and causation questions by a preponderance of the evidence under 18 U.S.C. § 3664(e). Because the MVRA places on Defendant the burden of proving the offsets and credits the statute mandates, *United States v. Karam*, 201 F.3d 320, 327 (4th Cir. 2000), while the records that carry that burden sit exclusively with the subpoenaed custodians, Defendant requests that production be ordered at such time as the Court directs, sufficiently in advance of the evidentiary hearing—so that he can review the productions, seek additional information, and, if

2

necessary, move to compel or enforce compliance before the hearing, rather than discover deficiencies when it is too late to cure them.

## FACTUAL BACKGROUND

1.  Michael Dinius is a principal of Noble Consulting Services, Inc. and has served as Special Deputy Rehabilitator of the NCICs under the North Carolina Commissioner of Insurance, as Rehabilitator, since 2019. In that capacity he has directed the management, investment decisions, monetization decisions, and professional-fee administration of the NCIC estates. (See Suppl. Stmt. of Facts, Doc. No. 174, ¶¶ 78–79; Original Stmt. of Facts ¶ 13, filed as Ex. 1 to Doc. No. 132.)

2.  The disputed restitution issues before this Court are framed by Defendant's Response and Objection to the Special Master's Report (Doc. No. 132), the supporting Statements of Facts, and Defendant's pending motions (Doc. Nos. 172, 190, 201, 202). They include: whether losses claimed by the payees were directly and proximately caused by the offenses of conviction or instead by the intervening, discretionary decisions of the estates' management; and the amount of the mandatory offsets and credits for value returned to or realized by the payees.

3.  The record already before the Court identifies Mr. Dinius's personal involvement in the principal disputed transactions. Under his management, the NCICs were liquidated notwithstanding the $454 million baseline value established by the companies' own management as of November 5, 2018. The Rehabilitator refused or blocked at least four monetization transactions—the November 22, 2018 Ares Management letter of intent; the February 8, 2019 Oaktree Capital Management $1.0 billion proposal; the 2023 Montshire/Alban offer; and the Q1 2024

3

Quadro Acquisition Corp. One transaction—and in at least one instance litigation was filed against a prospective arm's-length buyer. More than $165 million in fees have been charged to the estates, at a current rate of approximately $2.5 million per month, and approximately $137 million in investment losses were incurred on portfolio decisions made after Defendant transferred control. See Doc. No. 132 & Statements of Facts, Doc. No. 190-4.

4. On the day the rehabilitation order was entered, Mr. Dinius wrote to Defendant from his Noble Consulting account, in connection with the Memorandum of Understanding executed June 27, 2019: "we will contact the guaranty associations and move directly to liquidation. You know what that means." (Original Stmt. of Facts ¶ 58(a) & Ex. D5, filed as Ex. 1 to Doc. No. 132; Suppl. Stmt. of Facts ¶¶ 80–81 & ¶ 96(c), Doc. No. 174 at 41, 49.)

5. Contemporaneous correspondence ties Mr. Dinius personally to the transactions underlying the disputed offsets. A September 12, 2019 e-mail records that Barclays' pricing on the zero-coupon instruments was "provided . . . through Dinius"—instruments the Rehabilitator later sold before maturity for approximately $394 million, crystallizing a loss of approximately $611.6 million against their $1,006,239,867 face value. August 22, 2019 e-mails record that the parties "heard back [from] Mike Dinius" concerning Academy Financial/Vista Life's ownership of and dealings in the AAPC preferred equity—the same instrument whose December 2022 transfer to ULICO underlies a disputed dollar-for-dollar offset. And May 2019

4

correspondence from Mr. Dinius's Noble Consulting account reflects his role as liaison with the Pennsylvania regulators concerning the affiliated entities.

6.     Defendant does not possess the records at issue. Under the June 27, 2019 MOU and the ensuing rehabilitation, custody and control of the relevant companies and their books and records passed to the Rehabilitator's team under Mr. Dinius. (Suppl. Stmt. of Facts, Doc.No. 174, ¶¶ 78, 80–81; see also Original Stmt. of Facts ¶ 13, filed as Ex. 1 to Doc. No. 132.) Under the Appointment Order (Doc. No. 56), Defendant surrendered the remaining companies to the Special Master's administration, and they are now held by or through NewHoldCo, together with their books and records. The interest-bearing loan analysis ("ILA" or "IALA") and its workpapers—including the starting balances, the classification of the zero-coupon instruments, and the treatment of the April 2022 AAPC refinance—were prepared and are maintained by Paladin Management, the Special Master's financial advisor.

7.     Mr. Lindberg anticipates that the government will seek to set an evidentiary hearing in the relatively near future. In connection with that, Mr. Lindberg requests that the Court take these subpoenas into account when setting a hearing date, and that they be issued promptly once that date is selected.

