**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr.<br><br>EXPEDITED CONSIDERATION REQUESTED |

**EXHIBIT A — SCHEDULE OF DOCUMENTS TO BE PRODUCED BY MICHAEL DINIUS PURSUANT TO SUBPOENA DUCES TECUM (FED. R. CRIM. P. 17(c))**

**DEFINITIONS AND INSTRUCTIONS**

1. "You" and "Your" mean Michael Dinius, in his individual capacity and in his capacity as Special Deputy Rehabilitator of the NCICs, together with Noble Consulting Services, Inc. and its employees and agents, in each case acting in connection with the NCICs, their estates, the SACs, or the Primary Restitution Assets during the relevant period.

2. "NCICs" means Colorado Bankers Life Insurance Company, Bankers Life Insurance Company, Southland National Insurance Corporation, and Southland National Reinsurance Corporation, and their rehabilitation or liquidation estates.

3. "CBL" means Colorado Bankers Life Insurance Company; "BLIC" means Bankers Life Insurance Company; "SNIC" means Southland National Insurance Corporation; "SNRC" means Southland National Reinsurance Corporation; "PBLA" means PB Life and Annuity Co., Ltd.; "Northstar" means Northstar Financial Services (Bermuda) Ltd.; "ULICO" means Universal Life Insurance Company; "Vista" means Vista Life & Casualty Reinsurance Company; "GBIG" means GBIG Holdings, Inc. and its affiliates; and "AAPC" means AAPC Holdings, LLC.

4. "SACs" means the Specified Affiliated Companies — the Lindberg-affiliated operating companies referenced in the Order Appointing Special Master (Doc. No. 56) and the Restitution Report (Doc. No. 106) — including each company held directly or indirectly by NHC Holdings, LLC. "Primary Restitution Assets" means the Primary Restitution Assets as defined in the Order Appointing Special Master (Doc. No. 56). References to the SACs include the Primary Restitution Assets. "Relevant period" means the period covered by this subpoena.

5. “Rehabilitator” means the North Carolina Commissioner of Insurance in his capacity as court-appointed Rehabilitator or Liquidator of the NCICs, and every special deputy, agent, or professional acting for him.

6. “Special Master” means Joseph W. Grier, III, appointed by Order of January 23, 2025 (Doc. No. 56), and his advisors, including Paladin Management.

7. “NewHoldCo” or “NHC” means NHC Holdings, LLC and every company it holds directly or indirectly.

8. “Zero-Coupon Bonds” means the bank-issued zero-coupon instruments backing the Principal Protected Notes, having an aggregate face value of approximately $1,006,239,867, including instruments issued by or priced through Barclays and Nomura.

9. “AAPC Preferred” means the preferred equity of AAPC referenced in the December 2022 transfer to Universal Life Insurance Company (“ULICO”).

10. “MOU” means the Memorandum of Understanding executed on or about June 27, 2019.

11. “April 2022 AAPC Refinance” means the refinancing of AAPC preferred equity consummated in or about April 2022, including each tranche refinanced out of it (including the PBLA and Northstar tranches).

12. “ILA” means the interest-bearing loan analysis or affiliated-loan analysis used by the Rehabilitator, the Special Master, or Paladin Management in computing claimed losses or credits.

13. “Communications” includes e-mail, text or messaging-application messages, letters, memoranda, and notes of meetings or calls. “Documents” has the broadest meaning permitted, including drafts and electronically stored information.

14. If any responsive Document or Communication is withheld on a claim of privilege or protection, serve a written privilege log on all parties within seven (7) days of service of this subpoena, identifying each withheld item by date, author, recipients, and subject matter. Communications with the United States Department of Justice or any other Government agency are not privileged and shall not be withheld.

15. Communications made by or with You in Your capacity as Special Deputy Rehabilitator shall be produced in full. Communications in that capacity—made under the rehabilitation orders and the June 27, 2019 MOU—are not privileged as against Defendant, a party to the MOU; any contrary claim shall be presented item-by-item on the privilege log, not by blanket withholding.

16. Unless otherwise stated, the period covered is October 1, 2018 through the date of production.

## DOCUMENTS TO BE PRODUCED

1. The Documents and Communications constituting, memorializing, transmitting, or evaluating the November 22, 2018 letter of intent from Ares Management concerning GBIG and/or the NCICs — including the letter of intent itself, drafts, transmittal correspondence, internal evaluations and board presentations concerning it, and the Documents and Communications reflecting its receipt, negotiation, rejection, or non-response.

