**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr.<br><br>EXPEDITED CONSIDERATION REQUESTED |

## EXHIBIT B — SCHEDULE OF DOCUMENTS TO BE PRODUCED BY THE SPECIAL MASTER AND NHC HOLDINGS, LLC PURSUANT TO SUBPOENA DUCES TECUM (FED. R. CRIM. P. 17(c))

## DEFINITIONS AND INSTRUCTIONS

1. "You" and "Your" mean Joseph W. Grier, III, in his capacity as Special Master appointed by Order of January 23, 2025 (Doc. No. 56), together with NHC Holdings, LLC ("NewHoldCo") and each company it holds directly or indirectly, and their respective officers, employees, advisors, and agents (excluding Paladin Management, which is separately subpoenaed).

2. The definitions set out in Exhibit A — including "NCICs," "CBL," "BLIC," "SNIC," "SNRC," "PBLA," "Northstar," "ULICO," "Vista," "GBIG," "AAPC," "SACs," "Primary Restitution Assets," "Rehabilitator," "NewHoldCo," "Zero-Coupon Bonds," "AAPC Preferred," "April 2022 AAPC Refinance," "ILA," "MOU," "Communications," and "Documents" — apply equally to this Exhibit B.

3. If any responsive Document or Communication is withheld on a claim of privilege or protection, serve a written privilege log on all parties within seven (7) days of service of this subpoena. Communications with the United States Department of Justice or any other Government agency are not privileged and shall not be withheld.

4. Unless otherwise stated, the period covered is January 23, 2025 through the date of production; for records of the companies now held by or through NewHoldCo, the period is October 1, 2018 through the date of production.

## DOCUMENTS TO BE PRODUCED

1. The books and records of each company held by or through NewHoldCo, sufficient to show, for the period October 1, 2018 to the present: (a) each transfer of cash or property to or for the benefit of any payee identified in the Preliminary Order

of Restitution (Doc. No. 161); and (b) each payment received from or on behalf of Defendant or any Lindberg-affiliated entity.

2. The board meeting materials and minutes of each SAC and each Primary Restitution Asset — including board packages, agendas, resolutions, written consents, board reports, financial statements, and the analyses or reports presented to the board by any third party — from October 11, 2024 to the present, notwithstanding any shorter period stated in these instructions.

3. The complete general ledger detail of each company held by or through NewHoldCo, including each SAC and each Primary Restitution Asset, from the date of its transfer to the Special Master's administration to the present, in native electronic format.

4. A full reconciliation of the affiliated loan balances maintained in the administration from January 23, 2025 to the present, including the supporting schedules, workpapers, and source documents.

5. The bank statements and general ledgers of each SAC and each Primary Restitution Asset from October 11, 2024 to the present, and the financial statements of each, audited and unaudited, for that period, notwithstanding any shorter period stated in these instructions.

6. The Documents and Communications constituting, memorializing, or evaluating the Beckett transaction, including its negotiation, terms, closing, the authority claimed for it, and the receipt and application of its proceeds, including the CBL subordination fee.

7. The Documents and Communications constituting, memorializing, or evaluating the ARM sale process — including the engagement of any investment bank, the marketing materials, indications of interest, letters of intent, and valuations, and the Communications concerning whether Court approval is or would be required.

8. The Documents and Communications constituting, memorializing, or evaluating any sale process involving Damovo — including each Communication in which it is described as selling itself, the current potential sale and its negotiation history, and the Documents identifying who initiated, directs, or must approve that process.

9. The Documents and Communications constituting, memorializing, or evaluating the September 2025 sale of the Clanwilliam Group, including the $23,500,000 distribution to Vista Life & Casualty Reinsurance Company: the authority claimed for that distribution, each analysis of whether Vista is or is not a victim, and the records of the application of all remaining proceeds, including the administrative reserve.

10. Each valuation of AAPC prepared from January 23, 2025 to the present, together with the Documents and Communications memorializing the investment-

banker engagements, marketing processes, terminations of process, valuation revisions, and analyses of maturing debt.

11. The invoices, fee applications, approvals, and payment records for every fee, expense, or retainer paid or accrued from administered assets or sale proceeds to any professional in this administration, together with the Communications stating or discussing that professional fees await the sale of additional assets.

12. The Documents and Communications memorializing or evaluating the zero-coupon bond offset asserted by Defendant (Doc. No. 174, at 22, 31–33), including the analyses of IALA versus non-IALA classification and of whether amounts were already reflected in the ILA balances.

13. The Documents and Communications constituting, memorializing, or evaluating the April 2022 AAPC Refinance, including the approximately $44,000,000 in preferred-equity interest payments to the NCICs and any proposed correction, revision, or supplementation of the restitution report concerning them.

