**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr.<br><br>EXPEDITED CONSIDERATION REQUESTED |

# EXHIBIT C — SCHEDULE OF DOCUMENTS TO BE PRODUCED BY PALADIN MANAGEMENT GROUP PURSUANT TO SUBPOENA DUCES TECUM (FED. R. CRIM. P. 17(c))

## DEFINITIONS AND INSTRUCTIONS

1. "You" and "Your" mean Paladin Management Group, the Special Master's court-approved financial advisor, together with Scott Avila, David Elkin, Don Harer, and every other Paladin professional who has worked on this administration.
2. The definitions set out in Exhibit A — including "NCICs," "CBL," "BLIC," "SNIC," "SNRC," "PBLA," "Northstar," "ULICO," "Vista," "GBIG," "AAPC," "SACs," "Primary Restitution Assets," "Rehabilitator," "NewHoldCo," "Zero-Coupon Bonds," "AAPC Preferred," "April 2022 AAPC Refinance," "ILA," "MOU," "Communications," and "Documents" — apply equally to this Exhibit C.
3. If any responsive Document or Communication is withheld on a claim of privilege or protection, serve a written privilege log on all parties within seven (7) days of service of this subpoena. Communications with the United States Department of Justice or any other Government agency are not privileged and shall not be withheld.
4. Unless otherwise stated, the period covered is January 23, 2025 through the date of production.

## DOCUMENTS TO BE PRODUCED

1. The complete ILA/IALA workpapers, in native format, including all starting balances, all inputs and sources for those balances, and every version of the analysis from its creation to the present.

2. The Documents and Communications memorializing or evaluating the classification of the Zero-Coupon Bonds or their proceeds as IALA or non-IALA,

together with each analysis of whether Zero-Coupon Bond amounts were already reflected in the ILA balances in or after 2019.

3. The Documents and Communications constituting, memorializing, or evaluating the April 2022 AAPC Refinance, including the approximately $44,000,000 in preferred-equity interest payments to the NCICs; the PBLA and Northstar tranches; each draft correction or revision crediting any of those amounts; and the Communications acknowledging that any such credit should be made.

4. The Documents and Communications memorializing or evaluating each cash repayment asserted by Defendant as an offset — including the approximately $9,500,000 Finanzen amount, the approximately $13,600,000 paid to PBLA from the real-estate entity sales, the CBL subordination fee on Beckett, the SNIC escrow payments, and the CBL redemption fee — including each analysis accepting, reducing, or rejecting any of them and the reasons for each reduction.

5. Each valuation of AAPC, together with the Documents and Communications memorializing each valuation revision and the reasons for it.

6. The time records, invoices, and fee applications for Your work in this administration, together with the Communications concerning the availability of funds for professional fees.

7. Communications with the Special Master, his counsel, the Government, or any payee concerning the matters in Requests 1 through 6.

8. The Documents and Communications constituting, memorializing, transmitting, or evaluating the November 22, 2018 letter of intent from Ares Management concerning GBIG and/or the NCICs — including the letter of intent itself, drafts, transmittal correspondence, internal evaluations and board presentations concerning it, and the Documents and Communications reflecting its receipt, negotiation, rejection, or non-response.

9. The Documents and Communications constituting, memorializing, transmitting, or evaluating the February 8, 2019 proposal of Oaktree Capital Management (including the approximately $1.0 billion transaction referred to as the "Global Solution"), including the Documents and Communications reflecting its receipt, evaluation, rejection, or non-response.

10. The Documents and Communications constituting, memorializing, transmitting, or evaluating the 2023 Montshire and/or Alban offer(s) for the NCICs or their assets, together with the pleadings, correspondence, and Communications concerning any litigation commenced against any prospective purchaser of the NCICs or their assets, including the decision to commence such litigation.

11. The Documents and Communications constituting, memorializing, transmitting, or evaluating the Q1 2024 Quadro Acquisition Corp. One transaction, including its valuation of the Specified Affiliated Companies and the reasons for its non-consummation.

12. Each valuation of the NCICs or their estates prepared from November 5, 2018 (including the $454 million baseline valuation) through the present, together with the underlying workpapers and the Communications transmitting or evaluating each valuation.

13. The Documents and Communications constituting, memorializing, or evaluating the Zero-Coupon Bonds and their disposition — including the pricing obtained in 2019, the decision to sell any Zero-Coupon Bond before maturity, the sale proceeds and their application, and the Documents classifying any Zero-Coupon Bond or its proceeds as IALA or non-IALA.

14. The Documents and Communications constituting, memorializing, or evaluating the AAPC Preferred, including the December 2022 transfer to ULICO and each valuation of the AAPC Preferred from 2019 to the present.

15. The Documents and Communications constituting, memorializing, or evaluating the negotiation, execution, and enforcement of the MOU, together with the Communications with any guaranty association concerning liquidation of the NCICs.

16. The Communications constituting, transmitting, or responding to each offer, indication of interest, letter of intent, or proposal to purchase, invest in, or monetize the NCICs, any SAC, any Primary Restitution Asset, or any other Lindberg-affiliated asset that was not consummated, from October 1, 2018 through the date of production, notwithstanding any shorter period stated in these instructions — including communications received from prospective purchasers or investors to which no response was made.

17. Communications between You and any insurance regulator — including without limitation the insurance regulators of North Carolina, Pennsylvania, Vermont, and Bermuda — concerning the NCICs, the SACs, the Primary Restitution Assets, Vista Life & Casualty Reinsurance Company, PBLA, or any Lindberg-affiliated entity, or any sale or proposed sale of any of them, during the period covered by this subpoena.

18. Communications between You and Michael Dinius, Noble Consulting Services, Inc., the Rehabilitator, or Wes Camden, Lauren Fussell, or any lawyer at their firm [counsel to insert firm name], concerning Mr. Lindberg, the NCICs, the SACs, the Primary Restitution Assets, the affiliated investments, or restitution, during the period covered by this subpoena.

19. Communications between You and any third-party administrator of the NCICs, the SACs, the Primary Restitution Assets, or the affiliated investments — including GBIG, LLC [also referenced as GBIC, LLC / GBIG Holdings, Inc.] — regarding the affiliated investments, during the period covered by this subpoena.

20. The general ledgers, bank statements, financial statements, and board materials of any NCIC, SAC, or Primary Restitution Asset in Your possession, custody, or control, including each version used in or supporting Your analyses.

21. The drafts of, and the Communications concerning, any supplement to or revision of the Memorandum and Recommendations of Special Master (the "restitution report") (Doc. No. 106), including the draft supplement circulated to Defendant's counsel on or about July 16–17, 2026.