**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr.<br><br>EXPEDITED CONSIDERATION REQUESTED |

**EXHIBIT D — SCHEDULE OF DOCUMENTS TO BE PRODUCED BY THE NCICS, THROUGH THE REHABILITATOR AS CUSTODIAN OF RECORDS, PURSUANT TO SUBPOENA DUCES TECUM (FED. R. CRIM. P. 17(c))**

**DEFINITIONS AND INSTRUCTIONS**

1. "You" and "Your" mean Colorado Bankers Life Insurance Company, Bankers Life Insurance Company, Southland National Insurance Corporation, and Southland National Reinsurance Corporation (the "NCICs"), in rehabilitation or liquidation, through the North Carolina Commissioner of Insurance as Rehabilitator/Liquidator and custodian of their records, together with every special deputy, agent, and professional acting for the Rehabilitator.

2. "Commissioner Causey" means Michael Causey, the North Carolina Commissioner of Insurance, and any person acting on his behalf.

3. The definitions set out in Exhibit A — including the entity definitions, "SACs," and "Primary Restitution Assets" — apply equally to this Exhibit D.

4. If any responsive Document or Communication is withheld on a claim of privilege or protection, serve a written privilege log on all parties within seven (7) days of service of this subpoena. Communications with the United States Department of Justice or any other Government agency are not privileged and shall not be withheld.

5. Communications with Michael Dinius shall be produced in full. Communications with Mr. Dinius in his capacity as Special Deputy Rehabilitator—made under the rehabilitation orders and the June 27, 2019 MOU—are not privileged as against Defendant, a party to the MOU; any contrary claim shall be presented item-by-item on the privilege log.

6. Unless otherwise stated, the period covered is October 1, 2018 through the date of production.

**DOCUMENTS TO BE PRODUCED**

1. Communications of Commissioner Causey (including e-mail, text message, and messaging-application communications) concerning Mr. Lindberg, any Lindberg-affiliated entity, the NCICs' rehabilitation or liquidation, the MOU of June 27, 2019, restitution in these criminal proceedings, or any sale or proposed sale of any Lindberg-affiliated asset.

2. Communications between Commissioner Causey and Michael Dinius or Noble Consulting Services, Inc., during the period covered by this subpoena.

3. Communications between Commissioner Causey and the United States Department of Justice or any other Government agency concerning Mr. Lindberg.

4. The bank records, wire records, and accounting entries showing any payment or transfer of money or anything of value, direct or indirect, between the NCIC estates or their professionals, on the one hand, and Commissioner Causey or any officer or employee of the North Carolina Department of Insurance, on the other.

5. Communications between Wes Camden, Lauren Fussell, or any lawyer at their firm Williams Mullen, on the one hand, and Commissioner Causey, Michael Dinius, Noble Consulting Services, Inc., the United States Department of Justice or any other Government agency, or the Special Master, on the other, concerning Mr. Lindberg, the NCICs, the SACs, the affiliated investments, or restitution. Communications with the Government are not privileged and shall not be withheld; all other withholdings require the privilege log described in these instructions.

6. To the extent not produced in prior civil litigation, the Communications of Commissioner Causey produced or collected in Universal Life Insurance Co. v. Lindberg, No. 1:20-cv-861 (M.D.N.C.), or in the Wake County rehabilitation proceedings, concerning the subjects of Request 1.

7. The Documents and Communications constituting, memorializing, transmitting, or evaluating the November 22, 2018 letter of intent from Ares Management concerning GBIG and/or the NCICs — including the letter of intent itself, drafts, transmittal correspondence, internal evaluations and board presentations concerning it, and the Documents and Communications reflecting its receipt, negotiation, rejection, or non-response.

8. The Documents and Communications constituting, memorializing, transmitting, or evaluating the February 8, 2019 proposal of Oaktree Capital Management (including the approximately $1.0 billion transaction referred to as the "Global Solution"), including the Documents and Communications reflecting its receipt, evaluation, rejection, or non-response.

9. The Documents and Communications constituting, memorializing, transmitting, or evaluating the 2023 Montshire and/or Alban offer(s) for the NCICs or their assets, together with the pleadings, correspondence, and Communications concerning any litigation commenced against any prospective purchaser of the NCICs or their assets, including the decision to commence such litigation.

10. The Documents and Communications constituting, memorializing, transmitting, or evaluating the Q1 2024 Quadro Acquisition Corp. One transaction, including its valuation of the Specified Affiliated Companies and the reasons for its non-consummation.

11. Each valuation of the NCICs or their estates prepared from November 5, 2018 (including the $454 million baseline valuation) through the present, together with the underlying workpapers and the Communications transmitting or evaluating each valuation.

12. The Documents and Communications constituting, memorializing, or evaluating the Zero-Coupon Bonds and their disposition — including the pricing obtained in 2019, the decision to sell any Zero-Coupon Bond before maturity, the sale proceeds and their application, and the Documents classifying any Zero-Coupon Bond or its proceeds as IALA or non-IALA.

13. The Documents and Communications constituting, memorializing, or evaluating the AAPC Preferred, including the December 2022 transfer to ULICO and each valuation of the AAPC Preferred from 2019 to the present.

14. The Documents and Communications constituting, memorializing, or evaluating the negotiation, execution, and enforcement of the MOU, together with the Communications with any guaranty association concerning liquidation of the NCICs.

15. The Communications constituting, transmitting, or responding to each offer, indication of interest, letter of intent, or proposal to purchase, invest in, or monetize the NCICs, any SAC, any Primary Restitution Asset, or any other Lindberg-affiliated asset that was not consummated, from October 1, 2018 through the date of production, notwithstanding any shorter period stated in these instructions — including communications received from prospective purchasers or investors to which no response was made.

16. The board meeting materials and minutes of each NCIC — including board packages, agendas, resolutions, written consents, board reports, financial statements, and the analyses or reports presented by any third party — from October 1, 2018 to the present.

17. The complete general ledger detail of each NCIC from October 1, 2018 to the present, in native electronic format.

18. The bank statements and general ledgers of each NCIC from October 1, 2018 to the present, and the financial statements of each NCIC, audited and unaudited, for that period.

19. A full reconciliation of the affiliated loan balances from October 1, 2018 to the present, including the supporting schedules, workpapers, and source documents.

20. The invoices, fee applications, approvals, and payment records for every fee, expense, or other payment paid from the NCIC estates to any professional, consultant, or administrator from October 1, 2018 to the present.

21. Communications between You and any insurance regulator — including without limitation the insurance regulators of North Carolina, Pennsylvania, Vermont, and Bermuda — concerning the NCICs, the SACs, the Primary Restitution Assets, Vista Life & Casualty Reinsurance Company, PBLA, or any Lindberg-affiliated entity, or any sale or proposed sale of any of them, during the period covered by this subpoena.

22. Communications between You and any third-party administrator of the NCICs, the SACs, the Primary Restitution Assets, or the affiliated investments — including GBIG, LLC [also referenced as GBIC, LLC / GBIG Holdings, Inc.] — regarding the affiliated investments, during the period covered by this subpoena.