**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr.<br><br>EXPEDITED CONSIDERATION REQUESTED |

## EXHIBIT E — SCHEDULE OF DOCUMENTS TO BE PRODUCED BY THE BERMUDA INSURANCE COMPANIES, THROUGH THEIR JOINT PROVISIONAL LIQUIDATORS, PURSUANT TO SUBPOENA DUCES TECUM (FED. R. CRIM. P. 17(c))

## DEFINITIONS AND INSTRUCTIONS

1. "You" and "Your" mean the Bermuda insurance companies identified as Pre-Designated Restitution Parties in the Restitution Report (Doc. No. 106), including PB Life and Annuity Co., Ltd. and Northstar Financial Services (Bermuda) Ltd. [counsel to confirm the complete entity list], through their Joint Provisional Liquidators ("JPLs") as custodians of records, together with the JPLs' professionals and agents.
2. The definitions set out in Exhibit A — including the entity definitions, "SACs," and "Primary Restitution Assets" — apply equally to this Exhibit E.
3. If any responsive Document or Communication is withheld on a claim of privilege or protection, serve a written privilege log on all parties within seven (7) days of service of this subpoena. Communications with the United States Department of Justice or any other Government agency are not privileged and shall not be withheld.
4. Unless otherwise stated, the period covered is October 1, 2018 through the date of production.

## DOCUMENTS TO BE PRODUCED

1. Documents sufficient to show the receipt and application of every interest and principal repayment, distribution, or other transfer received from or on behalf of Mr. Lindberg or any Lindberg-affiliated entity from October 1, 2018 to the present, including the use of those funds: the amounts paid on policyholder claims

(identifying each payment); the amounts paid to the JPLs or their professionals; the amounts invested and their disposition; and the amounts retained, and where held.

2. Documents sufficient to show every payment made on any policyholder claim from October 1, 2018 to the present, or, if none has been made, Documents sufficient to show that fact.

3. The ledger entries, bank records, and Communications showing Your receipt and application of proceeds from sales of affiliated assets, including the approximately $9,800,076 identified in Defendant's Response (Doc. No. 132, at 6).

4. The Documents and Communications constituting, memorializing, or evaluating the AAPC tranches held by or refinanced out from You in connection with the April 2022 AAPC refinance, including the PBLA and Northstar tranches and the 18% preferred-equity payments.

5. The fee applications, invoices, and payment records for all compensation paid to the JPLs and their professionals from estate assets from October 1, 2018 to the present.

6. Communications between You and the Special Master, Paladin Management, the Rehabilitator, Michael Dinius, or the Government concerning restitution, offsets, credits, or the application of funds received.

7. The board meeting materials and minutes of You — including board packages, agendas, resolutions, written consents, board reports, financial statements, and the analyses or reports presented to the board or the JPLs by any third party — from October 1, 2018 to the present.

8. The complete general ledger detail of You from October 1, 2018 to the present, in native electronic format.

9. The bank statements of You from October 1, 2018 to the present, and Your financial statements, audited and unaudited, for that period.

10. A full reconciliation of the amounts owed to You by, and paid to You by or on behalf of, any Lindberg-affiliated borrower or counterparty from October 1, 2018 to the present, including the supporting schedules, workpapers, and source documents.

11. The Documents and Communications constituting, memorializing, transmitting, or evaluating the November 22, 2018 letter of intent from Ares Management concerning GBIG and/or the NCICs — including the letter of intent itself, drafts, transmittal correspondence, internal evaluations and board presentations concerning it, and the Documents and Communications reflecting its receipt, negotiation, rejection, or non-response.

12. The Documents and Communications constituting, memorializing, transmitting, or evaluating the February 8, 2019 proposal of Oaktree Capital Management (including the approximately $1.0 billion transaction referred to as the

"Global Solution"), including the Documents and Communications reflecting its receipt, evaluation, rejection, or non-response.

13. The Documents and Communications constituting, memorializing, transmitting, or evaluating the 2023 Montshire and/or Alban offer(s) for the NCICs or their assets, together with the pleadings, correspondence, and Communications concerning any litigation commenced against any prospective purchaser of the NCICs or their assets, including the decision to commence such litigation.

14. The Documents and Communications constituting, memorializing, transmitting, or evaluating the Q1 2024 Quadro Acquisition Corp. One transaction, including its valuation of the Specified Affiliated Companies and the reasons for its non-consummation.

15. Each valuation of the NCICs or their estates prepared from November 5, 2018 (including the $454 million baseline valuation) through the present, together with the underlying workpapers and the Communications transmitting or evaluating each valuation.

16. The Documents and Communications constituting, memorializing, or evaluating the Zero-Coupon Bonds and their disposition — including the pricing obtained in 2019, the decision to sell any Zero-Coupon Bond before maturity, the sale proceeds and their application, and the Documents classifying any Zero-Coupon Bond or its proceeds as IALA or non-IALA.

17. The Documents and Communications constituting, memorializing, or evaluating the AAPC Preferred, including the December 2022 transfer to ULICO and each valuation of the AAPC Preferred from 2019 to the present.

18. The Documents and Communications constituting, memorializing, or evaluating the negotiation, execution, and enforcement of the MOU, together with the Communications with any guaranty association concerning liquidation of the NCICs.

19. The Communications constituting, transmitting, or responding to each offer, indication of interest, letter of intent, or proposal to purchase, invest in, or monetize the NCICs, any SAC, any Primary Restitution Asset, or any other Lindberg-affiliated asset that was not consummated, from October 1, 2018 through the date of production, notwithstanding any shorter period stated in these instructions — including communications received from prospective purchasers or investors to which no response was made.

20. Communications between You and any insurance regulator — including without limitation the insurance regulators of North Carolina, Pennsylvania, Vermont, and Bermuda — concerning the NCICs, the SACs, the Primary Restitution Assets, Vista Life & Casualty Reinsurance Company, PBLA, or any Lindberg-affiliated entity, or any sale or proposed sale of any of them, during the period covered by this subpoena.

21. Communications between You and any third-party administrator of the NCICs, the SACs, the Primary Restitution Assets, or the affiliated investments — including GBIG, LLC [also referenced as GBIC, LLC / GBIG Holdings, Inc.] — regarding the affiliated investments, during the period covered by this subpoena.