# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GREG E. LINDBERG,<br><br>    Defendant. | Case No. 3:23-CR-48-MOC |

## OBJECTION TO SPECIAL MASTER'S SECOND SUPPLEMENT TO REPORT AND RECOMMENDATIONS

Eleonora L. Zetteler, LLM and J. Robert van Faassen, LLM (collectively, "Insolvency Practitioners"), in their capacities as insolvency practitioners in the insolvency of Nederlandsche Algemeene Maatschappij Van Levensverzekering "Conservatrix" N.V. ("Conservatrix"), through counsel, file this Objection to the Special Master's Second Supplement to Report and Recommendations Regarding Restitution ("Second Supplement to Report," ECF No. 245), filed on July 23, 2026. As explained below and in its Objection to Special Master's Report and Recommendation (ECF No. 130), Conservatrix respectfully requests to be included as a victim of Defendant Greg Lindberg's ("Defendant") crimes entitled to restitution pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), in the Court's final order of restitution.

## I.    Procedural History

On April 3, 2026, the Special Master filed his Report and Recommendations Regarding Restitution (the "Report"). ECF No. 106. In the Report, the Special Master proposed criteria for victims who should receive restitution and argued that Conservatrix did not meet the criteria. *See generally* ECF No. 106 at 8; ECF No. 106 at 24–25. The Report sought "an immediate Court order

identifying the persons directly due restitution from Defendant and how much," and contemplated that the Special Master would "file a subsequent report, motion, or other pleading seeking to resolve various outstanding payment and priority issues." ECF No. 106 at 2 n.2. The Report recommended that alleged victims and Defendant be given 30 days to submit objections to the Report. ECF No. 106 at 5.

The same day the Special Master filed his Report, the United States and Defendant jointly moved to bifurcate Defendant's sentencing hearing and requested that the Court schedule a sentencing hearing after entering a preliminary restitution order but before entering a final restitution order. *See* ECF No. 107 at 3. In granting that motion, the Court provided that "[t]he sentencing hearing will be held after the Court enters a preliminary restitution order." ECF No. 108 ¶ 15. On April 16, 2026, this Court set a May 4, 2026 deadline for objections to the Report, and on April 24, 2026, it noticed Defendant's sentencing hearing for May 26, 2026.

On May 4, 2026, Insolvency Practitioners timely filed an objection to the Report. *See* ECF No. 130. Thereafter, on May 15, 2026, the Special Master supplemented the Report to address various responses to the Report and adjust restitution calculations (the "Supplement"). *See* ECF No. 146. The Supplement reiterated that the Special Master was seeking "a *preliminary* order" to establish the persons due restitution and those persons' losses. *See* ECF No. 146 at 1. It further provided that "[t]he Special Master stands by the Report's exclusion of Conservatrix from classification as a person due restitution." ECF No. 146 at 11.

The Court held the sentencing hearing on May 26, 2026, before entering a preliminary restitution order. The Court did not address any objections to the Report before the sentencing hearing nor did it address objections at the hearing. Following the sentencing hearing, on May 28, 2026, the district court entered the Special Master's proposed Preliminary Order of Restitution as

2

an order of the Court. *Compare* ECF No. 161, *with* ECF No. 106-1. The Preliminary Order of Restitution did not provide for Defendant to pay any restitution to Conservatrix, does not mention Conservatrix, and does not contain any findings of fact. *See generally* ECF No. 161. The day after entering the Preliminary Order of Restitution, the district court entered a judgment providing for restitution by reference to the Preliminary Order of Restitution. *See* ECF No. 162.

On June 11, 2026, the Insolvency Practitioners petitioned the Fourth Circuit Court of Appeals for a writ of mandamus pursuant 18 U.S.C. § 3771(d)(3). *See* ECF No. 189-1. In their petition, the Insolvency Practitioners asked the Fourth Circuit to vacate the Court's Preliminary Restitution Order (ECF No. 161) and Judgment (ECF No. 162) and direct the District Court to issue a revised order identifying Conservatrix as a victim entitled to receive € 215,356,806 in restitution. *See* ECF No. 189-1 at 7. The Fourth Circuit reviewed this Court's Preliminary Restitution Order for abuse of discretion, and on June 12, 2026, denied the petition. *See* ECF No. 203.

