UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREG E. LINDBERG,<br><br>       *Defendant*. | No. 5:19-CR-22-MOC<br><br>No. 3:23-CR-48-MOC |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR ISSUANCE OF SUBPOENAS**

The United States of America respectfully submits that the Court should decline to issue the six subpoenas requested by Defendant because they represent a hopeless fishing expedition designed to prolong and complicate the restitution process and to further harass the victims of his crimes. This is evident from the patently overbroad nature of the requested subpoenas, the fact that much of the requested information is already in Defendant's and his counsel's possession, and the fact that, in any event, Defendant cannot show that the information is necessary to finalize restitution.

Defendant's Motion for the issuance of subpoenas (Doc. 248) seeks to compel (1) the Special Master; (2) Paladin, the Special Master's financial advisor; (3) Michael Dinius, the Special Deputy Rehabilitator of the North Carolina Insurance Companies ("NCICs"); (4) the NCICs; (5) the Bermuda Insurance Companies; and (6) lawyers representing Michael Dinius, to produce a vast array of communications (including categories of privileged communications), court filings, contracts, accounting records, and other documents dating back as far as 2018 concerning topics that, by and large, have

1

absolutely nothing to do with the limited number of restitution issues remaining to be resolved by this Court. To the extent that any of the requested subpoenas seek materials that are even relevant to the remaining restitution issues, the materials are (1) are not necessary to the Court's determination of those issues; (2) untimely and likely to delay the current proceedings beyond the statutory deadline; and (3) likely available by other means. As such, Defendant fails to meet the *Nixon* standards, and the Court should deny his motion.[1] *See United States v. Nixon*, 418 U.S. 683, 699 (1973).

## BACKGROUND

Defendant pled guilty in November 2024. As evident from the provisions of his Plea Agreement, the parties recognized from the outset that restitution matters in this case would involve the need for a Special Master and for Defendant's cooperation with that Special Master. And, by and large, from November 2024 through May 2026, Defendant, the United States, the Special Master, the Special Master's counsel and his financial advisor Paladin all worked collaboratively to determine which victims were entitled to restitution and the amount of such restitution. Simultaneously, the Special Master and Paladin worked closely with Michael Dinius, the NCICs, the Bermuda Insurance Companies and their lawyers, ULICO, lawyers representing Michael Dinius, and numerous other third parties to obtain information relevant to determination of

---

[1] Whether the United States has standing to object to these subpoenas is an open question in the Fourth Circuit. In any event, the Court has wide discretion to decline to issue them on its own. *See United States v. Fitzgerald*, 416 Fed. Appx. 238, 244 (4th Cir. 2011); *United States v. Covington*, 2024 WL3092765, at *2-3 (E.D.Va. June 20, 2024).

restitution. The high-level details of all this cooperation are set forth in numerous filings in this case and were discussed at numerous hearings.

That said, the nitty-gritty, day-to-day collaboration between the parties, victims, and their representatives, and other third parties, and the amount of information shared between and amongst them, were never detailed for the Court because there were no disputes about Defendant's access to information. Indeed, Defendant agreed with the conceptional framework for determining restitution. *See* Defendant's Response to Special Master's Initial Report and Recommendations (Doc. 132 at 5) (Defendant "agrees that the principal balance of the Affiliate Investments, rather than policyholder losses, is an appropriate methodology for calculating restitution."). Defendant also agreed with the parties' plan that the Court would enter a Preliminary Order of Restitution as part of the initial sentencing process. *See* Joint Motion to Bifurcate Sentencing (Doc. 107) at 3 ("the parties request that the Court schedule the sentencing hearing after it enters a preliminary restitution order but before any necessary hearings to finalize restitution"). Defendant agreed to that process, without objection, *after* the Special Master filed the proposed Preliminary Order of Restitution that he recommended the Court enter.

The Court sentenced Defendant on May 26, 2026, and signed the Preliminary Restitution Order that same day. (Doc. 161). Pursuant to 18 U.S.C. § 3664(d)(5), the Court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." Hence, the Court has until Monday, August 24, 2026, to make any amendment to the Preliminary Restitution Order.

