# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GREG E. LINDBERG,<br><br>    Defendant. | Case No. 3:23-CR-48-MOC |

## SPECIAL MASTER'S RESPONSE TO DEFENDANTS MOTION TO ISSUE SUBPOENAS DUCES TECUM PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17, WITH INCORPORATED MEMORANDUM OF LAW

Joseph W. Grier, III, the Court-appointed special master (the "Special Master") in this proceeding, through counsel, hereby presents this response (this "Response") to the Defendant's motion to issue subpoenas duces tecum pursuant to Fed. R. Crim. P. 17 (the "Motion")[1] and respectfully represents as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

On February 23, 2023, the United States (the "Government") brought a thirteen-count indictment against Defendant Greg E. Lindberg ("Defendant") asserting various violations of federal law and alleging that Defendant owed certain insurance companies more than $1.1 billion.[2]

On November 12, 2024, Defendant entered into a plea agreement pursuant to which he agreed to, among other things, the appointment of a special master to "identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court."[3] Defendant also agreed "to pay full restitution" to the victims of the conduct charged in the

---

[1]     Doc. No. 248.
[2]     Doc. No. 1.
[3]     Doc. No. 40.

1

indictment, including but not limited to, certain insurance companies and their impacted policyholders.[4]

On December 5, 2024, the Government and Defendant brought a joint motion to appoint the Special Master in accordance with 18 U.S.C. § 3664(d)(6).[5] On January 23, 2025, the Court entered its *Order Appointing Special Master* (the "Appointment Order").[6]

As described by Defendant in more detail in *Defendant Greg E. Lindberg's Sentencing Memorandum*,[7] Defendant, the Special Master, and the government worked together over a period of several months to resolve, at least as among themselves, as many of the questions concerning restitution in this Case as possible, engaging in discussions at least weekly and sometimes more frequently. During those many discussions, Defendant's counsel never asked the Special Master to seek production of, nor did Defendant's counsel identify a need for, any of the multitude of documents and information sought by the subpoenas proposed through the Motion. Indeed, Defendant's counsel requested that the Special Master include a list of the restitution issues that Defendant and the Special Master did not agree on in the original restitution report; no factual issues whatsoever were implicated by those unresolved issues, only legal issues.

Now, with approximately one month remaining until 18 U.S.C. § 3664(d)(5)'s deadline for finalizing restitution within 90 days' of sentencing, Defendant has developed an urgent need for voluminous records.[8] Indeed, Defendant himself characterizes the scope of the requested subpoenas as "span[ning] five custodians, seven-plus years, and hundreds of millions of dollars of

---

[4]     *Id.*
[5]     Doc. No. 54.
[6]     Doc. No. 56.
[7]     Doc. No. 145.
[8]     Defendant does this in the name of investigating late-raised factual questions that Defendant is attempting to manufacture in order to complicate the restitution process. Essentially, the Defendant seeks to unwind months of consensus building between the Special Master, Defendant's counsel, and the government now that Defendant has received the consideration he wanted from cooperating with the restitution process: a reduced custodial sentence.

2

transactions, and meaningful review of that volume cannot be compressed into days" and that Defendant's "review will generate follow-up—additional requests, clarifications, and targeted supplementation—that must itself be served and answered before the hearing" on the outstanding restitution issues.[9] In other words, Defendant knows that this is too much discovery to conduct before the 18 U.S.C. § 3664(d)(5) deadline (*i.e.*, August 24, 2026).

## ARGUMENT

Waiver. On January 12, 2026, the Court ordered the Special Master to file the Special Master's report and recommendations on restitution by March 20, 2026, which deadline was later extended in late March to April 3, 2026. If Defendant, represented by competent counsel at Katten Muchin Rosenman LLP ("Katten") and Wyatt & Blake, LLP, knew that voluminous additional records from all of the victims and all of his companies now under the control of NHC Holdings, LLC ("NHC") would be critical to establishing material causation and offset contentions, then Defendant should have sought subpoenas then, in mid-January. At the very latest, once Defendant saw the Special Master's initial report on April 3, 2026 recommending restitution amounts exceeding $1.6 billion in the aggregate, Defendant should have asked for the discovery now sought through the Motion shortly thereafter. Moreover, even when Defendant bombarded the docket in this case with various methods of attacking the preliminary restitution order in the weeks following the sentencing hearing, Defendant still did not seek the discovery he now seeks in the final days of the 90-day period following sentencing. By sitting on this request since the Appointment Order, Defendant has waived the ability to raise it now, on the eve of the Court's final determination concerning Defendant's restitution obligations.

---

[9] Doc. No. 145, at 10.

Unreasonable and Oppressive. At least as pertains to the proposed subpoenas directed to the Special Master and the Special Master's professionals, the subpoenas sought must be rejected because they are "unreasonable or oppressive."[10] For example, the subpoena directed to the Special Master, among other defects, defines "You" (*i.e.*, the person to produce documents) to include not only the Special Master, but also include NHC Holdings, LLC ("NHC") and the hundreds of companies under the NHC umbrella, none of which are under the Special Master's control.[11] Even if they were under the Special Master's control, the scope of such of production would be pointlessly broad and unduly burdensome. For all of the various companies owned directly or indirectly by NHC, Defendant seeks general ledgers, bank statements, financial statements, meeting minutes, board materials, itemizations of certain transfers, documents pertaining to possible future sale transactions, and an abundance of other material that has no reasonable nexus to the restitution analysis. Even for those production requests that seek documents that the Special Master might actually have, most of them seek communications to or from the Special Master and his professionals, none of whom have direct knowledge of the facts and circumstances critical to the restitution determination, and, therefore, have no value for a hearing on restitution. Although some documents solicited through the subpoena impact the restitution analysis, the vast majority of the documents sought by this subpoena have no bearing on restitution whatsoever. Therefore, the subpoenas are objectionable under Rule 17(c)(2) of the Federal Rules of Criminal Procedure.

