IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:23-CR-48 |
| | ) | |
| GREG E. LINDBERG, | ) | |
| | ) | |
| Defendant. | ) | |

**NORTH CAROLINA INSURANCE COMPANIES' RESPONSE IN SUPPORT OF THE SPECIAL MASTER'S REPORT AND RECOMMENDATION AND IN OPPOSITION TO THE FILINGS OF ULICO AND THE BERMUDAN INSURANCE COMPANIES**

NOW COME victims Colorado Bankers Life Insurance Company, Bankers Life Insurance Company, Southland National Insurance Corporation, and Southland National Reinsurance Corporation (collectively, "the North Carolina Insurance Companies") and submit this memorandum in support of the Special Master's Second Supplement to Report and Recommendation ("Report") [D.E. 245] and in opposition to the filings submitted by Universal Life Insurance Company ("ULICO") [D.E. 275] and the Joint Official Liquidators on behalf of PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., and Omnia Ltd. as well as the Joint Provisional Liquidators of PB Investment Holdings Ltd. (collectively, the "Bermudan Insurance Companies") [D.E. 297].

## Introduction

The North Carolina Insurance Companies are the largest victims of Defendant Lindberg's crimes. The Special Master has worked through an exhaustive process to

calculate the amount of restitution owed to each victim and the North Carolina Insurance Companies have no objections to his conclusions. The Special Master has also correctly concluded that there is no legal basis for preferring repayment to other victims over the North Carolina Insurance Companies. Victims ULICO and the Bermudan Insurance Companies seek to jump ahead of the North Carolina Insurance Companies based on arguments that have no basis in law or fact. This Court should disregard these line-jumping efforts and enter the final restitution order proposed by the Special Master.

## Argument

### I. The Special Master Correctly Calculated the Amount of Restitution Owing to Each Victim and That all Victims Should be Repaid Equally.

The Report correctly concludes that the North Carolina Insurance Companies are the victims of Defendant Lindberg's crimes charged in the Indictment and are entitled to restitution. In fact, the North Carolina Insurance Companies have been identified as victims in practically every relevant document—the Indictment [D.E. 1], Defendant Lindberg's Plea Agreement [D.E. 40], the Factual Basis [D.E. 42], the Court's Order Appointing Special Master [D.E. 56], the Consent Motion for Order Approving the Disposition of Net Proceeds From the Sale of the Clanwilliam Group of Companies [D.E. 66], the Court's Order Approving the Distribution From the Sale of The Clanwilliam Group of Companies [D.E. 68], the Special Master's Report and Recommendations Regarding Restitution [D.E. 106], and the Report [D.E. 245].

The Report also correctly demonstrates why the North Carolina Insurance Companies, as victims, should receive any restitution funds in the same manner as

other victims. The Special Master correctly rejected the claims of ULICO and the Bermudan Insurance Companies that they should receive priority over the North Carolina Insurance Companies. Report at 38–39.[1] As the Special Master notes, the North Carolina Insurance Companies have not received any compensation or other benefits from the Guaranty Associations. Report at 39–40. As such, they cannot be victims who received compensation from another source for purposes of federal restitution law. *See* 18 U.S.C. § 3664(j)(1) ("If a *victim received compensation* from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order to be paid to the victims before any restitution is paid to such a provider of compensation.") (emphasis added).

The Guaranty Associations paid the claims of the North Carolina Insurance Companies' policyholders to certain policy benefits up to a statutorily required threshold. To be clear, those policyholders could not now make a claim for restitution because they have received compensation for most of their losses from the Guaranty Associations. But that's not true for the North Carolina Insurance Companies, which have received no money from the Guaranty Associations. In fact, the Guaranty Associations are now statutory claimants *against* the North Carolina Insurance

[1] The Court should also reject their spurious arguments, but to the extent that the Court considers prioritizing payments to the Bermudan Insurance Companies, the North Carolina Insurance Companies respectfully request that: (1) the Bermudan Insurance Companies be required to provide an accounting to the Special Master of the sources and uses of all funds that they have recovered since the Joint Provisional Liquidators exercised control over their operations in 2019; and (2) that any such payments be made by the Special Master directly to the individual policyholders who are owed outstanding obligations.

