# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC |

**AFFIDAVIT OF MOHSIN MEGHJI**

Mohsin Meghji, being first duly sworn, deposes and says as follows:

1. I am over eighteen (18) years of age, am competent to testify to the matters stated herein, and make this affidavit based upon my personal knowledge. I am the am the acting CEO of NHC Holdings, LLC, a North Carolina limited liability company ("NHC").

2. NHC was formed in 2019 in connection with the execution of a certain Memorandum of Understanding dated as of June 27, 2019 by and among Global Growth Holdings, LLC (f/k/a Academy Association, Inc.) ("GGH"), Greg E. Lindberg ("Lindberg"), and the other parties thereto providing for, among other things, the establishment of NHC and the transfer of certain "Specified Affiliated Companies" (as defined in the MOU) listed on Exhibit A attached to the MOU (herein "SACs").

3. As a result of disputes among the parties to the MOU, litigation was initiated in 2019 in the Wake County Civil Superior Court, before the Honorable A. Graham Shirley in Case No. 19-CVS-013093 (herein the "MOU Litigation") to enforce the terms of the MOU. GGH and Lindberg lost that litigation, and as a result were ordered to contribute the SACs to NHC.

4. The initial contribution of SACs to NHC did not occur until October 2024 (the "2024 Contribution Transaction").

5. Prior to the date of the 2024 Contribution Transaction, as a result of Lindberg's ongoing legal troubles, many of the operating SACs had been transferred to various trusts established, To the best

of my knowledge, information and belief, to address concerns raised by one or more regulatory bodies, lenders and customers and remove GGH and Lindberg from the day-to-day management of those entities.

6. One of the entities placed into trust was Collectivus, LLC (f/k/a BKX Holdings, LLC), a North Carolina limited liability company ("Collectivus").

7. The trust into which Collectivus was transferred was called the "The Beckett Collectibles Trust" (herein the "Beckett Trust"), and was governed by the Trust Agreement dated as of June 2021 (herein the "Beckett Trust Agreement") entered into by and among The Bryn Mawr Trust Company of Delaware, as the Delaware Trustee, Hugh Steven Wilson, as the Independent Trustee, and Entrust Global Group, LLC, a North Carolina limited liability company ("Entrust Global"), as the Grantor and Sole Beneficiary of the Beckett Trust.

8. To the best of my knowledge, information and belief, Entrust Global owned 100% of Collectivus at the time the Beckett Trust was formed in 2021. Indirect ownership of Entrust Global was transferred to NHC as part of the 2024 Contribution Transaction and remains indirectly under the ownership and control of NHC today.

9. The Beckett Trust terminated in accordance with the terms of the Beckett Trust Agreement. The activities of the Beckett Trust were wound up and liquidated in accordance with the Beckett Trust Agreement, pursuant to which ownership of Collectivus was transferred from the Beckett Trust back to Entrust Global effective as of September 30, 2025. Entrust Global retains sole ownership of Collectivus today.

10. Collectivus is a holding company that owns 100% of the equity interests in Collectivus Holdings, LLC (f/k/a Beckett Collectible Holdings, LLC), a North Carolina limited liability company ("Collectivus Holdings"). The name of this entity was changed from Beckett Collectible Holdings, LLC to Collectivus Holdings, LLC on January 14, 2026 in connection with the sale by Collectivus Holdings (then known as Beckett Collectible Holdings, LLC) of its ownership interests in (i) Beckett Collectibles, LLC, and its subsidiaries (herein collectively "Beckett Collectibles") and (ii) CBCS Operations, LLC ("CBCS"), both North Carolina limited liability companies, which closed on or about December 15, 2025

(herein the "Beckett Sales Transaction").

11. As CEO of NHC, I was appointed as NHC's representative to the Collectivus Board of Directors in late 2024.

12. As a director of Collectivus, I was regularly updated on the financial performance of the Collectivus Group during 2025 and continue to be updated in 2026.

13. To the best of my knowledge, information and belief, the total revenues and EBITDA generated in 2025 by Beckett Collectibles through the closing of the Beckett Sales Transaction (on or about December 15, 2025), were a small portion of the total revenues and combined EBITDA generated by the entire Collectivus Group through that date.

14. The Board of Managers at Collectivus, of which I am a member, unanimously approved the Beckett Sales Transaction as being in the best interest of Collectivus going forward.

15. In connection with the closing of the Beckett Sales Transaction, the consent of Entrust Global and NHC, as the sole member of Collectivus and the Manager of Entrust Global, respectively, was also required.

16. As a condition of providing such approval, NHC required that Collectivus obtain a fairness opinion from an independent investment banking firm that the consideration being paid for Beckett Collectibles and CBCS was fair and reasonable.

17. Prior to the closing of the Beckett Sales Transaction, Collectivus did in fact obtain a fairness opinion from J.P. Morgan, an internationally known banking firm ("JPM") which was presented to the Collectivus Board and which was shared with the NHC Board confirming that the consideration to be paid for Beckett Collectibles and CBCS was in fact fair and reasonable.

18. Recent filings by Lindberg reference a Beckett Collectibles appraisal of approximately $1 billion. This appraisal was prepared by a third-party, Cabrillo Advisors and its report was dated January 31, 2022. The appraisal was based in part on management revenue projections for the entities in the Beckett Sales Transaction of $80 million in 2022 and approximately $759 million in 2025. Reported actual revenue per the audited financial results were approximately $53 million for 2022 and less than 6% of the 2025

projection.

19. Based on the financial information NHC was provided, along with the copy of the fairness opinion from JPM, NHC provided its consent to the transaction as the Manager of (i) Entrust Global (the sole member of Collectivus) and (ii) EGX Holdings, LLC, the sole member of Entrust Global.

20. Specifically, the transaction was approved through a unanimous vote of the NHC Board of Directors. The NHC Board of Directors is comprised of three appointees from the North Carolina Insurance Companies, two independent directors, and one director appointed by the Special Master.

21. The purchaser of Beckett Collectibles did not require or request the consent of the Special Master or this Court. As the transaction neared closing, the Special Master was apprised of the proposed transaction and he had indicated that as long as his appointee to the NHC Board approved of the transaction, he would not object. To the best of my knowledge, information and belief, the Special Master has provided a letter to his Board appointee to that effect. For the avoidance of doubt, aside from providing this letter, the Special Master had no direct involvement in the transaction.

22. To the best of my knowledge, information and belief, the Surviving Collectivus Group is a substantial group of entities generating significant annual revenues and remains a valuable restitution asset under NHC's indirect ownership and control.

[Signature Page Follows]

Further, affiant sayeth not.

This the 17th day of August, 2026.

Mohsin Meghji, Affiant

STATE OF NEW YORK

COUNTY OF NEW YORK

Sworn to and subscribed before me this 17th day of August, 2026.

Date: AUGUST 17, 2026

Official Signature of Notary

(Official Seal)

CHARLES H. F. GARNER NOTARY PUBLIC STATE OF NEW YORK NO. 02GA6272565 QUALIFIED IN NEW YORK COUNTY COMM. EXP. 11/19/28

CHARLES HF GARNER

Notary's Printed Name

My commission expires: 11/19/2028