**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br><br>Judge Max O. Cogburn, Jr. |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING HIS MOTION FOR ISSUANCE OF SUBPOENAS (DOC. 304)**

Defendant Greg E. Lindberg respectfully moves for reconsideration of the Court's August 14, 2026 Order (Doc. 304) denying his Motion for Issuance of Subpoenas Duces Tecum under Federal Rule of Criminal Procedure 17(c) (Doc. 248). Mr. Lindberg has already been sentenced; the custodial portion of his sentence has been imposed, and the only matter remaining is the determination of restitution, which is itself part of the criminal sentence. *See Ellingburg v. United States*, 607 U.S. 163, 146 S. Ct. 564 (2026) (restitution under the MVRA is criminal punishment). The subpoenas are therefore sought in the sentencing phase of this criminal case, where Rule 17(c) is available and the *Nixon* factors apply with less rigor than at trial. Reconsideration is warranted because, three days after the Order, the very premises on which it rested were overtaken by events: in conferral on August 17, 2026, the Special Master conceded that the underlying valuation documents exist and could be produced, but refused to place them on the Court's record — offering only private production under a confidentiality agreement — even though he had offered to place

that same material on the record under seal in his April 3, 2026 Report and Recommendations Regarding Restitution (Doc. 106 at 29), and the defendant has asked for it repeatedly. The defendant pressed for the data through conferral precisely to avoid filing this motion — proposing that it simply be placed on the docket under the protective order already in place — and files now only because the Special Master refused to do so. The Government, for its part, does not object to the defense obtaining that data from the Special Master, but opposes the issuance of the subpoenas to the recipients other than the Special Master. The Order denied the subpoenas as overbroad, duplicative of what the defense already has, unnecessary, untimely, and available by other means. Each of those rationales is now either answered by the parties' own positions or is incorrect as to the narrow, dispositive category the defense actually needs — the methodology and data underlying the Special Master's valuation of the Primary Restitution Assets and the Specified Affiliated Companies — the valuation detail the Special Master offered to provide the Court in camera (Doc. 106 at 29), the method by which he calculated each offset, and the companies' financial reports, board reports, letters of intent, and offers to purchase — on which a $1.655 billion restitution and the forfeiture keyed to it depend. For the reasons below, the Court should reconsider and either issue narrowed subpoenas or order the Special Master to place that methodology and data on the record under the protective order already governing this case.

## ARGUMENT

**I. Reconsideration is warranted because the Court ruled on the subpoena motion after the defendant asked that it be held pending issue-by-issue resolution of the pending motions.**

Reconsideration is warranted at the outset because the Order resolved the subpoena motion out of the sequence the defendant had requested. At the August 10, 2026 hearing on the pending restitution matters, the defendant asked the Court not to rule on the Motion for Issuance of Subpoenas (Doc. 248) at that time, but to hold it pending the Court's resolution, on an issue-by-issue basis, of the several dispositive and evidentiary motions then pending. The subpoena motion is not freestanding: it is the discovery mechanism that supplies the record for the causation, loss, offset, and accounting disputes raised in the defendant's pending motions (Docs. 234, 278, 280), and both the need for and the proper scope of the subpoenaed valuation material turn on how those issues are decided. Entering a denial (Doc. 304) before those motions were addressed — and contrary to the defendant's request to defer — warrants reconsideration so that the subpoena question is decided in its proper sequence, on a complete understanding of what each pending issue requires, and so that the record on those issues is complete for review in the Fourth Circuit. A district court has the recognized authority to reconsider and promptly correct its own rulings in a criminal case. *United States v. Dieter*, 429 U.S. 6, 8 (1976) (per curiam) (recognizing "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors").

## II. Reconsideration is warranted by a material change in circumstances since the Order.

A district court has the recognized authority to reconsider and correct its own rulings in a criminal case. *See United States v. Dieter*, 429 U.S. 6, 8 (1976) (per curiam) (recognizing "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors"). Reconsideration is appropriate to account for a material change in circumstances or evidence not previously before the Court, and to prevent manifest injustice. Both are present. The Order (Doc. 304) rested on the reasons in the Government's opposition (Doc. 261) — that the subpoenas were overbroad, that the defense already possessed much of the information, that the material was not necessary, was untimely, and was "likely available by other means." On August 17, 2026 — after the Order — the Special Master's counsel confirmed that the underlying valuation documents exist and could be produced, but refused to place them on the Court's docket, offering only private production "under a confidentiality agreement" limiting their use. Meet-and-Confer Correspondence (Aug. 17, 2026) (attached as Exhibit 1). The defendant has repeatedly asked that this material be placed on the record under the Court's own sealing procedures — as the Special Master himself offered to do in his April 3, 2026 Report and Recommendations (Doc. 106 at 29) — and has been refused. *Id.* The Government, meanwhile, represented that it has "no objection to [the defense] getting relevant data from the Special Master." *Id.* Those developments confirm that the data exists, that it can be produced under the protective order already in place, and that the only remaining dispute is

whether it will enter the record — and they undercut the "available by other means," "overbroad," and "already possess" premises of the Order.

