# DEFENDANT'S EXHIBIT 2

## Special Master Reference and Receivership; Disaffiliation Records

Part One — The Special Master Reference and Its Conversion into a Receivership:

Tab A — Order Appointing Special Master (Doc. 56): intentionally left blank; the signed order is on the docket and is incorporated by reference.

Tab B — Plea Agreement (tracked-changes redline).

Tab C — Memorandum in Support of the Appointment of Special Master (tracked-changes redline).

Tab D — Special Master email correspondence.

Tab E — December 18, 2024 email of AUSA Daniel Ryan (transmitting the Government's redline).

Part Two — Disaffiliation Records and Government Interview Memoranda (filed under seal):

Tab F — Ares Management Proposal (Nov. 22, 2018).

Tab G — Oaktree Global Solution Presentation.

Tab H — FD-302 Interview Memorandum (Mar. 25, 2019).

Tab I — FD-302 Interview Memorandum (Dec. 19, 2018).

Tab J — FD-302 Interview Memorandum (June 14, 2019).

Tab K — Christa Miller Email (Jan. 6, 2019).

# TAB A

## Order Appointing Special Master (Doc. 56)

*[ THIS TAB INTENTIONALLY LEFT BLANK ]*

The Order Appointing Special Master (Doc. 56, entered January 23, 2025, and signed by the Honorable Max O. Cogburn, Jr.) is on the docket in this case and is incorporated here by reference. It is not reproduced within this Exhibit; citations are to the docket (Doc. 56).

# TAB B

## Plea Agreement (Tracked-Changes Redline)

Paragraph 9 — the special-master provision — appears as a tracked insertion attributed to AUSA Daniel Ryan. It provides only that the defendant "agrees to the appointment of a special master to identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court."

**COLOR KEY (tracked changes):**

RED = insertions/edits by AUSA Daniel Ryan (United States).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:23-cr-48 |
| | ) | |
| v. | ) | **PLEA AGREEMENT** |
| | ) | |
| GREG E. LINDBERG | ) | |
| | ) | |

Ryan, Daniel (USANCW)
Deleted: COMES

NOW COME the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina and Glenn S. Leon, Chief, Criminal Division, Fraud Section, and the defendant, Greg E. Lindberg, in person and through counsel, Brandon N. McCarthy, Ryan Meyer, James F. Wyatt, and Robert Adams Blake, Jr., and respectfully inform the Court that they have reached an agreement pursuant to Federal Rule of Criminal Procedure ("Rule") 11. References to the United States herein shall mean the United States Attorney for the Western District of North Carolina.

## I. Plea

1. The defendant agrees to enter a voluntary plea of guilty to Counts One and Thirteen as set forth in the Bill of Indictment and admits to being in fact guilty as charged in Counts One and Thirteen.

2. If the Court finds the defendant's plea to be voluntary and knowingly made and accepts the plea, the United States will move at the appropriate time to dismiss Counts Two through Twelve as to this defendant in the Bill of Indictment.

3. The defendant understands that each and every provision set forth below is a material term of the Plea Agreement. Each of the following constitutes a breach of the Plea Agreement: (a) the defendant's failure to fully comply with any provision of the Plea Agreement; (b) the defendant's attempt to withdraw the guilty plea; or (c) the defendant's violation of any federal, state or local law or any order of any federal court, including any condition of pre-trial or pre-sentence, or post-sentence release, after the execution of this agreement.

4. In addition to any other remedy available in law, the defendant's breach: (a) will relieve the United States of its obligations under the Plea Agreement, without relieving the defendant of the defendant's obligations under the Plea Agreement or permitting the defendant to withdraw the guilty plea; (b) may constitute the defendant's failure to accept responsibility under U.S.S.G. § 3E1.1; and (c) will permit the United States to proceed on any dismissed, pending, superseding or additional charges and, if applicable, any Information pursuant to 21 U.S.C. § 851.

## II. Sentence

5. The defendant is aware that the statutory minimum and maximum sentences for each count are as follows:

**Count One: Conspiracy to Commit Offenses Against the United States (18 U.S.C. § 1033 and 1343 and 15 U.S.C. § 80b-6 and 80b-17)**, a violation of 18 U.S.C. § 371: a maximum term of five years' imprisonment; a maximum fine of $250,000 or twice the pecuniary gain or loss, whichever is greater; and no more than three years' supervised release.

**Count Thirteen: Conspiracy to Commit Money Laundering in Violation of 18 U.S.C. § 1957**, a violation of 18 U.S.C. § 1956(h): a maximum term of 10 years' imprisonment; a maximum fine of $250,000 or twice the value of the criminally derived property involved, whichever is greater; and no more than three years' supervised release.

6. The defendant understands that a violation of supervised release may subject the defendant to an additional period of incarceration.

7. The defendant is aware that the Court: (a) will consider the advisory *United States Sentencing Guidelines (U.S.S.G.)* in determining the sentence; (b) has not yet determined the sentence, and any estimate of the likely sentence is a prediction rather than a promise; (c) has the final discretion to impose any sentence up to the statutory maximum for each count; and (d) is not bound by recommendations or agreements by the United States. Knowing this, the defendant understands that the defendant may not withdraw the plea as a result of the sentence imposed.

8. Pursuant to Rule 11(c)(1)(B), the parties agree that they will jointly recommend that the Court make the following findings and conclusions as to the U.S.S.G.:

a. The amount of loss that was known to or reasonably foreseeable by the defendant exceeded $550,000,000.

