**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC |

**SPECIAL MASTER'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER DENYING SUBPOENA REQUEST**

Joseph W. Grier, III, the Court-appointed special master (the "Special Master") in this proceeding (this "Case"), through counsel, hereby presents this response (this "Response") to the *Defendant's Motion for Reconsideration of the Order Denying his Motion for Issuance of Subpoenas (Doc. No. 304)* filed in this Case on August 18, 2026 (the "Reconsideration Motion")[1] and respectfully represents as follows:

## INTRODUCTION

The Reconsideration Motion is fatally flawed as it points to no new information or change in circumstances that would warrant the Court's reconsideration of its prior order (the "Subpoena Denial Order") denying Defendant's extremely late request for expansive documentary discovery purportedly needed for restitution-related analyses. All of the reasons for entry of the Subpoena Denial Order hold true today, if not with greater force. The Reconsideration Motion must be denied *in toto*.

---

[1] Doc. No. 309.

## STATEMENT CONCERNING VALUATION DOCUMENTATION

Documentation Sought Not Critical for Restitution Analysis

The purported factual foundation of the Reconsideration Motion focuses almost exclusively on the Special Master's willingness to provide Defendant—under a confidentiality agreement with Defendant and a corresponding protective order—certain documentation backing up the Special Master's estimates of the value that may be extracted from the "Primary Restitution Assets" for the benefit of persons due restitution in this Case.[2] Despite unexplained, conclusory assertions to the contrary in the Reconsideration Motion, **these estimates are not a critical component of restitution**. The estimates neither affect Defendant's base restitution responsibility nor the restitution offsets to which Defendant may be entitled. The estimates were included in the Special Master's report for the sole purpose of satisfying the charge included within the order appointing the Special Master (the "Appointment Order") that the Special Master "identify all assets available for liquidation and/or repatriation for the benefit of victims, . . . and to the extent those assets are not readily convertible to cash, determine a reasonable estimated value for those assets."[3] As far as the Special Master has been able to ascertain, the Special Master's estimates of the value that may be extracted from the "Primary Restitution Assets" for the benefit of persons due restitution in this Case are only potentially relevant to this Case for two possible reasons, neither of which is integral to the establishment of restitution in this Case and neither of which has any sort of urgency at this time.

[2] In the Special Master's *Second Supplement to Report and Recommendations Regarding Restitution*, the Special Master—with a variety of caveats, qualifications, and disclaimers—estimated the value that may be extracted from the "Primary Restitution Assets" for the benefit of persons due restitution in this Case, disclosing a "mid"-range estimate of $998,000,000, in the aggregate. Doc. No. 246, at 36.

[3] Doc. No. 56, at 6 [¶ 3(b)].

Documentation Possibly Relevant to Pursuing Additional Assets and Forfeiture

First, the Appointment Order directs the Special Master to (i) first focus only on facilitating efforts to monetize the "Primary Restitution Assets" and (ii) not liquidate Defendant's other assets "until and unless [the Special Master] determines, and so notifies the Court, that the Primary Restitution Assets are not likely to be sufficient to fully satisfy Defendant's restitution obligations."[4] Thus, pursuant to the Appointment Order, a critical component of whether the Special Master may liquidate Defendant's assets other than the Primary Restitution Assets depends on the Special Master's prediction of how much value the Primary Restitution Assets might generate for persons due restitution in this Case. The Special Master has not yet sought authority to pursue "Secondary Restitution Assets" for the benefit of victims.

Second, the *Consent Order and Judgment of Forfeiture Pending Rule 32.2(c)(2)* (the "Forfeiture Order")[5]—which the Special Master had no involvement in negotiating, drafting, or otherwise developing—commands the entry of a forfeiture money judgment against Defendant in an amount equal to "the lesser of either (1) $230,000,000 or (2) the difference between the amount of restitution that this Court orders and the Special Master's estimate, as of the date restitution is ordered, of the 'Mid' point value of the 'Primary Restitution Assets,' as such terms are defined in the Special Master's report recommending a final restitution order in this matter."[6] To the extent additional color on how the Special Master forecasted what the "Primary Restitution Assets" might yield for victims matters in evaluating the Forfeiture Order (which the Special Master disputes[7]),

