**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC |

**SPECIAL MASTER'S RESPONSE TO DEFENDANT'S**
**MOTION TO STAY DISPOSITION OF DAMOVO**

NOW COMES Joseph W. Grier, III, the Court-appointed special master (the "Special Master") in this proceeding, through counsel, who hereby presents this response (this "Response") to the *Defendant's Notice Concerning the Damovo Primary Restitution Asset and Motion to Stay its Disposition* (the "Motion")[1] and respectfully represents as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

Through the Motion, Defendant requests that the Court:

> (a) direct the Special Master to inform the Court, forthwith, of the status and terms of any pending or completed disposition of the Damovo asset; and (b) stay any sale, transfer, or other disposition of the Damovo asset pending this Court's review and approval under its appointing order (Doc. 56) and 18 U.S.C. § 3664.[2]

The Motion attaches as Exhibit 1[3] a pleading Defendant filed—in the Wake County Superior Court action concerning the MOU[4]—through which Defendant asks the Wake County Superior Court to (i) instruct NHC to engage with a third party allegedly interested in purchasing certain SACs (*i.e.*,

[1] Doc. No. 320.
[2] Doc. No. 320, at 2–3.
[3] Doc. No. 320-1.
[4] Capitalized terms not otherwise defined in this Response shall have the meanings prescribed thereto in the Special Master's response to a motion by Defendant seeking to remove the Special Master (Doc. No. 288) ("Response to Removal Motion").

those known as the Damovo Group of Companies ("Damovo")), (ii) require that all proceeds from a transaction involving Damovo "be placed in the escrow" of this Court (W.D.N.C.), and (iii) order that no transaction involving Damovo be closed unless and until this Court (W.D.N.C.) "issues an order approving the transaction and all of its terms."[5]

On information and belief, Damovo—unlike other SACs that were transferred by Defendant to NHC in October of 2024—does not reside directly within NHC's ownership chain; rather, in 2021, Damovo was transferred to a trust governed by English law in order to isolate Damovo from the control of Defendant and to permit Damovo to maintain existing deposit accounts and loan facilities. On information and belief, the transfer of Damovo to the trust was approved by a then-empaneled "Review Panel" established by the Wake County Superior Court in connection with the MOU litigation.[6] The consideration for the transfer by the settlor entity (also a SAC under NHC's control) was a promissory note payable by the owner-trust to the settlor-SAC. In other words, NHC does not own Damovo, but rather owns an entity that is a creditor owed money by Damovo's owner-trust.

While the Special Master is aware of a proposed disposition of Damovo (the "Potential Damovo Transaction"), neither the Special Master nor NHC is conducting or otherwise responsible for the Potential Damovo Transaction. Rather, the Potential Damovo Transaction is to be conducted through the enforcement of rights by Damovo's secured lenders, rights that arose upon Damovo's default under the corresponding loan documents. On information and belief, the aforementioned Review Panel also approved Damovo's entry into the financing relationship with these secured lenders, including the specific provisions of the corresponding loan documents.

---

5 Doc. No. 320-1, at 3.

6 *See Southland Nat'l Ins. Corp., et al. v. Greg E. Lindberg, et al.*, No. 19CVS013093-910, Amended Order Amending Temporary Restraining Order (Wake County, NC Super. Ct. Apr. 2, 2020).

Neither Defendant nor NHC nor the Special Master has any input into the secured lenders' enforcement process.

Neither Damovo's secured lenders nor the potential acquiror of Damovo seeks the consent of the Special Master—or the approval of this Court—to close the Potential Damovo Transaction. Without accepting that it is legally required to do so, the potential acquiror of Damovo has sought consents to the transaction and/or releases of any possible claims from the Bermuda Insurance Companies (victims due restitution), the North Carolina Insurance Companies (victims due restitution), and NHC (the entity designated by the MOU to receive and supervise the SACs for the benefit of victims due restitution, including the SAC owed money by the trust owning Damovo). In consideration for such consents/releases, the prospective acquiror has proposed to pay certain sums to those parties.

