UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREG E. LINDBERG,<br><br>*Defendant*. | No. 5:19-CR-22-MOC<br><br>No. 3:23-CR-48-MOC |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

The United States of America respectfully submits that the Court should decline to issue the extraordinary stay requested by Defendant, which is essentially seeking an injunction against a third party's disposition of the Damovo Group ("Motion to Stay," Doc. 320) because Defendant's request is premised on inaccurate facts and would impermissibly interfere with the rights of various non-parties in this matter and ongoing litigation in state court. To the extent the Court is inclined to issue a stay, the United States respectfully submits that: (i) it should be limited to staying the actions of the Special Master and his designated board member with respect to any disposition of the Damovo Group, not the overbroad relief requested by Defendant, and (ii) that any such stay be temporary and expire once the Court enters a final restitution order.

**ARGUMENT**

Defendant's Motion to Stay asks this Court to frustrate the rights of various third parties, including those involved in ongoing civil litigation being handled in the Superior Court of Wake County, North Carolina, and it reaches far beyond the parties and remaining issues currently before this Court. Essentially, Defendant is seeking an

injunction from this Court stopping the sale of a Specified Affiliated Company – Damovo Group, which is under the control of New Holding Company ("NHC") or some other trust (both independent entities that are not parties to this matter), to a third party (also a non-party). According to Defendant's filings, the bulk of the proceeds of the contemplated sale would be used to pay off Damovo's debt owed to other non-insurance company lenders (also non- parties). Defendant provides no justification for such an extraordinary request except for his own self-serving claims about the purported unfair terms of the proposed sale.[1]

The Special Master in this case is not the party controlling and selling Damovo.[2] As the Court is aware, Defendant lost control of the Damovo Group and NHC through the June 27, 2019, Memorandum of Understanding ("MOU") and the orders issued by the North Carolina Wake County Superior Court in related litigation (the "Wake County MOU Action"). (Doc. 330 at 6 and n.1). Yet, Defendant's Motion to Stay is premised on the false assertion that the Special Master now controls NHC and the Specified Affiliated Companies like Damovo Group because Defendant transferred his interests in those entities to the Special Master. But, Defendant could not and did not transfer what he did not have, which was such control. Rather, with respect to control, Defendant only transferred his ability to appoint two of seven directors to NHC's board of directors. (*Id.* at n.2).

---

[1] For example, Defendant's claims about the nature of the proposed transaction focus on the potential selling price of Damovo Group without any discussion of how much third-party debt Damovo Group has.
[2] It appears that Defendant is also wrong about whether NHC even controls the Damovo Group or its sale, which is yet another reason for the Court to decline to grant the requested stay.

Defendant's company admitted this in a related civil action in federal district court in the Eastern District of North Carolina, representing to that court that:

> NHC was established under the terms of the MOU to benefit the policyholders of Plaintiffs SNIC, BLIC, and CBLIC (collectively, the "Insurance Policyholders") who experienced financial harm due to Lindberg. The governance structure of NHC, as outlined in the MOU, stipulates that a Board of Directors will oversee the operations of NHC. As a result of the Contribution, the Defendant is now held under the governance of the NHC Board of Directors, whose primary duty is to act in the best interests of the Insurance Policyholders. The involvement of the Special Deputy Rehabilitators of CBLIC and BLIC (the "Special Deputy Rehabilitators") and Special Deputy Liquidators of SNIC (the "Special Deputy Liquidators") on the NHC Board of Directors requires careful coordination and consultation to ensure that all actions taken align with the overarching objectives of the MOU and that no conflicts of interest arise.

*Colorado Bankers Life Ins. Co., et al. v. Academy Financial Assets, LLC*, Case 5:20-cv-474, Doc. 118 ¶¶ 11-13 (E.D.N.C. Feb. 4, 2025).

