**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC |

**KATTEN MUCHIN ROSENMAN LLP'S MEMORANDUM IN SUPPORT OF THE OPPOSED FIFTH MOTION FOR PAYMENT OF FEES AND EXPENSES**

Katten Muchin Rosenman LLP ("Katten"), through Ryan J. Meyer as counsel of record for Mr. Lindberg, hereby submits this *Memorandum in Support of Opposed Fifth Motion for Payment of Fees and Expenses* (this "Memorandum") in support of *Katten Muchin Rosenman's Fifth Opposed Motion for Payment of Fees and Expenses*.

The Motion and this Memorandum were presented to the Special Master for review and he does now not oppose the award of these fees, but he does oppose Katten's proposed timing of payment of such approved fees.

## I. INTRODUCTION

1. This Fifth Motion for Payment is consistent in form and substance with Defendant's previous four requests for payment, **each of which the Court previously granted.** The Court has established a consistent practice with respect to payment of professional fees, and Katten respectfully submits that practice should continue here. Katten performed the work for which payment is sought, incurred the associated expenses, and seeks payment only for fees and expenses

already incurred. Significantly, the Special Master does not challenge the reasonableness or validity of Katten's billing entries. The only issue is the timing of payment.

2. Katten appreciates the Special Master's stated desire to preserve funds while the Lindberg matters remain pending. That concern is understandable. However, Katten's understanding is that there are several million dollars currently with the Special Master specifically designated for attorney and other professional fees. Thus, basic fairness weighs in favor of paying Katten's already-incurred and approved fees and expenses in the same manner as the Court has previously authorized. The Special Master has recently sought payment of the exact same thing – its own fees and expenses, for this same time period, from the same funds. Katten respectfully seeks no different treatment—only the same treatment afforded to the professionals whose fees have been paid during this proceeding.

3. Under the Special Master's current position, Katten's incurred fees and expenses would effectively be deferred until the Lindberg matters are resolved and **if** funds remain, while future professional fees and expenses necessarily continue to accrue and are paid promptly. That would place Katten in the position of financing its past work, while the estate continues to fund ongoing work. Katten respectfully submits that this result is neither necessary nor equitable, particularly where the fees at issue have already been incurred and are not disputed.

4. There is an additional consideration that makes prompt payment particularly appropriate. Although Katten has withdrawn as counsel in Case No. 5:19-cr-22 in the Western District of North Carolina (the "Public Corruption case") and Case No. 3:23-cr-48 in the Western District of North Carolina (the "Financial case"), Katten remains lead counsel in Case No. 1:22-cv-715 in the Middle District of North Carolina (the "SEC case"). In addition, Katten continues to receive recurring requests and inquiries from the Government and Mr. Lindberg's new counsel

arising from the transition and related matters. Thus, Katten's involvement has not ended entirely, and it continues to devote time and resources to matters connected to the representation.

5. The issue is particularly important in light of the retainer structure previously presented to and approved by the Court. The Special Master, Paladin, and Katten each maintain retainers intended, among other things, specifically to protect against the possibility of shortfalls—particularly if the SEC case becomes the only remaining active matter. Katten's requested payment would not create a new or preferential protection for Katten; it would simply prevent Katten's existing retainer from being completely exhausted by fees that have already been incurred, while leaving Katten exposed to additional obligations going forward.

6. Katten respectfully recognizes that the Special Master and Paladin must exercise appropriate caution in managing the available funds. But that same principle supports treating already-incurred, undisputed professional fees consistently, rather than postponing payment to one professional while other professional expenses continue to accrue and be paid promptly.

7. Finally, the present circumstances provide substantial assurance that payment of Katten's fees will not materially prejudice the estate or the administration of the remaining matters. There remain several million dollars in funds held by the Special Master that are specifically designated for professional fees, as well as approximately $20 million held in escrow in connection with the ClanWilliam transaction. In addition, to the extent any portion of Katten's retainer remains after payment of the requested amount, Katten is already obligated by prior order of this Court to return those funds to the Special Master.

