**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREG E. LINDBERG,<br>Defendant. | Case No. 5:19-CR-22-MOC<br>Case No. 3:23-CR-48-MOC<br>Judge Max O. Cogburn, Jr. |

**DECLARATION OF GREG E. LINDBERG IN SUPPORT OF DEFENDANT'S MOTION TO STAY DISPOSITION OF THE DAMOVO ASSET**

I, Greg E. Lindberg, declare as follows:

1. I am the defendant in this action. I make this declaration in support of my Motion to Stay Disposition of the Damovo Asset (3:23 Doc. No. 320) and my responses to the oppositions to that Motion filed by the United States and by the Special Master. Except where I state that a matter is based on information and belief, the facts set forth below are within my personal knowledge, and if called as a witness I could and would testify competently to them.

2. On June 27, 2019, I, together with entities I controlled, entered into a Memorandum of Understanding (the "MOU") with the North Carolina insurance companies. I negotiated and signed the MOU, and I am familiar with its terms.

3. Under Article II, Section 3.i of the MOU, the two directors appointed by AAI hold a veto over any sale of the assets or stock of the new holding company, NHC, or of any NHC subsidiary. That provision states that, "provided that there is no default under any Loan, the NHC Board may not approve the sale



Case 3:23-cr-00048-MOC-DCK Document 340-2 Filed 09/07/26 Page 1 of 5

of the assets or stock of NHC or any NHC subsidiary without the affirmative consent of at least one AAI Director." The consent of an AAI-appointed director is thus required for any such sale.

4. The only circumstance in which that consent requirement drops away is a "default under any Loan." The "Loans" referred to in that proviso are the loans as they were to be amended, restructured, and assumed by NHC under Article III of the MOU—the Global Loan Amendments. The events that would constitute a "default" for this purpose were to be set out in the "Default and Remedy Terms" that Article III of the MOU called for.

5. The Interim Loan Amendment, which was executed the same day as the MOU, waived any and all claims for any Events of Default existing as of that date. As a result, there was no subsisting default under any loan when the MOU took effect.

6. Article III of the MOU was never implemented. The Global Loan Amendments were never executed, the restructured Loans were never assumed by or assigned to NHC, and the Default and Remedy Terms were never adopted. In the litigation the North Carolina insurance companies brought against me over the MOU—Southland National Insurance Company v. Lindberg, No. 19-CVS-013093, in the Wake County Superior Court—the court held that Article III was an unenforceable agreement to agree and severed it, enforcing the remainder of the MOU against me. That judgment was affirmed on appeal. The default provisions that alone could trigger a loss of the AAI consent right were therefore never implemented.

7. To my knowledge, neither the North Carolina insurance companies, nor Michael Dinius, nor anyone else has ever asserted a default under Article III of the MOU, and no "default under any Loan," as the MOU uses that term, has ever been declared.

8. If the North Carolina insurance companies could simply declare defaults under the old, pre-MOU loan agreements in order to deprive me of the AAI consent right, the veto provision would be rendered meaningless. That is not what the MOU provides.

9. When the Special Master/Receiver acquired AAI's rights in NHC, the AAI consent right passed to him intact. He has exercised it. In connection with the sale of Beckett, it is my understanding that no buyer would have closed the sale without the affirmative consent of the Special Master/Receiver's NHC-board designee, and the Special Master/Receiver furnished that consent, including by providing the buyer a letter of non-objection.

10. Damovo (the Damovo Group of Companies) is one of the Specified Affiliated Companies under the MOU and has been treated in this proceeding as one of the Primary Restitution Assets.

11. I am informed and believe that a disposition of Damovo is being arranged under which, by the purchaser's own account, the sale would generate no sale proceeds, and the only value extracted would be approximately $17.5 million in so-called "consent fees"—approximately $13 million to the Joint Provisional Liquidators of the Bermuda insurers, approximately $4.5 million to NHC, and ten dollars ($10.00) to the North Carolina insurance estates. To

my knowledge, that disposition has not been submitted to this Court for review, and no AAI-appointed director's consent has been sought or given for it.

12. Based on my knowledge of the Damovo business and its operations, Damovo is a going concern worth between approximately $400 million and $500 million, and a sale at that value would substantially satisfy my restitution obligation. There is a concrete, materially higher alternative to the contemplated transaction: on July 31, 2026, Twelve Seas Investment Company III delivered a written indication of interest proposing to acquire Damovo at a $400 million enterprise value, backed by approximately $175 million held in trust by a NASDAQ-listed acquirer. I have asked the Wake County Superior Court to instruct NHC to engage promptly and in good faith with that offer, to require that all proceeds of any Damovo transaction be placed in the escrow of this Court, and to bar any closing until this Court approves the transaction and all of its terms. Selling Damovo for no proceeds and a sliver of consent fees, rather than pursuing an offer of that magnitude, would forgo hundreds of millions of dollars that could be applied to restitution.

13. If Damovo is sold on the contemplated terms before this Court can review the transaction, that sale cannot be undone. The value available to satisfy the restitution the Court is to determine—and to fix the forfeiture keyed to it—would be permanently reduced.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 6 2026.

Greg E. Lindberg
Defendant
BOP Inmate # 34-828-058