**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br><br>Judge Max O. Cogburn, Jr. |

**REPLY EXHIBIT D**
**E-MAIL TO THE SPECIAL MASTER REQUESTING THAT HE WITHDRAW FROM THE REFERENCE AND CEASE EX PARTE COMMUNICATION**

This exhibit is the e-mail sent by Defendant's counsel to the Special Master, his counsel, and his financial advisor, with Government counsel copied, requesting that the Special Master withdraw from the reference in light of the ex parte communications described in his own response and affidavit (Docs. 343, 344), confirming that Defendant has not waived his objections, restating the Special Master's position on the withheld data in his own words, objecting to the fees paid from the estate and demanding their return, and demanding production. It is reproduced as sent.

**From:** vramachandran@dhammalaw.com
**Subject:** Re: Production Request to Special Master
**Date:** September 14, 2026 at 9:42 PM
**To:** Michael Martinez mmartinez@grierlaw.com
**Cc:** Ryan, Daniel (USANCW) Daniel.Ryan@usdoj.gov, Freeman, Lyndie (CRM) Lyndie.Freeman@usdoj.gov, Bain-Creed, Benjamin (USANCW) Benjamin.Bain-Creed@usdoj.gov, Jeremy Sanders jeremy.sanders@usdoj.gov, Joe Grier jgrier@grierlaw.com, McCarthy, Brandon N. brandon.mccarthy@katten.com, Meyer, Ryan J. ryan.meyer@katten.com, Barnesatty barnesatty@aol.com

V

Mr. Grier and Mr. Martinez:

**Resent with corrections. Ignore the prior version sent a few minutes ago. This is the final version.**

Request that the Special Master withdraw. In light of the ex parte communications your own affidavit describes—"daily (or near daily)" contacts with the Government, victims, receivers, regulators, and prospective purchasers, never "tallied" and never placed on the record, Doc. 343 ¶¶ 8–11—Defendant renews his request that the Special Master withdraw from the reference. Pending the Court's ruling, Defendant asks that the Special Master, his counsel, and his financial advisor cease substantive communication with the Government or any third party concerning loss, valuation, causation, offsets, or credits except on notice to defense counsel and on the record. An officer to whom the Court referred the restitution issue under 18 U.S.C. § 3664(d)(6) stands in the position of a magistrate judge for that purpose. The Appointment Order directs the Special Master to "regularly update the Parties" and to "consult with the Parties," Doc. 56 ¶ 5, meaning both parties, and contains no provision authorizing one-sided communication with the Government or with third parties about the substance of the determination. Fed. R. Civ. P. 53(b)(2)(B) requires that any such authorization be stated in the appointing order; none is.

No waiver. Defendant did not consent to those communications and did not know they were prohibited until current counsel advised him shortly before Docs. 331 and 332 were filed. He is not a lawyer. Your response's suggestion that his affidavit is "misleading" because of the weekly meetings, Doc. 344, at 1, mistakes prior counsel's attendance at joint sessions—Mr. Lindberg himself did not attend them, Doc. 332-1 ¶ 2—for knowledge of, and consent to, communications that took place outside them and were never disclosed. For our part: the only communication your office initiated with current counsel outside the Government's presence concerned an AAPC tax form Mr. Lindberg was required to sign. It was not substantive, and I nonetheless copied the Government to it the moment I recognized the issue. Doc. 331-2, at 27, 29.

Your position on the data, in your own words. On August 17 you were asked whether you would place the requested financial and board reports, valuations, and offers on the record under seal "to avoid the motion." Your answer was "No." Doc. 331-2, at 2. You then offered production only "under a confidentiality order," Doc. 331-2, at 57. Your response to the motion states that the Special Master "does not have the historical data that Defendant would presumptively use to demonstrate these offsets," Doc. 344, at 12, while your affidavit concedes that the Special Master "did not provide … each and every document … Defendant's counsel asked to review," Doc. 343 ¶ 24. A report that rests on data its author admits he did not provide, and in part does not have, cannot be adopted as the Court's de novo determination. Moreover, the list of requests we compiled after

novo determination. Moreover, the list of requests we compiled after consulting with Katten identifies numerous items that were never produced, or were produced only in part. Because the ex parte communications have not been disclosed and, by your own account, cannot be reconstructed, Doc. 343 ¶¶ 9–10, Defendant has no way to know what was and was not produced bearing on the base loss calculations, causation, offsets, and credits. **And blaming a Defendant who does not know what the content of each of your ex parte communications is not what the law condones.**

**Unless all of it is disclosed, Defendant cannot waive what has not been disclosed. For clarity, Defendant does not waive, will not waive, and does not condone the ex parte communications in the past or in the future. To state that it's all waived, without looking at the content of each and every communication is not possible for anyone. Recusal is the only option.**

Fees. On July 16, 2026, your office told Defendant's then-counsel that there was no money for professional fees at that time unless and until another asset was sold. Fourteen days later the Special Master moved for approval of his own compensation and his advisors' (Doc. 263), which the Court granted (Doc. 327), and the Special Master has since opposed the fee motion of Defendant's prior counsel, Katten (Doc. 338). Litson PLLC, which was defending Defendant in July 2026, was never paid from the estate. To be clear, the lawyers left unpaid were prior counsel; current counsel do not charge the Special Master or the estate and have submitted no fees for his presentation (Doc. 292, at 22 n.2). Defendant objects to every fee and expense paid or to be paid to the Special Master, his counsel, and his financial advisor from the Primary Restitution Assets pending resolution of the constitutional objections, Doc. 269-5 ¶¶ 1, 5, and renews his request for a full accounting of all fees paid from the estate.
Demand. Within seven days, please produce on the docket (or, if the Court so orders, under a protective order that preserves Defendant's ability to use the material at the hearing): (a) the Paladin loss-calculation workpapers and weekly slide decks, Doc. 343 ¶ 20; (b) the IALA balance data and roll-forward calculations, id. ¶ 21; (c) every communication with the Government, victims, receivers, rehabilitators, liquidators, regulators, guaranty associations, and prospective purchasers concerning loss, valuation, causation, offsets, or credits; (d) the Beckett sale price, the fairness opinion, and the accounting of the approximately $19 million in fees generated by that transaction; and (e) the per-victim loss and offset computations underlying the $1.655 billion figure and its $263 million interest component.

Sincerely,
Vivek

> On 2026-08-28 17:27, vramachandran@dhammalaw.com wrote:
>
> > Michael
> >
> > We have not obtained this information in the past from you. Please produce these under the criminal discovery order so that the 4th circuit can review them. We will file under seal as appropriate subject to the criminal discovery order you cited.
> >
> > The Special Master, appointed by the Court and serving as receiver in this matter, prepared the loss and valuation figures on which the

restitution and forfeiture now rest and placed them before the Court -- the approximately $1.655 billion loss and the low, middle, and high "desktop" valuations of the companies -- while withholding the data, methodology, and communications that underlie them. As the Court's neutral, its officer, and a fiduciary charged with a complete and accurate accounting of each victim's loss, the Special Master must produce that material, or lodge it on the Court's record under the existing protective order. A restitution and valuation determination cannot rest on a black box that neither the defendant nor the Court can examine. This is our meet-and-confer demand before we move to compel.

## REQUEST-AND-REFUSAL CHRONOLOGY

The requests that follow are not new. The defense has sought this data since the Special Master's appointment and has been refused, deferred, or met with silence at each turn:

* Jan. 23, 2025 -- the Special Master is appointed (Doc. 56); the defense begins requesting the underlying data as soon as he is in place.
* Spring 2025 -- the defense requests the M3 "desktop" valuations as soon as it learns they exist; never received.
* June 16-17, 2025 -- the defense requests the NCIC loan and restitution data (the Rule 17(c) categories); the Special Master (Mr. Martinez) agrees, on June 17, 2025, to share what the NCICs provided him -- and never does.
* July 29-30, 2025 -- the restitution-calculation process; the defense supplies its own BRG analysis and repayment data to Paladin as the starting point.
* Aug. 13, 2025 -- letter to Mr. Martinez concerning Clanwilliam value and offsets.
* Aug. 2025 -- the Government orally concedes the NCIC-investment offset and declines to confirm it in writing.
* Sept. 16, 2025 -- Restitution Calculation letter to the Special Master and the Financial Advisor.
* Nov. 22-23, 2025 -- further letter to Mr. Martinez setting out the causation and offset position, including that the GBIG team under Mr. Dinius's control valued the North Carolina insurers at approximately $641 million at their October 18, 2018 transfer.
* Dec. 2025 -- the defense's written information requests to Messrs. Grier and Martinez; Mr. Martinez (Dec. 18, 2025) defers the request ("I'll have to review and respond to that separately"). No response follows.
* Mar. 2026 -- the Special Master's report offers only to place the valuation detail on the record under seal / in camera.
* Apr. 3, 2026 -- the Report and Recommendation (Doc. 106 at 29) repeats the under-seal / in-camera offer.
* July 2026 -- the Special Master files updated low, middle, and high figures under seal, with no underlying data.
* Aug. 15-17, 2026 -- counsel's written meet-and-confer demand to Messrs. Martinez and Grier and to the Government; the Special Master will produce only "under a confidentiality agreement," the Government responds that it is "reserving [its] position" until it sees the motion, and the Special Master's final answer is "No."

## THE FIGURES CANNOT REST ON A BLACK BOX

The Special Master's own figures cannot be entered on a record the defendant and the Court cannot examine.

* As Special Master and receiver, the Special Master owes the Court a complete and accurate accounting of each victim's loss, and the Court must be able to review that determination de novo. 18 U.S.C. § 3664(a), (d)(6). A methodology and data set withheld from the defendant and the Court defeats both.
* As the Court's neutral and its officer, the Special Master's loss and valuation figures must be supported on the record. The Special Master has himself described the valuations as a "best guess" and "inherently unreliable" -- which makes the underlying data indispensable, not optional.
* The withheld data is favorable, material evidence -- exculpatory (the offsets, credits, true values, and overpayment) and impeaching -- and because the Special Master acts on the Government's behalf for purposes of restitution, Kyles v. Whitley, 514 U.S. 419 (1995), his withholding also implicates the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). Restitution under the MVRA is punishment to which Brady applies, Cone v. Bell, 556 U.S. 449 (2009); Ellingburg v. United States, 607 U.S. 163 (2026); and the same figure drove the § 2B1.1 enhancement and the custodial term.
* Loss is not a gross number. The Special Master fixed restitution and the guideline loss on a gross figure, but the MVRA credits the value of property returned to and recovered for the victims, § 3663A(b)(1)(B), and the Guidelines measure the same net loss, U.S.S.G. § 2B1.1 cmt. n.3(E). The defense has a statutory basis to challenge the gross figure, and -- whatever the Special Master's position -- the data must be placed on the record so this Court (de novo, § 3664(d)(6)) and the Fourth Circuit can review it.

## THE SPECIAL MASTER MAY NOT DEAL WITH ONE SIDE EX PARTE

As the Court's neutral, the Special Master may not confer with the Government about the merits off the record and outside the defendant's presence.

* The order appointing a master must state the circumstances, if any, in which the master may communicate ex parte with a party, Fed. R. Civ. P. 53(b)(2)(B); absent that authorization, ex parte merits contact with the Government is improper.
* Due process guarantees the defendant notice and a meaningful opportunity to be heard before a neutral decisionmaker, Goldberg v. Kelly, 397 U.S. 254 (1970); Marshall v. Jerrico, Inc., 446 U.S. 238 (1980); the defendant cannot test or rebut what is delivered to the Special Master, or by the Special Master to the Government, off the record. Off-the-record contact between a court's neutral and one side is impermissible and must occur on the record where the parties can participate, Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996); cf. In re Kensington Int'l Ltd., 368 F.3d 289 (3d Cir. 2004).
* This is an added reason to place the Special Master's communications with the Government and the custodians (Requests 32-40,

and the $641 million communications in Request 21) on the record. And any instruction to withhold information from the defendant (Request 39, "do not tell Greg Lindberg") is especially improper for a court-appointed neutral.

## PROTECTIVE MEASURE; WITHDRAWAL ON AGREEMENT

The defense will place these requests on the Court's docket as a protective measure -- to compel production and preserve the record before an irreversible order of restitution and forfeiture enters. The defense will withdraw them if the Special Master and the Government agree to produce the data, or to place it on the Court's record under the existing protective order. The on-record requirement stands regardless of agreement, because appellate review requires it.

## DEFINITIONS AND INSTRUCTIONS

As used below: "the Companies" means the Primary Restitution Assets and the Specified Affiliated Companies, including AAPC, the North Carolina insurance companies (CBLIC, BLIC, SNIC, and SNRC), the Bermuda insurers, and the affiliated operating companies (including Becket, Clanwilliam, Damovo, and Finanzen). "the Valuations" means the low, middle, and high "desktop" valuations of the Specified Affiliated Companies and AAPC prepared by M3. "the Restitution Figure" means the approximately $1.655 billion loss figure the Special Master prepared and filed. "Communication" means any transmission of information in any form -- email, letter, memorandum, text message, or attachment -- and includes every attachment and enclosure. "Produce" means produce to the defense, or lodge on the Court's record under the existing protective order (under seal where appropriate). Unless a request states otherwise, the relevant period is January 1, 2022 to the present for financial and board records, and January 1, 2025 (the Special Master's appointment) to the present for the Valuations and any revaluation. Each request runs to the Special Master's own files and to the files of Paladin and the third-party custodians over whom the Special Master has authority as Special Master and receiver, and whose production he can compel.