## I.  Legal Standard

Rule 17(a) entitles a party to a subpoena commanding a witness's attendance and testimony. Rule 17(c)(1) authorizes a subpoena to "order the witness to produce any books, papers, documents, data, or other objects the subpoena designates," and provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence," and that upon production "the court may permit the parties and their attorneys to inspect all or part of them." To obtain pre-hearing production, the moving party must clear three hurdles: "(1) relevancy; (2) admissibility; (3) specificity," and the application must be made in good faith and not as a "general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. The *Nixon* factors apply at sentencing-stage proceedings, *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (court "must apply the Supreme Court's *Nixon* factors in the specific context of sentencing"); *accord United States v. DNRB, Inc.*, 257 F. Supp. 3d 1033, 1038–39 (W.D. Mo. 2017), and early return dates are the rule's design. *See United States v. Bendawald*, No. 24-cr-146, 2025 WL 711725, at *3 (D. Idaho 2025) ("Almost by its nature, every Rule 17(c) subpoena requests an early return"). Because the restitution disputes are for this Court to resolve by a preponderance of the evidence, 18 U.S.C. § 3664(e),[1] subject to a *de novo* determination of every referred

---

[1]    Defendant applies the preponderance standard of 18 U.S.C. § 3664(e) for purposes of this Motion without conceding its constitutionality. Because restitution under the Mandatory Victims Restitution Act is criminal punishment, see *Ellingburg v. United States*, 607 U.S. 163, 165 (2026), Defendant contends that the Sixth

issue, 18 U.S.C. § 3664(d)(6), the Rule 17 mechanism is the appropriate vehicle for compelling the third-party evidence those determinations require.

## II.  The *Nixon* Factors Are Satisfied

*Relevancy*. Every category in Exhibit A is tied to a disputed causation or offset question already framed on the docket. Causation: the MVRA limits restitution to losses directly and proximately caused by the offense of conviction, and the intervening, discretionary decisions of the estates' manager—the refusals of the Ares, Oaktree, Montshire, and Quadro transactions; the litigation against a prospective buyer; the pre-maturity sale of the protective zero-coupon instruments; the below-market Clanwilliam disposition—are the core of Defendant's causation defense. *See generally Robers v. United States*, 572 U.S. 639, 648-49 (2014); Doc. Nos. 132, 190. Mr. Dinius made or directed those decisions. Offsets: the value realized by or returned to the payees—the zero-coupon sale proceeds, the AAPC preferred equity transferred to ULICO, the Clanwilliam proceeds, and the fees and investment losses charged to the estates—must be credited under 18 U.S.C. § 3664(j)(2), and the documents that quantify those items are in the Rehabilitator's files. The necessity of compulsory process is confirmed by the Special Master's own position: his counsel's draft

_____

Amendment requires the facts necessary to support a restitution award—including the identification of any victim and the amount of loss—to be found by a jury beyond a reasonable doubt, not by the Court by a preponderance of the evidence. See *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (applying *Apprendi* to criminal fines). Defendant expressly reserves and preserves this issue and does not waive any Sixth Amendment, Ex Post Facto, or related challenge to the restitution determination.

7

supplement asserts that the "precise dollar figures" and IALA classification of the zero-coupon offset remain open questions—questions answerable only from the estates' records, which Mr. Dinius controls.

*Admissibility*. The categories seek business records of the rehabilitation estates and of Noble Consulting kept in the ordinary course, Fed. R. Evid. 803(6); contemporaneous correspondence of the payees' representative bearing on the estates' valuation and monetization decisions.

*Specificity*. The Exhibits identify categories of admissible evidence with reasonable specificity. For example, Exhibit A identifies discrete, dated transactions—the November 22, 2018 Ares letter of intent; the February 8, 2019 Oaktree proposal; the June 27, 2019 MOU; the zero-coupon bond sales; the December 2022 AAPC/ULICO transfer; the September 2025 Clanwilliam sale; the Beckett disposition—together with defined categories of valuation, fee, and accounting records, each bounded to the period October 1, 2018 to the present. (Ex. A at 2-5). The transactions are known, the record already documents Mr. Dinius's personal role in them, and what remains is the underlying paper.

*Good faith*. The subpoena is sought for the evidentiary hearing this Court must conduct on disputes the statute reserves to it—not for general discovery. Pre-hearing production is necessary because the volume and age of the records make review on the day of the hearing impracticable, and "the failure to obtain such inspection may tend unreasonably to delay" the proceeding. *Nixon*, 418 U.S. at 699. Defendant does not have access to the records. He surrendered the companies and their records in

8

2019 under the MOU and again under the Appointment Order, and a subpoena is the ordinary and proper mechanism for obtaining records from the officers and advisors who now hold them—including a court-appointed officer, whose records of a criminal restitution administration are not his own but the Court's. Finally, as to privilege: communications between any subpoenaed custodian and the Government are not privileged, and any claim of privilege as to other materials should be presented by written log, not by blanket withholding. "[T]he failure to obtain such inspection may tend unreasonably to delay" the proceeding. *Nixon*, 418 U.S. at 699.