2. The Documents and Communications constituting, memorializing, transmitting, or evaluating the February 8, 2019 proposal of Oaktree Capital Management (including the approximately $1.0 billion transaction referred to as the "Global Solution"), including the Documents and Communications reflecting its receipt, evaluation, rejection, or non-response.

3. The Documents and Communications constituting, memorializing, transmitting, or evaluating the 2023 Montshire and/or Alban offer(s) for the NCICs or their assets, together with the pleadings, correspondence, and Communications concerning any litigation commenced against any prospective purchaser of the NCICs or their assets, including the decision to commence such litigation.

4. The Documents and Communications constituting, memorializing, transmitting, or evaluating the Q1 2024 Quadro Acquisition Corp. One transaction, including its valuation of the Specified Affiliated Companies and the reasons for its non-consummation.

5. Each valuation of the NCICs or their estates prepared from November 5, 2018 (including the $454 million baseline valuation) through the present, together with the underlying workpapers and the Communications transmitting or evaluating each valuation.

6. The Documents and Communications constituting, memorializing, or evaluating the Zero-Coupon Bonds and their disposition — including the pricing obtained from or through Barclays or Nomura in 2019, the decision to sell any Zero-Coupon Bond before maturity, the sale proceeds (approximately $394 million) and their application, the Documents classifying any Zero-Coupon Bond or its proceeds as IALA or non-IALA, and the Documents showing whether and how Zero-Coupon Bond proceeds were reflected in the ILA balances.

7. The Documents and Communications constituting, memorializing, or evaluating the AAPC Preferred and dealings in it — including Academy Financial's and/or Vista Life's ownership of or dealings in the AAPC Preferred in 2019, the December 2022 transfer to ULICO, and each valuation of the AAPC Preferred from 2019 to the present.

8. The Documents and Communications constituting, memorializing, or evaluating the negotiation, execution, and enforcement of the MOU — including the statement in Your June 27, 2019 correspondence that "we will contact the guaranty

associations and move directly to liquidation," and the Communications with any guaranty association concerning liquidation of the NCICs.

9. The invoices, fee applications, approvals, and payment records for every fee, expense, or other payment charged to or paid from the NCIC estates to You, Noble Consulting Services, Inc., or any professional or consultant, from October 1, 2018 to the present.

10. The Documents and Communications memorializing or evaluating investment losses incurred by the NCIC estates after November 2018 — including the approximately $137 million in corporate-bond and other portfolio losses — and the investment guidelines or authorizations under which those investments were made.

11. The Documents and Communications constituting, memorializing, or evaluating the September 2025 sale of the Clanwilliam Group to TA Associates — including each valuation, fairness analysis, and marketing material, and the records of the application of the sale proceeds, including the $23,500,000 distribution to Vista Life & Casualty Reinsurance Company.

12. The Documents and Communications constituting, memorializing, or evaluating the Beckett transaction, including the authority claimed for it, its terms, and the records of the application of its proceeds.

13. Communications between You and the Special Master, his counsel, or his advisors, during the period covered by this subpoena.

14. The Documents and Communications constituting, memorializing, or evaluating the April 2022 AAPC Refinance — including the approximately $44,000,000 in preferred-equity interest payments received by the NCICs in connection with it; the PBLA and Northstar AAPC tranches refinanced out of it; the CBL redemption fee charged on it; and each accounting or crediting of those amounts in any loss or restitution analysis.

15. The ledger entries, wire records, and bank records showing the receipt and application by the NCIC estates of: the approximately $9,500,000 from the Finanzen sale; the approximately $13,600,000 paid to PBLA from the sale of the real-estate entities; the CBL subordination fee on the Beckett transaction; and the SNIC escrow payments.

16. The Documents and Communications constituting, memorializing, or evaluating each refinancing of any Lindberg-affiliated asset or obligation that was proposed but not pursued or consummated, including the parties, terms, and reasons for non-pursuit.

17. The Documents and Communications constituting, memorializing, or evaluating each transaction completed at a price below a prior valuation or renegotiated to materially reduced terms — including the September 2025 Clanwilliam sale, the UKAT transaction, and any pending or contemplated sale of

Damovo — including the valuations, negotiation histories, and analyses of the price or terms obtained.