14. The drafts of, and the Communications concerning, any supplement to or revision of the Memorandum and Recommendations of Special Master (the "restitution report") (Doc. No. 106) from May 15, 2026 to the present, including the draft supplement circulated to Defendant's counsel on or about July 16–17, 2026.

15. Communications between You and (a) Wes Camden, Lauren Fussell, or any lawyer at their firm Williams Mullen; (b) K&L Gates LLP; (c) William Janvier of Stevens Martin Vaughn and Tadych PLLC; (d) Mohsin (Mo) Meghji; (e) any officer, director, or employee of NewHoldCo or any NewHoldCo company; or (f) Commissioner Michael Causey or any officer or employee of the North Carolina Department of Insurance, concerning Mr. Lindberg, restitution, asset sales, or the administration of the estate.

16. Communications between You and any person concerning the Beckett transaction, from its inception to the present.

17. Communications between You and any officer, director, employee, manager, or advisor of any company under Your administration—including each company held directly or indirectly by NewHoldCo, ARM, Damovo, Beckett, the Clanwilliam entities, and every other administered company—concerning the management, operations, valuation, marketing, sale, or other disposition of the company or its assets, restitution, distributions, professional fees, or Mr. Lindberg, from January 23, 2025 to the present. If any such Communication is withheld on a claim of privilege or protection, it shall be identified on the privilege log required by these instructions; communications between You and the companies You administer as the Court's officer are presumptively not privileged as against the Court or the parties to this proceeding.

18. Documents sufficient to identify every person or entity that holds books and records of the companies formerly controlled by Defendant, including records

held by or transferred to the Rehabilitator, Noble Consulting Services, Inc., NewHoldCo, or any professional or agent.

19. Communications between You and any insurance regulator — including without limitation the insurance regulators of North Carolina, Pennsylvania, Vermont, and Bermuda — concerning the NCICs, the SACs, the Primary Restitution Assets, Vista Life & Casualty Reinsurance Company, PBLA, or any Lindberg-affiliated entity, or any sale or proposed sale of any of them, during the period covered by this subpoena.

20. Communications between You and any third-party administrator of the NCICs, the SACs, the Primary Restitution Assets, or the affiliated investments — including GBIG, LLC [also referenced as GBIC, LLC / GBIG Holdings, Inc.] — regarding the affiliated investments, during the period covered by this subpoena.

21. The Documents and Communications constituting, memorializing, transmitting, or evaluating the November 22, 2018 letter of intent from Ares Management concerning GBIG and/or the NCICs — including the letter of intent itself, drafts, transmittal correspondence, internal evaluations and board presentations concerning it, and the Documents and Communications reflecting its receipt, negotiation, rejection, or non-response.

22. The Documents and Communications constituting, memorializing, transmitting, or evaluating the February 8, 2019 proposal of Oaktree Capital Management (including the approximately $1.0 billion transaction referred to as the "Global Solution"), including the Documents and Communications reflecting its receipt, evaluation, rejection, or non-response.

23. The Documents and Communications constituting, memorializing, transmitting, or evaluating the 2023 Montshire and/or Alban offer(s) for the NCICs or their assets, together with the pleadings, correspondence, and Communications concerning any litigation commenced against any prospective purchaser of the NCICs or their assets, including the decision to commence such litigation.

24. The Documents and Communications constituting, memorializing, transmitting, or evaluating the Q1 2024 Quadro Acquisition Corp. One transaction, including its valuation of the Specified Affiliated Companies and the reasons for its non-consummation.

25. Each valuation of the NCICs or their estates prepared from November 5, 2018 (including the $454 million baseline valuation) through the present, together with the underlying workpapers and the Communications transmitting or evaluating each valuation.

26. The Documents and Communications constituting, memorializing, or evaluating the Zero-Coupon Bonds and their disposition — including the pricing obtained in 2019, the decision to sell any Zero-Coupon Bond before maturity, the sale proceeds and their application, and the Documents classifying any Zero-Coupon Bond or its proceeds as IALA or non-IALA.

27. The Documents and Communications constituting, memorializing, or evaluating the AAPC Preferred, including the December 2022 transfer to ULICO and each valuation of the AAPC Preferred from 2019 to the present.

28. The Documents and Communications constituting, memorializing, or evaluating the negotiation, execution, and enforcement of the MOU, together with the Communications with any guaranty association concerning liquidation of the NCICs.

29. The Communications constituting, transmitting, or responding to each offer, indication of interest, letter of intent, or proposal to purchase, invest in, or monetize the NCICs, any SAC, any Primary Restitution Asset, or any other Lindberg-affiliated asset that was not consummated, from October 1, 2018 through the date of production, notwithstanding any shorter period stated in these instructions — including communications received from prospective purchasers or investors to which no response was made.