On July 23, 2026, the Special Master filed his Second Supplement to Report and Recommendation Regarding Restitution with his "final" restitution recommendations. ECF No. 245 at 1. The Second Supplement to Report argues that Conservatrix should not receive restitution because it "was not harmed in the same manner that the Defendant harmed the other entities that the Special Master recommends the Court treat as persons due restitution." ECF No. 245 at 35.

The Court has not yet entered a final order of restitution.

**II.     Background on Conservatrix**

Defendant was the ultimate controlling party of multiple insurance companies, including Conservatrix. In 2017, after Conservatrix faced financial difficulties, Trier Holding B.V. ("Trier")[1] purchased Conservatrix's shares. When purchasing the shares, Defendant agreed to maintain a minimum solvency capital ratio ("SCR") of 135% in Conservatrix by replenishing Conservatrix's shortfall with core capital contributions. But instead, Defendant contributed only a marginal amount of capital and compelled Conservatrix to enter into a reinsurance agreement with Colorado Bankers Life Insurance Company ("CBL"), another company Defendant owned, under which Conservatrix paid CBL € 100,000,000. However, in June 2019, CBL was put into rehabilitation, and the rehabilitator disavowed the agreement with Conservatrix.

Soon thereafter, as a direct result of Defendant's omissions, Conservatrix was forced into bankruptcy. As a result of the bankruptcy, the claims of its approximately 71,000 policyholders were reduced by 10%, the guaranteed capital associated with premiums that were supposed to be paid in the future was cancelled, and the right of profit sharing was cancelled. *See* ECF No. 130-1 at 2.

### III.    Argument

#### A.    The Fourth Circuit's opinion does not preclude the Court from including Conservatrix in a final order of restitution.

The Insolvency Practitioners filed a petition for a writ of mandamus in the Fourth Circuit to challenge the District Court's implicit adoption in its Preliminary Order of Restitution of the Special Master's exclusion of Conservatrix as a victim entitled to restitution. *See* ECF No. 203 at 4 (citing 18 U.S.C. § 3771(e)(2)(A)). The Fourth Circuit concluded that it could not find that the

---

[1] Netherlands Insurance Holdings, Inc. is Trier's only shareholder. NIH Capital, LLC is Netherlands Insurance Holdings, Inc.'s only shareholder. Defendant is NIH Capital, LLC's only shareholder. Collectively, these entities are referred to herein as "Defendant's Entities."

District Court abused its discretion by excluding Conservatrix. *See* ECF No. at 5. Because the Fourth Circuit reviewed the propriety of Conservatrix's initial exclusion for abuse of discretion, the Fourth Circuit's opinion does not preclude this Court from finding—in its discretion—that Conservatrix is among Defendant's victims entitled to restitution in the Court's final order of restitution.[2]

### B. The Special Master's victim criteria is overly restrictive.

Conservatrix and its policyholders are victims of the crimes described in the Indictment. *See* Bill of Indictment, ECF No. 1. The Factual Basis for Defendant's plea explains that Defendant engaged in "circular, non-economic transactions among [his] web of entities using insurance company funds" to carry out the conspiracies detailed in the Indictment. *See* Factual Basis, ECF No. 42 ¶ 5. This scheme caused "substantial financial hardship" to many of Defendant's insurance companies and their policyholders, including Conservatrix and its policyholders. *See* ECF No. 42 ¶ 6.

The Report urged a narrow definition of Defendant's victims, recommending that only persons meeting the following criteria receive restitution:

Either (1)

- an insurance company,
- the assets of which Defendant or Defendant's agents had some power to invest or otherwise control, directly or indirectly,
- which assets were in fact diverted to a Defendant-affiliated entity, to whom, or to whose regulators, Defendant or Defendant's agents made material

---

[2] Even if the Fourth Circuit had not reviewed this determination for abuse of discretion, a district court need not follow an appellate court's mandate on remand if "a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993) (quotation omitted); *see also Williams v. Martorello*, 59 F.4th 68, 77 (4th Cir. 2023) ("We need not decide whether the district court's factual findings in the Misrepresentation Opinion contradicted the facts accepted by this Court in the prior appeal. Even if they did, the new evidence and serious injustice exceptions to the mandate rule apply such that the district court permissibly reconsidered those previous factual findings.").