**LEGAL STANDARD**

A request for Rule 17(c) subpoenas in connection with sentencing proceedings is only appropriate where a defendant has shown that: (1) the documents are evidentiary and relevant; (2) the documents could not reasonably have been procured in advance of sentencing by exercise of due diligence; (3) the defendant cannot properly prepare for sentencing without such production and inspection in advance of sentencing and that the failure to obtain such inspection may tend unreasonably to delay the sentencing; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *See United States v. You,* 2024 WL 1404378, *2 (E.D. Tenn. Apr. 1, 2024) (quoting *Nixon*, 418 U.S. at 699). Moreover, "[a]n application for a Rule 17(c) subpoena duces tecum must clear the hurdles of 'relevance, admissibility[,] and specificity.'" *United States v. Whisenant,* No. 1:22-CR-44-MOC-WCM, 2023 WL 3046079 (W.D.N.C. Apr. 21, 2023). While several courts have allowed parties to use Rule 17(c) to subpoena documents and other evidence to be introduced as evidence at sentencing,[2] the Rule was "not intended to provide a means of discovery for criminal cases," (*Nixon* at 698) and subpoena requests designed as "more of a fishing expedition" are "frowned upon" and should be denied. *United States v. Rand*, 835 F.3d 451, 464 (4th Cir. 2016).

---

[2] *But see United States v. Martin*, 141 F.3d 1152 (2d Cir. 1998) (unpublished) (Rule 17(c) "relates solely to pretrial matters" and does not apply to defendant's request to subpoena information for sentencing); *United States v. Hill*, 2019 WL 1873220, at *1 (N.D. Ohio Apr. 26, 2019) ("Notwithstanding the government's concession that Rule 17(c) has been employed in certain post-trial contexts, the Court is not convinced that the rule is available to compel the production of documents for use at sentencing.")

Moreover, as the Court noted in denying Defendant's requested Rule 17(c) subpoena in advance of his first trial in the public corruption case:

> In applying the *Nixon* test, "[t]he Fourth Circuit has repeatedly stressed that Rule 17(c) is not a general discovery device, and to that end, the party requesting the information must identify with specificity what is sought." *United States v. Ging-Hwang Tsoa*, No. 1:13cr137, 2013 WL 5837631, at *2 (E.D. Va. Oct. 29, 2013) (internal citations omitted). That is, "a Rule 17 subpoena duces tecum cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010). The specificity prong of the *Nixon* test thus requires "more than the title of a document and conjecture as to its contents," *United States v. Underwood*, No. 0:19-CR-00420-JMC-1, 2019 WL 5078351, at *3 (D.S.C. Oct. 10, 2019), and "[Rule] 17(c) subpoena requests for 'any and all' documents are too broad to meet the test outlined in *Nixon*." *United States v. Wai Lun Ng*, 5:07CR24-V, 2007 WL 3046215, at *3 (W.D.N.C. Oct. 16, 2007).

(Doc. 104 in 5:19cr22).

## ARGUMENT

Defendant's current request for a fishing license should fare no better than his last. *Id.* at 4 ("The Court agrees with the Government that these requests represent exactly the kind of expansive, imprecise discovery that falls outside of the scope of Rul 17(c)."). His Motion for the issuance of subpoenas, like nearly all of his post-sentencing filings, seeks to rewrite history and ignores the whole premise behind the Court's appointment of a Special Master and the entry of the Preliminary Restitution Order, *i.e.* to foster information sharing and consensus prior to sentencing that would enable the parties and the victims to *narrow* the outstanding restitution issues for final determination by this Court. In fact, prior to, and during, his sentencing hearing on May 26, 2026, Defendant

complimented "the hard work of the Special Master and its financial advisor" and lauded the "extraordinary restitution and cooperation efforts Mr. Lindberg has undertaken in conjunction with the Court-appointed Special Master before and since the entry of his plea…." (Defendant's Sentencing Memo (Doc. 145) at 3, 5). Defendant also acknowledged the *neutral and impartial* work of the Special Master, detailing for the Court how the Special Master and Paladin "listened to all sides, they're experienced, and then they make their own independent judgments about what should occur. And if there are dustups, which there were, they work to resolve those and **have resolved those**." (Sentencing Transcript (Doc. 164) at 15) (emphasis added).