Lack of Good Faith. The Motion does not appear to be submitted in good faith. Defendant waited until the very last minute in a years-long process to seek this discovery; discovery that the Motion itself essentially admits would take more time than the time allotted by 18 U.S.C.

---

[10] FED. R. CRIM. P. 17(c)(2).
[11] Doc. No. 248-2.

§ 3664(d)(5). Rather than narrowly tailor the discovery to the limited discrete issues that Defendant has articulated concerning the Special Master's restitution recommendations, the Motion seeks broad discovery on a wide array of topics having nothing to do with restitution. The subpoenas are not tailored to obtain information that may help demonstrate any of Defendant's restitution offsets (although some of that information is included within these proposed requests). To the contrary, the subpoenas appear designed to delay the Court's restitution determination, to harass the subjects of the subpoenas, to distract some of those subjects from committing their full attention to the disputes at hand in this case, and to fish for ammunition to use in civil litigation extraneous to this criminal process. Such a fishing expedition, especially one done so late in the process and for such blatant ulterior motives, cannot be said to be done in good faith.

Irrelevant. Although the Motion makes the bold assertion that all of the requests in the proposed subpoenas are "tied to a disputed causation or offset question already framed on the docket,"[12] a quick review of the subpoenas exposes that statement as false. Although the main body of the Motion cites to some document requests that could be relevant for evaluating Defendant's offset requests, the bulk of the requests appearing in the subpoenas have no connection to open restitution issues in this case. At least 19 out of the 29 document requests in the proposed subpoena to the Special Master have no independent bearing on the restitution analysis, including requests seeking: the Special Master's invoices and fee applications (although these are already on the docket); documents and communications concerning potential future sales of entities under NHC and one of the primary restitution assets; documents and communications involving the Special Master concerning the Clanwilliam distribution approved by the Court with Defendant's consent; prior drafts of the Special Master's restitution report and supplements; copies of the

---

[12] Doc. No. 248, at 11.

Special Master's communications with almost everyone relating to Defendant or this case; meeting minutes and other board materials for all entities under NHC; the general ledgers for all entities under NHC[13]; and the bank statements and financial statements for all entities under NHC.

Perhaps more importantly, there is a broader relevancy issue with the subpoenas. The Special Master and Defendant agree on the fundamental, objective, material facts necessary for the Court to resolve the restitution issues integral to this case. For many months, the Special Master's financial advisors and Defendant's counsel at Katten have generally reviewed the same spreadsheets, agreed on various assumptions concerning the historical facts, and otherwise been working off of the same documents and information.[14] Indeed, Katten provided to the Special Master a large part of the documents and information upon which the Special Master's recommendations are based. While the Special Master and Defendant might disagree on some subjective conclusions to be reached from the objective facts (*e.g.*, the reliability of particular valuation reports or the reasonableness of rehabilitators' decisions to sell or not sell something), the Special Master does not dispute the known history that the valuation reports existed and the rehabilitators sold some things and did not sell other things. Defendant has made these arguments *ad nauseam* following the sentencing hearing, with various statements of fact from Defendant seeking to justify his new positions. The Court has ample information before it to draw the necessary legal conclusions, including the legal conclusion as to whether the rehabilitators' actions broke the causal chain in a manner relieving Defendant from his restitution obligations to ULICO and others. Perhaps with some limited exceptions, to the extent the document requests within the

---

[13] Although the general ledgers might show unaccounted for partial payments to victims due restitution, a separate document request included in this subpoena specifically asks for that precise documentation.

[14] Defendant elected to discard Katten after sentencing and entry of the preliminary restitution order. The fact that his new counsel is less versed on the facts and where the Special Master's financial advisors are pulling which information from does not justify the overly broad subpoenas sought through the Motion, which, if issued and complied with, still would not clarify why the Special Master's math does not jive with Defendant's math.

6

subpoenas are remotely relevant to restitution, they only seek to further prove facts that are not material to any open factual dispute.

## CONCLUSION

Having already received his reduced sentence based on his apparent cooperation with the restitution process, Defendant now seeks to delay, distract, and otherwise hinder that same process by all means available to him. The Motion is one of many pleadings filed in recent weeks trying to prevent the Court from finalizing the restitution amounts in this case. The overwhelming breadth, delay in seeking, and general unreasonableness of the subpoenas reveals that the subpoenas have very little to do with clarifying any open restitution issues, and very much to do with confusing the issues in this case as the Court prepares to enter a final restitution order. Due process does not require that the Court condone subpoenas sought in bad faith.

## RESERVATION OF RIGHTS

To the extent the Court grants the Motion in any degree, the Special Master reserves the right for the Special Master and the Special Master's professionals to move to quash any such subpoenas served upon them on the basis of privilege, the work product doctrine, overbreadth, unreasonableness, and any other legitimate legal or equitable basis for contesting the subpoenas.

WHEREFORE, the Special Master prays that the Court deny the Motion and grant such further relief as is just and proper.

Respectfully submitted this 30th day of July, 2026.

 /s/  Michael L. Martinez
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax:  704.332.0215
Email:  mmartinez@grierlaw.com
*Attorneys for Joseph W. Grier, III, Special Master*

7

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that copies of the foregoing *Special Master's Response to Defendants Motion to Issue Subpoenas Duces Tecum Pursuant to Federal Rule of Criminal Procedure 17, with Incorporated Memorandum of Law* were served on those parties who have requested electronic service in this case through the CM/ECF system.

Respectfully submitted this 30th day of July, 2026.

*/s/ Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