Companies for over $1.8 billion for amounts paid to policyholders and $14 million for the Guaranty Associations' administrative expenses associated with those payments. *See* Receiver's Quarterly Report Ex. A p. 27, Ex. C p. 23, Ex. D p. 31, *Causey v. Southland Nat'l Ins. Corp.*, No. 19CVS8664-910 (N.C. Super. Jul. 24, 2026).[2] To suggest that the North Carolina Insurance Companies have received any funds from the Guaranty Associations that reduce or subordinate their restitution award is simply false.

## II. ULICO and the Bermudan Insurance Companies' Efforts to Gain Priority Payment of Restitution Ignore both Law and Fact in Service of Self-Interest.

The foundation of the arguments advanced by ULICO and the Bermudan Insurance Companies is that the North Carolina Insurance Companies are not victims. This, of course, is not true as a matter of both law and fact. Each of these co-victims make a series of appeals to "economic reality" or "equity" in an effort to prioritize their creditors over the creditors of the North Carolina Insurance Companies. For the reasons detailed below, those claims all lack merit.

As noted above, the North Carolina Insurance Companies presently owe—as a matter of law—the various Guaranty Associations over $1.8 billion for paid claims of policyholders to whom they had provided continuing coverage and $14 million for the Guaranty Associations' administrative expenses as a consequence of Lindberg's crimes. The North Carolina Insurance Companies are obligated to repay as much of that debt as possible through recoveries in this and other proceedings. However, any

---

[2] Also available here: https://www.ncdoi.gov/documents/regulatory-actions/snic-cbl-blic-snrc-receivers-amended-quarterly-report-september-30-2025

amounts not repaid by the North Carolina Insurance Companies' liquidation estates will be borne by solvent insurance companies in over 40 states and, ultimately, state taxpayers. Beyond these obligations, the North Carolina Insurance Companies owe approximately $85 million to their other creditors, none of which will be paid until the debt to the Guaranty Associations is fully satisfied. *Id*. This is the "economic reality" of the North Carolina Insurance Companies as a matter of law and fact and there can be no credible claim otherwise.

*a. ULICO's Arguments are Unsupported by Law and Fact.*

ULICO, in essence, argues that its owners and investors should have priority over the North Carolina Insurance Companies' creditors—including the Guaranty Associations. There is no basis in restitution law to prioritize the creditors of a solvent company over the creditors of an insolvent company. Moreover, ULICO provides no justification for why its owners and investors should be prioritized over the owners and investors of all the solvent insurance companies who are being assessed by the Guaranty Associations in order to make payments to the policyholders of the North Carolina Insurance Companies.

Also, ULICO has no credible claim that its policyholders are at risk. If ULICO becomes insolvent, then its policyholders will be protected by the same Guaranty Association structure that has provided benefits to the policyholders of the North Carolina Insurance Companies. *See* ULICO's Br., D.E. 275 at 5–6. This fact further exposes ULICO's true priority—to preserve value for its owners and investors to the detriment of established victims.

*b. The Bermudan Insurance Companies' Arguments are Contrary to Law and Provide No Basis for Preferring Their Restitution Payments.*

The Bermudan Insurance Companies also invite the Court to ignore the law in service of advancing their own interests. As an initial matter, the Bermudan Insurance Companies urge this Court to disregard the incontestable fact that the North Carolina Insurance Companies are victims of Defendant Lindberg's crimes who are entitled to restitution. But they go a step further to claim that making restitution payments to the North Carolina Insurance Companies would result in a violation of the Mandatory Victim Restitution Act ("MVRA"). Bermudan Ins. Co.'s Br., D.E. 297 at 2–3. Again, as set out in the Report and in this memorandum, the North Carolina Insurance Companies are victims who have not received compensation for their losses from the Guaranty Associations. Awarding them restitution and having it paid out equally with the other victims is precisely what is appropriate under the MVRA.