## III. The premise that the defense "already possess[es]" the information is incorrect as to the valuation methodology and data.

Whatever categories of communications and filings the defense may already hold, it does not possess the one category that matters: the methodology and underlying data by which the Special Master valued the Primary Restitution Assets and Specified Affiliated Companies. The Special Master has withheld those particulars — reporting only a single lumped "range" — and the defense has repeatedly and unsuccessfully sought them, including through prior counsel. *See* Ex. 1 ("Katten has asked for this in the past. We do not have this information."). The Special Master's own counsel confirmed both that the data exists and that it has not been produced, offering to produce it only under a confidentiality agreement. *Id.* A denial premised on the defense's supposed possession of this material cannot stand where the record now shows the material is held by the Special Master and was never produced.

## IV. The valuation methodology and data are necessary, because the Government must prove loss and the figure triggers forfeiture.

The Order concluded that the material is "not necessary to the Court's determination." But the Government bears the burden of proving "the amount of the loss sustained by a victim as a result of the offense," 18 U.S.C. § 3664(e), and the Court must determine restitution in "the full amount of each victim's losses," *id.* § 3664(f)(1)(A), on "a complete accounting," *id.* § 3664(a). Those commands require the

valuation and its supporting data to be in the record: a loss the Court must determine itself, de novo, *id.* § 3664(d)(6), on a complete accounting, *id.* § 3664(a), and by a preponderance of the evidence, *id.* § 3664(e), cannot be fixed on a valuation that the Court — and the defendant — are not permitted to see. For a property offense the value of the property is the measure, § 3663A(b)(1)(B), and it is the Government's to prove and establish on the record; where the Government puts no record proof of that value before the court, the order must be vacated. *United States v. Steele*, 897 F.3d 606, 613–15 (4th Cir. 2018) (vacating a property-loss restitution order because "the record contains no proof of the victim's actual loss"). The Special Master's valuation of the companies is the measure of the assets available to satisfy restitution and the basis for the credits and offsets the defendant is owed; it cannot be both the foundation of the recommended award and "not necessary" to test it. The necessity is heightened here because the restitution figure triggers a forfeiture to the extent the value of the companies falls short of the amount ordered, so an award built on an undisclosed valuation inflicts immediate and irreparable harm on the defendant — the forfeiture of property keyed to any shortfall between the companies' value and the amount ordered — and the requested data is necessary to prevent that irreparable harm. A defendant cannot adversarially test — and the Court cannot reliably determine — a billion-dollar loss figure whose basis is concealed. Due process requires a meaningful opportunity to be heard on the amount of the punishment, which is empty if the underlying data is withheld. The Government may urge that due process at a restitution hearing requires only an adequate opportunity to be

heard, not live testimony or cross-examination. *See United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013); *United States v. Castillo*, 93 F. App'x 273 (2d Cir. 2004).

But those decisions turned on defendants who had access to the materials underlying the loss figure and could rebut them on the merits; here the Special Master's methodology and data have never been placed on the record at all, so there is no opportunity — adequate or otherwise — to rebut what cannot be seen. A criminal defendant cannot be sentenced — and cannot be made to forfeit property — on the basis of evidence he is forbidden to see, or without any ability to examine the data on which his sentence and the resulting forfeiture rest. Neither the open administration of justice nor the Due Process Clause permits a sentence, or the forfeiture keyed to it, to rest on secret data withheld from the defendant and kept out of the record the reviewing court must examine. The defendant has, moreover, pursued every other means to obtain this information short of compulsion — requesting it directly, through prior counsel, and during the term-sheet negotiations with the Special Master, see Doc. 278 — and even the limited categories to which he has narrowed his request, sought only to preserve his opportunity to be heard and to perfect the record for appeal, have been refused.