The defendant understands that "loss" under U.S.S.G. §§2B1.1 may be different from, greater, or lesser than restitution under 18 U.S.C. § 3556.

b. The following apply to the offense(s) to which defendant is pleading guilty:

**Base Offense Level [U.S.S.G. §§2X1.1(a), 2S1.1 & 2B1.1(a)(2)]: 6**

Specific Offense Characteristics:

Loss Exceeded $550,000,000 [U.S.S.G. §2B1.1(b)(1)(P)] +30

Substantial Financial Hardship to At Least 25 Victims [U.S.S.G. §2B1.1(b)(2)(C)] +6

Substantial Part of Fraudulent Scheme Committed from Outside the U.S. & Sophisticated Means [U.S.S.G. §2B1.1(b)(10)(B) & (C)] +2

Jeopardy to Financial Institution [U.S.S.G. §2B1.1(b)(17)(B)(i) & (C)] +2

Violation of Securities Law by Investment Advisor Associate [U.S.S.G. §2B1.1(b)(20)(A)(iii)] +4

Conviction under 18 U.S.C. § 1957 [U.S.S.G. §2S1.1(a)(1) & (b)(2)(A)] +1

Enhancements:

Leader/Organizer Aggravating Role [U.S.S.G. §3B1.1(a)] +4

c. Having fully considered the factors set forth in 18 U.S.C. § 3553(a), the parties agree that if "the applicable guideline range" (U.S.S.G. §5C1.1) determined by the district court at sentencing includes the guidelines recommendations set forth above in Paragraph 8(b), the appropriate sentence will be below that guideline range and that a sentence below that range is sufficient but not greater than necessary.

d. If by no later than 30 days after the issuance of the initial draft presentence report issued by the United States Probation Office in this matter, the defendant takes all necessary and reasonable steps in Defendant's power to secure assets sufficient to pay full restitution pursuant to Paragraph 10(a) below, in the exclusive possession and control of one or more approved third parties, as determined by the United States in its sole discretion:

(i) The United States agrees to recommend that the sentence in the above-captioned case run concurrently with any sentence imposed on the defendant in Case No. 5:19-cr-22 and that the sentencing in the above-captioned case be held at the same time as, or in a consolidated proceeding with, the sentencing in Case No. 5:19-cr-22; and

(ii) If the above-captioned case is sentenced at the same time as, or in a consolidating proceeding with, Case No. 5:19-cr-22, the United States will not object if the Court recommends that the Bureau of Prisons apply credit for any time served to the consolidated sentence.

e. The United States agrees that if the defendant is found by the Court to have accepted responsibility under U.S.S.G. §3E1.1(a), the United States will acknowledge that defendant's entry of a guilty plea is timely for purposes of U.S.S.G. §3E1.1(b), if that section applies to defendant.

**Ryan, Daniel (USANCW)**
**Deleted:** sufficient to pay full restitution pursuant to Paragraph 9(a) below

**Ryan, Daniel (USANCW)**
**Deleted:** (ii) The United States agrees to recommend that the Court sentence the defendant to 12 years imprisonment; and
(iii) The defendant acknowledges that no further variance is warranted based upon the payment of restitution and agrees not to request such a variance.

f. The parties agree that either party may argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level.

g. Except as otherwise set forth herein, the parties agree that either party may seek a departure or variance from the "applicable guideline range" (U.S.S.G. §5C1.1) determined by the district court at sentencing, if such departure or variance is permitted by law.

h. The United States will inform the Court and the probation office of all facts pertinent to the sentencing process and will present any evidence requested by the Court.

9. The defendant agrees to the appointment of a special master to identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court.

10. The defendant agrees to the following with respect to monetary penalties, assets, and financial disclosures:

a. To entry of an order for monetary penalties due and payable immediately, such penalties including full restitution, regardless of the resulting loss amount, to all persons directly or indirectly harmed by the defendant's criminal conduct. This includes Defendant's crime of conviction, all "relevant conduct," as defined by U.S.S.G. §1B1.3, and all conduct pertaining to any dismissed counts or uncharged conduct, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Among other things, Defendant agrees to pay full restitution to the following insurance companies and their impacted policyholders for the conduct charged in the Bill of Indictment: Southland National Insurance Company; Southland National Reinsurance Corporation; Bankers Life Insurance Company; Colorado Bankers Life Insurance Company; Universal Life Insurance Company of Puerto Rico; PB Life and Annuity Co., Ltd.; Omnia Ltd.; Northstar Financial Services (Bermuda) Ltd.; PB Investment Holdings Ltd.; and Universal Life Insurance Company. Further, Defendant agrees that, should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

b. To entry of a money judgment in the amount specified in the charging document or Bill of Particulars; to a Magistrate Judge conducting forfeiture proceedings; to waive any rights to notice of forfeiture and to pronouncement of forfeiture at sentencing; and to abandonment of the defendant's interests, if any, in any seized assets not forfeited.

c. To truthfully complete under penalty of perjury, within thirty days of the filing of this Plea Agreement, a financial statement provided by the United States Attorney's Office and to update the statement within seven days of any material change, and to make full disclosure of all current and projected assets to the United States Probation

**Ryan, Daniel (USANCW)**
**Deleted:** the

**Ryan, Daniel (USANCW)**
**Deleted:** b. To forfeit, via an administrative or judicial proceeding, all assets listed in the charging document and, if applicable, Bill of Particulars, or seized during this investigation or a related investigation; to withdraw any claims and petitions for such assets; to

**Ryan, Daniel (USANCW)**
**Deleted:** execution

Office before sentencing and again before termination of supervised release or probation, such disclosures to be shared with the United States Attorney's Office.

d. That monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613; that monetary penalties and the forfeiture money judgment will be submitted to the Treasury Offset Program so that payments to the defendant may be applied to federal debts; and to satisfaction of the 21 U.S.C. § 853(p) factors so that the forfeiture money judgment may be satisfied via forfeiture of substitute property.

e. To participation in the Inmate Financial Responsibility Program and to waiver of any challenge relating to defendant's participation in the Program.