---

4 Doc. No. 56, at 7–8 [¶ 7].

5 Doc. No. 160 (signed at the sentencing hearing on May 26, 2026 and entered on the electronic docket on May 28, 2026).

6 Doc. No. 160, at 1 [¶ 1].

7 As Defendant himself (in addition to Defendant's counsel) executed the Forfeiture Order, Defendant has agreed to use the Special Master's estimate—without any qualification or limitation, and at a specific point in time—as part of the formula for calculating Defendant's maximum forfeiture exposure. Therefore, even if there were defects in the Special Master's estimation methodology, such defects would not change the forfeiture amount. Defendant agreed to use the Special Master's number as part of the forfeiture formula—good, bad, or ugly.

Defendant has already appealed the Forfeiture Order,[8] such that any need for additional discovery on the Special Master's estimation methodology is not immediate.

Additional Detail on Estimation Methodology

The Special Master did **not** commission formal business valuations on any of the "Specified Affiliated Companies" or "Primary Restitution Assets." Rather, the Special Master's financial advisors estimated the value that may be extracted from the "Primary Restitution Assets" for the benefit of persons due restitution in this Case primarily by relying on documents, information, and judgments prepared by those persons charged with managing the "Primary Restitution Assets." Although all business valuations are inherently unreliable to a certain degree, the Special Master's estimation merely reflects the Special Master's best guess at what might happen in the future based on the most reliable and current information available to the Special Master today, again relying heavily on information from the persons managing the "Primary Restitution Assets" and not relying on independently-commissioned business valuations. The necessary inaccuracy in such forecasting is part of the reason why the Special Master's report recommends that Defendant receive offsets based on actual payments ultimately received by victims and not based on flawed predictions of future recoveries.

Accordingly, most, if not all, of the documentation further supporting the Special Master's estimations contains sensitive financial information that the management of the Primary Restitution Assets, like the Special Master, strongly resist putting into the public record.

Willingness to Provide Subject to Confidentiality Agreement and Protective Order

As the Special Master has repeatedly indicated to Defendant's counsel,[9] the Special Master

---

[8] *See* Doc. No. 192.

[9] *See, e.g.*, Doc. No. 309-1, at 10 ("the Special Master would not be opposed in concept to producing (on a reasonable timeline) documents in our possession under a confidentiality agreement and protective order limiting the public disclosure of proprietary information. If your client is amenable to preserving the confidentiality of sensitive

would voluntarily provide—without the need of a subpoena—certain sensitive financial information to Defendant's counsel on the condition that adequate safeguards preventing Defendant placing the sensitive information into the public record were implemented. This policy is supported by this Court's *Standard Criminal Discovery Order*,[10] which provides

> The defendant shall not be given copies of any "sensitive materials." "Sensitive materials" are defined as discovery containing . . . financial information . . . . "Sensitive materials" shall be reviewed with the defendant in the presence of the defense team and the defense team shall maintain custody and control of such materials. . . .

It is worth noting, moreover, that much of the information sought from the Special Master by Defendant includes not only the proprietary business information of various "Specified Affiliated Companies" and "Primary Restitution Assets," but also constitutes the work product of various third-party professionals. Therefore, these third parties have similar but distinct interests in preserving the confidentiality of these materials and should be provided an opportunity to articulate their concerns with the Court before the Special Master releases the pertinent documents to Defendant, and certainly before any of them would be placed in the public record.

Victim recoveries would be detrimentally impacted by putting the Special Master's specific value predictions and related data into the public record. Although the harm that would result from putting the details of the Special Master's value estimations—and the related financial and other proprietary information—into the public record seems obvious, Defendant's counsel repeatedly insists that putting sensitive financial information into the public record is what precisely should happen once the Special Master provides the information to Defendant's counsel.[11] Most

---

proprietary information, then I can draft a confidentiality agreement and protective order for your review and edit. If your client is not amenable to preserving the confidentiality of sensitive proprietary information, then a court order compelling us to produce these materials with no restrictions on subsequent disclosure will be required").