Based on the Special Master's evaluation of the Potential Damovo Transaction (especially considering that persons due restitution in this Case are currently slated to (i) receive funds in exchange for releases that would reduce Defendant's outstanding restitution obligations and (ii) consent to the transaction before it closes), the Special Master does not intend to interfere with, or otherwise oppose, the transaction.

## ARGUMENT

As previously explained to the Court in the Response to Removal Motion,[7] the Special Master does not control the liquidation of the SACs; NHC controls the SACs as set forth in the MOU. The MOU provides that, because one or more "Loans" (including, but not limited to, Affiliate Investments) are in default, Defendant (and now the Special Master standing in

[7] *See* Doc. No. 288, at 3–5, 9–10, 13–15, 16–17.

Defendant's shoes) has no veto right to prevent dispositions of SACs by NHC.[8] Rather, by simple majority vote, NHC's board can approve, or not approve, any and all dispositions of SACs.

The Potential Damovo Transaction is multiple steps removed from even that process. First and foremost, the Potential Damovo Transaction is being conducted through the third-party secured lenders' enforcement of rights under the governing loan documents and otherwise applicable English law. Second, NHC does not own or control Damovo; rather, all NHC controls is a SAC that is owed money by Damovo's owner-trust. In other words, the only way funds would flow to NHC from Damovo (outside of the consent/release construct mentioned above) would be if Damovo's secured lenders (and all other creditors) were satisfied in full through a disposition of Damovo; the Potential Damovo Transaction will not satisfy Damovo's creditors in full or generate sufficient funds to make distributions to Damovo's owner-trust (or the SAC that is owed money by Damovo's owner-trust).

Perhaps more importantly for purposes of resolving the Motion, the parties that Defendant seeks to enjoin through the Motion are not before the Court, and, under any circumstances, the Court's jurisdiction to enter such an injunction is, at best, dubious. Damovo is not a party to this proceeding; the potential purchaser of Damovo is not a party to this proceeding; Damovo's secured lenders are not parties to this proceeding. Even NHC—to the extent relevant for purposes of the Motion—is not a party to this proceeding. Defendant asks this Court to enjoin all of those strangers to this proceeding from entering into private transactions. The Court lacks this power under the present posture of Defendant's request.

---

8 *See* Doc. No. 55-1, at 5 [Article II.3.i].

## CONCLUSION

The Motion first asks the Court to direct the Special Master to provide more information concerning a possible disposition of Damovo; this Response accomplishes that objective[9] and, thus, moots that request for relief. The Motion's second request for relief seeking an injunction is wholly unsupported by any factual circumstances that could warrant such extraordinary relief and, in any event, this Court lacks authority over those involved with the Potential Damovo Transaction. At a minimum, those third parties that the Motion seeks to enjoin must be formally noticed concerning the Motion and otherwise properly brought before this Court prior to being enjoined. Should the Court be inclined to enter any relief concerning the Potential Damovo Transaction, the Special Master respectfully requests that such relief be limited to directing the conduct of the Special Master.

WHEREFORE, the Special Master prays that the Court deny the Motion and grant such further relief as is just and proper.

Respectfully submitted this 31st day of August, 2026.

*/s/ Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax: 704.332.0215
Email: mmartinez@grierlaw.com

*Attorneys for Joseph W. Grier, III, Special Master*

[9] By providing additional information to the Court concerning the potential transaction involving Damovo in response to Defendant's Motion, the Special Master is not waiving—and is hereby explicitly preserving—any and all arguments against providing such information concerning SACs upon similar future demands by Defendant.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing *Special Master's Response to Defendant's Motion to Stay Disposition of Damovo* were served on those parties who have requested electronic service in this case through the CM/ECF system.

Respectfully submitted this 31st day of August, 2026.

*/s/ Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202