The Special Master has appointed one director to NHC's board. The Special Master has not exercised his ability to appoint the second director so that seat remains vacant. (Doc. 308-3 ¶20). Thus, the NHC board is comprised of three appointees from the North Carolina Insurance Companies, two independent directors, and the Special Master's designated director. (*Id.*)

Notwithstanding these facts, Defendant claims that the Special Master nevertheless controls asset sales by NHC because of language in the MOU requiring one of Defendant's appointed directors to approve any NHC sale of Specified Affiliated Companies "provided there is no default under any Loan." (*See* Doc. 316 at 16, quoting MOU Art. II, § 3.i). Defendant's claim fails because, among other reasons, the court in

*Colorado Bankers Life Ins. Co., et al. v. Academy Financial Assets, LLC* has found loans to be in default. Case 5:20-cv-474, Doc. 115 at 17 (E.D.N.C. Aug. 19, 2024) (granting summary judgment for the North Carolina Insurance Companies in collection actions involving affiliate loans because Defendant's company "materially underpaid at least one month's interest for some loans [under the IALA] and even more for the loans that defendants unilaterally asserted accrued zero interest.").

This would seem to be the end of the matter, but Defendant now raises yet another argument, proposing a novel interpretation of the MOU's language to suggest that "no default under any Loan" does not really mean what it says. While the merits of this claim seem facially dubious, the proper forum for making that determination is not here. Rather, the Wake County Superior Court, where Defendant is simultaneously attempting to stop the proposed sale of the Damovo Group (*see* Doc. 320-1),[3] already has the issue before it in connection with previous litigation. Indeed, Defendant is attempting to raise the exact same arguments about the Special Master's purported control over NHC to the Wake County Court. (*Id.* at 9 ("NHC cannot approve or consent to any sale of the Damovo Group … without that affirmative vote" of the Special Master's director)). As such, a stay is not needed here because the Wake County Court will either reject Defendant's argument, in which case it will be clear the Special Master does not control NHC or the sale of Damovo Group, or it will agree with Defendant, in which case the Special Master

[3] This filing is styled as Defendant's "Response to Consent Motion for Instruction Regarding Proposed Damovo Transaction," which was filed in Wake County Superior Court action 19CVS008664-910 on August 19, 2026.

may need to come back to this Court to seek approval for a sale (to the extent that NHC is actually the party selling Damovo Group as Defendant claims). Either way, this Court need not enter the requested stay at this point, which would unnecessarily interfere with the state proceedings and likely lead to a conflict with a future state court order.

If the Court is inclined to issue a stay, it should be limited to staying the actions of the Special Master and his designated board member with respect to any disposition of the Damovo Group and not the general injunction requested by Defendant. Granting the broad relief requested by Defendant would unnecessarily interfere with the proceedings in the Wake County Superior Court and may violate principles of federal abstention. *See, e.g. Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013).[4] Moreover, it could lead to diminution of value of the Damovo Group asset if there were unnecessary delay in lifting the stay if/when the Wake County Court approves the sale. Finally, any stay issued by this Court should be of limited duration and should not last beyond the Court's entry of a final restitution order.

---

[4] In *Sprint*, the Supreme Court reaffirmed its previous holdings that there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief[,]" including when there are "'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" 571 U.S. at 72 (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-368 (1989)).

## CONCLUSION

This Court should deny Defendant's request for a stay because it is not supported by the facts and, in any event, is not necessary. If the Court is inclined to issue a stay, it should be narrowly tailored and limited to the actions of the Special Master and his designee.

RESPECTFULLY SUBMITTED, this 31st day of August, 2026.


DALLAS J.E. KAPLAN
ATTORNEY FOR THE UNITED STATES[5]

***/s/ Daniel Ryan***

Daniel Ryan
Dana Washington
Assistant United States Attorneys
United States Attorney's Office
Western District of North Carolina

227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-3222
daniel.ryan@usdoj.gov

LORINDA I. LARYEA
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

***/s/ Lyndie M. Freeman***

Lyndie M. Freeman
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue
Washington, DC 20005
Telephone: 202-616-5315
lyndie.freeman@usdoj.gov


[5] Acting under authority conferred by 28 U.S.C. § 515.