8. Accordingly, Katten respectfully submits that payment of its already-incurred fees and expenses presents little, if any, meaningful risk to the estate or to the Special Master's ability to administer the remaining matters. Katten is not asking the Court to resolve a dispute over the

reasonableness of its bills or to give it preferential treatment. It simply asks that its previously incurred, undisputed fees and expenses be treated in the same manner as they have been treated previously and as other professional fees are being treated.

## II. FACTUAL BACKGROUND

9. As more fully discussed below, Mr. Lindberg has been subject to a series of interrelated criminal and civil actions by the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") since 2019. As a part of Mr. Lindberg's plea agreement in the present case, the DOJ agreed to a multi-step process for the approval and payment of Mr. Lindberg's counsel's fees whereby they were subject to review by the Special Master appointed in this case and then approval by the Court. The Court memorialized this process in the Order Appointing the Special Master. FN[1] Dkt. 56. This Motion and supporting Memorandum are submitted to the Court for its review in accordance with that process.

10. DOJ indicted Mr. Lindberg in the Western District of North Carolina in March 2019, along with co-defendants John Gray, John Palermo, and Robin Hayes in a five-count indictment. Case No. 5:19-cr-22 ("Br. Dkt."), Br. Dkt. 3. Messrs. Lindberg, Gray, and Palermo were indicted on two counts. Mr. Hayes alone was charged on all five counts, including three false statement counts (18 U.S.C. § 1001). After being convicted in an initial trial in February and March 2020, Mr. Lindberg's conviction was vacated by the Fourth Circuit and remanded for re-trial. Mr. Lindberg's retrial was conducted in May 2024. Mr. Lindberg was convicted at his retrial and is currently awaiting sentencing before this Court. Br. Dkt. 497 at p.2; Br. Dkt. Text Order on July 22, 2025.

[1] "FN Dkt." refers to the docket of this case.

11. In August 2022, the SEC filed a civil complaint against Mr. Lindberg in the Middle District of North Carolina alleging that he and two co-conspirators (Christopher Herwig and Standard Advisory Services Limited) violated the antifraud provisions of the Investment Advisers Act of 1940 by improperly directing investments from his insurance companies into a series of related operating companies through a series of complex investment structures. SEC Dkt. 1. As more fully discussed below in Sections A.ii and A. iii, the factual allegations in the SEC case are substantially identical to a portion of the Financial case, so Mr. Lindberg litigated the SEC case throughout 2024 as a means of preparing for potential trials in both the SEC and Financial cases. Following Mr. Lindberg's plea agreement in the Financial case, Mr. Lindberg reached a bifurcated settlement with the SEC in March 2025. SEC Dkt. 117. A final judgment will be entered in the SEC case following Mr. Lindberg's sentencing in this case.

12. In February 2023, Mr. Lindberg was indicted in the Western District of North Carolina in a thirteen-count indictment charging him with one count of conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment adviser fraud; one count of wire fraud; four counts of false insurance business statements presented to regulators; six counts of false entries about the financial condition or solvency of an insurance business; and one count of conspiracy to commit money laundering. FN Dkt. 1. Mr. Lindberg's co-conspirators Chris Herwig (also a co-defendant in the SEC case) and Devin Solow were charged separately by information in 2022. On November 12, 2024, Mr. Lindberg pleaded guilty to Counts One (conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment advisor fraud) and Thirteen (money laundering conspiracy) of the Financial case, pursuant to a written plea agreement. FN Dkt. 40. Among other things, Mr. Lindberg agreed to the appointment of a Special Master in the Financial Case to determine and pay restitution to the

victims in this case as well as pay fees for his counsel following approval of such fees by this Court. Following a joint motion by DOJ and Mr. Lindberg, this Court appointed Joseph W. Grier, III as special master to, among other things, "pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court." FN Dkt. 54, 55, 56.

13. Mr. Lindberg recently hired new counsel to represent him in the Public Corruption case and the Financial case going forward. On June 17, 2026, Mr. Lindberg's new counsel filed Notices of Substitution of Counsel pursuant to which Mr. Lindberg's new counsel were substituted for Katten. *See* PC. Dkt. Entry No. 550 and Fin. Dkt. Entry No. 210. Katten continues to be Mr. Lindberg's counsel for the SEC case.