## A. COMPANY VALUATIONS

1. Produce the M3 "desktop" valuations of the Specified Affiliated Companies and AAPC -- including the low, middle, and high value ascribed to each company -- for 2025, together with every draft, and any recommendation by M3 as to whether any valuation should be placed on, or withheld from, the record. (Requested since spring 2025; offered only under seal/in camera in March and April 2026; filed under seal in July 2026 with no data; refused, "No," on Aug. 17, 2026.)

2. Produce all data, inputs, assumptions, models, workpapers, and methodology underlying the M3 Valuations -- identifying who performed each valuation and what was relied upon -- together with M3's transmittal correspondence and any Communication reflecting M3's position on disclosure of the Valuations. (Requested repeatedly since spring 2025; never produced.)

3. Produce every valuation, updated valuation, and revaluation of each of the Companies prepared or received from January 2025 to the present, together with all documents showing the reason for each change in value, including the reduction in AAPC's value. (Requested "going back to essentially January of 2025 … repeatedly"; never produced.)

4. Produce the low, middle, and high valuation figures filed under seal with the Court in July 2026, and all data, workpapers, and analyses underlying them. (Demanded on the record Aug. 15–17, 2026; refused, "No.")

5. Produce the valuation data the Special Master represented, in March 2026, that he would provide to the Court under seal, together with all documents the Special Master intends to rely upon in support of any valuation. (Offered by the SM in March 2026 and April 3, 2026 (Doc. 106 at 29); demanded Aug. 17, 2026; refused, "No.")

6. Produce all documents showing the basis for reducing the value of AAPC to zero or near zero, and all analyses of how that reduction affects or triggers the forfeiture money judgment. (Demanded Aug. 17, 2026; never explained.)

7. Produce all Communications between the Special Master or Paladin and M3, or any other valuation professional, concerning the Valuations or any valuation of the Companies. (Within the valuation methodology requested since spring 2025; never produced.)

B. THE $1.655 BILLION LOSS BUILD

8. Produce the complete data, spreadsheets, workpapers, and methodology underlying the Restitution Figure. (Sought throughout 2025, including by the Sept. 16, 2025 letter, and demanded Aug. 17, 2026; never fully produced.)

9. Produce all spreadsheets prepared by Paladin or Michael Dinius reflecting the starting loan balances used to build the Restitution Figure. (Sought via the June 16–17, 2025 subpoena effort; not fully produced.)

10. Produce all repayment data and loan-balance base data used as the starting point for the Restitution Figure, including the data the Special Master or Paladin derived from the BRG analysis and repayment data the defense supplied on or about July 29, 2025. (Requested June 16, 2025; the SM agreed June 17, 2025 to share the NCIC-provided data; never produced.)

11. Produce all LoanIQ screenshots, exports, and outputs in the Special Master's or Paladin's possession, custody, or control relating to the affiliated loans or the Restitution Figure. (Identified as the "best" materials in hand on the July 29, 2025 call; demanded; not produced.)

12. Produce the affiliated-loan base data for each insurance company (North Carolina and Bermuda) as of each of the following dates: (a) October 18, 2018; (b) the date of the MOU; and (c) the date the Bermuda companies were transferred to the joint provisional

liquidators. (These three dates requested July 30, 2025; the custodians' authoritative data still owed.)

13. Produce all repayment calculations and reconciliations under the ILA and the MOU, including the treatment of the ECL debt assumed by North Carolina in March 2024 and the preferred-equity items arising from the April 2022 AAPC refinance. (Worked through in August 2025; the underlying data not produced.)

14. Produce all documents supporting the ULICO reconciliation, including the statutory reserve for the reinsurance trust, the net amount lent by ULICO to the trust, and the data supporting the amount owed by PBLA to ULICO. (The defense flagged this calculation Aug. 15, 2025, calculating $509 million or less; reconciliation data not produced.)

15. Produce all documents showing the iteration history of the loss memoranda -- the progression from approximately $2.9 billion to approximately $1.6 billion -- and identifying what changed at each step and why. (Observed through the objection process in 2025-26; the internal iterations and their basis never produced.)

C. OFFSETS AND CREDITS

16. Produce all documents showing the method of calculation for every offset and credit applied or disallowed in the Restitution Figure, together with the repayment data underlying each disputed offset. (Requested in Doc. 309 § VI and in conferral; on Aug. 17, 2026 the SM stated a methodology but withheld the data; refused, "No.")

17. Apply, and confirm on the record, the defendant's investment in the North Carolina insurance companies as an offset against restitution -- which the Government has conceded is an offset -- and produce all data and methodology applying that offset against the Restitution Figure. (Conceded by the Government orally in August 2025; not memorialized; on Aug. 17, 2026 the Government "reserved its position.")

18. Produce the terms of the agreed Clanwilliam offset, and all data and valuations applying it, including the value of Clanwilliam at the time of its October 2024 transfer to New Holding Company (the defense's position: approximately 22x EBITDA, or roughly $800 million, versus the approximately $450 million sale). (The offset was agreed in conferral; the data behind it was never produced.)

19. Produce all documents identifying the source of, and itemizing by component and amount, the approximately $100 million in additional offsets Paladin obtained from Michael Dinius beyond the offsets the defense requested, together with the data supporting each component. (Flagged during the 2025-26 reconciliation; never disclosed.)

20. Produce all data supporting or bearing upon each disallowed offset, including: the approximately $44 million in preferred-equity NCIC payments; the PBLA/Northstar AAPC tranche; the $9.5 million Finanzen sale; the $13.6 million PBLA real-estate sale; the CBL

subordination fee on Beckett; the SNIC escrow; and the CBL redemption fee. (Each presented to Paladin in the July 19, 2026 breakdown and disallowed; the third-party records to prove them are withheld.)

21. Produce (a) the November 2018 valuation prepared by the GBIG team under Michael Dinius's control valuing the North Carolina insurance companies at approximately $641 million upon their October 18, 2018 transfer, together with all data, models, and workpapers supporting it; and (b) all Communications between or among the Special Master, Paladin or Mr. Dinius, and the Government concerning that valuation, its treatment, and the reasons it was not applied as an offset against the Restitution Figure. (A valuation prepared under Mr. Dinius's own control, not a defense estimate; put to the process July 30, 2025 and restated Nov. 23, 2025; neither the valuation nor the communications produced.)

22. Produce all data and documents concerning the operation, management, and disposition of each of the Companies after its transfer, bearing on intervening cause and proximate cause. (Sought via the subpoenas (Doc. 248) and conferral; withheld.)

D. BOARD AND FINANCIAL RECORDS

23. Produce all board books and board packs of AAPC for the last four years. (Requested of the SM, who "never sent us information like that"; formally demanded Aug. 17, 2026; not produced.)

24. Produce all board books and board packs of NHC for the last four years. (Same demand of Aug. 17, 2026; not produced.)

25. Produce all board minutes, financial reports, and financial presentations for each of the Companies for the last four years. (Demanded -- "all financial reports and all board reports … for the last four years" -- Aug. 17, 2026; not produced.)

26. Produce all letters of intent received for any of the Companies. (Demanded Aug. 17, 2026; not produced. Market evidence of value -- e.g., the $400–500 million Damovo interest.)

27. Produce all offers to purchase received for any of the Companies. (Demanded Aug. 17, 2026; not produced.)

E. SALE AND MARKETING PROCESS

28. Produce all documents and Communications concerning the marketing and sale of any of the Companies -- including Becket, Clanwilliam, Damovo, and AAPC and the Specified Affiliated Companies -- including all bids, indications of interest, offers, and valuations generated in that process. (Sought via the subpoenas (Doc. 248) and conferral; withheld.)

29. Produce the terms, proceeds, and closing documents for every completed sale of any of the Companies, including the sale of Becket and the sale of Clanwilliam and the associated Triton escrow agreement. (The Clanwilliam/Triton escrow located by counsel in July 2026; the full closing and proceeds set owed.)

30. For any sale or offer that did not close, produce all documents explaining why it did not close. (Tied to the sale-process subpoenas; withheld.)

31. Produce all figures, terms, offers, and valuations concerning Damovo. (The SM "never gave us any figures at all" on Damovo, confirmed Aug. 7, 2026; still owed.)

F. COMMUNICATIONS

32. Produce all Communications between the Special Master or Paladin and New Holding Company concerning the valuation of any of the Companies or the Restitution Figure.

33. Produce all Communications between the Special Master or Paladin and AAPC or its board concerning the valuation of any of the Companies or the Restitution Figure.

34. Produce all Communications between the Special Master or Paladin and the bankers -- whether directly, or through AAPC's board -- concerning the valuation, marketing, or sale of any of the Companies.

35. Produce all Communications between the Special Master or Paladin and North Carolina counsel, West Camden, or Williams Mullen concerning the valuation of any of the Companies or the Restitution Figure.

36. Produce all Communications between the Special Master or Paladin and NHC concerning the valuation of any of the Companies or the Restitution Figure.

37. Produce all Communications between the Special Master or Paladin and the Bermuda joint provisional liquidators concerning the valuation of any of the Companies or the Restitution Figure.

38. Produce all Communications of Joseph Grier and Michael Martinez with any party concerning the Restitution Figure or any valuation of the Companies.

(Requests 32-38: these custodians corresponded with Mr. Martinez about value but were told, in substance, "don't tell Greg Lindberg"; sought through conferral and the subpoenas (Doc. 248); withheld.)

39. Produce all Communications instructing or reflecting that information be withheld from the defendant, including any Communication to the effect of "do not tell Greg Lindberg." (Sought via subpoena; withheld. Especially improper for a court-appointed neutral, and relevant to disqualification.)

G. DEALINGS WITH THE GOVERNMENT, AND THE BASIS IN THE SPECIAL MASTER'S POSSESSION

40. Produce all Communications between the Special Master or Paladin and the Government concerning the valuation of any of the Companies or the Restitution Figure. (Demanded Aug. 17, 2026; the Government "reserved its position.")

41. Produce all data and methodology in the Special Master's or Paladin's possession, custody, or control supporting the Restitution Figure and the low, middle, and high valuations. (Demanded Aug. 17, 2026; not produced.)

42. Produce all materials the Special Master provided in support of the loss figure that was used at sentencing in the guideline calculation. (The same figure drove the § 2B1.1 enhancement and the term; not produced.)

H. IDENTIFIED FILES (PRODUCE IN NATIVE FORMAT)

43. Produce, in native format, 7.9.2025 NC Cos Restitution Calc UPDATES SEND 2.xlsx (the approximately $641 million restitution calculation).

44. Produce, in native format, Insurance Loan _18-Oct 18 (003).xlsx (the October 18, 2018 balances).

45. Produce, in native format, ILA loans _Jul 25.xlsx.

46. Produce, in native format, 9.16.2025 NC Cos, ULICO, BICs Restitution Calc -- EXHIBIT L.xlsx.

47. Produce, in native format, 9.16.2025 Restitution Calc Letter to SM & FA … CLEAN.docx.

48. Produce, in native format, 4.12.2025 PSR Objections.FINAL.SEND 2.docx.

49. Produce, in native format, 8.19.2025 AAPC Dividend Distro.xlsx.

50. Produce all M3 desktop valuation files, in native format.

51. Produce the Special Master's Appendix 1 to the Final Supplement (July 2026) and all data underlying it. (The defense contends it contains only attorney argument; the defense will move to unseal.)

I. ADDITIONAL ITEMS

52. Produce the letter or letters from West Camden to the Special Master disputing his authority, which the Special Master forwarded, and all similar letters from the North Carolina insurance companies, NHC, or any other custodian refusing or disputing the Special Master's authority to compel information. (The SM produced one such letter; the balance of the authority-dispute correspondence was not produced -- direct proof that the "available by other means" premise fails.)

53. Produce the Special Master's requests for the AAPC waivers, and all Communications concerning those waivers. (The waiver requests themselves were produced; the surrounding communications, bearing on control, value, and the AAPC downgrade, were withheld.)

54. Produce all Communications with Steve Wilson, the trustee of the trusts, concerning the trusts, their assets, and any disposition or valuation of those assets. (Some communications from the trustee were produced; the balance, bearing on the trust assets and the Clanwilliam sale, was withheld.)

---

That is the production the Special Master must make. Please confirm whether the Special Master will produce these materials, or lodge them on the Court's record under the existing protective order; if he will not, the defense will move to compel and will place before the Court that the loss and valuation figures the Special Master prepared and filed are unsupported by any data he is willing to disclose.

Sincerely,
Vivek

-------- Original Message --------
Subject: Re: [EXTERNAL] Re: THIS IS A BRADY/GIGLIO SUPPRESSION, NOT A DISCOVERY SQUABBLE
Date: 2026-08-28 17:12
From: vramachandran@dhammalaw.com
To: "Daniel (USANCW) Ryan" <daniel.ryan@usdoj.gov>
Cc: Barnesatty <barnesatty@aol.com>, "Lyndie (FRD) Freeman" <lyndie.freeman@usdoj.gov>, "Benjamin (USANCW) Bain-Creed" <benjamin.bain-creed@usdoj.gov>, Joe Grier <jgrier@grierlaw.com>, "Jeremy (FRD) Sanders" <jeremy.sanders@usdoj.gov>, "Dana (USANCW) Washington" <dana.washington@usdoj.gov>, Michael Martinez <mmartinez@grierlaw.com>, "Ryan J. Meyer" <ryan.meyer@katten.com>, "Brandon N. McCarthy" <brandon.mccarthy@katten.com>

In case, you think that no means yes. Defendant does not agree with the
characterization of that you are putting forward.

Also, please tell me your position on ex parte communication you had with the Special Master and associated parties (including Paladin.

The order specifies that Greg Lindberg can communicate with the special
master. So our communications are not at issue here the government's is.

Thank you.

Sincerely,
Vivek

On 2026-08-28 17:02, Vramachandran wrote:

> Dan,
>
> We are asking for all of the information because we have gotten none from anyone else.
>
> You have the information. You need to give us the information.