### III. The MVRA Itself Requires Production of These Records, and Requires Time to Cure Deficiencies Before the Hearing.

The MVRA does not merely permit this production; its architecture requires it. The statute commands that restitution be reduced by "the value . . . of any part of the property that is returned," 18 U.S.C. § 3663A(b)(1)(B)(ii), and that any amount the victim later recovers for the same loss be credited, 18 U.S.C. § 3664(j)(2). It directs that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," and it allocates the burdens: the Government bears the burden of demonstrating the victim's loss, and "the burden of demonstrating such other matters as the court deems appropriate" rests "upon the party designated by the court as justice requires." 18 U.S.C. § 3664(e). In this Circuit, the defendant bears the burden of proving that an offset or reduction applies, *United Karam*, 201 F.3d at 327, and of showing that a victim "delayed unreasonably in selling property (or otherwise neglected it)." *United States v. Ritchie*, 858 F.3d 201, 211 (4th Cir. 2017). The Compulsory Process Clause reaches materials obtained by

9

Rule 17(c) subpoena. See *Khouj v. Darui*, 248 F.R.D. 729, 732 (D.D.C. 2008). The statute therefore assigns Defendant a burden of proof on the very questions—the zero-coupon proceeds and their IALA classification, the AAPC-refinance payments, the cash repayments, the use of the hundreds of millions in interest and principal repayments the estates received—whose proof lives entirely in the files of the subpoenaed custodians. A statutory scheme that assigns a party the burden of proof necessarily entitles that party to process adequate to obtain the evidence that carries it; otherwise the preponderance standard of § 3664(e) and the mandatory credits of § 3664(j)(2) become rights without remedies. These documents should be produced for these reasons: without them, the *de novo* determination that § 3664(d)(6) reserves to this Court would proceed on a record only one side is permitted to see.

The same statutory design dictates the timing. Defendant does not ask the Court to fix any particular interval; he asks only that the return date leave a meaningful runway to cure deficiencies before the hearing, because: (i) the productions span five custodians, seven-plus years, and hundreds of millions of dollars of transactions, and meaningful review of that volume cannot be compressed into days; (ii) review will generate follow-up—additional requests, clarifications, and targeted supplementation—that must itself be served and answered before the hearing; (iii) if any custodian produces deficiently, asserts unfounded privilege, or withholds, Defendant must have time to test the privilege logs and move to compel or to enforce the subpoena under Rule 17(g) while relief is still meaningful; and (iv) *Nixon* itself grounds pre-hearing production in the concern that late inspection "may

10

tend unreasonably to delay" the proceeding, 418 U.S. at 699—a concern that cuts entirely in favor of early production here, because an adequate runway protects the hearing date rather than threatening it. A return date that leaves no time to cure deficiencies is, in practice, no compulsory process at all. By way of illustration only: given the number of custodians and the seven-year period the records span, a runway on the order of 120 to 180 days would accommodate that cure process; Defendant defers to the Court on the precise interval.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Defendant respectfully requests that the Court enter an Order:

(a)   Authorizing issuance of, and directing the Clerk to issue, subpoenas duces tecum to (i) Michael Dinius in the form of Exhibit A; (ii) Joseph W. Grier, III, as Special Master, and NHC Holdings, LLC, in the form of Exhibit B; (iii) Paladin Management Group in the form of Exhibit C; (iv) the NCICs, through the Rehabilitator as custodian of records, in the form of Exhibit D; (v) the Bermuda insurance companies, through their Joint Provisional Liquidators, in the form of Exhibit E; and (vi) Wes Camden, Lauren Fussell, and their firm, in the form of Exhibit F—each commanding production of the designated documents to the Clerk of Court (or, at the Court's election, to counsel for all parties) at such time as the Court directs, sufficiently in advance of the evidentiary hearing on the disputed restitution issues to permit Defendant to review the productions, seek additional information through any follow-up requests, and, if necessary, move to compel or enforce compliance

11

under Rule 17(g) before the hearing, with leave for the parties and their attorneys to inspect the productions pursuant to Rule 17(c)(1);

(b) Providing that any assertion of privilege or protection be made by written log served on all parties within seven (7) days of service of the subpoena; and

(c) Granting such other and further relief as the Court deems just and proper.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

*Counsel for Greg E. Lindberg*

12

**CONSULTATION STATEMENT**

Pursuant to the Court's motions practice and LCrR 47.1, the undersigned states that counsel for Defendant conferred with counsel for the United States and counsel for the Special Master on July 23, 2026, regarding the relief requested herein. The United States opposes the relief requested and the Special Master's opposes the relief requested.

Dated: July 23, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*

13

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

Pursuant to the Standing Order In Re: Use of Artificial Intelligence entered by this Court on June 18, 2024, the undersigned certifies that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg. The undersigned further certifies that every statement and every citation to an authority contained in this document has been checked for accuracy by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: July 23, 2026

/s/ Kenneth Barnes
Kenneth Barnes
*Counsel for Greg E. Lindberg*

14

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: July 23, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*

15