18. Documents sufficient to show, for the period July 1, 2019 through August 31, 2025, the receipt and application by each NCIC of every interest and principal repayment received from or on behalf of any Lindberg-affiliated borrower—including the aggregate amounts reflected in the Special Master's accounting—and the use of those funds, including: (a) the amounts paid to policyholders under the 10% and 25% partial repayment programs; (b) the amounts paid to professionals, consultants, or administrators; (c) the amounts invested, and the disposition of those investments; and (d) the amounts retained, and where held.

19. Communications (including e-mail, text message, and messaging-application communications) between You and Michael Causey, the North Carolina Commissioner of Insurance, or any officer or employee of the North Carolina Department of Insurance, concerning Mr. Lindberg, any Lindberg-affiliated entity, the NCICs, the rehabilitation, restitution, or any asset or asset sale, from October 1, 2018 to the present.

20. The payment ledgers and reconciliation records showing the payments received by and made by CBL (including payments received from assets held in special purpose vehicles, including without limitation proceeds from the sale of Zero-Coupon Bonds) as agent for the affiliate loans, including the records of the portion of loan payments received by CBL that were designated for other insurance lenders.

21. The payment ledgers and reconciliation records showing the reconciliation of the balances against the bank-statement transactions, beginning with the opening balances stated in the summary sheet agreed by the parties at the time the Memorandum of Understanding dated June 27, 2019 was executed.

22. Communications between You and (a) the United States Department of Justice or any other Government agency, (b) the Special Master, his counsel, or his advisors, (c) Commissioner Causey or any officer or employee of the North Carolina Department of Insurance, and (d) Paladin Management, concerning Mr. Lindberg, any Lindberg-affiliated entity, restitution, loss calculation, offsets, credits, or any asset or asset sale, during the period covered by this subpoena; Communications between You and the Government are not privileged and shall not be withheld.

23. The Communications constituting, transmitting, or responding to each offer, indication of interest, letter of intent, or proposal to purchase, invest in, or monetize the NCICs or any Lindberg-affiliated asset that was not consummated — including the Ares, Oaktree, Montshire/Alban, and Quadro transactions — and including communications received from prospective purchasers or investors to which no response was made.

24. The bank records, wire records, and accounting entries showing any payment or transfer of money or anything of value, direct or indirect, between You or Noble Consulting Services, Inc., on the one hand, and Michael Causey or any officer or employee of the North Carolina Department of Insurance, on the other, together

with Your and Noble Consulting Services, Inc.'s complete billing records to the NCIC estates, including underlying time entries.

25. Your personal bank account records and the business bank account records of Noble Consulting Services, Inc., for the period October 1, 2018 through the date of production, for each account into which compensation from the NCIC estates was deposited or from which any payment relating to the NCIC estates, the NCDOI, or any Lindberg-affiliated matter was made.

26. The board meeting materials and minutes of each SAC and each Primary Restitution Asset — including board packages, agendas, resolutions, written consents, board reports, financial statements, and the analyses or reports presented to the board by any third party — from the date You or the Rehabilitator's team assumed control (on or about October 18, 2018, and in any event from the June 27, 2019 MOU) to the present.

27. The complete general ledger detail of each NCIC from October 1, 2018 to the present, in native electronic format.

28. A full reconciliation of the affiliated loan balances from October 1, 2018 to the present, including the supporting schedules, workpapers, and source documents.

29. The bank statements and general ledgers of each NCIC from October 1, 2018 to the present; the bank statements and general ledgers of each SAC and each Primary Restitution Asset from October 11, 2024 to the present; and the financial statements of each NCIC, each SAC, and each Primary Restitution Asset, audited and unaudited, for those periods.

30. Communications between You and Wes Camden, Lauren Fussell, or any lawyer at their firm, Williams Mullem, concerning Mr. Lindberg, the NCICs, the SACs, the affiliated investments, or restitution, during the period covered by this subpoena.

31. Communications between You and any third-party administrator of the NCICs, the SACs, or the affiliated investments — including GBIG, LLC [also referenced as GBIC, LLC / GBIG Holdings, Inc.] — regarding the affiliated investments, during the period covered by this subpoena.

32. Communications between You and any insurance regulator — including without limitation the insurance regulators of North Carolina, Pennsylvania, Vermont, and Bermuda — concerning the NCICs, Vista Life & Casualty Reinsurance Company, PBLA, or the affiliated entities, from October 1, 2018 through the present.