> misrepresentations or omissions concerning those affiliated investments or asset management strategies; and
>
> - which diverted assets actually lost value as a proximate result of Defendant's activities.
>
> Or (2)
>
> - an insured of an insurance company described above (or a subrogee thereof),
> - which actually suffered damages as a proximate result of Defendant's fraudulent activities.

ECF No. 106 at 8; *see also* ECF No. 2451-1 at 5–6.

This recommended criteria, upon which the Special Master based his recommendations, which the Court presumably adopted in entering the Preliminary Order of Restitution, and which the Special Master has proposed in its proposed Final Order of Restitution (*see* ECF No. 245-1 at 5–6),[3] is overly restrictive and does not sufficiently account for the full harm alleged in the Indictment, which includes "deceiv[ing] and defraud[ing] various insurance companies. . . and ultimately thousands of insurance policyholders," ECF No. 1 ¶ 192, "engag[ing] in circular, non-economic transactions among [Defendant's] web of entities using insurance company funds," ECF No. 42 ¶¶ 3, 5, and making false and misleading statements to insurance policyholders and others. ECF No. 1 ¶ 5. The recommended criteria effectively exclude the victims of Defendant's "circular, non-economic transactions," by limiting restitution to only those harmed by transactions that overly diverted assets. It also fails to account for Defendant deceiving and defrauding insurance

---

[3] The Special Master's cited reason in his Second Supplement to Report for excluding Conservatrix from receiving restitution is not the appropriate inquiry. While the Special Master proposed the above criteria in his Report and Proposed Final Order of Restitution, the Special Master argued in his Second Supplement to Report that Conservatrix should not receive restitution because it "was not harmed in the same manner that the Defendant harmed the other entities that the Special Master recommends the Court treat as persons due restitution." ECF No. 245 at 35. The relevant inquiry under the CVRA is not whether a victim was harmed in a similar manner to other victims but is whether the alleged victim was harmed "by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *See* 18 U.S.C. § 3663A(a)(2).

companies and their policyholders through making false and misleading statements about his broader scheme, not just affiliated investments. The allegations in the Indictment are not limited only to diverted assets and fraudulent statements made only about affiliated investments, *see, e.g.*, ECF No. 1 ¶ 191, and even if they were, the MVRA requires restitution for conduct closely related to the fraud scheme. The criteria for victims should account for those who were victimized by all conduct charged in the Indictment.[4] Moreover, the Special Master's reason for excluding Conservatrix from receiving restitution is not the appropriate inquiry. The Special Master argued in his Second Supplement to Report that Conservatrix should not receive restitution because it "was not harmed in the same manner that the Defendant harmed the other entities that the Special Master recommends the Court treat as persons due restitution." ECF No. 245 at 35. The relevant inquiry under the MVRA is not whether a victim was harmed in a similar manner to other victims but is whether the alleged victim was harmed "by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).

Conservatrix proposes the following alternative criteria to fulfill MVRA's requirements for compensating victims of fraud conspiracy crimes:

Either (1)

- an insurance company,
- the assets of which Defendant or Defendant's agents had some power to invest or otherwise control, directly or indirectly,
- which assets were in fact directly harmed as a result of Defendant's actions or inactions,
- to whom, or to whose regulators, Defendant or Defendant's agents made material misrepresentations or omissions; and

---

[4] Indeed, the Report does not conclude that Conservatrix was not harmed by Defendant's crimes (as either a factual or legal matter). Rather, the Report recommends criteria that focuses on diversion of assets in a manner inconsistent with the MVRA's purpose to compensate all victims.

- which assets actually lost value as a proximate result of Defendant's activities or material omissions.