Indeed, Defendant detailed the intense collaboration and information sharing between the Special Master, Paladin, and Defendant (through counsel) to bolster his claims of extraordinary cooperation in his successful pursuit of a more lenient sentence. *See, e.g.,* Doc. 145 at 14 ("In addition, Mr. Lindberg's defense counsel have had numerous (sometimes lengthy) additional conference calls and Zoom meetings with the USAO/DOJ, Special Master, Paladin and other parties outside of the regular meetings in order to provide needed information and facilitate asset sales (the weekly conference calls and other meetings began in February of 2025, and do not count hundreds of other electronic communications and calls).").

Now that he has received a variance based upon his "extraordinary cooperation" with the Special Master, however, Defendant has changed his tune. A little more than two weeks after praising the Special Master's neutrality, Defendant sought to "disqualify the Special Master from any recommending or adjudicative function concerning the

6

determination of restitution, with those functions performed by a neutral successor." (Doc. 190 at 37). Defendant's request was based upon his spurious claims that the Special Master engaged in a "practice to extract concessions with commitments he does not keep…." (*Id.* at 22).[3] Defendant's requests since his sentencing ignore the 16 months of collaboration and information sharing between the Special Master, Paladin, Defendant, victims and their representatives and other third parties that resulted in the Special Master's Report and Recommendations and the entry of the Preliminary Restitution Order. Instead, now, with the benefit of a reduced sentence secured, Defendant casts the Special Master process as unfair, incomplete and unconstitutional, and seeks to compel the production of a universe of largely irrelevant documents (many of which are already in his, current/former, counsel's possession) so that he can try to discredit all of the Special Master's Recommendations and start the restitution process over from scratch.

Worse, Defendant provides no justification for waiting until the eleventh hour to seek this information via subpoena. He has not identified a single question to the Special Master or Paladin that went unanswered during the 16 months of collaboration or since his sentencing. He has not identified a single document he requested that was not provided. It appears the real motivation for Defendant's request for these subpoenas is his decision to jettison his former counsel (and their 16 months of experience and

---

[3] Notably, Defendant's complaints about the Special Master appear to be limited only to recommendations by the Special Master that are adverse to Defendant. For example, Defendant was quick to unequivocally support the Special Master's recommendation that Cell 1.16 was not entitled to restitution, which decreased the amount of recommended restitution. *See* Doc. 227 at 5 ("A party's disagreement with the Special Master's considered assessment is not a ground to disturb it.").

information sharing with the Special Master and Paladin) in the middle of this pre-planned bifurcated process. Defendant was well aware of that risk when he chose to engage new counsel with no previous involvement in this matter, and a last-minute change of counsel in a massive multi-year process does not justify Defendant's requested subpoenas and the expense and inconvenience they will cause victims at this late hour.

Moreover, Defendant's Motion requests "that production be ordered at such time as the Court directs, sufficiently in advance of the evidentiary hearing—so that he can review the productions, seek additional information, and, if necessary, move to compel or enforce compliance before the hearing…." (Doc. 248 at 6-7). Given the vast overbreadth of the requested subpoenas, including several requests that call for privileged attorney-client communications and many that request "all documents" and "all communications" regarding certain topics, there is no practical way that the compliance with the requested subpoenas could be completed in time for the Court to finalize restitution by August 24th. Even if the Court issued the subpoenas, it is likely that one or more of the subpoena recipients would move to quash, which would prolong the process even more. *See, e.g. You,* at *3 ("The Victim Companies, as the direct recipient of any issued subpoena, will have the opportunity to oppose Defendant's subpoenas that Rule 17(c)(3) was drafted to protect.").