It bears noting that the approach to restitution payments proposed by ULICO and the Bermudan Insurance Companies also raises serious concerns under the McCarran-Ferguson Act. *See* 15 U.S.C. §§ 1011–1015. Under the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq*. (the "McCarran–Ferguson Act"), any state statute that regulates the "business of insurance" reverse-preempts any federal statute that does not specifically regulate the business of insurance. *See Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 43 (2d Cir. 1995). Thus, the McCarran–Ferguson Act gives states the dominant role in the regulation of insurance. *See U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 500 (1993).

Congress passed the McCarran–Ferguson Act in response to the Supreme Court's decision in *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533 (1944), which held that the business of insurance was interstate commerce and subjected the insurance industry to federal regulation for the first time. Afterwards, because states feared a federal takeover of insurance regulation, Congress restored the states' supremacy in insurance regulation through this new law. *See Fabe*, 508 U.S. at 499–500. The statute provides that: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . ." 15 U.S.C. § 1012(b). This clause establishes a "clear-statement rule" that federal laws will be presumed *not* to reach insurance unless Congress *expressly* states an intent to do so. *Fabe*, 508 U.S. at 507. In other words, when presented with a statute that would interfere with state insurance law, courts shall presume that Congress did not intend such an effect. *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119–20 (2d Cir. 2001). Thus, pursuant to the McCarran–Ferguson Act, federal law—including the MVRA—will be reverse-preempted by state insurance law if: (i) the federal statute does not specifically relate to insurance; (ii) the state law at issue was enacted to regulate the business of insurance; and (iii) the federal statute at issue would invalidate, impair, or supersede the state law.

In this case, the restitution payment approach proposed by the Special Master and the North Carolina Insurance Companies presents no conflict between federal

law (the MVRA) and state insurance insolvency law. However, preferencing restitution payments to other victims in this matter is significantly disruptive of the insurance insolvency regime established by North Carolina law and similar laws of other states. Doing so disrupts the flow of funds into the estate of the North Carolina Insurance Companies required to meet their obligations to creditors—including the Guaranty Associations—which increases the burden on solvent insurance carriers and taxpayers. ULICO's argument highlights this problem. ULICO's proposed preference results in the state insurance insolvency system being undermined to protect the interests of the owners and investors of a single insurer.

The McCarran-Ferguson Act issues are similarly highlighted by the claim of the Bermudan Insurance Companies, whose solution would provide relief to a foreign insurer at the expense of the domestic insurance insolvency regime. This is particularly concerning when the Bermudan Insurance Companies are only entitled to restitution due to Defendant Lindberg's plea agreement. Otherwise, they would be foreclosed from claim restitution in this case. *See United States v. Elbaz*, 52 F.4th 593 (4th Cir. 2022).

## **Conclusion**

The Special Master's Report correctly calculates the amount of restitution owed to each victim in this case and that any restitution should be paid to victims equally. As such, this Court should enter the Final Order of Restitution that the Special Master has proposed.

Respectfully submitted, this the 17th day of August, 2026.

**WILLIAMS MULLEN**


*/s/Wes J. Camden*
Wes J. Camden
NC State Bar No. 33190
Caitlin M. Poe
NC State Bar No. 44713
Lauren E. Fussell
NC Bar No. 49215
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
wcamden@williamsmullen.com
cpoe@williamsmullen.com
lfussell@wiliamsmullen.com
Telephone: (919) 981-4000
Facsimile: (919) 981-4300

*Counsel for Victims Colorado Bankers Life Insurance Company, Bankers Life Insurance Company, Southland National Insurance Corporation, and Southland National Reinsurance Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that copies of the foregoing were served on all counsel of record and parties requesting notice via the Court's ECF system.

This the 17th day of August, 2026.

**WILLIAMS MULLEN**

*/s/Wes J. Camden*
Wes J. Camden
NC State Bar No. 33190