**V. The material is not "available by other means"; the Special Master alone holds it, and he has now agreed to produce it under a protective order.**

The Order's alternative rationale — that the material is "likely available by other means" — is incorrect and, in any event, overtaken. The institutional holders of the books, records, and valuations (the NCICs and NHC) disputed the Special Master's authority to compel the information and declined to furnish it, and the

defense's own efforts and those of Paladin were unavailing. There is no "other means": compulsory process is the only route. The conferral confirms as much — the Special Master conceded the documents exist and could be produced, but refused to place them on the record, offering only private production under a confidentiality agreement. Ex. 1. The parties' positions have narrowed the dispute to a single, easily resolved point. The Government does not oppose placing the requested records on the docket subject to a protective order. It represented that it has "no objection to [the defense] getting relevant data from the Special Master" and that "a protective order, not just filing it under seal, is appropriate here at least with respect to the most sensitive types of business data." Ex. 1.

The Government thus contemplates docketing the records with a protective order layered over the most sensitive business data — precisely the relief the defendant seeks. The defendant, in turn, agreed to proceed on a protective-order basis — stating that he would not contest confidential treatment of genuinely sensitive business information — and offered to use the Government's own standing protective order, the order that already governs all of the Government's discovery in this criminal case, so that no new agreement is needed. Ex. 1. With the Government's consent and an existing protective order available, there is no basis to keep the data off the record: on-the-record production under that order protects any genuinely sensitive business information while giving the defendant the opportunity to review and adversarially test the valuation, and preserving a complete record for review in the Fourth Circuit. The sole remaining obstacle is the Special Master's insistence on

producing the data only under a private confidentiality agreement — instead of under the Court's existing protective order and on the docket — which would keep the data off the record entirely, a condition the MVRA does not permit. Private production on terms that keep the data off the docket does not satisfy the MVRA, which requires the loss to be "determined by the court" on "a complete accounting," 18 U.S.C. § 3664(f)(1)(A), (a), and, in this criminal proceeding, keeping the records off the docket forecloses any review by the Fourth Circuit, depriving the defendant of the complete record he needs to preserve and litigate his objections on appeal.

The defendant has asked repeatedly that the material be placed on the record under the Court's own sealing procedures — as the Special Master himself proposed in his Report and Recommendations Regarding Restitution (Doc. 106 at 29), in which he represented that, "[u]pon request by the Court, the Special Master could provide additional detail concerning the Special Master's estimates under seal or in an in camera setting" — and has been refused. *Id.* The Special Master's present refusal to place the same valuation on the record cannot be reconciled with his own prior representation that it could be submitted to the Court in camera. Where the sole holder of the data will neither let it enter the record nor identify any other source, the defendant's remedy is compulsory process, or an order directing on-the-record production under the existing protective order — not a denial premised on phantom alternatives.

## VI. Any overbreadth is readily cured, and the defense proposes a narrowed request.

To the extent the Court found the six subpoenas overbroad, Defendant does not press the full breadth of Doc. 248 on reconsideration. The dispositive need is narrow and specific, and tracks the categories the defendant identified in conferral: (1) the methodology of valuation of the Primary Restitution Assets and the Specified Affiliated Companies, together with any updated valuation methodology and the underlying valuation data — including the additional detail concerning his low/mid/high estimates that he represented, in his Report and Recommendations Regarding Restitution, he could provide "under seal or in an in camera setting," Doc. 106 at 29, and the updated figures filed in July 2026; (2) the method of calculation of the offsets and credits the Special Master applied or disallowed; and (3) for all Primary Restitution Assets and Specified Affiliated Companies, and covering the last four years, all financial reports, board reports, letters of intent, and offers to purchase received. Ex. 1.

These materials are necessary to evaluate the value of the companies. These are going concerns generating millions of dollars in annual revenue — not bankrupt entities whose worth is measured by their outstanding debt. Unlike a bankruptcy liquidation, where debt may stand in for value, the enterprise value of an operating, revenue-generating business can be assessed only from its financial reports, board reports, letters of intent, and offers to purchase; those records fix the enterprise value of these companies rather than the debt-based liquidation figure the Special Master's valuation reflects. That the defendant is prepared to accept this narrowed category

does not abandon the remainder of Doc. 248: the Government's Consolidated Position (Doc. 308) once again disallows the defendant's credits and offsets across the board, and the financial data underlying each disallowed offset is necessary to prove the very offsets the Government continues to deny. To the extent those offsets remain contested, the balance of the subpoenas is required, and the defendant presses them. Each disallowed offset turns on records the defendant does not hold — records in the hands of the third-party custodians to whom control of the companies passed — and the subpoenas are the only means to obtain them. The following, drawn from Defendant's Reply (Doc. 300), identifies representative disallowed offsets, the amount at issue, and the custodian of the records required to establish each:

| **Offset / credit (Doc. 245)** | **Amount** | **How the amount is calculated** | **Records required and their custodian** |
|---|---|---|---|
| No. 3 — AAPC/ULICO preferred-equity credit | $352,906,240 | Par value of the AAPC preferred equity transferred to ULICO in partial satisfaction of the civil judgment. | Transfer and valuation records, and any recovery on the preferred equity — ULICO / NHC / Special Master. |
| No. 4 — SNIC payments | $27,823,425 | Aggregate of the payments made by or for SNIC. | Payment and accounting records — the North Carolina Insurance Companies / Special Deputy Rehabilitator (Dinius). |
| No. 6 — CBL subordination fee (Beckett) | $3,000,000 | The subordination fee CBL paid in connection with the Beckett transaction. | Beckett sale and fee records — NHC / Special Master / Paladin. |
| No. 7 — CWG income-tax escrow | $20,000,000 | The income-tax escrow funded at the CWG (Clanwilliam) closing. | Escrow and closing records — the North Carolina Insurance Companies / Rehabilitator. |
| No. 8 — ULICO real-estate transfer | $13,596,013 | The value of the ULICO real estate transferred. | Transfer and valuation records — ULICO / NHC. |
| No. 9 — Bermuda asset sales | $9,800,076 | Net proceeds of the Bermuda insurers' asset sales. | Sale and proceeds records — the Bermuda insurers / Rehabilitator. |

| | | | |
|---|---|---|---|
| No. 10 — Zero-coupon bond sale proceeds (PPNs) | $243,000,000 | Proceeds received on the pre-maturity sale of the zero-coupon principal-protection notes. | Bond-sale and proceeds records — the Rehabilitator / NHC. |

These offsets are exemplary, not exhaustive; the records required to document each are held by the third-party custodians identified above and are sought by the subpoenas duces tecum in Doc. 248 — directed to Michael Dinius and the Rehabilitator as custodian of the North Carolina Insurance Companies' records (Exs. A, D), the Special Master and NHC Holdings, LLC (Ex. B), Paladin Management Group (Ex. C), and the Bermuda joint provisional liquidators (Ex. E). Because the Government's Consolidated Position again disallows each of them, the subpoenas that would establish them remain necessary, and the defendant cannot be faulted for failing to document offsets he was prevented from obtaining. That even this narrowed, plainly relevant category has been refused confirms that the dispute was never about the breadth of the original subpoenas: a request this confined cannot be resisted as overbroad.

Simply put, if even the narrow requests the defendant made to preserve his appeal have been denied, the broader production he actually needs has obviously been denied as well. The refusal instead reveals the object of the resistance — to keep the valuation methodology and data off the docket and beyond the reach of the Fourth Circuit's review, and to secure a final restitution order, and the forfeiture keyed to it, on the same incomplete record on which the custodial sentence was already imposed. Reconsideration is warranted to prevent that result. That request satisfies the specificity and relevancy requirements of *United States v. Nixon*, 418 U.S. 683, 699–700 (1974), which in this post-conviction, sentencing posture are applied with less

rigor than at trial, because the documents go directly to the amount of loss the Court must find. *See United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981) (Rule 17(c) reaches "post-trial motions and sentencing"). The Court may also grant the same relief in a form that raises no overbreadth or third-party concern at all: by ordering the Special Master to place his valuation methodology and supporting data on the record, under the existing protective order and under seal if necessary. That relief rests on the Court's inherent supervisory authority over its own appointee and on Federal Rule of Civil Procedure 53, and so does not depend on Rule 17(c) at all — avoiding any question whether production is "returnable before trial," because the Special Master serves at the Court's direction and may be ordered to produce his work product directly.

**VII. The statutory deadline is not a basis to deny the material or to enter an inaccurate restitution order.**

Finally, the Order noted that the subpoenas were "untimely and likely to delay the current proceedings beyond the statutory deadline." The ninety-day period of 18 U.S.C. § 3664(d)(5) is directory, not jurisdictional; a court that passes it retains authority to order restitution — and here the Court has already entered a Preliminary Order of Restitution (Doc. 161), making clear that it will order restitution and leaving open only the amount — because the deadline protects victims from delay and does not license a rushed or inaccurate award or the denial of a defendant's right to be heard. *Dolan v. United States*, 560 U.S. 605 (2010) (missing the deadline does not deprive the court of the power to order restitution, at least where the court made clear before the deadline that it would order restitution and

left open only the amount); *see United States v. Vandeberg*, 201 F.3d 805 (6th Cir. 2000). Where the loss cannot be accurately determined on the present record, the statute's remedy is to develop the record — or, if the issues are too complex, to decline restitution — not to enter an award on undisclosed data to meet a directory date. 18 U.S.C. § 3663A(c)(3)(B). Producing the narrow valuation data the defense seeks, on the expedited basis the parties discussed and under the existing protective order, serves accuracy and need not delay the proceedings. In no event does a directory deadline justify either denying the defendant the material he needs or entering a restitution order — and the forfeiture keyed to it — that the record cannot support.