**III. Procedure**

11. The defendant agrees that a federal Magistrate Judge may conduct the hearing required by Rule 11.

12. The defendant stipulates that there is a factual basis, as required by Rule 11(b)(3), for the plea of guilty. The defendant further stipulates that the defendant has read and understood the Factual Basis filed with this Plea Agreement pursuant to Local Criminal Rule 11.2 and that such Factual Basis may be used by the Court, the United States Probation Office, and the United States without objection by the defendant for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a).

13. The defendant also agrees that the Factual Basis filed with the Plea Agreement does not necessarily represent all conduct relevant to sentencing; the United States may submit to the United States Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4; and the United States may present to the Court additional relevant facts prior to or at sentencing.

**IV. Waivers**

14. The defendant is aware that the law provides certain limited rights to withdraw a plea of guilty, has discussed these rights with defense counsel, and knowingly and voluntarily waives any right to withdraw the plea once the Magistrate Judge has accepted it.

15. The defendant acknowledges that Rule 11(f) and Fed. R. of Evid. 408 and 410 are rules that ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions. The defendant knowingly and voluntarily waives these rights and agrees that any statements made in the course of the defendant's guilty plea or this Plea Agreement (in part or in its entirety, at the sole discretion of the United States) and the Factual Basis will be admissible against the defendant for any purpose in any criminal or civil proceeding if the defendant fails to enter, or attempts to withdraw, the defendant's guilty plea, or in any post-conviction proceeding challenging the knowing or voluntary nature of the guilty plea.

16. The defendant agrees that by pleading guilty, the defendant is knowingly and voluntarily waiving the right: (a) to be tried by a jury; (b) to be assisted by an attorney at trial; (c) to confront and cross-examine witnesses; and (d) not to be compelled to incriminate him or herself.

17. The defendant has discussed with defense counsel: (1) defendant's rights pursuant to 18 U.S.C. § 3742, 28 U.S.C. § 2255, and similar authorities to contest a conviction and/or sentence through an appeal or post-conviction action after entering into a Plea Agreement; (b) whether there are potential issues relevant to an appeal or post-conviction action; and (c) the possible impact of any such issue on the desirability of entering into this Plea Agreement.

18. **The defendant, in exchange for the concessions made by the United States in this Plea Agreement, waives all rights to contest the conviction and sentence in this case and in Case No. 5:19-cr-22 in any appeal or post-conviction action.** Claims of (1) ineffective assistance of counsel and (2) prosecutorial misconduct, and those claims only, are exempt from the waiver. This waiver precludes the defendant from challenging his conviction or sentence on the basis of any other claim, including but not limited to any claim that the statute(s) to which the defendant is pleading guilty is or are unconstitutional and any claim that the admitted conduct does not fall within the scope of the statute(s).

19. The defendant agrees that the United States preserves all its rights and duties as set forth in 18 U.S.C. § 3742(b). Should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the United States agrees that it will not assert this waiver as a bar to the defendant's filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2). However, if the defendant files such a motion, the United States reserves the right to oppose the motion on any other grounds. and reserves the right to assert this waiver as a bar to an appeal from the district court's decision regarding the motion.

20. The defendant knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or to receive from any department or agency any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

## V. Effects of Plea

21. The defendant understands that upon acceptance of the guilty plea, a judicial officer shall order the defendant to be detained, unless the judicial officer finds that the defendant satisfies one of the statutory exceptions to the detention presumption, permitting the defendant's release.

22. The defendant recognizes that pleading guilty may affect the defendant's immigration status if the defendant is not a citizen of the United States. The defendant understands that no one can predict with certainty the effect of the defendant's conviction(s) on the defendant's immigration status. The defendant nevertheless seeks to plead guilty, even if the consequence is the defendant's automatic removal from the United States.

## VII. Conclusion

23. This Plea Agreement is effective and binding once signed by the defendant, the defendant's attorney, and an attorney for the United States. The defendant agrees to entry of this Plea Agreement at the date and time scheduled by the Court.

24. There are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties.

SO AGREED:

________________________________ DATED: _______
DANIEL S. RYAN, Assistant United States Attorney

________________________________ DATED: _______
TAYLOR G. STOUT, Assistant United States Attorney

________________________________ DATED: _______
LYNDIE M. FREEMAN, Trial Attorney, Fraud Section
U.S. Department of Justice Criminal Division

________________________________ DATED: _______
BRANDON N. MCCARTHY, Attorney for Defendant

________________________________ DATED: _______
JAMES F. WYATT, Attorney for Defendant

________________________________ DATED: _______
ROBERT ADAMS BLAKE, JR., Attorney for Defendant

________________________________ DATED: _______
Ryan Meyer, Attorney for Defendant

________________________________ DATED: _______
GREG E. LINDBERG, Defendant

# TAB C

## Memorandum in Support of the Appointment of Special Master (Tracked-Changes Redline)

The red (Ryan/Government) edit directing that the officer "assume Defendant's and/or Global Growth's authority … to (1) appoint trustees … and (2) appoint directors …" is the edit that converted the office into a receivership. Only the red edits are the Government's.