10 Copy attached hereto as Exhibit A for ease of reference.

11 *See, e.g.*, Doc. No. 309-1, at 13 (arguing that "all data," including "any other documents" relied on by the Special Master in connection with the value estimations, must not only be immediately provided to Defendant but also "have to be established on the record . . . by placing them on the record"), at 9–10 (arguing that putting the backup

concerningly, Defendant believes that not only should Defendant and the victims be given this otherwise confidential and protected information, but also that it "should be known to the general public."[12] To the extent the Defendant argues that the Special Master's "methodology of evaluation has to be disclosed to the defendant on the record,"[13] this statement by the Special Master in this Response provides further background—on the record—regarding the Special Master's methodology (which methodology had previously been discussed generally with Defendant's former counsel several times over the course of several months prior to the filing of the Special Master's initial report).

## <u>ARGUMENT</u>

In any event, notwithstanding the Reconsideration Motion's efforts to conflate the issues, the manner of disclosure is a secondary question. The primary question presented by the Reconsideration Motion is whether Defendant should be authorized to issue subpoenas. The Court already denied this request once, and the Reconsideration Motion identifies no new information or change in circumstances that would warrant reexamining the Court's prior decision. Even so, the relief requested in the Reconsideration Motion is a red herring: the Special Master is voluntarily willing to provide valuation data to Defendant without being compelled to do so by subpoena; but, subpoena or no subpoena, the Special Master insists that the information be provided only under the strictest of confidentiality designed to prevent Defendant's subsequent disclosure of the material in a manner that would further injure victims.

---

behind the Special Master's estimation "on the record" is required by federal statute), 14–16 (articulating the intent to seek reconsideration of a prior order sealing an exhibit discussing the Special Master's specific valuation predictions for a particular Primary Restitution Asset); 5–6 (demanding that "all financial reports and all board reports for all primary restitution assets, specified affiliated companies for the last four years and all letter of intents and offers to purchase received" needs to be filed "on the docket so that this can be appealed"); 2–3 (promising to contest the Special Master's requests to prevent public disclosure of the required information).

12 *See* Doc. No. 309-1, at 9.

13 *See* Doc. No. 309-1, at 11.

The Reconsideration Motion also conflates what is needed for restitution purposes with the documents and information the Special Master relied upon for value estimation, which is not a critical component of restitution.[14] For example, the final sentence in the Reconsideration Motion states:

> If the Court declines to order production of [the Special Master's valuation methodology and underlying data] in any form, the alternative is not to enter restitution on an incomplete and inaccurate record but to decline to order restitution . . . .

As discussed above, the proposed restitution order does not incorporate the Special Master's valuation estimations in any respect and the estimations do not impact the restitution analyses in any manner. Although testing the Special Master's valuation estimates could be relevant if and when the Special Master seeks authority to liquidate "Secondary Restitution Assets," the Case has not progressed to that point, yet. Regardless, Defendant's attempt to confuse the issues should not justify granting the Reconsideration Motion.

Much like Defendant's multitude of responses to the Special Master's restitution recommendations, the Reconsideration Motion attempts to twist legal disputes into factual disputes needing further discovery. The Reconsideration Motion includes a chart identifying offsets requested by Defendant that the Special Master recommends that the Court disallow.[15] Yet, the Special Master is not disputing Defendant's figures for ANY of the offsets identified in the chart; the Special Master is disputing whether Defendant should receive offsets for those sums *as a matter of law*. No further discovery is required. The Fourth Circuit (i) can assume all of Defendant's numbers are correct (like the Special Master) and (ii) can still adopt the Special

---

[14] *See, e.g.*, Doc. No. 309, at 14 (positing (erroneously) that "[p]roducing the narrow valuation data" is needed by Defendant for restitution purposes and that the record would not support entry of the restitution order without the valuation data on the record).

[15] Doc. No. 309, at 12–13.