14. This Fifth Motion for Payment of Fees and Expenses seeks payment of fees and expenses for work performed by Katten from May 1, 2026 through Jun3 30, 2026.

## III. LEGAL WORK DURING TIME PERIOD OF FIFTH MOTION FOR PAYMENT OF FEES AND EXPENSES

5. During the time period covered by this Fifth Motion for Payment of Fees and Expenses, Katten engaged in extensive and detailed advocacy with the government, the Special Master, and the Special Master's Financial Advisor to establish the appropriate amount of restitution in this case. Following those discussions, Katten extensively briefed these same restitution issues, including deficiencies in the Special Master's recommended restitution amounts, to the Court. Katten also engaged in extensive preparations for Mr. Lindberg's complex and lengthy sentencing hearing, which was held in May 2026.

6. Among other tasks, Katten was involved in weekly meetings with the Special Master, the Special Master's Financial Advisor (Paladin), and the Department of Justice through Mr. Lindberg's sentencing date in order to facilitate maximizing the amount of restitution available to the victims as well as ensuring that restitution payments are made to individuals as quickly as

possible. In addition, Katten was also involved in multiple meetings with the Special Master, Paladin, and the Department of Justice regarding numerous complicated issues related to the potential restitution in the Financial case. Katten has also had numerous other meetings and communications with the Special Master and Paladin in order to facilitate Mr. Lindberg's cooperation with the Special Master. Finally, Katten had numerous meetings with Paladin personnel to review and inform the Special Master's conclusions in his April 3, 2026 Report and Recommendations Regarding Restitution ("Special Master's Restitution Report") and May 15, 2026 Supplement to Report and Recommendations Regarding Restitution ("Special Master's Supplemental Report"). FN Dkt. 106, 146. These voluminous meetings and communications have helped to narrow the restitution issues in this case and to facilitate the Special Master's Restitution Report and the Special Master's Supplemental Report.

7. Katten's work has also included, analysis of the Special Master's Restitution Report, preparation of Mr. Lindberg's detailed Response and Objection to the Special Master's Restitution Recommendation (FN Dkt. 132), the drafting of a detailed Sentencing Memorandum (FN Dkt. 145; Br. Dkt. 507), analyzing victim impact statements produced by both DOJ and the North Carolina Insurance Companies, analyzing the objections to the Special Master's Restitution Report by the North Carolina Insurance Companies, Bermuda Insurance Companies, Universal Life Insurance Company, and other third parties, and preparing for the sentencing and restitution hearings. Katten has also conducted additional meetings with Paladin personnel to review and discuss the assertions in Mr. Lindberg's detailed Response and Objection to the Special Master's Restitution Recommendation to see if the issues in dispute could be narrowed before the Court holds a hearing on the final restitution order.

8. The sentencing proceedings in the Financial case and Public Corruption case were consolidated into a complicated and lengthy sentencing hearing on May 26, 2026. Among other issues, Katten's work during the time period of this Motion includes legal research and analysis related to myriad restitution issues—such as the validity of multiple restitution claims, victim identification, victim classification, restitution amounts, restitution credits and offsets, and restitution payment priority. In addition, Katten has been involved in drafting and revising a lengthy Sentencing Memorandum that was filed on May 14, 2026. *See* FN Dkt. 145; Br. Dkt. 507. Finally, following the substitution of new counsel on June 17, 2026, Katten has been involved in sustained knowledge transfer with both sets of substituted counsel.

9. Working to meet Mr. Lindberg's obligations relating to restitution has required a significant amount of legal work by Katten, including strategizing with Mr. Lindberg and separately with the Special Master and Paladin regarding the maximization of the value of the Primary Restitution Assets, advocating for Mr. Lindberg's positions based on its analysis and research, determining restitution amounts, including potential offsets and credits, classifying and prioritizing victims, and reviewing numerous lengthy documents and agreements to untie a complex web of entities to ensure victims are maximally compensated.