You have the information. You need to give us the information.

Sincerely,
Vivek

On Aug 28, 2026 at 4:57 PM, <Vramachandran> wrote:

Dan,

And on the confidentiality agreement. We are talking about the government which has already sent us 302 information.

You can use the same mechanism. The government is being asked in this request not the special master. You are going to defend this at the district court and at the 4th circuit. You adopted the report wholesale. It's you job to get Defendant the underlying information to support your case.

This is United States v. Greg Lindberg. Not Grier v. Greg Lindberg a civil dispute to sign a confidentiality agreement to get information from the government on its burden of proof. Restitution is criminal punishment you agreed to that in a filing with this very court.

Also we need all your ex parte communications with The special master and anyone associated with the special master including Paladin.

You are claiming each and every item listed below in our Claim for restitution and for forfeiture. We need the government to tell the defendant why and account for it under MVRA.

The judge has also not seen it nor the 4th circuit. A confidentiality agreement will not let the 4th circuit see this information.

The government is the party not someone else who has the burden of production.

Please stop pointing to the special master and get us the info.
Please follow the MVRA and the constitution of the United States.
Thank you

Sincerely,
Vivek

On Aug 28, 2026 at 4:37 PM, <Vramachandran> wrote:

Dan,

You are still silent in the ex-parte communication.

You adopted the numbers wholesale they are yours to defend as the party with the burden of proof. These requests are yours to produce

produce
because you are relying on them for your burden of proof under
MVRA

We need you to give us the information below because you adopted
them. They are the government's to establish or not.

We are asking you to get us this information.

This is a criminal proceeding. If you adopted them they are
Brady/giglo information. You should get them to support the
1.6billion in restitution and the sentence where you said more
evidence is now available to get Greg Lindberg 12 years and a
stacked sentence.

We look forward to receiving the information from you.

Sincerely,
Vice

Sent with Spark [1 [1]]
On Aug 28, 2026 at 4:31 PM -0400, Ryan, Daniel (USANCW)
<Daniel.Ryan@usdoj.gov>, wrote:
Vivek, we disagree with your purported facts and legal
conclusions.
Among other things your purported factual timeline includes
numerous
entries that appear to describe communications between Defendant,
the Special Master, and/or Paladin--communications in which the
Government was not involved. Thus, we have no idea what requests
the
Defendant previously made and what information he received back. I
asked you for that information several days ago, and you have not
provided it. Instead, you provided a list of 54 overly broad
categories without any information about which of these materials
are already in Defendant's possession.

The Government has complied with its discovery obligations in this
case. But, as always, if there is information under the control of
the Government that the Defendant does not have and to which he is
entitled, we will work to get it to him. That said, the Special
Master offered to provide valuation materials to you under a
confidentiality agreement, but rather than work with him to reach
an
agreement, you filed a motion with the Court that is still
pending.

In short, feel free to file whatever additional motions you feel
are
appropriate with the Court, and we will respond as appropriate.

Dan

-----Original Message-----
From: vramachandran@dhammalaw.com <vramachandran@dhammalaw.com
Sent: Friday, August 28, 2026 3:14 PM
To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov
Cc: Barnesatty <barnesatty@aol.com; Freeman, Lyndie (FRD)

Cc: Barnesatty <barnesatty@aol.com; Freeman, Lyndie (FRD) <Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov; Joe Grier <jgrier@grierlaw.com; Sanders, Jeremy (FRD) <Jeremy.Sanders@usdoj.gov; Washington, Dana (USANCW) <Dana.Washington@usdoj.gov; Michael Martinez <mmartinez@grierlaw.com; Ryan J. Meyer <ryan.meyer@katten.com; Brandon N. McCarthy <brandon.mccarthy@katten.com
Subject: [EXTERNAL] Re: THIS IS A BRADY/GIGLIO SUPPRESSION, NOT A DISCOVERY SQUABBLE

Dan,

The Government has adopted the Special Master's loss and valuation figures wholesale and placed them before the Court -- at sentencing, where the approximately $1.655 billion loss drove the guideline enhancement and the custodial term, and again as the basis for restitution and for the forfeiture measured against the "Mid" estimate.
Having adopted those numbers as its own, and bearing the burden of proving each victim's loss by a preponderance under 18 U.S.C. § 3664(e), the Government must produce -- from its own files, and by compelling production from its agent and the third-party custodians identified below -- the data, methodology, valuations, and communications on which the figure rests. It cannot place a number before the Court, rely on it to imprison and to seize, and then disclaim knowledge of its basis. This is our meet-and-confer demand before we move to compel.

REQUEST-AND-REFUSAL CHRONOLOGY
------------------------------

The requests that follow are not new. The defense has sought this data since the Special Master's appointment and has been refused, deferred, or met with silence at each turn (this is just illustrative, we asked more times than we list below all met with non-production):

* Jan. 23, 2025 -- the Special Master is appointed (Doc. 56); the defense begins requesting the underlying data as soon as he is in place.
* Spring 2025 -- the defense requests the M3 "desktop" valuations as soon as it learns they exist; never received.
* June 16-17, 2025 -- the defense requests the NCIC loan and restitution data (the Rule 17(c) categories); the Special Master (Mr. Martinez) agrees, on June 17, 2025, to share what the NCICs provided him -- and never does.
* July 29-30, 2025 -- the restitution-calculation process; the defense supplies its own BRG analysis and repayment data to Paladin as the starting point.
* Aug. 13, 2025 -- letter to Mr. Martinez concerning Clanwilliam value and offsets

Clanwilliam value and offsets.
* Aug. 2025 -- the Government orally concedes the NCIC-investment offset and declines to confirm it in writing.
* Sept. 16, 2025 -- Restitution Calculation letter to the Special Master and the Financial Advisor.
* Nov. 22-23, 2025 -- further letter to Mr. Martinez setting out the causation and offset position, including that the GBIG team under Mr. Dinius's control valued the North Carolina insurers at approximately $641 million at their October 18, 2018 transfer.
* Dec. 2025 -- the defense's written information requests to Messrs. Grier and Martinez; Mr. Martinez (Dec. 18, 2025) defers the request ("I'll have to review and respond to that separately"). No response follows.
* Mar. 2026 -- the Special Master's report offers only to place the valuation detail on the record under seal / in camera.
* Apr. 3, 2026 -- the Report and Recommendation (Doc. 106 at 29) repeats the under-seal / in-camera offer.
* July 2026 -- the Special Master files updated low, middle, and high figures under seal, with no underlying data.
* Aug. 15-17, 2026 -- counsel's written meet-and-confer demand to Messrs. Martinez and Grier and to your office; the Special Master will produce only "under a confidentiality agreement," the Government responds that it is "reserving [its] position" until it sees the motion, and the Special Master's final answer is "No."

## THIS IS A BRADY/GIGLIO SUPPRESSION, NOT A DISCOVERY SQUABBLE

The Government's refusal to produce, while adopting the Special Master's figures as its own, is the suppression of favorable, material evidence under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

* Brady reaches punishment, 373 U.S. at 87, and applies at sentencing, Cone v. Bell, 556 U.S. 449 (2009); MVRA restitution is punishment, Ellingburg v. United States, 607 U.S. 163 (2026), and the same figure drove the § 2B1.1 enhancement and the custodial term.
* The materials are favorable both ways -- exculpatory (the offsets, credits, true values, and overpayment) and impeaching, Giglio; United States v. Bagley, 473 U.S. 667 (1985), because the officer whose figures the Government adopted calls them a "best guess" and "inherently unreliable."
* The Government cannot hide behind its agent -- the duty reaches evidence known to those acting on the Government's behalf, Kyles v. Whitley, 514 U.S. 419 (1995); the Special Master and Paladin act on the Government's behalf here.
* All three Brady components are present -- favorable, suppressed, prejudicial, Strickler v. Greene, 527 U.S. 263 (1999).
The oral NCIC offset concession, left unmemorialized, is itself

The oral NCIC-offset concession, left unmemorialized, is itself suppression.
* Loss is not a gross number. The Government and the Special Master fixed restitution and the guideline loss on a gross figure, but the MVRA credits the value of property returned to and recovered for the victims, § 3663A(b)(1)(B), and the Guidelines measure the same net loss, U.S.S.G. § 2B1.1 cmt. n.3(E). The defense has a statutory basis to challenge the gross figure, and -- whether or not the Government agrees -- the data must be placed on the record so this Court (de novo, § 3664(d)(6)) and the Fourth Circuit can review it.

THE EX PARTE CONTACT WITH THE NEUTRAL IS AN INDEPENDENT DUE PROCESS VIOLATION

---

Separately, to the extent the Government has communicated with the Special Master or his financial advisor about valuation and restitution ex parte -- off the record and outside the defense's presence -- that contact offends due process. The Special Master, who serves as the receiver in this matter, is a court-appointed neutral whose findings the Court is asked to adopt; Paladin (including Mr. Dinius) is the Special Master's financial advisor and acts on his behalf.

* Due process guarantees notice and a meaningful opportunity to be heard before a neutral decision maker, Goldberg v. Kelly, 397 U.S. 254 (1970); Marshall v. Jerrico, Inc., 446 U.S. 238 (1980); the defense cannot test or rebut evidence delivered to the Court's neutral behind its back.
* Ex parte contact between a court's own neutral and one side is impermissible and must instead occur on the record, where the parties can participate, Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996); cf. In re Kensington Int'l Ltd., 368 F.3d 289 (3d Cir. 2004).
* The order appointing a master must state the circumstances, if any, in which the master may communicate ex parte with a party, Fed. R. Civ. P. 53(b)(2)(B); absent that authorization, ex parte contact about the merits is unauthorized.
* This is an independent reason the Government's communications with the Special Master and Paladin (Requests 40 and 32-39, and the $641 million communications in Request 21) must be produced and placed on the record: if the contact was proper, producing it costs the Government nothing; if it was ex parte on the merits, the defense is entitled to know it.

to know it.

PROTECTIVE MEASURE; WITHDRAWAL ON AGREEMENT
------------------------------------------

The defense will place these requests on the Court's docket as a protective measure -- to compel production and preserve the record before an irreversible order of restitution and forfeiture enters. The defense will withdraw them if the Government and the Special Master agree to produce the data, or to place it on the Court's record under the existing protective order. The on-record requirement stands regardless of agreement, because appellate review requires it.

DEFINITIONS AND INSTRUCTIONS
----------------------------

As used below: "the Companies" means the Primary Restitution Assets and the Specified Affiliated Companies, including AAPC, the North Carolina insurance companies (CBLIC, BLIC, SNIC, and SNRC), the Bermuda insurers, and the affiliated operating companies (including Becket, Clanwilliam, Damovo, and Finanzen). "the Valuations" means the low, middle, and high "desktop" valuations of the Specified Affiliated Companies and AAPC prepared by M3. "the Restitution Figure" means the approximately $1.655 billion loss figure the Government has adopted. "Communication" means any transmission of information in any form -- email, letter, memorandum, text message, or attachment -- and includes every attachment and enclosure. "Produce" means produce to the defense, or place on the Court's record under the existing protective order (under seal where appropriate). Unless a request states otherwise, the relevant period is January 1, 2022 to the present for financial and board records, and January 1, 2025 (the Special Master's appointment) to the present for the Valuations and any revaluation. Each request runs to the Government's own files and, where the materials are held by the Special Master, Paladin, or a third-party custodian, to the Government's obligation to compel their production because the government has adopted the special master's report wholesale.

A. COMPANY VALUATIONS

1. Produce the M3 "desktop" valuations of the Specified Affiliated Companies and AAPC -- including the low, middle, and high value ascribed to each company -- for 2025, together with every draft, and any recommendation by M3 as to whether any valuation should be placed on, or withheld from, the record. (Requested since spring 2025; offered only under seal/in camera in March and April 2026; filed under seal in July 2026 with no data; refused, "No," on Aug. 17, 2026.)

2. Produce all data, inputs, assumptions, models, workpapers, and methodology underlying the M3 Valuations -- identifying who performed each valuation and what was relied upon -- together with M3's transmittal correspondence and any Communication reflecting M3's position on disclosure of the Valuations. (Requested repeatedly since spring 2025; never produced.)

3. Produce every valuation, updated valuation, and revaluation of each of the Companies prepared or received from January 2025 to the present, together with all documents showing the reason for each change in value, including the reduction in AAPC's value. (Requested "going back to essentially January of 2025 … repeatedly"; never produced.)

4. Produce the low, middle, and high valuation figures filed under seal with the Court in July 2026, and all data, workpapers, and analyses underlying them. (Demanded on the record Aug. 15–17, 2026; refused, "No.")

5. Produce the valuation data the Special Master represented, in March 2026, that he would provide to the Court under seal, together with all documents the Special Master intends to rely upon in support of any valuation. (Offered by the SM in March 2026 and April 3, 2026 (Doc. 106 at 29); demanded Aug. 17, 2026; refused, "No.")

6. Produce all documents showing the basis for reducing the value of AAPC to zero or near zero, and all analyses of how that reduction affects or triggers the forfeiture money judgment. (Demanded Aug. 17, 2026; never explained.)

7. Produce all Communications between the Special Master or Paladin and M3, or any other valuation professional, concerning the Valuations or any valuation of the Companies. (Within the valuation methodology requested since spring 2025; never produced.)

B. THE $1.655 BILLION LOSS BUILD

8. Produce the complete data, spreadsheets, workpapers, and methodology underlying the Restitution Figure. (Sought throughout 2025, including by the Sept. 16, 2025 letter, and demanded Aug. 17, 2026; never fully produced.)