Or (2)

- an insured of an insurance company described above (or a subrogee thereof),
- which actually suffered damages as a proximate result of Defendant's fraudulent activities.

### C. Conservatrix is a victim under the MVRA because the insurance-fraud scheme described in Defendant's criminal case encompasses the conduct that directly and proximately harmed Conservatrix.

Under the MVRA, a "victim" is "a person directly and proximately harmed" by the criminal offense. 18 U.S.C. § 3663A(a)(2). For scheme- or conspiracy-based crimes, the MVRA broadens the definition of victim to include persons[5] harmed "by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* Victim status under the MVRA turns on whether the loss is a direct result of the defendant's criminal conduct or is *closely related* to the scheme. *See United States v. Lomas*, 392 F. App'x 122, 128 (4th Cir. 2010) (unpublished) (citing *United States v. Karam*, 201 F.3d 320, 326 (4th Cir. 2000)).

So long as the closely related requirement is met, the MVRA compels restitution "not only [for] 'harm caused by the particular counts of conviction' but also 'related but uncharged conduct that is part of a fraud scheme.'" *United States v. Holmes*, 673 F. Supp. 3d 1049, 1055 (N.D. Cal. 2023), *aff'd*, 129 F.4th 636 (9th Cir. 2025) (quoting *In re Her Majesty the Queen in Right of Can.*, 785 F.3d 1273, 1276 (9th Cir. 2015)); *see also United States v. Scalzo*, 764 F.3d 739, 746 (7th Cir. 2014) ("[I]n some cases restitution may be ordered for certain direct and foreseeable consequences of a crime, even if the conduct at issue does not constitute an element of the crime itself."); *United*

---

[5] Courts have consistently held that the MVRA's use of the term "person" includes an entity that otherwise qualifies as a victim of the defendant's criminal conduct. *See, e.g.*, *United States v. Cammarata*, No. 23-2110, 2025 WL 2046489, at *16 (3d Cir. July 22, 2025) (collecting cases).

*States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011) ("Courts have agreed that, in light of the expanded statutory language, restitution orders for conduct closely related to the offense of conviction are appropriate under either § 3663 or § 3663A(a)(2), in addition to the specific conduct for which the defendant was convicted."); *Lomas*, 392 F. App'x at 125.[6]

Conservatrix's losses are more than closely related to the specific counts of Defendant's conviction. Defendant pleaded guilty to Conspiracy (in violation of 18 U.S.C. § 371) and Money Laundering Conspiracy (in violation of 18 U.S.C. § 1956(h)). *See* ECF No. 1 ¶¶ 187-94, 201-04; Transcript of Plea and Rule 11 Hearing at 30-31, *United States v. Lindberg*, No. 3:23-cr-48 (W.D.N.C. Nov. 12, 2024). Among the purposes of Defendant's conspiracy was "to deceive and defraud various insurance companies. . . and ultimately thousands of insurance policyholders." ECF No. 1 ¶ 192. Defendant's conspiracy spanned at least 2016 through 2019, during which he "engaged in circular, non-economic transactions among [his] web of entities using insurance company funds" and furthered his conspiracy through false and misleading statements to insurance policyholders and others. ECF No. 42 ¶¶ 3, 5.

This web of insurance fraud ensnared Conservatrix. During the heart of his conspiracy, in 2017, Defendant became the ultimate controlling party over Conservatrix. As an inducement to obtain control, Defendant personally committed to: (1) recapitalize Conservatrix at the time of the completion of the share transfer in order to reach a minimum SCR ratio of 135%; and (2) thereafter to maintain an SCR ratio of 135% by replenishing any shortfall in the solvency capital requirement with "core capital contributions" ("the Commitment"). To accomplish his promise of immediate

---

[6] Relatedly, the criminal defendant's conduct need not be the sole cause of the loss. *See Holmes*, 673 F. Supp. 3d at 1055 (citing *United States v. Gamma Tech Indus.*, 265 F.3d 917, 928 (9th Cir. 2001)).