Finally, even if the Court were to excuse Defendant's untimeliness and ignore his gamesmanship, none of the information requested by the subpoenas is necessary for the Court to finalize restitution in this case because the outstanding issues should all be resolved on legal, not factual, grounds. It appears that Defendant's 17 complaints

8

regarding restitution can be grouped into distinct categories as set forth in the chart below:[4]

| Category | Complaint Description | Issue(s) No. |
|---|---|---|
| I | Inclusion of interest | 1 |
| II | Starting IALA loan balances | 2 |
| III | Not getting credits for items that have not been monetized and the value of which is unknown | 3, 7 |
| IV | Not getting credits for payments made to, or monies received by, victims as part of pre-existing civil obligations not tied to the IALA loan balances | 4, 5, 6, 8, 9, 10 |
| V | Not getting credits for alleged diminution in market value of Defendant's assets during and after his criminal conduct | 11, 13, 14, 16, 17 |
| VI | Not getting credits for outstanding IALA loan balances for which Defendant claims others shared responsibility | 12, 15 |

*See, e.g.*, Doc. 132 at 6.

The record before the Court is more than sufficient to resolve each of these categories of *legal* questions without granting Defendant the additional, overbroad discovery he now seeks. The Special Master's Final Report responds to each of Defendant's 17 issues and explains why there are no material issues of fact regarding those issues. As such, to the extent Defendant's subpoenas seek any information that may actually be relevant to any of these topics, the information is not necessary. In one

---

[4] Each of these 17 complaints are addressed in the Special Master's Final Report and Recommendations ("Final Report," Doc. 245). For ease of reference, references herein to "Issue No." correspond to the nomenclature used in the Special Master's Final Report. *See* Doc. 245 at 6. The United States agrees with each of the Special Master's recommendations regarding these matters.

example, Defendant's requested subpoena to the Bermuda Insurance Companies seeks in one of its twenty-one categories of production:

> The Documents and Communications constituting, memorializing, or evaluating the AAPC Preferred, including the December 2022 transfer to ULICO and each valuation of the AAPC Preferred from 2019 to the present.

Doc. 248-5 at 3.

Presumably, this request relates to Category III/Issue 3 to the extent that Defendant is claiming he should receive immediate credit against restitution for the AAPC Preferred Equity he previously transferred to ULICO. But, as the Special Master notes in the Final Report, there are no material issues of fact relating to this issue. (Doc. 245 at 14-15). The issue for the Court is not whether Defendant made this transfer, how much he claims it was worth, or even how much ULICO thought it was worth. There is no dispute that Defendant made the transfer and valued it at several hundred million dollars from his perspective when it was made in 2022; but it is also undisputed that ULICO *has not actually monetized it*. The Special Master recommends in the Final Report that Defendant "receive a credit against his restitution obligations if and when ULICO realizes this value." *Id.* at 16. While there are likely disputed facts about the prospective value, if any, of this asset, they are not necessary to the Court's determination of the threshold question of whether Defendant should get any credit for this unrealized value at the stage of determining a final judgment for restitution. Regarding the other Categories of complaints, these, too, can be resolved on the current record because they ultimately involve the resolution of legal issues such as: (i) should the Court include a

time-value of money interest component in the restitution amount; (ii) were any payments that were actually made to victims "compensatory damages for the same loss by the victim" (18 U.S.C. § 3664(j)(2)); and/or (iii) does the alleged diminution in value of certain assets occurring during or after Defendant's crimes, even if caused by parties other than Defendant, entitle Defendant to a credit against restitution. Again, there might be contested factual issues regarding such things as whether and to what extent there was a diminution of value and, if so, who caused it, but the Court need not resolve those if it, as it should, determines that Defendant is not legally entitled to the claimed credits.

# CONCLUSION

Defendant has not met his burden under the four *Nixon* factors. Defendant's subpoena requests represent an overbroad, untimely, and limitless fishing expedition for information irrelevant to the remaining issues before the Court at sentencing and should be denied.

RESPECTFULLY SUBMITTED, this 30th day of July, 2026.

DALLAS J.E. KAPLAN
ATTORNEY FOR THE UNITED STATES[5]

LORINDA I. LARYEA
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*/s/ Daniel Ryan*

Daniel Ryan
Dana Washington
Assistant United States Attorneys
United States Attorney's Office
Western District of North Carolina

227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-3222
daniel.ryan@usdoj.gov

*/s/ Lyndie M. Freeman*

Lyndie M. Freeman
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue
Washington, DC 20005
Telephone: 202-616-5315
lyndie.freeman@usdoj.gov

---

[5] Acting under authority conferred by 28 U.S.C. § 515.