## VIII. The Government lacks standing to oppose subpoenas directed to third parties, and its opposition cannot support the denial.

Reconsideration is warranted for the further reason that the Order rested in part on an opposition the Government had no standing to make. The subpoenas are directed to third parties — the Special Master and the entities that hold the companies' books, records, and valuations — not to the Government. In conferral, the Government confirmed that it does not object to production from the Special Master but is opposed to the subpoenas directed to the other recipients; yet it asserts no privilege in, and no proprietary or other cognizable interest in, those third parties' records, and so lacks standing to oppose them. Ex. 1. The Fourth Circuit follows the settled rule that "[o]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." *In re Grand Jury Subpoena John Doe*, 584 F.3d 175, 184 n.14 (4th Cir. 2009) (quoting 9A Charles Alan

Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2459 (3d ed. 1998)); *accord Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). The rule applies in the criminal Rule 17(c) context and to the Government as a party-opponent: "[i]n many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents." *United States v. Beckford*, 964 F. Supp. 1010, 1023 (E.D. Va. 1997); *see United States v. Nachamie*, 91 F. Supp. 2d 552, 558–59 (S.D.N.Y. 2000) (Government lacked standing to quash Rule 17(c) subpoenas served on non-parties absent a legitimate independent interest); *see also United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007) (a party lacked standing to challenge subpoenas issued to nonparties absent a personal right to, or privilege in, the information sought). The Government asserts no privilege in, and no proprietary or other cognizable interest in, the companies' financial reports, board reports, valuation data, and offers — records belonging to the Special Master and the asset-holding entities — and the narrow exception for a genuine independent interest, such as protecting a vulnerable Government witness, has no application here. Its opposition (Doc. 261) was therefore not a proper basis on which to deny the subpoenas, and reconsideration is warranted so that the Rule 17(c) question is decided on the recipients' own responses and the *Nixon* factors, not on the objection of a party-opponent without standing to raise it.

## CONCLUSION

The Court should grant reconsideration of Doc. 304 and (1) order the Special Master to place on the record — under the protective order already governing this case, and under seal if necessary — the valuation methodology and underlying data for the Primary Restitution Assets and the Specified Affiliated Companies (the supporting detail he offered to provide in camera, Doc. 106 at 29), the method by which he calculated each offset, and the underlying financial reports, board reports, letters of intent, and offers to purchase on which his recommended restitution and the associated forfeiture depend; or, in the alternative, (2) order issuance of subpoenas duces tecum for that narrowed category; and in either case afford the defendant a reasonable opportunity to review and respond to that material before any final order of restitution is entered. If the Court declines to order production of this material in any form, the alternative is not to enter restitution on an incomplete and inaccurate record but to decline to order restitution, as 18 U.S.C. § 3663A(c)(3)(B) permits where the complex factual issues of cause and amount cannot be fairly resolved on the record before the Court.

Dated: August 18, 2026.

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

*/s/ Vivek Ramachandran*
Vivek Ramachandran
Dhamma Law PLLC
418 Broadway, Suite N
Albany, NY 12207
Email: vramachandran@dhammalaw.com
Admitted pro hac vice

*Counsel for Greg E. Lindberg*

## CONSULTATION STATEMENT

Pursuant to the Local Rules, counsel states that the relief requested has been raised with counsel for the United States and counsel for the Special Master, including in conferral on and before August 17, 2026. The Special Master opposes placing the requested valuation methodology and data for the Primary Restitution Assets and the Specified Affiliated Companies — including the valuation detail he offered to provide in camera or underseal, the method of calculating each offset, and the companies' financial reports, board reports, letters of intent, and offers to purchase — on the Court's record, and has offered only private production under a confidentiality agreement which is not practical for refrencing these documents in an appeal. The United States has advised that it does not object to the defendant obtaining relevant data from the Special Master under a protective order, but that it is opposed to the issuance of the subpoenas duces tecum to the recipients other than the Special Master.

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: August 18, 2026.

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*