**COLOR KEY (tracked changes):**

RED = insertions/edits by AUSA Daniel Ryan (United States).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:23-CR-48-MOC |
| | ) | |
| v. | ) | |
| | ) | |
| GREG E. LINDBERG | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR APPOINTMENT OF SPECIAL MASTER**

NOW COME the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, Glenn S. Leon, Chief, Criminal Division, Fraud Section, and Greg E. Lindberg, by and through counsel, and submit this memorandum of law in support of the Joint Motion for Appointment of Special Master (Doc. No. 54) filed on December 5, 2024 (the "Joint Motion"). A proposed order will be submitted herewith.

1. As set forth in the Joint Motion, the parties recommend that the Court appoint Joseph Grier[1] of Grier Wright Martinez PA as the special master pursuant to 18 U.S.C. § 3664(d)(6). The parties further recommend that the Court appoint Scott Avila[2] of Paladin Management as the special master's financial advisor. The financial advisor would assist the special master in the performance of all tasks related to this Order.

2. Subject to paragraphs 4 and 5 below, if appointed and empowered to act in this case, a special master should perform the following necessary tasks:

[1] A Special Master Declaration outlining Mr. Grier's qualifications and standard rates is attached as Exhibit B.
[2] A Financial Advisor Declaration outlining Mr. Avila's qualifications and standard rates is attached as Exhibit C.

a. verify and quantify the losses suffered by each victim and any amounts already received by each victim to compensate for such losses;[3]

b. identify all assets available for liquidation and/or repatriation for the benefit of the victims and, to the extent those assets are not readily convertible to cash, determine a reasonable estimated value for those assets;

c. select an appropriate method and timetable to liquidate and/or repatriate any available assets for the benefit of the;

d. oversee and help accomplish the liquidation and/or repatriation of any available assets for the benefit of the victims before June 30, 2029;

e. clear title to all assets for transfer to bona-fide buyers;

f. fashion a proposed restitution order;

g. apportion any available funds among the victims in accordance with the Court's restitution order and, if necessary, propose an apportionment methodology to be applied to future restitution payments received;

h. receive and distribute restitution payments to victims in accordance with the Court's restitution order;

i. cooperate and coordinate with any other receivers previously appointed over assets available for the benefit of the victims, such cooperation and coordination to include seeking modifications, if necessary, of any existing restraining orders and/or injunctions;

j. retain a law firm, including his/her own, and/or other professionals to assist the special master in carrying out his/her duties;

k. provide periodic reports to the Court about the status of Defendant's restitution obligations;

l. assume Defendant's and/or Global Growth's authority whether held directly or indirectly, if any, to: (1) appoint trustees for all trusts related to the Primary Restitution Assets; and (2) appoint directors to all boards of directors of all companies related to the Primary Restitution Assets; and

3 Any amounts recovered by the victims prior to sentencing for the same loss should be taken into account by the Court when determining Defendant's restitution obligations. *See* 18 U.S.C. § 3664(j)(2). The victims shall not receive more in restitution than they are entitled from their pre-existing liabilities.

**Ryan, Daniel (USANCW)**
**Deleted:** ; which shall be reduced by the amounts already paid by the Defendant or transferred by the Defendant in this or any related proceeding;

**Ryan, Daniel (USANCW)**
"all assets" covers all of these without complicating things.

**Ryan, Daniel (USANCW)**
**Deleted:** , including all assets and reserves currently held by the North Carolina Insurance Companies, Bermuda Insurance Companies, and ULICO,

**Ryan, Daniel (USANCW)**
**Deleted:** victimsthe Primary Restitution Assets while retaining as much of the equity growth and asset appreciation as possible in order to maximize the value of the assets before June 30,2029

**Ryan, Daniel (USANCW)**
**Deleted:** <#>taking any measures necessary that the Special Masters identifies to maintain or improve the financial performance of the Primary Restitution Assets, including by way of reducing their cost of capital, improving their access to capital markets, improving transparency, improving management's accountability for financial results, improving corporate governance, improving regulatory compliance, and improving liquidity of their debt and preferred equity all by way of a public stock offering, public company merger, or SPAC merger of the Primary Restitution Assets in a single or multiple transactions; ¶

**Ryan, Daniel (USANCW)**
**Deleted:** and

**Ryan, Daniel (USANCW)**
**Deleted:** .

**Ryan, Daniel (USANCW)**
**Deleted:** be

**Ryan, Daniel (USANCW)**
**Deleted:** ed

**Ryan, Daniel (USANCW)**
**Deleted:** to immediate effect as Trustee

**Ryan, Daniel (USANCW)**
**Deleted:** of

**Ryan, Daniel (USANCW)**
**Deleted:** , as well as be

**Ryan, Daniel (USANCW)**
**Deleted:** ed

**Ryan, Daniel (USANCW)**
**Deleted:** through payoffs, transfer of assets, or asset sale approvals (as more fully described in the proposed Special Master Order filed herewith) effected by, or on behalf of, Defendant

**Ryan, Daniel (USANCW)** December 17, 2024
**Deleted:** loss amount and/or

m. pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court.[4]

3. To assist in meeting his restitution obligations, Defendant has agreed to take all necessary and reasonable steps in his power to secure in the exclusive possession and control of the special master, or one or more third parties selected by the special master, within 21 days of the entry of the Order requested herein, all of Defendant's, Global Growth Holdings, Inc.'s, and Global Growth Holdings, LLC's rights and interests, whether held directly or indirectly, in the following assets owned, controlled, and/or associated with Defendant and/or his entities or in which Defendant and/or his entities have an economic or controlling interest (collectively referred to as the "Primary Restitution Assets"):

a. AAPC Holdings, LLC and any related entities or trusts; and

b. New Hold Co. ("NHC") and the Specified Affiliated Companies, as defined in the June 27, 2019 Memorandum of Understanding (attached hereto as Exhibit A) and any related entities or trusts that include Specified Affiliated Companies.