Master's legal reasoning for rejecting the offsets. The Subpoena Denial Order recognized this very point: "Defendant has not shown that the information is necessary to finalize restitution."[16]

The Reconsideration Motion is also due to be denied because it is vague and contradicts itself repeatedly. At times, the Reconsideration Motion indicates that Defendant is now seeking a narrower subset of documents than that initially requested through the original subpoena motion,[17] and at other times seems to be asking for all of the documents originally requested.[18]

At times, the Reconsideration Motion casts the outstanding dispute as being limited to whether the production should be made pursuant to a confidentiality agreement and corresponding protective order or whether the production should be made pursuant to a "protective order already in place," a "protective order already governing this case," the "existing protective order available," or "the Government's own standing protective order."[19] The Special Master is unaware of any such protective order entered in this Case or that would otherwise govern the Special Master's production of documents to Defendant. Perhaps more importantly, to the extent such a protective order exists, the Special Master expects that it does not sufficiently shield the disclosure of produced materials from reproduction on the record in this Case. Indeed, Defendant's counsel has repeatedly stated the intent to unseal prior sensitive material in the record and to put in the record whatever materials are received from the Special Master relating to value estimates.[20] This

---

16 Doc. No. 304, at 1.

17 *See, e.g.*, Doc. No. 309, at 2 (seeking issuance of "narrowed subpoenas" without specifying how the scope of the request would be narrowed), 5 (representing that the only "category [of documents sought] that matters [is] the methodology and underlying data by which the Special Master valued the Primary Restitution Assets and Specified Affiliated Companies" ), 16 (seeking an order compelling only the production of the Special Master's "valuation methodology and underlying data").

18 *See, e.g.*, Doc. No. 309, at 7 (referencing a need for information from the "institutional holders of the books, records, and valuations"), 12–13 (seeking detail on various offset requests), 15 (seeking records from the "asset-holding entities").

19 Doc. No. 309, at 4; *see also* Doc. No. 309, at 2, 8

20 Although the Reconsideration Motion at one point professes that production preserving confidentiality under a protective order is "precisely the relief the defendant seeks" (Doc. No. 309, at 8), the exhibit to the Reconsideration Motion proves the point that the Special Master's offer to voluntarily produce the valuation materials subject to adequate confidentiality procedures did not satisfy Defendant, who insisted instead on filing the Reconsideration

is why the Special Master needs a confidentiality agreement from Defendant prior to disclosure or an order from the Court directing the Special Master to produce the materials after giving interested third parties sufficient opportunity to be heard in response to such an order.

## CONCLUSION

Having already received his reduced sentence based on his apparent cooperation with the restitution process, Defendant now seeks to delay, distract, and otherwise hinder that same process by all means available to him. The Reconsideration Motion is one of many pleadings filed in recent weeks trying to prevent the Court from finalizing the restitution amounts in this Case. The overwhelming breadth, delay in seeking, and general unreasonableness of the subpoenas reveal that the subpoenas have very little to do with clarifying any open restitution issues, and very much to do with confusing the issues in this case as the Court prepares to enter a final restitution order. Due process does not require that the Court condone subpoenas sought in bad faith. To the extent the Reconsideration Motion is seeking only to compel production of materials relating to the Special Master's value estimates, those documents are irrelevant to the restitution analysis and, again, are being sought to confuse and further complicate the task at hand.

## RESERVATION OF RIGHTS

To the extent the Court grants the Reconsideration Motion in any degree, the Special Master reserves the right for the Special Master and the Special Master's professionals to move to quash any such subpoenas served upon them on the basis of privilege, the work product doctrine, overbreadth, unreasonableness, and any other legitimate legal or equitable basis for contesting the subpoenas. The same rights should be preserved for victims and those third parties that would be

---

Motion, who insisted that the "general public" needed to see the documents, and who promised to seek to unseal such sensitive financial information after the fact. *See* Doc. No. 309-1.

impacted by an order compelling the Special Master to produce their sensitive financial information.

WHEREFORE, the Special Master prays that the Court deny the Reconsideration Motion and grant such further relief as is just and proper.

Respectfully submitted this 24th day of August, 2026.

*/s/ Michael L. Martinez*

Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax: 704.332.0215
Email: mmartinez@grierlaw.com

*Attorneys for Joseph W. Grier, III, Special Master*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that copies of the foregoing *Special Master's Response to Defendant's Motion For Reconsideration of Order Denying Subpoena Request* were served on those parties who have requested electronic service in this case through the CM/ECF system.

Respectfully submitted this 24th day of August, 2026.

*/s/ Michael L. Martinez*

Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202