10. With respect to representing Mr. Lindberg in assisting with the Special Master's duties, the Special Master noted in his *Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies* the sheer complexity of the disposition of assets to meet future restitution obligations. FN Dkt 66.

11. Further, Mr. Lindberg's plea agreement specifically provides for payment of his legal fees. FN Dkt. 40.

## IV. REQUEST TO PAY FEES AND EXPENSES

12. For the above-described work, Katten respectfully requests the payment of its fees and expenses for the period of May 1, 2026 through June 30, 2026.

13. The Motion and Memorandum was presented to the Special Master for review and he does not oppose the entry of orders approving these fees.

14. Katten requests that the Court approve, and the Special Master be directed to pay, fees in the amount of $368,336.45 and expenses in the amount of $4,068.29—a total of $372,404.74.[2] As more fully set forth in the Declaration of Brandon N. McCarthy (the "McCarthy Declaration"), attached hereto as Exhibit A, these fees are reasonable and necessary. In addition, Katten has ensured that its staffing on these matters is as efficient as possible given the complex nature of the myriad issues presented by Mr. Lindberg's proceedings and has not billed for any duplicative work.

15. In recognition of the unique nature of this payment process, Katten's fee request of $368,336.45 *already* represents a 15% reduction of the billing rates for all timekeepers on these matters. Katten's 15% reduction of billing rates has resulted in savings of $65,500.50.

| **Fees & Expenses Request – Katten** | | |
|---|---|---|
| | Hours | Fees/Amount |
| Brandon N. McCarthy (Partner) | 124.6 | $160,983.20 |
| Ryan J. Meyer (Partner) | 113.6 | $134,701.20 |
| Robert T. Smith (Partner) | 14.1 | $17,917.58 |
| Rachel Riley (Partner) | 6.4 | $7,452.80 |
| Andrew J. Pecoraro (Associate) | 20.2 | $22,578.55 |
| Joshua Upthegrove (Senior Paralegal) | 46.5 | $24,703.13 |
| *Total Fees* | | *$368,336.45* |
| *Total Expenses* | | *$4,068.29* |
| **Total Fees and Expenses** | | **$372,404.74** |

[2] Katten's redacted invoices are attached at Exhibit A-1.

## V. <u>THE MOTION SHOULD BE GRANTED</u>

18. The Court should grant Katten's request for its fees and expenses resulting from Mr. Lindberg's defense. Because Mr. Lindberg's plea agreement contemplated that Katten would be compensated for its attorneys' fees and because, as set forth below, Katten's fees are reasonable, and this Court should enter an order to distribute funds to Katten for fees in the amount of $368,336.45 and expenses in the amount of $4,068.29.

19. Courts have relied on the recommendations of a special master in determining distribution of legal fees without any further analysis of reasonableness under a factor test. For example, a case involving life insurance companies with numerous impacted policyholders adopted the report of a Special Master approving an attorneys' fees award of approximately $8 million. *See Dickman v. Banner Life Ins. Co.*, 660 F. Supp. 3d 436, 439-40 (D. Md. 2023). The court declined to consider any other factors for reasonableness of fees. *Id.* Katten's requested fees—roughly 33% of those awarded in *Dickman*—represent reasonable and efficient advocacy in a complex and lengthy series of cases.

20. In the alternative, the Fourth Circuit evaluates the reasonableness of requested attorneys' fees by looking to twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar

cases. *Barber v. Kimbrell's, Inc.*, 557 F.2d 216, 226 n.28 (4th Cir. 1978); *see also Hogan v. Cherokee County*, No. 1:18-cv-00096-MR-WCM, 2022 WL 526008, at *2 (W.D.N.C. Feb. 22, 2022) (evaluating the reasonableness of attorneys' fees under the twelve factors).

21. Each of the relevant factors weighs in favor of a finding that Katten's requested attorneys' fees are reasonable. Mr. Lindberg's counsel expended the necessary amount of time to defend a sprawling and complex series of interrelated enforcement and litigation matters that included numerous legal projects as set forth previously and below. *See* Exhibit A.