9. Produce all spreadsheets prepared by Paladin or Michael

Dinius reflecting the starting loan balances used to build the Restitution Figure. (Sought via the June 16–17, 2025 subpoena effort; not fully produced.)

10. Produce all repayment data and loan-balance base data used as the starting point for the Restitution Figure, including the data the Government or Paladin derived from the BRG analysis and repayment data the defense supplied on or about July 29, 2025. (Requested June 16, 2025; the SM agreed June 17, 2025 to share the NCIC-provided data; never produced.)

11. Produce all LoanIQ screenshots, exports, and outputs in the Government's possession, custody, or control relating to the affiliated loans or the Restitution Figure. (Identified as the Government's "best" materials on the July 29, 2025 call; demanded; not produced.)

12. Produce the affiliated-loan base data for each insurance company (North Carolina and Bermuda) as of each of the following dates: (a) October 18, 2018; (b) the date of the MOU; and (c) the date the Bermuda companies were transferred to the joint provisional liquidators. (These three dates requested July 30, 2025; the custodians' authoritative data still owed.)

13. Produce all repayment calculations and reconciliations under the ILA and the MOU, including the treatment of the ECL debt assumed by North Carolina in March 2024 and the preferred-equity items arising from the April 2022 AAPC refinance. (Worked through in August 2025; the underlying data not produced.)

14. Produce all documents supporting the ULICO reconciliation, including the statutory reserve for the reinsurance trust, the net amount lent by ULICO to the trust, and the data supporting the amount owed by PBLA to ULICO. (The defense flagged this calculation Aug. 15, 2025, calculating $509 million or less; reconciliation data not produced.)

15. Produce all documents showing the iteration history of the loss memoranda -- the progression from approximately $2.9 billion to approximately $1.6 billion -- and identifying what changed at each step and why. (Observed through the objection process in 2025–26; the internal iterations and their basis never produced.)

C. OFFSETS AND CREDITS

16. Produce all documents showing the method of calculation

for every offset and credit applied or disallowed in the Restitution Figure, together with the repayment data underlying each disputed offset. (Requested in Doc. 309 § VI and in conferral; on Aug. 17, 2026 the SM stated a methodology but withheld the data; refused, "No.")

17. Confirm on the record the Government's concession that the defendant's investment in the North Carolina insurance companies is an offset against restitution, and produce all data and methodology applying that offset against the Restitution Figure. (Conceded orally in August 2025; the Government declined to memorialize it and, on Aug. 17, 2026, "reserved its position.") This in itself is suppression under Brady/Gigilo.

18. Produce the terms of the Government's agreement to a Clanwilliam offset, and all data and valuations applying it, including the value of Clanwilliam at the time of its October 2024 transfer to New Holding Company (the defense's position: approximately 22x EBITDA, or roughly $800 million, versus the approximately $450 million sale). (The agreement was reached in conferral; the data behind the offset was never produced.) This in itself is suppression under Brady/Gigilo.

19. Produce all documents identifying the source of, and itemizing by component and amount, the approximately $100 million in additional offsets Paladin obtained from Michael Dinius beyond the offsets the defense requested, together with the data supporting each component. (Flagged during the 2025–26 reconciliation; never disclosed.)

20. Produce all data supporting or bearing upon each disallowed offset, including: the approximately $44 million in preferred-equity NCIC payments; the PBLA/Northstar AAPC tranche; the $9.5 million Finanzen sale; the $13.6 million PBLA real-estate sale; the CBL subordination fee on Beckett; the SNIC escrow; and the CBL redemption fee. (Each presented to Paladin in the July 19, 2026 breakdown and disallowed; the third-party records to prove them are withheld.)

21. Produce (a) the November 2018 valuation prepared by the GBIG team under Michael Dinius's control valuing the North Carolina insurance companies at approximately $641 million upon their October 18, 2018 transfer, together with all data, models, and workpapers supporting it; and (b) all Communications between or among the Government, the Special Master, and Paladin or Mr. Dinius

concerning
that valuation, its treatment, and the reasons it was not applied as
an offset against the Restitution Figure. (This is a valuation prepared under Mr. Dinius's own control, not a defense estimate; put
to the process July 30, 2025 and restated Nov. 23, 2025; neither the
valuation nor the communications
produced.)

22. Produce all data and documents concerning the operation, management, and disposition of each of the Companies after its transfer, bearing on intervening cause and proximate cause. (Sought
via the subpoenas (Doc. 248) and conferral; withheld.)

D. BOARD AND FINANCIAL RECORDS

23. Produce all board books and board packs of AAPC for the last four years. (Requested of the SM, who "never sent us information like that"; formally demanded Aug. 17, 2026; not produced.)

24. Produce all board books and board packs of NHC for the last four years. (Same demand of Aug. 17, 2026; not produced.)

25. Produce all board minutes, financial reports, and financial presentations for each of the Companies for the last four
years.
(Demanded -- "all financial reports and all board reports … for the last four years" -- Aug. 17, 2026; not produced.)

26. Produce all letters of intent received for any of the Companies.
(Demanded Aug. 17, 2026; not produced. Market evidence of value -- e.g., the $400-500 million Damovo interest.)

27. Produce all offers to purchase received for any of the Companies.
(Demanded Aug. 17, 2026; not produced.)

E. SALE AND MARKETING PROCESS

28. Produce all documents and Communications concerning the marketing and sale of any of the Companies -- including Becket, Clanwilliam, Damovo, and AAPC and the Specified Affiliated Companies
-- including all bids, indications of interest, offers, and valuations generated in that process. (Sought via the subpoenas (Doc. 248) and conferral; withheld.)

29. Produce the terms, proceeds, and closing documents for every completed sale of any of the Companies, including the sale of
Becket and the sale of Clanwilliam and the associated Triton

escrow
agreement. (The Clanwilliam/Triton escrow located by counsel in July
2026; the full closing and proceeds set owed.)

30. For any sale or offer that did not close, produce all documents explaining why it did not close. (Tied to the sale-process subpoenas; withheld.)

31. Produce all figures, terms, offers, and valuations concerning Damovo. (The SM "never gave us any figures at all" on Damovo, confirmed Aug. 7, 2026; still owed.)

F. COMMUNICATIONS

32. Produce all Communications between the Special Master or Paladin and New Holding Company concerning the valuation of any of the Companies or the Restitution Figure.

33. Produce all Communications between the Special Master or Paladin and AAPC or its board concerning the valuation of any of the Companies or the Restitution Figure.

34. Produce all Communications between the Special Master or Paladin and the bankers -- whether directly, or through AAPC's board -- concerning the valuation, marketing, or sale of any of the Companies.

35. Produce all Communications between the Special Master or Paladin and North Carolina counsel, West Camden, or Williams Mullen concerning the valuation of any of the Companies or the Restitution Figure.

36. Produce all Communications between the Special Master or Paladin and NHC concerning the valuation of any of the Companies or the Restitution Figure.

37. Produce all Communications between the Special Master or Paladin and the Bermuda joint provisional liquidators concerning the valuation of any of the Companies or the Restitution Figure.

38. Produce all Communications of Joseph Grier and Michael Martinez with any party concerning the Restitution Figure or any valuation of the Companies.

(Requests 32-38: these custodians corresponded with Mr. Martinez about value through conferral and the subpoenas (Doc. 248) all ex parte to defendant; withheld.)

39. Produce all Communications instructing or reflecting that information be withheld from the defendant, including any Communication to the effect of "do not tell Greg Lindberg." (Sought via subpoena; withheld. Relevant to production and to disqualification.)

G. THE GOVERNMENT'S ADOPTION TRAIL

40. Produce all Communications between the Government and the Special Master, Paladin (Dinius, Harer, or Elkin), M3, AAPC, NHC, New Holding Company, West Camden, Williams Mullen, or the Bermuda joint provisional liquidators concerning the valuation of any of the Companies or the Restitution Figure. (Demanded of the Government Aug. 17, 2026; the Government "reserved its position.")

41. Produce all data and methodology in the Government's possession, custody, or control supporting the Restitution Figure and the low, middle, and high valuations the Government has adopted. (Demanded Aug. 17, 2026; not produced.)

42. Produce all materials the Government relied upon at sentencing to support the loss figure used in the guideline calculation. (The same figure drove the § 2B1.1 enhancement and the term; not produced.)

H. IDENTIFIED FILES (PRODUCE IN NATIVE FORMAT)

50. Produce all M3 desktop valuation files, in native format.

51. Produce the Special Master's Appendix 1 to the Final Supplement (July 2026) and all data underlying it. (The defense contends it contains only attorney argument; the defense will move to unseal.)

I. ADDITIONAL ITEMS

52. Produce the letter or letters from West Camden to the Special Master disputing his authority, which the Special Master forwarded, and all similar letters from the North Carolina insurance companies, NHC, or any other custodian refusing or disputing the Special Master's authority to compel information. (The SM produced one such letter; the balance of the authority-dispute correspondence was not produced -- direct proof that the "available by other means" premise fails.)

53. Produce the Special Master's requests for the AAPC waivers, and all Communications concerning those waivers. (The

waiver requests themselves were produced; the surrounding
communications, bearing on control, value, and the AAPC downgrade,
were withheld.)

54. Produce all Communications with Steve Wilson, the
trustee
of the trusts, concerning the trusts, their assets, and any
disposition or valuation of those assets. (Some communications
from
the trustee were produced; the balance, bearing on the trust
assets
and the Clanwilliam sale, was withheld.)

---

That is the production the defense requires. Please confirm
whether
the Government will produce these materials, or place them on the
Court's record under the existing protective order; if it will
not,
the defense will move to compel and will represent to the Court
that
the Government adopted a restitution figure of approximately
$1.655
billion that it declines to support with the underlying data.

Sincerely,
Vivek

Dan,

Your silence over the past three days on this ex parte issue is
disconcerting. How extensive was your ex parte contact with the
special
master and his representatives (including paladin)? What was
discussed?
Defense needs to know and have this Brady/Gigilo material.

You had a trial two days ago. We can understand that. It's now
11.30
and
we wanted a response by 9.30 A.M. today. Thank you.

Sincerely,
Vivek

On 2026-08-28 10:01, vramachandran@dhammalaw.com wrote:
Dan,

We asked about ex parte communications two or three days ago. You
have
not responded yet. Please do so now.

Thank you.

Sincerely,
Vivek

On 2026-08-28 08:17, vramachandran@dhammalaw.com wrote:
Dan,

For clarity, ex-parte communications are targeted for Brady/Gigilo material targets everything that was send or received by the government from/to the special master, his counsel or his representatives (including but not limited to Paladin.) Any communications between the government and any officers of the entities
(Preliminary Restitution Assets and Specified Affiliated Companies)
including but not limited to CEOs and trustees of the organizations.
For example, your communication with NHC officer Meiji(?) to produce
the affidavit you did in one of the only responses to our motions you
filed with the court.

We are also trying to preserve evidence in what is a scrambled egg with a special master/receiver. This applies not just to Greg Lindberg. It applies to the victims as well. You have a constitutional
duty to get this done right.

Please respond by 9.30 A.M. so that we know you are going to meet your
constitutional obligations.

Sincerely,
Vivek

On 2026-08-28 07:39, vramachandran@dhammalaw.com wrote:
Dan,

We want all ex parte communication between the government and the special master or his counsel. Let's start there. As you know communicating with a judge ex parte is not constitutional. It's a due
process issue. It's Brady/Gigilo material which defense is entitled
to have. All of it. Please respond by 9.30 AM so that we know that you are working on this production.

We will send a discrete list of other items we want from the government as well. We will place all of these on the record in a motion to compel just as a protective measure. We will of course remove this from the docket if you provide us the information. We have no choice but to do this.

I have had an extensive look at the contemporaneous record and the government in many instances made promises it never kept. For example, it agreed with Greg Lindberg that ClanWilliams should have
a
value of $800 million and Greg could argue for the $400 in

value of $[illegible] million and Greg could argue for the $[illegible] in
credits.
The government during a call suggested the same NCICS offset would
be
favorably treated and Greg would get the offsets.

Let me just say, I had issues with my scruples again.

Sincerely,
Vivek

On 2026-08-27 10:03, Vramachandran wrote:
Dan,

Added you to the one place where the special master reached out to
us.
We have now regularized the one ex parte communication initiated
by
the master.

Thank you.

Sincerely,
Vivek

On Aug 26, 2026 at 12:39 PM, <Vramachandran wrote:

Brandon,

Per my understanding the special master never gave us any
information on
the data and the spreadsheets behind the 1.6 Billion in
restitution.
Nor
the methodology behind that value. Greg does not have them and
would

have had them if you had access to them.

Additionally, none of the calculations, methodology spreadsheets
and

data behind the offsets and credits are disclosed.

The valuations of the primary restitution assets and specified
affiliated companies and assets and the methodology was ever
disclosed.
One was made in March 2026 and filed with the court in April 2026.

This valuation of assets was updated and not disclosed to the
defendant
in the second supplement. None of which has ever been produced
with
the
defendant. Only a range was disclosed in the second supplement.

None of this is available with the defendant. We just asked the
government to provide this information. We have already formally

government to provide this information. We have already formally
requested the government with a list and expect the government to step
in provide all the results. This is an independent request to the government and they should provide it.