9

recapitalization, Defendant caused Conservatrix to enter into a reinsurance agreement with CBL, another insurance company he owned that is identified in the Factual Basis.[7]

Through the Commitment, Defendant induced De Nederlandsche Bank ("DNB"), Conservatrix's financial supervisor, to allow the transfer of Conservatrix's shares to Defendant. Defendant's promises, by way of the Commitment, were the reason why DNB allowed the transfer of shares in Conservatrix to Defendant and why the Amsterdam District Court approved this transfer plan, allowing the agreements Conservatrix made with Defendant and CBL, i.e., the agreements creating losses that Conservatrix's policyholders sustained. *See Karam*, 201 F.3d at 326.

In 2019, as Defendant's conspiracy began to publicly unravel, a downgrade in CBL's credit rating (following the appointment of a rehabilitator) and a change in interest rates caused Conservatrix's SCR ratio to fall significantly below the agreed minimum—triggering the Commitment. Despite a contractual obligation and repeated demands from Conservatrix and DNB, Defendant never restored Conservatrix's SCR ratio. As a result, in March 2020, Defendant and his companies incurred a penalty of € 150 million because they did not comply with a Dutch arbitral award ordering compliance with the Commitment. To date, Defendant has not paid this penalty.

Defendant directly caused the losses Conservatrix's policyholders suffered, and it was entirely foreseeable that the Conservatrix policies would lose value because of Defendant's undercapitalization of Conservatrix. Defendant's non-performance of the Commitment and his

---

[7] The harm to Conservatrix caused by Defendant's fraud is detailed in an arbitration award against Defendant upheld by the highest court in the Netherlands and enforced by the United States District Court for the Middle District of North Carolina—proceedings of which the Special Master and the Court to which he reports may take judicial notice. *See Van Andel v. Lindberg*, No. 1:23-CV-879, 2024 WL 3718168 (M.D.N.C. Aug. 8, 2024) (confirming award of $166,797,838 for Conservatrix and against Defendant), *appeal docketed* No. 24-1898 (4th Cir., Sept. 18, 2024); *see also Van Andel v. Lindberg*, 732 F. Supp. 3d 476 (M.D.N.C. Apr. 29, 2024) (providing factual history).

failure to pay the penalty meant that Conservatrix could not comply with its legal requirement to maintain a certain minimum SCR ratio and culminated in Conservatrix's bankruptcy in 2020. *See Van Andel*, 732 F. Supp. 3d at 480. Conservatrix estimates that the economic loss to Conservatrix policyholders exceeds $240 million.

In sum, the insurance-fraud scheme described in Defendant's criminal case encompasses the conduct that directly and proximately harmed Conservatrix. Defendant's "circular, non-economic transactions among [his] web of entities using insurance company funds," Factual Basis ¶ 5, track his misrepresentations and failures with respect to recapitalizing Conservatrix. Conservatrix and its policyholders should be found victims of Defendant's criminal conspiracy and Defendant should be ordered to pay them restitution.

### D. Conservatrix is entitled to € 215,356,806 in restitution.

The Insolvency Practitioners, through counsel, have previously provided to the Special Master and the Special Master's financial advisor information regarding the harm Defendant has inflicted on Conservatrix and its policyholders. The information provided demonstrates that, as a result of the crimes that Defendant inflicted on Conservatrix and its policyholders, Conservatrix is due € 215,356,806. Defendant is jointly and severally liable for these losses. Conservatrix also may be entitled to other payment from Defendant, outside of payments that represent restitution under the MVRA.

The losses Conservatrix suffered as a result of the non-performance of the Commitment total € 215,356,806.[8] After Conservatrix's bankruptcy on December 8, 2020, it became

---

[8] Under Dutch law, Conservatrix is entitled to statutory interest on these losses. The principal claim must be increased by the statutory interest from December 8, 2020 (when the damage occurred) until the date of actual payment in full. The statutory interest rate is determined by the Dutch government. In 2020, the statutory interest rate was 2%. From January 1, 2023, the statutory interest rate was increased to 4%. On July 1, 2023, it was increased to 6%. From January

permanently impossible for Defendant and Defendant's Entities to perform their duties under the Commitment. Under Dutch law, this meant that the Commitment was converted, by law, to an obligation to pay damages on December 8, 2020. The damages are calculated as the replenishment that was needed to remedy the shortfall in the SCR on December 8, 2020. According to an actuarial calculation, the shortfall in the SCR as of Conservatrix's bankruptcy was € 215,356,806 million. A replenishment of that amount was needed to bring Conservatrix's SCR ratio to 135% on December 8, 2020.