4. The special master shall regularly update the Parties throughout the diligence and/or sales process concerning any of the Primary Restitution Assets and should consult with the Parties to the extent the special master deems it helpful in fulfilling his duties under this Order. .

5. In accomplishing the tasks enumerated above, the special master shall attempt to meet Defendant's restitution obligations using all or part of the Primary Restitution Assets.

6. If the special master determines that the Primary Restitution Assets are or will likely be sufficient to fully satisfy Defendant's restitution obligations, he/she should not seek to liquidate additional assets owned, controlled, and/or associated with Defendant and/or his entities or in

4 Defendant's counsel may submit requests for payment of past and present fees and expenses on this and related matters to the Court for approval.

**Ryan, Daniel (USANCW)**
**Deleted:** .

**Ryan, Daniel (USANCW)**
**Deleted:** 1430

**Ryan, Daniel (USANCW)**
**Deleted:**

**Unknown**
**Deleted:** ).

**Ryan, Daniel (USANCW)**
**Deleted:** <#>Once in possession of the Primary Restitution Assets, the Special Master shall at all times act as a fiduciary for the Primary Restitution Assets while maximizing their value in order to fully satisfy Lindberg's restitution obligations as ordered by the Court on or before June 30, 2029, including by way of retaining as much of the equity growth and asset appreciation as possible of the Primary Restitution Assets between now and June 30, 2029. ¶
In order to maximize the value of the Primary Restitution Assets,

**Ryan, Daniel (USANCW)**
**Deleted:** <#>t

**Ryan, Daniel (USANCW)**
**Deleted:** <#>S

**Ryan, Daniel (USANCW)**
**Deleted:** <#>M

**Ryan, Daniel (USANCW)**
**Deleted:** <#>consult

**Ryan, Daniel (USANCW)**
**Deleted:** <#> with

**Ryan, Daniel (USANCW)**
**Deleted:** <#> The Special Master shall provide regular updates to the Parties regarding the valuation, marketing, and sale of the Primary Restitution Assets on at least a weekly basis from the issuance of this Order

**Unknown**
**Deleted:** should

**Unknown**
**Deleted:** .

**Ryan, Daniel (USANCW)**
**Deleted:** including by way of maximizing the value of the Primary Restitution Assets on or before June 30 2029 and including by way of retaining as much of the equity growth and asset appreciation as possible of the Primary Restitution Assets between now and June 30 2029.

which Defendant and/or his entities have an economic interest (the "Secondary Restitution Assets") until and unless he/she determines, and so notifies the Court, that the Primary Restitution Assets are not likely to be sufficient to fully satisfy Defendant's restitution obligations.

7. Defendant agrees to cooperate with the special master in carrying out the duties and responsibilities of the special master and to take all necessary steps identified by the special master to assist the special master in carrying out his/her duties

8. Defendant also agrees to refrain from taking and/or cease taking any actions identified by the special master as interfering with the special master carrying out his/her duties. If Defendant fails to comply with a directive of the special master within 14 days of the special master advising Defendant, through Defendant's counsel, of such directive in writing, the special master may take any actions and/or cease taking any actions for, or on behalf of, Defendant to enable the special master to carry out his/her duties.

9. Any special master appointed by this Court should give due consideration to the Government's efforts and the efforts of others appointed by state or federal courts in the various lawsuits involving Defendant so as not to duplicate efforts and to minimize expenses. Duplicative work can and should be avoided.

10. Courts have approved of appointing special masters and have given them responsibilities similar to those being requested in the instant case. *See, e.g.*, *United States v. Vaughan*, No. 3:01CR11, 2008 U.S. Dist. LEXIS 98817, at *1 (W.D.N.C. Dec. 3, 2008) (Thornburg, J.) (special master appointed in case with losses totaling $33 million involving complicated, offshore, and/or inadequately documented financial transactions to assist in noticing potential victims, setting percentages for their losses, and ultimately distributing $3 million to more than 500 victims); *United States v. Olivares*, No. 3:13-CR-335, 2014 U.S. Dist. LEXIS 76743, at

**Unknown**
**Deleted:** .

**Ryan, Daniel (USANCW)**
**Deleted:** after taking all actions necessary to maximize the value of the Primary Restitution Assets before June 30, 2029

**Unknown**
**Deleted:** .

**Ryan, Daniel (USANCW)**
**Deleted:** ,

**Unknown**
**Deleted:** involved

**Unknown**
**Deleted:** civil

*2 (W.D.N.C. June 5, 2014) (Cogburn, J.) (special master, who was receiver in parallel civil case brought by U.S. Securities and Exchange Commission, appointed in $850 million Ponzi scheme with 900,000 potential victims in over 150 countries). Here, the requested relief is administratively reasonable; will further the interests of justice as to victim rights; will promote cooperative efforts between the parties, the Court, and others involved or interested; and will increase efficiency in the collection and timely distribution of restitution. Accordingly, for the aforementioned reasons, a court-appointed special master would be best suited to devise a plan and effectuate the restitution order in the best interests of administrative efficiency, justice, and the victims.

11. The special master should have the power to: (a) obtain such order(s) from the Court that he/she deems prudent or necessary to effectuate the payment of Defendant's restitution obligations; and (b) make a motion or application to the Court regarding instruction or clarification in connection with his/her powers in this matter.

12. All income tax reporting and payments, whether for periods prior to or during the terms of the Court's Order, should remain the obligation of Defendant. The special master should not be required to report any income generated by the Primary Restitution Assets (including interest earned), or to pay any income taxes due thereon, nor shall the special master bear liability for the failure of Defendant to report said income to taxing authorities or pay the taxes associated with such income.