22. Mr. Lindberg's defense, ongoing after more than five years, involved difficult and complex questions requiring significant skill to navigate and address. As is evident from the Indictment, the Plea Agreement, the Special Master Order, and as is addressed in the Special Master's First, Second, Third, and Fourth Status Reports (FN Dkt. Nos. 65, 80, 94, 147), this Case involves complicated issues because, among other reasons: there are several insurance company victims with tens of thousands of impacted policyholders; several of the insurance company victims are in liquidation proceedings; several victims have received, or will receive, compensatory payments from other sources; certain of the Defendant's assets are subject to substantial third-party claims; certain victims have civil judgments for money damages against Defendant and his assets; and Defendant's assets are not readily convertible to cash. FN Dkt. 56, at 2. Other complicating factors include the complex corporate governance structure of the Primary Restitution Assets, the secured debt obligations on unfavorable terms encumbering the Defendant's assets, and the numerous pending civil actions with the potential to disrupt the Special Master's efforts.

23. The Special Master confirmed the sheer complexity of these matters cogently in the Special Master's First Status Report over the course of five pages of discussion:

> Defendant amassed ownership in a complicated web of hundreds of companies across various industries financed through an even more complicated web of lending arrangements with Defendant's insurance company affiliates that the Special Master is investigating. For example, NHC, one of the Primary Restitution Assets, comprises more than three hundred (300) individual SACs. The corporate governance structure of NHC and the SACs is not simple.

FN Dkt. 65 at p. 4–9.

24. As set forth in the McCarthy Declaration, Katten's fees and expenses in the Financial case were reasonable and necessary to defend Mr. Lindberg in these interrelated enforcement actions by DOJ and SEC.

25. All requested fees reflect the hours actually worked by Katten and the hourly rates in effect at the time that the services were rendered. Mr. Lindberg's defense team was appropriately staffed with a blend of more experienced and more junior lawyers, each of whom charged not just a market-appropriate rate for the work they performed, but all attorneys performed work on a 15% discounted hourly rate.

26. All requested expenses reflect the actual and necessary expenses of Katten and are billed at the actual amounts paid by Katten for the said expenses.

27. The Motion and this Memorandum were presented to the Special Master for review and he does not oppose the entry of orders approving these fees, but he does oppose Katten's proposed timing of the payment of such fees.

## VI. CONCLUSION

**WHEREFORE**, Katten respectfully requests that the Court grant the Fifth Opposed Motion for the Payment of Fees and Expenses.


Case 3:23-cr-00048-MOC-DCK Document 337 Filed 09/01/26 Page 12 of 14

Date: September 1, 2026

Respectfully Submitted:

**KATTEN MUCHIN ROSENMAN LLP**

Robert T. Smith (*pro hac vice*)
robert.smith1@katten.com
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
(202) 625-3500 – telephone

*/s/ Brandon N. McCarthy*
Ryan J. Meyer (*pro hac vice*)
Texas SBN: 24088053
Ryan.meyer@katten.com
Brandon N. McCarthy (*pro hac vice*)
Texas SBN: 24027486
Brandon.mccarthy@katten.com
Rachel M. Riley (*pro hac vice*)
Texas SBN: 24093044
Rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl Street
Suite 1100
Dallas, Texas 75201
(214) 765-3600 – telephone
(214) 765-3602 – facsimile

*Counsel for Defendant Greg E. Lindberg*

## **CERTIFICATION**

Pursuant to the Court's June 18, 2024 Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 1st day of September, 2026.

*/s/ Brandon N. McCarthy*
Ryan J. Meyer (*pro hac vice*)
Texas SBN: 24088053
Ryan.meyer@katten.com
Brandon N. McCarthy (*pro hac vice*)
Texas SBN: 24027486
Brandon.mccarthy@katten.com
Rachel M. Riley (*pro hac vice*)
Texas SBN: 24093044
Rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl Street
Suite 1100
Dallas, Texas 75201
(214) 765-3600 – telephone
(214) 765-3602 – facsimile

*Counsel for Defendant Greg E. Lindberg*