Sincerely,
Vivek

On 2026-08-26 12:27, McCarthy, Brandon N. wrote:
Just seeing this back and forth. I am not sure what specific items are
needed. We are happy to run another search for anything. Just let us
know the specific items to look for.
Thanks

Brandon N. McCarthy
Partner
Katten
Katten Muchin Rosenman LLP
2121 North Pearl Street, Suite 1100 | Dallas, TX 75201-2591
direct +1.214.765.3680
brandon.mccarthy@katten.com | katten.com
Bio | vCard

-----Original Message-----
From: vramachandran@dhammalaw.com <vramachandran@dhammalaw.com
Sent: Wednesday, August 26, 2026 9:37 AM
To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov
Cc: Barnesatty <barnesatty@aol.com; Freeman, Lyndie (FRD) <Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov; Joe Grier <jgrier@grierlaw.com; Sanders, Jeremy (FRD) <Jeremy.Sanders@usdoj.gov; Washington, Dana (USANCW) <Dana.Washington@usdoj.gov; Michael Martinez <mmartinez@grierlaw.com; Meyer, Ryan J. <ryan.meyer@katten.com; McCarthy, Brandon N. <brandon.mccarthy@katten.com
Subject: Re: [EXTERNAL] Re: Draft Final Supplement to Restitution Report

EXTERNAL EMAIL - EXERCISE CAUTION

Dan,

And yes, I spoke to Greg Lindberg a few minutes ago. He has never
received any of this information from the special master or anyone else.
Prior counsel also have not had any success getting this information
from the special master. They are copied here.

You (the government) have the burden of proof. Also all of this is
Brady/Giglio information.

We don't have it and have not had it. We want this information.

Sincerely,
Vivek

vivek

On 2026-08-26 09:33, vramachandran@dhammalaw.com wrote:
I have not had any ex parte communication with the special master other
than an AAPC tax return.
I would like to know what communication the government had.
And your data request is to you the government. Do not bring in the
Special Master or anyone else into this.
Either you have it or you don't have it. State plainly whether you
have
the data or not in the other email.

Sincerely,
vivek

On 2026-08-26 09:29, vramachandran@dhammalaw.com wrote:
Dan,

The government was asked via a separate email for the data to be produced.
You can respond there. We asked the government to produce what it
has
in that email thread.
It is directed to the government. I am not playing ask the special
master again.
We want the basis for your adoption of the report wholesale and using
that during sentencing.
Your response to the government's request should be on that thread.

Sincerely,
Vivek

On 2026-08-26 09:27, Ryan, Daniel (USANCW) wrote:
Vivek,

We once again disagree with your claims about the facts and the law.
Moreover, you did not answer my question. What materials regarding
restitution did Mr. Lindberg's prior counsel not receive from the
Government, the Special Master, Paladin, or any other source? The
government does not have any obligation to reproduce materials
already in Defendant's possession. Is it your position that Mr.
Lindberg's counsel did not receive any information or materials from
the Special Master and/or Paladin during its ex parte communications
with them or the government in discovery relating to
restitution?

restitution?
If
so, please provide support for that claim.

We are happy to provide Mr. Lindberg with any materials he is
entitled to, but we do not agree with your suggestion that he
has
not
already received materials underpinning the restitution amount.

Also, I will be at a trial that starts this morning, so I will
not
be
able to respond to any further emails today.

Dan

-----Original Message-----
From: vramachandran@dhammalaw.com <vramachandran@dhammalaw.com
Sent: Wednesday, August 26, 2026 7:43 AM
To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov
Cc: Barnesatty <barnesatty@aol.com; Freeman, Lyndie (FRD)
<Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin (USANCW)
<Benjamin.Bain-Creed@usdoj.gov; Joe Grier
<jgrier@grierlaw.com;
Sanders, Jeremy (FRD) <Jeremy.Sanders@usdoj.gov; Washington,
Dana
(USANCW) <Dana.Washington@usdoj.gov; Michael Martinez
<mmartinez@grierlaw.com
Subject: Re: [EXTERNAL] Re: Draft Final Supplement to
Restitution
Report

Dan,

We will be placing objections on file today. We will also place
a
motion
to compel against the government and special master if I don't
hear
back
from the government on the documents we asked for.

Clearly, the government knows how to share the information it
has.
And
it should to avoid troubling the court.

Sincerely,
Vivek

On 2026-08-25 14:38, vramachandran@dhammalaw.com wrote:
Please respond before 3.30 P.M. We will be seeking active
intervention
from both the 4th circuit and the district court on the
government's
obligation to share data it has.

Sincerely,
Vivek

On 2026-08-25 14:28, vramachandran@dhammalaw.com wrote:
Dan and Jeremy,

We once again request the government to give the data that
underlies
the restitution and sentencing. Restitution is part and
parcel
of
the
criminal sentence. It's a Brady/Giglio violation to deny
access
to
the
data and the methodology on which sentencing is based.

Additionally, your second omnibus position is against DOJ
policy
on
interest rate.

The prosecution has the duty to provide the data we requested
from
the
special master.

There is an appeal filed to preserve Greg Lindberg's rights
after
sentencing and after preliminary order on restitution. That
does
not
excuse non-production of the data. Dan it's the government's
responsibility to get the data and share the data similar to
how
the
Ares 302's were shared.

At the end of the day, it's the United States Vs. Greg
Lindberg.
It's
your burden of proof irrespective of your position on what
the
data
relates to. It's the underlying data on restitution and the
data
that
you used for sentencing and preliminary restitution and an
order
on
restitution the government wants and a forfeitutre the
government
will
seek to enforce.
And sentencing is as yet incomplete and we are asking for the

data.

It's the prosecution to obtain the data.

On our part, even when we don't agree with a designation, we have
gone
the extra mile to file everything under seal pending determination
by
the court. Not getting us the data under these circumstances does
not
comport with your obligations.

You have the ability to share the data with the defendant and have
done so on victims statements which are far more sensitive than
the
statements of companies Greg Lindberg turned over to you.

Thank you.

Sincerely,
Vivek

On 2026-08-23 21:11, vramachandran@dhammalaw.com wrote:
Jermey,

We may file this with the 4th again as an interim stay.

Sincerely,
Vivek

Dan and Martinez,

Given that the court has not been informed of a sale on the Damovo
sale and both of you have not responded to the motion relating
to
Damovo which is now being sold for debt with an offer for the
$400
million to 450 million. We are filing a motion for stay.

Sincerely,
Vivek

On 2026-08-18 11:07, vramachandran@dhammalaw.com wrote:
Thank you, Dan. We will file a motion to reconsider shortly.
We
need
to preserve our objections at this point.

Sincerely,

Sincerely,
Vivek

Sent with Spark [18 [1]]

On Aug 18, 2026 at 11:03 AM -0400, Ryan, Daniel (USANCW)
<Daniel.Ryan@usdoj.gov, wrote:

Vivek,

I disagree with your recitation of the facts and law, but,
as
I
indicated yesterday, the Government has no objection to
you
getting
access to the type of information you are requesting from
the
Special Master subject to his ability to provide it to
you.
The
Government believes that the information you are seeking
would,
at
a
minimum, qualify as "sensitive materials" under the
Court's
Standard Criminal Discovery Order that the Defendant may
not
have
copies of, and they may rise to the level of
"attorney's
eyes
only." I would encourage you to work with the Special
Master to
see if you can agree to a mechanism for you to obtain
access
to
the
materials you seek.

Dan

From: Vramachandran <vramachandran@dhammalaw.com
Sent: Monday, August 17, 2026 5:55 PM
To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov
Cc: Barnesatty <barnesatty@aol.com; Freeman, Lyndie (CRM)
<Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin (USANCW)
<Benjamin.Bain-Creed@usdoj.gov; Joe Grier
<jgrier@grierlaw.com;
Sanders, Jeremy (CRM) <Jeremy.Sanders@usdoj.gov;
Washington,
Dana
(USANCW) <Dana.Washington@usdoj.gov; Michael Martinez
<mmartinez@grierlaw.com
Subject: Re: [EXTERNAL] Re: Draft Final Supplement to
Restitution

Report

Corrected. Sent was hit before the draft was complete.

Dan,

Defense wants a complete record for the appeal. The basis
for
both
the sentence term and the restitution number is based on
the
methodology of calculating the value of the restitution
assets
i.e.
companies.

Similar to when law enforcement uses a sting ray device
they
need
to
disclose the specification of the stingray device and how
the
data
on a particular suspect was collected.

Similarly over here when you allege that multiple
restitution
assets
are worth a lump sum value you need to disclose what each
company
is
worth and how that valuation was arrived at. Finally you
need
to
show how each credit and offset is calculated and the
detailed
method. All of these under MVRA are the government burden
to
establish. Without this there cannot be a final
restitution
order.
Here the restitution order triggers a forfeiture if the
value
of
the
companies is less than the restitution ordered. So the
harm
is
immediate to Greg Lindberg. In addition whatever
methodology
including numbers from the insurance companies and losses
that
went
into the calculations should also be on the record. Again
the
governments proof on the record.

Once again defendants interest over here is to adversarily test
this
information for which defendant has to see this information
and
have
time with this information.

On multiple instances Katten has tried to obtain this information
unsuccessfully. If we need to go to the 4 th circuit and come
back
on remand to get this information in two years we will. We will
seek
a bond from the 4th because government failed in providing the
factual basis for the numbers.

It will be easier for all parties including Greg Lindberg and
the
victims, if this information is placed on the record right now.

Given that we are willing to use the governments protective
order
there is no basis to deny access to the information we requested.

Sincerely,

Vivek

On Aug 17, 2026 at 1:38 PM, <Vramachandran wrote:

There is already a standing protective order in place in the
criminal

case that governs all of the government's discovery in this
case,
so I'm

now sure where there needs to be a new protective order for
this.

Please use that order.

Sincerely,

Vivek

On 2026-08-17 13:20, Vramachandran wrote:

Martinez,

Please provide the information we asked for and what's
in
your

subpoena. Just blocking access with a no is just an
illegal
sentence.

This is not a civil proceeding. Delaying access is
prejudicial
to Greg

Lindberg.

Sincerely,

Vivek

On Aug 17, 2026 at 1:11 PM, <Vramachandran wrote:

Of course if there is business confidential information
we
won't

contest it. It's Greg Lindberg's companies.

The AAPC report is mere attorney arguments without any
data.
That

kind of a report being sealed serves no one.

Sincerely,

Vivek

On Aug 17, 2026 at 1:06 PM, <Vramachandran wrote:

Dan,

The court can order a protective order and the Special
Master
can

request one after filing it under seal. We will contest
the

protective order request.

Sincerely,

Vivek

Sent with Spark [1 [1]]

On Aug 17, 2026 at 1:04 PM -0400, Ryan, Daniel
(USANCW)

<Daniel.Ryan@usdoj.gov, wrote:

Vivek,

While we do not believe the requested information is
relevant
to the

Court's determination of a final restitution order, we
have
no

objection to you getting relevant data from the Special
Master.
That

said, we agree a protective order, not just filing it
under
seal, is

appropriate here at least with respect to the most
sensitive
types

of business data.

Dan

From: Vramachandran <vramachandran@dhammalaw.com

Sent: Monday, August 17, 2026 1:01 PM

To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov

Cc: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov;
Barnesatty

<barnesatty@aol.com; Freeman, Lyndie (CRM)

<Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin
(USANCW)

<Benjamin.Bain-Creed@usdoj.gov; Joe Grier
<jgrier@grierlaw.com;

Sanders, Jeremy (CRM) <Jeremy.Sanders@usdoj.gov;
Washington,
Dana

(USANCW) <Dana.Washington@usdoj.gov; Michael Martinez

<mmartinez@grierlaw.com

Subject: Re: [EXTERNAL] Re: Draft Final Supplement to
Restitution

Report

Dan,

Are you opposed to an expedited motion being placed on
the
record?

We have no interest in delaying proceedings and want
this
data
on

the record now.

Sincerely,

Vivek

On Aug 17, 2026 at 12:57 PM, <Michael Martinez wrote:

No.

Michael L. Martinez

Grier Wright Martinez PA

521 E. Morehead St., Ste. 440, Charlotte, NC 28202

(704) 332-0209 (direct dial)
https://protect2.fireeye.com/v1/url?k=27d1ab0d-429dc25f-27d68fe8-74fe4867716e-08c48172a4f75ca0&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[1]

[2 [1]]

[1 [1]]
[1 [1]] [2 [1]]

mmartinez@grierlaw.com

-----Original Message-----

From: vramachandran@dhammalaw.com
<vramachandran@dhammalaw.com

Sent: Monday, August 17, 2026 12:28 PM

To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov;
Michael
Martinez

<mmartinez@grierlaw.com

Cc: barnesatty@aol.com; Freeman, Lyndie (CRM)

<Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin
(USANCW)

<Benjamin.Bain-Creed@usdoj.gov; Joe Grier
<jgrier@grierlaw.com;

Sanders, Jeremy (CRM) <Jeremy.Sanders@usdoj.gov;
Washington,
Dana

(USANCW) <Dana.Washington@usdoj.gov

Subject: Re: [EXTERNAL] Re: Draft Final Supplement to
Restitution

Report

Caution: This message is from an external sender.

Martinez,

Are you going to place the requested data under seal on
the
court

records to avoid the motion? We would rather fight on
the

designation than delay proceedings. Thank you.

In any case, in March 2026 you offered to place it on
the
record

under seal. I am not sure why you cannot do the same
now.
None
of

this requires a confidentiality agreement.

Sincerely,

Vivek

On 2026-08-17 11:49, vramachandran@dhammalaw.com wrote:

Dan,

We need the data. We are asking for the data to avoid
the
motion.

Sincerely,

Vivek

On 2026-08-17 11:48, Ryan, Daniel (USANCW) wrote:

Vivek,

We appreciate your advocacy for your client, but we
do
not

litigate

via email. If you file a motion with the court with
your

requested

relief, we will respond accordingly. To the extent we
understand

your

emails, we object to your conclusions, accusations,
and
requested

relief. That said, with respect to your requests for
valuation

information, you can represent to the Court that we
are
reserving

our

position until we see your motion.