Conservatrix also suffered € 99,566,697 in losses as a result of policyholder claims. The bankruptcy of Conservatrix resulted in a 10% cut to the policyholders and a loss of the guaranteed capital (if applicable) relating to premiums still to be paid in the future and the right to future profit sharing. Without the transfer of Conservatrix's insurance portfolio to Chesnara PLC, the trustees would have had to liquidate all Conservatrix's assets. In that scenario, the policyholders would receive a liquidation payment. The trustees have calculated what this would mean for the position of the policyholders. Assuming that a policyholder will buy with the liquidation payment a policy comparable to that the policyholder had with Conservatrix, policyholders would be on average more than 7% and possibly up to 10%, worse off than they were after Conservatrix's takeover by the new insurer.

The amendments to the policies that occurred as a result of the takeover are as follows: (i) the claims of all policyholders have been reduced 10% and (ii) the guaranteed capital (if applicable) relating to premiums still to be paid in the future has been deleted and the right to profit sharing for the future has been deleted. The total damages resulting from the 10% reduction amount

---

1, 2024, the statutory interest rate was increased to 7%. On January 1, 2025, it was reduced again to 6%. Since January 1, 2026, the interest rate has been 4%.

to € 59,076,145. The total losses suffered by the policyholders as a result of the deletion of the guaranteed capital relating to premiums still to be paid in the future and the right to profit sharing for the future amounts to € 40,490,552.

The € 99,566,697 in policyholder losses is distinct from the € 215,356,806 in damages to remedy the SCR shortfall. Nevertheless, based on how assets are distributed in Dutch bankruptcy, if Conservatrix were to receive € 215,356,806 in restitution, Conservatrix's policyholders would be compensated in full.

### E. Conclusion

The Insolvency Practitioners request that the Court overrule the Special Master's determination that Conservatrix is not among the entities entitled to restitution from Defendant, and that the Court determine that Conservatrix is entitled to € 215,356,806 in restitution for the harm Defendant inflicted on Conservatrix and its policyholders. To the extent that the Court holds further hearings to determine the parties entitled to restitution, the Insolvency Practitioners request an opportunity to be heard at such hearings.

Respectfully submitted this the 28th day of July 2026.

/s/ Jeffrey E. Oleynik
Jeffrey E. Oleynik (NC Bar No. 14416)
joleynik@brookspierce.com
D.J. O'Brien III (NC Bar No. 35481)
dobrien@brookspierce.com
BROOKS, PIERCE, MCLENDON, HUMPHREY &
LEONARD, LLP
2000 Renaissance Plaza
230 N. Elm Street
Greensboro, NC 27401
Tel: (336) 271-3182
Fax: (336) 232-9182

Kate E. Giduz (NC Bar No. 60887)

13

kgiduz@brookspierce.com
BROOKS, PIERCE, MCLENDON, HUMPHREY &
LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, NC 27601
Tel: (919) 882-2546
Fax: (336) 232-9046

*Attorneys for Eleonora L. Zetteler, LLM and
J. Robert van Faassen, LLM in their
capacities as insolvency practitioners in the
insolvency of Nederlandsche Algemeene
Maatschappij Van Levensverzekering
"Conservatrix" N.V.*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

The undersigned hereby certifies that:

1.  No artificial intelligence was knowingly employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2.  Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this the 28th day of July 2026.

*/s/ Kate E. Giduz*
Kate E. Giduz

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below the foregoing document (with its exhibits, if any) was served on counsel of record by the CM/ECF System for the Western District of North Carolina, which will generate and send an e-mail notification of said filing to all counsel of record.

Respectfully submitted this the 28th day of July 2026.

*/s/ Kate E. Giduz*
Kate E. Giduz