13. The special master would be acting solely in his/her capacity as special master, and the special master, the financial advisor, and any other professionals retained by the special master should have no personal liability for claims against Defendant, individually or collectively. With respect to any insurance coverage, the special master, and other parties with insurable interests, should be named as additional insureds on the policies for the period that the special master shall

be appointed. No person should be able to pursue any claim against the special master, the financial advisor, or any other professionals retained by the special master for any action or omission taken or made in connection with the special master's duties or powers without first seeking leave of the Court. Neither the special master, the financial advisor, nor any other professionals retained by the special master in connection with this matter should be liable to any person for any action or omission taken or made in good faith.

14. The special master should prepare quarterly interim statements that, among other things, reflect the fees and expenses of the special master, his/her financial advisors, and his/her retained counsel (if any) incurred for said period in carrying out the special master's duties, as well as those of any other professionals the special master deems appropriate (each, an "Interim Statement"). Such Interim Statement should be submitted to the Court for its approval and confirmation, in the form of either a noticed interim request for fees or a special master's final account and report. Upon the Court's approval of each Interim Statement, the special master shall pay such approved fees and expenses from the assets administered by the special master including, to the extent authorized by otherwise applicable law, from cash balances held within trusts and other subsidiaries that hold the Primary Restitution Assets.

15. The parties and/or the special master shall be authorized to make motion or application to this Court to expand or narrow the scope of Primary Restitution Assets, which shall be heard upon notice and hearing.

16. None of the authority vested in the special master by the Court is intended to compel or authorize the special master to violate any other federal or state court orders.

Respectfully submitted this 6th day of December, 2024.

| | |
|---|---|
| DENA J. KING<br>UNITED STATES ATTORNEY | GLENN S. LEON<br>CHIEF |

Ryan, Daniel (USANCW)
Deleted: ing

Ryan, Daniel (USANCW)
Deleted: ),

Ryan, Daniel (USANCW)
Deleted: e

Ryan, Daniel (USANCW)
Deleted: past and present fees and expenses of Defendant's counsel on this and related matters and

Unknown
Deleted: should

CRIMINAL DIVISION, FRAUD SECTION

**/s/ Daniel Ryan**
Assistant United States Attorney
United States Attorney's Office
IL Bar 6279737
227 West Trade Street, Suite 1650
Charlotte, N.C. 28202
Telephone: (704) 338-6222
Fax: (704) 344-6629
E-mail: Daniel.ryan@usdoj.gov

***/s/ Lyndie M. Freeman***
Lyndie M. Freeman
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
Georgia Bar No. 119499
1400 New York Avenue
Washington, DC 20005
Telephone: 202-616-5315
Email: lyndie.freeman@usdoj.gov

*/s/ Ryan J. Meyer*
Ryan J. Meyer
ryan.meyer@katten.com
Admitted *Pro Hac Vice*

Brandon N. McCarthy
brandon.mccarthy@katten.com
Admitted *Pro Hac Vice*

**KATTEN MUCHIN ROSENMAN LLP**
2121 N. Pearl St., Suite 1100
Dallas, Texas 75201
Telephone: (214) 765-3680
Facsimile: (214) 765-3200

James F. Wyatt, III
NC State Bar No.: 13766
Robert A. Blake, Jr.
NC State Bar No.: 20858

NC State Bar No.: 13766
Robert A. Blake, Jr.
NC State Bar No.: 20858

**WYATT & BLAKE, LLP**
402 W. Trade Street, Suite 101
Charlotte, North Carolina 28202
Telephone: (704) 331-0767
Facsimile: (704) 331-0773
jwyatt@wyattlaw.net
rblake@wyattlaw.net

*Attorneys for Defendant Greg E. Lindberg*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certify that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: December 6, 2024

/s/ Daniel Ryan
*Assistant United States Attorney*

# TAB D

## Special Master Email Correspondence

This tab reproduces the portions of the parties' special-master email correspondence (Nov. 25 – Dec. 2, 2024) reflecting the Government's proposal and recruitment of the special master and the defense's inability to communicate with its client. Later portions of the thread that became Rule 408 communications are not reproduced.

# Fwd: FW: US v. Lindber -- Special Master

[redacted]

**From:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Sent:** Monday, December 2, 2024 4:23 PM
**To:** Meyer, Ryan J. <ryan.meyer@katten.com>; McCarthy, Brandon N. <brandon.mccarthy@katten.com>; James Wyatt <JWyatt@wyattlaw.net>; Robert Blake <RBlake@wyattlaw.net>
**Cc:** Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>; Stout, Taylor (CRM) <Taylor.Stout2@usdoj.gov>; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov>
**Subject:** RE: US v. Lindberg -- Special Master

*EXTERNAL EMAIL – EXERCISE CAUTION*

Hi Ryan,

I hope you had a nice Thanksgiving.  Can you please let us know where you guys are with the special master motion?  I understand that Mr. Lindberg has communication access now, and was able to have a video call with ULICO representatives today.

Thanks,

Dan

Daniel Ryan
[redacted]

**From:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Sent:** Monday, November 25, 2024 4:44 PM
**To:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>; McCarthy, Brandon N. <brandon.mccarthy@katten.com>; James Wyatt <JWyatt@wyattlaw.net>; Robert Blake <RBlake@wyattlaw.net>
**Cc:** Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>; Stout, Taylor (CRM) <Taylor.Stout2@usdoj.gov>; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov>
**Subject:** [EXTERNAL] RE: US v. Lindberg -- Special Master

Dan,

As I emailed you over a week ago and as we discussed further last week, our ability to get you a revised draft of the Motion and Order has been severely hampered by our inability to effectively or reliably communicate with our client.  I appreciate you getting us connected with the Marshals because it looks like we should be having regular communication starting tomorrow, but that has been the delay.  Hopefully, then, we'll be able to get you a revised version before the holiday.