Regards,

Dan

From: vramachandran@dhammalaw.com
<vramachandran@dhammalaw.com

Sent: Monday, August 17, 2026 11:37 AM

To: Michael Martinez <mmartinez@grierlaw.com

Cc: barnesatty@aol.com; Ryan, Daniel (USANCW)

<Daniel.Ryan@usdoj.gov; Freeman, Lyndie (CRM)

<Lyndie.Freeman@usdoj.gov; Bain-Creed, Benjamin

(USANCW) <Benjamin.Bain-Creed@usdoj.gov; Meyer, Ryan J.

<ryan.meyer@katten.com; Joe Grier
<jgrier@grierlaw.com;

Sanders,

Jeremy (CRM) <Jeremy.Sanders@usdoj.gov

Subject: [EXTERNAL] Re: Draft Final Supplement to Restitution

Report

Dan and Michael,

(1) Do you have the financial reports data we asked for
below?

Did

you use it in your report?

We are looking for all financial reports and all board
reports

for

all primary restitution assets, specified affiliated companies

for

the last four years and all letter of intents and offers
to

purchase

received. It is going to take us a month to analyze all
this

data.

(2) Specifically the mid low high you filed with the court
in

July

2026 is going to trigger a forfeiture worth millions of
dollars.

dollars.

So

you need to let the defendant see this data on the court
docket

and

this needs to be on the docket so that this can be appealed.

(3) Do you have the data you used to arrive at the valuation
of

all

assets you quoted in the sealed report in July 2026?

(4) Do you have the data you said you will share with the
court

under

seal on March 2026?

(5) Where is the updated data from March 2026 for the same
where

you

said that because AAPC is now valued less it needs to be

downgraded?

You are going to place all of the above on the record today
under

seal.

Without this the sentencing is going to be based on a blackbox

and

attorney arguments.

Dan, the government may not stand silent in all this. This
is
a [2 [1]]

criminal proceeding where you sent someone to prison
for
12
years [2 [1]]

based on data he cannot see and will not be allowed
to
see?
And [2 [1]]

[2 [1]] restitution worth billions of dollars based on
data
he
cannot see

and

you will not place on the record under seal?

Sorry, I am having trouble with scruples. I am
flummoxed
that

anyone

thinks this is ok in a criminal proceeding and if we
ask
for
it

as a

criminal defendant we are delaying the proceedings.

Thank you.

Sincerely,

Vivek

On 2026-08-17 11:08, vramachandran@dhammalaw.com
wrote:

Michael,

Let me get this straight you are evaluating the
assets
with
a

range

that you put on the record to trigger forfeiture but
will
not

share

share

that information with the defendant?

You are going to share the valuation you said you
have
on
all

the

assets from March 26, 2026 report. Either that was a
lie
or
you

have

that data. You are going to place this on the record
today
under

seal which we will contest.

Dan, you are going to sentence someone based on data
he
cannot

even

see. You need to get this on the docket today
please.
And
this

is

not for lack of asking as was represented to the
court.
You

represented to the court when you had questionable
authority
to

prevent product as the government and you want a
sentence
on
an

incomplete record. You need to explain this to the
court.

We want this on the record today under seal. You
forced
the

deadline

deadline

you need to give us the data now on the court
records
under
seal

if

it needs to be.

Sincerely,

Vivek

On 2026-08-17 10:35, vramachandran@dhammalaw.com
wrote:

Michael,

Let me get this straight you are evaluating the
assets
with
a

range

that you put on the record to forfiture but will not
share
that

information with the defendant?

You are going to share the valuation you said you
have
on
all

the

assets from March 26, 2026 report. Either that was a
lie
or
you

have

that data. You are going to place this on the record
today
under

seal which we will contest.

Dan, you are going to sentence someone based on data
he
cannot

even

even

see. You need to get this on the docket today
please.
And
this

is

not for lack of asking as was represented to the
court.
You

represented to the court when you had questionable
authority
to

prevent product as the government and you want a
sentence
on
an

incomplete record. You need to explain this to the
court.

We want this on the record today under seal. You
forced
the

deadline

you need to give us the data now on the court
records
under
seal

if

it needs to be.

Sincerely,

Vivek

On 2026-08-17 10:24, vramachandran@dhammalaw.com
wrote:

Dan,

Also as suggested, we have raised concerns about the
relevance

to

some of this data to an independent criminal
investigation.

The government needs to act and get this data on

The government needs to act and get this data on
file.
Thank

you.

Sincerely,

Vivek

On 2026-08-17 10:19, vramachandran@dhammalaw.com
wrote:

Dan,

As a prosecutor you should be aware that this is not
just
about

Greg

Lindberg. This data belongs to the victims and
should
be
known

to

the general public. Sentencing without disclosing
all
of
this

information on the record is illegal.
Unconstitutional.
You
need

to

let the Special Master know that he needs to file
everything

under

seal if he so wants to.

This is a criminal proceeding. You have a duty to
place
this

information on the docket. This is exceptional. You
delay
the

proceedings and then blame it on the defendant. Then
seek

a

confidentiality agreement. You have the burden of proof.
Are
you

going to meet it or not?

I would like an answer by 12.00 P.M.

Sincerely,

Vivek

Michael,

This is a criminal case. Whatever you want to produce
you
need

to

produce now. I need to get this to my client so that we
can

defend

on August 24th which you are forcing on the defendant.

The data is subject to the court's sealing procedures.
You
are

not

going to condition this data on anything other than the
court's

own

processes.

Any failure to produce the data means you are unwilling
to

establish

these on the record as required under the MVRA. That is
a

failure to

prosecute by the government.

Please file on the record the methodology and the
data
we

requested

underseal by August 17, 2026 noon. We will contest
the
sealing

with

the court if necessary.

This is not a civil proceeding.

Sincerely,

viek

On 2026-08-17 10:13, Michael Martinez wrote:

Vivek:

The Special Master disagrees with your legal
analyses
and

conclusions below.

That said, the Special Master would not be opposed
in
concept to

producing (on a reasonable timeline) documents in
our
possession

under a confidentiality agreement and protective
order
limiting

the

public disclosure of proprietary information. If
your
client
is

amenable to preserving the confidentiality of
sensitive

proprietary

information, then I can draft a confidentiality agreement and

protective order for your review and edit. If your client is not

amenable to preserving the confidentiality of sensitive

proprietary

information, then a court order compelling us to produce these

materials with no restrictions on subsequent disclosure will be

required.

Without limiting the foregoing, our proposed methodology for

unrealized offsets/credits is that your client will receive a

credit

against his restitution obligation as the assets are monetized

rather than him receiving a credit now based on our estimation

of

what the Primary Restitution Assets might fetch for victims. The

purpose of the estimation was to satisfy the mandate in the

special

master order that the special master identify assets "and

to

the

extent those assets are not readily convertible to
cash,

determine a

reasonable estimated value for those assets." In
other
words,

evaluating our estimation of what the Primary
Restitution
Assets

might generate for victims in the future is not an
integral

component of the Court's restitution
determination,
and
those

estimated figures do not appear anywhere in the
proposed

restitution

order.

Michael L. Martinez

Grier Wright Martinez PA

521 E. Morehead St., Ste. 440, Charlotte, NC 28202

(704) 332-0209 (direct dial)
https://protect2.fireeye.com/v1/url?k=d7e8bd0a-b2a4d458-d7ef99ef-74fe4867716e-429552d0fc93fb87&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[2]

[3 [2]]

[2 [1]]
[1 [1]] [3 [2]] [1 [1]] [1 [2]]

mmartinez@grierlaw.com

-----Original Message-----

From: vramachandran@dhammalaw.com
<vramachandran@dhammalaw.com

Sent: Monday, August 17, 2026 6:03 AM

To: Michael Martinez <mmartinez@grierlaw.com

Cc: barnesatty@aol.com; Daniel Ryan
(Daniel.Ryan@usdoj.gov)

<daniel.ryan@usdoj.gov; Freeman, Lyndie (CRM)

<lyndie.freeman@usdoj.gov; Bain-Creed, Benjamin
(USANCW)

<benjamin.bain-creed@usdoj.gov; Meyer, Ryan J.

<ryan.meyer@katten.com; Joe Grier
<jgrier@grierlaw.com;
Jeremy

Sanders <jeremy.sanders@usdoj.gov

Subject: Re: Draft Final Supplement to Restitution
Report

Caution: This message is from an external sender.

Michael and Dan,

I do want to remind you that unlike a bankruptcy
proceeding,

these

companies are not just worth debt. They have
revenues
in
the

millions, so your methodology of evaluation has to
be
disclosed

to

the defendant on the record.

We are looking for all financial reports and all
board
reports

for

all primary restitution assets, specified affiliated
companies

for

the last four years and all letter of intents and
offers

to

purchase

received. It is going to take us a month to analyze
all
this

data.

Without this the sentencing is going to be based on
a
blackbox

and

attorney arguments.

This does not meet the MVRA accounting requirement.
Please
get

us

this information by noon August 17, 2026.

A fiduciary duty applies to the Special
Master/Receiver.

If you cannot establish your burden of proof, the
government
has

a

duty to let the court know that you cannot do it.
Failure
to
do

that

to win is striking a foul blow.

Katten has asked for this in the past. We do not
have
this

information.

Thank you.

Sincerely,

Vivek

On 2026-08-15 14:59, vramachandran@dhammalaw.com

wrote:

Michael and Dan,

(I) In your March 2026 report, you stated that
publicly

disclosing

too much detail regarding the Primary Restitution
Assets
and
the

Special Master's value determinations concerning the
same
would

negatively impact liquidation efforts and could, in
itself,

decrease

the value of the Primary Restitution Assets, and
that
the

Special

Master therefore erred on the side of caution by
including
in

the

report a single range encompassing all Primary
Restitution

Assets

lumped together.

Please provide all of the data you stated you would
provide
to

the

Court in that March 2026 report, together with any
other

documents

the Special Master intends to rely on for the
valuations
in

this

proceeding. Please do so by noon on August 17, 2026. To the

extent

you have any additional information these have to be

established on

the record under § 3664(f)(1)(A) by placing them on the

record.

Under the MVRA that material belongs with the defendant: the

burden

of demonstrating the amount of loss is on the Government, 18

U.S.C.

§

3664(e); the statute requires "a complete accounting of the

losses

to

each victim," id. § 3664(a); and restitution must be set "in

the

full

amount of each victim's losses as determined by the court," id.

§

§

3664(f)(1)(A). A single lumped range, with its particulars

withheld,

cannot satisfy those provisions or permit the de novo

determination

the Court is required to make. Id. § 3664(d)(6).

(II) We will also file a motion on to unseal the Appendix to

the

final report. Other than attorney argument, there is nothing in

that

Appendix, and we will file our own argument saying so -- both

to

highlight this issue and to preserve the record for the Fourth

Circuit. Neither the defendant's right to contest the loss

amount

nor

the Court's de novo review under § 3664(d)(6) can be exercised

against a figure whose basis is kept under seal. See §

3664(e).

(III) We are going to file a motion for reconsideration of

the denial of the subpoenas -- not because we expect the Court to change its mind, but to make sure the record is clear on three points. First, under the MVRA the burden of proof lies with the Government, not the defendant. § 3664(e). Second, to the extent the valuations of the companies rest with the Special Master, they must be provided to the defendant under the accounting provisions of the MVRA. §§ 3664(a), (f)(1)(A). Third, restitution under the MVRA must be accurate; if it cannot be made accurate, or if the issues are too complex, the Court's option is to decline restitution rather than order

order an inaccurate amount. § 3663A(c)(3)(B). To the extent you again press the August 24 deadline, we preserve this issue for the Fourth Circuit: the deferred determination is expressly contemplated by § 3664(d)(5), and that ninety-day date is directory, not a license for an inaccurate award. See Dolan v. United States, 560 U.S. 605 (2010) (a court that misses the § 3664(d)(5) deadline retains authority to order restitution, because the deadline is meant to protect victims, not to create a windfall for defendants). Where loss is not yet ascertainable, the MVRA's remedy is to develop the record -- or to decline restitution under § 3663A(c)(3)(B) -- not to adopt a guess.

(IV) We will additionally file a motion on the AAPC valuation

and

on

Ares causation, tied to the subpoena request, to highlight the

live

issues that remain pending and that the Government and the

Special

Master are resisting. Causation and amount are the Government's

to

prove by a preponderance of the evidence, § 3664(e), and the

value

of

the property must be established on the record under §

3664(f)(1)(A).

Attorney arguments about AI and AAPC do not establish value of

the

property on the record.

We are happy to state that you are opposed to these motions.

Sincerely,

Vivek

On 2026-07-22 16:48, Michael Martinez wrote:

Please find attached our current draft of a final supplement to

the

restitution report in the 3:23-CR-48 case. Also attached is a

proposed final order of restitution and appendix to the

supplement

discussing the primary restitution assets.

Here is what we said about the other parties positions on this

supplement: "The Special Master has conferred with both the

government and the Defendant's counsel in relation to this

Supplement.

Although the government does not oppose the positions

articulated

by

the Special Master through this Supplement, the Defendant

opposes

the majority of the Special Master's recommendations appearing

in

this Supplement." If I have not accurately stated your client's

position on our supplement, please let me know by the end

end
of
the

day

tomorrow.

We have to file this by Friday.

Thank you.

Michael L. Martinez

Grier Wright Martinez, PA

521 E. Morehead St., Ste. 440

Charlotte, NC 28202

704/332.0209 (direct)

704/332.0215 (fax)

mmartinez@grierlaw.com

Disclaimer

This e-mail may contain confidential and
attorney-client

privileged

material for the sole use of the intended recipient.
Do
not

accept

wiring instructions from us by email. If you are not
the

recipient,

you are hereby notified that any disclosure,
copying,

distribution

or taking action in relation of the contents of this
information

is

strictly prohibited and may be unlawful, please
contact
the

sender

and delete this e-mail.