With respect to the Special Master selection, Rob and James (and several of our Charlotte litigators) have mentioned Joe very favorably.  As we discussed, given the multiplicity of counsel that may need to be hired to execute on everything needed in this role, we had hoped to cut that down by one by just designating Paladin as Special Master.  That said, we'll need to talk to our client, but I think a package deal (as you had suggested after the call with Scott Avila) could work with Joe Grier as the Special Master and Scott Avila as the designated restructuring advisor. Again, we'll try to confirm for you before the holiday.

Thanks,

Ryan

**Ryan J. Meyer**
Partner

**Katten**

---

**From:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Sent:** Monday, November 25, 2024 2:10 PM
**To:** Meyer, Ryan J. <ryan.meyer@katten.com>; McCarthy, Brandon N. <brandon.mccarthy@katten.com>; James Wyatt <JWyatt@wyattlaw.net>; Robert Blake <RBlake@wyattlaw.net>
**Cc:** Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>; Stout, Taylor (CRM) <Taylor.Stout2@usdoj.gov>; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov>
**Subject:** FW: US v. Lindberg -- Special Master

*EXTERNAL EMAIL – EXERCISE CAUTION*

Gentlemen,

As we continue to hash out this special master motion, we would like you to consider this Charlotte-based firm for the role as special master. I believe James and Rob are familiar with them. To the extent that Paladin's skills are necessary, we would not be opposed to them working in conjunction. We are happy to set up a call at your convenience.

Also, can you please let us know the status of the motion?

Thanks,

Dan

Daniel Ryan

---

**From:** Michael Martinez <mmartinez@grierlaw.com>
**Sent:** Monday, November 25, 2024 2:24 PM
**To:** Cotten Wright <cwright@grierlaw.com>; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov>
**Cc:** Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>; Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>; Stout, Taylor (USANCW) <Taylor.Stout@usdoj.gov>; Joe Grier <jgrier@grierlaw.com>
**Subject:** [EXTERNAL] RE: US v. Lindberg

Ben:

Thanks again for contacting us about this potential assignment, and I very much enjoyed hearing about this matter from you, Dan, and Lyndie earlier today. Attached here is a two-page summary of matters we've handled in the past decade or so that I think reflects our most relevant experience to this particular special master assignment. Please forward to this summary to the lawyers at Katten or otherwise use this as you deem appropriate.

Let me know what follow-up questions you may have. Also happy to participate on a call with the Katten lawyers in the coming days if that would be helpful.

Michael L. Martinez

Grier Wright Martinez PA

521 E. Morehead St., Ste. 440, Charlotte, NC 28202

============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.
============================================================
NOTIFICATION: Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).
============================================================

# TAB E

## December 18, 2024 Email of AUSA Daniel Ryan

Transmitting the Government's redline of the proposed order. In it, the prosecutor states that Mr. Lindberg was “supposed to be giving up ‘exclusive possession and control’ of these assets … in order to get the benefit of the plea agreement,” that the Government “will not agree to any such efforts,” and that it would file its memorandum and proposed order with “competing memos and proposed orders” if the defense did not agree.

[redacted] Vivek [redacted]

# FW: Special Master

**McCarth Brandon N.** <brandon.mccarth katten.com> Tue Au 18 2026 at 3:47 PM

[redacted]

**Brandon N. McCarthy**

Partner

**Katten**

Katten Muchin Rosenman LLP

[redacted]

brandon.mccarthy@katten.com | katten.com

Bio | vCard

**From:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Sent:** Wednesday, December 18, 2024 11:20 AM
**To:** McCarthy, Brandon N. <brandon.mccarthy@katten.com>; Meyer, Ryan J. <ryan.meyer@katten.com>; James Wyatt <JWyatt@wyattlaw.net>; Robert Blake <RBlake@wyattlaw.net>
**Cc:** Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>; Stout, Taylor (CRM) <Taylor.Stout2@usdoj.gov>
**Subject:** Special Master

*EXTERNAL EMAIL – EXERCISE CAUTION*

Ryan,

Thanks for draft. We have discussed it with Mike and Joe and tried to incporate their thoughts in this draft. Here is a redline and a clean version of our changes, and below are some of our reasons for the changes. First and foremost,

many of the proposed changes since our last draft appear to be attempts by Mr. Lindberg to retain control over the assets or to otherwise limit the Special Master's authority over those assets. But Mr. Lindberg is supposed to be giving up "exclusive possession and control" of these assets to the government's satisfaction in order to get the benefit of the plea agreement. We will not agree to any such efforts, and we will not give Mr. Lindberg credit for doing anything less than giving up "exclusive possession and control." To state the obvious, requiring the special master to handle the assets in any particular manner or on any particular timeline, or requiring him to "consult" with the parties on a weekly basis to maximize value does not accomplish this. The Special Master does not owe a duty to Mr. Lindberg or to the assets, but rather to the Court and to victims. If the victims' interests conflict with Mr. Lindberg's, the victims' interests should prevail at this point.