This email has been scanned for viruses and malware,
and
may

have

been automatically archived by Mimecast Ltd, an
innovator
in

Software as a Service (SaaS) for business. Providing
a
safer
and

more useful place for your human generated data.
Specializing

in;

Security, archiving and compliance. To find out more
Click
Here

[1

[1 [3]]].

Links:

------

[1 [1]]
https://protect2.fireeye.com/v1/url?k=b4a86c6f-d1e4053d-b4af488a-74fe4867716e-51e0532dcd107cc3&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[3]

[4 [3]]

[3 [2]]
[4 [3]] [4 [3]]

Links:

------

[1 [1]]
https://protect2.fireeye.com/v1/url?k=686a9d19-0d26f44b-686db9fc-74fe4867716e-a368940ed31d1681&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[4]

[5 [4]]

[4 [3]]
[5 [4]] [5 [4]]

Disclaimer

This e-mail may contain confidential and
attorney-client

privileged

material for the sole use of the intended recipient.
Do
not

accept

wiring instructions from us by email. If you are not
the

recipient,

you are hereby notified that any disclosure, copying,

distribution or

taking action in relation of the contents of this
information
is

strictly prohibited and may be unlawful, please
contact
the

sender and

delete this e-mail.

This email has been scanned for viruses and malware,
and
may
have

been

automatically archived by Mimecast Ltd, an innovator
in
Software

as a

Service (SaaS) for business. Providing a safer and
more
useful

place

for your human generated data. Specializing in;
Security,

archiving

and compliance. To find out more Click Here [2 [6]].

Links:

------

[1 [1]]
https://protect2.fireeye.com/v1/url?k=1256fbba-771a92e8-1251df5f-74fe4867716e-5a41341f986a8499&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[5]

[6 [5]]

[5 [4]]
[6 [5]] [7 [6]]

[2 [1]]
https://protect2.fireeye.com/v1/url?k=b875bf00-dd39d652-b8729be5-74fe4867716e-a15d6b5aa53271f9&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[6]

[7 [6]]

[6 [5]]
[7 [6]] [8 [7]]

Links:

------

[1 [1]]
https://protect2.fireeye.com/v1/url?k=b3214c9a-d5e409a4-b326687f-c400add0b6f2-b0f035d2a11fd9ff&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[7]

[8 [7]]

[7 [6]]
[3 [2]]

[8 [7]]

[2 [1]]
https://protect2.fireeye.com/v1/url?k=e9f097bc-8f35d282-e9f7b359-c400add0b6f2-c4743b7b59bdd01d&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[8]

[9 [8]]

[8 [7]]
[4 [3]]

[9 [8]]

[3 [2]]
https://protect2.fireeye.com/v1/url?k=12a32567-74666059-12a40182-c400add0b6f2-ae54406c5cb0daf0&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[9]

[10 [9]]

[9 [8]]
[5 [4]]

[10 [9]]

[4 [3]]
https://protect2.fireeye.com/v1/url?k=36fafe39-503fbb07-36fddadc-c400add0b6f2-6fafbb72a6d03376&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[10]

[11 [10]]

[10 [9]]
[6 [5]]

[11 [10]]

[5 [4]]
https://protect2.fireeye.com/v1/url?k=f61eaf3f-90dbea01-f6198bda-c400add0b6f2-af89ff6354a1d166&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[11]

[12 [11]]

[11 [10]]
[7 [6]]

[12 [11]]

[6 [5]]
https://protect2.fireeye.com/v1/url?k=620d41e3-04c804dd-620a6506-c400add0b6f2-aa491b58f642012f&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[12]

[13 [12]]

[12 [11]]
[8 [7]]

[13 [12]]

[7 [6]]
https://protect2.fireeye.com/v1/url?k=42df8291-241ac7af-42d8a674-c400add0b6f2-79b98e28ef7d1681&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[13]

[14 [13]]

[13 [12]]
[9 [8]]

[14 [13]]

[8 [7]]
https://protect2.fireeye.com/v1/url?k=2fe87868-492d3d56-2fef5c8d-c400add0b6f2-cbb29ed8819504b6&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[14]

[15 [14]]

[14 [13]]
[10 [9]]

[15 [14]]

Disclaimer

This e-mail may contain confidential and
attorney-client
privileged

material for the sole use of the intended recipient. Do
not
accept

wiring instructions from us by email. If you are not
the
recipient,

you are hereby notified that any disclosure, copying,
distribution

or taking action in relation of the contents of this
information is

strictly prohibited and may be unlawful, please contact
the
sender

and delete this e-mail.

This email has been scanned for viruses and malware,
and

may
have

been automatically archived by Mimecast Ltd, an
innovator
in

Software as a Service (SaaS) for business. Providing a
safer
and

more useful place for your human generated data.
Specializing
in;

Security, archiving and compliance. To find out more
Click
Here

[16 [15]].

Links:

------

[1] https://sparkmailapp.com/source?from=signature

[2 [1]]
https://protect2.fireeye.com/v1/url?k=255d2cc9-439869f7-255a082c-c400add0b6f2-ef3d6ebaede0607b&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[15]

[16 [15]]

[15 [14]]
[11 [10]]

[3 [2]]
https://protect2.fireeye.com/v1/url?k=58de74e3-3e1b31dd-58d95006-c400add0b6f2-c480a08ec262503a&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[16]

[17 [16]]

[16 [15]]
[12 [11]]

[4 [3]]
https://protect2.fireeye.com/v1/url?k=b21c0063-d4d9455d-b21b2486-c400add0b6f2-a89226c8521b3cfb&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[24]

[18 [17]]

[17 [16]]
[13 [12]]

[5 [4]]
https://protect2.fireeye.com/v1/url?k=cc6968bb-aaac2d85-cc6e4c5e-c400add0b6f2-2e8d6cc528df355f&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[18]

[19 [18]]

[18 [1]]
[14 [13]]

[6 [5]]
https://protect2.fireeye.com/v1/url?k=a22959de-c4ec1ce0-a22e7d3b-c400add0b6f2-90df1e1e64bd4ff1&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[19]

[20 [19]]

[19 [18]]
[15 [14]]

[7 [6]]
https://protect2.fireeye.com/v1/url?k=9f3909c3-f9fc4cfd-9f3e2d26-c400add0b6f2-50b7993eed216485&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[20]

[21 [20]]

[20 [19]]
[16 [15]]

[8 [7]]
https://protect2.fireeye.com/v1/url?k=b3214c9a-d5e409a4-b326687f-c400add0b6f2-b0f035d2a11fd9ff&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[7]

[8 [7]]

[7 [6]]
[3 [2]]

[9 [8]]
https://protect2.fireeye.com/v1/url?k=e9f097bc-8f35d282-e9f7b359-c400add0b6f2-c4743b7b59bdd01d&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[8]

[9 [8]]

[8 [7]]
[4 [3]]

[10 [9]]
https://protect2.fireeye.com/v1/url?k=12a32567-74666059-12a40182-c400add0b6f2-ae54406c5cb0daf0&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[9]

[10 [9]]

[9 [8]]
[5 [4]]

[11 [10]]
https://protect2.fireeye.com/v1/url?k=36fafe39-503fbb07-36fddadc-c400add0b6f2-6fafbb72a6d03376&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[10]

[11 [10]]

[10 [9]]
[6 [5]]

[12 [11]]
https://protect2.fireeye.com/v1/url?k=f61eaf3f-90dbea01-f6198bda-c400add0b6f2-af89ff6354a1d166&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[11]

[12 [11]]

[11 [10]]
[7 [6]]

[13 [12]]
https://protect2.fireeye.com/v1/url?k=620d41e3-04c804dd-620a6506-c400add0b6f2-aa491b58f642012f&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[12]

[13 [12]]

[12 [11]]
[8 [7]]

[14 [13]]
https://protect2.fireeye.com/v1/url?k=42df8291-241ac7af-42d8a674-c400add0b6f2-79b98e28ef7d1681&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[13]

[14 [13]]

[13 [12]]
[9 [8]]

[15 [14]]

https://protect2.fireeye.com/v1/url?k=2fe87868-492d3d56-2fef5c8d-c400add0b6f2-cbb29ed8819504b6&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[14]

> [15 [14]]
>
> > [14 [13]]
> > [10 [9]]
> >
> > [16 [15]]

https://protect2.fireeye.com/v1/url?k=1c82a97f-7a47ec41-1c858d9a-c400add0b6f2-92ca2cca7ec81edf&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[21]

> [22 [21]]
>
> > [21 [20]]
> > [17 [16]]
> >
> > Links:
> > ------
> > [1 [1]]

https://protect2.fireeye.com/v1/url?k=5698ca81-33d4a3d3-569fee64-74fe4867716e-28d93030ca2e1c11&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[22]

> [23 [22]]
>
> > [22 [21]]
> > [2 [1]]

https://protect2.fireeye.com/v1/url?k=2137e668-447b8f27-2130c28d-74fe4868cd43-1f354b13c23ee39e&q=1&e=acab17db-132a-430a-a710-caa9d1ae50c8&u=http%3A%2F%2Fwww.grierlaw.com%2F
[23]

> [24 [23]]
>
> > [23 [22]]
> > [3 [2]]

https://protect2.fireeye.com/v1/url?k=b3214c9a-d5e409a4-b326687f-c400add0b6f2-b0f035d2a11fd9ff&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[7]

> [8 [7]]
>
> > [7 [6]]
> > [4 [3]]

https://protect2.fireeye.com/v1/url?k=e9f097bc-8f35d282-e9f7b359-c400add0b6f2-c4743b7b59bdd01d&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[8]

> [9 [8]]

[8 [7]]
[5 [4]]
https://protect2.fireeye.com/v1/url?k=12a32567-74666059-12a40182-c400add0b6f2-ae54406c5cb0daf0&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[9]

[10 [9]]

[9 [8]]
[6 [5]]
https://protect2.fireeye.com/v1/url?k=36fafe39-503fbb07-36fddadc-c400add0b6f2-6fafbb72a6d03376&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[10]

[11 [10]]

[10 [9]]
[7 [6]]
https://protect2.fireeye.com/v1/url?k=f61eaf3f-90dbea01-f6198bda-c400add0b6f2-af89ff6354a1d166&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[11]

[12 [11]]

[11 [10]]
[8 [7]]
https://protect2.fireeye.com/v1/url?k=620d41e3-04c804dd-620a6506-c400add0b6f2-aa491b58f642012f&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[12]

[13 [12]]

[12 [11]]
[9 [8]]
https://protect2.fireeye.com/v1/url?k=42df8291-241ac7af-42d8a674-c400add0b6f2-79b98e28ef7d1681&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[13]

[14 [13]]

[13 [12]]
[10 [9]]
https://protect2.fireeye.com/v1/url?k=2fe87868-492d3d56-2fef5c8d-c400add0b6f2-cbb29ed8819504b6&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[14]

[15 [14]]

[14 [13]]
[11 [10]]

https://protect2.fireeye.com/v1/url?k=255d2cc9-439869f7-255a082c-c400add0b6f2-ef3d6ebaede0607b&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[15]

> [16 [15]]
>
> > [15 [14]]
> > [12 [11]]

https://protect2.fireeye.com/v1/url?k=58de74e3-3e1b31dd-58d95006-c400add0b6f2-c480a08ec262503a&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[16]

> [17 [16]]
>
> > [16 [15]]
> > [13 [12]]

https://protect2.fireeye.com/v1/url?k=b21c0063-d4d9455d-b21b2486-c400add0b6f2-a89226c8521b3cfb&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[24]

> [18 [17]]
>
> > [17 [16]]
> > [14 [13]]

https://protect2.fireeye.com/v1/url?k=cc6968bb-aaac2d85-cc6e4c5e-c400add0b6f2-2e8d6cc528df355f&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[18]

> [19 [18]]
>
> > [18 [1]]
> > [15 [14]]

https://protect2.fireeye.com/v1/url?k=a22959de-c4ec1ce0-a22e7d3b-c400add0b6f2-90df1e1e64bd4ff1&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[19]

> [20 [19]]
>
> > [19 [18]]
> > [16 [15]]

https://protect2.fireeye.com/v1/url?k=9f3909c3-f9fc4cfd-9f3e2d26-c400add0b6f2-50b7993eed216485&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[20]

> [21 [20]]
>
> > [20 [19]]
> > [17 [16]]

https://protect2.fireeye.com/v1/url?k=1c82a97f-7a47ec41-1c858d9a-c400add0b6f2-92ca2cca7ec81edf&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F

[21]

[22 [21]]

[21 [20]]
[18] https://sparkmailapp.com/source?from=signature

===========================================================
CONFIDENTIALITY NOTICE:
This electronic mail message and any attached files contain information intended for the exclusive
use of the individual or entity to whom it is addressed and may contain information that is
proprietary, privileged, confidential and/or exempt from disclosure
under applicable law. If you
are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or
distribution of this information may be subject to legal restriction
or sanction. Please notify
the sender, by electronic mail or telephone, of any unintended recipients and delete the original
message without making any copies.
===========================================================
NOTIFICATION: Katten Muchin Rosenman LLP is an Illinois limited liability partnership that has
elected to be governed by the Illinois Uniform Partnership Act (1997).