We continue to hear that Mr. Lindberg is actively trying to dissipate assets while in custody, including by hiring new lawyers to represent him on civil matters using money in certain Specified Affiliated Companies in violation of the state TRO. In addition, we are hearing that Mr. Lindberg is actively trying to reach deals regarding the sale of AAPC, some of which would include Mr. Lindberg retaining an ownership interest in the company. We have attempted to work with Mr. Lindberg in good faith for well over a month to get the Special Master in place, but we cannot wait any longer. We will be filing a memo in support of the special master and a proposed order by the end of the week. We would prefer that it be a joint memo and proposed order. But, if we cannot get on the same page, we have no issue with filing competing memos and proposed orders.

Some additional concerns we tried to address in this draft:

- ULICO's assets should not be considered restitution assets and it is unknown to the government which of the Bermuda Insurance Companies or North Carolina Company's assets should be included, if any. That said, we would consider changing the definition of Primary Restitution Assets to include Mr. Lindberg's interests in GBIG Holdings, Inc. and the relevant Bermudian holding companies.
- While we have no objection to the Special Master trying to complete his work by June 2029, much of the language suggests that the Special Master should delay liquidating assets until that date if somebody could argue that waiting that long would maximize their value. But maximizing long-term value cannot be the only consideration for the Special Master. Some victims, especially ULICO, are not in a position to wait 5 years.
- It is unclear to the government exactly what authority Mr. Lindberg has to appoint board members and/or trustees; we don't want the federal court ordering something that cannot/should not be done.
- It is also unclear that even if Mr. Lindberg has authority to appoint Special Master as board member or trustee, that the Special Master is the right person to actually serve in that position. We would rather Mr. Lindberg give whatever authority he has to the Special Master to exercise.
- In FN3, "loss amount" is a USSG issue, not a restitution issue. We're not going to agree to that his USSG "loss amount" should be reduced by payments he makes post indictment. Nothing in 18 USC 3664(j)(2) suggests otherwise.
- We don't want to get into a situation where Katten is fighting with the Special Master over whether it is appropriate to pay certain legal fees, or where third parties are asking the Court to try to claw back any such fees paid by the Special Master. We've tried to fix that as we understand your concerns.

Please let me know by Friday morning if you are ok with these drafts, and we can file them as joint filings. If not, we will file something solely on behalf of the United States and you can file your own version.

Dan

---

**From:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Sent:** Tuesday, December 17, 2024 11:30 AM

**To:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Cc:** McCarthy, Brandon N. <brandon.mccarthy@katten.com>; Stout, Taylor (CRM) <Taylor.Stout2@usdoj.gov>; Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>
**Subject:** [EXTERNAL] RE: Missed Call

Of course—that is the maturation date of the MOU ILA debt from the insurance companies, which has the second balloon payment (I think $400 million, but I can't recall off the top of my head). So we just thought that made a reasonable end-date target to avoid further litigation in the state courts, but happy to discuss if y'all think otherwise.

Thanks,

Ryan

**Ryan J. Meyer**
Partner

**Katten**
Katten Muchin Rosenman LLP
[redacted]

---

**From:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Sent:** Tuesday, December 17, 2024 10:24 AM
**To:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Cc:** McCarthy, Brandon N. <brandon.mccarthy@katten.com>; Stout, Taylor (CRM) <Taylor.Stout2@usdoj.gov>; Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>
**Subject:** RE: Missed Call

*EXTERNAL EMAIL – EXERCISE CAUTION*

Thanks Ryan.  Can you please give us the rationale behind the June 2029 references now included throughout?

Dan

Daniel Ryan
[redacted]

---

**From:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Sent:** Monday, December 16, 2024 5:42 PM
**To:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Cc:** McCarthy, Brandon N. <brandon.mccarthy@katten.com>
**Subject:** [EXTERNAL] RE: Missed Call

Sorry, Dan, the redlines are actually in this version.

Thanks!

Ryan

**Ryan J. Meyer**
Partner

**Katten**
Katten Muchin Rosenman LLP
2121 North Pearl Street, Suite 1100 | Dallas, TX 75201-2591
direct +1.214.765.3627
ryan.meyer@katten.com | katten.com

---

**From:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Sent:** Monday, December 16, 2024 4:41 PM
**To:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Cc:** McCarthy, Brandon N. <brandon.mccarthy@katten.com>
**Subject:** RE: Missed Call

Dan,

Following up on our discussion Friday, please find our edits attached here.

Section 2(m) is subject to approval by Joe and Scott, specifically—we thought this would be helpful (and in alignment with what we discussed in the last group call), but if they don't agree we're happy to pull it out. Similarly, we added in 2(d) because we thought it helped add some additional potential exit paths for them that would more easily clear title, but, if they feel it hampers them, we're happy to pull it out.

Thanks,

Ryan

**Ryan J. Meyer**
Partner

**Katten**
Katten Muchin Rosenman LLP
[redacted]

**From:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Sent:** Friday, December 13, 2024 1:18 PM
**To:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Subject:** RE: Missed Call

*EXTERNAL EMAIL – EXERCISE CAUTION*

Ok, that works. Thanks.

Daniel Ryan

[redacted]

---

**From:** Meyer, Ryan J. <ryan.meyer@katten.com>
**Sent:** Friday, December 13, 2024 2:13 PM
**To:** Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>
**Subject:** [EXTERNAL] Missed Call

Dan,

I'm on a call/in meetings straight through to 5 pm EST. Can call you afterwards.

Thanks,

Ryan

**Ryan J. Meyer**
Partner

**Katten**
Katten Muchin Rosenman LLP
[redacted]

============================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.
============================================================

NOTIFICATION: Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).
============================================================

---

**2 attachments**

**Memo In Support of SM Motion - Government 12.17.24 (clean).docx**
46K

**Memo In Support of SM Motion - Government 12.17.24 (redline).docx**
49K