===========================================================

Links:
------
[1 [1]]
https://protect2.fireeye.com/v1/url?k=27d1ab0d-429dc25f-27d68fe8-74fe4867716e-08c48172a4f75ca0&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[1]

[2 [1]]

[2 [1]]
https://protect2.fireeye.com/v1/url?k=d7e8bd0a-b2a4d458-d7ef99ef-74fe4867716e-429552d0fc93fb87&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[2]

[3 [2]]

[3 [2]]
https://protect2.fireeye.com/v1/url?k=b4a86c6f-d1e4053d-b4af488a-74fe4867716e-51e0532dcd107cc3&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[3]

[4 [3]]

[4 [3]]

[4 [3]]
https://protect2.fireeye.com/v1/url?k=686a9d19-0d26f44b-686db9fc-74fe4867716e-a368940ed31d1681&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[4]

[5 [4]]

[5 [4]]
https://protect2.fireeye.com/v1/url?k=1256fbba-771a92e8-1251df5f-74fe4867716e-5a41341f986a8499&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[5]

[6 [5]]

[6 [5]]
https://protect2.fireeye.com/v1/url?k=b875bf00-dd39d652-b8729be5-74fe4867716e-a15d6b5aa53271f9&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[6]

[7 [6]]

[7 [6]]
https://protect2.fireeye.com/v1/url?k=b3214c9a-d5e409a4-b326687f-c400add0b6f2-b0f035d2a11fd9ff&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[7]

[8 [7]]

[8 [7]]
https://protect2.fireeye.com/v1/url?k=e9f097bc-8f35d282-e9f7b359-c400add0b6f2-c4743b7b59bdd01d&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[8]

[9 [8]]

[9 [8]]
https://protect2.fireeye.com/v1/url?k=12a32567-74666059-12a40182-c400add0b6f2-ae54406c5cb0daf0&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[9]

[10 [9]]

[10 [9]]
https://protect2.fireeye.com/v1/url?k=36fafe39-503fbb07-36fddadc-c400add0b6f2-6fafbb72a6d03376&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[10]

[11 [10]]

[11 [10]]
https://protect2.fireeye.com/v1/url?k=f61eaf3f-90dbea01-f6198bda-c400add0b6f2-af89ff6354a1d166&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[11]

[12 [11]]

[12 [11]]
https://protect2.fireeye.com/v1/url?k=620d41e3-04c804dd-620a6506-c400add0b6f2-aa491b58f642012f&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[12]

[13 [12]]

[13 [12]]
https://protect2.fireeye.com/v1/url?k=42df8291-241ac7af-42d8a674-c400add0b6f2-79b98e28ef7d1681&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[13]

[14 [13]]

[14 [13]]
https://protect2.fireeye.com/v1/url?k=2fe87868-492d3d56-2fef5c8d-c400add0b6f2-cbb29ed8819504b6&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[14]

[15 [14]]

[15 [14]]
https://protect2.fireeye.com/v1/url?k=255d2cc9-439869f7-255a082c-c400add0b6f2-ef3d6ebaede0607b&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[15]

[16 [15]]

[16 [15]]
https://protect2.fireeye.com/v1/url?k=58de74e3-3e1b31dd-58d95006-c400add0b6f2-c480a08ec262503a&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[16]

[17 [16]]

[17 [16]]
https://protect2.fireeye.com/v1/url?k=b21c0063-d4d9455d-b21b2486-c400add0b6f2-a89226c8521b3cfb&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[24]

[18 [24]]

[18 [11]]

[18 [17]]
https://protect2.fireeye.com/v1/url?k=cc6968bb-aaac2d85-cc6e4c5e-c400add0b6f2-2e8d6cc528df355f&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[18]

[19 [18]]

[19 [18]]
https://protect2.fireeye.com/v1/url?k=a22959de-c4ec1ce0-a22e7d3b-c400add0b6f2-90df1e1e64bd4ff1&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[19]

[20 [19]]

[20 [19]]
https://protect2.fireeye.com/v1/url?k=9f3909c3-f9fc4cfd-9f3e2d26-c400add0b6f2-50b7993eed216485&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[20]

[21 [20]]

[21 [20]]
https://protect2.fireeye.com/v1/url?k=1c82a97f-7a47ec41-1c858d9a-c400add0b6f2-92ca2cca7ec81edf&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[21]

[22 [21]]

[22 [21]]
https://protect2.fireeye.com/v1/url?k=5698ca81-33d4a3d3-569fee64-74fe4867716e-28d93030ca2e1c11&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[22]

[23 [22]]

[23 [22]]
https://protect2.fireeye.com/v1/url?k=2137e668-447b8f27-2130c28d-74fe4868cd43-1f354b13c23ee39e&q=1&e=acab17db-132a-430a-a710-caa9d1ae50c8&u=http%3A%2F%2Fwww.grierlaw.com%2F
[23]

[24 [23]]

Links:
------
[1] https://sparkmailapp.com/source?from=signature

Links:
------
[1] https://sparkmailapp.com/source?from=signature
[2]
https://protect2.fireeye.com/v1/url?k=27d1ab0d-429dc25f-27d68fe8-74fe4867716e-08c48173a4f75ea0&q=1&e=390e473a-8f5f-4c98-a129

74fe4867716e-08c48172a4f75ca0&q=1&e=390e473a-8f5f-4c98-a129-
17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[1]
[3]
https://protect2.fireeye.com/v1/url?k=d7e8bd0a-b2a4d458-d7ef99ef-
74fe4867716e-429552d0fc93fb87&q=1&e=390e473a-8f5f-4c98-a129-
17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[2]
[4]
https://protect2.fireeye.com/v1/url?k=b4a86c6f-d1e4053d-b4af488a-
74fe4867716e-51e0532dcd107cc3&q=1&e=390e473a-8f5f-4c98-a129-
17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[3]
[5]
https://protect2.fireeye.com/v1/url?k=686a9d19-0d26f44b-686db9fc-
74fe4867716e-a368940ed31d1681&q=1&e=390e473a-8f5f-4c98-a129-
17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[4]
[6]
https://protect2.fireeye.com/v1/url?k=1256fbba-771a92e8-1251df5f-
74fe4867716e-5a41341f986a8499&q=1&e=390e473a-8f5f-4c98-a129-
17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[5]
[7]
https://protect2.fireeye.com/v1/url?k=b875bf00-dd39d652-b8729be5-
74fe4867716e-a15d6b5aa53271f9&q=1&e=390e473a-8f5f-4c98-a129-
17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[6]
[8]
https://protect2.fireeye.com/v1/url?k=b3214c9a-d5e409a4-b326687f-
c400add0b6f2-b0f035d2a11fd9ff&q=1&e=08ea5c6d-8163-4e16-89b9-
8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[7]
[9]
https://protect2.fireeye.com/v1/url?k=e9f097bc-8f35d282-e9f7b359-
c400add0b6f2-c4743b7b59bdd01d&q=1&e=08ea5c6d-8163-4e16-89b9-
8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[8]
[10]
https://protect2.fireeye.com/v1/url?k=12a32567-74666059-12a40182-
c400add0b6f2-ae54406c5cb0daf0&q=1&e=08ea5c6d-8163-4e16-89b9-
8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[9]
[11]
https://protect2.fireeye.com/v1/url?k=36fafe39-503fbb07-36fddadc-
c400add0b6f2-6fafbb72a6d03376&q=1&e=08ea5c6d-8163-4e16-89b9-
8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[10]
[12]
https://protect2.fireeye.com/v1/url?k=f61eaf3f-90dbea01-f6198bda-
c400add0b6f2-af89ff6354a1d166&q=1&e=08ea5c6d-8163-4e16-89b9-
8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[11]
[13]
https://protect2.fireeye.com/v1/url?k=620d41e3-04c804dd-620a6506-
c400add0b6f2-aa491b58f642012f&q=1&e=08ea5c6d-8163-4e16-89b9-
8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[12]

[12]
[14]
https://protect2.fireeye.com/v1/url?k=42df8291-241ac7af-42d8a674-c400add0b6f2-79b98e28ef7d1681&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[13]
[15]
https://protect2.fireeye.com/v1/url?k=2fe87868-492d3d56-2fef5c8d-c400add0b6f2-cbb29ed8819504b6&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[14]
[16]
https://protect2.fireeye.com/v1/url?k=255d2cc9-439869f7-255a082c-c400add0b6f2-ef3d6ebaede0607b&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[15]
[17]
https://protect2.fireeye.com/v1/url?k=58de74e3-3e1b31dd-58d95006-c400add0b6f2-c480a08ec262503a&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[16]
[18]
https://protect2.fireeye.com/v1/url?k=b21c0063-d4d9455d-b21b2486-c400add0b6f2-a89226c8521b3cfb&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[24]
[19]
https://protect2.fireeye.com/v1/url?k=cc6968bb-aaac2d85-cc6e4c5e-c400add0b6f2-2e8d6cc528df355f&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[18]
[20]
https://protect2.fireeye.com/v1/url?k=a22959de-c4ec1ce0-a22e7d3b-c400add0b6f2-90df1e1e64bd4ff1&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[19]
[21]
https://protect2.fireeye.com/v1/url?k=9f3909c3-f9fc4cfd-9f3e2d26-c400add0b6f2-50b7993eed216485&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[20]
[22]
https://protect2.fireeye.com/v1/url?k=1c82a97f-7a47ec41-1c858d9a-c400add0b6f2-92ca2cca7ec81edf&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[21]
[23]
https://protect2.fireeye.com/v1/url?k=5698ca81-33d4a3d3-569fee64-74fe4867716e-28d93030ca2e1c11&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[22]
[24]
https://protect2.fireeye.com/v1/url?k=2137e668-447b8f27-2130c28d-74fe4868cd43-1f354b13c23ee39e&q=1&e=acab17db-132a-430a-a710-caa9d1ae50c8&u=http%3A%2F%2Fwww.grierlaw.com%2F
[23]

. . .

Links:
------
[1] https://protect2.fireeye.com/v1/url?k=27d1ab0d-429dc25f-27d68fe8-74fe4867716e-08c48172a4f75ca0&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[2] https://protect2.fireeye.com/v1/url?k=d7e8bd0a-b2a4d458-d7ef99ef-74fe4867716e-429552d0fc93fb87&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[3] https://protect2.fireeye.com/v1/url?k=b4a86c6f-d1e4053d-b4af488a-74fe4867716e-51e0532dcd107cc3&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[4] https://protect2.fireeye.com/v1/url?k=686a9d19-0d26f44b-686db9fc-74fe4867716e-a368940ed31d1681&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[5] https://protect2.fireeye.com/v1/url?k=1256fbba-771a92e8-1251df5f-74fe4867716e-5a41341f986a8499&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[6] https://protect2.fireeye.com/v1/url?k=b875bf00-dd39d652-b8729be5-74fe4867716e-a15d6b5aa53271f9&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[7] https://protect2.fireeye.com/v1/url?k=b3214c9a-d5e409a4-b326687f-c400add0b6f2-b0f035d2a11fd9ff&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[8] https://protect2.fireeye.com/v1/url?k=e9f097bc-8f35d282-e9f7b359-c400add0b6f2-c4743b7b59bdd01d&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[9] https://protect2.fireeye.com/v1/url?k=12a32567-74666059-12a40182-c400add0b6f2-ae54406c5cb0daf0&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[10] https://protect2.fireeye.com/v1/url?k=36fafe39-503fbb07-36fddadc-c400add0b6f2-6fafbb72a6d03376&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[11] https://protect2.fireeye.com/v1/url?k=f61eaf3f-90dbea01-f6198bda-c400add0b6f2-af89ff6354a1d166&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[12] https://protect2.fireeye.com/v1/url?k=620d41e3-04c804dd-620a6506-c400add0b6f2-aa491b58f642012f&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[13] https://protect2.fireeye.com/v1/url?k=42df8291-241ac7af-42d8a674-c400add0b6f2-79b98e28ef7d1681&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.grierlaw.com%2F
[14] https://protect2.fireeye.com/v1/url?k=2fe87868-492d3d56-2fef5c8d-c400add0b6f2-cbb29ed8819504b6&q=1&e=08ea5c6d-8163-4e16-89b9-8f97a2c47e86&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[15] https://protect2.fireeye.com/v1/url?k=255d2cc9-439869f7-255a082c-c400add0b6f2-ef3d6ebaede0607b&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[16] https://protect2.fireeye.com/v1/url?k=58de74e3-3e1b31dd-58d95006-c400add0b6f2-c480a08ec262503a&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F
[17] https://sparkmailapp.com/source?from=signature
[18] https://protect2.fireeye.com/v1/url?k=cc6968bb-aaac2d85-cc6e4c5e-c400add0b6f2-2e8d6cc528df355f&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[19] https://protect2.fireeye.com/v1/url?k=a22959de-c4ec1ce0-a22e7d3b-c400add0b6f2-90df1e1e64bd4ff1&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.grierlaw.com%2F

[20] https://protect2.fireeye.com/v1/url?k=9f3909c3-f9fc4cfd-9f3e2d26-c400add0b6f2-50b7993eed216485&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[21] https://protect2.fireeye.com/v1/url?k=1c82a97f-7a47ec41-1c858d9a-c400add0b6f2-92ca2cca7ec81edf&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F
[22] https://protect2.fireeye.com/v1/url?k=5698ca81-33d4a3d3-569fee64-74fe4867716e-28d93030ca2e1c11&q=1&e=390e473a-8f5f-4c98-a129-17549e1ff525&u=http%3A%2F%2Fwww.grierlaw.com%2F
[23] https://protect2.fireeye.com/v1/url?k=2137e668-447b8f27-2130c28d-74fe4868cd43-1f354b13c23ee39e&q=1&e=acab17db-132a-430a-a710-caa9d1ae50c8&u=http%3A%2F%2Fwww.grierlaw.com%2F
[24] https://protect2.fireeye.com/v1/url?k=b21c0063-d4d9455d-b21b2486-c400add0b6f2-a89226c8521b3cfb&q=1&e=a6705d1f-d38d-426b-88ff-6538cfab6e48&u=http%3A%2F%2Fwww.mimecast.com%2Fproducts%2F