**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

Case Nos. 3:23-CR-48-MOC / 5:19-CR-22-MOC

# INDEX OF EXHIBITS


| | | |
|---|---|---|
| **AFFIDAVIT** | Affidavit of Greg E. Lindberg Regarding the Valuation of Beckett Collectibles and in Response to the Affidavit of Mohsin Meghji (Doc. 308-3) (executed Oct. 5, 2026) | p. 2 |
| **EXHIBIT 1** | Summary of Beckett Collectibles Holdings, LLC's consolidated January results, 2021–2024 | p. 27 |
| **EXHIBIT 2** | Sept. 3–7, 2026 Lincoln International / Twelve Seas e-mail exchange (forwarded Sept. 29, 2026), with the draft letter of intent and SPAC process overview | p. 29 |
| **EXHIBIT 3** | Cease-and-desist letters (Oct. 5, 2026) to the Special Master Team and to the Government | p. 49 |


*Page references are to the page of this combined PDF.*

# AFFIDAVIT

Affidavit of Greg E. Lindberg Regarding the Valuation of
Beckett Collectibles and in Response to the Affidavit of
Mohsin Meghji (Doc. 308-3)
(executed October 5, 2026), with its Exhibits 1 and 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn, Jr. |

**AFFIDAVIT OF GREG E. LINDBERG REGARDING THE VALUATION OF BECKETT COLLECTIBLES AND IN RESPONSE TO THE AFFIDAVIT OF MOHSIN MEGHJI (DOC. 308-3)**

I, Greg E. Lindberg, declare as follows:

1. I am over eighteen years of age and competent to make this affidavit. The statements below are based on my personal knowledge and on the documents cited, except where I state that a matter is made upon information and belief. In each such instance I state the basis for my belief.

2. I make this affidavit in response to the Affidavit of Mohsin Meghji, acting Chief Executive Officer of NHC Holdings, LLC ("NHC"), sworn August 17, 2026 and filed by the Government as Exhibit C to its Consolidated Position (Doc. 308-3) (the "Meghji Affidavit"). I address its statements about the value and

financial performance of Beckett Collectibles, LLC and its subsidiaries ("Beckett"), which were sold together with CBCS Operations, LLC ("CBCS") in a transaction that closed on or about December 15, 2025 (the "Beckett Sale"). Meghji Aff. ¶ 10.

3. At the time of the 2022 appraisal described below, the operating companies in what the Meghji Affidavit calls the Collectivus Group were Beckett, Southern Hobby Distribution, LLC ("Southern Hobby"), Arcane Tinmen ApS ("Arcane Tinmen"), and CBCS. Global Growth acquired Beckett in 2008 (Cabrillo Advisors appraisal, Doc. 256-1 ("Cabrillo Report"), at 5), and I was closely familiar with Beckett's business and finances from that time through 2024.

## I. Three independent data points over two years value Beckett at approximately $1 billion.

4. Blackstone (2022). On April 2, 2022, Blackstone Tactical Opportunities submitted a non-binding indication of interest in Beckett. Its term sheet dated April 14, 2022 valued Beckett at a total enterprise value of $800 million to $900 million, which the term sheet states is 27.5 to 30.9 times Beckett's actual 2021 adjusted EBITDA of $29 million. Blackstone's accompanying model projected "Beckett Proceeds by 2022E" of $941 million to $1.065 billion, with a midpoint of $1.003 billion. Global Growth countered at an enterprise value of $1.05 billion on April 5, 2022 and $1.1 billion on April 18, 2022. (Doc. 256-3, at 2–4 (Blackstone proposal and

term sheet dated April 14, 2022, with proceeds model); Doc. 256-4, at 2 (Blackstone transmittal, April 16, 2022); Doc. 256-2, at 2–4 (Global Growth counter, April 5, 2022); Doc. 256-4, at 3 (Global Growth best and final counter, April 18, 2022); also filed as Exs. X2–X3 to the Verified Complaint in *Lindberg v. Causey*, No. 1:26-cv-07938 (S.D.N.Y. Sept. 17, 2026), ECF No. 1 ("Verified Compl.").)

5. Cabrillo Advisors (2022). Cabrillo Advisors, Inc. appraised each Collectivus company separately, on a controlling, marketable basis, as of a valuation date of January 31, 2022, in a report dated April 7, 2022. (Doc. 256-1, at 3; Cabrillo Report at 1.) Its conclusions were:

(a) Beckett Collectibles, LLC: $1,003,924,000;

(b) Southern Hobby: $538,010,000;

(c) Arcane Tinmen: $107,749,000; and

(d) CBCS: $14,125,000, for a total of $1,663,808,000.

The $1,003,924,000 figure is Beckett alone. Beckett, Southern Hobby and Arcane Tinmen together total $1,649,683,000.

6. Quadro (2024). In the first quarter of 2024, Quadro Acquisition Corp. One (NASDAQ: QRDO) signed a purchase agreement valuing the Specified Affiliated Companies at approximately $3.4 billion. (Doc. 174 ¶ 117.) Under that

agreement, the purchase price attributable to Beckett, together with Southern Hobby and Arcane Tinmen, was approximately $1.75 billion. (Doc. 234-41.) A little over half of the EBITDA underlying the $3.4 billion Quadro purchase price was generated by Beckett, Southern Hobby and Arcane Tinmen.

7. These data points are consistent. Blackstone's valuation, and the market-approach half of Cabrillo's, were derived from Beckett's actual trailing adjusted EBITDA of approximately $29 million, and the midpoint of Blackstone's modeled proceeds ($1.003 billion) is within $1 million of Cabrillo's $1,003,924,000. The Quadro agreement was signed in 2024, after Beckett's 2022 and 2023 results were known, and its $1.75 billion value for Beckett, Southern Hobby and Arcane Tinmen is about 6% above Cabrillo's $1,649,683,000 for the same three companies two years earlier. Three independent sources, over two years, place Beckett at approximately $1 billion.

## II. Beckett's 2022 acquisitions of two AI software start-ups.

8. In the second half of 2022, Beckett acquired two artificial-intelligence software start-ups serving its core collectibles market: NoXX Technologies, Inc. ("NoXX") and Due Dilly. Beckett paid approximately $100 million in aggregate for

the two acquisitions. Both were operated as separate subsidiaries of Beckett and, as subsidiaries of Beckett, both were included in the Beckett Sale. (Meghji Aff. ¶ 10.)

9. Based on my experience acquiring and operating businesses, these acquisitions materially increased the value of the Beckett business.

## III. Beckett's core business must be analyzed separately from the start-ups, and the limited financials available show the core business remained strong.

10. Any analysis of Beckett's results or value requires that the core operating business be shown separately from the two AI start-ups. Because the start-ups were operated as subsidiaries, their results are recorded at the subsidiary level, and the core business can be isolated by removing the subsidiaries' results and eliminating intercompany items. That analysis is straightforward for anyone with access to the books.

11. The Meghji Affidavit does not perform it. Mr. Meghji defines "Beckett Collectibles" to mean "Beckett Collectibles, LLC, and its subsidiaries." (Meghji Aff. ¶ 10.) Every Beckett revenue and EBITDA figure he describes (id. ¶¶ 13, 18) is therefore a consolidated figure that includes NoXX and Due Dilly.

12. Exhibit 1 is a summary of Beckett Collectibles Holdings, LLC's consolidated monthly financial statements showing revenue, operating expenses

(SG&A) and operating income for January 2021, January 2022, January 2023 and January 2024, drawn from the limited Beckett financial statements to which I have access. As Exhibit 1 shows, Beckett's revenue was stable from 2022 through 2024: total revenue for the month of January was $3,628,000 in 2022, $3,760,000 in 2023 and $3,746,000 in 2024, up from $3,266,000 in January 2021. Gross margin stayed at 85% to 90% throughout.

13. The only material change in Beckett's financials over that period, as Exhibit 1 makes clear, is the increase in overhead. Total SG&A was $1,458,000 in January 2021 and $1,741,000 in January 2022; it rose to $3,794,000 in January 2023, an increase of approximately $2.1 million for the month, driven principally by compensation expense, which rose from $1,016,000 to $2,529,000. Operating income went from $1,514,000 in January 2022 to a loss of $596,000 in January 2023 on essentially the same revenue. That increase represents the expenses of the two start-ups that were consolidated into Beckett's financials after their acquisition in the second half of 2022. Based on these limited financials, the two start-ups added approximately $24 million per year to Beckett's consolidated expenses. They generated very little revenue, so consolidating them reduced Beckett's consolidated EBITDA by approximately the amount of the expenses incurred at the start-up

subsidiaries. The core Beckett business remained strong, as its stable revenue and gross margin show. Backing out the expenses of the two start-up subsidiaries, Beckett's core business likely earned approximately $25 million of EBITDA in each of 2023 and 2024, consistent with the $29,088,373 of adjusted EBITDA it earned in 2021, before the acquisitions. (Cabrillo Report, Beckett Ex. F.1.) January is a seasonally light month for Beckett: Cabrillo's figures show January 2022 EBITDA of $1,580,127 against full-year 2021 EBITDA of $27,186,654, so annualizing a January figure understates a full year. (Id.)

## IV. The Meghji Affidavit's statements about Beckett's value and performance are false or misleading.

14. Paragraph 18 (the Cabrillo appraisal). Mr. Meghji states that the Cabrillo appraisal "was based in part on management revenue projections" of $80 million for 2022 and approximately $759 million for 2025, and that actual revenue was approximately $53 million for 2022 and "less than 6% of the 2025 projection." Paragraph 18 is inaccurate and materially misleading in the following respects:

(a) The date is wrong. Mr. Meghji states that Cabrillo's report "was dated January 31, 2022." The report is dated April 7, 2022; January 31, 2022 is the valuation date. (Cabrillo Report at 1.)

(b) The 2025 figure was not a management projection, and the figures combine two companies. Cabrillo states that management provided projections "from 2022 through 2024," which Cabrillo then extended. (Id. at 18; Beckett Ex. E.2 n.1.) Mr. Meghji's figures also add Beckett's projected revenue ($75,000,000 for 2022; $750,000,000 for 2025) to CBCS's ($5,000,000 for 2022; $9,165,500 for 2025). (Cabrillo Report, Beckett Ex. E.2; Cabrillo Report, CBCS Ex. E.2.) He does not say so.

(c) Half of the appraisal did not depend on projections. Cabrillo weighted two methods equally. Its market approach ($1,052,705,787) applied a 28.0x multiple to Beckett's actual trailing-twelve-month adjusted EBITDA of $29,182,239 and a 25.0x multiple to 2022 forecast EBITDA of $37,500,000. (Cabrillo Report, Beckett Exs. A.1, C.1.) Applying Cabrillo's own 28.0x multiple and 20% control premium to Beckett's actual trailing results alone yields approximately $980 million.

(d) Cabrillo already discounted the projections for the risk that they would not be met. Its income approach discounted projected cash flows at a 25.0% cost of capital that included a 14.0% company-specific premium "reflecting risks pertaining to competition and forecast achievement." (Cabrillo Report at 18–19; Beckett Ex. E.1.)

(e) Blackstone did not rely on 2025 projections. Blackstone, an arm's-length bidder, valued Beckett at $800 million to $900 million as a multiple of Beckett's actual 2021 adjusted EBITDA of $29 million. (Doc. 256-3, at 3.) The Meghji Affidavit does not mention Blackstone.

(f) Beckett's revenue held at its 2021 level. Mr. Meghji's 2022 figure of approximately $53 million is in line with the 2021 revenue on which the market-based valuations rested ($53,151,632 for Beckett alone; $56,519,822 for Beckett and CBCS together). (Cabrillo Report, Beckett Ex. F.1; Cabrillo Report, CBCS Ex. F.1.) Exhibit 1 shows the same stability through January 2024.

A shortfall against projections says nothing about a value that Blackstone and Cabrillo derived from actual EBITDA.

(g) Revenue is not the measure of value, and no EBITDA is stated. Paragraph 18 gives only revenue figures. It states no EBITDA for Beckett for 2022, 2025 or any other year, and it does not separate the core business from the start-up subsidiaries included in its figures (paragraphs 11–13 above).

(h) "Less than 6% of the 2025 projection" is not a figure. Six percent of $759,165,500 is approximately $45.5 million. Mr. Meghji does not say what revenue actually was, for what period, or what EBITDA it produced. The "audited financial results" on which he relies have never been produced to me.

15. Paragraph 13 ("a small portion"). Mr. Meghji states, "[t]o the best of [his] knowledge, information and belief," that Beckett's 2025 revenues and EBITDA through the closing "were a small portion of the total revenues and combined EBITDA" of the Collectivus Group. To the extent paragraph 13 is offered to suggest that Beckett was a minor part of the Collectivus Group's value, it is false:

(a) Cabrillo valued Beckett alone at $1,003,924,000 of the $1,663,808,000 appraised value of the four Collectivus companies, or 60.3%.

(b) Revenue share never measured Beckett's value. In 2021, when Beckett was appraised at 60.3% of the group's value, its revenue of $53,151,632 was only about 10.8% of the four companies' combined revenue of $490,920,670. Southern Hobby is a wholesale distributor with an EBITDA margin of about 10%; Beckett's was about 51%. (Cabrillo Report at 6; Exs. F.1 for each company.) Beckett's revenue was a "small portion" of the group's in 2021 as well.

(c) Beckett's share of EBITDA, as Mr. Meghji measures it, is reduced by the approximately $24 million per year of start-up expenses consolidated into Beckett's results. (Paragraphs 11–13 above; Ex. 1.)

(d) Mr. Meghji states no figures and qualifies the paragraph on information and belief, even though he swears he "was regularly

updated on the financial performance of the Collectivus Group during 2025." (Meghji Aff. ¶ 12.)

16. Paragraphs 16, 17 and 19 (the J.P. Morgan fairness opinion). Mr. Meghji states that NHC consented to the Beckett Sale "[b]ased on the financial information NHC was provided, along with the copy of the fairness opinion from JPM." (Meghji Aff. ¶ 19; see id. ¶¶ 16–17.) Neither the financial information nor the fairness opinion has been produced to me or, to my knowledge, placed on the record, and the Meghji Affidavit does not state the price. Beckett was sold for $134 million, which is about 13.2% of Cabrillo's combined value for the two companies sold ($1,003,924,000 for Beckett plus $14,125,000 for CBCS, or $1,018,049,000) and about 4.6 times Beckett's 2021 adjusted EBITDA of $29,088,373. Cabrillo notes that Collectors Universe was acquired in 2021 at an implied multiple of 26.8 times EBITDA (Cabrillo Report at 18); the December 2025 buyer of Beckett was Collectors, the parent company of PSA. (Doc. 234-21 (Ex. B25).) A fairness opinion that no one outside the sellers has seen cannot establish that such a price was fair.

17. Paragraph 22 (the "Surviving Collectivus Group"). Mr. Meghji states, on information and belief and without figures, that the surviving companies generate "significant annual revenues" and remain "a valuable restitution asset."

Revenue is again the wrong measure; the surviving group is led by Southern Hobby, a wholesale distributor whose revenues are large relative to its margins. Southern Hobby and Arcane Tinmen together represented $645,759,000, or 38.8%, of Cabrillo's appraised value. Their continued existence does not offset the loss of Beckett.

18. Paragraphs 1 and 12 (personal knowledge). Mr. Meghji swears that his affidavit is "based upon [his] personal knowledge" (¶ 1) and that he was "regularly updated" on the Collectivus Group's financial performance (¶ 12). Yet he qualifies paragraphs 5, 8, 13, 21 and 22 as made only "to the best of [his] knowledge, information and belief," and the only financial figures he gives (¶ 18) are revenue figures. He states no EBITDA figure for Beckett, for its core business, or for its start-up subsidiaries. The affiant with access to Beckett's books has not sworn to the numbers that would resolve this question.

19. This affidavit does not address the remaining paragraphs of the Meghji Affidavit, including paragraphs 3, 5, 8, 9, 15 and 19 through 21 concerning the MOU litigation, the Beckett Trust, the consents given for the Beckett Sale, and the role of the Special Master. Those statements are addressed in Defendant's Response to Doc. 308 (Doc. 316) and in my prior affidavit (Doc. 316, Def. Ex. 1, Tab A), and

nothing in this affidavit concedes them. In particular, the statement in paragraph 21 that the purchaser "did not require or request the consent of the Special Master" is contrary to my sworn account at Def. Ex. 1, Tab A ¶¶ 19–20.

## V. Beckett was sold at a fire-sale price.

20. Beckett was sold for $134 million in December 2025. Against core EBITDA of approximately $25 million per year, that price is less than 6 times EBITDA (approximately 5.4 times). Blackstone and Cabrillo valued Beckett in 2022 at approximately 29 times EBITDA: Blackstone at 27.5 to 30.9 times 2021 adjusted EBITDA (Doc. 256-3, at 3), and Cabrillo at 28.0 times trailing adjusted EBITDA under its market approach (Cabrillo Report, Beckett Ex. C.1). The Quadro agreement in 2024 valued Beckett, together with Southern Hobby and Arcane Tinmen, at a blended 22.14 times EBITDA, even though Southern Hobby and Arcane Tinmen are lower-multiple businesses. (Doc. 234-41, at 16, 35; Doc. 174 ¶ 117.)

21. In short, Beckett was sold at a fire-sale price. The buyer received a core operating business earning approximately $25 million per year, together with two start-ups for which Beckett had paid approximately $100 million in 2022. The fair value of Beckett was the approximately $1 billion at which Cabrillo and Blackstone

valued it in 2022, plus the approximately $100 million Beckett paid for the two start-ups later that year. That value is also reflected in the Quadro purchase price of approximately $1.75 billion for Beckett combined with Southern Hobby and Arcane Tinmen, within a $3.4 billion transaction in which a little over half of the EBITDA was attributable to those three businesses.

22. I was informed by my former counsel that approximately $19 million in fees was paid out of the Beckett Sale proceeds. In December 2024, representatives of NHC and M3 Partners stated that one of the primary purposes of selling the Clanwilliam Group was to provide funds to pay fees to Mr. Meghji and his employees. (Verified Compl. ¶ 74.) NHC has since proposed that $4.5 million of the proceeds of the pending Damovo sale be paid to NHC, where, upon information and belief based on that stated practice, it will likewise be used to pay fees to Mr. Meghji and M3 Partners. It is reasonable to conclude that Beckett was also sold in part to pay fees to Mr. Meghji and M3 Partners.

23. In summary, Beckett was sold at a fire-sale price, wiping out a crown-jewel restitution asset without any court approval or notice before the sale, so that Mr. Meghji and M3 Partners could earn fees on the transaction, as they now propose to do on the Damovo sale.

## VI. I have been denied the information needed to complete this analysis.

24. Apart from the limited financial statements reflected in Exhibit 1, I do not have access to Beckett's books and records. Without them I cannot state the core business's EBITDA or the start-ups' spending with greater precision than set out above.

25. My requests for this information have been refused:

(a) On December 19, 2023, I sent a written demand to the boards, chief executive officers and chief financial officers of every company held in trust, including Beckett, for their financial records, including general ledgers, trial balances, draft and audited financial statements, consolidated statements and details of capitalized software and research-and-development spending. When the information was not provided, I sued the Beckett Collectibles Trust and the other trusts on January 11, 2024 in the Circuit Court for Broward County, Florida, seeking an injunction requiring production of that information, and later an equitable accounting. *Lindberg v. Arcane Trust, et al.*, No. CACE-24-000591 (25) (Fla. 17th Jud. Cir.); Complaint for

Injunctive Relief (filed Jan. 11, 2024) and Second Amended Complaint (filed Apr. 3, 2024) (see Verified Compl.). The information was not supplied.

(b) On December 4, 2024, I wrote to Beckett's Board of Directors concerning Beckett's long-term incentive plan and requested information concerning Beckett's incentive plans and grading business. The Board responded on December 5, 2024, but the information was not provided beyond a partial initial response.

(c) Since then, the Special Master and the Government have rejected my requests. The Court denied my Rule 17(c) subpoenas (Doc. 304), and the Special Master opposed my motion for reconsideration (Docs. 309, 323). My motions to compel production of the restitution data (Docs. 331, 332) followed meet-and-confer correspondence of August 15–29, 2026 that did not produce it (Doc. 331-2). My request for the Beckett purchase agreement, board consents, closing statement, sale price and J.P. Morgan fairness opinion (Doc. 316) has not been met. The Special Master earlier offered to provide his supporting data to

the Court under seal or in camera (Doc. 106 at 29) but has not done so.

26. To complete the analysis described in Part III, I need: (a) separate financial statements for Beckett's core business and for each of NoXX and Due Dilly for 2022 through 2025; (b) the financial information provided to NHC and the J.P. Morgan fairness opinion described in paragraphs 16, 17 and 19 of the Meghji Affidavit; and (c) the purchase agreement, closing statement and funds flow for the Beckett Sale, including the fees paid from the proceeds.

## VII. The Government told my counsel it would not enforce the forfeiture judgment and would say so on the record. It did not.

27. On May 20, 2026, while I was in custody awaiting sentencing, my then-counsel Brandon N. McCarthy of Katten Muchin Rosenman LLP told me that he had just spoken with AUSA Benjamin Bain-Creed, AUSA Dan Ryan and Trial Attorney Lyndie M. Freeman about the proposed Consent Order and Judgment of Forfeiture. He told me that the Government had agreed to our proposed edits to the order, and that the Government would state on the record at sentencing that it had no plans to enforce the forfeiture judgment and would not use the judgment to interfere with restitution, so long as I continued to assist the Special Master in paying restitution. He also told me that the Government had agreed that, if the

difference between the restitution and the value of the assets was less than zero, the forfeiture amount would be zero.

28. I agreed to the consent order in reliance on those representations. I signed it on May 22, 2026, while in custody and in restraints, as best I could.

29. The Consent Order and Judgment of Forfeiture entered on the day of sentencing sets the forfeiture money judgment at the lesser of $230,000,000 or "the difference between the amount of restitution that this Court orders and the Special Master's estimate, as of the date restitution is ordered, of the 'Mid' point value of the 'Primary Restitution Assets.'" (Doc. 160, at 1–2.)

30. The statement my counsel told me the Government would make was not made. I have reviewed the transcript of the sentencing hearing held on May 26, 2026. The Government handed up the consent order (Sent'g Tr. 49:22–24), and the Court stated: "This is the judgment of the 230 million, correct?" AUSA Dan Ryan answered, "Correct, Your Honor," and the Court stated: "I just signed the document in ECF, $230 million, the agreed-upon forfeiture." (Sent'g Tr. 50:2–8.) Later, AUSA Dan Ryan told the Court that "the primary objective here is getting the restitution, and then we also have the consent order and judgment of forfeiture" (Sent'g Tr. 68:9–12), and AUSA Bain-Creed asked the Court to incorporate "the consent order

for a $230 million money judgement" into the oral pronouncement of sentence (Sent'g Tr. 70:19–25). I did not find anywhere in the transcript a statement by the Government that it has no plans to enforce the forfeiture judgment, or that it will not use the judgment to interfere with restitution.

31. The forfeiture amount is keyed to the Special Master's "Mid" valuation, which has never been produced to me. If restitution is fully satisfied by the Primary Restitution Assets, the formula yields zero, as my counsel told me the Government had agreed. I ask that the Government be held to the representation it made through my counsel, and that it state on the record, as it said it would, that it has no plans to enforce the forfeiture judgment.

## VIII. I consented to the forfeiture order because of the Government's representations on the May 20, 2026 call, and the Court entered the orders on the understanding that the amounts were still to be determined.

32. As my counsel told me, the representations described in paragraph 27 were made by the Government itself, through AUSA Benjamin Bain-Creed, AUSA Dan Ryan and Trial Attorney Lyndie M. Freeman, on a call with my counsel that day. According to what he told me, the Government agreed that it had no plans to enforce the forfeiture judgment; that it would not use the judgment to interfere with restitution so long as I continued to assist the Special Master in paying restitution;

and that if the difference between restitution and the value of the assets was less than zero, the forfeiture amount would be zero. Those representations were the reason I signed the consent order two days later. I would not have signed it without them.

33. After obtaining my consent, on information and belief, the Government then tried to use ex parte communications with the Special Master and his financial advisor to change the "Mid" point valuation of AAPC so as to trigger the forfeiture. My belief rests on the following. Under the consent order, the forfeiture amount turns on the Special Master's "Mid" point valuation of the Primary Restitution Assets: the lower that valuation, the larger the forfeiture. (Doc. 160, at 1–2.) After sentencing, the Special Master's counsel and financial advisor met with AUSA Dan Ryan and AUSA Bain-Creed "re preparation of final supplement to restitution report and related issues." (Doc. 263, at 22.) In the same weeks, the Special Master's financial advisor billed time to a "refi / equity valuation model" for a Primary Restitution Asset and to "[a]nalysis of valuation model." (Doc. 263, at 31–32.) The final supplement that followed described its asset values as a "current guess on the value of the Primary Restitution Assets." (Doc. 245, at 37.) Neither the

valuation workpapers nor the Government's communications with the Special Master about them have ever been produced to me.

34. At sentencing, AUSA Dan Ryan handed up the Special Master's preliminary order of restitution and asked the Court to enter it "understanding that, within the next 90 days, people are going to want to be heard about aspects of that." (Sent'g Tr. 66:6–12.) My counsel told the Court that the order was "obviously subject to the objections of numerous parties and further hearings with the Court." (Sent'g Tr. 66:20–22.) In entering that order, the Court stated: "Okay. I'm going to order it. And certainly there may be some additional litigation over that, but the Fourth Circuit wants us to order forfeiture, even when there's -- even when there's a contest about the amounts to later be determined." (Sent'g Tr. 66:23–67:2.) The Court then stated: "So I'm gonna -- the Court's going to order that at this time, understanding that there may be some dispute." (Sent'g Tr. 67:16–17.) The Government did not disagree with either statement, and it did not tell the Court about the agreement it had made on the May 20 call.

35. The Government thus obtained my consent to the forfeiture order through the representations made on the May 20 call, and obtained entry of the orders on the understanding, stated by the Court, that the amounts were contested

and "to later be determined." Having done so, the Government should not now be permitted to enforce the forfeiture judgment, to treat the $230 million figure as fixed, or to use the judgment to interfere with restitution, contrary to what it agreed on that call. I ask that the Government be held to those representations.

## IX. Exhibit 2: the Damovo proposal.

36. Exhibit 2 is a true and correct copy of an e-mail that Dimitri Elkin, Chief Executive Officer of Twelve Seas Investment Company III ("Twelve Seas"), forwarded to me on September 29, 2026, as printed from my e-mail account on September 30, 2026, together with the two documents that accompanied it: a draft letter of intent from Twelve Seas for Damovo dated September 4, 2026, and a presentation titled "SPAC Process Overview," prepared for Damovo and dated September 2026. The forwarded exchange is between Mr. Elkin and Marvin Maerz, a Managing Director of Lincoln International, which, as Mr. Maerz wrote on September 3, 2026, was "running the sell-side process on behalf of the company." On September 5, 2026, Mr. Elkin sent Lincoln International the draft letter of intent and the SPAC process overview. On September 7, 2026, Mr. Maerz replied that he had shared the proposal with the sellers and that "they don't think that your proposal works for them commercially due to timing and structure."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 5th, 2026.

Greg E. Lindberg

BOP Inmate # 34-828-058

# EXHIBIT 1

Summary of Beckett Collectibles Holdings, LLC's
Consolidated January Results, 2021–2024

**EXHIBIT 1**

Beckett Collectibles Holdings, LLC — Consolidated January Results, 2021–2024 (USD in 000s)

| | B | D | P | AB | AN |
|---|---|---|---|---|---|
| 1 | Currency | | | | |
| 2 | *in 000's* | Actual | Actual | Actual | Actual |
| 3 | Beckett Collectibles Holdings LLC | Jan-24 | Jan-23 | Jan-22 | Jan-21 |
| 4 | **Total Revenue** | **3,746** | **3,760** | **3,628** | **3,266** |
| 5 | Cost of Goods Sold | 374 | 561 | 373 | 269 |
| 6 | **Gross Margin** | **3,372** | **3,198** | **3,255** | **2,997** |
| 7 | ***Gross Margin as a % of Revenue*** | ***90.0%*** | ***85.1%*** | ***89.7%*** | ***91.8%*** |
| 8 | | | | | |
| 9 | Compensation Expenses | 1,593 | 2,529 | 1,016 | 836 |
| 10 | Office Supplies & Rent | 246 | 197 | 91 | 79 |
| 11 | Consulting & Outsourced Services | 203 | 191 | 234 | 54 |
| 12 | Information Technology | 85 | 222 | 93 | 26 |
| 13 | Sales & Marketing | 90 | 159 | 6 | 15 |
| 14 | Travel | 77 | 73 | 56 | 28 |
| 15 | Other G&A | 215 | 312 | 203 | 379 |
| 16 | Unusual or Infrequent Items | 40 | 0 | 0 | |
| 17 | **Total Operating Expense** | **2,550** | **3,683** | **1,699** | **1,417** |
| 18 | | | | | |
| 19 | Depreciation of Property & Equipment | 87 | 95 | 39 | 36 |
| 20 | Amortization of Intangible Assets | 16 | 17 | 3 | 5 |
| 21 | **Total SG&A** | **2,652** | **3,794** | **1,741** | **1,458** |
| 22 | ***SG&A as a % of Revenue*** | ***70.8%*** | ***100.9%*** | ***48.0%*** | ***44.6%*** |
| 23 | | | | | |
| 24 | **Operating Income** | **720** | **(596)** | **1,514** | **1,539** |
| 25 | ***Operating Income as a % of Revenue*** | ***19.2%*** | ***(15.8%)*** | ***41.7%*** | ***47.1%*** |

# EXHIBIT 2

Lincoln International / Twelve Seas E-mail Exchange
(Sept. 3–7, 2026; forwarded Sept. 29, 2026), with the
Draft Letter of Intent and SPAC Process Overview

Gmail

Greg Lindberg <gelindberg@gmail.com>

## Fwd: Damovo

1 message

**Dimitri Elkin** <dimitri@twelveseascapital.com> Tue, Sep 29, 2026 at 12:20 PM
To: gelindberg@gmail.com

FYI

---------- Forwarded message ---------
From: **Maerz, Marvin** <mmaerz@lincolninternational.com>
Date: Mon, Sep 7, 2026 at 4:38 AM
Subject: RE: Damovo
To: Dimitri Elkin <dimitri@twelveseascapital.com>
Cc: Project NEXUS - TCG <nexus-tcg@lincolninternational.com>, Jonathan Morris <jonathan@twelveseascapital.com>

Hi Dimitri,

Thanks again for sending this through.

I have shared your proposal with the sellers, and I am afraid they don't think that your proposal works for them commercially due to timing and structure that you have outlined in the documents you sent across.

Will keep you posted should this change.

Best

Marvin

**Marvin Maerz**
Managing Director
m. +44 7432739097
**Lincoln International GmbH**

***Celebrating 30 Years of Lincoln International***

---

**From:** Dimitri Elkin <dimitri@twelveseascapital.com>
**Sent:** Saturday, September 5, 2026 11:58 AM
**To:** Maerz, Marvin <mmaerz@lincolninternational.com>
**Cc:** Project NEXUS - TCG <nexus-tcg@lincolninternational.com>; Jonathan Morris <jonathan@twelveseascapital.com>
**Subject:** Re: Damovo

EXTERNAL*

Marvin, hi!

Attached please find a draft LOI from Twelve Seas for Damovo as well as an overview of the SPAC merger process.

The LOI does not have the valuation numbers filled, but we can complete it fairly quickly once we receive the requisite information.

Please feel free to reach out to Jonathan or me if you have any questions.

Warm regards,

--

Dimitri Elkin

CEO

**Twelve Seas Investment Company III**

2685 Nottingham Avenue

Los Angeles, CA 90027
http://www.twelveseasspac.com/
+1-917-361-1177

On Thu, Sep 3, 2026 at 6:47 AM Maerz, Marvin <mmaerz@lincolninternational.com> wrote:

> Hi Dimitri,
>
> I understand that you have interest in acquiring damovo. We are running the sell-side process on behalf of the company.
>
> Do you have time to speak tomorrow?
>
> Thanks
>
> Marvin

**Marvin Maerz**
Managing Director
m. +44 7432739097
mmaerz@lincolninternational.com
lincolninternational.com | LinkedIn

This message may contain information that is confidential or privileged. If you are not the intended recipient, please advise the sender immediately and delete this message. See http://www.lincolninternational.com/disclosures/noticetorecipients/ for further information on Lincoln International and this email.

*This email originated from outside Lincoln International. Do not respond, click links or open attachments unless you recognize the sender and know the content is safe.

This message may contain information that is confidential or privileged. If you are not the intended recipient, please advise the sender immediately and delete this message. See http://www.lincolninternational.com/disclosures/noticetorecipients/ for further information on Lincoln International and this email.

**2 attachments**

**Damovo Twelve Seas LOI Draft.docx**
57K

**SPAC Process Overview Sep 2026.pdf**
798K

TWELVE SEAS

STRICTLY CONFIDENTIAL

September 4, 2026

Mr. Chris Nickerson
Chief Executive Officer
Damovo Deutschland GmbH & Co.
,
Dear Mr. Nickerson:

Twelve Seas Investment Company III ("Twelve Seas", "us" and / or "we") is pleased to submit this non-binding letter of intent (this "LOI") regarding the proposed combination (the "Transaction") of Twelve Seas and Damovo Deutschland GmbH & Co. ("Damovo," "the Company" or "you"). This LOI is non-binding, other than the Binding Provisions (as defined below). Damovo and Twelve Seas shall collectively be referred to as the Parties.

Twelve Seas is a NASDAQ listed special purpose acquisition company (NASDAQ: TWLV). We completed our IPO in December 2025, and currently have $176.3 million of cash in Trust. The confirmation of these funds is provided in Attached A to this letter. We greatly appreciate the opportunity to express our interest in a business combination with. Given what we have learned about the Company through our discussions with your team, we are excited about exploring a path forward.

The following is our proposal regarding the Transaction:

1. Valuation: Based upon our review of the Company and the information provided to us to date, and assuming that for 2026 the Company will generate at least ___ million Euro in revenue and ___ million Euro in EBITDA and will have no more than __ million Euro in bank debt as of August 31, 2026, Twelve Seas is prepared to enter into a business combination with the Company, pursuant to which Twelve Seas would acquire, directly or indirectly, 100% equity interest of the Company (the "Transaction") based on a pre-money equity valuation of the Company of $______________ (the "Equity Value"). Our Equity Value is contingent upon satisfactory results of confirmatory diligence.

   The Transaction will be payable through the issuance of newly issued shares of common stock of Twelve Seas at a deemed value of $10.00 per share (the "Transaction Shares"), and through all or some of the $176 million of cash currently available in the trust of Twelve Seas, and through additional financing that will organized by Twelve Seas as part of this Transaction.

   As part of the Transaction, we will seek to repay the existing debt of approximately ________ million Euros, and we will seek to provide ______ in cash-out to the

existing shareholders of Damovo. We would also want to discuss post-closing liquidity arrangements for the rollover institutional shareholders, and we would expect a customary lockup period for the rollover equity interest of 180 days from the closing of the Transaction.

2. PIPE financing: As part of the Transaction, Twelve Seas will seek to arrange a new PIPE financing in the amount of approximately ______ million Euro. Because this will be contingent on the successful listing of Damovo on NASDAQ, we are highly confident that our investors will provide the requisite support for this refinancing.

3. Cash from Trust: Damovo and Twelve Seas will seek to work together to minimize redemptions from Trust, and will seek that up to $176 million of cash in trust remained available to the Company, its creditors and its shareholders post Closing.

   For the purposes of this LOI, "Closing Cash" means the available cash and cash equivalents of Twelve Seas at the closing of the Transaction, including without limitation, (i) funds remaining in its trust account after redemption payments to its public stockholders (including funds retained in the trust account pursuant to non-redemption agreements) and prior to paying its Transaction expenses and (ii) the proceeds of any PIPE Investments that are fully committed upon signing of the Definitive Agreement.

   Any PIPE or other equity financing shall be conducted on terms (including price per share) consistent with the Equity Value and the deemed value of $10.00 per share, unless otherwise agreed by the Company.

4. Founder Shares and Private Shares Adjustment: The Sponsor currently holds 5,692,500 million founder shares (the "Founder Shares"). The Sponsor further owns 300,000 private placement shares (the "Private Shares"). Upon the Closing of the Transaction, Private Shares and Founder Shares will convert into 5,992,500 million shares of Twelve Seas's common stock.

5. Transaction: The terms and conditions for the Transaction would be set forth in a definitive business combination agreement, together with the other documents required to complete the Transaction (collectively, the "Definitive Agreement"), in the form to be negotiated between the parties on the basis of this LOI. The legal Transaction structure will be mutually determined by Twelve Seas and the Company so as to result in the most tax efficient outcome for the holders of the Company's existing equity holders. At the closing of the Transaction, the combined company will change its name to use the Company's name and its securities must be publicly traded Nasdaq under a corresponding ticker symbol.

   The parties intend to agree on a pro forma capitalization of the combined entity prior to the execution of the Definitive Agreement, reflecting the relative ownership of the Company's equity holders, SPAC's public shareholders, the Sponsor and any PIPE or other investors.

6. Post-Closing Board: The board of the combined entity at the closing will consist of 5 directors (classified into two or three classes), with each director serving a three-year term[3]. The board shall be comprised of (i) four persons indicated by the Company, and (ii) one director designated by Twelve Seas.

7. Cooperation and Exclusivity. The Twelve Seas team has conveyed a willingness (should the Company wish) to help the Company optimize its current business including by leveraging our significant financial and relevant operational expertise. This experience can help accelerate top line growth with new lines of business. Unless agreed by the Parties otherwise, this LOI shall be not exclusive and shall not prevent the Parties from exploring alternative transactions.

8. Terms and Conditions: The Definitive Agreement will include customary provisions including (but not limited to) representations, warranties, covenants, and indemnification provisions customary for a transaction of this size and type. The Definitive Agreement will be subject to customary closing conditions including the satisfactory completion of due diligence and the procurement of any consents or approvals necessary to consummate the Transaction and for the new entity to operate the business of the Company following the Closing, including all regulatory approvals, the approval of Twelve Seas' board of directors, and the approval of Twelve Seas' shareholders. The ancillary documents will include a customary registration rights agreement with respect to the registration of the Transaction Shares for resale.

   The representations, warranties and pre-closing covenants set forth in the Definitive Agreement will not survive the Closing, and there will be no post-closing indemnification or other recourse against either party or its direct or indirect stockholders in respect of such representations, warranties and pre-closing covenants. Each Party will disclaim reliance on any representations and warranties other than those set forth in the Business Combination Agreement

   .

   The total consideration contemplated in the Definitive Agreements will not be subject to any escrow or holdback.

9. Due Diligence: Entry into a Definitive Agreement and consummation of the Transaction would be subject to satisfactory results of a confirmatory due diligence investigation of the Company, its assets, and its operations. Twelve Seas expects key due diligence items to include, among others, detailed review of the Company's offerings and client relationships/contracts, products/technology, employee contracts, environmental, financial, accounting, human resources, legal, operational, regulatory, IT matters, facilities and operations, and potential customer and supplier calls. All such due diligence activities will be done in a manner so as to reasonably minimize disruption of the ongoing business activities of the Company.

[3]

10. Timing / Closing: We are eager to proceed expeditiously to complete our due diligence and to sign a Definitive Agreement and to close as soon as possible. We expect if the relevant documents and information and members of the management team are made available to us in a timely manner, we will be able to complete our due diligence and sign the agreement within 45 days from the commencement of our due diligence. We anticipate the target date for commencing the marketing of the PIPE Investment to be October 30, 2026.

11. Employment Agreements: Certain executives of the Company will be required to enter into mutually acceptable employment agreements with the surviving company, which will include customary confidentiality, non-compete and assignment of inventions and other customary restrictive covenant provisions.

12. Filings: As soon as practicable following the execution of the Definitive Agreement, the parties will file all required submissions for stockholder, regulatory and governmental approval, including a proxy statement with the SEC for the purpose of obtaining Twelve Seas stockholder approval. The Proxy Statement will include PCAOB audited annual financial statements of the Company as required by applicable securities laws.

Binding Provisions: The following provisions are deemed by the parties hereto to be binding as to the same:

13. Expiration: Please indicate your acceptance of the terms of this LOI by signing it and returning an executed copy to Twelve Seas on or prior to 5:00 pm EST on September 30, 2026, at which time if Twelve Seas has not received such executed copy, this LOI, including any prior drafts hereof or communications regarding the same, shall be deemed to have expired and be of no force and effect notwithstanding any subsequent execution by the Company.

14. Expenses: Except as expressly provided in the Definitive Agreement that is duly executed and delivered by all relevant parties, the parties hereto shall be responsible for their own costs and expenses incurred in connection with the Transaction, provided, however, if the Transaction is consummated, the transaction fees and expenses will be subjected to a mutually agreeable maximum amount.

15. Confidentiality and Waiver Against Trust: The Company agrees that none of them, nor any of their respective shareholders, officers, directors, employees, affiliates, representatives or advisors (collectively, the "Representatives"), shall disclose the existence of this LOI, or the terms herein, or in any related documents or instruments, or the fact that the parties are in discussions regarding the Transaction or the nature thereof, to any person or entity other than those Representatives who need to know such information in order to consummate the Transaction and who agree to maintain the confidentiality of the LOI and the discussions between the parties and such information shall be deemed "Confidential Information."

The Company hereby acknowledges that the waiver against Twelve Seas' trust account (and distributions therefrom) contained of the Confidentiality Agreement continues in full force and effect in accordance with its terms and will apply, mutatis mutandis, to this Letter Agreement and the transactions contemplated hereby.

16. Commitment: Except for the provisions set forth in Sections 13 through 18 hereof (the "Binding Provisions"), which are intended to reflect the binding legal agreement and obligations of the parties, it is specifically understood that this LOI is a non-binding letter of intent and is not, and shall not be deemed to be, an offer or acceptance of an offer, and is not intended to, and does not create, any rights or obligations on the part of any party, including any obligation to consummate the Transaction or to continue discussions or negotiations with respect to same. Accordingly, except as provided in the Binding Provisions, no party hereto shall have any obligation, liability, or duty (whether express or implied) to the other parties hereto and no past or future action, course of conduct, or failure to act relating to the Transaction, or relating to the negotiation of the terms of the Transaction or the Definitive Agreement, will give rise to or serve as a basis for any obligation, duty or other liability on the part of the parties until such time as, and as provided in, Definitive Agreement regarding the Transaction, agreeable both as to form and substance to each party, have been executed and delivered. Twelve Seas, in its sole discretion, may discontinue its pursuit of the Transaction at any time.

17. Governing Law and Venue: The Binding Provisions shall be governed by and construed in accordance with the laws of State of Delaware, excluding any conflict of laws or provisions that would render the law of another jurisdiction applicable. The parties agree that exclusive venue for all disputes related to this LOI shall be in the federal and state courts situated in the State of New York, and each party irrevocably consents to such jurisdiction in and to service of process from, such courts.

18. Counterparts: This LOI may be executed in one or more counterparts, each of which will be deemed to be an original of this LOI and all of which, when taken together, will be deemed to constitute one and the same LOI. The exchange of copies of this LOI and of signature pages by facsimile or electronic (pdf.) transmission shall constitute effective execution and delivery of this LOI as to the parties and may be used in lieu of the original LOI for all purposes. Signatures of the parties transmitted by facsimile or pdf shall be deemed to be their original signatures for any purpose whatsoever.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Twelve Seas looks forward to continuing to pursue the Transaction.

Sincerely,

By: ____________________________
**Name: Dimitri Elkin**
**Title: Chief Executive Officer**
**Twelve Seas Investment Company III**

If you are in agreement with the foregoing, please sign and return one copy of this LOI.

**AGREED AND ACKNOWLEDGED:**

**Damovo Deutschland GmbH & Co.**

By: ____________________________
**Name: Chris Nickerson**
**Title: CEO**
Date: September ____, 2026

____________________

Attachment A – Confirmation of available funds

TWELVE SEAS III

# SPAC Process Overview

*Presentation for Damovo*

**September 2026**

# Seasoned Management Team with Deep Investment Experience

The team has played a key role in six SPACs that have collectively raised $1.6B of capital on NASDAQ



## Julian Vickers | Chairman of the Board

- Currently, the CEO of the Natural Resources Global (NRG) Capital Group
- Previously, Global Co-Head of Natural Resources Investment Banking for Barclays, responsible for the Mining & Metals, Oil & Gas and Chemicals businesses; a member of the Investment Bank's Operating Committee in EMEA
- Prior to that, Global Head of Energy Investment Banking for Citi, Strategic Management Consultant with McKinsey & Company and Exploration Geologist with Cominco
- Holds an M.B.A from the London Business School & a Degree in Mining Geology from Imperial College, London



## Dimitri Elkin | Chief Executive Officer

- Previously, the CEO of Twelve Seas I, Twelve Seas II and Quadro Acquisition One Corp.
- General partner with UFG Private Equity
- 20+ years of experience in private equity & investment banking including with KKR and Lehman Brothers
- Holds a B.S in mathematics from Moscow State University and an M.B.A from Harvard



## Jonathan Morris | Chief Financial Officer

- Currently, CFO of Global Blockchain Acquisition and ESH Acquisition Corp.
- Previously, Partner at a large sovereign family office, Director at Blackstone, & coverage banker at Credit Suisse
- 20+ years of experience as a finance executive as a principal, operator, and board member
- Holds a B.S. from University of Virginia and an M.B.A. from Georgetown University



# Seasoned Management Team with Deep Investment Experience

The team has played a key role in six SPACs that have collectively raised $1.6B of capital on NASDAQ



## Bob Foresman | Independent Board Member

- Former Vice-Chairman of UBS, senior positions with Barclays Group, Dresdner Kleinwort Wasserstein, ING Barings, & IFC
- Independent director of several private and publicly listed companies, including Ascendant Digital Acquisition Corp.
- Member of the Board of Counselors of the East / West Institute, member of the advisory board of Harvard University's David Center for Russian and Eurasian Studies, and a lifetime member of the Council on Foreign Relations



## Greg Nelson | Independent Board Member

- Managing Director of TAG Financial Institutions Group, an investment bank focused on the financial services industry
- Independent director of Quadro Acquisition One Corp. SPAC
- Prior experience includes Bear Stearns & Company, Friedman, Billings, Ramsey & Co., and Bank of America Securities
- Prior to entering the investment banking industry, Mr. Nelson worked in corporate accounting and finance positions with the Allstate Corp. and Amerin Guaranty Corp. (now part of Radian Group)



## Olga Klimova | Independent Board Member

- Managing Director of Rainmaker Securities LLC, a mid-market investment bank that specializes in private equity market-making, capital formation and mergers & acquisitions
- Established strong relationships with leading asset managers worldwide
- Proven track record in building & restructuring businesses, with experience in global equities, fixed income, distribution, capital raising & advisory including through roles at UBS, Bank Austria (now part of Unicredit), and Sber CIB
- Deep background in corporate governance best practices and board level involvement



# Why companies choose the SPAC route over an IPO

Benefits of a SPAC merger vary depending on Target's requirements, but the certainty of closure and valuation are always key factors

| # | Reason | Example |
|---|---|---|
| 1 | **Speed and certainty of closure that is not dependent on the "IPO window"**<br>• Over 1,000 companies are not filed to go public with the SEC vs. ~100-200 IPOs per annum* | Zegna / IIAC SPAC (fashion, Italy) |
| 2 | **Geopolitical risks / novel geography**<br>• IPO investors highly reluctant to commit to a target that faces unusual risks or lacks comps | KyivStar / Cohen Circle (telecom, Ukraine) |
| 3 | **Sector or type of business that out of favor among mainstream IPO investors**<br>• Oil and gas, conglomerates | Presidio Resources / EQV (oil producer, US) |
| 4 | **Regulatory grey area**<br>• Types of businesses that remain in the regulatory "gray" zone, such crypto, cannabis | Draft Kings/Diamond Eagle (sports betting, US) |
| 5 | **Complex transaction that requires flexibility**<br>• Unique situations, such as merging of two or more companies at the same time, transitioning from a local stock exchange to NASDAQ or a carve-out from a conglomerate | Global Growth / Quadro (conglomerate, US)<br>Glencore / Metal Acquisition (copper, Aus) |
| 6 | **Companies with a sound business model that are still in an early stage**<br>• Companies that want to tap capital markets quickly, despite lacking corporate governance depth expected from a public company, or which are still early in their development | Brooge / Twelve Seas (oil storage, UAE)<br>Lifezone Metals / GoGreen SPAC (Ni, Tanzania) |
| 7 | **Cutting edge technologies that appeal to retail investors**<br>• Companies with unproven technologies and little revenue but big potential upside | Modular nuclear reactors<br>Quantum computing<br>*Previously: new space, electric vehicles, crypto exchanges, AI* |

TWELVE SEAS

** In 2024, 75 companies completed a regular IPO, and 73 companies went public by completing a SPAC merger (see page 12).*

# SPAC Benefits vs. Risks

Like any capital market tool, a SPAC merger carries both benefits and risks

| Benefits | Risks |
| --- | --- |
| **Certainty of closure:** SPAC shareholders approve 100% of mergers irrespective of market conditions and merger terms | **Cash at close:** the amount of capital raised in a SPAC merger and free float are uncertain |
| **Valuation flexibility:** EV determined by private negotiations between the Sponsor and the Target | **Limited distribution:** no broad investor marketing or automatic equity research |
| **Lighter process:** a SPAC merger creates minimal disruption for Target's management team, no roadshow needed (unless a PIPE is required) | **Stock volatility:** stock can be very volatile after the merger, both on the downside and the upside |
| **Lower financial risk:** unlike in an IPO, the upfront cash costs are minimal | **Limited investor universe:** Many large investors will wait 1-2 quarters before buying shares |
| **Structuring flexibility:** a SPAC can simultaneously merge with 2 or more Targets at the same time, raise additional capital, both debt and equity, and move its jurisdiction from Cayman to another location of Target's choice | |

# SPAC Process for a Target

A typical SPAC merger process should take approximately six to eight months




TWELVE SEAS

** SEC review is the only step that is not controlled by the SPAC / Target. Assuming a well-prepared filing with two rounds of comments, the SEC process can be completed in eight weeks (e.g., Brooge / Twelve Seas merger)*

# Benefits & Considerations of the De-SPAC Route

| | De-SPAC | Traditional IPO | RTO | Direct Listing |
|---|---|---|---|---|
| **Benefits** | ✓ **SPACs are designed as a financing vehicle** which allows for flexibility when raising capital<br>✓ **PIPE capital and trust capital** (trust shares in form of freely tradeable shares to develop float)<br>✓ **Sophisticated investors embedded** in defined asset class and trust holders<br>✓ **Negotiated valuation/economics** with SPAC sponsor (with valuation/investors in mind)<br>✓ **M&A techniques available**, including earnouts, different classes of stock, and other incentive arrangements | ✓ **Dilution only from capital raised during the IPO,** no sponsor promote or warrants to consider<br>✓ **Strong after market support** (multiple underwriters, research coverage, etc.)<br>✓ **Investor familiarity** with the traditional IPO approach | ✓ **Negotiated valuation/economics** with RTO target company<br>✓ **PIPE capital** can be raised at close<br>✓ **9-12 Month Process** (audit depending) | ✓ **No incremental dilution**<br>✓ **Lower fees / expenses** (fixed financial advisor fees and counsel)<br>✓ **More flexibility in communication** with investors<br>✓ **Market practice of no lock-ups**<br>✓ **No negotiations with M&A counterparty** or investors required |
| **Considerations** | • **Incremental dilution** (promote/warrants)<br>• **Low visibility to final redemptions**<br>• **Potential illiquidity** in the stock until float develops<br>• Subject to SPAC shareholder vote | • **Increased execution risk** if macro conditions are unstable<br>• **Limitations on valuation and offering size** (typically target 15-20% dilution with capital raise at IPO)<br>• **No price discovery** until offering<br>• **Requires a heavy burden on the management team's time**<br>• **Onerous process to onboard Board of Directors** to meet public listing requirements | • **Incremental dilution** (RTO equity holders)<br>• **Assume liabilities/cap structure** from RTO, requires additional bilateral due diligence<br>• **Integration risk**<br>• **Potential volatility and illiquidity** in the stock until float develops<br>• **Additional marketing process** to reposition the company post merger<br>• Subject to target shareholder vote | • **Requires a diverse private shareholder base**<br>• **Inability to set the price or direct allocation** of shares to select investors<br>• **Potential volatility and illiquidity** in the stock<br>• Lack of fulsome price discovery<br>• **Heavier lift for management** to educate investors |

# Additional De-SPAC Listing Considerations

| | De-SPAC | IPO | RTO | Direct Listing | Considerations |
|---|---|---|---|---|---|
| **Timeline** | ◐ | ◔ | ◐ | ◐ | • Occur on relatively similar timelines with SEC registration process as the key gating item in each process<br>• Slightly longer timeline for IPO due to direct exposure to recent market volatility |
| **Access and Cost of Capital at/near Listing (Dilution)** | ◐ | ◐ | ◐ | ◐ | • SPACs have a higher cost due to sponsor promote and warrant dilution (negotiable)<br>• IPOs may have higher dilution given current valuation environment<br>• Direct listings and RTOs generally have lower costs as typically no capital is raised |
| **Shareholder Liquidity** | ◕ | ● | ◐ | ◐ | • SPACs have registered and liquid shares pre-combination, which accelerate the path to shareholder liquidity post deal<br>• Direct listings and RTOs may have a less certain liquidity profile following listing |
| **Continued Access to Capital** | ◕ | ● | ◔ | ◐ | • Streamlined access to capital as a public entity available with each option<br>• SPACs and Direct Listings likely to have a better liquidity profile |
| **Control over Broader Shareholder Base** | ◕ | ◕ | ◐ | ◔ | • Marketing effort to better build and choose shareholder base in an IPO or SPAC IPO<br>• Lack of being able to offer liquid shares in a Direct Listing or RTO can limit demand pre-transaction |
| **Markets and Awareness** | ◐ | ● | ◔ | ◔ | • Larger branding event through an IPO or SPAC<br>• Direct Listings or RTOs tend to bring less attention organically |
| **Research Analyst Coverage** | ◕ | ● | ◔ | ◐ | • Benefit of building analyst relationships through IPO or SPAC process<br>• Direct listings and RTOs also allow for analyst engagement, though there are fewer option to engage with |
| **Execution Certainty** | ◕ | ◔ | ◔ | ◐ | • Direct listings rely solely on the SEC process and exchange listing approval<br>• SPACs and RTOS require shareholder votes in addition |
| **Costs** | ◐ | ◐ | ◐ | ◕ | • Direct listings will have the lowest cost since there are the fewest parties. There will be no hidden assumption of costs<br>• SPACs and RTOs involve multiple law firms and more service providers |
| **Diligence Process** | ◐ | ◐ | ◐ | ◕ | • Direct listings will have the most efficient diligence process<br>• SPACs and RTOs may require a fulsome diligence process that may include a fairness opinion |

# Considerations for Potential Sellers to SPACS

### Public Market Readiness

- Target business needs to be fundamentally "IPO-able" and have audited financials, achievable projections, and public market supported leverage

1

### Picking a SPAC Partner

- Sponsor, track record, sector focus, size, investor base, ongoing involvement (board representation)

2

### Valuation

- Acquisition must be priced to level supportable in the public markets
- Valuation locked early in the process (although subject to dynamics in the market)

3

### PIPE /Certainty of Capital

- PIPE can help provide certainty of capital, market validation, structure and pricing; important for some flexibility in Sources & Uses to accommodate potential redemptions

4

### Cost of Capital

- Potentially higher cost of capital due to sponsor promote and warrant dilution; often negotiated to a level relatively in-line with an IPO

5

### Timeline

- Usually shorter than IPO, but committed capital (PIPE) arranged prior to 2-3mo SEC review vs post review for IPO

6

### Execution Risk

- Deal risk through closing due to shareholder vote and possible redemptions; SPACs cannot offer reverse break-up fees or expense reimbursements
- Mitigated through negotiation with anchor investors and decoupling of redemption vote and merger vote

7

### Seller Liquidity

- Define mix of primary vs secondary
- Sellers often required to rollover a significant portion of their equity, which is then subject to a lock-up in line with SPAC sponsors

8

### Investor Relations

- Historically "technical" investor base; significant (and potentially prolonged) shareholder churn after announcement of merger
- Recent participation from blue-chip institutional and long-term investors

9

### Choice of Advisors

- Key skills and experience required for navigating with a SPAC counterparty in order to achieve a successful De-SPAC process

10


Twelve Seas Investment Company III
@TwelveSeas

# EXHIBIT 3

Defendant's October 5, 2026 Cease-and-Desist Letters
to the Special Master Team and to the Government

October 5, 2026

**VIA ELECTRONIC MAIL**

Joseph W. Grier, III, Special Master (jgrier@grierlaw.com)
Michael L. Martinez (mmartinez@grierlaw.com)
Grier Wright Martinez, PA
521 E. Morehead Street, Suite 440
Charlotte, North Carolina 28202

Copy to:
Daniel Ryan, Assistant United States Attorney (Daniel.Ryan@usdoj.gov)
Benjamin Bain-Creed, Assistant United States Attorney (Benjamin.Bain-Creed@usdoj.gov)
United States Attorney's Office for the Western District of North Carolina
Lyndie Freeman, U.S. Department of Justice, Criminal Division (Lyndie.Freeman@usdoj.gov)
Jeremy Sanders, U.S. Department of Justice (jeremy.sanders@usdoj.gov)

**Re:** *United States v. Lindberg*, **Nos. 3:23-CR-48-MOC and 5:19-CR-22-MOC (W.D.N.C.) — Demand to Cease and Desist All Ex Parte Communications; Breach of the Order Appointing Special Master (Doc. 56); Notice of Willful Continuation; Demand for Recusal**

Dear Mr. Grier and Mr. Martinez:

We write on behalf of Defendant Greg E. Lindberg. This letter is a formal demand that the Special Master, his counsel, and his financial advisor, Scott Avila and Paladin Management Group, LLC (together, the "Special Master Team"), immediately cease and desist from all communications concerning this case with the Government or any third party. Defendant further demands that the Special Master recuse himself from further service in this case, and that his counsel and financial advisor withdraw. It is also notice that those communications breach the Order Appointing Special Master entered January 23, 2025 (Doc. 56) (the "Appointment Order"). This letter concerns both *United States v. Lindberg*, No. 3:23-CR-48-MOC, and *United States v. Lindberg*, No. 5:19-CR-22-MOC (W.D.N.C.). Docket citations are to No. 3:23-CR-48-MOC, in which the Special Master's reports and fee applications are filed.

**1. The Appointment Order authorizes no ex parte communication.**

The Appointment Order has two parties: the United States and Mr. Lindberg. It directs the Special Master to "regularly update the Parties" and to "consult with the Parties," Doc. 56 ¶ 5, and to advise the Defendant "through Defendant's counsel," in writing, *id.* ¶ 8. It directs him to "seek Court approval to liquidate" assets and to

"oversee and help accomplish the liquidation with Court approval." *Id.* at 6 (as quoted in Doc. 263, at 1–2). Nothing in the Appointment Order permits the Special Master Team to communicate with one party, or with third parties, about the matters referred to the Special Master outside the presence of both parties.

That silence is decisive. The Court referred restitution issues to the Special Master under 18 U.S.C. § 3664(d)(6) "for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court." Where a court means to allow a master to communicate ex parte, the appointing order says so. *Cf.* Fed. R. Civ. P. 53(b)(2)(B) (the appointing order must state "the circumstances, if any, in which the master may communicate ex parte with the court or a party"). This Appointment Order states none. Rule 53 governs masters in civil cases; in this criminal case, where the master's findings fix criminal punishment, its protections are the minimum, not the ceiling. Because this is a criminal proceeding, Mr. Lindberg's constitutional rights, including his right to due process under the Fifth Amendment, also attach. Every substantive communication the Special Master Team has had with the Government, any victim, or any other third party outside the presence of defense counsel was therefore outside the authority the Court conferred and in breach of ¶¶ 5 and 8.

**2. The Special Master Team has admitted the communications on the record.**

The breach is not in dispute. It appears in the Special Master Team's own sworn statements and filings. The communications described below are examples only; many more are referenced in the schedules to this letter.[1] The communications disclosed in the record to date are summarized in Schedule A; every individual time entry in the five fee applications that records or refers to a communication with

[1] The communications identified in this letter, Schedule A, and Appendix 1 are based on current counsel's review of the Special Master Team's own billing entries, the billing entries of Mr. Lindberg's prior counsel filed on the docket (Katten Muchin Rosenman LLP, Docs. 75-1, 87-1, 97-2, 154-2, 336-2; Wyatt & Blake, LLP, Docs. 71-1, 83-1, 98-1, 149-1, 264-1), and prior counsel's non-privileged emails to and from the Special Master Team and/or the Government, drawn from approximately 1.8 GB of prior counsel's files transferred to current counsel. The entries listed are communications that do not appear in prior counsel's non-privileged emails with the Special Master Team or the Government or in prior counsel's billing entries. The Government and the Special Master Team have refused to provide the communications and the records underlying them. *See* Doc. 341; Doc. 343 ¶¶ 10, 24. Defendant therefore places this information on the record, including for purposes of his appeal to the United States Court of Appeals for the Fourth Circuit, as an approximate placeholder showing how extensive the ex parte contact was and how pervasive the issues it raises are. These entries are necessarily incomplete and approximate. For example, the Special Master's contacts are innumerable and, in the Special Master's own words, untallied: his counsel describes the Special Master Team's communications "[w]ithout having tallied each and every phone call, email, video conference, or the amount of time spent on each." Doc. 343 ¶¶ 9–10. Additionally, Mr. Lindberg is working with prior counsel to identify any entries that have slipped through and will promptly update the docket with any corrections as more information becomes available. The complete record remains with the Government and the Special Master Team.

anyone outside the Special Master Team, without recording the participation of defense counsel, is listed verbatim in Appendix 1; and the five status reports and five fee applications are listed in Schedule B:

> **Continuing daily contact.** "I continue to communicate about this Case outside the presence of both the government and Defendant's counsel with third parties on a daily (or near daily) basis . . . ." Doc. 343 ¶ 9.
>
> **No record kept.** The communications have been made "[w]ithout having tallied each and every phone call, email, video conference, or the amount of time spent on each." Doc. 343 ¶ 10. The time entries are also block-billed. They record the minimum that occurred, not every call or email: they are a floor, not a ceiling. And by your own account you communicate with third parties "on a daily (or near daily) basis." Doc. 343 ¶ 9.
>
> **From the outset.** "From the outset, the Special Master has had ex parte communications with various interested parties . . . , has gained and reviewed private information not subject to public disclosure, and has otherwise taken into account documents and information that exist outside of the formal record." Doc. 288, at 10.
>
> **Victims, before and after sentencing.** The Special Master Team "met with various victim constituencies both before and after the Sentencing Hearing" and "has maintained open and frequent communications with representatives of the Primary Restitution Assets, the likely victim constituencies, and other interested parties." Doc. 262, at 5.
>
> **The private call to AUSA Dan Ryan on the eve of sentencing.** On May 11, 2026, three days before Mr. Lindberg filed his sentencing memorandum and fifteen days before sentence was imposed, Mr. Martinez reviewed the defense's draft sentencing memorandum and exchanged emails and feedback about it with James Wyatt and AUSA Dan Ryan together. Doc. 263, at 11. That exchange was itself outside Mr. Grier's reference, which is limited to restitution, and Mr. Lindberg does not concede that it was proper. Mr. Martinez billed the estate 2.6 hours, $1,287.00, for the entry, which records that he "[p]rovide[d] feedback to James Wyatt and Dan Ryan re the same." Id. Worse, Mr. Martinez then placed a separate "[t]elephone call to Dan Ryan re the same and related sentencing issues." *Id.* No defense counsel is recorded on that call. Its subject was Mr. Lindberg's sentence. Mr. Wyatt had invited comments on the draft memorandum by email to the Special Master Team and the Government together; that invitation did not extend to a private call between the prosecutor and the Special Master/Magistrate under the MVRA. Mr. Lindberg does not know what was said. Paragraph (d) below specifically includes all notes and records of that call and every communication with AUSA Dan Ryan concerning sentencing.

**The cooperation statement.** On May 20, 2026, while drafting the Special Master's statement concerning Mr. Lindberg's cooperation, filed two days later (Doc. 159), Mr. Martinez took a "[t]elephone call from Dan Ryan re the same." Doc. 263, at 13. No defense counsel is recorded on that call. Defense counsel were sent the draft the next day and proposed revisions, *id.*; by then the Government had already been heard privately.

**Sentencing contact with the Government.** On June 17, 2026, Mr. Martinez took a "[t]elephone call from Dan Ryan re recent pleadings filed in the case." Doc. 263, at 20.

**Before the appointment.** In December 2024, before the Appointment Order was entered, Mr. Martinez had "conversations with Assistant US Attorney" about the "form of motion seeking special master, and form of order appointing special master"; the Special Master sent an "email to Dan Ryan" about the "proposed motion for appointment of special master"; and on December 17, 2024, both of you held a conference with AUSAs Dan Ryan and Stout and Trial Attorney Freeman "re contents of brief in support of order appointing special master." Doc. 69, at 11–12.

**Private contact with the prosecutors from the first weeks.** On February 13, 2025, immediately after a joint call, the Special Master and Mr. Martinez held a "[f]ollow-up phone call with D. Ryan and B. Bain-Creed re scope of special master order." Doc. 69, at 23. In July 2025, the Special Master Team's billing statements went to AUSA Dan Ryan before they were filed, and the Team reviewed his "feedback . . . re: invoices." Doc. 81, at 22, 24. On August 20, 2025, the Special Master held a "Teams meeting with DOJ to prepare for status hearing on 8/26." *Id.* at 41.

**The Government's hand in the Special Master's filings.** On October 27, 2025, the Special Master Team reviewed "AUSA comments to draft status report." Doc. 95, at 18. On March 16, 2026, it reviewed "comments to draft restitution report and redline of proposed order from DOJ." Doc. 148, at 37. On April 1, 2026, two days before the report was filed, Mr. Martinez held a "[c]onference call with Dan Ryan and Andrew Cowie re specific language in various parts of the restitution report and appendices" and exchanged emails "re futher [sic] edits to draft report from the government." *Id.* at 43. On May 14, 2026, the day before the supplement and its redline of the proposed order were filed, Mr. Martinez exchanged "[e]mails with Dan Ryan, Lyndie Freeman, and Ben Bain-Creed re revised proposed preliminary restitution order. Revise the same." Doc. 263, at 12. No defense counsel is recorded in these exchanges with the Government. Defense counsel were sent some of the same drafts; that does not make the Government's separate comments, calls, and redlines any less ex parte, and they have never been produced.

**Purchasers and asset representatives.** The Special Master Team held a "[v]ideo conference with counsel for prospective purchaser of certain specified

affiliated companies" and a "Teams meeting with representatives of primary restitution asset re sale process." Doc. 263, at 8–9.

**Forfeiture keyed to your valuation.** The Consent Order and Judgment of Forfeiture sets the forfeiture money judgment by reference to "the Special Master's estimate . . . of the 'Mid' point value of the 'Primary Restitution Assets.'" Doc. 160, at 1. Your team discussed "asset valuation," the restitution report, and the proposed restitution order privately with AUSA Benjamin Bain-Creed, who signed that order for the Government. Doc. 69, at 45; Doc. 148, at 30, 37, 39; Doc. 263, at 12; Doc. 160, at 3. The valuation has never been produced.

**Damovo letters.** The Special Master's time records reflect a "proposed letter to Holland & Knight re Damovo Group Transaction" (May 28, 2026), a "comfort letter re. Damovo transaction" (May 29, 2026), and a "letter from Special Master re non-opposition to Damovo transaction" (June 1, 2026). Doc. 263, at 14, 15, 30. None appears on the docket, and none has been produced to the Defendant. The Special Master has since told the Court that he "does not intend to interfere with, or otherwise oppose, the transaction." Doc. 334, at 3.

**A letter only the Special Master Team knew about.** The Special Master conceded that he was "unsure if anyone besides the Special Master and Paladin was aware that the letter existed as it was addressed only to the Special Master's NHC board designee." Doc. 288, at 5 n.25.

**Withholding to protect the channel.** The Special Master admits he did not give defense counsel documents counsel asked to review, "primarily due to a desire to preserve the free-flow of information to the Special Master." Doc. 343 ¶ 24. He has reserved the right to refuse information about the Primary Restitution Assets "upon similar future demands by Defendant." Doc. 334, at 5 n.9.

Every communication described in this section, and every communication listed in Schedule A and Appendix 1, breaches the Appointment Order's directives to update and consult with "the Parties" and to communicate with the Defendant through counsel in writing. The Damovo letters also breach the requirement that liquidation of Primary Restitution Assets proceed "with Court approval." A consent, comfort, or non-opposition letter that clears a disposition of a Primary Restitution Asset, issued privately to a third party's counsel without notice to the Defendant or approval by the Court, is exactly what the Appointment Order forbids.

Schedule A and Appendix 1 are the best evidence available to Mr. Lindberg of these communications. He was a party to none of them. The only parties were the Government and the Special Master Team, and the calendars, call logs, notes, and emails that would confirm or refute any entry are in your files and the Government's, not his. A challenge to one entry is not a denial of any other. If the Special Master Team disputes any entry, please identify it specifically, entry by entry, with the basis

for the dispute, within the seven days provided in paragraph 4(d). Mr. Lindberg will ask the Court to treat every entry not specifically disputed as an acknowledged ex parte communication.

Each of those communications also violates Mr. Lindberg's constitutional rights as a criminal defendant. The proposed findings at issue will fix the amount of a criminal punishment. The Fifth Amendment forbids depriving any person of property "without due process of law." U.S. Const. amend. V. The Sixth Amendment guarantees the accused "the Assistance of Counsel for his defence." U.S. Const. amend. VI. When the official charged with making restitution findings receives information, comments, and redlines from the prosecution and third parties outside the presence of defense counsel and outside the record, Mr. Lindberg cannot see, test, or answer what is being used against him, and his counsel is shut out of the very process that will determine his punishment.

The same is true of every figure the Special Master Team received from the Government, or allowed the Government to change, outside the presence of defense counsel. The Government commented on, redlined, and edited the Special Master's status report, his restitution report and its appendices, and his proposed restitution orders. *See* Doc. 95, at 18–19; Doc. 148, at 30, 37, 39–40, 43; Doc. 263, at 12. The forfeiture money judgment, in turn, is set by reference to "the Special Master's estimate . . . of the 'Mid' point value of the 'Primary Restitution Assets.'" Doc. 160, at 1. When the Special Master/Magistrate under the MVRA receives information from the prosecution and allows the prosecution to edit the documents that carry the restitution figures and the valuations on which forfeiture depends, without defense counsel present and without any opportunity for the defense to test those figures, or any other figure or "edit" to the restitution determination, the result violates due process. It also merges two roles that must remain separate. The Special Master/Magistrate under the MVRA is to be impartial; when the prosecutor shapes the findings the Special Master submits to the Court, the Special Master and the prosecutor become one. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer." *Id.* at 137. Defendant reserves every constitutional objection arising from these communications.

**3. You have been on notice for weeks. The breach is now willful.**

The Special Master Team's breach is now willful. It has been told in writing that these communications breach the Appointment Order, and it has not stopped.

On August 31, 2026, Defendant moved to compel production of the ex parte communications and identified the Appointment Order provisions they violate. Docs. 331, 332; *see* Doc. 332, at 9. Ten days later, in a sworn affidavit filed September 10, 2026, Mr. Martinez did not say the communications had stopped. He said: "I continue

to communicate about this Case outside the presence of both the government and Defendant's counsel with third parties on a daily (or near daily) basis." Doc. 343 ¶ 9. On September 14, 2026, Defendant asked in writing that the Special Master Team cease substantive communication with the Government or any third party concerning loss, valuation, causation, offsets, or credits except on notice to defense counsel and on the record, and demanded specified materials within seven days. Doc. 345-4, at 2–3. Those seven days have long since run. Nothing has been produced on the docket, and we have received no confirmation that the communications have stopped.

Accordingly, every ex parte communication by the Special Master Team since August 31, 2026, and every one after receipt of this letter, is knowing and willful, and Defendant will so characterize it to the Court. The lawyers on the Special Master Team are also bound by the Rules of Professional Conduct, which make it professional misconduct to "knowingly assist or induce another" to violate those Rules and to "engage in conduct that is prejudicial to the administration of justice." N.C. Rules of Pro. Conduct r. 8.4(a), (d). Continued one-sided contact with the Government and third parties on matters pending before the Special Master, after written objection, falls squarely within that concern.

**4. Demands.**

Defendant demands that the Special Master Team:

**(a) Cease immediately** all communications, oral or written, with the Government, any victim or victim representative, any receiver, rehabilitator, liquidator, regulator, or guaranty association, NHC Holdings, LLC or its designees, management or counsel of any Primary Restitution Asset or affiliate, any lender, or any prospective purchaser, concerning restitution, loss, valuation, causation, offsets, credits, or the disposition of any Primary Restitution Asset.

**(b) Issue no consent, waiver, comfort, or non-opposition letter**, and take no other action that facilitates the sale, transfer, foreclosure, or other disposition of any Primary Restitution Asset (including Damovo), without first obtaining the Court's approval on notice to the Defendant. Within three business days, state in writing whether the Damovo letters reflected in Doc. 263, at 14, 15, and 30, were delivered, to whom, and on what date, and produce copies.

**(c) Preserve** all documents and electronically stored information relating to this case, including emails, text and instant messages, call logs, calendar entries, meeting notes, Teams and video-conference records, time-entry detail, drafts, and the Paladin workpapers and slide decks. This includes material held by Paladin and by any designee of the Special Master on the NHC board.

**(d) Within seven days, produce, for each ex parte communication listed in Schedule A and in Appendix 1 to this letter,** all notes, memoranda, and summaries of the communication; the calendar entries, call logs, and video-conference records showing its date, time, and duration and each participant; the complete underlying time and billing entries for it, including any entries omitted from or summarized in the filings; all emails, text messages, and attachments associated with it; and all documents exchanged in connection with it, together with the additional items listed for that communication in Schedule A.

**(e) Within the same seven days, produce, for each status report and fee application listed in Schedule B to this letter,** the complete underlying time and expense records of every timekeeper for the period it covers, including entries omitted from or summarized in the filings, and the Requested Materials for every entry reflecting a communication with the Government or any third party outside the presence of defense counsel.

**(f) Catch-all.** Within the same seven days, serve a log of every other communication about this case, from December 1, 2024, to the present, between any member of the Special Master Team (including the Special Master, Grier Wright Martinez, PA, Paladin Management Group, LLC, their personnel, and any designee of the Special Master on the board of NHC Holdings, LLC or any other Primary Restitution Asset) and the Government or any third party, outside the presence of defense counsel, whether or not it appears in any filing, time entry, or Schedule A, whether or not time was billed for it, and in whatever medium it occurred, including personal email accounts, text and instant messages, and messaging applications. The log should show the date, time, duration, participants, medium, and subject of each communication. Produce the Requested Materials for each, together with the materials demanded in Defendant's September 14, 2026 letter, Doc. 345-4, at 2–3.

**(g) Recuse.** The Special Master should recuse himself from further service in this case and so advise the Court in a filing served on both parties, and Grier Wright Martinez, PA and Paladin Management Group, LLC should withdraw. A judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," and where he has "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). *Cf.* Fed. R. Civ. P. 53(a)(2) ("A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455 . . . ."). The Special Master Team has received, off the record and outside the presence of defense counsel, information, comments, and redlines from the prosecution and third parties on the very questions it is to decide; it alone, with the Government, knows what was said; and it has continued those communications after written notice. Its impartiality cannot

be maintained in those circumstances. If the Special Master does not recuse, Defendant will ask the Court to remove him.

**(h) Confirm in writing**, within three business days of this letter, that the Special Master Team will comply with paragraphs (a) through (g).

**5. Reservation of rights.**

Defendant has not consented to, and does not waive, any ex parte communication, past or future. Defendant cannot waive communications whose content has never been disclosed to him. Defendant reserves all rights and remedies, including removal or disqualification of the Special Master, objection to and disgorgement of fees paid from the Primary Restitution Assets, and any other relief the Court deems appropriate. Defendant also reserves the right to place this letter, and any response or failure to respond, before the District Court and the United States Court of Appeals for the Fourth Circuit.

We look forward to your written confirmation.

Respectfully,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC

*/s/ Vivek Ramachandran*
Vivek Ramachandran
Dhamma Law, PLLC

*Counsel for Greg E. Lindberg*

cc (via electronic mail):
Daniel Ryan, Assistant United States Attorney (Daniel.Ryan@usdoj.gov)
Lyndie Freeman, U.S. Department of Justice, Criminal Division (Lyndie.Freeman@usdoj.gov)
Benjamin Bain-Creed, Assistant United States Attorney (Benjamin.Bain-Creed@usdoj.gov)
Jeremy Sanders, U.S. Department of Justice (jeremy.sanders@usdoj.gov)
Scott Avila, Paladin Management Group, LLC (by counsel for the Special Master, who is asked to forward this letter)

## SCHEDULE A
### Ex Parte Communications Disclosed in the Record, and Materials Requested[2]

The Special Master Team is requested to produce the Requested Materials for each communication listed, including materials held by the Special Master, Grier Wright Martinez, PA, and Paladin Management Group, LLC. For each item below, "Requested Materials" means: (1) all notes, memoranda, summaries, and recordings of the communication; (2) calendar entries, call logs, and video-conference records showing the date, start and end time, and duration of the communication and each participant; (3) the complete underlying time and billing entries of every timekeeper who recorded time for it, including any entries omitted from or summarized in the filings; (4) all emails, text and instant messages, and attachments sent or received in connection with it, including those arranging or following up on it; and (5) all documents provided, shown, or received during or in connection with it. The sixth column identifies, for each communication, the numbered categories of materials Defendant requested on August 28, 2026 (Doc. 345-2, at 8–24) to which it relates; those requests are incorporated here. Specific additional items are listed in the last column.

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 1 | Dec. 4–5, 2024 | Special Master; Mr. Martinez; AUSA Dan Ryan | Mr. Martinez's "conversations with Assistant US Attorney" about the "form of motion seeking special master, and form of order appointing special master"; the Special Master's "email to Dan Ryan" on the "proposed motion for appointment of special master" | Doc. 69, at 11 | 38, 39, 40, 52 | Every draft of the motion, brief, and proposed order appointing the Special Master exchanged with the Government; all notes of the "conversations with Assistant US Attorney." |

[2] The communications identified in this letter, Schedule A, and Appendix 1 are based on current counsel's review of the Special Master Team's own billing entries, the billing entries of Mr. Lindberg's prior counsel filed on the docket (Katten Muchin Rosenman LLP, Docs. 75-1, 87-1, 97-2, 154-2, 336-2; Wyatt & Blake, LLP, Docs. 71-1, 83-1, 98-1, 149-1, 264-1), and prior counsel's non-privileged emails to and from the Special Master Team and/or the Government, drawn from approximately 1.8 GB of prior counsel's files transferred to current counsel. The entries listed are communications that do not appear in prior counsel's non-privileged emails with the Special Master Team or the Government or in prior counsel's billing entries. The Government and the Special Master Team have refused to provide the communications and the records underlying them. *See* Doc. 341; Doc. 343 ¶¶ 10, 24. Defendant therefore places this information on the record, including for purposes of his appeal to the United States Court of Appeals for the Fourth Circuit, as an approximate placeholder showing how extensive the ex parte contact was and how pervasive the issues it raises are. These entries are necessarily incomplete and approximate. For example, the Special Master's contacts are innumerable and, in the Special Master's own words, untallied: his counsel describes the Special Master Team's communications "[w]ithout having tallied each and every phone call, email, video conference, or the amount of time spent on each." Doc. 343 ¶¶ 9–10. Additionally, Mr. Lindberg is working with prior counsel to identify any entries that have slipped through and will promptly update the docket with any corrections as more information becomes available. The complete record remains with the Government and the Special Master Team.

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 2 | Dec. 17, 2024 | Special Master; Mr. Martinez; AUSAs Dan Ryan and Stout; Trial Attorney Freeman | conference "re contents of brief in support of order appointing special master" | Doc. 69, at 12 | 38, 40, 52 | Every draft of the brief in support of the order appointing the Special Master, and all comments exchanged. |
| 3 | Jan. 24, 2025 | Mr. Martinez; AUSAs Dan Ryan and Stout; Trial Attorney Freeman | emails "re indictment, factual basis" | Doc. 69, at 12 | 38, 40, 42 | All materials exchanged concerning the indictment and factual basis. |
| 4 | Jan. 23–June 23, 2025 | Special Master, Grier Law, Paladin; "stakeholders" including AUSAs Dan Ryan, Bain-Creed, Stout, and Park and Trial Attorney Freeman, liquidators, NHC/M3, insurers' counsel, and a prospective buyer | "introductory video conferences, telephone conversations, and in-person meetings," then "recurring conferences with many of these stakeholders," distinguished from the joint weekly calls | Doc. 65, at 2–4 | 32–38, 40 | A list of each conference (date, time, duration, attendees, subject) with any member of the Government team or other stakeholder outside the joint weekly calls. |
| 5 | Feb. 3, 2025 | Mr. Martinez; AUSA Dan Ryan | emails "re victim restitution issues" | Doc. 69, at 17 | 8, 15, 38, 40 | — |
| 6 | Feb. 13, 2025 | Special Master; AUSAs Dan Ryan and Bain-Creed | "[f]ollow-up phone call with D. Ryan and B. Bain-Creed re scope of special master order" | Doc. 69, at 23 | 38, 40, 52 | What was said about the scope of the Appointment Order, and any proposed language or term sheet exchanged. |
| 7 | Mar. 2025 (notes reviewed Mar. 4) | Scott Avila (Paladin); AUSA Dan Ryan | call on the "DOJ view on claims, distribution, priority" | Doc. 69, at 99 | 8, 15, 40 | Mr. Avila's notes of the call and any written statement of the "DOJ view" provided. |
| 8 | Mar. 6, 2025 | Mr. Martinez; AUSAs Dan Ryan, Park, Bain-Creed, and Stout | one-hour video conference "re special master rights and responsibilities clarification term sheet," separate from the joint call the same day | Doc. 69, at 35–36 | 38, 40, 52 | Every draft of the "clarification term sheet" exchanged. |
| 9 | Mar. 19, 2025 | Scott Avila (Paladin); AUSA Dan Ryan | "Call with D Ryan regarding issues" (1.5 hours) | Doc. 69, at 113 | 40 | — |
| 10 | Mar. 24, 2025 | Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman; Scott Avila; Don Harer | video conference "re asset valuation" | Doc. 69, at 45 | 1–3, 7, 38, 40 | Any valuation, model, or data presented or exchanged. |
| 11 | Mar. 26, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re special master's role and responsibilities" | Doc. 69, at 46 | 38, 40, 52 | — |
| 12 | Apr. 2, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re Fleet Assist lawsuit filed by Bo Gaddy" | Doc. 69, at 50 | 38, 40 | — |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 13 | Apr. 8, 2025 | Special Master; Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman; counsel for the NCICs (Wes Camden, Caitlin Poe) | video conference "re documents and information requested from North Carolina insurance companies" | Doc. 69, at 53 | 10, 12, 35, 40, 52 | — |
| 14 | Before June 23, 2025 | Special Master; lender to a Primary Restitution Asset (unnamed) | Special Master "agreed not to veto a sale of the company" in exchange for the lender's consent to the assignment | Doc. 65, at 6–7 | 28, 30, 38 | Identity of the company and the lender; the written agreement or commitment not to veto a sale, with all drafts; all correspondence with the lender and its counsel; records of any consent fee or attorneys' fees paid. |
| 15 | June 26, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re victim loss calculations" | Doc. 81, at 17 | 8, 9, 15, 38, 40 | — |
| 16 | June 27, 2025 | Special Master Team; AUSA Dan Ryan; NOLHGA | review of "NOLHGA communications to Dan Ryan" | Doc. 81, at 18 | 8, 38, 40 | The NOLHGA communications to AUSA Dan Ryan reviewed by the Special Master Team. |
| 17 | July 9–14, 2025 | Mr. Rhodes; AUSA Dan Ryan | Special Master Team's billing statements emailed to AUSA Dan Ryan before the fee application; review of "feedback from Dan Ryan re: invoices" | Doc. 81, at 22, 24 | 38, 40 | The billing statements sent to AUSA Dan Ryan and AUSA Dan Ryan's "feedback" on them. |
| 18 | July 19–20 and Aug. 6, 2025 | Paladin; Government | review of "DOJ Materials (VIS Forms, IRS VIS, PSA Documents)" and "VS Database documents provided by DOJ" | Doc. 81, at 66, 73 | 8, 41 | The DOJ materials and VS Database documents provided, and their transmittals. |
| 19 | July 21, 2025 | Special Master, counsel, Paladin; U.S. Attorney's Office; state guaranty associations; NOLHGA | "the state guaranty associations' concerns about the restitution process and the calculation of outstanding losses to individual policyholders of the NCICs" | Doc. 80, at 8; Doc. 81, at 26, 66–67 | 8, 15, 38, 40 | Attendee list; agenda; any presentation, data, or policyholder loss information exchanged. |
| 20 | Aug. 20, 2025 | Special Master; Mr. Martinez; Mr. Rhodes; AUSAs Dan Ryan, Bain-Creed, and Stout; Trial Attorney Freeman | "Teams meeting with DOJ to prepare for status hearing on 8/26" | Doc. 81, at 40–41 | 38, 40 | Agenda, talking points, and any outline prepared for the Aug. 26, 2025 status hearing. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 21 | July–Sept. 2025 | Special Master; trustee Steve Wilson | "negotiating and signing a release of claims against Steve Wilson relating to Clanwilliam acceptable to the Special Master" | Doc. 80, at 6 | 18, 29, 54 | The executed release and all drafts; all correspondence with Mr. Wilson and his counsel concerning it. |
| 22 | June 24–Sept. 30, 2025 | Special Master; chief executive officer, general counsel, and outside counsel of a Primary Restitution Asset (unnamed) | "numerous conferences" to plan a sale process, court approvals, and "the releases of liability that a buyer of that asset is likely to demand" | Doc. 80, at 8 | 26–30, 38 | Identity of the asset; all sale-process plans and drafts of buyer releases. |
| 23 | June 24–Sept. 30, 2025 | Don Harer (Paladin), as NHC director; NHC | "kept apprised of NHC's discussions and plans to monetize SACs" | Doc. 80, at 9 | 24, 25, 36 | All NHC board materials, minutes, and reports Mr. Harer received concerning the monetization of SACs. |
| 24 | June 24–Sept. 30, 2025 | Special Master Team; Primary Restitution Assets, "likely victim constituencies," "other interested parties" | "open and frequent communications," distinguished from the weekly calls with defense counsel and the AUSAs | Doc. 80, at 9 | 28, 32–38 | A list of each such communication (date, time, duration, participants, subject). |
| 25 | Oct. 15, 2025 | Special Master, counsel, Paladin; U.S. Attorney's Office; state guaranty associations; NOLHGA | "the calculation of restitution amounts and the losses to the NCICs' individual policyholders" | Doc. 94, at 6; Doc. 95, at 15, 38 | 8, 15, 38, 40 | Attendee list; agenda; any presentation, data, or materials exchanged. |
| 26 | Oct. 1–Dec. 15, 2025 | Special Master; general and outside counsel of a Primary Restitution Asset (unnamed); asset representatives and victim constituencies | "numerous conferences" to facilitate a sale process; "open and frequent communications" | Doc. 94, at 7–8 | 26–30, 38 | Identity of the asset; a list of each such communication (date, time, duration, participants, subject). |
| 27 | Oct. 27, 2025 | Mr. Rhodes; AUSAs | "Review AUSA comments to draft status report" (Second Status Report, filed Oct. 30, 2025) | Doc. 95, at 18 | 38, 40 | The draft status report as sent to the AUSAs and every comment received. |
| 28 | Nov. 7, 2025 | Paladin; Government | "documents provided by DOJ on asset vs. policyholder liabilities for damages"; "new DOJ materials regarding Ulico and Agera" | Doc. 95, at 43 | 8, 14, 16, 41 | The DOJ documents on Ulico and Agera and on asset vs. policyholder liabilities. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 29 | Dec. 2, 2025 | Mr. Martinez; AUSAs Bain-Creed and Dan Ryan; Paladin | emails re "Paradigm Park funds" | Doc. 95, at 28 | 16, 20, 40 | — |
| 30 | Dec. 8–11, 2025 | Paladin; Government | review of the "DOJ Victim Database" and cross-reference against the excess policyholder list | Doc. 95, at 49–50 | 8, 41 | The DOJ Victim Database as provided, and its transmittal. |
| 31 | Dec. 12, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re administrative expense issues" | Doc. 95, at 32 | 38, 40 | — |
| 32 | Dec. 16, 2025–Apr. 30, 2026 | Special Master; management and counsel of a Primary Restitution Asset (unnamed); asset representatives and victim constituencies | "numerous conferences" on its sale; "open and frequent communications" | Doc. 147, at 3–4 | 26–30, 38 | Identity of the asset; a list of each such communication (date, time, duration, participants, subject). |
| 33 | Jan. 9, 2026 | Mr. Martinez; AUSA Dan Ryan | telephone call "re restitution calculation issues and status of liquidating primary restitution assets" | Doc. 148, at 15 | 8, 15, 28, 40 | — |
| 34 | Jan. 30 and Feb. 9, 2026 | Special Master; Mr. Martinez; AUSA Dan Ryan | "Report of Examination of United Security Assurance Co of PA from D. Ryan (relevant to VISTA)"; "examination report forwarded by Dan Ryan" | Doc. 148, at 22, 25 | 8, 40 | The examination report forwarded by AUSA Dan Ryan and its transmittal. |
| 35 | Feb. 19, 2026 | Mr. Martinez; AUSAs Bain-Creed and Dan Ryan | emails re "definitions of victims and providers of compensation under the Mandatory Victim Restitution Act" | Doc. 148, at 29 | 8, 38, 40 | — |
| 36 | Feb. 23, 2026 | Special Master; Mr. Martinez; Mr. Rhodes; AUSAs Dan Ryan and Bain-Creed | one-hour conference "re special master's report" and "re restitution concepts" | Doc. 148, at 30 | 8, 15, 38, 40 | Any draft of the Special Master's report discussed or exchanged. |
| 37 | Feb. 27, 2026 | Don Harer (Paladin); Government | "Review Agera materials supplied by DOJ" | Doc. 148, at 75 | 8, 41 | The Agera materials supplied by DOJ. |
| 38 | Mar. 5, 2026 | Mr. Martinez; AUSA Dan Ryan | emails "re potential purhcaser [sic] of primary restitution assets" | Doc. 148, at 34 | 26–28, 40 | — |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 39 | Mar. 16, 2026 | Special Master Team; Government | “comments to draft restitution report and redline of proposed order from DOJ” | Doc. 148, at 37 | 8, 15, 40 | The Government’s comments on the draft restitution report and its redline of the proposed order. |
| 40 | Mar. 27, 2026 | Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman | emails while “revising draft restitution report” | Doc. 148, at 39 | 8, 15, 40 | Every draft of the restitution report exchanged. |
| 41 | Apr. 1, 2026 | Mr. Martinez; Andrew Cowie (Paladin); AUSA Dan Ryan | conference call “re specific language in various parts of the restitution report and appendices”; emails “re futher [sic] edits to draft report from the government” | Doc. 148, at 43, 87 | 8, 15, 40 | The Government’s proposed language and edits to the draft report and appendices. |
| 42 | Apr. 16, 2026 | Mr. Martinez; AUSA Dan Ryan | telephone call “re status of special master’s efforts” | Doc. 148, at 47 | 38, 40 | — |
| 43 | May 1, 2026 | Mr. Martinez; counsel for prospective purchaser | “certain specified affiliated companies” | Doc. 263, at 8 | 26–28, 38 | Identity of the purchaser and the companies; materials exchanged. |
| 44 | May 1, 2026 | Special Master; representatives of a Primary Restitution Asset | “sale process” | Doc. 263, at 9 | 28, 30, 38 | Identity of the asset and its representatives; materials exchanged concerning the sale process. |
| 45 | May 4, 2026 | Mr. Martinez; AUSA Dan Ryan | “supplemental materials provided by Dan Ryan” on the responses to the report | Doc. 263, at 9 | 40, 42 | The “supplemental materials provided by Dan Ryan” and their transmittal. |
| 46 | May 8, 2026 | Mr. Martinez; Jason Cowley and Eric Au | “restitution and sentencing issues” | Doc. 263, at 10–11 | 8, 38, 42 | — |
| 47 | May 8, 2026 | Mr. Martinez; Tony Jones and Luis Llach-Zuniga | “sentencing and sale of primary restitution assets” | Doc. 263, at 11 | 28, 38, 42 | — |
| 48 | May 11, 2026 | Mr. Martinez; AUSA Dan Ryan | separate “[t]elephone call to Dan Ryan re the same and related sentencing issues” (defense draft sentencing memorandum), placed after a joint exchange of feedback with defense counsel | Doc. 263, at 11 | 40, 42 | The feedback provided on the defense draft sentencing memorandum. |
| 49 | May 14, 2026 | Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman | “revised proposed preliminary restitution order” | Doc. 263, at 12 | 8, 15, 40 | Every draft of the revised proposed preliminary restitution order exchanged. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 50 | May 14, 2026 | Mr. Martinez; Tony Jones and Luis Llach-Zuniga (5.3 hours) | "various unresolved restitution issues" | Doc. 263, at 12 | 8, 38 | — |
| 51 | May 20, 2026 | Mr. Martinez; AUSA Dan Ryan | "[t]elephone call from Dan Ryan re the same" (draft statement concerning Mr. Lindberg's cooperation) | Doc. 263, at 13 | 40, 42 | Notes of the call; every draft of the cooperation statement and every comment received from the Government. |
| 52 | May 28–June 1, 2026 | Special Master Team; Holland & Knight | Damovo letter, "comfort letter," and "letter . . . re non-opposition to Damovo transaction" | Doc. 263, at 14, 15, 30 | 26–31, 38 | The Holland & Knight letter, the comfort letter, and the non-opposition letter, with all drafts, transmittals, and proof of delivery; identity of each recipient. |
| 53 | June 16, 2026 | Mr. Martinez; AUSA Dan Ryan; Trial Attorney Freeman | "responses to recent motions filed" | Doc. 263, at 19 | 40 | All drafts of responses to Defendant's motions exchanged. |
| 54 | June 17, 2026 | Mr. Martinez; AUSA Dan Ryan | "recent pleadings filed in the case" | Doc. 263, at 20 | 40 | — |
| 55 | Before and after May 26, 2026 | Special Master Team; "various victim constituencies" | "restitution-related issues" | Doc. 262, at 5 | 8, 38 | Identity of each victim constituency, the date of each meeting, and materials exchanged. |
| 56 | Not stated | Government to Special Master | "a transcript of the sentencing hearing provided to the Special Master by the government" | Doc. 245, at 5 | 40, 42 | The transcript as provided, its transmittal, and the date provided. |
| 57 | Ongoing | Mr. Martinez; unnamed third parties, "daily (or near daily)" | Not stated | Doc. 343 ¶ 9 | 38, 39 | A list of each such communication since August 31, 2026 (date, time, duration, participants, subject). |

## SCHEDULE B
### Status Reports and Fee Applications of the Special Master

The Special Master has filed five status reports and five fee applications in No. 3:23-CR-48-MOC, listed below. For each filing, the Special Master Team is requested to produce (1) the complete underlying time and expense records of every timekeeper for the period covered, including any entries omitted from or summarized in the filing; and (2) for every entry reflecting a communication with the Government or any third party outside the presence of defense counsel, the Requested Materials (as defined in Schedule A).

| Type | Title | Docket | Filed | Period covered |
|---|---|---|---|---|
| Status Report | First Status Report | Doc. 65 | July 2, 2025 | Appointment (Jan. 23, 2025) through June 23, 2025 |
| Status Report | Second Status Report | Doc. 80 | Oct. 30, 2025 | June 24, 2025 through Sept. 30, 2025 |
| Status Report | Third Status Report (Ex. A amended, Doc. 101, Jan. 8, 2026) | Doc. 94 | Dec. 18, 2025 | Oct. 1, 2025 through Dec. 15, 2025 |
| Status Report | Fourth Status Report | Doc. 147 | May 15, 2026 | Dec. 16, 2025 through Apr. 30, 2026 |
| Status Report | Fifth Status Report | Doc. 262 | July 30, 2026 | May 1, 2026 through June 30, 2026 |
| Fee application | First Interim Statement and Application | Doc. 69 | July 22, 2025 | Special Master and counsel: Dec. 4, 2024 through May 31, 2025; Paladin: Jan. 25, 2025 through June 23, 2025 |
| Fee application | Second Interim Statement and Application | Doc. 81 | Oct. 30, 2025 | Special Master and counsel: June 1, 2025 through Sept. 30, 2025; Paladin: June 24, 2025 through Sept. 30, 2025 |
| Fee application | Third Interim Statement and Application (with request for approval of retainers) | Doc. 95 | Dec. 18, 2025 | Oct. 1, 2025 through Dec. 15, 2025 |
| Fee application | Fourth Interim Statement and Application | Doc. 148 | May 15, 2026 | Dec. 16, 2025 through Apr. 30, 2026 |
| Fee application | Fifth Interim Statement and Application | Doc. 263 | July 30, 2026 | May 1, 2026 through June 30, 2026 |

# APPENDIX 1

## Every Time Entry in the Special Master Team's Fee Applications Recording an Ex Parte Communication

This Appendix lists, in date order, every time entry in the five fee applications filed by the Special Master (Docs. 69, 81, 95, 148, and 263) that records or refers to a communication with any person outside the Special Master Team—including the Government, the victims and their representatives, the receivers and liquidators, the Primary Restitution Assets and their management and counsel, lenders, and prospective purchasers in a transaction that names no defense counsel. Where an entry records several transactions, only the transactions that name no defense counsel are quoted; transactions that name or include defense counsel are omitted and their place is marked "[. . .]". Each entry is otherwise quoted as filed; the timekeeper, hours, rate, and amount columns are omitted. The last column identifies the numbered categories of materials Defendant requested on August 28, 2026 (Doc. 345-2, at 8–24) to which each entry relates. For each entry, the Special Master Team is requested to produce the Requested Materials defined in Schedule A. This Appendix is in addition to, and does not limit, Schedules A and B and the catch-all demand in this letter; communications not reflected in any time entry remain subject to that demand.

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1 | Dec. 4, 2024 | Doc. 69, at 11 | JWG | Phone conference M. Martinez re his conversations with Assistant US Attorney, form of motion seeking special master, and form of order appointing special master. | 38, 40, 41 |
| 2 | Dec. 4, 2024 | Doc. 69, at 11 | MLM | Phone call with JOE re conversations with Assistant US Attorney; form of motion seeking special master and proposed form order appointing special master. | 38, 40, 41 |
| 3 | Dec. 5, 2024 | Doc. 69, at 11 | JWG | Review proposed motion for appointment of special master; email to Dan Ryan re same. | 38, 40, 41 |
| 4 | Dec. 10, 2024 | Doc. 69, at 11 | JWG | Review and respond to email from Nick Kajon, attorney for Bermuda insurance companies. | 37, 38 |
| 5 | Dec. 17, 2024 | Doc. 69, at 12 | JWG | Conference D. Ryan, L. Freeman, T. Stout and M. Martinez re contents of brief in support of order appointing special master. | 38, 40, 41 |
| 6 | Dec. 17, 2024 | Doc. 69, at 12 | MLM | Conference JOE, D. Ryan, L. Freeman and T. Stout re contents of brief in support of order appointing special master. | 38, 40, 41 |
| 7 | Jan. 24, 2025 | Doc. 69, at 12 | MLM | Telephone call to Jim Lanik re initial conference. Emails with Jim Lanik, John Babcock, and Cassidy Willard re the same and various issues involved in case. | 38 |
| 8 | Jan. 24, 2025 | Doc. 69, at 12 | MLM | Emails with Dan Ryan, Lyndie Freeman, Taylor Stout, JWG, and BDR re indictment, factual basis for the indictment, and counsel for various insurance companies. | 38, 40, 41 |
| 9 | Jan. 24, 2025 | Doc. 69, at 13 | JWG | Teams meeting with general counsel for primary restitution asset, Layne Smith and Steven Wateman re case background and their recommendations for proceeding. | 38 |
| 10 | Jan. 26, 2025 | Doc. 69, at 78 | Scott Avila | Call with A Soong, A Kirschner and J Nerland review and prep for week | 38 |
| 11 | Jan. 27, 2025 | Doc. 69, at 78 | Jeff Nerland | Review of email forwarded by S Avila from L Llach-Zuniga regarding Universal Life Insurance Company, largest judgement creditor, regarding videoconference | 16, 20, 38 |
| 12 | Jan. 28, 2025 | Doc. 69, at 13 | MLM | Conference BDR, BLF, ASG, and JWG re overall case organization and assignments. Follow-up discussions with BDR and JWG re the same. | 38 |
| 13 | Jan. 28, 2025 | Doc. 69, at 13 | ASG | Meeting with JOE, MLM, BLF and BDR regarding new matter, priorities, action needed. Review voluminous indictment outlining schemes, entities, damages. | 38 |
| 14 | Jan. 28, 2025 | Doc. 69, at 13 | JWG | Conference BDR, BLF, ASG, and MLM re overall case organization and assignments. | 38 |
| 15 | Jan. 28, 2025 | Doc. 69, at 14 | BDR | Conference with JOE, MLM, ASG and BLF re case organization and assignments. | 38 |
| 16 | Jan. 28, 2025 | Doc. 69, at 14 | BLF | Conference with JOE, MLM, ASG and BDR re case organization and assignments. | 38 |
| 17 | Jan. 29, 2025 | Doc. 69, at 14 | JWG | Conference John Babcock, Jim Lanik and Cassidy Willard re NHC and steps to be taken. | 36, 38 |
| 18 | Jan. 29, 2025 | Doc. 69, at 14 | JWG | Review documents from Waldrep firm re NHC in preparation for meeting today. | 36, 38 |
| 19 | Jan. 29, 2025 | Doc. 69, at 14 | MLM | Conference with Cassidy Willard, John Babcock, Jim Lanik, BDR, and JWG re New Hold Co., plus Scott Avila, Allen Soong, Amy Kirschner, and Jeff Nerland via video. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 20 | Jan. 29, 2025 | Doc. 69, at 14 | MLM | Video conference with Nick Kajon, John Johnston, Scott Avila, Allen Soong, Amy Kirschner, Jeff Nerland, JWG, and BDR re issues facing the Bermudian insurance companies. | 38 |
| 21 | Jan. 29, 2025 | Doc. 69, at 15 | BDR | Conference Nick Kajon, attorney for Bermuda insurance companies re case. | 37, 38 |
| 22 | Jan. 29, 2025 | Doc. 69, at 15 | BDR | Conference John Babcock, Jim Lanik and Cassidy Willard (attorneys for NHC) re case. | 36, 38 |
| 23 | Jan. 29, 2025 | Doc. 69, at 15 | BDR | Review of MOU, Interim Amendment to Loan Agreements, and related documents in preparation for calls with New Hold Co. and Bermuda insurance company attorneys. | 13, 37, 38 |
| 24 | Jan. 29, 2025 | Doc. 69, at 79 | Scott Avila | Call with N Kajon - victims counsel | 8, 38 |
| 25 | Jan. 29, 2025 | Doc. 69, at 79 | Amy Kirschner | Call with Primary Restitution Assets counsel | 38 |
| 26 | Jan. 29, 2025 | Doc. 69, at 79 | Amy Kirschner | Introductory call with N Kajon and J Johnston, criminal restitution for Greg Lindberg victims | 8, 38 |
| 27 | Jan. 29, 2025 | Doc. 69, at 79 | Jeff Nerland | Attend call with Special Master and Counsel and Paladin team and Primary Restitution Assets counsel | 38 |
| 28 | Jan. 29, 2025 | Doc. 69, at 79 | Allen Soong | Call with J Grier, M Martinez, Primary Restitution Assets counsel, S Avila, J Nerland, A Kirshner | 38 |
| 29 | Jan. 29, 2025 | Doc. 69, at 79 | Allen Soong | Call with N Kajon, J Johnston, J Grier, M Martinez, S Avila, J Nerland, A Kirshner regarding restitution | 38 |
| 30 | Jan. 30, 2025 | Doc. 69, at 15 | BDR | Review of call with Nick Kajon re: Special Master's authority as to sale of ClanWilliam. | 18, 28, 29, 30, 38, 52 |
| 31 | Jan. 31, 2025 | Doc. 69, at 16 | MLM | Emails with Bill Janvier, Margaret Westbrook, Scott Avila, JWG, and BDR re relationship between limited receiver and special master. | 35, 38 |
| 32 | Feb. 2, 2025 | Doc. 69, at 79 | Scott Avila | Call A Soong and Doug regarding planning Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 33 | Feb. 3, 2025 | Doc. 69, at 16 | MLM | Final review of primary restitution asset assignment agreement. [. . .] Emails with Layne Smith, Steve Waterman, general counsel for primary restitution asset, and JWG re the same. | 38 |
| 34 | Feb. 3, 2025 | Doc. 69, at 16 | BDR | Call with MLM, Jim Lanik, and John Babcock re: suits filed by Lindberg against trustee Steve Wilson. | 38, 54 |
| 35 | Feb. 3, 2025 | Doc. 69, at 16 | MLM | Conference call with John Babcock, Jim Lanik, and BDR re sale of New Hold Co. assets [0.7 hrs.]. Follow-up conference with BDR re the same [0.3 hrs.]. | 28, 30, 38 |
| 36 | Feb. 3, 2025 | Doc. 69, at 16 | BDR | Conference with MLM re: call with Jim Lanik, and John Babcock. | 38 |
| 37 | Feb. 3, 2025 | Doc. 69, at 17 | BDR | Emails with Dan Ryan re: plea agreement. | 38, 40, 41 |
| 38 | Feb. 3, 2025 | Doc. 69, at 17 | BDR | Email with Cassidy Willard re: NHC Org Chart and Clanwilliam Group Structure | 18, 29, 36, 38 |
| 39 | Feb. 3, 2025 | Doc. 69, at 17 | MLM | Emails with Dan Ryan and BDR re victim restitution issues. Conferences with BDR re the same. | 8, 15, 38, 40, 41 |
| 40 | Feb. 3, 2025 | Doc. 69, at 80 | Allen Soong | Call with D Harer and J McDonald regarding project organization; call with Q Brown; reviewing project accountabilities | 38 |
| 41 | Feb. 4, 2025 | Doc. 69, at 17 | MLM | Emails with John Babcock, Jim Lanik, Cassidy Willard, JWG, and BDR re draft assignment agreement for NHC. | 36, 38 |
| 42 | Feb. 4, 2025 | Doc. 69, at 17 | BDR | Review slide deck from Williams Mullen in advance of call with Wes Camden and Caitlin Poe. | 35, 38 |
| 43 | Feb. 4, 2025 | Doc. 69, at 17 | MLM | Review slide deck prepared by Williams Mullen in advance of initial conference. | 35, 38 |
| 44 | Feb. 4, 2025 | Doc. 69, at 17 | MLM | Video conference with Wes Camden, Caitlin Poe, and BDR re victim restitution issues. | 8, 15, 35, 38 |
| 45 | Feb. 4, 2025 | Doc. 69, at 17 | MLM | Conference BDR re action items following up on video conference with Wes Camden and Caitlin Poe. | 35, 38 |
| 46 | Feb. 4, 2025 | Doc. 69, at 17 | BDR | Call with Wes Camden and Caitlin Poe. | 35, 38 |
| 47 | Feb. 4, 2025 | Doc. 69, at 17 | BDR | Conference with MLM re: call with Wes Camden and Caitlin Poe. | 35, 38 |
| 48 | Feb. 4, 2025 | Doc. 69, at 80 | Scott Avila | Call with HPS regarding Primary Restitution Assets | 38 |
| 49 | Feb. 4, 2025 | Doc. 69, at 80 | Scott Avila | Call with M3 regarding NHC structure and updates | 1, 2, 7, 36, 38, 50 |
| 50 | Feb. 4, 2025 | Doc. 69, at 80 | Scott Avila | Reaad and review various emails regarding asset sales and M3 | 1, 2, 7, 38, 50 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 51 | Feb. 4, 2025 | Doc. 69, at 80 | Donald Harer | Review of Grier correspondence relating to Clanwilliam sale process issues. | 18, 28, 29, 30, 38 |
| 52 | Feb. 4, 2025 | Doc. 69, at 81 | Jeff Nerland | Attend call w Special Master and Counsel and Paladin team and NHC counsel | 36, 38 |
| 53 | Feb. 5, 2025 | Doc. 69, at 17 | MLM | Emails with Jim Lanik, John Babcock, Cassidy Willard, Scott Avila, JWG, and BDR re New Hold Co. non-disclosure agreement and assignment agreement. Finalize the same. [. . .] | 38 |
| 54 | Feb. 5, 2025 | Doc. 69, at 18 | MLM | Review email and voicemail from Kevin Davidson re potential purchasers for various assets. | 27, 28, 38 |
| 55 | Feb. 5, 2025 | Doc. 69, at 18 | MLM | Telephone call from Bill Janvier re preliminary issues in advance of video conference. Emails with Bill Janvier and others re the same. | 38 |
| 56 | Feb. 5, 2025 | Doc. 69, at 18 | MLM | Attend video conference with Bill Janvier, Margaret Westbrook, Scott Avila, Amy Kirschner, Allen Soong, and BDR. | 38 |
| 57 | Feb. 5, 2025 | Doc. 69, at 18 | BDR | Call with MLM, Bill Janvier, Margaret Westbrook, and Paladin team members. | 38 |
| 58 | Feb. 5, 2025 | Doc. 69, at 18 | MLM | Conference BDR re following up on video conference with Bill Janvier, Margaret Westbrook, Scott Avila, Amy Kirschner, Allen Soong, and BDR. | 38 |
| 59 | Feb. 5, 2025 | Doc. 69, at 18 | BDR | Conference with MLM re: call with Bill Janvier, Margaret Westbrook, and Paladin team members. | 38 |
| 60 | Feb. 5, 2025 | Doc. 69, at 81 | Scott Avila | Call with Bill Janvier and Margaret Westbrook | 38 |
| 61 | Feb. 5, 2025 | Doc. 69, at 81 | Donald Harer | Prepare for and participate in call with M3 regarding Clanwilliam sale. Follow-up | 1, 2, 7, 18, 28, 29, 30, 38, 50 |
| 62 | Feb. 5, 2025 | Doc. 69, at 81 | Jeff Nerland | Review of materials from Board presentations to prep for call, prepare questions for call Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 23, 24, 25, 38 |
| 63 | Feb. 5, 2025 | Doc. 69, at 82 | Jeff Nerland | Review of two emails from M Manning regarding confidentiality and NDA | 38, 39 |
| 64 | Feb. 5, 2025 | Doc. 69, at 82 | | Jeff Nerland Email to D Harer regarding updated financials for company's and Primary Restitution Asset and appointment of a Paladin point person for info requests | 38 |
| 65 | Feb. 5, 2025 | Doc. 69, at 82 | Allen Soong | Call with GWM, W Janvier, M Westbrook, S Avila, A Kirschner | 38 |
| 66 | Feb. 6, 2025 | Doc. 69, at 18 | MLM | Telephone call from Margaret Westbrook re asset liquidation issues. | 28, 30, 38 |
| 67 | Feb. 6, 2025 | Doc. 69, at 18 | MLM | Telephone call from Jim Lanik re status of special master's efforts. | 38 |
| 68 | Feb. 6, 2025 | Doc. 69, at 19 | MLM | Video conference with Jose Benitez, Tony Jones, Bob Martinez, Raul Ramirez, Luis Llach-Zuniga, Scott Avila, Allen Soong, and BDR re introduction to ULICO. | 14, 38 |
| 69 | Feb. 6, 2025 | Doc. 69, at 19 | MLM | Emails with Layne Smith, Steve Waterman, Hannah Tuttle, general counsel for primary restitution asset, and JWG re assignment agreement. | 38 |
| 70 | Feb. 6, 2025 | Doc. 69, at 19 | MLM | Emails with Bill Janvier, Margaret Westbrook, BDR, and JWG re scope of special master order. | 38, 52 |
| 71 | Feb. 6, 2025 | Doc. 69, at 19 | BDR | Call with ULICO (Tony James, Luis J., Roberto Martinez, Raul Ramirez, and Jose Benitez) and Paladin team. | 14, 38 |
| 72 | Feb. 6, 2025 | Doc. 69, at 19 | BDR | Conference with MLM re: call with ULICO and Paladin team. | 14, 38 |
| 73 | Feb. 6, 2025 | Doc. 69, at 82 | Scott Avila | Call with ULICO 's counsel and mgmt regarding introductory issues | 14, 38 |
| 74 | Feb. 6, 2025 | Doc. 69, at 83 | John McDonald | draft agenda for cash call with M3 | 1, 2, 7, 38, 50 |
| 75 | Feb. 6, 2025 | Doc. 69, at 83 | Allen Soong | Call with ULICO, GWM, S Avila | 14, 38 |
| 76 | Feb. 7, 2025 | Doc. 69, at 83 | Wyatt Branson | Status update call with D Harer, J McDonald (Paladin) Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 77 | Feb. 7, 2025 | Doc. 69, at 84 | Amy Kirschner | Call with D Harer regarding Lindberg case and overview of questions arising from Wake County North Carolina 2023 ruling and implications for scope of Special Master role and responsibilities | 38, 52 |
| 78 | Feb. 7, 2025 | Doc. 69, at 84 | Amy Kirschner | Call with Q Brown to review presentation on questions and implications for Special Master scope arising out of Wake County North Carolina 2023 decision on Clanwilliam sale and priority distribution | 18, 28, 29, 30, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 79 | Feb. 7, 2025 | Doc. 69, at 84 | Jeff Nerland | Review and respond to D Harer regarding a call with B Janvier and M Westbrook | 38 |
| 80 | Feb. 8, 2025 | Doc. 69, at 85 | Amy Kirschner | Review of call with J Oleynik regarding Dutch insurance company arbitration award | 38 |
| 81 | Feb. 10, 2025 | Doc. 69, at 20 | MLM | Video conference with Nick Kajon and Scott Avila re Clanwilliam sale and related issues. | 18, 28, 29, 30, 38 |
| 82 | Feb. 10, 2025 | Doc. 69, at 20 | MLM | Video conference with Scott Avila following-up on video conference with Nick Kajon. | 38 |
| 83 | Feb. 10, 2025 | Doc. 69, at 20 | MLM | Telephone call to Jim Lanik re Clanwilliam sale, motions and lawsuits filed by Greg Lindberg, and related issues. | 18, 28, 29, 30, 38 |
| 84 | Feb. 10, 2025 | Doc. 69, at 20 | MLM | Telephone call from Scott Avila re conversation about Clanwilliam with Mo Meghji. | 18, 29, 38 |
| 85 | Feb. 10, 2025 | Doc. 69, at 85 | Scott Avila | Call with L Carter and K Million (NHC) | 36, 38 |
| 86 | Feb. 10, 2025 | Doc. 69, at 85 | Scott Avila | Call with M Martinez and Nik Kajon | 38 |
| 87 | Feb. 10, 2025 | Doc. 69, at 85 | Scott Avila | Call with M Martinez regarding various issues - assignment and NHC | 36, 38 |
| 88 | Feb. 10, 2025 | Doc. 69, at 85 | Donald Harer | Call with D. Harington (Goodbody), M3, and Clanwilliam management regarding sale process. Follow-up with General Counsel (Primary Restitution Asset) | 1, 2, 7, 18, 28, 29, 30, 38, 50 |
| 89 | Feb. 10, 2025 | Doc. 69, at 86 | Jeff Nerland | Call with M3, Goodbody, CEO and CLO of Clanwilliam, Steven Wilson, D Harer regarding Clanwilliam sale overview | 1, 2, 7, 18, 28, 29, 30, 38, 50, 54 |
| 90 | Feb. 10, 2025 | Doc. 69, at 86 | Jeff Nerland | Review and respond to D Harer regarding email to M3 regarding other alternative to sale at Clanwilliam | 1, 2, 7, 18, 28, 29, 30, 38, 50 |
| 91 | Feb. 10, 2025 | Doc. 69, at 86 | Jeff Nerland | Email to M3 (M Manning) regarding information request | 1, 2, 7, 38, 50 |
| 92 | Feb. 10, 2025 | Doc. 69, at 86 | Jeff Nerland | Email to M3 (M Manning) regarding Public Company Model | 1, 2, 7, 38, 50 |
| 93 | Feb. 10, 2025 | Doc. 69, at 86 | Paula Sosamon | Claims teams kick-off call with A Soong, D Harper, Q Brown, M Lang, A Kirschner (PMG) | 8, 38 |
| 94 | Feb. 11, 2025 | Doc. 69, at 20 | MLM | Emails with Nick Kajon and Scott Avila re New Hold Co. | 38 |
| 95 | Feb. 11, 2025 | Doc. 69, at 21 | MLM | Conference call with JWG and BDR re motion for clarification, assignment agreements, and Clanwilliam transaction. | 18, 28, 29, 30, 36, 38, 52 |
| 96 | Feb. 11, 2025 | Doc. 69, at 21 | MLM | Review draft action by written consent of the board of managers approving beneficial interest assignment agreement, corresponding draft consent to assignment agreement by lenders, voting trust, and ULICO, corresponding draft joinder to operating agreement, and corresponding draft joinder to voting trust agreement. | 14, 23, 24, 25, 38, 54 |
| 97 | Feb. 11, 2025 | Doc. 69, at 21 | BDR | Call with JGM, MLM, and general counsel for TA Associates. | 38 |
| 98 | Feb. 11, 2025 | Doc. 69, at 21 | JWG | Phone call Arthur Price, General Counsel for TA Associates, and M. Martinez re Clanwilliam. | 18, 29, 38 |
| 99 | Feb. 11, 2025 | Doc. 69, at 21 | MLM | Conference call with Arthur Price, JWG, and BDR re lawsuit filed by Lindberg against Steve Wilson and TA Associates. | 38, 54 |
| 100 | Feb. 11, 2025 | Doc. 69, at 21 | MLM | Emails with Layne Smith, Steve Waterman, Hannah Tuttle, general counsel for primary restitution asset, JWG, and BDR re assignment agreements. [. . .] Telephone calls to Joe Grier re the same. | 38 |
| 101 | Feb. 11, 2025 | Doc. 69, at 21 | MLM | Telephone call from Arthur Price at TA Associates re Clanwilliam sale. | 18, 28, 29, 30, 38 |
| 102 | Feb. 11, 2025 | Doc. 69, at 21 | MLM | Edit draft assignment agreement for New Hold Co. Emails with Cassidy Willard, John Babcock, Jim Lanik, JWG, and BDR re the same. [. . .] | 38 |
| 103 | Feb. 11, 2025 | Doc. 69, at 22 | MLM | Telephone call from Scott Avila re discussion with Kathy Million and Lonna Carter. Follow-up conference with BDR re the same. | 38 |
| 104 | Feb. 11, 2025 | Doc. 69, at 86 | Scott Avila | Call L Carter and K Million (NHC) | 36, 38 |
| 105 | Feb. 11, 2025 | Doc. 69, at 86 | Scott Avila | Call with Brad Philips regarding engagement matters | 38 |
| 106 | Feb. 11, 2025 | Doc. 69, at 86 | John McDonald | Reviewing documents received for case from Janvier, | 38 |
| 107 | Feb. 11, 2025 | Doc. 69, at 87 | Jeff Nerland | Call with D Harer regarding lack of response from M3, diligence on SPAC, claims work necessary, misc. organizational issues | 1, 2, 7, 8, 38, 50 |
| 108 | Feb. 12, 2025 | Doc. 69, at 22 | MLM | Emails with John Babcock, Jim Lanik, Cassidy Willard, JWG, and BDR re draft NHC assignment agreement. Finalize the same. [. . .] | 36, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 109 | Feb. 12, 2025 | Doc. 69, at 22 | MLM | Video conference with general counsel for primary restitution asset and Layne Smith re beneficial interest assignment agreement. Conferences with JWG re the same. Review edits from the Milbank law firm re the same. Revise the same. Emails with Layne Smith, Steve Waterman, Hannah Tuttle, JWG, and BDR re assignment agreement. [. . .] Telephone call from Hannah Tuttle and Layne Smith re the same. | 38 |
| 110 | Feb. 12, 2025 | Doc. 69, at 22 | MLM | Video conference with Bill Janvier, Margaret Westbrook, Don Harer, John McDonald, Amy Kirschner, Jeff Nerland, Scott Avila, JWG, and BDR re various SACs and non-SACs. | 36, 38 |
| 111 | Feb. 12, 2025 | Doc. 69, at 22 | BDR | Call with JWG, MLM, Bill Janvier, Margaret Westbrook, Scott Avila, Don Harer, John McDonald, Amy Kirschner, Jeff Nerland re restitution assets. | 38 |
| 112 | Feb. 12, 2025 | Doc. 69, at 22 | JWG | Call with Bill Janvier, Margaret Westbrook, Scott Avila, Don Harer and others re assets. | 38 |
| 113 | Feb. 12, 2025 | Doc. 69, at 22 | BDR | Conference with JWG and MLM re: call with Bill Janvier and Paladin team. | 38 |
| 114 | Feb. 12, 2025 | Doc. 69, at 22 | MLM | Conference with JWG and BDR following up on call with Bill Janvier and Margaret Westbrook. | 38 |
| 115 | Feb. 12, 2025 | Doc. 69, at 22 | MLM | Video conference with Mo Mejhi, Bo Gallagher, Matt Manning, John Babcock, Jim Lanik, and JWG re Clanwilliam. Follow-up conference with JWG re the same. | 18, 29, 38 |
| 116 | Feb. 12, 2025 | Doc. 69, at 23 | MLM | Video conference with Paul Dolman, Arthur Pierce, and John Bash re lawsuit filed by Greg Lindberg against TA Associates. | 38 |
| 117 | Feb. 12, 2025 | Doc. 69, at 23 | MLM | Telephone call to Margaret Westbrook following up on video conference with Bill Janvier and others. | 38 |
| 118 | Feb. 12, 2025 | Doc. 69, at 23 | MLM | Conference BDR re issues revealed during conversation with Margaret Westbrook. Telephone call to JWG re the same. | 38 |
| 119 | Feb. 12, 2025 | Doc. 69, at 87 | Scott Avila | Call with Kevin Davidson - private investor | 38 |
| 120 | Feb. 12, 2025 | Doc. 69, at 87 | Scott Avila | Call with Bill Janvier regarding update | 38 |
| 121 | Feb. 12, 2025 | Doc. 69, at 87 | Scott Avila | Call D Harer regarding follow to meting with Bill Janvier | 38 |
| 122 | Feb. 12, 2025 | Doc. 69, at 87 | Scott Avila | Review and respond to emails from Deloitte | 38 |
| 123 | Feb. 12, 2025 | Doc. 69, at 87 | Donald Harer | Prepare for interview with Bill Janvier. | 38 |
| 124 | Feb. 12, 2025 | Doc. 69, at 87 | Amy Kirschner | Call with Janvier, GWM, and Lindberg regarding scope of work between NCH and Special Master | 38 |
| 125 | Feb. 12, 2025 | Doc. 69, at 87 | Amy Kirschner | Meeting with Ben Wylie, Danvas Mongare, Nick Kajon and Paladin regarding Bermuda Insurance Company claims and background | 8, 37, 38 |
| 126 | Feb. 12, 2025 | Doc. 69, at 87 | John McDonald | Call with Janvier, Grier, Paladin team members | 38 |
| 127 | Feb. 12, 2025 | Doc. 69, at 87 | Jeff Nerland | Attend call with B Janvier, S Avila, A Kirchner, D Harer, Grier Law regarding roles, MOU, status of sales | 13, 38 |
| 128 | Feb. 12, 2025 | Doc. 69, at 87 | Jeff Nerland | Attend call (late) w Provide Consulting, S Avila, D Harer regarding assets for sale | 28, 30, 38 |
| 129 | Feb. 12, 2025 | Doc. 69, at 87 | Jeff Nerland | Call with D Harer regarding M3 response to info request, background on call w Provide | 1, 2, 7, 38, 50 |
| 130 | Feb. 12, 2025 | Doc. 69, at 87 | Jeff Nerland | Email to M Manning (M3) regarding status of information request | 1, 2, 7, 38, 50 |
| 131 | Feb. 13, 2025 | Doc. 69, at 23 | JWG | Follow-up phone call with D. Ryan and B. Bain- Creed re scope of special master order. | 38, 40, 41, 52 |
| 132 | Feb. 13, 2025 | Doc. 69, at 24 | MLM | Conference with JWG and BDR re call with Dan Ryan and Ben Bain-Creed. | 38, 40, 41 |
| 133 | Feb. 13, 2025 | Doc. 69, at 24 | BDR | Call with MLM, JWG, Dan Ryan, and Ben Bain- Creed. | 38, 40, 41 |
| 134 | Feb. 13, 2025 | Doc. 69, at 24 | MLM | Telephone call from Layne Smith re status of execution of assignment agreement and related ancillary documents. | 38 |
| 135 | Feb. 13, 2025 | Doc. 69, at 24 | MLM | Review email from BDR re restitution liens. Emails with Ben Bain-Creed and Dan Ryan re the same. | 38, 40, 41 |
| 136 | Feb. 13, 2025 | Doc. 69, at 87 | Scott Avila | Call with A Kirschner Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 137 | Feb. 13, 2025 | Doc. 69, at 88 | Amy Kirschner | Meeting with Danvas Mongare and Ben Wylie regarding Bermuda claims process. | 8, 37, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 138 | Feb. 14, 2025 | Doc. 69, at 24 | MLM | Emails with Paul Murray, Michael Neary, Luke Smullen, Steve Wilson, William Gallagher, Mo Meghji, John Babcock, and Ronan Lennon re Grant Thornton fairness opinion. | 38, 54 |
| 139 | Feb. 14, 2025 | Doc. 69, at 24 | MLM | Emails with general counsel for primary restitution asset and Layne Smith re execution of assignment agreement. [. . .] | 38 |
| 140 | Feb. 14, 2025 | Doc. 69, at 24 | MLM | Conferences with BDR re potential tools available to government in enforcing victim restitution orders. | 8, 15, 38, 40, 41 |
| 141 | Feb. 14, 2025 | Doc. 69, at 25 | MLM | Telephone call from Margaret Westbrook re status of execution of assignment agreements. | 38 |
| 142 | Feb. 15, 2025 | Doc. 69, at 88 | Scott Avila | Draft emails to NC and ULICO counsel regarding claims, draft emails to GWM | 8, 14, 38 |
| 143 | Feb. 17, 2025 | Doc. 69, at 25 | BDR | Conference with JWG and MLM re: upcoming call with Nick Kajon and Scott Avila. | 38 |
| 144 | Feb. 17, 2025 | Doc. 69, at 25 | MLM | Video conference with Nick Kajon, John Johnston, Amy Kirschner, Scott Avila, BDR, and JWG re overall progress of special master and next steps. | 38 |
| 145 | Feb. 17, 2025 | Doc. 69, at 25 | BDR | Call with JWG, MLM, Nick Kajon, John Johnston, Scott Avila, and Amy Kirschner. | 38 |
| 146 | Feb. 17, 2025 | Doc. 69, at 25 | MLM | Conference BDR and JWG following-up on video conference with Nick Kajon and John Johnston. | 38 |
| 147 | Feb. 17, 2025 | Doc. 69, at 25 | JWG | Follow-up conference with M. Martinez and B. Rhodes re conversation with N. Kajon and Bermuda insurance companies. | 37, 38 |
| 148 | Feb. 17, 2025 | Doc. 69, at 88 | Scott Avila | Call with GWM and Nick Kajon and John Johnson | 38 |
| 149 | Feb. 17, 2025 | Doc. 69, at 88 | Scott Avila | Call D Harer regarding calls with Bermuda professionals and Michael Martinez | 37, 38 |
| 150 | Feb. 17, 2025 | Doc. 69, at 88 | Amy Kirschner | Conference call with Nick Kajon, Grier law firm and Paladin regarding claims, distribution, clarification | 8, 38, 52 |
| 151 | Feb. 18, 2025 | Doc. 69, at 88 | Scott Avila | Call with ULICO lawyers and A Kirschner | 14, 38 |
| 152 | Feb. 18, 2025 | Doc. 69, at 88 | Amy Kirschner | Conference call with ULICO counsel and Paladin regarding ULICO claims | 8, 14, 38 |
| 153 | Feb. 19, 2025 | Doc. 69, at 26 | MLM | Conference JWG re request from Judge Cogburn re timing of special master's analyses. | 38 |
| 154 | Feb. 19, 2025 | Doc. 69, at 88 | Scott Avila | Review and respond to various emails from DOJ, GWM and others | 38, 40, 41 |
| 155 | Feb. 20, 2025 | Doc. 69, at 26 | MLM | Emails with Paul Murray, William Gallagher, John Babcock, Mo Meghji, Matt Manning, Ronan Lennon, Steve Wilson, Michael Neary, Luke Smullen, Diarmuid Argue, and JWG re no duty release letter for Grant Thornton. Conference JWG re the same. Emails with Scott Avila and JWG re the same. | 38, 54 |
| 156 | Feb. 20, 2025 | Doc. 69, at 26 | MLM | Review further revisions to consent to assignment agreement. Emails with Layne Smith, Hannah Tuttle, general counsel for primary restitution asset, Steve Waterman, and JWG re the same. [. . .] | 38 |
| 157 | Feb. 20, 2025 | Doc. 69, at 26 | MLM | Review revised joinders to operating agreement and voting trust agreement. Emails with Layne Smith, Hannah Tuttle, general counsel for primary restitution asset, Steve Waterman, and JWG re the same. | 38, 54 |
| 158 | Feb. 20, 2025 | Doc. 69, at 27 | MLM | Further review and analysis of late-proposed edits to beneficial interest assignment agreement. Conference JWG re the same. Emails with Layne Smith, Hannah Tuttle, general counsel for primary restitution asset, Steve Waterman, and JWG re the same. | 38 |
| 159 | Feb. 20, 2025 | Doc. 69, at 27 | MLM | Review final versions of joinders to operating agreement and voting trust agreement. Emails with Hannah Tuttle, Layne Smith, Steve Waterman, general counsel for primary restitution asset, and JWG re the same. | 38, 54 |
| 160 | Feb. 20, 2025 | Doc. 69, at 89 | Amy Kirschner | Follow up with NC Insurance Company counsel regarding initial informational call; preparation of a proposed victims' restitution template and related communication | 8, 38 |
| 161 | Feb. 20, 2025 | Doc. 69, at 89 | Amy Kirschner | Correspondence with NC Insurance co counsel regarding claims and questions around schedules | 8, 38 |
| 162 | Feb. 20, 2025 | Doc. 69, at 89 | Amy Kirschner | Review of schedule provided by NC Insurance Companies counsel; claims by order of debt priority and related correspondence | 8, 38 |
| 163 | Feb. 20, 2025 | Doc. 69, at 89 | Amy Kirschner | Call among Paladin, Williams Mullen, Grier law firm regarding NC Claims and process | 8, 35, 38 |
| 164 | Feb. 20, 2025 | Doc. 69, at 89 | Amy Kirschner | Preparation of ULICO victim claims restitution template and related correspondence with ULICO counsel | 8, 14, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 165 | Feb. 20, 2025 | Doc. 69, at 89 | Amy Kirschner | Review of and call with Ben Wylie regarding priority spreadsheet of debt and preferred equity claims by Bermuda Insurance Company entities, including PBLA/ULICO | 8, 14, 37, 38 |
| 166 | Feb. 21, 2025 | Doc. 69, at 27 | MLM | Emails with Patrick Ryan, Layne Smith, JWG, and others re designation of voting trust in pertinent documents. | 38, 54 |
| 167 | Feb. 21, 2025 | Doc. 69, at 89 | Donald Harer | Call with BRG regarding valuation efforts | 3, 7, 38 |
| 168 | Feb. 21, 2025 | Doc. 69, at 89 | NC | Amy Kirschner Call with Wes Camden, Catilin Poe Williams Mullen, Insurance company counsel; discussion on NC Insurance companies claims, background, schedule of assets, policy holder liabilities and other related claims valuation issues. | 3, 7, 8, 35, 38 |
| 169 | Feb. 21, 2025 | Doc. 69, at 89 | NC | Amy Kirschner Review of background information for Special Master, debt schedules and other preparation for call with counsel to NC Insurance companies | 38 |
| 170 | Feb. 24, 2025 | Doc. 69, at 28 | MLM | Telephone call from Margaret Westbrook re corporate governance issues and administrative | 38 |
| 171 | Feb. 24, 2025 | Doc. 69, at 90 | Amy Kirschner | Call with Deloitte regarding Bermuda policy holder information and status of ULICO claims | 8, 14, 37, 38 |
| 172 | Feb. 25, 2025 | Doc. 69, at 28 | MLM | Conference call with Jim Lanik and John Babcock re NHC corporate governance concerns and relationship between special master and NHC. | 36, 38 |
| 173 | Feb. 25, 2025 | Doc. 69, at 29 | MLM | Emails with John Babcock and Jim Lanik on NHC corporate governance issues and Clanwilliam sale. | 18, 28, 29, 30, 36, 38 |
| 174 | Feb. 25, 2025 | Doc. 69, at 91 | Scott Avila | Call with Primary Restitution Asset - John Hubert (Primary Restitution Asset ) and Layne Smith (outside counsel) | 38 |
| 175 | Feb. 25, 2025 | Doc. 69, at 91 | Wyatt Branson | Call with A Kirschner, J McDonald, S Ho (Paladin) and B Wylie (Deloitte) to discuss Lindberg asset review and company contacts | 38 |
| 176 | Feb. 25, 2025 | Doc. 69, at 91 | Stanley Ho | 1415 meeting with J McDonald, W Branson, A Kirschner in with Ben at Deloitte regarding Bermuda | 37, 38 |
| 177 | Feb. 25, 2025 | Doc. 69, at 91 | Amy Kirschner | Conference with S Ho, W Branson, C Urwin, J MacDonald regarding contacts and information to gather data on Lindberg company assets | 38 |
| 178 | Feb. 25, 2025 | Doc. 69, at 91 | Amy Kirschner | Conference with C Urwin drafting Claims memo regarding issues, methodologies etc. Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 8, 38 |
| 179 | Feb. 25, 2025 | Doc. 69, at 92 | Amy Kirschner | Call with Insurance advisor with expertise regarding annuity contract diligence, policy holder obligations | 38 |
| 180 | Feb. 25, 2025 | Doc. 69, at 92 | Amy Kirschner | Conference call between Paladin (Stanley Ho, Wyatt Branson, John McDonald) and Deloitte on Lindberg asset diligence | 38 |
| 181 | Feb. 25, 2025 | Doc. 69, at 92 | Amy Kirschner | Correspondence with ULICO regarding follow up questions on claims liability overview | 8, 14, 38 |
| 182 | Feb. 25, 2025 | Doc. 69, at 92 | Amy Kirschner | Correspondence with Williams Mullen regarding status of policy holder liability data and request for diligence call on Lindberg assets | 35, 38 |
| 183 | Feb. 25, 2025 | Doc. 69, at 92 | Jeff Nerland | Review and respond to emails regarding call with Montshire Partners, M3 and BC Partners regarding dividend recap | 1, 2, 7, 38, 50 |
| 184 | Feb. 25, 2025 | Doc. 69, at 92 | Charles Urwin | Review data provided by Deloitte to date for asset claims support. | 8, 38 |
| 185 | Feb. 26, 2025 | Doc. 69, at 29 | MLM | Review final execution versions of assignment- related documents. Conferences with JWG re the same. Conference BLF re the same. Emails with Layne Smith, Hannah Tuttle, general counsel for primary restitution asset, and JWG re the same. | 38 |
| 186 | Feb. 26, 2025 | Doc. 69, at 29 | BDR | Review of NDA proposed by JPLs. | 37, 38 |
| 187 | Feb. 26, 2025 | Doc. 69, at 29 | MLM | Emails with JWG and BDR re Klaus Bak and Kevin Davidson. | 38 |
| 188 | Feb. 26, 2025 | Doc. 69, at 30 | MLM | Review email from Julian Jahoo to JWG on February 3, 2025. | 38 |
| 189 | Feb. 26, 2025 | Doc. 69, at 30 | MLM | Review February 3, 2025 email from Rich Casolari to JWG. | 38 |
| 190 | Feb. 26, 2025 | Doc. 69, at 93 | Charles Urwin | Update claims memorandum for discussion items provided by Williams Mullen and Deloitte advisors. | 8, 35, 38 |
| 191 | Feb. 26, 2025 | Doc. 69, at 93 | Charles Urwin | Multiple calls with A. Kirschner (Paladin) to coordinate following discussions with Williams Mullen advisors. | 35, 38 |
| 192 | Feb. 27, 2025 | Doc. 69, at 30 | MLM | Conferences with JWG re non-disclosure agreement with Bermudian insurance companies. Emails with Amy Kirschner re the same. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 193 | Feb. 27, 2025 | Doc. 69, at 31 | MLM | Conference call with Margaret Westbrook and JWG re asset and liability information gathering. | 38 |
| 194 | Feb. 27, 2025 | Doc. 69, at 31 | MLM | Review draft director removal letter prepared by John Babcock. Conferences with JWG re the same. | 38 |
| 195 | Feb. 27, 2025 | Doc. 69, at 31 | MLM | Finalize letter from JWG to NHC board of directors re removal of Kathy Million and Lonna Carter. | 23, 24, 25, 36, 38 |
| 196 | Feb. 27, 2025 | Doc. 69, at 93 | Scott Avila | Call with Robert Alban and Harrison Hains | 38 |
| 197 | Feb. 27, 2025 | Doc. 69, at 93 | Donald Harer | Call with S. Ho regarding information request list for insurance companies and Primary Restitution Asset | 38 |
| 198 | Feb. 27, 2025 | Doc. 69, at 94 | Amy Kirschner | Conference with C Urwin recapping call with Williams Mullen and proposed payment waterfall with distribution proceeds; assessment of ULICO's position between its preferred equity in Primary Restitution Asset and its re-insurance claim against PBLA | 14, 29, 35, 38 |
| 199 | Feb. 27, 2025 | Doc. 69, at 94 | Amy Kirschner | Conference with ULICO regarding book of business reinsured by PBLA as of 12/31/24 and overview of ULICO's preferred equity stake in Primary Restitution Asset | 14, 38 |
| 200 | Feb. 27, 2025 | Doc. 69, at 94 | John McDonald | Asset team call and IRL draft with Stan | 38 |
| 201 | Feb. 27, 2025 | Doc. 69, at 94 | Jeff Nerland | Participate in call regarding transaction for NHC and Primary Restitution Asset w BC Partners, Robert Allen (advisor to Global Growth) | 28, 30, 36, 38 |
| 202 | Feb. 27, 2025 | Doc. 69, at 94 | Charles Urwin | Call with A. Kirschner (Paladin) to discuss open questions for ULICO and Greer advisors. | 14, 38 |
| 203 | Feb. 27, 2025 | Doc. 69, at 94 | Charles Urwin | Revise claims memorandum for additional insights provided by ULICO representatives. | 8, 14, 38 |
| 204 | Feb. 28, 2025 | Doc. 69, at 95 | Scott Avila | Calls with D Harer regarding follow up to Primary Restitution Asset call, clarification, and other asset related issues | 38, 52 |
| 205 | Feb. 28, 2025 | Doc. 69, at 95 | Scott Avila | Call with D Harer and Blackstone | 38 |
| 206 | Feb. 28, 2025 | Doc. 69, at 95 | Scott Avila | Call with L Carter and K Million and D Harer regarding general information | 38 |
| 207 | Feb. 28, 2025 | Doc. 69, at 95 | Scott Avila | Call with Primary Restitution Asset independent directors, CEO and Corporate Counsel and the Special Master | 38 |
| 208 | Feb. 28, 2025 | Doc. 69, at 95 | Donald Harer | Call with Blackstone regarding Clanwilliam sale | 18, 28, 29, 30, 38 |
| 209 | Feb. 28, 2025 | Doc. 69, at 95 | Donald Harer | Call with Primary Restitution Asset board members. Follow- up call with S. Avila | 23, 24, 25, 38 |
| 210 | Feb. 28, 2025 | Doc. 69, at 95 | Donald Harer | Call with Primary Restitution Asset board and Grier Law | 23, 24, 25, 38 |
| 211 | Feb. 28, 2025 | Doc. 69, at 96 | Amy Kirschner | Call with Ben Wylie regarding claims distribution methodology and additional insurance company assets which could be monetized impacting percentage allocation possibilities | 8, 28, 30, 38 |
| 212 | Feb. 28, 2025 | Doc. 69, at 96 | Charles Urwin | Review additional claims and contract support provided by Williams Mullen, ULICO advisors. | 8, 14, 35, 38 |
| 213 | Mar. 2, 2025 | Doc. 69, at 96 | Stanley Ho | Research existing organization listings; info received from M3 and other parties; 2 layer org chart Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 1, 2, 7, 38, 50 |
| 214 | Mar. 2, 2025 | Doc. 69, at 97 | Amy Kirschner | Correspondence to Deloitte and Williams Mullen regarding existence of other hard assets at each entity and financial information available | 35, 38 |
| 215 | Mar. 3, 2025 | Doc. 69, at 33 | BDR | Review email from John Babcock re: potential closure of NHC deposit accounts. | 36, 38 |
| 216 | Mar. 3, 2025 | Doc. 69, at 33 | MLM | Emails with John Babcock, Jim Lanik, JWG, and BDR re banking issues facing entities affiliated with Global Growth. Emails with Scott Avila and Don Harer re the same. | 38 |
| 217 | Mar. 3, 2025 | Doc. 69, at 97 | Scott Avila | Call with C Urwin and A Kirchner | 38 |
| 218 | Mar. 3, 2025 | Doc. 69, at 97 | Wyatt Branson | Correspondence with Paladin and M3 regarding data requests | 1, 2, 7, 38, 50 |
| 219 | Mar. 3, 2025 | Doc. 69, at 97 | Thomas DelZenero | Internal discussion with G. Lembo (PMG) and D Harer (PMG) reviewing open items and case documents | 38 |
| 220 | Mar. 3, 2025 | Doc. 69, at 98 | Donald Harer | Call with S Avila regarding meetings and next steps with Primary Restitution Asset | 38 |
| 221 | Mar. 4, 2025 | Doc. 69, at 33 | MLM | Emails with John Babcock and Jim Lanik re officers and directors insurance and complete execution of assignment agreement. Emails with BDR and JWG re the same. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 222 | Mar. 4, 2025 | Doc. 69, at 33 | BDR | Review emails with Don Harer re: changes to Term Sheet. | 38, 52 |
| 223 | Mar. 4, 2025 | Doc. 69, at 34 | MLM | Draft introductory emails to HPS and Freedom 3. | 38 |
| 224 | Mar. 4, 2025 | Doc. 69, at 34 | MLM | Video conference with Mo Meghji, Matt Manning, John Babcock, Jim Lanik, and BDR re depository institution concerns relating to ultimate beneficial ownership of SACs. | 36, 38 |
| 225 | Mar. 4, 2025 | Doc. 69, at 34 | BDR | Call with MLM, John Babcock, Jim Lanik, Matthew Manning, and Mohsin Meghji re: Metropolitan Bank closing NHC/GGH accounts. | 29, 36, 38 |
| 226 | Mar. 4, 2025 | Doc. 69, at 34 | BDR | Follow-up conference with MLM re: call with NHC counsel and M3 personnel. | 1, 2, 7, 36, 38, 50 |
| 227 | Mar. 4, 2025 | Doc. 69, at 34 | MLM | Draft letter to Metropolitan Commercial Bank re SACs deposits. Emails with John Babcock and Jim Lanik re the same. | 36, 38 |
| 228 | Mar. 4, 2025 | Doc. 69, at 34 | MLM | Video conference with Wes Camden, Caitlin Poe, and BDR re victim restitution concepts. | 8, 15, 35, 38 |
| 229 | Mar. 4, 2025 | Doc. 69, at 34 | MLM | Conference BDR following up on conversation with Wes Camden and Caitlin Poe. | 35, 38 |
| 230 | Mar. 4, 2025 | Doc. 69, at 34 | BDR | Call with MLM, Wes Camden, and Caitlin Poe. | 35, 38 |
| 231 | Mar. 4, 2025 | Doc. 69, at 99 | Scott Avila | Call with M Martinez and Ben and D Harer | 38 |
| 232 | Mar. 4, 2025 | Doc. 69, at 99 | Scott Avila | Call C Urwin and A Kirchner | 38 |
| 233 | Mar. 4, 2025 | Doc. 69, at 99 | Amy Kirschner | Review of notes of call between S Avila and D Ryan regarding DOJ view on claims, distribution, priority and notes on implications thereof | 8, 38, 40, 41 |
| 234 | Mar. 4, 2025 | Doc. 69, at 99 | Amy Kirschner | Call with C Urwin to review notes from S Avila's call with DOJ, quarterly report from North Carolina insurance companies, issues around claims valuation among including state guarantee fund obligations and uncovered policy holders and related issues. | 3, 7, 8, 35, 38, 40, 41 |
| 235 | Mar. 4, 2025 | Doc. 69, at 100 | Amy Kirschner | Call with Deloitte to review quantification of claims based on the asset basis (MOU) | 8, 13, 38 |
| 236 | Mar. 5, 2025 | Doc. 69, at 35 | MLM | Draft letter to NHC board designating Don Harer as a special master's selection to the board. | 23, 24, 25, 36, 38 |
| 237 | Mar. 5, 2025 | Doc. 69, at 35 | MLM | Draft cover email to Dan Ryan and Ben Bain- Creed re special master clarification term sheet. | 38, 40, 41, 52 |
| 238 | Mar. 5, 2025 | Doc. 69, at 35 | BDR | Review Special Master term sheet prior to circulation to DOJ. | 38, 40, 41, 52 |
| 239 | Mar. 5, 2025 | Doc. 69, at 100 | Scott Avila | Call with Dave McBay, potential purchaser of assets | 27, 28, 38 |
| 240 | Mar. 5, 2025 | Doc. 69, at 100 | Thomas DelZenero | Internal discussion with G. Lembo (PMG), S Avila (PMG) and D Harer (PMG) reviewing open items and case documents | 38 |
| 241 | Mar. 5, 2025 | Doc. 69, at 100 | Donald Harer | Draft and send correspondence regarding information request from GGHI GC | 38 |
| 242 | Mar. 5, 2025 | Doc. 69, at 101 | Stanley Ho | Discussion with D Hareron next steps | 38 |
| 243 | Mar. 5, 2025 | Doc. 69, at 101 | Amy Kirschner | Correspondence with Bermuda regarding asset information requests and coordination | 37, 38 |
| 244 | Mar. 5, 2025 | Doc. 69, at 102 | Allen Soong | Call with S Avila, A Kirshner regarding claims and distribution | 8, 38 |
| 245 | Mar. 6, 2025 | Doc. 69, at 35 | MLM | Emails with Bill Gallagher, Billy Kroupa, Richard Kellner, Mo Meghji, Matt Manning, John Babcock, and Don Harer re D&O insurance issues for NHC. | 36, 38 |
| 246 | Mar. 6, 2025 | Doc. 69, at 35 | MLM | Finalize letter to Metropolitan Commercial Bank. Emails with John Babcock, JWG, and BDR re the same. | 38 |
| 247 | Mar. 6, 2025 | Doc. 69, at 36 | MLM | Video conference with Freedom 3 representatives, general counsel for primary restitution asset, Layne Smith, and Scott Avila. | 38 |
| 248 | Mar. 6, 2025 | Doc. 69, at 36 | BDR | Review and summarize communication from Kathy Million re: deactivation of bank accounts. | 38 |
| 249 | Mar. 6, 2025 | Doc. 69, at 36 | MLM | Telephone call from general counsel for primary restitution asset re HPS and Freedom 3. | 38 |
| 250 | Mar. 6, 2025 | Doc. 69, at 36 | MLM | Video conference with Dan Ryan, Julia Park, Ben Bain-Creed, Taylor Stout, and BDR re special master rights and responsibilities clarification term sheet. | 38, 40, 41, 52 |
| 251 | Mar. 6, 2025 | Doc. 69, at 36 | MLM | Telephone call from Wes Camden re certification regarding beneficial owners of legal entity customers for Wells Fargo. Research re the same. Emails with John Babcock, Jim Lanik, JWG, and BDR re the same. | 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 252 | Mar. 6, 2025 | Doc. 69, at 36 | BDR | Call with MLM, Dan Ryan, Ben Bain-Creed, Taylor Stout, and Julia Park. | 38, 40, 41 |
| 253 | Mar. 6, 2025 | Doc. 69, at 36 | MLM | Video conference with Scott Avila, Amy Kirschner, and Don Harer re loss calculations, depository issues, and NHC board meeting. | 8, 15, 23, 24, 25, 36, 38 |
| 254 | Mar. 6, 2025 | Doc. 69, at 102 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 255 | Mar. 6, 2025 | Doc. 69, at 102 | Scott Avila | Call with Freedom 3 regarding assignment | 38 |
| 256 | Mar. 6, 2025 | Doc. 69, at 102 | Donald Harer | Call with Lincoln regarding potential valuation work | 3, 7, 38 |
| 257 | Mar. 6, 2025 | Doc. 69, at 103 | Amy Kirschner | Correspondence with ULICO and follow up with C Urwin regarding information flow | 14, 38 |
| 258 | Mar. 7, 2025 | Doc. 69, at 37 | MLM | Emails with John Babcock, Jim Lanik, BDR, and JWG re depository banking issues. Emails with Steve Wilson, Bill Janvier, and Margaret Westbrook re the same. Emails with Dan Ryan and Ben Bain-Creed re the same. | 38, 40, 41, 54 |
| 259 | Mar. 7, 2025 | Doc. 69, at 37 | BDR | Call with JWG, MLM, Jim Lanik, Mo Meghji, and Wes Camden re: ultimate beneficial owner certification. | 35, 38 |
| 260 | Mar. 7, 2025 | Doc. 69, at 37 | BDR | Follow up conference with JWG and MLM re: call with NHC and NCIC personnel re: ultimate beneficial owner issue. | 35, 36, 38 |
| 261 | Mar. 7, 2025 | Doc. 69, at 37 | MLM | Video conference with Mo Meghji, Jim Lanik, Wes Camden, JWG, and BDR re depository issues. Follow-up calls with Jim Lanik re the same. | 35, 38 |
| 262 | Mar. 7, 2025 | Doc. 69, at 37 | MLM | Video conference with HPS re role of special master. | 38 |
| 263 | Mar. 7, 2025 | Doc. 69, at 103 | Scott Avila | Call with Kathy Millon (NHC) | 36, 38 |
| 264 | Mar. 7, 2025 | Doc. 69, at 103 | Scott Avila | Call with HPS, Primary Restitution Asset inside and outside counsel | 38 |
| 265 | Mar. 7, 2025 | Doc. 69, at 104 | Wyatt Branson | Call with M Manning, E Greenhaus (M3) D Harer, S Ho (Paladin) to discuss NHC status | 1, 2, 7, 36, 38, 50 |
| 266 | Mar. 7, 2025 | Doc. 69, at 104 | Wyatt Branson | Call with D Harer, S Ho (Paladin) to discuss open workstreams and follow-ups from call with M3 | 1, 2, 7, 38, 50 |
| 267 | Mar. 7, 2025 | Doc. 69, at 104 | | Donald Harer Call with M3 for update of | 1, 2, 7, 38, 50 |
| 268 | Mar. 7, 2025 | Doc. 69, at 104 | Donald Harer | Correspond with various lenders to NHC organization | 36, 38 |
| 269 | Mar. 7, 2025 | Doc. 69, at 104 | Stanley Ho | M3 meeting. with Matthew Manning, Eric Greenhouse, Alexander Woolley | 1, 2, 7, 38, 50 |
| 270 | Mar. 7, 2025 | Doc. 69, at 104 | Stanley Ho | Call with A Kirschner about data request from open email replies: Deloitte and Williams Mullen. | 35, 38 |
| 271 | Mar. 7, 2025 | Doc. 69, at 104 | Stanley Ho | Call with A Kirschner regarding meeting with Metropolitan Bank, ;Joined by D Harer. | 38 |
| 272 | Mar. 7, 2025 | Doc. 69, at 104 | Amy Kirschner | Correspondence with C Urwin, S Ho and D Harer regarding communication process with NC and Bermuda insurance companies | 37, 38 |
| 273 | Mar. 7, 2025 | Doc. 69, at 104 | Amy Kirschner | Call with B Wylie regarding claims values, crystalizing amounts as of a certain date, policy holder value evolving over time | 3, 7, 8, 38 |
| 274 | Mar. 7, 2025 | Doc. 69, at 104 | Amy Kirschner | Call with B Wylie regarding clarification on question list and discussion on history of hard asset sales including G Lindberg real estate and follow up correspondence | 38, 52 |
| 275 | Mar. 7, 2025 | Doc. 69, at 104 | Gary Lembo | Review of Data room materials Calls Preparation for calls with Primary Restitution Asset folks | 38 |
| 276 | Mar. 8, 2025 | Doc. 69, at 105 | Donald Harer | Attend to Primary Restitution Asset diligence materials and correspond with team | 38 |
| 277 | Mar. 8, 2025 | Doc. 69, at 105 | Amy Kirschner | Call with S Avila regarding claims process, quantification, information access with Williams Mullin and clarification order | 8, 38, 52 |
| 278 | Mar. 10, 2025 | Doc. 69, at 37 | MLM | Review issues re depository services to Specified Affiliated Companies. Emails with Jim Lanik re the same. Emails with Jim Lanik, Cassidy Willard, John Babcock, Mo Meghji, Matt Manning, JWG, and BDR re the same. | 38 |
| 279 | Mar. 10, 2025 | Doc. 69, at 38 | MLM | Review email from Matt Manning enclosing various documents. Emails with BDR and JWG re the same. | 29, 38 |
| 280 | Mar. 10, 2025 | Doc. 69, at 38 | MLM | Review summary prepared by Don Harer for recent NHC board meeting. Review letter from Waldrep Wall to Don Harer dated March 5, 2025. | 23, 24, 25, 36, 38 |
| 281 | Mar. 10, 2025 | Doc. 69, at 38 | BDR | Review of correspondence between Paladin team and Williams Mullen. | 35, 38 |
| 282 | Mar. 10, 2025 | Doc. 69, at 105 | Scott Avila | Call with Greg Cappelli of Primary Restitution Asset | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 283 | Mar. 10, 2025 | Doc. 69, at 105 | Wyatt Branson | Correspondence with M Manning (M3) regarding NHC entity data request | 1, 2, 7, 36, 38, 50 |
| 284 | Mar. 10, 2025 | Doc. 69, at 106 | Stanley Ho | Prep for and attend call with Greg Cappelli; board Primary Restitution Asset. Introductions, materials | 23, 24, 25, 38 |
| 285 | Mar. 10, 2025 | Doc. 69, at 106 | Amy Kirschner | Call with M Martinez (Grier Law) regarding information request and access with Williams Mullen, including options for claims quantification and related methodologies | 8, 35, 38 |
| 286 | Mar. 10, 2025 | Doc. 69, at 106 | Amy Kirschner | Internal Paladin correspondence regarding request for policy holder information from Williams Mullen | 35, 38 |
| 287 | Mar. 10, 2025 | Doc. 69, at 106 | Amy Kirschner | Call with C Urwin regarding NC claims information request and status of same with Cervatrix | 8, 38 |
| 288 | Mar. 10, 2025 | Doc. 69, at 106 | Amy Kirschner | Follow up outreach to Williams Mullen for status update on information requests and related correspondence with W Camden | 35, 38 |
| 289 | Mar. 10, 2025 | Doc. 69, at 106 | Jeff Nerland | Review of memo regarding Special Master Agreement and Scope Questions and Concerns and add comments, corrections | 38 |
| 290 | Mar. 10, 2025 | Doc. 69, at 107 | Charles Urwin | Review materials provided by ULICO substantiating preferred equity position. | 14, 38 |
| 291 | Mar. 11, 2025 | Doc. 69, at 39 | MLM | Emails with Jim Lanik and John Babcock re list of SACs. | 36, 38 |
| 292 | Mar. 11, 2025 | Doc. 69, at 107 | | Scott Avila Call with D Harer and A Kirschner prep for call with | 38 |
| 293 | Mar. 11, 2025 | Doc. 69, at 107 | Scott Avila | Call with ULICO's counsel regarding Primary Restitution Asset sale process | 14, 28, 30, 38 |
| 294 | Mar. 11, 2025 | Doc. 69, at 107 | HPS | Scott Avila Call with Primary Restitution Asset regarding | 38 |
| 295 | Mar. 11, 2025 | Doc. 69, at 107 | Wyatt Branson | Correspondence with M Manning (M3) regarding initial information requests and follow ups for NHC | 1, 2, 7, 36, 38, 50 |
| 296 | Mar. 11, 2025 | Doc. 69, at 107 | Donald Harer | Review of non-reliance letters relating to Damovo | 31, 38 |
| 297 | Mar. 11, 2025 | Doc. 69, at 107 | Donald Harer | Prepare for and participate in call with USAP and Vista regarding loan and reinsurance structuregarding Follow-up call with A. Kirschner to discuss and clarify. | 8, 38 |
| 298 | Mar. 11, 2025 | Doc. 69, at 107 | Donald Harer | Call with A. Kirschner regarding USAP and Vista Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 8, 38 |
| 299 | Mar. 11, 2025 | Doc. 69, at 108 | Amy Kirschner | Call with Scott Avila and ULICO regarding status of Primary Restitution Asset process, discussion of Primary Restitution Asset preferred equity and PBLA claim | 14, 38 |
| 300 | Mar. 11, 2025 | Doc. 69, at 108 | Amy Kirschner | Call among Scott Avila, D Harer with Grier Law to discuss draft clarification term sheet | 38, 52 |
| 301 | Mar. 11, 2025 | Doc. 69, at 108 | Amy Kirschner | Follow up with D Harer to Usa-call and Vista call regarding claims, current and future and position with respect to restitution | 8, 38 |
| 302 | Mar. 11, 2025 | Doc. 69, at 108 | Amy Kirschner | Follow up on Conservatrix diligence request; correspondence with Charles Urwin and Kathy Giduz | 38 |
| 303 | Mar. 11, 2025 | Doc. 69, at 108 | Amy Kirschner | Call among D Harer, Don Solow (Vista), Mike Dinius (Noble), Cameron Waite (USA-call) regarding insurance company position, claims under the MOU and policy holder claims | 8, 13, 38 |
| 304 | Mar. 11, 2025 | Doc. 69, at 108 | Gary Lembo | Call with General Counsel of Primary Restitution Asset on various matters related to Primary Restitution Asset including loans and covenants Includes preparing for call and follow up from call | 38 |
| 305 | Mar. 12, 2025 | Doc. 69, at 39 | MLM | Emails with Steve Wilson, Scott Avila, Don Harer, JWG, and BDR re introductory call. | 38, 54 |
| 306 | Mar. 12, 2025 | Doc. 69, at 39 | MLM | Emails with Nick Kajon, Scott Avila, Daniel Huyett, Ryan O'Neill, JWG, and BDR re clemency and related concerns. | 38 |
| 307 | Mar. 12, 2025 | Doc. 69, at 39 | MLM | Emails with Caitlin Poe and Wes Camden re victim loss calculations. | 8, 15, 35, 38 |
| 308 | Mar. 12, 2025 | Doc. 69, at 40 | MLM | Review email from Matt Manning re Damovo. Emails with JWG and BDR re the same. | 31, 38 |
| 309 | Mar. 12, 2025 | Doc. 69, at 40 | MLM | Emails with Margaret Westbrook, Bill Janvier, John Gardner, and BDR re Fleet Assist. | 38 |
| 310 | Mar. 12, 2025 | Doc. 69, at 40 | MLM | Emails with Layne Smith, Steve Waterman, general counsel for primary restitution asset, and JWG re potential interference with forthcoming sale efforts. | 28, 30, 38 |
| 311 | Mar. 12, 2025 | Doc. 69, at 40 | MLM | Review Clanwilliam sale process summaries and other materials provided by John Babcock. | 18, 28, 29, 30, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 312 | Mar. 12, 2025 | Doc. 69, at 40 | MLM | Emails with Jim Lanik, John Babcock, Cassidy Willard, BDR, and JWG re up-to-date, comprehensive list of Specified Affiliated Companies. Emails with Don Harer and Scott Avila re the same. | 38 |
| 313 | Mar. 13, 2025 | Doc. 69, at 109 | Scott Avila | Call with S Puri (Primary Restitution Asset) | 38 |
| 314 | Mar. 13, 2025 | Doc. 69, at 109 | Scott Avila | Review changes to Clarification and draft email | 38, 52 |
| 315 | Mar. 13, 2025 | Doc. 69, at 109 | Stanley Ho | Discussion with Nishant about the master list from M Martinez, line up with 2020 total list, valuation list, GGH org chart list all subordinate to master check. | 3, 7, 38 |
| 316 | Mar. 13, 2025 | Doc. 69, at 110 | Gary Lembo | Calls with Reed Welch of Raymond James on overall industry dynamics and previous process and possible valuation and new process | 3, 7, 38 |
| 317 | Mar. 13, 2025 | Doc. 69, at 110 | Allen Soong | Emails with D Harer and M Balistreri regarding non-SAC Lindberg assets | 36, 38 |
| 318 | Mar. 14, 2025 | Doc. 69, at 41 | MLM | Video conference with John Johnston, Nick Kajon, Benjamin Wylie, Constantine Pourakis, and BDR re special master responsibilities term sheet. | 38, 52 |
| 319 | Mar. 14, 2025 | Doc. 69, at 41 | BDR | Call with MLM, Nick Kajon, Benjamin Wylie, John Johnston, CP, and RLO re: reaction to term sheet. | 38, 52 |
| 320 | Mar. 14, 2025 | Doc. 69, at 41 | BDR | Call with MLM, Tony Jones, and other counsel for ULICO re: term sheet. | 14, 38, 52 |
| 321 | Mar. 14, 2025 | Doc. 69, at 41 | MLM | Video conference with Tony Jones, Luis Llach- Zuniga, and BDR re special master responsibilities term sheet. | 38, 52 |
| 322 | Mar. 14, 2025 | Doc. 69, at 42 | MLM | Emails with Dan Ryan, Ben Bain-Creed, Lyndie Freeman, Taylor Stout, Julia Park, JWG, and BDR re term sheet reactions. | 38, 40, 41, 52 |
| 323 | Mar. 14, 2025 | Doc. 69, at 110 | Wyatt Branson | Call with S Ho (Paladin) to discuss and review Damovo materials from Deloitte | 31, 38 |
| 324 | Mar. 14, 2025 | Doc. 69, at 111 | Gary Lembo | Work on covenants Calls with Primary Restitution Asset Review of financials | 38 |
| 325 | Mar. 15, 2025 | Doc. 69, at 111 | Wyatt Branson | Review of information from M3 and correspondence with M Manning (M3) regarding follow ups and status on open items | 1, 2, 7, 38, 50 |
| 326 | Mar. 17, 2025 | Doc. 69, at 112 | Stanley Ho | Review notes from initial review of transaction VDR provided by M3 - especially of alternatives documentation production by FTI | 1, 2, 7, 28, 30, 36, 38, 50 |
| 327 | Mar. 17, 2025 | Doc. 69, at 112 | Gary Lembo | Work on covenants Calls with Primary Restitution Asset Internal Paladin calls | 38 |
| 328 | Mar. 17, 2025 | Doc. 69, at 112 | John McDonald | Asset team call with D Harer, W Branson, S Hoe, N Patel | 38 |
| 329 | Mar. 18, 2025 | Doc. 69, at 42 | MLM | Video conference with Steve Waterman, Layne Smith, general counsel for primary restitution asset, and JWG re primary restitution asset sale issues and follow-up conference with JWG re the same. | 28, 30, 38 |
| 330 | Mar. 18, 2025 | Doc. 69, at 42 | MLM | Video conference with Steve Wilson, Scott Avila, Don Harer, and JWG re trust structures. | 38, 54 |
| 331 | Mar. 18, 2025 | Doc. 69, at 112 | Scott Avila | Call with Steve Wilson (Trustee) | 38, 54 |
| 332 | Mar. 18, 2025 | Doc. 69, at 112 | Scott Avila | Various calls with D Harer regarding Steve Wilson, Assets, Primary Restitution Asset and NHC issues | 36, 38, 54 |
| 333 | Mar. 18, 2025 | Doc. 69, at 112 | Scott Avila | Call with Rob Hirsh regarding attorney for victim regarding claim | 8, 38 |
| 334 | Mar. 18, 2025 | Doc. 69, at 113 | Donald Harer | Call with Critical Point regarding non-SAC sale mandate | 28, 30, 36, 38 |
| 335 | Mar. 19, 2025 | Doc. 69, at 43 | MLM | Telephone call from John Babcock re special master term sheet and related issues. | 38, 52 |
| 336 | Mar. 19, 2025 | Doc. 69, at 43 | MLM | Review pleadings from UK legal proceeding concerning Fleet Assist. Telephone call from Steve Wilson re the same. Conferences with JWG and BDR re the same. | 38, 54 |
| 337 | Mar. 19, 2025 | Doc. 69, at 43 | MLM | Conference JWG re conversations with John Babcock and Steve Wilson and issues arising from those discussions. | 38, 54 |
| 338 | Mar. 19, 2025 | Doc. 69, at 43 | MLM | Telephone call from John Bash re litigation against Steve Wilson. | 38, 54 |
| 339 | Mar. 19, 2025 | Doc. 69, at 113 | Scott Avila | Call with D Ryan regarding issues | 38, 40, 41 |
| 340 | Mar. 19, 2025 | Doc. 69, at 114 | Amy Kirschner | Call with Ben Wylie, Deloitte regarding status of information request and Clanwilliam sale and related Bermuda insurance company litigation | 18, 28, 29, 30, 37, 38 |
| 341 | Mar. 19, 2025 | Doc. 69, at 114 | Gary Lembo | Call with S Puri from Primary Restitution Asset on HPS and update on covenant negotiation along with discussion of add backs and other financial information | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 342 | Mar. 19, 2025 | Doc. 69, at 114 | Charles Urwin | Call with B. Wylie (Deloitte), A. Kirschner (Paladin) to discuss Bermuda claims data, outstanding diligence requests, and Clanwilliam sale process. | 8, 18, 28, 29, 30, 37, 38 |
| 343 | Mar. 20, 2025 | Doc. 69, at 43 | MLM | Emails with Nick Kajon, Ryan O'Neill, JWG, and BDR re ClanWilliam sale and related issues. | 18, 28, 29, 30, 38 |
| 344 | Mar. 20, 2025 | Doc. 69, at 115 | Wyatt Branson | Call with S Wilson (NHC Trusts) and D Harer, J McDonald, S Ho (Paladin) to discuss NHC PortCos | 36, 38, 54 |
| 345 | Mar. 20, 2025 | Doc. 69, at 115 | John McDonald | Call with S Ho regarding afternoon call with S Wilson | 38, 54 |
| 346 | Mar. 20, 2025 | Doc. 69, at 115 | John McDonald | Call with S Wilson and the paladin asset team | 38, 54 |
| 347 | Mar. 21, 2025 | Doc. 69, at 44 | MLM | Emails with Wes Camden and Caitlin Poe re special master role term sheet. | 35, 38, 52 |
| 348 | Mar. 21, 2025 | Doc. 69, at 44 | MLM | Return telephone call to Steve Wilson re Fleet Assist and ClanWilliam litigation. | 18, 29, 38, 54 |
| 349 | Mar. 21, 2025 | Doc. 69, at 44 | MLM | Conferences with BDR following up on discussion with Steve Wilson and email from Wes Camden. | 35, 38, 54 |
| 350 | Mar. 21, 2025 | Doc. 69, at 44 | MLM | Initial review of feedback on term sheet from Wes Camden and Caitlin Poe. | 35, 38, 52 |
| 351 | Mar. 21, 2025 | Doc. 69, at 44 | MLM | Emails with Dan Ryan, Taylor Stout, Ben Bain- Creed, Lyndie Freeman, JWG, and BDR re Wes Camden's response to term sheet. | 35, 38, 40, 41, 52 |
| 352 | Mar. 21, 2025 | Doc. 69, at 116 | Wyatt Branson | Call with N Patel (Paladin) to discuss asset workstreams and Damovo analysis | 31, 38 |
| 353 | Mar. 21, 2025 | Doc. 69, at 116 | Charles Urwin | Review documents received from Deloitte to clarify position on Clanwilliam history and litigation process. | 18, 29, 38 |
| 354 | Mar. 23, 2025 | Doc. 69, at 116 | Scott Avila | Review and respond to misc. emails regarding calls with F3, HPS, etc. | 38 |
| 355 | Mar. 24, 2025 | Doc. 69, at 44 | MLM | Telephone call from John Babcock re status of SAC liquidations and special master investigation. | 28, 30, 36, 38 |
| 356 | Mar. 24, 2025 | Doc. 69, at 44 | MLM | Emails with Don Harer, Stanley Ho, Scott Avila, JWG, and BDR re lack of cooperation from SACs. | 36, 38, 42 |
| 357 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Emails with Dan Ryan and Ben Rhodes re victim impact statements and related issues. | 8, 38, 40, 41 |
| 358 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Telephone calls from general counsel for primary restitution asset re assignment consents from lenders. | 38 |
| 359 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Video conference with Dan Ryan, Ben Bain- Creed, Lyndie Freeman, Scott Avila, Don Harer, and BDR re asset valuation. | 3, 7, 38, 40, 41 |
| 360 | Mar. 24, 2025 | Doc. 69, at 45 | BDR | Call with MLM, Scott Avila, Don Harer, Dan Ryan, Ben Bain-Creed, and Lyndi Freedman re asset valuation. | 3, 7, 38, 40, 41 |
| 361 | Mar. 24, 2025 | Doc. 69, at 45 | BDR | Conference with MLM after call with DOJ and Paladin. | 38, 40, 41 |
| 362 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Conference BDR following-up on discussion with prosecution and Paladin on overarching complexities in completing the special master assignment described in the appointing order. | 38, 40, 41 |
| 363 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Video conference with Mo Meghji, Matt Manning, and John Babcock re asset valuation concerns and ClanWilliam sale. | 3, 7, 18, 28, 29, 30, 38 |
| 364 | Mar. 24, 2025 | Doc. 69, at 117 | Scott Avila | Call with GWM, DOJ and Michael Martinez | 38, 40, 41 |
| 365 | Mar. 24, 2025 | Doc. 69, at 117 | Scott Avila | Call with Peter Pinto (potential victim) | 8, 38 |
| 366 | Mar. 24, 2025 | Doc. 69, at 117 | Scott Avila | Call D Hare regarding update on NHC issues | 36, 38 |
| 367 | Mar. 24, 2025 | Doc. 69, at 117 | Scott Avila | Call with Gary Lembo and D Harer regarding financing and NHC issues | 36, 38 |
| 368 | Mar. 24, 2025 | Doc. 69, at 117 | Quintin Brown | Review American Academy of Professional Coders' tear sheet, management meeting agenda items, and SAC Company Overview chart; outline action items | 36, 38 |
| 369 | Mar. 24, 2025 | Doc. 69, at 117 | Thomas Delzenero | External call with Primary Restitution Asset regarding financial projection and covenant projections | 38 |
| 370 | Mar. 24, 2025 | Doc. 69, at 117 | Donald Harer | Prepare for and participate in call with S Avila and Grier Law Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 371 | Mar. 24, 2025 | Doc. 69, at 118 | Stanley Ho | ARM; discussion with Vishal and Gulshan | 38 |
| 372 | Mar. 24, 2025 | Doc. 69, at 118 | Stanley Ho | Follow up with John McDonald after meeting; data request | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 373 | Mar. 24, 2025 | Doc. 69, at 118 | Amy Kirschner | Call with Grier regarding Clanwilliam proceeds and Deloitte's proposal to surcharge fee to render distribution pari passu with NC vs. following note priorities | 18, 29, 38 |
| 374 | Mar. 24, 2025 | Doc. 69, at 118 | Amy Kirschner | Follow up call with J. Hallock regarding introduction to M&T Bank restructuring team in New York City related correspondence with NY team | 38 |
| 375 | Mar. 24, 2025 | Doc. 69, at 118 | Amy Kirschner | Call with Scott Avila, Robert Hirsh, Norton Rose, and Peter Pinto regarding Lindberg victim statement | 8, 38 |
| 376 | Mar. 24, 2025 | Doc. 69, at 118 | Gary Lembo | Calls on Lindberg matter with Paladin team Scott Avila, Tom DelZenero Review of convents and definitions Calls with S Puri and General Counsel | 38 |
| 377 | Mar. 24, 2025 | Doc. 69, at 118 | John McDonald | Prep for call with V Kumar, G Khattar | 38 |
| 378 | Mar. 24, 2025 | Doc. 69, at 118 | John McDonald | Call with V Kumar, G Khattar, M Manning, D Harer, S Ho | 38 |
| 379 | Mar. 25, 2025 | Doc. 69, at 45 | MLM | Review email from Sam Johnson expressing interest in purchasing ClanWilliam and other assets. | 18, 29, 38 |
| 380 | Mar. 25, 2025 | Doc. 69, at 45 | MLM | Video conference with Wes Camden, Caitlin Poe, and BDR re special master scope term sheet. | 35, 38, 52 |
| 381 | Mar. 25, 2025 | Doc. 69, at 45 | MLM | Conference BDR following up on discussion with Wes Camden and Caitlin Poe. | 35, 38 |
| 382 | Mar. 25, 2025 | Doc. 69, at 45 | BDR | Call with MLM, Wes Camden, and Caitlin Poe re: term sheet. | 35, 38, 52 |
| 383 | Mar. 25, 2025 | Doc. 69, at 118 | Scott Avila | Call with Freedom 3 regarding assignment | 38 |
| 384 | Mar. 25, 2025 | Doc. 69, at 118 | Scott Avila | Call with HPS and D Harer regarding covenants | 38 |
| 385 | Mar. 25, 2025 | Doc. 69, at 118 | Donald Harer | Call with M McFarlane and follow up notes regarding Damovo Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 31, 38 |
| 386 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Telephone call to Dan Ryan re special master's role and responsibilities. | 38, 40, 41, 52 |
| 387 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Emails with Nick Kajon re ClanWilliam sale. | 18, 28, 29, 30, 38 |
| 388 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Draft email to Wes Camden and Caitlin Poe re special master role in distributing funds. | 35, 38 |
| 389 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Video conference with Nick Kajon, John Johnston, Ben Wylie, Oliver Dancey, and BDR re monetization of primary restitution assets. | 28, 30, 38 |
| 390 | Mar. 26, 2025 | Doc. 69, at 46 | BDR | Call with MLM, Nick Kajon, John Johnston, Ben Wylie, and Oliver Dancey. | 38 |
| 391 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Emails with Margaret Westbrook, John Gardner, JWG, and BDR re Bill Janvier's comments to term sheet. | 38, 52 |
| 392 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Review information provided by BDR on restitution statutes and email Ben Bain-Creed and Dan Ryan re the same. | 38, 40, 41 |
| 393 | Mar. 26, 2025 | Doc. 69, at 119 | Gary Lembo | Call with Freedom 3 along with prep for call and follow up | 38 |
| 394 | Mar. 27, 2025 | Doc. 69, at 47 | MLM | Emails with Luis Llach-Zuniga, Victor Acevedo- Hernandez, Tony Jones, JWG, and BDR re victim distribution priorities. | 8, 38 |
| 395 | Mar. 27, 2025 | Doc. 69, at 47 | MLM | Video conference with Scott Avila, Don Harer, Amy Kirschner, Allen Soong, Gary Lembog, and BDR re primary restitution asset and document request to North Carolina insurance companies. | 35, 38 |
| 396 | Mar. 27, 2025 | Doc. 69, at 119 | Amy Kirschner | Review of Charles Urwin's revisions and additional edits to draft North Carolina and Bermuda question list regarding policyholder and balance sheet data requests and status | 8, 37, 38 |
| 397 | Mar. 27, 2025 | Doc. 69, at 120 | Nishant Patel | Call with W. Branson regarding Lindberg touch base and Damovo valuation analysis. | 3, 7, 31, 38 |
| 398 | Mar. 28, 2025 | Doc. 69, at 47 | MLM | Review emails with Steve Wilson re portfolio managers and various trusts. | 38, 54 |
| 399 | Mar. 28, 2025 | Doc. 69, at 47 | MLM | Review email from Victor Acevedo-Hernandez on ULICO's situation. Follow-up research re the same. | 14, 38 |
| 400 | Mar. 28, 2025 | Doc. 69, at 47 | MLM | Conference call with Caitlin Poe, Wes Camden, JWG, and BDR re possible special master distribution of SAC liquidation proceeds. | 28, 29, 30, 35, 36, 38 |
| 401 | Mar. 28, 2025 | Doc. 69, at 47 | BDR | Call with JWG, MLM, Wes Camden, and Caitlin Poe. | 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 402 | Mar. 28, 2025 | Doc. 69, at 47 | JWG | Conference call with Caitlin Poe, Wes Camden, JWG, and BDR re possible special master distribution of SAC liquidation proceeds. | 28, 29, 30, 35, 36, 38 |
| 403 | Mar. 28, 2025 | Doc. 69, at 120 | Amy Kirschner | Communication among Grier, Dan Ryan, DOJ and Scott Avila regarding status update on data request for North Carolina Insurance companies | 35, 38, 40, 41 |
| 404 | Mar. 28, 2025 | Doc. 69, at 120 | Amy Kirschner | Call with Ben Wylie, Bermuda liquidators and Charles Urwin regarding additional claims information, policyholder and asset detail and claims process provider introductions | 8, 28, 30, 35, 37, 38 |
| 405 | Mar. 28, 2025 | Doc. 69, at 120 | Amy Kirschner | Calls with Charles Urwin regarding question list for North Carolina and Bermuda status update | 37, 38 |
| 406 | Mar. 28, 2025 | Doc. 69, at 120 | Amy Kirschner | Call with Rick Hyman, Crowell Mooring regarding marketing question and feedback | 28, 30, 38 |
| 407 | Mar. 29, 2025 | Doc. 69, at 121 | Amy Kirschner | Communication with Charles Urwin to distribute draft data request list for North Carolina and Bermuda status update | 37, 38 |
| 408 | Mar. 29, 2025 | Doc. 69, at 121 | Amy Kirschner | Correspondence with Scott Avila regarding possible option for bank accounts and introduction of Kathy Million and Alicia Den Bente, Epiq for discussion; subsequent introductory email exchanges | 38 |
| 409 | Mar. 31, 2025 | Doc. 69, at 48 | MLM | Video conference with Luis Llach-Zuniga re special master role and possible distribution waterfalls. | 38 |
| 410 | Mar. 31, 2025 | Doc. 69, at 48 | MLM | Emails with Nick Kajon re distribution waterfall. | 38 |
| 411 | Mar. 31, 2025 | Doc. 69, at 48 | BDR | Call with JWG and Paladin personnel to discuss information request to NCICs. | 35, 38 |
| 412 | Mar. 31, 2025 | Doc. 69, at 48 | JWG | Call with B. Rhodes and Paladin personnel to discuss information request to NCICs. | 35, 38 |
| 413 | Mar. 31, 2025 | Doc. 69, at 121 | Scott Avila | Call General Counsel regarding board seat | 23, 24, 25, 38 |
| 414 | Mar. 31, 2025 | Doc. 69, at 121 | Scott Avila | Call with General Counsel regarding F3 | 38 |
| 415 | Mar. 31, 2025 | Doc. 69, at 121 | Amy Kirschner | Call with Charles Urwin, Scott Avila, D Harer to finalize data request list from North Carolina | 38 |
| 416 | Apr. 1, 2025 | Doc. 69, at 48 | MLM | Conference call with Nick Kajon, John Johnston, and others re potential consensual waterfall for ClanWilliam. | 18, 29, 38 |
| 417 | Apr. 1, 2025 | Doc. 69, at 49 | MLM | Emails with Mo Meghji, Matt Manning, and John Babcock re possible dispositions of ClanWilliam sale proceeds. Emails with John Johnston and Nick Kajon re the same. Conferences with BDR re the same. Emails with Wes Camden, Caitlin Poe, BDR, and JWG re the same. Emails with John Johnston, Marthinus Dreyer, Benjamin Wylie, Nick Kajon, Constantine Pourakis, Oliver Dancey, JWG, and BDR re the same. | 18, 28, 29, 30, 35, 38 |
| 418 | Apr. 1, 2025 | Doc. 69, at 49 | MLM | Telephone call from John Babcock re banking issues across the various SAC operating companies. | 36, 38 |
| 419 | Apr. 1, 2025 | Doc. 69, at 49 | BDR | Review of correspondence with Deloitte re: Bermuda Ins. Cos. proposed ClanWilliam distribution; preparation of questions re: same. | 18, 29, 37, 38 |
| 420 | Apr. 2, 2025 | Doc. 69, at 49 | MLM | Emails with Wes Camden and Caitlin Poe re distribution of ClanWilliam sale proceeds. | 18, 28, 29, 30, 35, 38 |
| 421 | Apr. 2, 2025 | Doc. 69, at 49 | BDR | Email to Deloitte to set up meeting re: ClanWilliam distribution. | 18, 29, 38 |
| 422 | Apr. 2, 2025 | Doc. 69, at 49 | BDR | Preparation for meeting with Deloitte personnel re: Bermuda's proposed ClanWilliam distribution; meeting with Deloitte; review of information provided re: distribution calculations. | 18, 29, 37, 38 |
| 423 | Apr. 2, 2025 | Doc. 69, at 50 | MLM | Draft letter to Wes Camden and Caitlin Poe requesting documents and information from the North Carolina insurance companies. | 35, 38 |
| 424 | Apr. 2, 2025 | Doc. 69, at 50 | MLM | Telephone call from Dan Ryan re Fleet Assist lawsuit filed by Bo Gaddy. | 38, 40, 41 |
| 425 | Apr. 2, 2025 | Doc. 69, at 123 | Amy Kirschner | Call with C Urwin and Dreyer Marthinus (Deloitte) regarding Agera entities, investments and history and questions around placement in the MOU | 13, 38 |
| 426 | Apr. 2, 2025 | Doc. 69, at 123 | Amy Kirschner | Review and edits to memo detailing data received to date from Williams Mullen as requested by the DOJ | 35, 38, 40, 41 |
| 427 | Apr. 2, 2025 | Doc. 69, at 123 | Charles Urwin | Call with M. Dreyer (Deloitte), A. Kirschner (Paladin) to discuss Bermuda outstanding diligence items and AGERA background. | 37, 38 |
| 428 | Apr. 2, 2025 | Doc. 69, at 123 | Charles Urwin | Call with A. Kirschner (Paladin) to review and finalize letters to Williams Mullen. | 35, 38 |
| 429 | Apr. 3, 2025 | Doc. 69, at 50 | BDR | Conference with JWG re: discussions with Deloitte. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 430 | Apr. 3, 2025 | Doc. 69, at 50 | JWG | Conference B. Rhodes re analysis of claim spreadsheet from NC insurance companies. | 38 |
| 431 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Emails with John Johnston re communications with VISTA. | 8, 38 |
| 432 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Continue drafting letter to Williams Mullen re document and information request. | 35, 38 |
| 433 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Emails with Dan Ryan re forthcoming demand to North Carolina insurance company victims. | 8, 35, 38, 40, 41 |
| 434 | Apr. 3, 2025 | Doc. 69, at 51 | BDR | Revisions to letter to Williams Mullen re: information request. | 35, 38 |
| 435 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Emails and telephone calls with Amy Kirschner re outstanding documents requested from the North Carolina insurance company victims. Emails with Dan Ryan re the same. Emails with Scott Avila, Don Harer, Charles Urwin, Amy Kirschner, BDR, and JWG re the same. | 8, 35, 38, 40, 41 |
| 436 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Emails with Wes Camden, Caitlin Poe, JWG, and BDR re ClanWilliam sale proceeds. | 18, 28, 29, 30, 35, 38 |
| 437 | Apr. 3, 2025 | Doc. 69, at 123 | Scott Avila | Call with General Counsel Primary Restitution Asset | 38 |
| 438 | Apr. 3, 2025 | Doc. 69, at 123 | Scott Avila | Call with MacQuire to interview them for a potential investment banking engagement | 27, 28, 34, 38 |
| 439 | Apr. 3, 2025 | Doc. 69, at 123 | Amy Kirschner | Call with John Katsikoumbas related to their views on Primary Restitution Asset and potential solution provider to debt stack and cost issues | 38 |
| 440 | Apr. 3, 2025 | Doc. 69, at 123 | | Allen Soong Call with Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 441 | Apr. 4, 2025 | Doc. 69, at 51 | MLM | Emails with Nick Kajon and John Johnston re emails from Greg Lindberg. Video conference with Nick Kajon and John Johnston re the same. | 38 |
| 442 | Apr. 4, 2025 | Doc. 69, at 51 | MLM | Emails with Wes Camden and Caitlin Poe re Vista Life & Casualty Reinsurance Company. | 8, 35, 38 |
| 443 | Apr. 4, 2025 | Doc. 69, at 124 | Scott Avila | Call with Luis Zuniga - ULICO | 14, 38 |
| 444 | Apr. 5, 2025 | Doc. 69, at 52 | MLM | Emails with JWG re lack of cooperation from Freedom 3. | 38, 42 |
| 445 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Conference JWG re primary restitution asset and document request to North Carolina insurance companies. | 35, 38 |
| 446 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Emails with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, Taylor Stout, JWG, and BDR re document request from North Carolina insurance companies. Revise draft demand letter. | 35, 38, 40, 41 |
| 447 | Apr. 7, 2025 | Doc. 69, at 52 | JWG | Conference M. Martinez re issues related to primary restitution asset and issues related to discovery request to Williams Mullen. | 35, 38 |
| 448 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Emails with Dan Ryan, Lyndie Freeman, Taylor Stout, BDR, and JWG re Vista. | 8, 38, 40, 41 |
| 449 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Emails with Nick Kajon, John Johnston, and Ben Wylie re ClanWilliam sale. [. . .] | 18, 28, 29, 30, 38 |
| 450 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Telephone call from John Babcock re status of term sheet reactions and related issues. | 38, 52 |
| 451 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Telephone call from Luis Llach-Zuniga re status of ClanWilliam and primary restitution asset sale efforts and related concerns. | 18, 28, 29, 30, 38 |
| 452 | Apr. 7, 2025 | Doc. 69, at 124 | Scott Avila | Review and respond to emails from General Counsel at Primary Restitution Asset | 38 |
| 453 | Apr. 7, 2025 | Doc. 69, at 124 | Scott Avila | Call with General Counsel - Primary Restitution Asset | 38 |
| 454 | Apr. 7, 2025 | Doc. 69, at 124 | Scott Avila | Call with Michael Martinez, General Counsel, Joe Grier and Steve Waterman regarding Primary Restitution Asset legal issues | 38 |
| 455 | Apr. 7, 2025 | Doc. 69, at 124 | Donald Harer | Call with Primary Restitution Asset, Primary Restitution Asset counsel, and special master to discuss loan matters | 38 |
| 456 | Apr. 8, 2025 | Doc. 69, at 52 | MLM | Emails with Amy Kirschner re document/ information request to North Carolina insurance companies. | 35, 38 |
| 457 | Apr. 8, 2025 | Doc. 69, at 53 | MLM | Prepare for and attend video conference with Dan Ryan, Caitlin Poe, Wes Camden, Lyndie Freeman, Ben Bain-Creed, JWG, and BDR re documents and information requested from North Carolina insurance companies. Follow-up call with BDR and JWG re the same. | 35, 38, 40, 41 |
| 458 | Apr. 8, 2025 | Doc. 69, at 53 | BDR | Call with JWG, MLM, Dan Ryan, Ben Bain-Creed, Wes Camden, and Caitlin Poe re: request for information. | 35, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 459 | Apr. 8, 2025 | Doc. 69, at 53 | BDR | Follow-up conference with JWG and MLM after call with DOJ and Williams Mullen personnel. | 35, 38, 40, 41 |
| 460 | Apr. 8, 2025 | Doc. 69, at 53 | MLM | Participate (audio only) in video conference with Steve Waterman, general counsel for primary restitution asset, Layne Smith, Hannah Tuttle, Scott Avila, and JWG re Freedom 3. | 38 |
| 461 | Apr. 8, 2025 | Doc. 69, at 53 | JWG | Zoom call with D. Ryan, NC insurance lawyers, M. Martinez and B. Rhodes re discovery requested from NC insurance companies. | 38, 40, 41 |
| 462 | Apr. 8, 2025 | Doc. 69, at 124 | Scott Avila | Call Primary Restitution Asset regarding General Counsel, Steve Waterman and Layne Smith (Dorsey -- Primary Restitution Asset counsel) | 38 |
| 463 | Apr. 8, 2025 | Doc. 69, at 124 | Donald Harer | Call with Primary Restitution Asset regarding assignment and F3 position. Follow-up Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 464 | Apr. 9, 2025 | Doc. 69, at 53 | MLM | Finalize document request letter to Williams Mullen. Emails with Wes Camden, Caitlin Poe, Dan Ryan, Ben Bain-Creed, Lyndie Freeman, Scott Avila, Amy Kirschner, Don Harer, JWG, and BDR re the same. | 35, 38, 40, 41 |
| 465 | Apr. 9, 2025 | Doc. 69, at 53 | MLM | Emails with Ben Wylie and others re distribution of ClanWilliam sale proceeds. | 18, 28, 29, 30, 38 |
| 466 | Apr. 9, 2025 | Doc. 69, at 53 | MLM | Emails with Don Harer, Scott Avila, and JWG re discussions with Damovo lenders. | 31, 38 |
| 467 | Apr. 9, 2025 | Doc. 69, at 125 | Donald Harer | Call with M3 regarding Damovo. Follow-up with S Avila | 1, 2, 7, 31, 38, 50 |
| 468 | Apr. 10, 2025 | Doc. 69, at 53 | MLM | Emails with Wes Camden, Caitlin Poe, Ben Bain- Creed, Dan Ryan, Lyndie Freeman, JWG, and BDR re potential sale of ClanWilliam. [. . .] Conference BDR re the same. | 18, 28, 29, 30, 35, 38, 40, 41 |
| 469 | Apr. 10, 2025 | Doc. 69, at 54 | MLM | Emails with Layne Smith, Hannah Tuttle, Steve Waterman,general counsel for primary restitution asset, Scott Avila, Don Harer, and JWG re primary restitution asset loan documents and voting trust agreement and conduct further analysis of the same. Conferences with BDR re the same. | 38, 54 |
| 470 | Apr. 10, 2025 | Doc. 69, at 54 | MLM | Emails with Steve Wilson re ClanWilliam sale. Conferences with BDR re the same. | 18, 28, 29, 30, 38, 54 |
| 471 | Apr. 10, 2025 | Doc. 69, at 54 | MLM | Emails with John Babcock re ClanWilliam sale. | 18, 28, 29, 30, 38 |
| 472 | Apr. 10, 2025 | Doc. 69, at 55 | MLM | Review notes from prior communications from NHC for information that would advance the ball with the ClanWilliam sale or the special master term sheet proposal. | 18, 28, 29, 30, 36, 38, 52 |
| 473 | Apr. 10, 2025 | Doc. 69, at 55 | MLM | Video conference with Scott Avila, BDR, and Gary Lembo re primary restitution assetfinances and ClanWilliam sale status. | 18, 28, 29, 30, 38 |
| 474 | Apr. 10, 2025 | Doc. 69, at 55 | MLM | Telephone call from John Babcock re ClanWilliam sale. | 18, 28, 29, 30, 38 |
| 475 | Apr. 10, 2025 | Doc. 69, at 55 | MLM | Emails with Ben Wylie, Constantine Pourakis, Elizabeth Cava, Nick Kajon, John Johnston, BDR, and JWG re possible resolution for distributing ClanWilliam sale proceeds. | 18, 28, 29, 30, 38 |
| 476 | Apr. 10, 2025 | Doc. 69, at 125 | Amy Kirschner | Communication with A Den Beste regarding NHC and other Lindberg related bank accounts Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 36, 38 |
| 477 | Apr. 11, 2025 | Doc. 69, at 55 | BDR | Call with Ben Wylie re: Clanwilliam distribution. | 18, 29, 38 |
| 478 | Apr. 14, 2025 | Doc. 69, at 56 | JWG | Telephone call from general counsel for primary restitution asset re request for information from Kathy Million. | 38 |
| 479 | Apr. 14, 2025 | Doc. 69, at 56 | BDR | Emails to Deloitte/Ben Wylie re: discussions on Clanwilliam distribution. | 18, 29, 38 |
| 480 | Apr. 14, 2025 | Doc. 69, at 56 | BDR | Additional revisions to Clanwilliam proposal. | 18, 29, 38 |
| 481 | Apr. 14, 2025 | Doc. 69, at 126 | HPS | Scott Avila Review and respond to emails regarding NHC response, and F3 issues, and Primary Restitution Asset performance | 36, 38 |
| 482 | Apr. 14, 2025 | Doc. 69, at 126 | Donald Harer | Call with Crestline to discuss LT liability | 38 |
| 483 | Apr. 15, 2025 | Doc. 69, at 56 | BDR | Additional revisions to Clanwilliam proposal. | 18, 29, 38 |
| 484 | Apr. 15, 2025 | Doc. 69, at 126 | Scott Avila | Call with Houlihan regarding update | 34, 38 |
| 485 | Apr. 15, 2025 | Doc. 69, at 126 | Amy Kirschner | Call among DOJ, Grier and Paladin to discuss Clanwilliam sale | 18, 28, 29, 30, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 486 | Apr. 16, 2025 | Doc. 69, at 57 | JWG | Review and respond to email from C. Willard re special master being listed as beneficial owner of NHC bank accounts at Wells Fargo and First Horizon. | 36, 38 |
| 487 | Apr. 16, 2025 | Doc. 69, at 127 | Scott Avila | Call with General Counsel Primary Restitution Asset regarding sale process issues | 28, 30, 38 |
| 488 | Apr. 16, 2025 | Doc. 69, at 127 | Scott Avila | Dinner meeting with General Counsel | 38 |
| 489 | Apr. 16, 2025 | Doc. 69, at 127 | Scott Avila | Various calls with D General Counsel regarding proposal | 38 |
| 490 | Apr. 21, 2025 | Doc. 69, at 58 | MLM | Review email from Ben Wylie re Paradigm Park Holdings. Conference BDR re the same. [. . .] | 16, 20, 38 |
| 491 | Apr. 22, 2025 | Doc. 69, at 128 | Amy Kirschner | Call with Georgia Thompson Deloitte; overview of situation, role and responsibilities | 38, 52 |
| 492 | Apr. 23, 2025 | Doc. 69, at 58 | MLM | Review, edit, and finalize ClanWilliam Group sale proceeds distribution proposal. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. Emails with Wes Camden and Caitlin Poe re the same. | 18, 28, 29, 30, 35, 38 |
| 493 | Apr. 23, 2025 | Doc. 69, at 59 | MLM | Telephone call and email to Wes Camden re ClanWilliam Group sale proceeds distribution and related issues. Telephone call and email to John Babcock re the same. [. . .] Emails with Luis Llach-Zuniga re the same. Emails with Ben Wylie, John Johnston, Constantine Pourakis, Nick Kajon, Oliver Dancey, JWG, and BDR re the same and Paradigm funds. | 16, 18, 20, 28, 29, 30, 35, 38 |
| 494 | Apr. 23, 2025 | Doc. 69, at 59 | BDR | Review and analysis of correspondence from Daniel Rohner to Special Master regarding judgments against Lindberg; email to D. Rohner to set up time for call. | 38 |
| 495 | Apr. 23, 2025 | Doc. 69, at 128 | Scott Avila | Call General Counsel regarding F3 | 38 |
| 496 | Apr. 23, 2025 | Doc. 69, at 128 | Thomas Delzenero | External call with Primary Restitution Asset on covenant proposal | 38 |
| 497 | Apr. 23, 2025 | Doc. 69, at 128 | Donald Harer | [. . .] Preparation for call with Fleet Assist trustee. | 38, 54 |
| 498 | Apr. 24, 2025 | Doc. 69, at 60 | MLM | Email Don Solow re special master's proposal for distributing the net proceeds generated from the sale of the ClanWilliam Group of Companies. Emails with Wes Camden and Caitlin Poe re the same. | 18, 28, 29, 30, 35, 38 |
| 499 | Apr. 24, 2025 | Doc. 69, at 128 | Scott Avila | Call with Primary Restitution Asset - General Counsel and Bevan regarding Investment Banker | 34, 38 |
| 500 | Apr. 24, 2025 | Doc. 69, at 128 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 501 | Apr. 24, 2025 | Doc. 69, at 128 | Scott Avila | Call with Counsel regarding misc. representation issues | 38 |
| 502 | Apr. 24, 2025 | Doc. 69, at 128 | Donald Harer | [. . .] Follow-up calls with S Avila. Call with Investment Banker regarding Beckett. | 34, 38 |
| 503 | Apr. 25, 2025 | Doc. 69, at 60 | MLM | Emails with Ben Wylie, Oliver Dancey, John Johnston, Nick Kajon, Constantine Pourakis, JWG, and BDR re ClanWilliam distribution proposal. | 18, 29, 38 |
| 504 | Apr. 25, 2025 | Doc. 69, at 128 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 505 | Apr. 28, 2025 | Doc. 69, at 60 | MLM | Emails with John Bash re Lindberg's civil actions against Steve Wilson. Return telephone call to John Bash re the same. Emails with JWG and BDR re the same. | 38, 54 |
| 506 | Apr. 28, 2025 | Doc. 69, at 60 | MLM | Emails with conferences with JWG re primary restitution asset sale efforts. Telephone calls to general counsel for primary restitution asset re the same. Emails with Layne Smith, Steve Waterman, Hannah Tuttle, general counsel for primary restitution asset, and JWG re the same. Emails with Scott Avila and Don Harer re the same. | 28, 30, 38 |
| 507 | Apr. 29, 2025 | Doc. 69, at 60 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re primary restitution asset and ClanWilliam. Conference BDR re the same. | 18, 29, 38 |
| 508 | Apr. 29, 2025 | Doc. 69, at 60 | BDR | Discussion with MLM re: letter to F3. | 38 |
| 509 | Apr. 29, 2025 | Doc. 69, at 60 | MLM | [. . .] Emails with Ben Wylie, John Johnston, Oliver Dancey, Nick Kajon, Constantine Pourakis, JWG, and BDR re the same. Conferences with BDR and JWG re the same. Emails with Cassidy Willard, John Babcock, JWG, and BDR re the same. | 18, 28, 29, 30, 38 |
| 510 | Apr. 29, 2025 | Doc. 69, at 61 | JWG | Conference M. Martinez and B. Rhodes re response of Williams Mullen to Clanwilliam settlement proposal and re clarification of special master order with respect to Lindberg's interest in primary restitution asset. | 18, 29, 35, 38, 52 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 511 | Apr. 29, 2025 | Doc. 69, at 61 | JWG | Review memo from John W Babcock re revised Term Sheet. | 38, 52 |
| 512 | Apr. 29, 2025 | Doc. 69, at 129 | Donald Harer | Team call with S. Ho to prepare for diligence call with M3 | 1, 2, 7, 38, 50 |
| 513 | Apr. 29, 2025 | Doc. 69, at 129 | Amy Kirschner | Review of Grier correspondence regarding NC and Bermuda responses to Special Master proposal on Clanwilliam proposed distribution | 18, 29, 37, 38 |
| 514 | Apr. 30, 2025 | Doc. 69, at 61 | MLM | Emails with Nick Kajon, Ben Wylie, John Johnston, Oliver Dancey, Constantine Pourakis, JWG, and BDR re ClanWilliam sale proceeds. Emails with Don Harer, Scott Avila, JWG, and BDR re the same. | 18, 28, 29, 30, 38 |
| 515 | Apr. 30, 2025 | Doc. 69, at 129 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 516 | Apr. 30, 2025 | Doc. 69, at 129 | Scott Avila | Call D Harer regarding Primary Restitution Asset and Clanwilliam proposal | 18, 29, 38 |
| 517 | Apr. 30, 2025 | Doc. 69, at 129 | Donald Harer | Call with M3 regarding NHC valuation materials | 1, 2, 3, 7, 36, 38, 50 |
| 518 | May 1, 2025 | Doc. 69, at 62 | JWG | Call with general counsel for primary restitution asset, L. Smith and S. Avila re consent by Freedom 3 to Lindberg assignment of primary restitution asset interest to special master. | 38 |
| 519 | May 1, 2025 | Doc. 69, at 62 | BDR | Draft letter to Williams Mullen with counterproposal. | 35, 38 |
| 520 | May 1, 2025 | Doc. 69, at 62 | MLM | Emails with JWG and BDR re proposal for distributing proceeds from ClanWilliam sale. | 18, 28, 29, 30, 38 |
| 521 | May 1, 2025 | Doc. 69, at 129 | Scott Avila | Call with Houlihan regarding engagement opportunity | 34, 38 |
| 522 | May 1, 2025 | Doc. 69, at 129 | Scott Avila | Call with GWM and Primary Restitution Asset counsel regarding F3 request | 38 |
| 523 | May 2, 2025 | Doc. 69, at 130 | Scott Avila | Call General Counsel and review and comment on proposal | 38 |
| 524 | May 5, 2025 | Doc. 69, at 63 | MLM | Review and analyze Lindberg's response to NCICs counterproposal on the ClanWilliam group of companies net sale proceeds. Emails with Don Solow re the same. Review memorandum from John Babcock re ClanWilliam proceeds distribution issues. Telephone call to John Babcock re the same. Conference JWG and BDR re issues raised during call with John Babcock. | 18, 28, 29, 30, 35, 38 |
| 525 | May 5, 2025 | Doc. 69, at 63 | MLM | Conference JWG and BDR re both primary restitution asset and ClanWilliam. | 18, 29, 38 |
| 526 | May 5, 2025 | Doc. 69, at 63 | BDR | Conference with JWG and MLM re: (1) revisions to Voting Support Agreement, (2) next steps in primary restitution asset sale process, and (3) next steps in Clanwilliam distribution negotiation. | 18, 28, 29, 30, 38 |
| 527 | May 6, 2025 | Doc. 69, at 63 | MLM | Emails with Don Harer, Scott Avila, JWG, and BDR re ClanWilliam sale proceeds distribution. Emails with Ben Wylie, John Johnston, Oliver Dancey, Nick Kajon, Constantine Pourakis, Elizabeth Cava, JWG, and BDR re the same. Video conference with Wes Camden and Caitlin Poe re the same. | 18, 28, 29, 30, 35, 38 |
| 528 | May 6, 2025 | Doc. 69, at 64 | MLM | Review and edit draft motion to clarify special master's rights re primary restitution asset. Emails with Scott Avila and Don Harer re the same. Emails with Layne Smith, Steve Waterman, Hannah Tuttle, general counsel for primary restitution asset, JWG, and BDR re the same. Emails with general counsel for primary restitution asset, Layne Smith, JWG, and BDR re primary restitution asset sale support agreement. Emails with Dan Ryan, Taylor Stout, Ben Bain-Creed, Lyndie Freeman, JWG, and BDR re the same. Conference JWG and BDR re the same. | 28, 30, 38, 40, 41 |
| 529 | May 6, 2025 | Doc. 69, at 64 | BDR | Conference with MLM re: discussion with Williams Mullen about Clanwilliam negotiation. | 18, 29, 35, 38 |
| 530 | May 7, 2025 | Doc. 69, at 64 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re court approval of ClanWilliam settlement. Conference JWG re the same. Emails with Ben Wylie, John Johnston, Oliver Dancey, Nick Kajon, Constantine Pourakis, Elizabeth Cava, JWG, and BDR re the same. Draft new term sheet letter based on recent negotiations. Review suggested prepared by John Babcock re the same. Emails with JWG and BDR re the same. Conference JWG re the same. | 18, 29, 38, 52 |
| 531 | May 7, 2025 | Doc. 69, at 64 | MLM | Emails with Dan Ryan and others re primary restitution assetsupport agreement. | 38, 40, 41 |
| 532 | May 8, 2025 | Doc. 69, at 65 | MLM | Revise draft Clanwilliam counterproposal terms. [. . .] Emails with Luis Llach-Zuniga and Tony Jones re the same. | 18, 29, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 533 | May 8, 2025 | Doc. 69, at 65 | MLM | Review and edit draft support agreement per feedback received from government and JWG. | 38, 40, 41 |
| 534 | May 9, 2025 | Doc. 69, at 65 | BDR | Generate and circulate redline of Voting Support Agreement comparing MLM and Dorsey versions. | 15, 38, 51 |
| 535 | May 9, 2025 | Doc. 69, at 65 | MLM | Conferences with JWG re draft primary restitution asset sale support agreement. Review edits to the same suggested by Freedom 3, and then Layne Smith in response. Emails with JWG and BDR re the same. Emails with Layne Smith, Hannah Tuttle, general counsel for primary restitution asset, Scott Avila, JWG, and BDR. | 28, 30, 38 |
| 536 | May 9, 2025 | Doc. 69, at 65 | MLM | Emails with John Bash re lawsuits against Steve Wilson. | 38, 54 |
| 537 | May 9, 2025 | Doc. 69, at 66 | MLM | Conference BDR re Clanwilliam sale distribution proposal. Revise draft letter to Wes Camden and others re the same. Emails with JWG and BDR re the same. Conference JWG re the same. Emails with Wes Camden and Caitlin Poe re the same. Emails with John Babcock re the same. Emails with Dan Ryan, Ben Bain-Creed, Lyndie Freeman, Taylor Stout, Julia Park, JWG, and BDR re the same. | 18, 28, 29, 30, 35, 38, 40, 41 |
| 538 | May 12, 2025 | Doc. 69, at 66 | BDR | Return call of CBL customer's son (stated that his father received "a few hundred dollars less" than the full value of his account when State Guarantee Association paid out). Field call from CBL policyholder's son re: amount of check received from state guarantee association. | 3, 7, 8, 38 |
| 539 | May 12, 2025 | Doc. 69, at 66 | MLM | Emails with Dan Ryan re current proposal for distributing the net proceeds from the sale of the Clanwilliam group of companies. | 18, 28, 29, 30, 38, 40, 41 |
| 540 | May 12, 2025 | Doc. 69, at 66 | BDR | Email from Dan Ryan re: victim statements; review of victim statement spreadsheet and materials from Tisha Lindberg. | 8, 38, 40, 41 |
| 541 | May 12, 2025 | Doc. 69, at 66 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re Clanwilliam and F3. | 18, 29, 38 |
| 542 | May 12, 2025 | Doc. 69, at 66 | BDR | Schedule call with Dan Rohner. | 38 |
| 543 | May 12, 2025 | Doc. 69, at 66 | MLM | Telephone call to John Babcock re Clanwilliam sale proposal and potential Damovo sale transaction. Follow-up conference with JWG re the same. | 18, 28, 29, 30, 31, 36, 38 |
| 544 | May 12, 2025 | Doc. 69, at 66 | BDR | Draft memo re: call with Wade Ritchie. | 38 |
| 545 | May 12, 2025 | Doc. 69, at 130 | Scott Avila | Review information provided by DOJ, and NCICs | 35, 38, 40, 41 |
| 546 | May 12, 2025 | Doc. 69, at 130 | Scott Avila | Call with Paladin regarding new information received from the DOJ and NCIC's | 35, 38, 40, 41 |
| 547 | May 12, 2025 | Doc. 69, at 130 | Amy Kirschner | Review of estimated sale proceed split chart provided by D Harer to understand discrepancies if any with data provided by JPL's and NCIC | 28, 30, 35, 37, 38 |
| 548 | May 12, 2025 | Doc. 69, at 130 | | Amy Kirschner Review and response to D Harer's communication on data production and staffing availability | 38 |
| 549 | May 12, 2025 | Doc. 69, at 130 | Allen Soong | Paladin team call regarding data received from NC entities | 38 |
| 550 | May 13, 2025 | Doc. 69, at 67 | BDR | Review correspondence from Dan Rohner prior to call. | 38 |
| 551 | May 13, 2025 | Doc. 69, at 67 | MLM | Video conference with Wes Camden, Caitlin Poe, and BDR re Clanwilliam sale proceeds distribution proposals. Follow-up conference with BDR re the same. [. . .] | 18, 28, 29, 30, 35, 38 |
| 552 | May 13, 2025 | Doc. 69, at 67 | BDR | Call with MLM, Wes Camden, and Caitlin Poe re: Clanwilliam deal. | 18, 29, 35, 38 |
| 553 | May 13, 2025 | Doc. 69, at 67 | MLM | Review and analyze additional edits to draft support agreement from Freedom 3's attorneys. Conference call with general counsel for primary restitution asset and Layne Smith re the same. | 38 |
| 554 | May 13, 2025 | Doc. 69, at 67 | BDR | Call with Dan Rohner, attorney for creditor of Lindberg, re: special master process. | 16, 20, 38 |
| 555 | May 13, 2025 | Doc. 69, at 130 | Scott Avila | Review and respond to emails regarding Primary Restitution Asset and NCICs proposal Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 35, 38 |
| 556 | May 13, 2025 | Doc. 69, at 131 | Stanley Ho | Review information from NCIC, review email prior to coordination call | 35, 38 |
| 557 | May 13, 2025 | Doc. 69, at 131 | Amy Kirschner | Review of and comparison to original data for Bermuda assets in chart provided by D Harer in conjunction with Clanwilliam distribution | 18, 29, 37, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 558 | May 13, 2025 | Doc. 69, at 131 | Amy Kirschner | Review of S Ho's questions on senior debt allocations among insurance company entities as it relates to D Harer's chart prepared for Clanwilliam; related call to C Urwin regarding setting up side by side charts of data provide previously to determine any discrepancies | 18, 29, 38 |
| 559 | May 13, 2025 | Doc. 69, at 131 | Charles Urwin | Review NCIC balance sheet and restitution data sets provided by W Mullen. | 35, 38 |
| 560 | May 14, 2025 | Doc. 69, at 67 | MLM | Emails with John Babcock, Wes Camden, and Caitlin Poe re language in TA Associates purchase agreement re disbursement of sale proceeds. | 28, 29, 30, 35, 38 |
| 561 | May 14, 2025 | Doc. 69, at 67 | MLM | Conference JWG re status of Clanwilliam proposal and resolution with Freedom 3. | 18, 29, 38 |
| 562 | May 14, 2025 | Doc. 69, at 67 | MLM | Review further revisions to support and voting agreement made by Layne Smith. Revise support and voting agreement. Emails with Layne Smith, Hannah Tuttle, general counsel for primary restitution asset, Scott Avila, BDR, and JWG re the same. | 38 |
| 563 | May 14, 2025 | Doc. 69, at 67 | MLM | Research re Global Growth entities. Telephone call with Aaron Tobin re historical context of various litigation and entities implicated. Conference JWG and BDR re the same. | 38 |
| 564 | May 14, 2025 | Doc. 69, at 68 | BDR | Conference JWG and MLM re: call with Aaron Tobin. | 38 |
| 565 | May 14, 2025 | Doc. 69, at 68 | JWG | Conference M. Martinez re status of Clanwilliam proposal and resolution with Freedom 3. | 18, 29, 38 |
| 566 | May 14, 2025 | Doc. 69, at 68 | JWG | Conference M. Martinez and B. Rhodes re: call with Aaron Tobin. | 38 |
| 567 | May 14, 2025 | Doc. 69, at 68 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re status of Freedom 3's demand for funds and Clanwilliam sale proceeds disposition. | 18, 28, 29, 30, 38 |
| 568 | May 14, 2025 | Doc. 69, at 131 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 569 | May 15, 2025 | Doc. 69, at 68 | BDR | Analysis of financial information provided by NCICs. | 35, 38 |
| 570 | May 15, 2025 | Doc. 69, at 68 | MLM | Telephone call from John Babcock re proposal for distributing Clanwilliam net sale proceeds. Emails with Wes Camden and Caitlin Poe re the same. Emails with Don Harer, Scott Avila, and JWG re the same. | 18, 28, 29, 30, 35, 38 |
| 571 | May 15, 2025 | Doc. 69, at 132 | Donald Harer | Call with M3. Follow-up correspondence | 1, 2, 7, 38, 50 |
| 572 | May 16, 2025 | Doc. 69, at 133 | Amy Kirschner | Correspondence with S Ho and C Urwin regarding quantification amounts Lindberg entities paid to NCIC entities since 12/31/19 in principal and interest on Lindberg affiliated securities | 35, 38 |
| 573 | May 17, 2025 | Doc. 69, at 133 | Amy Kirschner | Call with S Ho regarding edits to NCIC data production memo | 35, 38 |
| 574 | May 19, 2025 | Doc. 69, at 69 | MLM | Video conference with Wes Camden and Caitlin Poe re proposed distribution of Clanwilliam sale proceeds. Follow-up conference with BDR re the same. | 18, 28, 29, 30, 35, 38 |
| 575 | May 19, 2025 | Doc. 69, at 69 | BDR | Call with MLM, Wes Camden, and Caitlin Poe re: Clanwilliam proposal; follow-up conference re: same. | 18, 29, 35, 38 |
| 576 | May 19, 2025 | Doc. 69, at 69 | MLM | Emails with Tony Jones and Luis Llach-Zuniga re status of liquidation of primary restitution assets. Emails with Ben Wylie, Nick Kajon, John Johnston, Oliver Dancey, Constantine Pourakis, Elizabeth Cava, JWG, and BDR re the same. Emails with Don Solow re the same. | 28, 30, 38 |
| 577 | May 19, 2025 | Doc. 69, at 69 | JWG | Conference M. Martinez re issues related to Clanwilliam sale and primary restitution asset. | 18, 28, 29, 30, 38 |
| 578 | May 19, 2025 | Doc. 69, at 134 | Scott Avila | Call with A Soong, S Ho, A Kirschner and D Harer regarding review memo and understanding on the data provided by NCIC's | 35, 38 |
| 579 | May 19, 2025 | Doc. 69, at 134 | Amy Kirschner | Communication with and review of information provided by W Mullen regarding SNIC data production | 38 |
| 580 | May 19, 2025 | Doc. 69, at 134 | Allen Soong | Call with team regarding data received from NC entities | 38 |
| 581 | May 20, 2025 | Doc. 69, at 69 | MLM | Emails with Ronan Lennon, Steve Wilson, and John Bash re outstanding deliverables for Clanwilliam closing. | 18, 29, 38, 54 |
| 582 | May 20, 2025 | Doc. 69, at 69 | MLM | Emails with Kate Giduz and Jeff Oleynik re Conservatrix's claim documentation and Clanwilliam sale proceeds. | 18, 28, 29, 30, 38 |
| 583 | May 20, 2025 | Doc. 69, at 69 | MLM | Return telephone call to general counsel for primary restitution asset and CEO re Freedom 3. Follow-up call from general counsel for primary restitution asset reporting positive developments. Emails with JWG and BDR re the same. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 584 | May 20, 2025 | Doc. 69, at 70 | BDR | Follow-up conference with MLM re: 5/19 call with Williams Mullen. | 35, 38 |
| 585 | May 20, 2025 | Doc. 69, at 134 | Scott Avila | Call with General Counsel at Primary Restitution Asset regarding F3 | 38 |
| 586 | May 20, 2025 | Doc. 69, at 134 | Amy Kirschner | Organization for call with Kate Giduz and Jeffrey Oleynik regarding follow up questions on Conservatrix data production | 38 |
| 587 | May 20, 2025 | Doc. 69, at 134 | Amy Kirschner | Correspondence with S Ho and C Urwin regarding revisions to NCIC data production memo Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 35, 38 |
| 588 | May 21, 2025 | Doc. 69, at 70 | BDR | Review redline of latest changes to Voting Support Agreement. | 15, 38, 51 |
| 589 | May 21, 2025 | Doc. 69, at 70 | MLM | Revise draft voting and support agreement. Telephone call from general counsel for primary restitution asset and Layne Smith re the same. Emails with Layne Smith, general counsel for primary restitution asset, Scott Avila, Hannah Tuttle, JWG, and BDR re the same. | 38 |
| 590 | May 21, 2025 | Doc. 69, at 70 | MLM | Telephone call to John Babcock re Damovo. | 31, 38 |
| 591 | May 21, 2025 | Doc. 69, at 135 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 592 | May 22, 2025 | Doc. 69, at 70 | MLM | Emails with Kate Giduz and Jeff Oleynik re Greg Lindberg's objection to presentence investigation report. Emails with BDR and JWG re the same. | 38, 42 |
| 593 | May 22, 2025 | Doc. 69, at 71 | MLM | Emails with Layne Smith, general counsel for primary restitution asset, Hannah Tuttle, Scott Avila, and JWG draft support agreement. | 38 |
| 594 | May 22, 2025 | Doc. 69, at 71 | MLM | Telephone calls from John Babcock re potential option of special master to acquire specialized affiliated companies that are deemed to have no value. Follow-up conferences with JWG re the same. Emails with John Babcock re the same. | 3, 7, 27, 28, 38 |
| 595 | May 22, 2025 | Doc. 69, at 135 | | Scott Avila Call with D Harer regarding follow up with Call with | 38 |
| 596 | May 23, 2025 | Doc. 69, at 72 | MLM | Emails with Ronan Lennon, Steve Wilson, and John Bash re Clanwilliam sale issues. Emails with Ben Wylie, Nick Kajon, John Johnston, Oliver Dancey, Constantie Pourakis, Elizabeth Cava, and JWG re the same. | 18, 28, 29, 30, 38, 54 |
| 597 | May 23, 2025 | Doc. 69, at 135 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 598 | May 23, 2025 | Doc. 69, at 135 | Amy Kirschner | Coordination of call with B Pierce on questions related to the Conservatrix data production and judgement Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From January 25, 2025 through June 23, 2025 Date Professional last Task Description Hours Rate Amount | 38 |
| 599 | May 23, 2025 | Doc. 69, at 136 | Amy Kirschner | Call with B Pierce on Conservatrix claims, clarification on policyholder damage, Lindberg role, level of distress at Lindberg entry and other related queries | 8, 38, 52 |
| 600 | May 23, 2025 | Doc. 69, at 136 | Charles Urwin | Call with Conservatrix to discuss document production. | 38 |
| 601 | May 27, 2025 | Doc. 69, at 72 | MLM | Telephone call from John Babcock re possible Clanwilliam solution. [. . .] | 18, 29, 38 |
| 602 | May 27, 2025 | Doc. 69, at 72 | MLM | Emails with general counsel for primary restitution asset and Layne Smith re resolution with Freedom 3. Conferences with JWG re the same. | 38 |
| 603 | May 28, 2025 | Doc. 69, at 72 | BDR | Review and analysis of NHC Valuation Discussion Materials prepared by M3 Partners. | 1, 2, 3, 7, 36, 38, 50 |
| 604 | May 28, 2025 | Doc. 69, at 72 | MLM | Video conference with Wes Camden re relationship between state court and federal court. | 35, 38 |
| 605 | May 28, 2025 | Doc. 69, at 72 | JWG | Conference M. Martinez and B. Rhodes re form of orders to be submitted to Judges Cogburn and Shirley re Clanwilliam waterfall. | 18, 29, 38 |
| 606 | May 28, 2025 | Doc. 69, at 73 | BDR | Conference MLM and JWG re: call with Wes Camden about order required for Clanwilliam proceeds distribution. | 18, 29, 35, 38 |
| 607 | May 28, 2025 | Doc. 69, at 73 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re Clanwilliam and primary restitution asset. | 18, 29, 38 |
| 608 | May 29, 2025 | Doc. 69, at 73 | MLM | Review draft motion and proposed order from Wake County Superior Court re Clanwilliam net sale proceeds. Conference JWG and BDR re the same. Emails with Wes Camden re the same. Telephone call from Wes Camden re the same. Telephone call to John Babcock re the same. [. . .] | 18, 28, 29, 30, 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 609 | May 29, 2025 | Doc. 69, at 73 | BDR | Conference MLM and JWG re: changes to proposed order to Wake County Superior Court allowing Clanwilliam funds to go to Special Master. | 18, 29, 38 |
| 610 | May 29, 2025 | Doc. 69, at 136 | Scott Avila | Calls with General Counsel | 38 |
| 611 | May 29, 2025 | Doc. 69, at 136 | Scott Avila | Review and respond to emails from ULICO | 14, 38 |
| 612 | May 29, 2025 | Doc. 69, at 136 | Donald Harer | Correspond with Special Master regarding fund management. Call with Epiq | 38 |
| 613 | June 2, 2025 | Doc. 81, at 8 | BDR | Review of Motion and Proposed Order re: Clanwilliam proceeds and provide feedback to MLM re: the same. | 18, 29, 38 |
| 614 | June 2, 2025 | Doc. 81, at 8 | MLM | Conferences with BDR re draft motion and proposed order to approve Clanwilliam compromise. Revise the same. Emails with Wes Camden re the same. Emails with Luis Llach- Zuniga and Tony Jones re the same. Emails with Nick Kajon re the same. [. . .] | 18, 29, 35, 38 |
| 615 | June 3, 2025 | Doc. 81, at 8 | MLM | Video conference with Wes Camden re motion to approve Clanwilliam transaction. Follow-up conference with JWG and BDR re the same. [. . .] Emails with JWG and BDR re the same. Telephone call from JWG re the same. [. . .] Emails with Ronan Lennon, Steve Wilson, and John Bash re status of negotiations on Clanwilliam resolution. | 18, 28, 29, 30, 35, 36, 38, 54 |
| 616 | June 3, 2025 | Doc. 81, at 9 | BDR | Conference JWG and MLM re: revisions to Clanwilliam distribution motion. | 18, 29, 38 |
| 617 | June 4, 2025 | Doc. 69, at 137 | | Scott Avila Review and respond to emails from DOJ regarding website claims | 8, 38, 40, 41 |
| 618 | June 4, 2025 | Doc. 69, at 137 | Scott Avila | Call with General Counsel regarding Primary Restitution Asset | 38 |
| 619 | June 4, 2025 | Doc. 69, at 137 | | Scott Avila Email exchange with Lyndie Freeman | 38, 40, 41 |
| 620 | June 4, 2025 | Doc. 81, at 9 | MLM | [. . .] Emails with John Babcock and Jim Lanik re the same. | 18, 29, 38 |
| 621 | June 5, 2025 | Doc. 81, at 9 | MLM | Emails with Wes Camden re draft motion and order authorizing Clanwilliam distribution process. Emails with John Babcock and Jim Lanik re the same. Emails with Luis Llach-Zuniga and Tony Jones re the same. | 18, 29, 35, 38 |
| 622 | June 5, 2025 | Doc. 81, at 10 | BDR | Review of files provided by Bill Janvier. | 38 |
| 623 | June 9, 2025 | Doc. 69, at 137 | Scott Avila | Call General Counsel regarding Primary Restitution Asset matters | 38 |
| 624 | June 9, 2025 | Doc. 81, at 10 | MLM | Review Wes Camden's edits to draft motion to approve Clanwilliam compromise. Revise the same and corresponding draft proposed order. Emails with JWG and BDR re the same. Conference BDR re the same. [. . .] Emails with Wes Camden, Caitlin Poe, Luis Llach-Zuniga, Tony Jones, Nick Kajon, Constantine Pourakis, John Johnston, Ben Wylie, Oliver Dancey, Elizabeth Cava, John Babcock, Jim Lanik, Don Solow, JWG, and BDR re the same. Further review of corresponding Wake County pleadings. | 18, 29, 35, 38 |
| 625 | June 10, 2025 | Doc. 81, at 10 | MLM | Emails with Wes Camden re draft Clanwilliam pleadings. [. . .] Emails with John Babcock re the same. [. . .] Emails with Scott Avila and Don Harer re the same. Telephone call to John Babcock re de minimis specified affiliated companies. Revise draft consent motion. [. . .] | 18, 29, 35, 38 |
| 626 | June 10, 2025 | Doc. 81, at 10 | JWG | Review and respond to email from Ian Quigley re Galen Publishing charging order. | 38 |
| 627 | June 10, 2025 | Doc. 81, at 11 | MLM | Telephone calls to and from counsel for certain primary restitution asset re removing Kathy Million from the Board of Directors. Review and revise draft letter prepared by BDR re the same. Emails with Layne Smith, BDR, JWG and others re the same. Telephone call to Scott Avila re the same. | 23, 24, 25, 38 |
| 628 | June 11, 2025 | Doc. 81, at 11 | MLM | Review charging order entered in Galen Publishing v. ASiM Holdings, LLC on September 10, 2024. Emails with Ian Quigley and John Babcock re the same. Research re Galen Publishing. | 38 |
| 629 | June 11, 2025 | Doc. 81, at 11 | MLM | [. . .] Emails with Don Solow, Ben Wylie, John Johnston, Oliver Dancey, Constantine Pourakis, Nick Kajon, Elizabeth Cava, John Babcock, Jim Lanik, Wes Camden, Caitlin Poe, Luis Llach- Zuniga, Tony Jones, JWG, and BDR re the same. Revise draft Wake County notice and corresponding order based on feedback from Luis Llach-Zuniga. Emails with Wes Camden re the same. Telephone call from Wes Camden re the same. Emails with Luis Llach-Zuniga, Tony Jones, JWG, and BDR re the same. | 18, 29, 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 630 | June 12, 2025 | Doc. 81, at 11 | MLM | Revise draft pleadings seeking to approve and consummate the Clanwilliam compromise. Emails with Nick Kajon, Wes Camden, Caitlin Poe, Luis Llach-Zuniga, Tony Jones, Constantine Pourakis, Ben Wylie, John Johnston, Oliver Dancey, Elizabeth Cava, John Babcock, Jim Lanik, Ben Worley, Don Solow, JWG, and BDR re the same. [. . .] | 18, 29, 35, 38 |
| 631 | June 12, 2025 | Doc. 81, at 12 | MLM | Emails with John Babcock re Clanwilliam tax questions. Conference BDR re the same. Conference JWG re the same. | 18, 29, 38 |
| 632 | June 12, 2025 | Doc. 81, at 12 | BDR | Conference MLM re: potential taxable event arising from Clanwilliam sale and its effect on the Clanwilliam proposal. | 18, 28, 29, 30, 38 |
| 633 | June 13, 2025 | Doc. 69, at 138 | Scott Avila | Call General Counsel Primary Restitution Asset regarding Tax issues | 38 |
| 634 | June 13, 2025 | Doc. 81, at 13 | MLM | Revise Clanwilliam compromise documents per recent edits from ULICO. Emails with Luis Llach- Zuniga re the same. Emails with Wes Camden re the same. [. . .] Emails with Nick Kajon re the same. | 14, 18, 29, 35, 38 |
| 635 | June 16, 2025 | Doc. 81, at 13 | MLM | Review further proposed edits to Clanwilliam compromise pleadings from the North Carolina insurance companies. Conference JWG re the same. Emails with Luis Llach-Zuniga and Tony Jones re the same. Emails with Nick Kajon re the same. Telephone call with Wes Camden re the same. | 18, 29, 35, 38 |
| 636 | June 16, 2025 | Doc. 81, at 13 | MLM | Emails with Margaret Westbrook, Bill Janvier, Caitlin Poe, Wes Camden, Cassidy Willard, John Babcock, Lauren Fussell, and JWG re documents recovered from 2222 Sedwick Road, Suite 103. | 28, 30, 35, 38 |
| 637 | June 16, 2025 | Doc. 81, at 13 | MLM | Review emails from John Babcock and Mo Meghji re Irish income tax issues. Telephone call to Wes Camden re the same. | 35, 38 |
| 638 | June 17, 2025 | Doc. 81, at 14 | MLM | Telephone call from John Babcock re Irish income tax issues. | 38 |
| 639 | June 18, 2025 | Doc. 69, at 138 | Allen Soong | Further comments/revisions to NCIC deck | 35, 38 |
| 640 | June 18, 2025 | Doc. 81, at 14 | MLM | Revise draft consent motion to approve Clanwilliam compromise. Emails with Nick Kajon re the same. Emails with Ronan Lennon, John Bash, and Steve Wilson re the same. Emails with Luis Llach-Zuniga and Tony Jones re the same. Emails with Wes Camden re the same. | 18, 29, 35, 38, 54 |
| 641 | June 18, 2025 | Doc. 81, at 14 | MLM | Video conference with Caitlin Poe, John Babcock, and Wes Camden re Irish income tax issues. | 35, 38 |
| 642 | June 18, 2025 | Doc. 81, at 14 | MLM | Video conference with Bill Janvier, Margaret Westbrook, Cassidy Willard, Caitlin Poe, John Babcock, and Wes Camden re records discovered at 2222 Sedwick Road, Suite 103. | 35, 38 |
| 643 | June 18, 2025 | Doc. 81, at 14 | MLM | Research re Irish tax issues and potential impact on Clanwilliam transaction. Emails with Wes Camden re the same. | 18, 28, 29, 30, 35, 36, 38 |
| 644 | June 18, 2025 | Doc. 81, at 14 | MLM | Review and revise draft letter to Greg Lindberg demanding dismissal of Steve Wilson lawsuits. Emails with Steve Wilson and John Bash re the same. | 38, 54 |
| 645 | June 19, 2025 | Doc. 69, at 138 | HPS | Scott Avila Call with Primary Restitution Asset CEO regarding covenants | 38 |
| 646 | June 19, 2025 | Doc. 81, at 14 | MLM | Emails with Don Solow, Ben Wylie, Oliver Dancey, Elizabeth Cava, John Johnston, Nick Kajon, BDR, and JWG re status of Clanwilliam closing. Emails with Ronan Lennon, Steve Wilson, and John Bash re "know your customer" regulations. Conference JWG re Clanwilliam tax issues. Emails with Luis Llach-Zuniga and Tony Jones re the same. Telephone call from John Babcock reporting on discussion with Grant Thornton. Conferences with JWG re the same. Telephone call to Nick Kajon re the same. [. . .] Emails with Wes Camden re the same. Analyze economics of transaction based on recent developments with tax issues. | 18, 28, 29, 30, 35, 36, 38, 54 |
| 647 | June 19, 2025 | Doc. 81, at 15 | MLM | Emails with John Bash, Eric Wolkoff, and Steve Wilson re letter to Greg Lindberg demanding dismissal of lawsuits against Steve Wilson. Conference JWG re the same. | 38, 54 |
| 648 | June 20, 2025 | Doc. 81, at 15 | MLM | [. . .] Emails with John Babcock, David Paulson, and Wes Camden re the same. [. . .] | 35, 38 |
| 649 | June 23, 2025 | Doc. 81, at 15 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re status of Clanwilliam compromise. | 18, 29, 38 |
| 650 | June 24, 2025 | Doc. 81, at 15 | MLM | Emails with Nick Kajon re Clanwilliam compromise. [. . .] | 18, 29, 38 |
| 651 | June 24, 2025 | Doc. 81, at 15 | MLM | Prepare for call with David Paulson, Wes Camden, and John Babcock re Clanwilliam. | 18, 29, 35, 38 |
| 652 | June 24, 2025 | Doc. 81, at 15 | MLM | Video conference with David Paulson, Wes Camden, and John Babcock re Irish income tax issues. | 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 653 | June 24, 2025 | Doc. 81, at 16 | BDR | Conference MLM re: call with Williams Mullen and Waldrep Wall about Irish tax withholding obligations in Clanwilliam deal. | 18, 29, 35, 38, 39 |
| 654 | June 24, 2025 | Doc. 81, at 63 | Donald Harer | Call with S. Avila and KMZ regarding trust issues and GEL letter | 38, 54 |
| 655 | June 25, 2025 | Doc. 81, at 63 | Donald Harer | Review contract edits to Epiq retainer as corresponded with Special Master | 38 |
| 656 | June 26, 2025 | Doc. 81, at 16 | MLM | Emails with Nick Kajon re Clanwilliam compromise. Emails with Luis Llach-Zuniga and Tony Jones re the same. Emails with Don Harer, Scott Avila, and BDR re the same. Emails with Wes Camden, David Paulson, and John Babcock re the same. Telephone call from Nick Kajon re the same. Emails with Steve Wilson, John Bash, and Eric Wolkoff re the same. | 18, 29, 35, 38, 54 |
| 657 | June 26, 2025 | Doc. 81, at 17 | MLM | Telephone call to Dan Ryan re victim loss calculations. Emails with Don Harer, Scott Avila, and Allen Soong re the same. | 8, 15, 38, 40, 41 |
| 658 | June 26, 2025 | Doc. 81, at 17 | MLM | Telephone call from John Babcock re Steve Wilson trusts and Clanwilliam tax issues. | 18, 29, 38, 54 |
| 659 | June 26, 2025 | Doc. 81, at 17 | BDR | Call with MLM, Scott Avila, Don Harer, Gary Lembo, and Allen Soong to discuss claims methodology and Clanwilliam deal. | 8, 18, 29, 38 |
| 660 | June 27, 2025 | Doc. 81, at 17 | MLM | Review edits proposed by North Carolina Insurance Companies and NHC to draft consent motion on Clanwilliam compromise to deal with tax issues. Conferences with JWG and BDR re the same. Emails with John Babcock re the same. Revise draft consent motion on Clanwilliam compromise. Emails with Dan Ryan re the same. Telephone call from John Babcock re the same. Emails with Wes Camden, David Paulson, and John Babcock re the same. | 18, 29, 35, 36, 38, 40, 41 |
| 661 | June 27, 2025 | Doc. 81, at 18 | BDR | Review NOLHGA communications to Dan Ryan. | 8, 38, 40, 41 |
| 662 | June 27, 2025 | Doc. 81, at 18 | MLM | Revise draft first status report. Conferences with BDR re the same. Emails with Don Harer, Allen Soong, Scott Avila, JWG, and BDR re the same. [. . .] Emails with Layne Smith, Steve Waterman, Hannah Tuttle, and others re the same. | 38 |
| 663 | June 30, 2025 | Doc. 81, at 18 | MLM | Review emails between Grant Thornton and John Babcock re Irish income tax issues. Telephone call from Nick Kajon re the same. Conference BDR re the same. Follow-up research re the same. | 38 |
| 664 | June 30, 2025 | Doc. 81, at 18 | BDR | Conference MLM re: conversation with Nick Kajon on Clanwilliam tax issues. | 18, 29, 38 |
| 665 | July 1, 2025 | Doc. 81, at 18 | MLM | Emails with John Babcock, Wes Camden, and David Paulson re consent motion to approve Clanwilliam compromise. Emails with Tony Jones and Luis Llach-Zuniga re the same. Revise the same. Emails and conferences with BDR re the same. Telephone call from John Babcock re the same. Review Wes Camden revisions to companion motion to file with Judge Shirley in Wake County. [. . .] Emails with Don Solow, Nick Kajon, Constantine Pourakis, Luis Llach-Zuniga, Tony Jones, Ben Worley, Wes Camden, Caitlin Poe, JWG, and BDR re the same. Emails with Steve Wilson, John Bash, and Eric Wolkoff re the same. [. . .] | 18, 29, 35, 38, 54 |
| 666 | July 1, 2025 | Doc. 81, at 19 | MLM | Emails with Layne Smith and others re draft first status report. | 38 |
| 667 | July 1, 2025 | Doc. 81, at 19 | BDR | Review of proposed changes to Wake County Joint Consent Motion; conference MLM re: same. | 38 |
| 668 | July 1, 2025 | Doc. 81, at 19 | MLM | Emails with BLF re Arcane Tinman. | 38 |
| 669 | July 1, 2025 | Doc. 81, at 19 | MLM | Telephone call from counsel for one of the primary restitution assets re draft first status report, sale efforts, and know your customer issues in the United Arab Emirates. | 28, 30, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 670 | July 2, 2025 | Doc. 81, at 19 | MLM | Analyze Irish tax issues impeding Clanwilliam transaction. Draft language potentially resolving issue for purposes of immediate filing of motion. Emails with Tony Jones, Luis Llach-Zuniga, Nick Kajon, and Constantine Pourakis re the same. Emails with Caitlin Poe, Wes Camden, John Babcock, Don Solow, Ben Worley, Luis Llach- Zuniga, Tony Jones, Constantine Pourakis, Nick Kajon, BDR, and JWG re the same. Telephone call with John Babcock re the same. [. . .] Telephone call to Scott Avila re the same. Video conference (I participated audio-only) with Nick Kajon, John Babcock, Tony Jones, Wes Camden, and Caitlin Poe re the same. Follow-up telephone call with John Babcock re the same. Follow-up emails with Nick Kajon, John Babcock, Tony Jones, Wes Camden, and Caitlin Poe re the same. | 18, 28, 29, 30, 35, 36, 38 |
| 671 | July 2, 2025 | Doc. 81, at 19 | BDR | Conference MLM re: updates to Clanwilliam sale proposal. | 18, 28, 29, 30, 38 |
| 672 | July 2, 2025 | Doc. 81, at 19 | MLM | Telephone call to Taylor Stout re filing of special master report. Conference call with Taylor Stout and Brittany Lynch re the same. | 38, 40, 41 |
| 673 | July 2, 2025 | Doc. 81, at 64 | Jeff Nerland | Multiple emails with C Cooper and S Avia (Paladin) regarding final version of First Fee Invoice | 38 |
| 674 | July 2, 2025 | Doc. 81, at 64 | Scott Avila | Call John Hubert re: mgmt issues | 38 |
| 675 | July 2, 2025 | Doc. 81, at 64 | Scott Avila | Call D Harer re: Primary Restitution Asset and Clanwilliam | 18, 29, 38 |
| 676 | July 3, 2025 | Doc. 81, at 19 | MLM | Emails with Nick Kajon, Wes Camden, Caitlin Poe, John Babcock, and Tony Jones re final revision to Clanwilliam compromise motion. Emails with Wes Camden and Caitlin Poe re timing of filings. Telephone calls from Wes Camden re logistics of various filings. [. . .] Telephone call from John Babcock re the same. Revise draft proposed order granting Clanwilliam compromise consent motion. Emails with Don Solow, Luis Llach-Zuniga, Ben Worley, Nick Kajon, Constantine Pourakis, John Babcock, Wes Camden, Caitlin Poe, Tony Jones, JWG, and BDR re the same. [. . .] Emails with Eric Wolkoff, Steve Wilson, and John Bash re the same. Emails with Kate Giduz and Jeff Oleynik re the same. | 18, 29, 35, 38, 54 |
| 677 | July 3, 2025 | Doc. 81, at 65 | Scott Avila | Review misc emails re: Epiq and Clanwilliam water fall | 18, 29, 38 |
| 678 | July 7, 2025 | Doc. 81, at 20 | MLM | Emails with Nick Kajon re procedural hurdles for effectuating Clanwilliam compromise. Emails with Ronan Lennon re the same. Emails with John Fletcher re the same. Telephone call from John Fletcher re the same. Emails with Luis Llach-Zuniga, Tony Jones, Nick Kajon, and Constantine Pourakis re the same. | 18, 29, 38 |
| 679 | July 8, 2025 | Doc. 81, at 21 | JWG | Telephone conversation with Jeff Oleynik, Kate Giduz, attorneys for Conservatrix, and B. Rhodes re Clanwilliam sale. | 18, 28, 29, 30, 38 |
| 680 | July 8, 2025 | Doc. 81, at 21 | BDR | Call with Jeff Oleynik and Kate Giduz about Clanwilliam deal. | 18, 29, 38 |
| 681 | July 9, 2025 | Doc. 81, at 22 | BDR | Email to Ian Quigley re: KYC declaration and Joe's address; conference JWG re: same. | 38 |
| 682 | July 9, 2025 | Doc. 81, at 22 | BDR | Review Epiq banking documents; develop agenda for meeting with Epiq. | 38 |
| 683 | July 9, 2025 | Doc. 81, at 22 | BDR | Email to Paladin re: sending billing statement to DOJ. | 38, 40, 41 |
| 684 | July 9, 2025 | Doc. 81, at 22 | BDR | Email to Dan Ryan with billing statements. | 38, 40, 41 |
| 685 | July 10, 2025 | Doc. 81, at 23 | BDR | Send letter appointing Scott Avila to Board of certain primary restitution asset. | 23, 24, 25, 38 |
| 686 | July 10, 2025 | Doc. 81, at 23 | BDR | Email to John Bash re: joint stipulation for dismissal with prejudice. | 38 |
| 687 | July 10, 2025 | Doc. 81, at 23 | BDR | Email to Steve Wilson re: dismissal of Fleet Assist lawsuit. | 38, 54 |
| 688 | July 11, 2025 | Doc. 81, at 23 | BDR | Review letter from CBL policyholder to Special Master. | 8, 38 |
| 689 | July 11, 2025 | Doc. 81, at 23 | BDR | Email to John Bash re: stipulation of dismissal in WDTX matter. | 38 |
| 690 | July 11, 2025 | Doc. 81, at 23 | JWG | Teams conference with D. Harer and B. Rhodes re arrangements with Epiq to handle bank accounts and any claims services. | 8, 38 |
| 691 | July 14, 2025 | Doc. 81, at 24 | BDR | Review feedback from Dan Ryan re: invoices. | 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 692 | July 14, 2025 | Doc. 81, at 24 | BDR | Call with JWG, Don Harer, David Elkin, Alicia Den Beste, and Brad Tuttle re: Special Master banking and claims process. | 8, 38 |
| 693 | July 14, 2025 | Doc. 81, at 24 | BDR | Email to Dan Ryan re: invoice; conference with JWG re: same. | 38, 40, 41 |
| 694 | July 14, 2025 | Doc. 81, at 24 | BDR | Revisions to Epiq escrow agreement. | 29, 38 |
| 695 | July 15, 2025 | Doc. 81, at 24 | BDR | Revisions to Epiq escrow agreement. | 29, 38 |
| 696 | July 15, 2025 | Doc. 81, at 24 | BDR | Revisions to Epiq services agreement. | 38 |
| 697 | July 15, 2025 | Doc. 81, at 24 | BDR | Conference JWG re: revisions to Epiq agreements. | 38 |
| 698 | July 15, 2025 | Doc. 81, at 24 | BDR | Conference JWG and BLF re: fee application. | 38 |
| 699 | July 15, 2025 | Doc. 81, at 24 | JWG | Telephone call Dave Beltran at Stretto re offering of financial services. | 27, 28, 38 |
| 700 | July 16, 2025 | Doc. 81, at 25 | BDR | Conference JWG and BLF re: potential revisions to invoice. | 38 |
| 701 | July 16, 2025 | Doc. 81, at 25 | BDR | Emails with Paladin and Primary Restitution Asset general counsel re: invoice revisions. | 38 |
| 702 | July 16, 2025 | Doc. 81, at 25 | BDR | Call with Primary Restitution Asset general counsel to discuss invoice. | 38 |
| 703 | July 16, 2025 | Doc. 81, at 25 | BDR | Conference JWG re: fee application and call with Primary Restitution Asset general counsel. | 38 |
| 704 | July 16, 2025 | Doc. 81, at 25 | BDR | Email to BLF re: revisions to invoice. | 38 |
| 705 | July 18, 2025 | Doc. 81, at 66 | Minesh Patel | Call with D Harer and D Elkin to update Victim and Damage definition deck | 8, 38 |
| 706 | July 18, 2025 | Doc. 81, at 66 | Scott Avila | Call John H (PRA) | 38 |
| 707 | July 19, 2025 | Doc. 81, at 66 | Minesh Patel | Review DOJ Materials (VIS Forms, IRS VIS, PSA Documents) | 8, 38, 40, 41 |
| 708 | July 20, 2025 | Doc. 81, at 66 | Minesh Patel | Prepare a summary of key takeaways from DOJ Materials | 38, 40, 41 |
| 709 | July 20, 2025 | Doc. 81, at 66 | Scott Avila | Discussions with D Harer re; prep for meeting with NOGLA | 38 |
| 710 | July 21, 2025 | Doc. 81, at 26 | JWG | Conference DOJ attorneys and NOLHGA attorneys in DOJ office. | 8, 38, 40, 41 |
| 711 | July 21, 2025 | Doc. 81, at 26 | BDR | Travel to and attend conference with JWG, MLM, Dan Ryan, Taylor Stout, Scott Avila, Don Harer, Joel Glover and Katie Wade and other NOLHGA personnel. | 8, 38, 40, 41 |
| 712 | July 21, 2025 | Doc. 81, at 26 | BDR | Review email from Clanwilliam counsel re: dismissal of PBLA lawsuit. | 18, 29, 38 |
| 713 | July 21, 2025 | Doc. 81, at 26 | MLM | Attend conference with Dan Ryan, Taylor Stout, Joel Glover, Katie Wade, Bill O'Sullivan, Brad Taman, John Colpean (via Zoom), Lyndie Freeman (via Zoom), Julia Park (via Zoom), BDR, and JWG re NOLHGA issues. | 8, 38, 40, 41 |
| 714 | July 21, 2025 | Doc. 81, at 66 | Andrew Cowie | Call with M. Marthinus, B. Wylie (Deloitte) and D. Harer (Paladin) in regard to Bermuda damages. | 37, 38 |
| 715 | July 21, 2025 | Doc. 81, at 66 | Andrew Cowie | Call with D. Harer in regard to Bermuda damages and assets. | 37, 38 |
| 716 | July 21, 2025 | Doc. 81, at 66 | Donald Harer | Meeting with NOLHGA, DOJ, and Grier Law to discuss restitution | 8, 38, 40, 41 |
| 717 | July 21, 2025 | Doc. 81, at 66 | Donald Harer | Review and address various email correspondence pertaining to Bermuda diligence | 37, 38 |
| 718 | July 21, 2025 | Doc. 81, at 66 | Minesh Patel | Call with Paula S. and David E. related to DOJ package, key takeaways and related emails | 38, 40, 41 |
| 719 | July 21, 2025 | Doc. 81, at 66 | Minesh Patel | Call with Greir and Paladin team to further define victims and damages | 8, 38 |
| 720 | July 21, 2025 | Doc. 81, at 67 | Scott Avila | Meeting with the DOJ, NOLHGA and members of the GWM firm | 8, 38, 40, 41 |
| 721 | July 22, 2025 | Doc. 81, at 27 | MLM | Telephone call and emails with John Babcock re Clanwilliam closing logistics and other hurdles. Emails with Wes Camden and Caitlin Poe re the same and related issues. Review motion to approve settlement filed by Bermuda insurance companies with the U.S. Bankruptcy Court for the Southern District of New York. Conference JWG and BDR re the same. Emails with Ronan Lennon re the same. | 18, 29, 35, 37, 38 |
| 722 | July 22, 2025 | Doc. 81, at 27 | JWG | Conference M. Martinez & B. Rhodes re case status, including issues related to Clanwilliam sale, NHC and primary restitution asset. | 18, 28, 29, 30, 36, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 723 | July 22, 2025 | Doc. 81, at 27 | BDR | Email to Epiq with redlined Escrow Agreement. | 15, 29, 38, 51 |
| 724 | July 22, 2025 | Doc. 81, at 27 | MLM | Video conference with Wes Camden and Caitlin Poe re NOLHGA and Clanwilliam. | 8, 18, 29, 35, 38 |
| 725 | July 22, 2025 | Doc. 81, at 27 | MLM | Video conference with Layne Smith, Steve Waterman, Ian Bushner, Eva Mak, Tim Howard, JWG, and BDR re various task items to streamline sale efforts. | 28, 30, 38 |
| 726 | July 22, 2025 | Doc. 81, at 27 | MLM | Review entered order approving Clanwilliam compromise. Emails with Nick Kajon, Constantine Pourakis, Luis Llach-Zuniga, Tony Jones, Don Solow, Wes Camden, Caitlin Poe, John Babcock, and Ronan Lennon re the same. | 18, 29, 35, 38 |
| 727 | July 22, 2025 | Doc. 81, at 27 | JWG | Zoom conference with team from Primary Restitution Asset re issues related to sale process. | 28, 30, 38 |
| 728 | July 23, 2025 | Doc. 81, at 28 | MLM | Emails with Jana Barnett re Lindberg's child support obligations. Left message with Barnett Gill re the same. Telephone call with Jana Barnett re the same. | 38 |
| 729 | July 23, 2025 | Doc. 81, at 28 | BDR | Revision to letter to Conservatrix re: victim status. | 8, 38 |
| 730 | July 23, 2025 | Doc. 81, at 67 | Andrew Cowie | Met with B. Wylie, O. Dancey, M. Dreyer (Deloitte) in regard to Bermuda case statuses. | 37, 38 |
| 731 | July 23, 2025 | Doc. 81, at 68 | Donald Harer | Email to DOJ inquiring into victim statement database | 8, 38, 40, 41 |
| 732 | July 24, 2025 | Doc. 81, at 28 | MLM | Emails with Nick Kajon re Clanwilliam closing logistics. Emails with Ronan Lennon re the same. | 18, 29, 38 |
| 733 | July 24, 2025 | Doc. 81, at 28 | MLM | Telephone call to Jeff Oleynik re Conservatrix. Emails with Jeff Oleynik and Kate Giduz re the same. Emails with Dan Ryan, Julia Park, Taylor Stout, BDR, and JWG re the same. | 38, 40, 41 |
| 734 | July 24, 2025 | Doc. 81, at 68 | David Elkin | Call with D. Ryan (DOJ) on victim statement database | 8, 38, 40, 41 |
| 735 | July 24, 2025 | Doc. 81, at 68 | Donald Harer | Coordinate diligence call with Deloitte | 38 |
| 736 | July 24, 2025 | Doc. 81, at 68 | Donald Harer | Correspond with NCIC regarding CWG close process and diligence questions | 35, 38 |
| 737 | July 25, 2025 | Doc. 81, at 69 | David Elkin | Draft email to Ben (Deloitte) in regard to Bermuda claims | 8, 37, 38 |
| 738 | July 25, 2025 | Doc. 81, at 69 | Donald Harer | Call with Epiq regarding distributions and next week's diligence priorities | 38 |
| 739 | July 25, 2025 | Doc. 81, at 69 | Donald Harer | Review and address email correspondence regarding subrogation questions and NCIC | 35, 38 |
| 740 | July 28, 2025 | Doc. 81, at 28 | MLM | Emails with Tony Jones and Nick Kajon re possible objections to the Clanwilliam motion pending before the U.S. Bankruptcy Court for the Southern District of New York and potential escrow agreement to resolve issues with TA Associates. Follow-up emails with Nick Kajon and Constantine Pourakis re the same. Follow-up emails with Tony Jones and Luis Llach-Zuniga re the same. | 18, 29, 38 |
| 741 | July 28, 2025 | Doc. 81, at 29 | BDR | Review email from Katharine Wade re: NOLHGA coverage of policyholders. | 8, 38 |
| 742 | July 28, 2025 | Doc. 81, at 29 | MLM | Prepare for meeting re Clanwilliam closing logistics with Ronan Lennon and representatives of TA Associates. Attend pre-meeting video conference with Ronan Lennon and BDR. Follow-up emails with Ronan Lennon re the same. | 18, 29, 38 |
| 743 | July 28, 2025 | Doc. 81, at 29 | MLM | Video conference with Paul Dolman, Howard Beggs, Zeynep Kocabas, Eric Leon, Tom Schultz, Kevin Huff, Ronan Lennon, and BDR re Clanwilliam closing logistics and potential escrow agreement. | 18, 29, 38 |
| 744 | July 28, 2025 | Doc. 81, at 29 | BDR | Call with MLM, Ronan Lennon, Paul Dolman, Howard Beggs, Zeynep Kocabas, Eric Leon, Tom Schultz, and Kevin Huff re: Clanwilliam closing. | 18, 29, 38 |
| 745 | July 28, 2025 | Doc. 81, at 29 | MLM | Emails with Paul Dolman, Zeynep Kocabas, Eric Leon, Tom Schultz, Kevin Huff, Ronan Lennon, BDR, and JWG re outstanding action items for Clanwilliam closing. Follow-up research re the same. | 18, 29, 38 |
| 746 | July 28, 2025 | Doc. 81, at 70 | David Elkin | Call with M. Dinius, J. Murphy, D. Harer regarding Clanwilliam and Restitution worksheets | 18, 29, 38 |
| 747 | July 28, 2025 | Doc. 81, at 70 | Donald Harer | Correspond with Grier Law and Epiq about next steps on CWG distribution process | 38 |
| 748 | July 29, 2025 | Doc. 81, at 29 | MLM | Emails with Paul Dolman, Kevin Huff, Eric Leon, Ronan Lennon, Zeynap Kocabas, Tom Schultz, Antonina Semyachkova, JWG, and BDR re various outstanding Clanwilliam closing issues. Emails with Nick Kajon and Constantine Pourakis re the same. | 18, 29, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 749 | July 29, 2025 | Doc. 81, at 29 | BDR | Email to Damovo counsel with tax identification number for KYC regulations. | 31, 38 |
| 750 | July 30, 2025 | Doc. 81, at 30 | MLM | Emails with Wes Camden and Caitlin Poe re entry of Wake County order permitting the Clanwilliam transaction to progress. [. . .] Conferences with JWG and BDR re the same. [. . .] Telephone call to Wes Camden re the same. [. . .] | 18, 28, 29, 30, 35, 36, 38 |
| 751 | July 30, 2025 | Doc. 81, at 30 | MLM | Review draft settlement agreement between Bermuda insurance companies and Clanwilliam. Emails with Paul Dolman, Kevin Huff, Eric Leon, Ronan Lennon, Zeynep Kocabas, Tom Schultz, Antonina Semyachkova, Scott Rothstein, JWG, and BDR re the same. Emails with Nick Kajon, Constantine Pourakis, JWG, and BDR re the same. Conferences with BDR and JWG re the same. Review Bermuda insurance companies' edits to the same. Review BDR's proposed edits to the same. Revise the same. | 18, 29, 37, 38 |
| 752 | July 30, 2025 | Doc. 81, at 30 | BDR | Email to Epiq re: conversion of Euro to USD. | 38 |
| 753 | July 30, 2025 | Doc. 81, at 30 | JWG | Conference M. Martinez re opposition from G. Lindberg to dismissal of CO & TX suits to the extent relating to Fleet Assist. | 38 |
| 754 | July 30, 2025 | Doc. 81, at 31 | BDR | Review of account wiring instructions and email to Epiq re: same. | 38 |
| 755 | July 30, 2025 | Doc. 81, at 31 | JWG | Review exchange of emails re settlement agreement between Bermuda and Clanwilliam; discuss same with M. Matinez and B. Rhodes. Review proposed special master deed of support for Clanwilliam sale. | 18, 28, 29, 30, 37, 38 |
| 756 | July 30, 2025 | Doc. 81, at 71 | Donald Harer | Call with A. Cowie and Epiq regarding preliminary discussions on distribution process | 38 |
| 757 | July 30, 2025 | Doc. 81, at 71 | Donald Harer | Call with D. Elkin regarding data from NCIC | 35, 38 |
| 758 | July 31, 2025 | Doc. 81, at 31 | MLM | Emails with Paul Dolman, Kevin Huff, Eric Leon, Ronan Lennon, Zeynep Kocabas, Tom Schultz, Antonina Semyachkova, Scott Rothstein, JWG, and BDR re agreement between the Bermuda insurance companies and Clanwilliam re closing procedures. Review the same. Emails with Nick Kajon, Constantine Pourakis, JWG, and BDR re the same. Emails with Wes Camden and Caitlin Poe re hearing before the U.S. Bankruptcy Court for the Southern District of New York. Emails with John Babcock re the same. | 18, 29, 35, 37, 38 |
| 759 | July 31, 2025 | Doc. 81, at 31 | BDR | Review communications re: (1) Wake County order and signatures required, and (2) settlement between TA/Clanwilliam and PBLA. | 18, 29, 38 |
| 760 | July 31, 2025 | Doc. 81, at 31 | MLM | [. . .] Conferences with JWG re the same. Edit draft email to Steve Wilson re the same. | 38, 54 |
| 761 | July 31, 2025 | Doc. 81, at 32 | BDR | Email to Nick Kajon re: proposed order approving settlement. | 38 |
| 762 | July 31, 2025 | Doc. 81, at 32 | BDR | Emails to TA associates with proposed order to SDNY Bankruptcy Ct approving settlement. | 38 |
| 763 | July 31, 2025 | Doc. 81, at 72 | Scott Avila | Review data from DOJ and send victim impact statement to team | 8, 38, 40, 41 |
| 764 | Aug. 4, 2025 | Doc. 81, at 32 | MLM | Emails with Steve Wilson, Eric Wolkoff, John Bash, JWG, and BDR re dismissal of lawsuits against Steve Wilson. Telephone call from Eric Wolkoff re the same. [. . .] Emails with Tom Schultz and others re the same. [. . .] Conference JWG re the same. Review revised draft joint stipulation of dismissal with prejudice. Conferences with JWG re the same. [. . .] Emails with Tony Jones and Luis Llach-Zuniga re the same. Research re dismissing claims with or without prejudice without the consent of the defendant. | 8, 38, 54 |
| 765 | Aug. 4, 2025 | Doc. 81, at 32 | MLM | Conference BDR re status of negotiations between Bermuda insurance companies and TA Associates. | 37, 38 |
| 766 | Aug. 4, 2025 | Doc. 81, at 33 | BDR | Analysis of difference between WDNC Order and TA/PBLA Settlement amounts; conference MLM re: same. | 38 |
| 767 | Aug. 4, 2025 | Doc. 81, at 33 | MLM | Telephone call from John Babcock re liquidation of certain SACs and related issues. | 28, 30, 36, 38 |
| 768 | Aug. 4, 2025 | Doc. 81, at 33 | JWG | Phone call M. Martinez re impact of notice of voluntary dismissal without prejudice by Lindberg in TX and CO cases. | 38 |
| 769 | Aug. 4, 2025 | Doc. 81, at 72 | David Elkin | Call with L. Fussell and Caitlin Poe (William Mullen; D. Harer | 28, 30, 35, 38 |
| 770 | Aug. 5, 2025 | Doc. 81, at 33 | MLM | [. . .] Conferences with JWG re the same. Emails with Paul Dolman re the same. Conference BDR Re the same. Emails with Ronan Lennon re the same. | 18, 28, 29, 30, 36, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 771 | Aug. 5, 2025 | Doc. 81, at 73 | Andrew Cowie | Call with S. Avila in regard to Pricing Tiers deck. | 38 |
| 772 | Aug. 6, 2025 | Doc. 81, at 33 | MLM | Emails with Tony Jones, John Babcock, and Nick Kajon re concerns with multiple "SACs." Review materials provided by John Babcock re the same. Video conference with Luis Llach-Zuniga, John Babcock, Tony Jones, Nick Kajon, and Christopher Rivera Blas re the same. Conference JWG re the same. Conference BDR re the same. | 36, 38 |
| 773 | Aug. 6, 2025 | Doc. 81, at 34 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re Lindberg's dismissal of Texas and Colorado suits without prejudice, contrary to special master's instructions. | 38 |
| 774 | Aug. 6, 2025 | Doc. 81, at 34 | MLM | Emails with Nick Kajon, Constantine Pourakis, JWG, and BDR re finalizing settlement agreement between Bermuda insrurance companies and Clanwilliam. Emails with Paul Dolman, Tom Schultz, Ronan Lennon, Kevin Huff, Eric Leon, Zeynep Kocabas, Antonina Semyachkova, Scott Rothstein, Howard Beggs, Howard Beggs, JWG, and BDR. | 18, 29, 37, 38 |
| 775 | Aug. 6, 2025 | Doc. 81, at 34 | MLM | Review entered order by Judge Shirley approving Clanwilliam sale to TA Associates. Emails with JWG and BDR re the same. Emails with Wes Camden and Caitlin Poe re the same. Emails with Paul Dolman, Tom Schultz, Ronan Lennon, Kevin Huff, Eric Leon, Zeynep Kocabas, Antonina Semyachkova, Scott Rothstein, Howard Beggs, Howard Beggs, JWG, and BDR re the same. [. . .] | 18, 28, 29, 30, 35, 38 |
| 776 | Aug. 6, 2025 | Doc. 81, at 34 | BDR | Conference MLM re: meeting with John Babcock and other discussing Damovo. | 31, 38 |
| 777 | Aug. 6, 2025 | Doc. 81, at 73 | Minesh Patel | Review VS Database documents provided by DOJ and summarize key points | 38, 40, 41 |
| 778 | Aug. 7, 2025 | Doc. 81, at 34 | MLM | Emails with Antonina Semyachkova re Bermuda supreme court approval process concerning Clanwilliam transaction. Emails with Nick Kajon and Constantine Pourakis re the same. | 18, 28, 29, 30, 36, 37, 38 |
| 779 | Aug. 7, 2025 | Doc. 81, at 34 | MLM | Emails with Paul Dolman, Tom Shultz, Ronan Lennon, Kevin Huff, Eric Leon, Scott Rothstein, Zeynep Kocabas, Antonina Semyachkova, Howard Beggs, Arthur Price, JWG, and BDR re outstanding deliverables to close Clanwilliam transaction. Emails with Nick Kajon and Constantine Pourakis re the same. [. . .] | 18, 28, 29, 30, 36, 38 |
| 780 | Aug. 7, 2025 | Doc. 81, at 35 | BDR | Email to NOLHGA to circulate confidentiality agreement. | 8, 38, 39 |
| 781 | Aug. 7, 2025 | Doc. 81, at 35 | MLM | Emails with Wes Camden, Caitlin Poe, JWG, and BDR re drafting a non-disclosure agreement between North Carolina insurance companies and special master's professionals. | 35, 38 |
| 782 | Aug. 7, 2025 | Doc. 81, at 35 | BDR | Attention to communications re: (1) SDNY filings for Clanwilliam deal approval and (2) process for obtaining and depositing checks related to SACs . | 18, 29, 36, 38 |
| 783 | Aug. 7, 2025 | Doc. 81, at 35 | MLM | Emails with Alicia Den Beste, Andrew Cowie, Scott Avila, Don Harer, JWG, and BDR depository issues. [. . .] Conference JWG re the same. Conference BDR re the same. | 38 |
| 784 | Aug. 7, 2025 | Doc. 81, at 73 | Andrew Cowie | Call with B. Wiley (Deloitte) and D. Harer in regard to Bermuda damages questions. | 37, 38 |
| 785 | Aug. 7, 2025 | Doc. 81, at 73 | David Elkin | Call with D. Harer to Discuss Prepared detailed Claims Waterfall Template from source data | 8, 38 |
| 786 | Aug. 8, 2025 | Doc. 81, at 35 | MLM | Emails with Paul Dolman and Kevin Huff re methods to satisfy TA Associates concerning potential frivolous claims by Greg Lindberg. Emails with Eric Wolkoff, John Bash, and Steve Wilson re dismissals of lawsuits against Steve Wilson. | 8, 38, 54 |
| 787 | Aug. 8, 2025 | Doc. 81, at 36 | MLM | Review order entered by the Bermuda Supreme Court. Emails with Nick Kajon re the same. Emails with Paul Dolman and others re the same. | 37, 38 |
| 788 | Aug. 11, 2025 | Doc. 81, at 36 | MLM | [. . .] Emails with Constantine Pourakis, Nick Kajon, Luis Llach- Zuniga, Tony Jones, John Babcock, Jim Lanik, JWG, and BDR re the same. Emails with Paul Dolman, Ronan Lennon, Tom Shultz, Scott Rothstein, Kevin Huff, Eric Leon, Zeynep Kocabas, Antonina Semyachkova, Howard Beggs, Arthur Price, JWG, and BDR re the same. Review and edit draft settlement and release agreement between Greg Lindberg and TA Associates/Clanwilliam. Telephone call with Luis Llach-Zuniga re the same. Follow-up email with JWG and BDR re the same. | 18, 29, 38 |
| 789 | Aug. 11, 2025 | Doc. 81, at 36 | MLM | Emails with Don Harer, Minesh Patel, Paula Sosamon, and BDR re Vista and Conservatrix. | 8, 38 |
| 790 | Aug. 11, 2025 | Doc. 81, at 74 | David Elkin | Victim and Damages Discussion Document Draft review | 8, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 791 | Aug. 11, 2025 | Doc. 81, at 74 | David Elkin | Action Log Call with D. Harer, Scott, Paula, Andrew and Minesh Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From June 24, 2025 through September 30, 2025 Date Professional Task Description Hours Rate Amount | 38 |
| 792 | Aug. 12, 2025 | Doc. 81, at 36 | MLM | Emails with Layne Smith and others re drafting of potential purchase agreement. | 38 |
| 793 | Aug. 12, 2025 | Doc. 81, at 36 | JWG | Review M. Martinez edits to TA-CW Release Document | 38 |
| 794 | Aug. 12, 2025 | Doc. 81, at 36 | BDR | Review edits to NOLHGA confidentiality agreement. | 8, 38, 39 |
| 795 | Aug. 12, 2025 | Doc. 81, at 36 | MLM | Review BDR edits to draft Lindberg-Clanwilliam- TA release document. Revise the same. Conference BDR re the same. Emails with Tom Schultz, Paul Dolman, Ronan Lennon, Scott Rothstein, Kevin Huff, Eric Leon, Zeynep Kocabas, Antonina Semyachkova, Howard Beggs, Arthur Price, JWG, and BDR re the same. Telephone call to John Babcock re the same. | 18, 29, 38 |
| 796 | Aug. 12, 2025 | Doc. 81, at 75 | Andrew Cowie | Call with B. Wylie, Deloitte in regard to ULICO preferred shares. | 14, 38 |
| 797 | Aug. 12, 2025 | Doc. 81, at 75 | Donald Harer | Review of Primary Restitution Asset D&O policy. Correspond with M3 | 1, 2, 7, 38, 50 |
| 798 | Aug. 12, 2025 | Doc. 81, at 75 | Donald Harer | Call with team regarding victim and damages definition. Correspond with NOLHGA | 8, 38 |
| 799 | Aug. 12, 2025 | Doc. 81, at 75 | Minesh Patel | Call with Paladin team to discuss edits to Primary Restitution Asset proceeds presentation | 29, 38 |
| 800 | Aug. 13, 2025 | Doc. 81, at 37 | MLM | Emails with Ronan Lennon, Paul Dolman, and other attorneys involved in closing the Clanwilliam transaction re Lindberg release. Draft letter enclosing the same. [. . .] | 18, 28, 29, 30, 36, 38 |
| 801 | Aug. 13, 2025 | Doc. 81, at 37 | BDR | Attention to communications re: checks payable to Boston Laser Eye Care Management LLC | 38 |
| 802 | Aug. 13, 2025 | Doc. 81, at 37 | BDR | Attention to correspondence re: deposit of checks to Boston Eye Care Leaders. | 38 |
| 803 | Aug. 13, 2025 | Doc. 81, at 37 | MLM | Review and edit draft deed of support and consent for special master to execute facilitating Clanwilliam closing. Emails with JWG and BDR re the same. Conference BDR re the same. Emails with Antonina Semyachova, Ronan Lennon, Eric Leon, Zeynep Kocabas, Paul Dolman, Tom Shultz, Kevin Huff, and Scott Rothstein re the same. Telephone call from John Babcock re the same. [. . .] | 18, 29, 38 |
| 804 | Aug. 13, 2025 | Doc. 81, at 37 | BDR | Review and revise proposed SM letter of consent to Clanwilliam transaction. | 18, 28, 29, 30, 36, 38 |
| 805 | Aug. 13, 2025 | Doc. 81, at 37 | MLM | Telephone call to John Babcock re ERC refund checks to Boston Laser Eye Care Management LLC and Greg Lindberg. Draft letter to Epiq re the same. Emails with JWG and BDR re the same. | 38 |
| 806 | Aug. 13, 2025 | Doc. 81, at 38 | MLM | Emails with Don Harer and others with confidentiality agreements with NOLHGA and NCICs. Emails with Wes Camden and Caitlin Poe re the same. | 8, 35, 38, 39 |
| 807 | Aug. 13, 2025 | Doc. 81, at 76 | Paula Sosamon | Coordination of schedules with D Harer and Patel for a call with VISTA | 8, 38 |
| 808 | Aug. 14, 2025 | Doc. 81, at 38 | MLM | Emails with Paul Dolman, Tom Shultz, Ronan Lennon, Scott Rothstein, Kevin Huff, Eric Leon, Zeynep Kocabas, Antonina Semyachova, Howard Beggs, Arthur Price, JWG, and BDR re Clanwilliam closing deliverables. [. . .] Emails with Luis Llach-Zuniga re the same. Emails with Nick Kajon re the same. [. . .] Review executed version of release to ensure no revisions. Review letter from Greg Lindberg re the same. | 18, 29, 38 |
| 809 | Aug. 14, 2025 | Doc. 81, at 38 | MLM | Telephone call from Wes Camden re Gramm Leach Bliley Act provisions on transmission of personally identifiable information. Research re the same. Emails with JWG and BDR re the same. Telephone call from JWG re the same. Emails with Wes Camden and Caitlin Poe re the same. | 35, 38 |
| 810 | Aug. 14, 2025 | Doc. 81, at 39 | BDR | Call to discuss primary restitution asset tax distribution with JWG, MLM, Don Harer, Minesh Patel, general counsel for primary restitution asset, Steven Matays, Jessica Berman, Narshima Reddy Kallem, Michael Justin Knight, and Sarabh Puri. | 38 |
| 811 | Aug. 14, 2025 | Doc. 81, at 76 | Donald Harer | Call with Special Master, Deloitte, Freshfields, and Primary Restitution Asset mgmt to discuss taxes and transaction | 28, 30, 36, 38 |
| 812 | Aug. 14, 2025 | Doc. 81, at 76 | Minesh Patel | Call with Primary Restitution Asset, Grier, FreshFields and Paladin team to discuss tax diligence | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 813 | Aug. 14, 2025 | Doc. 81, at 77 | Paula Sosamon | Review of various documents provided by D McBay to determine Magma victim profile | 8, 38 |
| 814 | Aug. 15, 2025 | Doc. 81, at 39 | MLM | Emails with Paul Dolman, Scott Rothstein, Ronan Lennon, Kevin Huff, Eric Leon, Zeynep Kocabas, Antonina Semyachova, JWG, and BDR re outstanding Clanwilliam closing deliverables. Analyze execution versions of PBLA-Clanwilliam settlement documents. Emails with Nick Kajon and Constantine Pourakis re the same. | 18, 29, 38 |
| 815 | Aug. 15, 2025 | Doc. 81, at 77 | Andrew Cowie | Prep for call with ULICO. | 14, 38 |
| 816 | Aug. 15, 2025 | Doc. 81, at 77 | Minesh Patel | Review Side Letter Settlement Agreement between Lindberg and ULICO | 14, 38 |
| 817 | Aug. 18, 2025 | Doc. 81, at 77 | David Elkin | Call with Patel on Victims and Damages deck continued | 8, 38 |
| 818 | Aug. 19, 2025 | Doc. 81, at 39 | MLM | Emails with Antonina Semyachkova, Ronan Lennon, and others re finalization of certain Clanwilliam closing documents. Emails with Tony Jones and Luis Llach-Zuniga re the same. | 18, 29, 38 |
| 819 | Aug. 19, 2025 | Doc. 81, at 39 | MLM | Review messages from Steve Wilson re Clanwilliam transaction and release from special master. Return telephone call to Steve Wilson. Conferences with JWG re the same. Analyze request from Steve Wilson. Emails with Steve Wilson, John Bash, and Eric Wolkoff re Lindberg's release of claims relating to TA Associates or Clanwilliam. | 8, 18, 28, 29, 30, 36, 38, 54 |
| 820 | Aug. 19, 2025 | Doc. 81, at 78 | Donald Harer | Correspond with team and Epiq to coordinate initial meetings for payment of NCIC excess policy holders. | 35, 38 |
| 821 | Aug. 19, 2025 | Doc. 81, at 78 | Paula Sosamon | Call with D Harer and Patel to prepare for the upcoming call with VISTA | 8, 38 |
| 822 | Aug. 20, 2025 | Doc. 81, at 40 | MLM | Continue organizing concepts for upcoming status conference. Video conference with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, Taylor Stout, JWG, and BDR re the same. | 38, 40, 41 |
| 823 | Aug. 20, 2025 | Doc. 81, at 40 | MLM | Attend video conference with Ian Bushner, Tim Howard, Steve Waterman, Layne Smith, Allison Kowalski, Shannon Sciaretta, JWG, BDR, and other company officers re sale process for primary restitution assets. | 28, 30, 38 |
| 824 | Aug. 20, 2025 | Doc. 81, at 40 | BDR | Call with JWG, MLM, Allison Kowalski, Shannon Sciaretta, Timothy Howard, Ian Bushner, Layne Smith, and CEO/general counsel for primary restitution asset re: sale process; conference JWG and MLM re: same. | 28, 30, 38 |
| 825 | Aug. 20, 2025 | Doc. 81, at 40 | MLM | Emails with Nick Kajon and Constantine Pourakis re revisions to stipulation of dismissal for certain claims in adversary proceeding. Emails with Ronan Lennon, Antonina Semyachkova, Zeynep Kocabas, Tom Schultz, Paul Dolman, Kevin Huff, and Scott Rothstein re the same. | 8, 38 |
| 826 | Aug. 20, 2025 | Doc. 81, at 41 | MLM | Video conference with Tony Jones and Luis Llach-Zuniga re processes for selling primary restitution assets. | 28, 30, 38 |
| 827 | Aug. 20, 2025 | Doc. 81, at 41 | BDR | Call with JWG, MLM, Dan Ryan, Taylor Stout, Ben Bain-Creed, and Lyndie Freeman re: 8/26 status hearing; follow-up conference with JWG and MLM re: same. | 38, 40, 41 |
| 828 | Aug. 20, 2025 | Doc. 81, at 41 | JWG | Teams meeting with DOJ to prepare for status hearing on 8/26. Follow-up conference. | 38, 40, 41 |
| 829 | Aug. 20, 2025 | Doc. 81, at 41 | MLM | Emails with Alicia Den Beste, Kathryn Tran, Tim Conklin, Scott Avila, Paula Sosamon, Don Harer, JWG, and BDR re international banking concerns. | 38 |
| 830 | Aug. 20, 2025 | Doc. 81, at 78 | David Elkin | Call with Tom regarding cash flow savings and international cash flow continued | 38 |
| 831 | Aug. 20, 2025 | Doc. 81, at 78 | Donald Harer | Call with Faegre Drinker about policy holder information | 38 |
| 832 | Aug. 20, 2025 | Doc. 81, at 78 | Paula Sosamon | Call with D Harer, D Elking and Patel to discuss restitution and payments | 38 |
| 833 | Aug. 20, 2025 | Doc. 81, at 78 | Scott Avila | Read and respond to emails from Epiq | 38 |
| 834 | Aug. 21, 2025 | Doc. 81, at 41 | MLM | Emails with Zeynep Kocabas and others re banking concerns. Emails with Alicia Den Beste and others re the same. Emails with Nick Kajon and Constantine Pourakis re the same. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 835 | Aug. 21, 2025 | Doc. 81, at 41 | MLM | Prepare for video conference with Paul Dolman re Clanwilliam. Attend the same. Conference with BDR and JWG re the same. Analyze various solutions to new hurdles to the same. Review emails between John Babcock and Ronan Lennon re the same. Telephone call to John Babcock re the same. Video conference with Howard Beggs, Ronan Lennon, Steve Wilson, John Babcock, JWG, and BDR re the same. Draft release of Steve Wilson by special master. Emails with John Bash, Eric Wolkoff, Howard Beggs, Ronan Lennon, Steve Wilson, John Babcock, Mo Meghji, JWG, and BDR re the same. Conferences with JWG re the same. [. . .] Telephone call from Steve Wilson re the same. Emails with Steve Wilson and Ronan Lennon re the same. [. . .] | 18, 29, 38, 54 |
| 836 | Aug. 21, 2025 | Doc. 81, at 42 | JWG | Conference M. Martinez and B. Rhodes re issues related to execution of Clanwilliam sales documents by Steve Wilson. | 18, 29, 38, 54 |
| 837 | Aug. 21, 2025 | Doc. 81, at 42 | BDR | Email to schedule call with NOLHGA counsel. | 8, 38 |
| 838 | Aug. 21, 2025 | Doc. 81, at 42 | BDR | Preparation for call with counsel for NOLHGA. | 8, 38 |
| 839 | Aug. 21, 2025 | Doc. 81, at 42 | BDR | Call with JWG, MLM, Ronan Lennon, Howard Beggs, Steve Wilson, and John Babcock re: releases necessary for Steve Wilson. | 38, 54 |
| 840 | Aug. 21, 2025 | Doc. 81, at 78 | David Elkin | Call with Grier Law, D. Harer and Scott regarding Victims and Damages Deck walkthrough | 8, 38 |
| 841 | Aug. 21, 2025 | Doc. 81, at 78 | Donald Harer | Attend to various email correspondence pertaining to Special Master efforts Paladin Management Group, LLC Professional Services United States v. Greg Lindberg From June 24, 2025 through September 30, 2025 Date Professional Task Description Hours Rate Amount | 38 |
| 842 | Aug. 22, 2025 | Doc. 81, at 43 | MLM | Review and edit revisions to release letter prepared by Steve Wilson. Conferences with JWG re the same. Emails with Steve Wilson, John Bash, John Babcock, Mo Meghji, Ronan Lennon, and Howard Beggs re the same. Emails with Paul Dolman re the same. [. . .] | 38, 54 |
| 843 | Aug. 22, 2025 | Doc. 81, at 79 | Donald Harer | Review and refine notes pertaining to Vista discussions. Research and compile Vista information | 8, 38 |
| 844 | Aug. 22, 2025 | Doc. 81, at 79 | Minesh Patel | Call with Vista and Paladin team to discuss victim eligibility | 8, 38 |
| 845 | Aug. 22, 2025 | Doc. 81, at 79 | Minesh Patel | Summarize key points from call with Vista and related email correspondence | 8, 38 |
| 846 | Aug. 22, 2025 | Doc. 81, at 79 | Paula Sosamon | Call with D Solow (VISTA), D Harer and Patel (PMG) | 8, 38 |
| 847 | Aug. 22, 2025 | Doc. 81, at 79 | Scott Avila | Call with PRA board member re; support for transaction | 23, 24, 25, 28, 30, 36, 38 |
| 848 | Aug. 26, 2025 | Doc. 81, at 44 | MLM | Emails with Don Harer, Paula Sosamon, Alicia Den Beste, Scott Avila, and BDR re excess policyholder information. | 8, 38 |
| 849 | Aug. 26, 2025 | Doc. 81, at 44 | BDR | Email to NOLHGA requesting draft of motion for authorization to release information to Special Master. | 8, 38 |
| 850 | Aug. 26, 2025 | Doc. 81, at 44 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re status conference. | 38 |
| 851 | Aug. 26, 2025 | Doc. 81, at 79 | Paula Sosamon | Follow up with Epiq re: discussion coordination | 38 |
| 852 | Aug. 27, 2025 | Doc. 81, at 44 | BDR | Attention to emails from David McBay and Paul Craig re: potential secondary restitution assets. | 38 |
| 853 | Aug. 27, 2025 | Doc. 81, at 44 | MLM | Emails with Nick Kajon and Constantine Pourakis re status of Clanwilliam closing. Emails with Paul Dolman, Antonina Semyachkova, Zeynep Kocabas, Scott Rothstein, and Eric Leon re the same. | 18, 29, 38 |
| 854 | Aug. 27, 2025 | Doc. 81, at 45 | MLM | Emails with Wes Camden and Caitlin Poe re policyholder personally identifiable information. | 8, 35, 38 |
| 855 | Aug. 27, 2025 | Doc. 81, at 79 | Scott Avila | Call with Goodwin Proctor- regarding secondary restitution asset | 38 |
| 856 | Aug. 28, 2025 | Doc. 81, at 45 | MLM | Review and analyze closing statement provided by Paul Dolman. Emails with JWG and BDR re the same. Emails with Paul Dolman and Antonina Semyachkova re the same. Conference JWG and BDR re the same. Telephone call from John Babcock re the same. | 29, 38 |
| 857 | Aug. 28, 2025 | Doc. 81, at 45 | MLM | Emails with Nick Kajon re status conference. | 38 |
| 858 | Aug. 28, 2025 | Doc. 81, at 80 | Minesh Patel | Call with Epiq and Paladin team to discuss NCIC disbursement process | 35, 38 |
| 859 | Aug. 28, 2025 | Doc. 81, at 80 | Paula Sosamon | Call with Epiq Team, D Harer and Patel (PMG)to discuss NCIC disbursement process and related email correspondence | 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 860 | Aug. 29, 2025 | Doc. 81, at 45 | MLM | Emails with Tony Jones and Luis Llach-Zuniga re Clanwilliam closing issues. Emails with John Babcock re the same. Emails with Paul Dolman and Antonina Semyachkova re the same. Telephone call from John Babcock re the same. Emails with John Babcock re the same. Emails with Don Harer, Scott Avila, Alicia Den Beste, and others at Epiq re the same. | 18, 29, 38 |
| 861 | Aug. 29, 2025 | Doc. 81, at 45 | MLM | Telephone call to Dan Ryan and Taylor Stout re obtaining information from NOLHGA and the North Carolina insurance companies. Conference BDR re the same. [. . .] | 8, 35, 38, 40, 41 |
| 862 | Sept. 2, 2025 | Doc. 81, at 46 | MLM | Video conference with Ronan Lennon, Howard Beggs, Mo Meghji, John Babcock, and Steve Wilson re emergency issues with the forthcoming Clanwilliam closing. Telephone calls with John Babcock re the same. Conferences with JWG re the same. Review February 21, 2025 Share Purchase Agreement with TA Associates. Finalize and execute special master's deed of consent to Clanwilliam transaction. Review various professional fee invoices incurred by Steve Wilson. Revise spreadsheet prepared by John Babcock. Telephone call to Nick Kajon re the same. Telephone call to JWG re the same. | 18, 28, 29, 30, 36, 38, 54 |
| 863 | Sept. 2, 2025 | Doc. 81, at 46 | BDR | Emails re: test wire of funds to Epiq. | 38 |
| 864 | Sept. 3, 2025 | Doc. 81, at 46 | MLM | Further revise special master consent to Clanwilliam transaction based on recent developments. Telephone call to John Babcock re the same. Further analysis re the same. Conferences with JWG re the same. Emails with Wes Camden, Caitlin Poe, and Don Solow re the same. Emails with Nick Kajon, Ronan Lennon, Paul Dolman, Howard Beggs, Antonina Semyachkova, John Babcock, JWG, and BDR. | 18, 28, 29, 30, 35, 36, 38 |
| 865 | Sept. 3, 2025 | Doc. 81, at 46 | JWG | Review of letter from Conservatrix supporting its claim as a Restitution Victim. | 8, 38 |
| 866 | Sept. 3, 2025 | Doc. 81, at 47 | BDR | Email to counsel for NOLHGA re: data protection motion. | 8, 38 |
| 867 | Sept. 4, 2025 | Doc. 81, at 47 | MLM | Continue shepherding Clanwilliam transaction toward closing by communicating with various attorneys, reviewing and analyzing memoranda on tax issues, vetting leakage amounts, and preparing to receive and disburse funds. Emails with Don Harer, Scott Avila, David Elkin, and Minesh Patel re the same. Emails with BDR re the same. Emails with John Babcock re the same. Telephone call from John Babcock re the same. Emails with Ronan Lennon and Steve Wilson re the same. | 18, 28, 29, 30, 36, 38, 54 |
| 868 | Sept. 4, 2025 | Doc. 81, at 48 | BDR | Review and analysis of Waldrep Wall memo to NHC board re: tax liability; conference MLM re: same. | 23, 24, 25, 36, 38 |
| 869 | Sept. 4, 2025 | Doc. 81, at 48 | MLM | Telephone call to Layne Smith re board issues. Draft letter re the same. Emails with Layne Smith and others re the same. | 23, 24, 25, 38 |
| 870 | Sept. 4, 2025 | Doc. 81, at 80 | Donald Harer | Attend to various email correspondence pertaining to Primary Restitution Asset matters | 38 |
| 871 | Sept. 4, 2025 | Doc. 81, at 80 | Donald Harer | Correspond with M3 regarding diligence matters | 1, 2, 7, 38, 50 |
| 872 | Sept. 5, 2025 | Doc. 81, at 48 | MLM | Emails with Ronan Lennon, Steve Wilson, and John Babcock re Clanwilliam leakage amounts. Review additional documents provided by Ronan Lennon re the same. Emails with Nick Kajon on various transaction details. Emails with Paul Dolman, Antonina Semyachkova, and others re the same. | 18, 28, 29, 30, 36, 38, 54 |
| 873 | Sept. 5, 2025 | Doc. 81, at 48 | MLM | Review confidential settlement agreement entered into by ULICO and one of the primary restitution assets. Emails with Hannah Tuttle and others re the same. | 14, 38, 39 |
| 874 | Sept. 8, 2025 | Doc. 81, at 49 | MLM | Review outline and otherwise prepare for upcoming call with Dorsey Whitney LLP and Freshfields US LLP. | 38 |
| 875 | Sept. 8, 2025 | Doc. 81, at 49 | MLM | Emails with Antonina Semyachkova, Paul Dolman, and Zeynep Kocabas re Clanwilliam closing logistics. Emails with Nick Kajon re below. Emails with Alicia Den Beste, Julia Bealler, Don Harer, and JWG re the same. | 18, 29, 38 |
| 876 | Sept. 8, 2025 | Doc. 81, at 49 | MLM | Video conference Hannah Tuttle, Steven Waterman, Allison Kowalski, general counsel for primary restitution asset, Joshua Critchlow, Philip Turpin, Timothy Howard, Steven Matays, Layne Smith, Ian Bushner, Saurabh Puri, JWG, and BDR re process for liquidating primary restitution assets [0.7 hrs]. Follow-up conversation with BDR and JWG re the same [0.3 hrs]. | 28, 30, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 877 | Sept. 8, 2025 | Doc. 81, at 49 | BDR | Call with JWG, MLM, Hannah Tuttle, Steven Waterman, Allison Kowalski, general counsel for primary restitution asset, Joshua Critchlow, Philip Turpin, Timothy Howard, Steven Matays, Layne Smith, Ian Bushner, and Saurabh Puri to discuss sale process for primary restitution asset [0.7] and follow-up conference with JWG and MLM re: same [0.3]. | 28, 30, 38 |
| 878 | Sept. 9, 2025 | Doc. 81, at 49 | MLM | Emails with Antonina Semyachkova, Paul Dolman, and Zeynep Kocabas re test wires, wiring instructions, and other logistical details for Clanwilliam closing. Emails with Nick Kajon re the same. Emails with Alicia Den Beste, Julia Bealler, Don Harer, and JWG re the same. | 18, 29, 38 |
| 879 | Sept. 9, 2025 | Doc. 81, at 49 | MLM | Review email from Bob Alban to Jose Benitez. Conference JWG re the same. Conference call with Tony Jones and Luis Llach-Zuniga re the same. | 38 |
| 880 | Sept. 9, 2025 | Doc. 81, at 50 | BDR | Review and analysis of Bob Alban's communications to ULICO. | 14, 38 |
| 881 | Sept. 10, 2025 | Doc. 81, at 50 | MLM | Further review of draft motions to compel production of personal identifying information prepared by NCICs and NOLHGA. Emails with BDR and JWG re the same. Conference JWG re the same. Emails with Don Harer, Paula Sosamon, Alicia Den Beste, and Scott Avila re the same. Emails with ACW and others re preliminary distribution concerns. Conference with ACW, JWG, and BDR re distributions to excess policyholders. | 8, 35, 38 |
| 882 | Sept. 10, 2025 | Doc. 81, at 50 | MLM | Review emails with Antonina Semyachkova, Zeynep Kocabas, Paul Dolman, Alicia Den Beste, Julia Bealler, and Marthinus Dreyer re payment logistics of Clanwilliam closing. Emails with BDR and JWG re the same. | 18, 29, 38 |
| 883 | Sept. 10, 2025 | Doc. 81, at 50 | BDR | Conference JWG, MLM, and ACW re: process for disbursing funds to NCIC excess policyholders. | 8, 35, 38 |
| 884 | Sept. 10, 2025 | Doc. 81, at 51 | MLM | Emails with Dan Ryan, Ben Bain-Creed, Julia Park, Lyndie Freeman, Taylor Stout, JWG, and BDR re NOLHGA. Conferences with BDR and JWG re the same. | 8, 38, 40, 41 |
| 885 | Sept. 10, 2025 | Doc. 81, at 81 | Donald Harer | Review of draft court motion/order relating to excess policy holder info requirements. Correspond with Epiq regarding same. | 38 |
| 886 | Sept. 11, 2025 | Doc. 81, at 51 | MLM | Review draft Deed of Notification of the Termination of the Trust for the Clanwilliam Group. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. Emails with John Babcock re the same. | 18, 29, 38, 54 |
| 887 | Sept. 11, 2025 | Doc. 81, at 52 | MLM | Telephone call from John Babcock re Paradigm Park funds, income tax issues, termination of Clanwilliam trust, and related issues. | 16, 18, 20, 29, 38, 54 |
| 888 | Sept. 11, 2025 | Doc. 81, at 81 | Donald Harer | Attend to various email correspondence pertaining to Primary Restitution Asset board matters | 23, 24, 25, 38 |
| 889 | Sept. 12, 2025 | Doc. 81, at 52 | MLM | Emails with Antonina Semyachkova, Paul Dolman, Zeynep Kocabas, Ben Wylie, Marthinus Dreyer, Alicia Den Beste, and Julia Bealler re Clanwilliam closing wire transfers. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. Conferences with BDR re accounting and distribution methodolgies. Conferences with JWG and BDR re the same. Emails with Don Solow re the same. Review analysis prepared by Don Harer re the same. Develop spreadsheet of distribution flow from Clanwilliam proceeds. Emails with Don Harer, Scott Avila, Minesh Patel, Andrew Cowie, David Elkin, JWG, and BDR re the same. | 18, 29, 38 |
| 890 | Sept. 12, 2025 | Doc. 81, at 52 | MLM | Emails with JWG and BDR re expenses incurred by Steve Wilson in administering the Clanwilliam trust. Emails with Steve Wilson and John Babcock re the same. Telephone call to Steve Wilson re the same. | 18, 29, 38, 54 |
| 891 | Sept. 12, 2025 | Doc. 81, at 53 | MLM | Telephone call from Jim Lanik re Prairie Eye & Laser Management. Conference JWG and BDR re the same. | 38 |
| 892 | Sept. 12, 2025 | Doc. 81, at 53 | MLM | Emails with Wes Camden, Caitlin Poe, Joel Glover, Jason Cowley, JWG, and BDR re consent motion to compel disclosure of information and protective order. | 35, 38 |
| 893 | Sept. 12, 2025 | Doc. 81, at 82 | Donald Harer | Attend to various email correspondence pertaining to Primary Restitution Asset board matters | 23, 24, 25, 38 |
| 894 | Sept. 15, 2025 | Doc. 81, at 53 | JWG | Review email exchanges with Don Harer at Paladin and Alicia at EIPQ re accounting for Clanwilliam funds. | 18, 29, 38 |
| 895 | Sept. 16, 2025 | Doc. 81, at 53 | MLM | Emails with Cassidy Willard and John Babcock re termination of Clanwilliam trust. | 18, 29, 38, 54 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 896 | Sept. 16, 2025 | Doc. 81, at 54 | BDR | Revision to Escrow Agreement for Irish tax holdback; email to JWG and MLM re: same. | 29, 38 |
| 897 | Sept. 16, 2025 | Doc. 81, at 54 | JWG | Review Revisions to Escrow Agreement (Clanwilliam tax escrow) | 18, 29, 38 |
| 898 | Sept. 16, 2025 | Doc. 81, at 54 | BDR | Email to Cassidy Willard with revisions to escrow agreement. | 29, 38 |
| 899 | Sept. 16, 2025 | Doc. 81, at 54 | MLM | Telephone call from Wes Camden re draft motion to compel disclosure of information and protective order. Review additional edits from NOLHGA re the same. Review additional edits from the North Carolina Insurance Companies re the same. Emails with Wes Camden, Caitlin Poe, JWG, and BDR re the same. | 8, 35, 38 |
| 900 | Sept. 16, 2025 | Doc. 81, at 54 | BDR | Review and analysis of NOLHGA and NCIC revisions to Consent Motion for Protective Order. | 8, 35, 38 |
| 901 | Sept. 16, 2025 | Doc. 81, at 54 | JWG | Review emails re Revised Draft Consent Motion and Protective Order - Uncovered Policyholder Data | 8, 38 |
| 902 | Sept. 16, 2025 | Doc. 81, at 82 | Donald Harer | Attend to various email correspondence pertaining to Bermuda analytics | 37, 38 |
| 903 | Sept. 17, 2025 | Doc. 81, at 55 | MLM | Telephone call from Matt Wolper re prospects of paying in full losses of victims who had policies through Bermudan insurance companies. | 8, 37, 38 |
| 904 | Sept. 17, 2025 | Doc. 81, at 55 | MLM | Review additional edits made by Wes Camden to the draft motion for order compelling production of information and protective order. Emails with Wes Camden, Caitlin Poe, JWG, and BDR re the same. [. . .] Brief conference with JWG re the same. | 35, 38 |
| 905 | Sept. 17, 2025 | Doc. 81, at 55 | BDR | Review of NCIC revisions to Consent Motion for Protective Order. | 35, 38 |
| 906 | Sept. 17, 2025 | Doc. 81, at 82 | Donald Harer | Call with M3 regarding CWG sales details and tax matters | 1, 2, 7, 38, 50 |
| 907 | Sept. 18, 2025 | Doc. 81, at 56 | JWG | Confirming telephone call with EPIQ re Wire Transfer Requests. | 38 |
| 908 | Sept. 18, 2025 | Doc. 81, at 82 | Donald Harer | Address wire transfer process. Calls with Epiq and Grier | 38 |
| 909 | Sept. 18, 2025 | Doc. 81, at 82 | Donald Harer | Address wire transfer process. Correspond with Epiq. Call with K. Tran | 38 |
| 910 | Sept. 18, 2025 | Doc. 81, at 82 | Donald Harer | Attend to various email correspondence pertaining to GEL tax matters | 38 |
| 911 | Sept. 19, 2025 | Doc. 81, at 83 | Donald Harer | Attend to various email correspondence pertaining to GEL tax matters | 38 |
| 912 | Sept. 22, 2025 | Doc. 81, at 56 | BDR | Call with Don Harer and MLM re: conversation with NCIC re: policyholder information. | 8, 35, 38 |
| 913 | Sept. 22, 2025 | Doc. 81, at 56 | BDR | Conference MLM re: conversations between Paladin and NCIC liquidators about excess policyholder data. | 8, 28, 30, 35, 38 |
| 914 | Sept. 22, 2025 | Doc. 81, at 56 | MLM | Telephone calls from Don Harer re communications with Mike Dinius and John Murphy. Conferences with BDR re the same. Emails with Wes Camden, Caitlin Poe, JWG, and BDR re the same. | 35, 38 |
| 915 | Sept. 23, 2025 | Doc. 81, at 83 | Andrew Cowie | Call with D. Harer in preparation for call with Deloitte on distribution issues. | 38 |
| 916 | Sept. 23, 2025 | Doc. 81, at 83 | Donald Harer | Review GEL information access issue. Correspond with Primary Restitution Asset to investigate. | 38 |
| 917 | Sept. 24, 2025 | Doc. 81, at 56 | MLM | Emails with Wes Camden, Caitlin Poe, Don Harer, JWG, and BDR re information required to make distributions to NCICs policyholders with uncovered liabilities. Telephone call to Don Harer re the same. | 8, 35, 38 |
| 918 | Sept. 24, 2025 | Doc. 81, at 57 | JWG | Review memo from B. Rhodes re receiver reports from Bill Janvier. | 35, 38 |
| 919 | Sept. 26, 2025 | Doc. 81, at 84 | Scott Avila | Call CEO of PRA re: status update | 38 |
| 920 | Sept. 29, 2025 | Doc. 81, at 58 | MLM | Emails with Luis Llach-Zuniga re ULICO potential distributions from primary restitution assets. | 14, 38 |
| 921 | Sept. 29, 2025 | Doc. 81, at 58 | MLM | Video conference with John Murphy, Mike Dinius, Wes Camden, Caitlin Poe, BDR, ACW, and JWG re distributions to policyholders with uncovered liabilities. | 8, 35, 38 |
| 922 | Sept. 29, 2025 | Doc. 81, at 58 | ACW | Participated in conference call with JWG, MLM, BDR, D.Harer, and others re: motion regarding consent order for turnover of information relative to NC victims. | 8, 38 |
| 923 | Sept. 29, 2025 | Doc. 81, at 58 | BDR | Call with JWG, MLM, ACW, Wes Camden, Caitlin Poe, John Murphy, Mike Dinius, and Don Harer to discuss information requirements in order to distribute funds to excess policyholders. | 8, 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 924 | Sept. 29, 2025 | Doc. 81, at 84 | Donald Harer | Prepare for an participate in call with NCIC, counsel, and SM to address disbursements | 35, 38 |
| 925 | Sept. 29, 2025 | Doc. 81, at 84 | Donald Harer | Review of correspondence pertaining to LTIP | 38 |
| 926 | Sept. 30, 2025 | Doc. 81, at 58 | MLM | Emails with Tony Jones and Luis Llach-Zuniga re payment priority issues. | 38 |
| 927 | Sept. 30, 2025 | Doc. 81, at 58 | MLM | Telephone call from Bill Janvier re status of special master's efforts. | 38 |
| 928 | Sept. 30, 2025 | Doc. 81, at 58 | MLM | Telephone call from John Babcock re escrow agreement and tax issues. Quantity Subtotal 520.5 Services Subtotal $207,752.00 | 29, 38 |
| 929 | Oct. 1, 2025 | Doc. 95, at 10 | BDR | Conference JWG and MLM re: Prairie Eye Care Management bankruptcy and Clanwilliam proceeds distribution. | 18, 29, 38 |
| 930 | Oct. 1, 2025 | Doc. 95, at 10 | MLM | Telephone call from Layne Smith re status of liquidation of primary restitution assets. | 28, 30, 38 |
| 931 | Oct. 3, 2025 | Doc. 95, at 12 | BDR | Email to Hillary Stroud re: uploading proposed order. | 38 |
| 932 | Oct. 3, 2025 | Doc. 95, at 37 | Andrew Cowie | Set up Monday meeting with M3 and counsel in regard to tax issue. | 1, 2, 7, 38, 50 |
| 933 | Oct. 6, 2025 | Doc. 95, at 12 | BDR | Verify no changes to the escrow agreement; forward signed agreement to Waldrep firm; conference MLM re: same. | 29, 38 |
| 934 | Oct. 6, 2025 | Doc. 95, at 12 | MLM | Review memorandum provided by counsel for Conservatrix in support of victim qualification theory. Review memorandum from Paladin re the same. Follow-up research re the same. Emails with Jeff Oleynik, Kate Giduz, and JWG re the same. | 8, 38 |
| 935 | Oct. 6, 2025 | Doc. 95, at 12 | MLM | Video conference with Matt Manning, Mo Meghji, John Babcock, Don Harer, Andrew Cowie re potential income tax issues at the operating company level [0.4 hrs]. Follow-up conference with BDR and JWG re the same [0.2 hrs]. | 38 |
| 936 | Oct. 6, 2025 | Doc. 95, at 12 | BDR | Conference MLM and JWG re: MLM call with M3 and Paladin about tax issues. | 1, 2, 7, 38, 50 |
| 937 | Oct. 6, 2025 | Doc. 95, at 37 | Donald Harer | Call with NCIC, NHC, and Paladin to discuss tax filing issues. Follow-up | 35, 36, 38 |
| 938 | Oct. 7, 2025 | Doc. 95, at 13 | MLM | Emails with Cassidy Willard, John Babcock, JWG, and BDR re escrow fund for Irish income tax liabilities. | 29, 38 |
| 939 | Oct. 7, 2025 | Doc. 95, at 13 | BDR | Prepare W9; conference JWG; email to Cassidy Willard. | 38 |
| 940 | Oct. 7, 2025 | Doc. 95, at 13 | BDR | Communications with Cassidy Willard re: EIN; research re: tax classification of Special Master. | 38 |
| 941 | Oct. 7, 2025 | Doc. 95, at 13 | MLM | Research re SAC and NHC income tax reporting and potential liability. Emails with John Babcock, Matt Manning, Mo Meghji, Don Harer, and Andrew Cowie re the same. Revise draft letter to Greg Lindberg re tax information. | 36, 38 |
| 942 | Oct. 7, 2025 | Doc. 95, at 13 | BDR | Emails to Epiq re: bank statements. | 38 |
| 943 | Oct. 8, 2025 | Doc. 95, at 14 | MLM | Review various documents provided by attorneys at Freshfields US LLP re special master's interest in a certain primary restitution assets. Conferences with JWG and BDR re the same. Emails with JWG and BDR re the same. Telephone call to Layne Smith re the same. Draft agreement between special master and Greg Lindberg re potential tax distributions. | 38 |
| 944 | Oct. 8, 2025 | Doc. 95, at 14 | BDR | Review of banking documents for Clanwilliam Irish tax escrow account; conference MLM re: same; email to Waldrep Wall re: same. | 18, 29, 38 |
| 945 | Oct. 9, 2025 | Doc. 95, at 14 | MLM | Conference JWG re tax distribution issue relating to one of the primary restitution assets. Emails with Callum Riseley, Ian Bushner, Steven Matays, Joshua Critchlow, Timothy Howard, Hannah Tuttle, Steve Waterman, Layne Smith, JWG, and others re the same. | 38 |
| 946 | Oct. 10, 2025 | Doc. 95, at 14 | MLM | Prepare for call with Jeff Oleynik, Kate Giduz, and JWG re Conservatrix. Participate on the same. Emails with Jeff Oleynik, Kate Giduz, BDR, and JWG re the same. | 38 |
| 947 | Oct. 13, 2025 | Doc. 95, at 38 | Scott Avila | Call with John H re: Board call | 23, 24, 25, 38 |
| 948 | Oct. 13, 2025 | Doc. 95, at 53 | | Donald Harer Airfare 10/9/25 - Round trip: Chicago-Charlotte. Dpt/Rtn: 10/14-10/15. $594.98 Meetings with NOHLGA in Charlotte | 38 |
| 949 | Oct. 14, 2025 | Doc. 95, at 15 | BDR | Communications re: meeting with NOLHGA. | 8, 38 |
| 950 | Oct. 14, 2025 | Doc. 95, at 15 | JWG | Email to D. Harer re disbursement of tax escrow funds to Waldrep escrow account. | 29, 38 |
| 951 | Oct. 14, 2025 | Doc. 95, at 38 | Donald Harer | Preparation of distribution direction letter to Epiq | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 952 | Oct. 14, 2025 | Doc. 95, at 38 | Donald Harer | Travel from Chicago to Charlotte for NOHLGA meeting | 38 |
| 953 | Oct. 15, 2025 | Doc. 95, at 15 | BDR | Preparation for meeting with NOLHGA. | 8, 38 |
| 954 | Oct. 15, 2025 | Doc. 95, at 15 | JWG | Attend meeting with DOJ, NOLHGA & Paladin re case issues. | 8, 38, 40, 41 |
| 955 | Oct. 15, 2025 | Doc. 95, at 15 | MLM | Conference with Joel Glover, Jason Cowley, Kate Wade, Bill O'Sullivan, Brad Taman, John Colpean, Dan Ryan, Ben Bain-Creed, Scott Avila, Don Harer, JWG, and BDR re NOLHGA issues. | 8, 38, 40, 41 |
| 956 | Oct. 15, 2025 | Doc. 95, at 15 | BDR | Travel to/from and attend meeting with JWG, MLM, Jason Cowley, Bill O'Sullivan, Katie Wade, Joel Glover, Brad Taman, John Colpean, Scott Avila, Don Harer, Dan Ryan, and Ben Bain- Creed. | 38, 40, 41 |
| 957 | Oct. 15, 2025 | Doc. 95, at 16 | MLM | Review email from Joel Glover re excess policyholder data. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. Telephone call and email to Wes Camden re the same. | 8, 35, 38 |
| 958 | Oct. 15, 2025 | Doc. 95, at 16 | JWG | Note to file re meeting today with NOLHGA. | 8, 38 |
| 959 | Oct. 15, 2025 | Doc. 95, at 38 | Scott Avila | Meeting NOHGLA, DOJ and GWM | 38, 40, 41 |
| 960 | Oct. 15, 2025 | Doc. 95, at 38 | Donald Harer | Meeting with NOLHGA, DOJ, and special master | 8, 38, 40, 41 |
| 961 | Oct. 15, 2025 | Doc. 95, at 38 | Donald Harer | Travel from Charlotte to Chicago for NOHLGA meeting | 38 |
| 962 | Oct. 15, 2025 | Doc. 95, at 38 | Donald Harer | Continued travel from Charlotte to Chicago for NOHLGA meeting | 38 |
| 963 | Oct. 15, 2025 | Doc. 95, at 53 | | Donald Harer Meals 10/15/25 - Breakfast with S Avila. Trip to Charlotte for NOLHGA $69.13 meeting. | 8, 38 |
| 964 | Oct. 16, 2025 | Doc. 95, at 16 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re civil litigation by Greg Lindberg challenging whether any money is owed to ULICO. Review recent pleadings re the same. | 14, 38 |
| 965 | Oct. 16, 2025 | Doc. 95, at 39 | Donald Harer | Attend to various email correspondence regarding Bermuda and ULICO matters | 14, 37, 38 |
| 966 | Oct. 17, 2025 | Doc. 95, at 16 | BDR | Prepare "cooperation tracking" document; conference MLM re: discussions with ULICO. | 14, 38, 42 |
| 967 | Oct. 17, 2025 | Doc. 95, at 16 | MLM | Prepare for call with attorneys for ULICO. Video conference with Chris Browning and Luis Llach- Zuniga re status of pending litigation matters and asset liquidation afforts. Follow-up discussion with BDR re the same. | 14, 28, 30, 38 |
| 968 | Oct. 17, 2025 | Doc. 95, at 17 | BDR | Conference JWG and MLM re: discussions with counsel for Bermuda Insurance Cos. | 37, 38 |
| 969 | Oct. 17, 2025 | Doc. 95, at 17 | MLM | Video conference with Nick Kajon re issues with selling one of the primary restitution assets. Follow-up conference with JWG and BDR re the same. | 28, 30, 38 |
| 970 | Oct. 20, 2025 | Doc. 95, at 17 | MLM | Create spreadsheet itemizing principal amounts owed under affiliated debt instruments. Review documents re the same. Emails with Nick Kajon re the same. Emails with David Elkin and Don Harer re the same. Conference BDR re the same. | 38 |
| 971 | Oct. 20, 2025 | Doc. 95, at 39 | Donald Harer | Correspond with M. Martinez (Grier) about access to NCIC shared drive information | 35, 38 |
| 972 | Oct. 22, 2025 | Doc. 95, at 18 | MLM | Conference JWG re various obstacles with liquidating various primary restitution assets. Telephone call from counsel for the primary restitution assets re the same. | 28, 30, 38 |
| 973 | Oct. 22, 2025 | Doc. 95, at 18 | MLM | Telephone call to Jason Cowley re status of data exchange. Emails with Jason Cowley re the same. | 38 |
| 974 | Oct. 22, 2025 | Doc. 95, at 18 | MLM | Review emails from John Babcock re Irish income tax concerns. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. Conference JWG re the same. Emails with Cassidy Willard and John Babcock re the same. | 38 |
| 975 | Oct. 22, 2025 | Doc. 95, at 18 | BDR | Conference MLM re: call with NCICs about policyholder data. | 8, 35, 38 |
| 976 | Oct. 22, 2025 | Doc. 95, at 18 | MLM | Video conference with Wes Camden re policyholders with uncovered losses and related issues. Follow-up conference with BDR re the same. Emails with Don Harer, Scott Avila, JWG, ACW, and BDR re the same. | 8, 35, 38 |
| 977 | Oct. 23, 2025 | Doc. 95, at 18 | MLM | Emails with Wes Camden re distribution of Clanwilliam proceeds. | 18, 29, 35, 38 |
| 978 | Oct. 23, 2025 | Doc. 95, at 39 | Scott Avila | Call with Ryan M re: information request | 38 |
| 979 | Oct. 24, 2025 | Doc. 95, at 40 | Donald Harer | Call with NHC board regarding asset divestiture opportunities. | 23, 24, 25, 36, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 980 | Oct. 27, 2025 | Doc. 95, at 18 | BDR | Review AUSA comments to draft status report. | 38, 40, 41 |
| 981 | Oct. 27, 2025 | Doc. 95, at 19 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re asset liquidation issues. Emails with Don Harer, Scott Avila, Andrew Cowie, David Elkin, JWG, and BDR re the same. Conference JWG re the same. Emails with Layne Smith, Steve Waterman, Ian Bushner, and JWG re the same. | 28, 30, 38 |
| 982 | Oct. 27, 2025 | Doc. 95, at 40 | David Elkin | Call with A. Cowie to discuss IALA amounts and Waterfall | 38 |
| 983 | Oct. 27, 2025 | Doc. 95, at 40 | Scott Avila | Review and respond to various emails re: ULICO Judgment and PRA | 14, 38 |
| 984 | Oct. 28, 2025 | Doc. 95, at 19 | MLM | Video conference with Luis Llach-Zuniga and Tony Jones re loss calculations and distribution waterfall issues. Review emails from various counsel re the same. Conferences with JWG re the same. Video conference wit Layne Smith, Steve Waterman, Ian Bushner, JWG and others re the same. | 8, 15, 38 |
| 985 | Oct. 30, 2025 | Doc. 95, at 19 | MLM | Emails with Alicia Ben Beste, Kathryn Tran, Tim Conklin, Andrew Cowie, Don Harer, Scott Avila, Paula Sosamon, and ACW re uncovered policyholder distributions. | 8, 38 |
| 986 | Oct. 30, 2025 | Doc. 95, at 19 | MLM | Emails with John Babcock, Cassidy Willard, JWG, and BDR re 2022 Irish income tax returns for Triton Financial. | 18, 29, 38 |
| 987 | Oct. 30, 2025 | Doc. 95, at 20 | MLM | Prepare for call with Nick Kajon re sale of primary restitution assets. Participate on the same. Review email from Nick Kajon to Steve Waterman re the same. Emails with Layne Smith, Ian Bushner, and Steve Waterman re the same. | 28, 30, 38 |
| 988 | Oct. 30, 2025 | Doc. 95, at 20 | BDR | Email responding to inquiries from CBL policyholders. | 8, 38 |
| 989 | Oct. 30, 2025 | Doc. 95, at 20 | BDR | Revisions to Second Fee Application. | 38 |
| 990 | Oct. 31, 2025 | Doc. 95, at 20 | MLM | Emails with Luis Llach-Zuniga, Tony Jones, Ian Bushner, Layne Smith, Steve Waterman, Andy Gladstein, JWG, and BDR re liquidation of primary restitution assets. Conference BDR re the same. | 28, 30, 38 |
| 991 | Oct. 31, 2025 | Doc. 95, at 20 | BDR | Review of communications from Waldrep firm re: Parrott v. Yeh and Blue Daffodil case. | 38 |
| 992 | Oct. 31, 2025 | Doc. 95, at 21 | MLM | Emails with Cassidy Willard, Jim Lanik, and BDR re Parrott v. Yeh. | 38 |
| 993 | Nov. 3, 2025 | Doc. 95, at 21 | MLM | Conference JWG re status of negotiations with Bermuda insurance companies concerning releases to facilitate liquidations of primary restitution assets. | 28, 30, 37, 38 |
| 994 | Nov. 4, 2025 | Doc. 95, at 21 | JWG | Review call agenda re distributions to Excess Policy Holders | 38 |
| 995 | Nov. 4, 2025 | Doc. 95, at 21 | MLM | Emails with Alexandria Ku, Ian Bushner, and others re income tax issues related to liquidation of primary restitution assets and other related concerns. | 28, 30, 38 |
| 996 | Nov. 4, 2025 | Doc. 95, at 21 | MLM | Emails with Cassidy Willard re Irish income tax excrow account statement. Emails with BDR re the same. | 38 |
| 997 | Nov. 4, 2025 | Doc. 95, at 21 | JWG | Conference Epiq, Paladin, and NC Insurance Cos re distributions to unpaid policy holders. | 38 |
| 998 | Nov. 4, 2025 | Doc. 95, at 21 | MLM | Video conference with Mike Dinius, John Murphy, Wes Camden, Kathryn Tran, Alicia Den Beste, Don Harer, Paula Sosamon, JWG, and ACW re policyholder distribution mechanics and related issues. | 8, 35, 38 |
| 999 | Nov. 4, 2025 | Doc. 95, at 22 | MLM | Video conference with Tony Jones and Luis Llach-Zuniga re liquidation of primary restitution assets. | 28, 30, 38 |
| 1000 | Nov. 4, 2025 | Doc. 95, at 22 | ACW | Participate in conference with JWG, MLM, Epiq, Paladin, and NC Insurance Companies re: procedures and other issues as to distributions to unpaid policyholders. | 8, 38 |
| 1001 | Nov. 4, 2025 | Doc. 95, at 41 | Paula Sosamon | Call with EPIC, Greer, AMR and Paladin team's to discuss NC disbursements | 38 |
| 1002 | Nov. 4, 2025 | Doc. 95, at 41 | Paula Sosamon | Review of meeting agenda and dataset in preparation for the meeting with counsel, Epiq and AMR | 38 |
| 1003 | Nov. 4, 2025 | Doc. 95, at 42 | Donald Harer | Draft agenda for disbursements call with NCIC, WC, Epiq, and SM | 35, 38 |
| 1004 | Nov. 4, 2025 | Doc. 95, at 42 | Donald Harer | Participate in call with Special Master, William Mullens, Epiq, and Paladin team to develop and coordinate process to distribute excess policy holder payments. | 38 |
| 1005 | Nov. 5, 2025 | Doc. 95, at 22 | ACW | Send emails to District Court Clerk's Office re: possibility of turning over unclaimed funds to court unclaimed funds account. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1006 | Nov. 5, 2025 | Doc. 95, at 22 | MLM | Telephone call from Kathryn Tran re cash management issues. Research re the same. Conference BDR re the same. Emails with Don Harer, Scott Avila, Kathryn Tran, Tim Conklin, JWG, and BDR re the same. Draft transfer request letter from main cash account to professional fee account. | 38 |
| 1007 | Nov. 6, 2025 | Doc. 95, at 22 | MLM | Emails with JWG and BDR re cash management issues and outstanding administrative expenses. [. . .] Review historical documents re the same. Conferences with JWG and BDR re the same. Telephone call to Dan Ryan re the same and re victim loss calculations. Telephone call to Don Harer re the same. | 8, 15, 38, 40, 41 |
| 1008 | Nov. 6, 2025 | Doc. 95, at 23 | MLM | Emails with Tony Jones and Luis Llach-Zuniga re loss calculations. | 8, 15, 38 |
| 1009 | Nov. 6, 2025 | Doc. 95, at 23 | MLM | Video conference (I participated audio only) with Steve Waterman, Ian Bushner, Andy Gladstein, and Madlyn Primoff re sale of primary restitution assets. | 28, 30, 38 |
| 1010 | Nov. 7, 2025 | Doc. 95, at 43 | David Elkin | Review new DOJ materials regarding Ulico and Agera | 14, 38, 40, 41 |
| 1011 | Nov. 7, 2025 | Doc. 95, at 43 | Andrew Cowie | Analysis of documents provided by DOJ on asset vs. policyholder liabilities for damages. | 8, 38, 40, 41 |
| 1012 | Nov. 10, 2025 | Doc. 95, at 23 | MLM | Left message with Wes Camden re policyholder distributions and liquidation of primary restitution assets. Emails with Wes Camden re the same. | 8, 28, 30, 35, 38 |
| 1013 | Nov. 10, 2025 | Doc. 95, at 23 | MLM | Retrieve and conduct preliminary review of information provided by NOLHGA. Emails with Jason Cowley and Joel Glover re the same. Emails with BDR re the same. Emails with Andrew Cowie and others at Paladin re the same. | 8, 38 |
| 1014 | Nov. 12, 2025 | Doc. 95, at 24 | JWG | Review email from Conservatrix re its response to follow up questions from Special Master | 38 |
| 1015 | Nov. 12, 2025 | Doc. 95, at 24 | BDR | Conference MLM re: (1) discussions with ULICO re: preferred equity in primary restitution asset and (2) discussions re: Paradigm funds. | 14, 16, 20, 38 |
| 1016 | Nov. 12, 2025 | Doc. 95, at 24 | MLM | Review and analyze summary from Luis Llach- Zuniga re transferability of ULICO's preferred equity. Conference BDR re the same. Emails with Luis Llach-Zuniga and Tony Jones re the same. | 14, 38 |
| 1017 | Nov. 13, 2025 | Doc. 95, at 25 | MLM | Emails with Wes Camden and ACW re distributions to policyholders re uncovered liabilities. Conference(s) with ACW (and BDR) re the same. Emails with Andrew Cowie, Don Harer, Paula Sosamon, and Scott Avila re the same. Emails with JWG, BDR, and ACW re the same. Review detail from Epiq re the same. | 8, 35, 38 |
| 1018 | Nov. 13, 2025 | Doc. 95, at 25 | MLM | Emails with Philip Turpin, Steven Matays, Joshue Critchlow, Tim Howard, Hannah Tuttle, Steve Waterman, and Layne Smith re primary restitution asset tax issues. | 38 |
| 1019 | Nov. 14, 2025 | Doc. 95, at 25 | MLM | Review and analyze materials provided by Freshfields relating to pending civil litigation potentially affecting asset liquidations. Follow-up research re the same. | 28, 30, 38 |
| 1020 | Nov. 17, 2025 | Doc. 95, at 25 | JWG | Review email from John Babcock re SAC Tax Compliance | 36, 38 |
| 1021 | Nov. 17, 2025 | Doc. 95, at 25 | MLM | Conference JWG re issues with liquidating primary restitution assets. Continuing drafting email to Madlyn Primoff and others re the same. Emails with BDR and JWG re the same. | 28, 30, 38 |
| 1022 | Nov. 17, 2025 | Doc. 95, at 26 | MLM | Telephone call to John Babcock re liquidation of primary restitution assets, tax issues, and status of trusts. | 28, 30, 38 |
| 1023 | Nov. 17, 2025 | Doc. 95, at 45 | Scott Avila | Review and respond to tax information sent by John Babcock | 38 |
| 1024 | Nov. 18, 2025 | Doc. 95, at 26 | MLM | Return telephone call to counsel for one of the primary restitution assets re criminal procedure and sale issues. Follow-up conference with JWG re the same. | 28, 30, 38 |
| 1025 | Nov. 18, 2025 | Doc. 95, at 26 | MLM | Emails with Nick Kajon re status of liquidating certain primary restitution assets. Follow-up conference with JWG re the same. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. | 28, 30, 38 |
| 1026 | Nov. 18, 2025 | Doc. 95, at 45 | Minesh M Patel | Update diligence questions and information request list related to Vista and related email correspondence | 8, 38 |
| 1027 | Nov. 19, 2025 | Doc. 95, at 46 | Donald Harer | Review tax related correspondence. Prepare for call with NHC and SM | 36, 38 |
| 1028 | Nov. 24, 2025 | Doc. 95, at 26 | MLM | Conference call with Steve Wilson and John Babcock re trust issues. | 38, 54 |
| 1029 | Nov. 24, 2025 | Doc. 95, at 26 | BDR | Conference MLM re: discussions with NHC re: tax issues. | 36, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1030 | Nov. 24, 2025 | Doc. 95, at 46 | Paula Sosamon | Draft of address change tracker and correspondence with Epiq of the same | 38 |
| 1031 | Nov. 25, 2025 | Doc. 95, at 27 | MLM | Conference call from Jason Cowley and Eric Au re status update. | 38 |
| 1032 | Nov. 25, 2025 | Doc. 95, at 27 | BDR | Conference MLM re: discussions with NOLHGA about restitution methodology. | 8, 15, 38 |
| 1033 | Nov. 26, 2025 | Doc. 95, at 27 | MLM | [. . .] Conferences and emails with BDR and JWG re the same. Emails with Dan Ryan, Ben Bain- Creed, Don Harer, and Scott Avila re the same. [. . .] | 29, 38, 40, 41 |
| 1034 | Dec. 1, 2025 | Doc. 95, at 27 | MLM | Conferences with JWG, BDR, and ACW re distributions to policyholders with uncovered liabilities and related restitution issues. Review files for information on the same. Review ACW's revisions to draft letter to policyholders with uncovered liabilities for whom we are missing tax identification numbers. Emails with ACW, JWG, and BDR re the same. Emails with Wes Camden, Caitlin Poe, and Lauren Fussell re the same. Emails with Kathryn Tran, Alicia Den Beste, Don Harer, Paula Sosamon, ACW, JWG, and BDR re the same. | 8, 15, 28, 30, 35, 38 |
| 1035 | Dec. 1, 2025 | Doc. 95, at 27 | ACW | Reviewed letter requesting TINs drafted by Epiq and prepared revised version of same; circulated to JWG, MLM & BDR for comments; brief conference with BDR re: edits to letter; made final review and edits and emailed revised letter to Epiq. | 38 |
| 1036 | Dec. 1, 2025 | Doc. 95, at 28 | BDR | Prepare correspondence to Epiq re: Steve Wilson release. | 38, 54 |
| 1037 | Dec. 1, 2025 | Doc. 95, at 28 | MLM | Emails with Nick Kajon re sale of primary restitution assets. Emails with Don Harer and Scott Avila re the same. Follow-up research re the same. | 28, 30, 38 |
| 1038 | Dec. 2, 2025 | Doc. 95, at 28 | BDR | Review communications from Epiq re: excess policyholder database changes. | 8, 38 |
| 1039 | Dec. 2, 2025 | Doc. 95, at 28 | MLM | Research re Paradigm Park funds. Emails with Don Harer, Scott Avila, Paula Sosamon, Ben Bain-Creed, Dan Ryan, JWG, and BDR re the same. | 16, 20, 38, 40, 41 |
| 1040 | Dec. 2, 2025 | Doc. 95, at 47 | Paula Sosamon | Discussions with K Tran (Epiq) and A Cowie (PMG) re: disbursement file and AMRs latest version | 38 |
| 1041 | Dec. 2, 2025 | Doc. 95, at 47 | Paula Sosamon | Meeting with AMR, Epic and A Cowie to align on dataset count and amounts | 38 |
| 1042 | Dec. 2, 2025 | Doc. 95, at 47 | Scott Avila | Call with RPC special board committee | 23, 24, 25, 38 |
| 1043 | Dec. 2, 2025 | Doc. 95, at 47 | Scott Avila | Follow up call with RPC special board committee | 23, 24, 25, 38 |
| 1044 | Dec. 3, 2025 | Doc. 95, at 28 | BDR | Review of revisions to Paradigm funds agreement and communications re: same. | 16, 20, 38 |
| 1045 | Dec. 3, 2025 | Doc. 95, at 28 | ACW | Reviewed MLM's comments on draft memorandum to enclose with distributions and FAQs; made additional edits to both documents. | 38 |
| 1046 | Dec. 3, 2025 | Doc. 95, at 29 | MLM | Telephone call from Vicki Parrot re Prairie E&L Management, LLC tax issues. | 38 |
| 1047 | Dec. 3, 2025 | Doc. 95, at 29 | ACW | Made final edits to cover memo for distribution checks; emailed memo to Epiq and Paladin. | 38 |
| 1048 | Dec. 3, 2025 | Doc. 95, at 29 | ACW | Made additional edits to draft FAQs; emailed draft FAQs to Epiq and Paladin. | 38 |
| 1049 | Dec. 4, 2025 | Doc. 95, at 48 | Paula Sosamon | Various correspondence with Epiq re: policy holder disbursement | 38 |
| 1050 | Dec. 4, 2025 | Doc. 95, at 48 | Minesh M Patel | Review diligence questions related to Conservatrix from Special Master and related email correspondence | 38 |
| 1051 | Dec. 5, 2025 | Doc. 95, at 30 | MLM | Video conference with Tony Jones and Luis Llach-Zuniga re status of liquidation efforts. | 28, 30, 38 |
| 1052 | Dec. 8, 2025 | Doc. 95, at 30 | MLM | Emails with John Babcock and Cassidy Willard re potential liquidations of certain SACs. Emails with JWG and BDR re the same. Emails with Don Harer and Scott Avila re the same. | 28, 30, 36, 38 |
| 1053 | Dec. 8, 2025 | Doc. 95, at 30 | BDR | Review communications from Epiq re: excess policyholder distributions. | 8, 38 |
| 1054 | Dec. 8, 2025 | Doc. 95, at 30 | BDR | Review communications from NHC counsel re: buyers requesting Special Master letter of approval. | 27, 28, 36, 38 |
| 1055 | Dec. 8, 2025 | Doc. 95, at 30 | MLM | Emails with ACW re policyholder distribution issues. Emails with Wes Camden and ACW re the same. | 8, 35, 38 |
| 1056 | Dec. 8, 2025 | Doc. 95, at 30 | MLM | Emails with Wes Camden and ACW re disclosure of claimant names, addresses, and claim amounts. Research re the same. Emails with Alicia Den Beste, Kathryn Tran, Tim Conklin, Scott Avila, Don Harer, Paula Sosamon, JWG, BDR, and ACW re the same. | 8, 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1057 | Dec. 8, 2025 | Doc. 95, at 49 | Paula Sosamon | Various correspondence with AMR and NOBLE re: amount validation / reconciliation | 38 |
| 1058 | Dec. 8, 2025 | Doc. 95, at 49 | Minesh M Patel | Call with P. Sosamon to discuss DOJ Victim Database and identify next steps | 8, 38, 40, 41 |
| 1059 | Dec. 8, 2025 | Doc. 95, at 49 | Minesh M Patel | Review and cross reference select victims from DOJ Victim Database and Policyholder List and summarize next steps | 8, 38, 40, 41 |
| 1060 | Dec. 8, 2025 | Doc. 95, at 49 | Paula Sosamon | Review DOJ databases and cross-reference victims against the excess policyholder list | 8, 38, 40, 41 |
| 1061 | Dec. 8, 2025 | Doc. 95, at 49 | Scott Avila | Call PRA re: update | 38 |
| 1062 | Dec. 9, 2025 | Doc. 95, at 31 | MLM | Emails with John Babcock and Cassidy Willard re special master official opinion on various potential liquidation transactions. | 28, 30, 36, 38 |
| 1063 | Dec. 9, 2025 | Doc. 95, at 31 | MLM | Emails with Wes Camden and ACW re confidentiality of policyholder data. | 8, 35, 38, 39 |
| 1064 | Dec. 9, 2025 | Doc. 95, at 49 | Minesh M Patel | Review and cross reference select victims with various attributes from DOJ Victim Database and Excess Policyholder List and summarize next steps | 8, 38, 40, 41 |
| 1065 | Dec. 9, 2025 | Doc. 95, at 49 | Minesh M Patel | Call with P. Sosamon to review and discuss DOJ Victim Database and identify next steps Professional Services United States v. Greg Lindberg From October 1, 2025 through December 17, 2025 Date Professional Task Description Hours Rate Amount | 8, 38, 40, 41 |
| 1066 | Dec. 9, 2025 | Doc. 95, at 50 | Minesh M Patel | Call with P. Sosamon and D. Harer to review and discuss DOJ Victim Database and identify next steps | 8, 38, 40, 41 |
| 1067 | Dec. 9, 2025 | Doc. 95, at 50 | Paula Sosamon | Read and respond to various correspondence from Epiq re: excess policyholder | 8, 38 |
| 1068 | Dec. 9, 2025 | Doc. 95, at 50 | Scott Avila | Call with RPA lender re: strategic options | 38 |
| 1069 | Dec. 10, 2025 | Doc. 95, at 31 | MLM | Emails with Wes Camden and ACW re policyholder detail portal. Emails with Paula Sosamon, Alica Den Beste, Kathryn Tran, Don Harer, Scott Avila, ACW, JWG, and BDR re the same. | 8, 35, 38 |
| 1070 | Dec. 10, 2025 | Doc. 95, at 31 | BDR | Review of memo from GEL demanding payment of assistants; conference MLM re: same. | 38 |
| 1071 | Dec. 10, 2025 | Doc. 95, at 31 | MLM | Telephone call from John Babcock re sale of certain specified affiliated companies. Conferences with JWG and BDR re the same. | 28, 30, 38 |
| 1072 | Dec. 10, 2025 | Doc. 95, at 50 | Paula Sosamon | Call with Taylor (AMR) and Kathryn (Epiq) to discuss policy holder taxes qualifications | 38 |
| 1073 | Dec. 10, 2025 | Doc. 95, at 50 | Minesh M Patel | Call with P. Sosamon to discuss action plan related to DOJ Victim Database and next steps | 8, 38, 40, 41 |
| 1074 | Dec. 10, 2025 | Doc. 95, at 50 | Minesh M Patel | Review and cross reference select victims with various attributes from DOJ Victim Database and Excess Policyholder List | 8, 38, 40, 41 |
| 1075 | Dec. 10, 2025 | Doc. 95, at 50 | Paula Sosamon | Call coordination between AMR and Epiq | 38 |
| 1076 | Dec. 11, 2025 | Doc. 95, at 31 | MLM | Review revised draft cover memorandum to include with distributions to policyholders with uncovered claims. Emails with Kathryn Tran and others re the same. Conferences with JWG and ACW re de minimis distributions and unclaimed funds. Emails with Alicia Den Beste, Kathryn Tran, Paula Sosamon, Don Harer, Scott Avila, BDR, JWG, and ACW re the same. | 8, 38 |
| 1077 | Dec. 11, 2025 | Doc. 95, at 32 | MLM | Emails with John Babcock, Matt Manning, Jacob Hazel, and Cassidy Willards re accounting and tax issues. Emails with Scott Avila, Don Harer, JWG, and BDR re the same. | 38 |
| 1078 | Dec. 11, 2025 | Doc. 95, at 32 | MLM | Review revisions to draft administrative expense payment agreement proposed by Greg Lindberg. Emails with JWG and BDR re the same. Conference JWG re the same. [. . .] Emails with Dan Ryan and Ben Bain-Creed re the same. | 38, 40, 41 |
| 1079 | Dec. 11, 2025 | Doc. 95, at 32 | MLM | Video conference with Antonietta Basile, Sally Butcher, Deidre Reid, and ACW re unclaimed funds issues. | 38 |
| 1080 | Dec. 11, 2025 | Doc. 95, at 32 | MLM | Video conference with Matt Manning, John Murphy, John Babcock, and Don Harer re liquidation of certain specified affiliated companies. | 28, 30, 38 |
| 1081 | Dec. 11, 2025 | Doc. 95, at 51 | Paula Sosamon | Meeting with K Tran (Epiq) to discuss disbursements and tax filings | 38 |
| 1082 | Dec. 11, 2025 | Doc. 95, at 51 | Paula Sosamon | Call with A Feller (PMG) AI testing to reconcile victim database | 8, 38 |
| 1083 | Dec. 11, 2025 | Doc. 95, at 51 | Paula Sosamon | Various correspondence with AMR and Epiq re: taxes | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1084 | Dec. 11, 2025 | Doc. 95, at 51 | Scott Avila | Call Bryan Carey re: update on RPA | 38 |
| 1085 | Dec. 11, 2025 | Doc. 95, at 51 | Scott Avila | Review letter from F3 and various related emails | 38 |
| 1086 | Dec. 12, 2025 | Doc. 95, at 32 | MLM | Telephone call from Dan Ryan re administrative expense issues. | 38, 40, 41 |
| 1087 | Dec. 12, 2025 | Doc. 95, at 51 | Paula Sosamon | Correspondence with Noble re: policy statements | 38 |
| 1088 | Dec. 12, 2025 | Doc. 95, at 51 | Paula Sosamon | Call with Nadine (Noble) to discuss sample policy statements. | 38 |
| 1089 | Dec. 14, 2025 | Doc. 95, at 52 | Donald Harer | Review of board duties memo from Waldrep | 23, 24, 25, 38, 52 |
| 1090 | Dec. 15, 2025 | Doc. 95, at 32 | MLM | Emails with Wes Camden re distribution to policyholders with uncovered claims. Follow-up call from Wes Camden re the same. | 8, 35, 38 |
| 1091 | Dec. 15, 2025 | Doc. 95, at 33 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re sale of primary restitution assets. | 28, 30, 38 |
| 1092 | Dec. 16, 2025 | Doc. 95, at 52 | Paula SosamonCall | with A Feller (PMG) to discuss status of AI match on excess policy | 38 |
| 1093 | Dec. 16, 2025 | Doc. 148, at 8 | MLM | Emails with Kathryn Tran, Paula Sosamon, Alicia Den Beste, Andrew Cowie, Tim Conklin, ACW, and JWG re cover memorandum to policyholders with uncovered claims. Emails with Eric Au and Jason Cowley re the same. | 8, 38 |
| 1094 | Dec. 16, 2025 | Doc. 148, at 8 | MLM | Emails with Don Harer re administrative expense procedures. [. . .] Conferences with JWG re the same. [. . .] Emails with Scott Avila re the same. Emails with Dan Ryan and Ben Bain-Creed re the same. | 38, 40, 41 |
| 1095 | Dec. 16, 2025 | Doc. 148, at 9 | MLM | Emails with Tony Jones and Luis Llach-Zuniga re liquidation of primary restitution assets. Emails with Nick Kajon re the same. | 28, 30, 38 |
| 1096 | Dec. 17, 2025 | Doc. 148, at 9 | BDR | Review communications re: engaging tax professional and issues related to NHC governance. | 36, 38 |
| 1097 | Dec. 17, 2025 | Doc. 148, at 9 | MLM | Review voice message from Steve Wilson. Email Steve Wilson re prospects of Lindberg releasing claims against Steve Wilson. | 8, 38, 54 |
| 1098 | Dec. 18, 2025 | Doc. 148, at 10 | MLM | Revise draft third fee application. Emails with Andrew Cowie, Don Harer, Scott Avila, and JWG re the same. Emails with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, and JWG re the same. | 38, 40, 41 |
| 1099 | Dec. 18, 2025 | Doc. 148, at 10 | MLM | Revise draft third status report. Emails with Kathryn Tran, Alicia Den Beste, Paula Sosamon, Scott Avila, Don Harer, and Andrew Cowie re the same. Emails with Dan Ryan, Lyndie Freeman, Julia Park, Ben Bain-Creed, JWG, and BDR re the same. Conferences with JWG and BDR re the same. | 38, 40, 41 |
| 1100 | Dec. 18, 2025 | Doc. 148, at 10 | MLM | Telephone call from Wes Camden re status of distributions to policyholders with uncovered liabilities. Telephone call to Don Harer re the same. Conferences with JWG and BDR re the same. Telephone call from Don Harer and Alicia Den Beste. Emails with Don Harer, Scott Avila, Alicia Den Beste, Kathryn Tran, and JWG re the same. | 8, 35, 38 |
| 1101 | Dec. 18, 2025 | Doc. 148, at 11 | MLM | Telephone call from Wes Camden re liquidation of primary restitution assets. Telephone call from John Babcock re the same. Conferences with JWG and BDR re the same. [. . .] Telephone call to Don Harer re the same. | 28, 30, 35, 38 |
| 1102 | Dec. 19, 2025 | Doc. 148, at 11 | MLM | Emails with Cassidy Willard and John Babcock re certain missing tax returns. Telephone call from John Babcock re the same. Emalis with Matt Manning, John Babcock, Jacob Hazel, and Cassidy Willard re the same. | 38 |
| 1103 | Dec. 19, 2025 | Doc. 148, at 11 | MLM | Conferences with BDR and JWG re various issues impeding the liquidation of specified affiliated companies and the existing procedure for the same. Telephone call to Dan Ryan re the same. [. . .] | 28, 30, 38, 40, 41 |
| 1104 | Dec. 19, 2025 | Doc. 148, at 59 | Paula Sosamon | Call with M Patel and A Sosamon to review the results of the claims analysis filed with DOJ. | 8, 38, 40, 41 |
| 1105 | Dec. 21, 2025 | Doc. 148, at 11 | JWG | Review email from D. Harer re possible distribution to NCIC. | 35, 38 |
| 1106 | Dec. 22, 2025 | Doc. 148, at 11 | BDR | Attention to communications re: disbursing excess funds to NCICs. | 35, 38 |
| 1107 | Dec. 22, 2025 | Doc. 148, at 12 | MLM | [. . .] Emails with Luis Llach-Zuniga and Tony Jones re the same. | 14, 38 |
| 1108 | Dec. 22, 2025 | Doc. 148, at 12 | MLM | Conference JWG re distributions to individual policyholders with uncovered claims. Emails with Kathryn Tran, Alicia Den Beste, Paula Sosamon, Don Harer, Scott Avila, ACW, JWG, and BDR re the same. | 8, 38 |
| 1109 | Dec. 22, 2025 | Doc. 148, at 12 | MLM | Telephone call from Jason Cowley re various outstanding questions impacting NOLHGA. | 8, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1110 | Dec. 22, 2025 | Doc. 148, at 59 | Donald Harer | Correspond with Epiq regarding excess policy holder distributions | 38 |
| 1111 | Dec. 23, 2025 | Doc. 148, at 12 | MLM | Emails with Joel Glover, Greg Jacobs, Eddie Mire, Jason Cowley, and Wes Camden re distributions to individual policyholders with uncovered claims. Emails with Don Harer, Paula Sosamon, Kathryn Tran, Alicia Den Beste, Scott Avila, JWG, BDR, and ACW re the same. Telephone call to BDR re the same. Telephone call to Kathryn Tran re the same. Telephone calls to Wes Camden re the same. Conferences with BDR re the same. Draft notice of distribution to file on electronic docket. Conference ACW re the same. Conference JWG re the same. [. . .] Telephone call from Jason Cowley re the same. | 8, 35, 38 |
| 1112 | Dec. 23, 2025 | Doc. 148, at 12 | MLM | Emails with John Babcock re Triton Irish income tax analysis invoices. | 18, 29, 38 |
| 1113 | Dec. 23, 2025 | Doc. 148, at 13 | MLM | Telephone call from John Babcock re sale of primary restitution assets. Follow-up conference with JWG re the same. | 28, 30, 38 |
| 1114 | Jan. 2, 2026 | Doc. 148, at 13 | MLM | Emails with Kathryn Tran and others re last minute supplement to list of policyholders with uncovered claims. | 8, 15, 38, 51 |
| 1115 | Jan. 5, 2026 | Doc. 148, at 60 | Donald Harer | Call with Epiq and PMG team regarding excess policyholder disbursements | 8, 38 |
| 1116 | Jan. 5, 2026 | Doc. 148, at 60 | Paula Sosamon | Coordinating calls with Epiq & PMG for status update | 38 |
| 1117 | Jan. 5, 2026 | Doc. 148, at 60 | Paula Sosamon | Status update call with K Tran, A DeBeste (Epiq), A Cowie & D Harer (PMG) | 38 |
| 1118 | Jan. 6, 2026 | Doc. 148, at 13 | MLM | Prepare for January 12, 2026 status conference. Emails with JWG and BDR re the same. Telephone call from Wes Camden re the same. | 35, 38 |
| 1119 | Jan. 6, 2026 | Doc. 148, at 13 | MLM | Telephone call from John Babcock re status of NHC Holdings activities and related matters. | 36, 38 |
| 1120 | Jan. 6, 2026 | Doc. 148, at 14 | MLM | Draft letter to John Babcock re Beckett transaction. Conference JWG re the same. | 28, 30, 36, 38 |
| 1121 | Jan. 6, 2026 | Doc. 148, at 14 | JWG | Review and comment on outline for presentation to Judge Cogburn at status conference on Jan 12. | 38 |
| 1122 | Jan. 6, 2026 | Doc. 148, at 14 | MLM | Telephone call from Clint Morse re Prairie E&L Management, LLC bankruptcy case and related adversary proceeding. | 38 |
| 1123 | Jan. 6, 2026 | Doc. 148, at 60 | Paula Sosamon | Correspondence with Epiq re: status update | 38 |
| 1124 | Jan. 7, 2026 | Doc. 148, at 14 | MLM | Telephone call to Don Harer re victim loss calculations and NHC corporate governance issues. | 8, 15, 36, 38 |
| 1125 | Jan. 7, 2026 | Doc. 148, at 60 | Donald Harer | Call with representative of a victim. | 8, 38 |
| 1126 | Jan. 8, 2026 | Doc. 148, at 15 | JWG | Review email for K. Tran and Epig re CBL and BLIC Uncovereds | 38 |
| 1127 | Jan. 8, 2026 | Doc. 148, at 15 | MLM | Video conference with Luis Llach-Zuniga re liquidation of primary restitution assets and status of victim loss calculation analysis. | 8, 15, 28, 30, 38 |
| 1128 | Jan. 9, 2026 | Doc. 148, at 15 | MLM | Continue preparing for January 12, 2026 status conference. Emails with JWG and BDR re the same. Emails with Paula Sosamon, Don Harer, Kathryn Tran, JWG, and BDR re the same. | 38 |
| 1129 | Jan. 9, 2026 | Doc. 148, at 15 | MLM | Telephone call to Dan Ryan re restitution calculation issues and status of liquidating primary restitution assets. | 8, 15, 28, 30, 38, 40, 41 |
| 1130 | Jan. 9, 2026 | Doc. 148, at 15 | MLM | Exchange voice messages and emails with Tony Jones re sentencing procedure and upcoming status conference. | 38, 42 |
| 1131 | Jan. 9, 2026 | Doc. 148, at 61 | Paula Sosamon | Call with K Tran (Epiq) to discuss disbursement documentation request and timing | 38 |
| 1132 | Jan. 13, 2026 | Doc. 148, at 16 | MLM | Emails with Nick Kajon re sale of primary restitution assets. | 28, 30, 38 |
| 1133 | Jan. 13, 2026 | Doc. 148, at 16 | MLM | Emails with Vicki Parrot re tax reporting issues. | 38 |
| 1134 | Jan. 13, 2026 | Doc. 148, at 16 | MLM | Emails with Luis Llach-Zuniga re recent status conference. | 38 |
| 1135 | Jan. 13, 2026 | Doc. 148, at 16 | MLM | Telephone call from John Babcock re NHC Holdings efforts. Conference JWG re the same. | 36, 38 |
| 1136 | Jan. 14, 2026 | Doc. 148, at 17 | MLM | Further review of factual documents and informational memoranda provided to special master early in case for purposes of preparing victim restitution report. Emails with Don Harer, Scott Avila, BDR, and JWG re the same. Emails with Dan Ryan and Ben Bain-Creed re the same. | 8, 15, 38, 40, 41 |
| 1137 | Jan. 14, 2026 | Doc. 148, at 17 | MLM | Video conference with Jason Cowley and Eric Au re various procedural and substantive questions about restitution analysis. Follow-up conference with JWG re the same. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1138 | Jan. 14, 2026 | Doc. 148, at 17 | MLM | Video conference with Cam Waite, Don Solow, Andrew Cowie and Don Harer re Vista and USAP. | 8, 38 |
| 1139 | Jan. 14, 2026 | Doc. 148, at 17 | BDR | Conference MLM re discussions with Vista and USAP. | 8, 38 |
| 1140 | Jan. 14, 2026 | Doc. 148, at 61 | Donald Harer | Prepare for and participate in call with Crestline to review deck draft | 38 |
| 1141 | Jan. 15, 2026 | Doc. 148, at 17 | MLM | Emails with Jason Cowley and Eric Au re possible missing distribution to New Hampshire uncovered claim holders. Emails with Kathryn Tran, Alicia Den Beste, Don Harer, Paula Sosamon, JWG, and BDR re the same. | 38 |
| 1142 | Jan. 16, 2026 | Doc. 148, at 18 | MLM | Emails with Clint Morse, Vicki Parrot, and Jimmy Chang re Parrot v. Yeh litigation. | 38 |
| 1143 | Jan. 16, 2026 | Doc. 148, at 18 | MLM | Emails with Jason Cowley and Eric Au re early access agreement. | 38 |
| 1144 | Jan. 16, 2026 | Doc. 148, at 18 | MLM | Emails with Mark Foss re uncovered claim of the Alija B. Duchnowska 2017 Irrevocable Trust. | 38, 54 |
| 1145 | Jan. 16, 2026 | Doc. 148, at 18 | MLM | Return telephone call to Wes Camden re liquidation of specified affiliates companies. | 28, 30, 35, 38 |
| 1146 | Jan. 21, 2026 | Doc. 148, at 63 | Scott Avila | Review emails and document from PRA re; ULICO and Lindberg issues | 14, 38 |
| 1147 | Jan. 22, 2026 | Doc. 148, at 19 | MLM | Emails with Scott Avila, Don Harer, Cassidy Williard, John Babcock, Layne Smith, Steve Waterman, Hannah Tuttle, Cannon MacKenzie, JWG, BDR, and others re Lindberg's recent lawsuit against ULICO in Puerto Rico. Emails with Luis Llach-Zuniga re the same. | 14, 38 |
| 1148 | Jan. 22, 2026 | Doc. 148, at 19 | MLM | Telephone calls to and from Jason Cowley re victim loss data. Telephone calls to Wes Camden re the same. Conferences with JWG and BDR re the same. Telephone call to Don Harer re the same and related issues. Emails with Don Harer re the same. | 8, 15, 35, 38 |
| 1149 | Jan. 22, 2026 | Doc. 148, at 63 | Donald Harer | [. . .] Corresponded with William Mullens and Noble regarding ILIA components. | 38 |
| 1150 | Jan. 23, 2026 | Doc. 148, at 20 | MLM | Emails with Jason Cowley, Wes Camden, and Don Harer re policyholder level data. | 8, 35, 38 |
| 1151 | Jan. 23, 2026 | Doc. 148, at 20 | MLM | Emails with John Babcock, Scott Avila, Andrew Cowie, and Don Harer re outstanding document and information requests. | 38 |
| 1152 | Jan. 26, 2026 | Doc. 148, at 20 | MLM | Emails with Luis Llach-Zuniga, Scott Avila, Don Harer, JWG, and BDR re litigation filed by Lindberg against ULICO in Puerto Rico. [. . .] | 14, 38 |
| 1153 | Jan. 26, 2026 | Doc. 148, at 20 | MLM | Video conference (I participated audio-only) with John Babcock, Mo Meghji, Margaret Westbrook, and Bill Janvier re NHC's efforts to liquidate certain specified affiliated companies. | 28, 30, 36, 38 |
| 1154 | Jan. 26, 2026 | Doc. 148, at 21 | MLM | Telephone call from Wes Camden re policyholder level data. | 8, 35, 38 |
| 1155 | Jan. 26, 2026 | Doc. 148, at 21 | MLM | Emails with John Babcock, Cassidy Willard, JWG, and BDR re ultimate beneficial owner of various specified affiliated companies. | 38 |
| 1156 | Jan. 27, 2026 | Doc. 148, at 21 | MLM | Review email from lan Quigley re know-your- customer regulations. Emails with JWG and BDR re the same. Emails with John Babcock and Cassidy Willard re the same. | 38 |
| 1157 | Jan. 27, 2026 | Doc. 148, at 65 | David Elkin | Call with D. Harer regarding supporting schedule for IALA principal and Interest | 38 |
| 1158 | Jan. 28, 2026 | Doc. 148, at 21 | MLM | Preliminary review of additional information provided by NOLHGA. Emails with Jason Cowley, Joel Glover, and Eric Au re the same. Emails with Andrew Cowie, David Elkin, Don Harer, Scott Avila, JWG, and BDR re the same. | 8, 38 |
| 1159 | Jan. 29, 2026 | Doc. 148, at 66 | Andrew Cowie | Call with D. Harer (Paladin) in regard to Noble call follow up. | 38 |
| 1160 | Jan. 30, 2026 | Doc. 148, at 22 | JWG | Review Report of Examination of United Security Assurance Co of PA from D. Ryan (relevant to VISTA). | 8, 38, 40, 41 |
| 1161 | Jan. 30, 2026 | Doc. 148, at 66 | Donald Harer | Review of damages data provided by NCIC | 35, 38 |
| 1162 | Jan. 30, 2026 | Doc. 148, at 66 | Andrew Cowie | Call with P. Sosamon , D. Elkin, D. Harer in regard to outstanding case information including from NOHLGA. | 38 |
| 1163 | Jan. 31, 2026 | Doc. 148, at 66 | Donald Harer | Review of damages data provided by NCIC | 35, 38 |
| 1164 | Feb. 3, 2026 | Doc. 148, at 23 | MLM | Emails with Luis Llach-Zuniga re special master's victim restitution recommendations. | 8, 38 |
| 1165 | Feb. 3, 2026 | Doc. 148, at 23 | MLM | Review request for tax-related information from NHC Holdings. [. . .] Emails with John Babcock and Cassidy Willard re the same. | 36, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1166 | Feb. 3, 2026 | Doc. 148, at 67 | Andrew Cowie | Call with D. Elkin (Paladin) in regard to IALA model adjustments. | 38 |
| 1167 | Feb. 3, 2026 | Doc. 148, at 67 | Paula Sosamon | Correspondence with K Tran (Epiq) re: December reconciliation and status of January bank statements | 38 |
| 1168 | Feb. 3, 2026 | Doc. 148, at 67 | David Elkin | Review and respond to M. Dinius email with correction to Northstar | 38 |
| 1169 | Feb. 3, 2026 | Doc. 148, at 67 | Donald Harer | Attend to correspondance from Noble consulting regarding Northstar restitution sheet | 38 |
| 1170 | Feb. 4, 2026 | Doc. 148, at 24 | MLM | [. . .] Telephone call to John Babcock re the same. | 38 |
| 1171 | Feb. 4, 2026 | Doc. 148, at 24 | MLM | Conference JWG re deceased claimants holding uncovered claims. Emails with Paula Sosamon, Kathryn Tran, Don Harer, ACW, and JWG re the same. Telephone call to Wes Camden re the same. Conference JWG and BDR re the same. | 8, 35, 38 |
| 1172 | Feb. 4, 2026 | Doc. 148, at 67 | Andrew Cowie | Analyze supporting information provided by Noble in regard to certain historical payments. | 38 |
| 1173 | Feb. 5, 2026 | Doc. 148, at 24 | MLM | Emails with John Babcock re liquidation of specified affiliated companies. | 28, 30, 38 |
| 1174 | Feb. 5, 2026 | Doc. 148, at 24 | MLM | Emails with Wes Camden re procedural for paying claims owned by recently deceased former policyholders. Conference JWG re the same. Follow-up research re the same. Emails with Paula Sosamon, Kathryn Tran, Don Harer, ACW, and JWG re the same. | 8, 35, 38 |
| 1175 | Feb. 5, 2026 | Doc. 148, at 69 | Paula Sosamon | Correspondence with K Tran (Epiq) and M Martinez (Grier) re: deceased policy holder checks | 38 |
| 1176 | Feb. 6, 2026 | Doc. 148, at 25 | MLM | Conference call with Jason Cowley and Eric Au re policyholder level data, distributions to uncovered claimants, and draft term sheet for clarification order. | 8, 38, 52 |
| 1177 | Feb. 6, 2026 | Doc. 148, at 25 | MLM | Review and revise draft email to NOLHGA attorneys re draft clarification order term sheet. Emails with Andrew Cowie and Don Harer re the same. Review, revise, and incorporate additional proposed edits to term sheet from Andrew Cowie. | 8, 38, 52 |
| 1178 | Feb. 6, 2026 | Doc. 148, at 69 | Donald Harer | Attend to various correspondance pertaining to NOLHGA data | 8, 38 |
| 1179 | Feb. 9, 2026 | Doc. 148, at 25 | MLM | Review victim impact statements from Vista and USAP. Review examination report forwarded by Dan Ryan re the same. Follow-up research re the same. Emails with Don Harer and Don Solow re the same. | 8, 38, 40, 41 |
| 1180 | Feb. 11, 2026 | Doc. 148, at 69 | David Elkin | Call with M. Dinius and A. Cowie to discuss Vista and PBLA Main Professional Services United B States v. Greg Lindberg From December 18, 2025 through April 30, 2026 Date Professional Task Description Hours Rate Amount | 8, 38 |
| 1181 | Feb. 12, 2026 | Doc. 148, at 26 | BDR | Email to Epiq re account statements. | 38 |
| 1182 | Feb. 12, 2026 | Doc. 148, at 70 | Andrew Cowie | Analyze historical supporting information provided by NC through Noble. | 38 |
| 1183 | Feb. 13, 2026 | Doc. 148, at 26 | JWG | Review email from counsel for primary restitution asset re filings before NC Supreme Court. | 38 |
| 1184 | Feb. 13, 2026 | Doc. 148, at 27 | MLM | Emails with Eric Au, Jason Cowley, Wes Camden, and Joel Glover re policyholder data. Emails with Dan Ryan re the same. Emails with Don Harer, Andrew Cowie, David Elkin, Scott Avila, and Paula Sosamon re the same. | 8, 35, 38, 40, 41 |
| 1185 | Feb. 13, 2026 | Doc. 148, at 70 | Andrew Cowie | Analyze historical NC insurance company detail information provided by Noble. | 38 |
| 1186 | Feb. 16, 2026 | Doc. 148, at 27 | MLM | Emails with Wes Camden re insurance liquidation claim distribution law. Follow-up research re the same. Emails with Kathryn Tran, Don Harer, Paula Sosamon, JWG, and BDR re the same. | 28, 30, 35, 38 |
| 1187 | Feb. 16, 2026 | Doc. 148, at 27 | MLM | Video conference with Francesca Morris, Arthur Rosenberg, and Jonathan Halpern re liquidation of primary restitution assets. | 28, 30, 38 |
| 1188 | Feb. 16, 2026 | Doc. 148, at 27 | BDR | Email to Waldrep firm re Clanwilliam tax escrow account statements. | 18, 29, 38 |
| 1189 | Feb. 16, 2026 | Doc. 148, at 70 | Scott Avila | R/R to emails re; payments to NCIC and Bermuda in 2022 | 35, 37, 38 |
| 1190 | Feb. 16, 2026 | Doc. 148, at 70 | Scott Avila | R/R to emails from Bermuda's counsel Professional Services United B States v. Greg Lindberg From December 18, 2025 through April 30, 2026 Date Professional Task Description Hours Rate Amount | 37, 38 |
| 1191 | Feb. 16, 2026 | Doc. 148, at 71 | Scott Avila | Call David re: historical payments to insurance companies from PRA | 38 |
| 1192 | Feb. 17, 2026 | Doc. 148, at 27 | MLM | Telephone call to John Babcock re discussion with attorneys representing potential purchaser of primary restitution assets. | 27, 28, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1193 | Feb. 17, 2026 | Doc. 148, at 27 | MLM | Conference with Wes Camden and JWG re open restitution issues. | 8, 15, 35, 38 |
| 1194 | Feb. 17, 2026 | Doc. 148, at 71 | Andrew Cowie | Analysis of new supporting documentation provided by Noble in regard to NCIC. | 35, 38 |
| 1195 | Feb. 18, 2026 | Doc. 148, at 27 | MLM | Emails with Kathryn Tran, Paula Sosamon, and Don Harer re policyholder distribution issues. | 8, 38 |
| 1196 | Feb. 18, 2026 | Doc. 148, at 28 | MLM | Video conference with Joel Glover, Eric Au, and Jason Cowley re process for liquidating primary restitution assets. | 28, 30, 38 |
| 1197 | Feb. 19, 2026 | Doc. 148, at 28 | MLM | Video conference with Nick Kajon, Ryan O'Neill, Ben Wylie, | 38 |
| 1198 | Feb. 19, 2026 | Doc. 148, at 28 | JWG | Conference Bermuda parties re special master's work and post-conference discussion with M. Martinez & B. Rhodes. | 37, 38 |
| 1199 | Feb. 19, 2026 | Doc. 148, at 28 | BDR | Call with JWG, MLM, Don Harer, Scott Avila, Andrew Cowie, David Elkin, Nick Kajon, Constantine Pourakis, Ryan O'Neil, and Ben Wylie; follow-up conference to JWG and MLM. | 38, 40, 41 |
| 1200 | Feb. 19, 2026 | Doc. 148, at 29 | MLM | Video conference with John Murphy, Mike Dinius, Wes Camden, Caitlin Poe, Lauren Fussell, Don Harer, David Elkin, and Andrew Cowie re restitution calculations and related issues [0.7 hrs.]. Follow-up conference with BDR re the same [0.3 hrs.]. | 8, 15, 28, 30, 35, 38 |
| 1201 | Feb. 19, 2026 | Doc. 148, at 29 | MLM | Emails with Joel Glover, Jason Cowley, Michael McDonald, Eric Au, Wes Camden, Don Harer, Scott Avila, Andrew Cowie, and David Elkin re the same. | 35, 38 |
| 1202 | Feb. 19, 2026 | Doc. 148, at 29 | MLM | Conference BDR re definitions of victims and providers of compensation under the Mandatory Victim Restitution Act. Emails with Ben Bain- Creed, Dan Ryan, BDR, and JWG re the same. | 8, 38, 40, 41 |
| 1203 | Feb. 19, 2026 | Doc. 148, at 29 | MLM | Emails with Wes Camden, Lauren Fussell, Mike Dinius, John Murphy, Don Harer, and Paula Sosamon re dispute over uncovered claim amount of policyholder from Aurora, Illinois. | 8, 28, 30, 35, 38 |
| 1204 | Feb. 19, 2026 | Doc. 148, at 29 | MLM | Review spreadsheet of calculations from Luis Llach-Zuniga. Emails with Don Harer, David Elkin, Andrew Cowie, Scott Avila, JWG, and BDR re the same. Emails with Luis Llach-Zuniga re the same. | 38 |
| 1205 | Feb. 19, 2026 | Doc. 148, at 71 | Andrew Cowie | Call with J. Murphy, M. Dinius (Noble), M. Martinez (Grier Law), W. Cambden, C. Poe, L Fussell (WIlliams Mullen), D. Harer, D. Elkin (Paladin) in regard to NCICs and SASL questions. | 28, 30, 35, 38 |
| 1206 | Feb. 19, 2026 | Doc. 148, at 71 | Scott Avila | Call with Bermuda professionals re: update Professional Services United B States v. Greg Lindberg From December 18, 2025 through April 30, 2026 Date Professional Task Description Hours Rate Amount | 37, 38 |
| 1207 | Feb. 20, 2026 | Doc. 148, at 29 | MLM | Revise draft clarification order term sheet. Emails with John Babcock re the same. | 38, 52 |
| 1208 | Feb. 20, 2026 | Doc. 148, at 29 | MLM | Emails with Kathryn Tran, Paula Sosamon, and Don Harer re status of distributions to policyholders with uncovered claims. | 8, 38 |
| 1209 | Feb. 20, 2026 | Doc. 148, at 29 | MLM | Telephone call with Kathryn Tran and JWG re fee payment transfers. | 38 |
| 1210 | Feb. 20, 2026 | Doc. 148, at 72 | Andrew Cowie | Call with D. Harer (Paladin) in regard to Agera issues. | 38 |
| 1211 | Feb. 23, 2026 | Doc. 148, at 30 | MLM | Review spreadsheet from Epig re status of uncovered claim distributions. Emails with Kathryn Tran, Don Harer, and Paula Sosamon re the same. | 38 |
| 1212 | Feb. 23, 2026 | Doc. 148, at 30 | BDR | Call with JWG, MLM, Dan Ryan, and Ben Bain- Creed discussing restitution issues. | 8, 15, 38, 40, 41 |
| 1213 | Feb. 23, 2026 | Doc. 148, at 30 | MLM | Conference call with Ben Bain-Creed, Dan Ryan, JWG, and BDR re restitution concepts [1.0 hrs.]. Follow-up discussion with JWG and BDR re the same [0.3 hrs.]. Second follow-up discussion with BDR re the same [0.3 hrs.]. | 8, 15, 38, 40, 41 |
| 1214 | Feb. 23, 2026 | Doc. 148, at 30 | JWG | Conference D. Ryan, B. Bain-Creed, M. Martinez & B. Rhodes re special master's report. | 15, 38, 40, 41, 51 |
| 1215 | Feb. 23, 2026 | Doc. 148, at 30 | JWG | Discussion with M. Martinez & B. Rhodes post conference with DOJ re special master report. | 38, 40, 41 |
| 1216 | Feb. 23, 2026 | Doc. 148, at 30 | BDR | Follow-up conference with JWG and MLM after call with AUSAs. | 38, 40, 41 |
| 1217 | Feb. 23, 2026 | Doc. 148, at 30 | BDR | Preparation for call with JWG, MLM, and AUSAs. | 38, 40, 41 |
| 1218 | Feb. 24, 2026 | Doc. 148, at 30 | JWG | Review 18 USC 3664 in context of this case and ongoing discussion with DOJ. | 38, 40, 41 |
| 1219 | Feb. 24, 2026 | Doc. 148, at 73 | Andrew Cowie | Call with D. Harer (Paladin) in regard to Agera. | 38 |
| 1220 | Feb. 24, 2026 | Doc. 148, at 73 | Andrew Cowie | Call with C. Urwin (Paladin) in regard to Agera work plan. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1221 | Feb. 25, 2026 | Doc. 148, at 31 | BDR | Call from Cassidy Willard. | 38 |
| 1222 | Feb. 25, 2026 | Doc. 148, at 31 | MLM | Review updated spreadsheet detailing disposition of uncovered claims against the North Carolina insurance company victims. Emails with Kathryn Tran, Paula Sosamon, and Don Harer re the same. Emails with Joel Glover, Jason Cowler, and Eric Au re the same. | 8, 28, 30, 35, 38 |
| 1223 | Feb. 25, 2026 | Doc. 148, at 32 | MLM | Revise draft term sheet for clarifying role of special master. Emails with Don Harer, Scott Avila, Andrew Cowie, and David Elkin re the same. Telephone call from John Babcock re the same. | 38, 52 |
| 1224 | Feb. 26, 2026 | Doc. 148, at 32 | MLM | Emails with Don Solow and Don Harer re Vista and USAP. | 8, 38 |
| 1225 | Feb. 26, 2026 | Doc. 148, at 74 | Minesh Patel | Prepare information request list related to AZ facility for external distribution and related email correspondence | 38 |
| 1226 | Feb. 26, 2026 | Doc. 148, at 74 | Minesh Patel | Call with A. Cowie to discuss NCIC and Bermuda policyholder claims and associated loan balances | 8, 9, 12, 35, 37, 38 |
| 1227 | Feb. 26, 2026 | Doc. 148, at 74 | Donald Harer | Call with M. Manning (M3) regarding Agera and AGH history | 1, 2, 7, 38, 50 |
| 1228 | Feb. 27, 2026 | Doc. 148, at 32 | MLM | Telephone call to Wes Camden re cooperation of Greg Lindberg, disputed distribution to uncovered claim holder, and restitution concepts. | 8, 15, 35, 38, 42 |
| 1229 | Feb. 27, 2026 | Doc. 148, at 75 | Donald Harer | Review Agera materials supplied by DOJ | 38, 40, 41 |
| 1230 | Feb. 27, 2026 | Doc. 148, at 75 | Paula Sosamon | Call with K Tran (Epiq) to discuss discrepency on Bank Recon for January | 38 |
| 1231 | Feb. 27, 2026 | Doc. 148, at 75 | Minesh Patel | Call with K. Diaz, S. Avila and A. Feller to discuss information requests list related to AZ facility | 38 |
| 1232 | Feb. 27, 2026 | Doc. 148, at 75 | Charles Urwin | Upload document templates for NCIC and Bermuda entities to shared drive per discussion with A. Cowie (Paladin). | 35, 37, 38 |
| 1233 | Mar. 2, 2026 | Doc. 148, at 76 | David Elkin | Call with M. Patel and D. Harer regarding loan balances and policyholder liabilities reported by NCICs | 8, 9, 12, 35, 38 |
| 1234 | Mar. 2, 2026 | Doc. 148, at 77 | Donald Harer | Call with PE firm representative interested in purchasing a primary restitution asset entities. | 38 |
| 1235 | Mar. 2, 2026 | Doc. 148, at 77 | Andrew Cowie | Call with D. Harer (Paladin) in regard to Vista claim. | 8, 38 |
| 1236 | Mar. 3, 2026 | Doc. 148, at 33 | MLM | Emails with Wes Camden, Lauren Fussell, John Murphy, Mike Dinius, Don Harer, and Paula Sosamon re disputed uncovered claim amount. Emails with Kathryn Tran re the same. | 28, 30, 35, 38 |
| 1237 | Mar. 3, 2026 | Doc. 148, at 33 | MLM | Emails with Luis Llach-Zuniga re special master's restitution analysis. | 38 |
| 1238 | Mar. 3, 2026 | Doc. 148, at 33 | MLM | Emails with John Babcock re additional details on Beckett transaction. | 28, 30, 36, 38 |
| 1239 | Mar. 3, 2026 | Doc. 148, at 77 | Paula Sosamon | Call with K Tran (Epiq) to discuss next steps on the 13k outstanding checks | 38 |
| 1240 | Mar. 3, 2026 | Doc. 148, at 77 | Donald Harer | Call with A. Cowie regarding restitution report outline and Agera open items | 8, 15, 38 |
| 1241 | Mar. 4, 2026 | Doc. 148, at 33 | BDR | Communications with Paladin re FDIC-DOJ memo. | 38, 40, 41 |
| 1242 | Mar. 4, 2026 | Doc. 148, at 78 | Andrew Cowie | Call with M. Meghji (M3), D. Harer (Paladin) in regard to Agera. | 1, 2, 7, 38, 50 |
| 1243 | Mar. 5, 2026 | Doc. 148, at 34 | MLM | Emails with Dan Ryan re potential purhcaser of primary restitution assets. | 38, 40, 41 |
| 1244 | Mar. 5, 2026 | Doc. 148, at 79 | David Elkin | Draft email to PBLA / Northstar regarding a primary restitution asset related payments | 38 |
| 1245 | Mar. 6, 2026 | Doc. 148, at 34 | MLM | Emails with Don Harer, David Elkin, Andrew Cowie, Scott Avila, and BDR re amounts claimed as losses by various victims. Emails with Nick Kajon, Ryan O'Neill, Constantine Pourakis, Don Harer, David Elkin, Andrew Cowie, Scott Avila, and BDR re the same. Emails with Wes Camdne, Caitlin Poe, Lauren Fussell, Don Harer, David Elkin, Andrew Cowie, Scott Avila, and BDR re ths same. | 8, 28, 30, 35, 38 |
| 1246 | Mar. 6, 2026 | Doc. 148, at 79 | Charles Urwin | Review NCIC court report sections for D. Harer (Paladin) content and edits to apply to Bermuda sections. | 35, 37, 38 |
| 1247 | Mar. 9, 2026 | Doc. 148, at 35 | MLM | Emails with John Babcock and Mo Meghii re potential interest in one of the specified affiliated companies. [. . .] | 38 |
| 1248 | Mar. 9, 2026 | Doc. 148, at 80 | Donald Harer | Call with P. Sosamon to quantify final restitution payments from CWG sale | 28, 30, 38 |
| 1249 | Mar. 10, 2026 | Doc. 148, at 35 | MLM | Draft email to John Fletcher re victim status asserted by ICP Services, Carol Pinto, and Peter Pinto. Emails with BDR re the same. Emails with Tisha Lindberg re the same. | 8, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1250 | Mar. 10, 2026 | Doc. 148, at 35 | MLM | Video conference with Jason Cowley, Joel Glover, and Eric Au re victim restitution issues. | 8, 15, 38 |
| 1251 | Mar. 10, 2026 | Doc. 148, at 35 | ACW | Brief conference with MLM re: process for follow up on unclaimed distributions; reviewed notes of meeting with District Court; drafted email to P.Sosaman responding to process suggested by Paladin. | 38 |
| 1252 | Mar. 10, 2026 | Doc. 148, at 35 | ACW | Sent email to S.Butcher re: process for turnover of unclaimed funds to Court. | 38 |
| 1253 | Mar. 11, 2026 | Doc. 148, at 36 | MLM | Revise draft emails to attorneys asserting victim status. Conference and emails with BDR re the same. Emails with John Fletcher re the same. Emails with Joe Davies, Byron Saintsing, and JWG re the same. | 8, 38 |
| 1254 | Mar. 11, 2026 | Doc. 148, at 36 | MLM | Telephone call from Wes Camden re victim loss analysis. Emails with Don Harer, David Elkin, Andrew Cowie, and BDR re the same. | 8, 15, 35, 38 |
| 1255 | Mar. 13, 2026 | Doc. 148, at 83 | Paula Sosamon | Correspondence with A Cowie, Grier team and Epiq re: outstading checks | 38 |
| 1256 | Mar. 16, 2026 | Doc. 148, at 37 | MLM | Listen to voice message from John Babcock re asset liquidation concerns. Email John Babcock re the same. | 28, 30, 38 |
| 1257 | Mar. 16, 2026 | Doc. 148, at 37 | MLM | Review loss statement from ULICO. Emails with Luis Llach-Zuniga re the same. | 14, 38 |
| 1258 | Mar. 16, 2026 | Doc. 148, at 37 | BDR | Review comments to draft restitution report and redline of proposed order from DOJ; conference MLM and JWG re same. | 8, 15, 38, 40, 41, 51 |
| 1259 | Mar. 16, 2026 | Doc. 148, at 37 | MLM | Emails with Lyndie Freeman, Ben Bain-Creed, Dan Ryan, JWG, and BDR re draft restitution report. Emails with Scott Avila, Don Harer, Andrew Cowie, David Elkin, JWG, and BDR re the same. Telephone call from Don Harer and Andrew Cowie re the same. Conference BDR re the same. | 8, 15, 38, 40, 41, 51 |
| 1260 | Mar. 16, 2026 | Doc. 148, at 83 | Donald Harer | Call with A. Cowie and M. Martinez (Grier) to discuss DOJ comments and next steps | 38, 40, 41 |
| 1261 | Mar. 16, 2026 | Doc. 148, at 83 | Andrew Cowie | Call with D. Harer (Paladin), M. Martinez (Grier) in regard to DOJ court report proposed edits. | 38, 40, 41 |
| 1262 | Mar. 17, 2026 | Doc. 148, at 83 | Donald Harer | Review DOJ comments | 38, 40, 41 |
| 1263 | Mar. 17, 2026 | Doc. 148, at 84 | Donald Harer | Call with A. Cowie (PMGregarding BIC and PPN Finco payments | 38 |
| 1264 | Mar. 18, 2026 | Doc. 148, at 38 | MLM | [. . .] Revise draft restitution report re the same. Emails with Nick Kajon and John Babcock re the same. | 8, 15, 38, 51 |
| 1265 | Mar. 19, 2026 | Doc. 148, at 38 | MLM | [. . .] Emails with Wes Camden re the same. Continue revising draft restitution report. Emails with David Elkin, Andrew Cowie, Don Harer, Scott Avila, BDR, and JWG re the same. | 8, 15, 35, 38, 51 |
| 1266 | Mar. 19, 2026 | Doc. 148, at 84 | Scott Avila | Review emails from PRA re; governance issues | 38 |
| 1267 | Mar. 20, 2026 | Doc. 148, at 85 | Andrew Cowie | Analysis of new documents provided by Noble in regard to historical payments at the Insurance Companies. | 38 |
| 1268 | Mar. 21, 2026 | Doc. 148, at 85 | David Elkin | Review email from M. Dinius and upload Restitution Worksheets excluding interest to Onehub | 38 |
| 1269 | Mar. 23, 2026 | Doc. 148, at 38 | MLM | Review emails between Mike Dinius and David Elkin re loss calculations. Emails with Mike Dinius, Don Harer, David Elkin, Wes Camden, and BDR re the same. | 8, 15, 35, 38 |
| 1270 | Mar. 23, 2026 | Doc. 148, at 38 | MLM | Emails with Jeff Oleynik and Kate Giduz re g special master report. | 38 |
| 1271 | Mar. 24, 2026 | Doc. 148, at 39 | MLM | Continue revising draft restitution report. Follow- up research re the same. Telephone call from Chris Browning re the same. [. . .] Emails with Don Harer, Andrew Cowie, David Elkin, Scott Avila, JWG, and BDR re the same. Video conference with Luis Llach-Zuniga and Chris Browning re the same. Follow-up conference with BDR re the same. | 8, 15, 38, 51 |
| 1272 | Mar. 27, 2026 | Doc. 148, at 39 | MLM | Continue revising draft restitution report. Emails with Dan Ryan, Lyndie Freeman, Ben Bain- Creed, and JWG re the same. Emails with Andrew Cowie, David Elkin, Don Harer, Scott Avila, JWG, and BDR re the same. Video conference with Andrew Cowie and Don Harer re the same. Return several telephone calls from Chris Browning re the same. Telephone call to Jason Cowley re the same. Telephone call to Wes Camden re the same. Telephone call from Dan Ryan re the same. Emails with Dan Ryan re the same. | 8, 15, 35, 38, 40, 41, 51 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1273 | Mar. 30, 2026 | Doc. 148, at 40 | MLM | Continue revising draft restitution report and related appendices. Emails with Andrew Cowie, David Elkin, Don Harer, and BDR re the same. Revise draft proposed preliminary order of restitution. Emails with Ben Bain-Creed, Lyndie Freeman, and Dan Ryan re the same. [. . .] Emails with Nick Kajon, Ben Wylie, Andrew Cowie, Don Harer, David Elkin, and BDR re the same. [. . .] Emails with Luis Llach-Zuniga, Chris Browning, and Tony Jones re the same. | 8, 14, 15, 38, 40, 41, 51 |
| 1274 | Mar. 30, 2026 | Doc. 148, at 40 | MLM | Emails with Francesca Morris, Jonathan Halpern, Arthur Rosenberg, and Nishman Patel re potential sale of specified affiliated company. | 28, 30, 38 |
| 1275 | Mar. 30, 2026 | Doc. 148, at 86 | Donald Harer | Call with A. Cowie regarding PBLA and Northstar policyholder liabilities | 8, 38 |
| 1276 | Mar. 31, 2026 | Doc. 148, at 40 | MLM | Emails with Andrew Cowie, David Elkin, Don Harer, and BDR re revisions to draft restitution report. Conferences with BDR re the same. Emails with Chris Browning, Tony Jones, and Luis Llach-Zuniga re the same. Emails with Dan Ryan, Ben Bain-Creed, and JWG re the same. Continue revising draft restitution report, including appendices. Telephone call from Andrew Cowie re the same. Telephone call from Jason Cowley re the same. [. . .] Follow-up conference with JWG and BDR re the same. | 8, 15, 38, 40, 41, 51 |
| 1277 | Mar. 31, 2026 | Doc. 148, at 86 | Scott Avila | Call with RPA and Andrew Cowie - financial projections and debt service | 38 |
| 1278 | Apr. 1, 2026 | Doc. 148, at 43 | MLM | [. . .] Emails with Wes Camden, Jason Cowley, Luis Llach-Zuniga, and others re draft restitution report. Continue revising the same. Conference call with Dan Ryan and Andrew Cowie re specific language in various parts of the restitution report and appendices. Emails with Dan Ryan and Andrew Cowie re the same. Emails with Dan Ryan re futher edits to draft report from the government. Review email from Nick Kajon, copying Ryan O'Neill, Constantine Pourakis, John Johnston, Ben Wylie, Marthinus Dreyer, and David Stewart re payment priority issues arising in connnection with restitution report. | 8, 15, 35, 38, 40, 41, 51 |
| 1279 | Apr. 1, 2026 | Doc. 148, at 43 | BDR | Conference MLM re restitution payment priority issues and related discussion with Bermuda insurance companies. | 37, 38 |
| 1280 | Apr. 1, 2026 | Doc. 148, at 87 | Andrew Cowie | Call with D. Ryan (DOJ), M. Martinez (Grier) in regard to court report. | 38, 40, 41 |
| 1281 | Apr. 2, 2026 | Doc. 148, at 44 | MLM | Review March 17, 2026 memorandum from Greg Lindberg re restitution issues. [. . .] Emails with Nick Kajon, Ryan O'Neill, Constantine Pourakis, Ben Wylie, John Johnston, Marthinus Dreyer, and David Stewart re certain objections to the restitution report from the Bermuda Insurance companies. Emails with BDR and JWG re the same. Emails with Wes Camden re the same and the North Carolina insurance companies' concerns with aspects of the report. Emails with Jason Cowley re the same and NOLHGA's concerns with aspects of the report. Telephone call from Jason Cowley re the same. Make further final revisions to draft restitution report. Emails with JWG and BDR re the same. [. . .] Emails with Tony Jones, Chris Browning, Luis Llach-Zuniga, and Victor Acevedo-Hernandez re the same. | 8, 15, 35, 37, 38, 51 |
| 1282 | Apr. 2, 2026 | Doc. 148, at 44 | BDR | Review and analysis of changes to restitution report proposed by Bermuda insurance companies; conference MLM re same. | 8, 15, 37, 38 |
| 1283 | Apr. 3, 2026 | Doc. 148, at 44 | MLM | Continue revising draft restitution report. Emails with Jason Cowley, Joel Glover, and Eric Au re the same. Telephone call from Jeff Oleynik and Kate Giduz re the same. | 8, 15, 38, 51 |
| 1284 | Apr. 3, 2026 | Doc. 148, at 87 | Scott Avila | Call with representative of PRA | 38 |
| 1285 | Apr. 8, 2026 | Doc. 148, at 87 | Scott Avila | Call with PRA - board call | 23, 24, 25, 38 |
| 1286 | Apr. 12, 2026 | Doc. 148, at 88 | Scott Avila | Review materials provided by PRA re; waterfall | 38 |
| 1287 | Apr. 13, 2026 | Doc. 148, at 45 | BDR | Review of Feb-March account statements for Epiq master account; email to Kathryn Tran re additional account statement request. | 38 |
| 1288 | Apr. 13, 2026 | Doc. 148, at 88 | Scott Avila | Call with Joe, Michael and Ben re; PRA | 38 |
| 1289 | Apr. 13, 2026 | Doc. 148, at 88 | Scott Avila | Call with PRA re: sale process | 28, 30, 38 |
| 1290 | Apr. 13, 2026 | Doc. 148, at 88 | Andrew Cowie | Call with D. Elkin in regard to Court Report information requests. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1291 | Apr. 14, 2026 | Doc. 148, at 46 | MLM | Emails from representatives of a primary restitution asset re tax status of Global Growth. [. . .] | 38 |
| 1292 | Apr. 14, 2026 | Doc. 148, at 46 | MLM | Conference BDR re professional fee disbursement for Epiq. Emails with Paula Sosamon, Kathryn Tran, and Don Harer re the same. | 38 |
| 1293 | Apr. 14, 2026 | Doc. 148, at 46 | MLM | Emails with Clint Morse, Vicki Parrot, and Jimmy Chang re Parrot v. Yeh litigation. Email BDR re the same. | 38 |
| 1294 | Apr. 14, 2026 | Doc. 148, at 46 | MLM | Emails with Francesca Morris, Arthur Rosenberg, Jonathan Halpern, and Nishma Patel re potential sale of certian specified affiliated companies. Review letter from Triton Investment Management Ltd. re the same and other documentary materials forwarded by the prospective purchaser. Video conference with Francesca Morris, Arthur Rosenberg, Jonathan Halpern, and Jordan Cooper re the same. | 18, 27, 28, 29, 30, 38 |
| 1295 | Apr. 14, 2026 | Doc. 148, at 88 | David Elkin | Call with A. Cowie regarding primary restitution asset and FPLs | 38 |
| 1296 | Apr. 14, 2026 | Doc. 148, at 88 | David Elkin | Call with D. Harer and A. Cowie regarding primary restitution asset and Losses on Zero Coupon Notes | 38 |
| 1297 | Apr. 14, 2026 | Doc. 148, at 89 | Andrew Cowie | Call with M. Martinez (Grier), D. Harer, D. Elkin (Paladin) in regard to Court Report replies. | 38 |
| 1298 | Apr. 15, 2026 | Doc. 148, at 46 | MLM | Emails with Jason Cowley, Eric Au, and Joel Glover re responses to restitution report. | 8, 15, 38 |
| 1299 | Apr. 15, 2026 | Doc. 148, at 46 | MLM | Return telephone call to, and emails with, Steve Wilson re remnant Clanwilliam funds. Telephone call to, and emails with, Kathryn Tran re the same. Emails with Scott Avila, Don Harer, Andrew Cowie, David Elkin, JWG, and BDR re the same. Emails with John Babcock re the same. | 18, 29, 38, 54 |
| 1300 | Apr. 15, 2026 | Doc. 148, at 47 | MLM | Video conference with Roberto Martinez Santiago, Victor Acevedo-Hernandez, Luis Llach- Zuniga, Don Harer, Andrew Cowie, and David Elkin re PBLA Main and related issues. | 38 |
| 1301 | Apr. 15, 2026 | Doc. 148, at 47 | MLM | Conference BDR re Bermuda insurance companies and ULICO. | 14, 37, 38 |
| 1302 | Apr. 15, 2026 | Doc. 148, at 47 | BDR | Review communications re sale of certain restitution assets and receipt of litigation-holdback by Steve Wilson in connection the Clanwilliam transaction. | 18, 28, 29, 30, 36, 38, 54 |
| 1303 | Apr. 15, 2026 | Doc. 148, at 47 | JWG | Review email from M. Martinez re turnover of escrowed funds by Steve Wilson. | 29, 38, 54 |
| 1304 | Apr. 15, 2026 | Doc. 148, at 89 | David Elkin | Review B. Wylie's email and Excel file and respond | 38 |
| 1305 | Apr. 15, 2026 | Doc. 148, at 89 | David Elkin | Call with A. Cowie to discuss agenda and PBLA issues | 38 |
| 1306 | Apr. 15, 2026 | Doc. 148, at 89 | Donald Harer | Follow-up call with M. Martinez (Grier), D. Elkin, and A. Cowie (PMG) regarding ULICO response and Deloitte requests | 14, 38 |
| 1307 | Apr. 15, 2026 | Doc. 148, at 90 | Andrew Cowie | Call with M. Martinez (Grier), V. Hernandez, R. Santiago, R. Martinez (ULICO), D. Harer, D. Elkin (Paladin) in regard to PBLA. | 14, 38 |
| 1308 | Apr. 15, 2026 | Doc. 148, at 90 | Andrew Cowie | Call with M. Martinez (Grier), D. Harer, D. Elkin (Paladin) in regard to PBLA. | 38 |
| 1309 | Apr. 16, 2026 | Doc. 148, at 47 | BDR | Call from attorney representing Vista rehabilitator re deadline for response to Memorandum and Recommendations. | 8, 35, 38 |
| 1310 | Apr. 16, 2026 | Doc. 148, at 47 | MLM | Emails with Kate Giduz and Jeff Oleynik re deadline to object to special master report. | 38 |
| 1311 | Apr. 16, 2026 | Doc. 148, at 47 | BDR | Review of interview provided by NC Commissioner of Insurance re restitution. | 38 |
| 1312 | Apr. 16, 2026 | Doc. 148, at 47 | MLM | Telephone call from Dan Ryan re status of special master's efforts. | 38, 40, 41 |
| 1313 | Apr. 16, 2026 | Doc. 148, at 48 | MLM | Emails with Walton Milam and BDR re deadline for filing responses to special master report. | 38 |
| 1314 | Apr. 16, 2026 | Doc. 148, at 48 | MLM | Research re recent communications from North Carolina Commissioner of Insurance and liquidator. Conference BDR re the same. | 28, 30, 35, 38 |
| 1315 | Apr. 16, 2026 | Doc. 148, at 48 | MLM | Video conference (I participated audio only) with David Elkin, Andrew Cowie, and Don Harer re issues with restitution report raised by ULICO, Bermuda, and Greg Lindberg. Additional analysis re the same. Follow-up conference with BDR re the same. | 8, 14, 15, 37, 38 |
| 1316 | Apr. 16, 2026 | Doc. 148, at 48 | MLM | Emails with Francesca Morris, Jonathan Halpern, Arthur Rosenberg, and Nishma Patel re confidentiality issues. | 38, 39 |
| 1317 | Apr. 16, 2026 | Doc. 148, at 90 | Andrew Cowie | Call with M. Martinez (Grier), D. Harer, D. Elkin (Paladin) in regard to ULICO requests. | 14, 38 |
| 1318 | Apr. 16, 2026 | Doc. 148, at 90 | Andrew Cowie | Analysis of objections received in regard to Court Report. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1319 | Apr. 17, 2026 | Doc. 148, at 48 | MLM | Emails with BLF, JWG, and BDR re secondary restitution assets. Continued research re the same. Emails with Andrew Cowie, David Elkin, and Don Harer re the same. | 38 |
| 1320 | Apr. 17, 2026 | Doc. 148, at 48 | MLM | Emails with Kate Giduz and Jeff Oleynik re special master's restitution loss theories. | 38 |
| 1321 | Apr. 17, 2026 | Doc. 148, at 48 | MLM | Texts with Luis Llach-Zuniga re PBLA Main. | 38 |
| 1322 | Apr. 17, 2026 | Doc. 148, at 49 | BDR | Call with CEO, board members, and general counsel for primary restitution assets, as well as MLM and investment bankers re sale process. | 23, 24, 25, 28, 30, 34, 38 |
| 1323 | Apr. 17, 2026 | Doc. 148, at 90 | David Elkin | Read email from B. Wylie and request information from M. Dinius regarding Northstar and Yarrrow Three | 38 |
| 1324 | Apr. 17, 2026 | Doc. 148, at 90 | David Elkin | Review questions and requests from B. Wylie regarding report calculations. Begin formulating responses and Restitution Worksheet revisions. | 38 |
| 1325 | Apr. 18, 2026 | Doc. 148, at 90 | David Elkin | Finalize formulating responses and Restitution Worksheet revisions to B. Wylie questions. | 38 |
| 1326 | Apr. 20, 2026 | Doc. 148, at 49 | MLM | Emails with Don Harer, David Elkin, and Andrew Cowie re restitution loss analysis. Telephone call to Nick Kajon re the same. | 38 |
| 1327 | Apr. 20, 2026 | Doc. 148, at 49 | MLM | Telephone call to Jason Cowley re status of state guaranty associations' recoveries from the North Carolina insurance companies. | 8, 35, 38 |
| 1328 | Apr. 20, 2026 | Doc. 148, at 49 | MLM | Review mail to Greg Lindberg and various others received by M3 Partners. Emails with John Babcock re the same. Emails with BDR and JWG re the same. | 1, 2, 7, 38, 50 |
| 1329 | Apr. 20, 2026 | Doc. 148, at 91 | Donald Harer | Attend to various emails. Call with SA | 38 |
| 1330 | Apr. 21, 2026 | Doc. 148, at 49 | MLM | Video conference with Eric Au and Jason Cowley re early access payments and restitution report. | 8, 15, 38 |
| 1331 | Apr. 21, 2026 | Doc. 148, at 49 | MLM | Return telephone call to counsel for one of the primary restitution assets re possibility of sale. | 28, 30, 38 |
| 1332 | Apr. 21, 2026 | Doc. 148, at 49 | JWG | Review and respond to email from J. Babcock re special master providing identification documents to Danish counsel for SAC. | 36, 38 |
| 1333 | Apr. 21, 2026 | Doc. 148, at 49 | BLF | Review and make edits to Q1 invoice expenses | 38 |
| 1334 | Apr. 22, 2026 | Doc. 148, at 50 | MLM | Telephone call from John Babcock re general status of NHC Holdings activities. Follow-up conferences with BDR and JWG re the same. | 36, 38 |
| 1335 | Apr. 22, 2026 | Doc. 148, at 50 | MLM | Video conference with Nick Kajon, Ben Wylie, Chris Browning, Tony Jones, Luis Llach-Zuniga, Roberto Martinez, and others re restitution loss calculations and related issues. Follow-up telephone call to Nick Kajon re the same. Follow- up conferences with JWG and BDR re the same. Emails with Don Harer, Scott Avila, Andrew Cowie, David Elkin, JWG, and BDR re the same. [. . .] | 8, 15, 38, 40, 41 |
| 1336 | Apr. 22, 2026 | Doc. 148, at 91 | Andrew Cowie | Call with D. Harer (Paladin) in regard to PBLA Main. | 38 |
| 1337 | Apr. 23, 2026 | Doc. 148, at 50 | MLM | Emails with Don Harer, Kathryn Tran, Paula Sosamon, and ACW re communications with policyholders having uncovered claims. Conference JWG re the same. Emails with ACW re the same. | 8, 38 |
| 1338 | Apr. 23, 2026 | Doc. 148, at 51 | MLM | Video conference with Luis Llach-Zuniga and Tony Jones re primary restitution assets. Follow- up conference with BDR re the same. | 38 |
| 1339 | Apr. 24, 2026 | Doc. 148, at 51 | JWG | Teams meeting with representatives of primary restitution asset re sale of that asset. | 28, 30, 38 |
| 1340 | Apr. 24, 2026 | Doc. 148, at 51 | MLM | Telephone call from Wes Camden re sentencing issues. Emails with JWG and BDR re the same. | 35, 38, 42 |
| 1341 | Apr. 24, 2026 | Doc. 148, at 91 | Andrew Cowie | Call with B. Wylie (Deloitte), D. Elkin (Paladin) in regard to Bermuda issues with the Court Report. | 37, 38 |
| 1342 | Apr. 27, 2026 | Doc. 148, at 51 | MLM | Emails with Kate Giduz and Jeff Oleynik re process for resolving objections to the restitution report. | 8, 15, 38 |
| 1343 | Apr. 27, 2026 | Doc. 148, at 52 | MLM | Emails with Nick Kajon, John Johnston, Ben Wylie, and Ryan O'Neill re restitution calculation. | 8, 15, 38 |
| 1344 | Apr. 27, 2026 | Doc. 148, at 92 | Scott Avila | Call with John H (PRA) | 38 |
| 1345 | Apr. 28, 2026 | Doc. 148, at 52 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re restitution report calculations and sales of primary restitution assets. [. . .] | 8, 15, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1346 | Apr. 29, 2026 | Doc. 148, at 52 | MLM | Emails with Luis Llach-Zuniga, Chris Browning, and Tony Jones re PBLA Main deposit account and related issues. Conference and emails with BDR re the same. Conference JWG re the same. | 38 |
| 1347 | Apr. 29, 2026 | Doc. 148, at 52 | JWG | Conference M. Martinez re proper restitution damages from Ulico. | 14, 38 |
| 1348 | Apr. 29, 2026 | Doc. 148, at 52 | BDR | Conference MLM re reply to ULICO. | 14, 38 |
| 1349 | Apr. 29, 2026 | Doc. 148, at 92 | Andrew Cowie | Correspondence with Bermuda (Deloitte) in regard to Court Report. Professional Services United B States v. Greg Lindberg From December 18, 2025 through April 30, 2026 Date Professional Task Description Hours Rate Amount | 37, 38 |
| 1350 | Apr. 30, 2026 | Doc. 148, at 53 | MLM | Video conference with Chris Browning, Tony Jones, Luis Llach-Zuniga, and Victor re various requested clarifications to the special master's recommendations. Follow-up conference with BDR re the same. Quantity Subtotal 137.1 Services Subtotal $57,536.50 | 38, 52 |
| 1351 | May 1, 2026 | Doc. 263, at 8 | MLM | Video conference with counsel for prospective purchaser of certain specified affiliated companies. | 27, 28, 38 |
| 1352 | May 1, 2026 | Doc. 263, at 8 | MLM | Telephone call from Wes Camden re exchange of information following up on restitution report. Emails Andrew Cowie, David Elkin, Don Harer, Scott Avila, JWG, and BDR re the same. Emails with Wes Camden re the same. | 8, 15, 35, 38 |
| 1353 | May 1, 2026 | Doc. 263, at 8 | MLM | Video conference with Andrew Cowie, David Elkin, Don Harer, and BDR re new information discovered concerning restitution calculations. Follow-up conference with BDR re the same. Telephone call to Nick Kajon re the same and related issues. | 8, 15, 38 |
| 1354 | May 1, 2026 | Doc. 263, at 9 | MLM | Video conference with counsel for one of the primary restitution assets, JWG, and BDR. | 38 |
| 1355 | May 1, 2026 | Doc. 263, at 9 | JWG | Teams meeting with representatives of primary restitution asset re sale process. | 28, 30, 38 |
| 1356 | May 1, 2026 | Doc. 263, at 27 | Andrew Cowie | Call with M. Martinez, J. Grier (Grier), D. Elkin, D. Harer (Paladin) in regard to Kajon email. | 38 |
| 1357 | May 4, 2026 | Doc. 263, at 9 | MLM | Review responses to special master's report and recommendations. Review supplemental materials provided by Dan Ryan re the same. Emails with Andrew Cowie, Don Harer, and David Elkin re the same. Conferences with BDR re the same. Emails with Walton Milam and BDR re the same. | 15, 38, 40, 41, 51 |
| 1358 | May 4, 2026 | Doc. 263, at 9 | MLM | Emails with Wes Camden re new spreadsheet from Mike Dinius. Emails with Andrew Cowie, David Elkin, and Don Harer re the same. | 35, 38 |
| 1359 | May 4, 2026 | Doc. 263, at 9 | BDR | Review of most recent check register provided by Epiq. | 38 |
| 1360 | May 6, 2026 | Doc. 263, at 9 | MLM | Emails with Luis Llach-Zuniga re liquidation of primary restitution assets. | 28, 30, 38 |
| 1361 | May 6, 2026 | Doc. 263, at 9 | MLM | Telephone call from Walton Milam re Vista. | 8, 38 |
| 1362 | May 6, 2026 | Doc. 263, at 27 | Scott Avila | Call with investor in PRA | 38 |
| 1363 | May 6, 2026 | Doc. 263, at 27 | Scott Avila | Travel to Attend PRA board meeting | 23, 24, 25, 38 |
| 1364 | May 7, 2026 | Doc. 263, at 9 | MLM | Review and analyze responses to special master's report and recommendations. Emails with Walton Milam and BDR re the same. [. . .] | 15, 38, 51 |
| 1365 | May 7, 2026 | Doc. 263, at 10 | JWG | Review email from counsel for one of the primary restitution assets re proposed waiver for G. Lindberg. | 38, 53 |
| 1366 | May 7, 2026 | Doc. 263, at 28 | Scott Avila | Particpate on stratic discussion with PRA board and mgmt | 23, 24, 25, 38 |
| 1367 | May 7, 2026 | Doc. 263, at 28 | | Scott Avila Travel from PRA to Chicago (return from meeting) 6.50 512.5 $3,331.25 | 38 |
| 1368 | May 7, 2026 | Doc. 263, at 28 | Donald Harer | Review materials supplied by DOJ | 38, 40, 41 |
| 1369 | May 8, 2026 | Doc. 263, at 10 | MLM | Telephone call with Jason Cowley and Eric Au re restitution and sentencing issues. | 38, 42 |
| 1370 | May 8, 2026 | Doc. 263, at 11 | MLM | Conference call with Tony Jones and Luis Llach- Zuniga re sentencing and sale of primary restitution assets. | 28, 30, 38, 42 |
| 1371 | May 10, 2026 | Doc. 263, at 28 | Scott Avila | Draft various emails to PRA mgmt and Board | 23, 24, 25, 38 |
| 1372 | May 11, 2026 | Doc. 263, at 11 | MLM | [. . .] Telephone call to Dan Ryan re the same [draft sentencing memorandum] and related sentencing issues. | 38, 40, 41, 42 |
| 1373 | May 11, 2026 | Doc. 263, at 28 | Scott Avila | Call with PRA Board re; various strategic alternatives | 23, 24, 25, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1374 | May 12, 2026 | Doc. 263, at 11 | MLM | Telephone call from John Babcock re status of NHC Holdings' efforts and related issues. | 36, 38 |
| 1375 | May 13, 2026 | Doc. 263, at 11 | MLM | Review and revise draft status report for the period covering the end of December through April 30, 2026. Emails with Scott Avila, Don Harer, Paula Sosamon, Andrew Cowie, David Elkin, and JWG re the same. Emails with Dan Ryan, Lyndie Freeman, and Ben Bain-Creed re the same. [. . .] | 38, 40, 41 |
| 1376 | May 13, 2026 | Doc. 263, at 11 | MLM | Follow-up research on certain restitution issues raised in responses to special master's report. Conference call with Wes Camden and Caitlin Poe re the same and related issues. | 8, 15, 35, 38, 51 |
| 1377 | May 14, 2026 | Doc. 263, at 12 | MLM | Conference call with Tony Jones and Luis Llach- Zuniga re various unresolved restitution issues. Follow-up research re the same. Finalize restitution report suuplement. | 8, 15, 38 |
| 1378 | May 14, 2026 | Doc. 263, at 12 | MLM | Conferences with JWG re waiver document. Emails with counsel for one of the primary restitution assets re the same. Telephone call with said counsel re the same. [. . .] | 38, 53 |
| 1379 | May 14, 2026 | Doc. 263, at 12 | MLM | Emails with Dan Ryan, Lyndie Freeman, and Ben Bain-Creed re revised proposed preliminary restitution order. Revise the same. Emails with Andrew Cowie, David Elkin, Don Harer, BDR, and JWG re the same. Emails with Luis Llach-Zuniga and Tony Jones re the same. | 8, 15, 38, 40, 41 |
| 1380 | May 16, 2026 | Doc. 263, at 29 | Scott Avila | Call with investor of PrA | 38 |
| 1381 | May 18, 2026 | Doc. 263, at 12 | MLM | Review engagement letter between NHC Holdings LLC and A&L Goodbody LLP. Emails with JWG and BDR re the same. Emails with John Babcock re the same. | 36, 38 |
| 1382 | May 18, 2026 | Doc. 263, at 29 | Donald Harer | Coordinate logistics for Bermuda and ULICO meetings | 14, 37, 38 |
| 1383 | May 19, 2026 | Doc. 263, at 12 | MLM | Emails with Walton Milam and BDR re sentencing and restitution issues. [. . .] Review memorandum from BDR on defendant's cooperation. Review government's sentencing memorandum. | 8, 15, 38, 42 |
| 1384 | May 20, 2026 | Doc. 263, at 13 | MLM | Draft statement concerning defendant's cooperation. Conferences with JWG re the same. Continue reviewing materials in advance of sentencing hearing, including victim impact statements and Kathy Million letter in support of Greg Lindberg. Telephone call from Dan Ryan re the same. Emails with Andrew Cowie, Don Harer, David Elkin, and JWG re the same. | 8, 38, 40, 41, 42 |
| 1385 | May 26, 2026 | Doc. 263, at 14 | MLM | Conference with Nick Kajon, Marcin Czarnocki, Ben Wylie, Ryan O'Neill, Andrew Cowie, David Elkin, JWG, and BDR re outstanding restitution issues and asset liquidation obstacles. | 8, 15, 28, 30, 38 |
| 1386 | May 26, 2026 | Doc. 263, at 14 | BDR | Meeting to discuss case issues with JWG, MLM, David Elkin, Andrew Cowie, Nick Kajon, Ben Wylie, and others. | 38 |
| 1387 | May 26, 2026 | Doc. 263, at 14 | MLM | Emails with Margaret Westbrook re sentencing hearing. | 38, 42 |
| 1388 | May 26, 2026 | Doc. 263, at 14 | JWG | Post-sentencing conference with Bermuda contingency re case issues. | 37, 38, 42 |
| 1389 | May 26, 2026 | Doc. 263, at 30 | Donald Harer | Call with A. Cowie regarding sentencing and Bermuda | 37, 38, 42 |
| 1390 | May 27, 2026 | Doc. 263, at 14 | MLM | Emails with Nick Kajon re secondary restitution assets. | 38 |
| 1391 | May 27, 2026 | Doc. 263, at 30 | Scott Avila | Call with PRA re: refinancing | 13, 38 |
| 1392 | May 28, 2026 | Doc. 263, at 14 | JWG | Review proposed letter to Holland & Knight re Damovo Group Transaction and email re same to D. Harer and M. Martinez. | 28, 30, 31, 36, 38 |
| 1393 | May 28, 2026 | Doc. 263, at 14 | MLM | Telephone call from John Babcock re employee retention credit refund and related issues. | 16, 20, 38 |
| 1394 | May 28, 2026 | Doc. 263, at 15 | MLM | Emails with Nick Kajon re secondary restitution assets. | 38 |
| 1395 | June 1, 2026 | Doc. 263, at 15 | BDR | Review of letter from Special Master re non- opposition to Damovo transaction; revision to same. | 28, 30, 31, 36, 38 |
| 1396 | June 1, 2026 | Doc. 263, at 15 | JWG | Review comments from D. Harer on Damoco letter to Holland & Knight; edit Damoco letter. | 31, 38 |
| 1397 | June 2, 2026 | Doc. 263, at 15 | MLM | Review email from Cypress Creek Intermediaries, Inc. | 38 |
| 1398 | June 2, 2026 | Doc. 263, at 15 | MLM | Emails with John Babcock re NHC Holdings, LLC executive committee. Emails with Don Harer re the same. | 36, 38 |
| 1399 | June 2, 2026 | Doc. 263, at 15 | MLM | Emails with Francesca Morris, Arthur Rosenberg, Jonathan Halpern, Abigail Grise, Amy Patterson, and Huguette Craggs re potential purchase of a specified affiliated company. Emails with John Babcock and Wes Camden re the same. | 35, 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1400 | June 3, 2026 | Doc. 263, at 30 | Scott Avila | Call with PRA re; update | 38 |
| 1401 | June 4, 2026 | Doc. 263, at 15 | MLM | Emails with John Babcock, Don Harer, and JWG re employee retention tax credits deposited into special master's deposit account. | 16, 20, 38 |
| 1402 | June 4, 2026 | Doc. 263, at 16 | MLM | Telephone call with Wes Camden re remaining restitution issues. | 8, 15, 35, 38 |
| 1403 | June 4, 2026 | Doc. 263, at 30 | Scott Avila | Call with PRA - sale process | 28, 30, 38 |
| 1404 | June 5, 2026 | Doc. 263, at 16 | MLM | Video conference with Jason Cowley and Eric Au (I participated audio only) re status of restitution and payment priority issues. | 38 |
| 1405 | June 5, 2026 | Doc. 263, at 16 | BDR | Email to James Paul re Clanwilliam Irish tax escrow account statements. | 18, 29, 38 |
| 1406 | June 5, 2026 | Doc. 263, at 30 | Scott Avila | Review and respond to PRA emails | 38 |
| 1407 | June 6, 2026 | Doc. 263, at 16 | MLM | Review email from prospective purchaser of a specified affiliated company. | 27, 28, 38 |
| 1408 | June 8, 2026 | Doc. 263, at 16 | MLM | Emails with Jason Cowley re outstanding restitution issues. | 8, 15, 38 |
| 1409 | June 8, 2026 | Doc. 263, at 16 | MLM | Conference call with Wes Camden and JWG re payment priority issues and related issues. Emails with Nick Kajon re the same. | 35, 38 |
| 1410 | June 9, 2026 | Doc. 263, at 17 | MLM | Telephone call from counsel for one of the primary restitution assets re liquidation efforts. | 28, 30, 38 |
| 1411 | June 9, 2026 | Doc. 263, at 17 | MLM | Draft lenghty email to Ryan O'Neill, Constantine Pourakis, and Nick Kajon re remaining restitution issues and possibility for larger resolution. | 8, 15, 38 |
| 1412 | June 9, 2026 | Doc. 263, at 17 | MLM | Emails with Jason Cowley re outstanding restitution issues and potential global resolution. | 8, 15, 38 |
| 1413 | June 10, 2026 | Doc. 263, at 17 | MLM | Telephone call from Jason Cowley re open restitution issues. Emails with Jason Cowley and Wes Camden the same. Revise draft term sheet to govern consensual resolution of outstanding restitution issues. | 8, 15, 35, 38, 52 |
| 1414 | June 11, 2026 | Doc. 263, at 18 | MLM | Review recent pleadings filed by Greg Lindberg, Conservatrix, and Vista. Telephone call from the Fourth Circuit re the same. Conferences with JWG, BDR, and ASG re the same. Telephone call and emails with Jeff Oleynik re the same. Emails with Lyndie Freeman, Dan Ryan, Ben Bain- Creed, JWG, and BDR re the same. Research re writs of mandamus. | 8, 38, 40, 41 |
| 1415 | June 11, 2026 | Doc. 263, at 18 | MLM | Emails with Constantine Pourakis re Lindberg's recent motion to stay special master's efforts. | 38 |
| 1416 | June 12, 2026 | Doc. 263, at 18 | MLM | Continue review of, analysis of, and research related to recent pleadings filed on the docket by various parties this week. Conferences with JWG and BDR re the same. Emails with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, JWG, BDR and others re the same. Revise draft response in opposition to petition for writ of mandamus. | 38, 40, 41 |
| 1417 | June 12, 2026 | Doc. 263, at 19 | MLM | Video conference with Tony Jones and Luis Llach-Zuniga (I participated audio only) re various outstanding issues, including recent filings and draft term sheet. | 38, 52 |
| 1418 | June 13, 2026 | Doc. 263, at 19 | MLM | Emails with John Babcock re status of restitution and related processes. | 38 |
| 1419 | June 14, 2026 | Doc. 263, at 31 | Scott Avila | Send emails to PRA re; request for financial information | 38 |
| 1420 | June 15, 2026 | Doc. 263, at 19 | MLM | Continue reviewing recent pleadings filed by various parties, including Fourth Circuit opinion denying petition for writ of mandamus with prejudice. Conferences with BDR and JWG re the same. Emails with Jason Cowley re the same. Emails with Wes Camden and Dan Ryan re the same. Telephone call from Wes Camden re the same. | 35, 38, 40, 41 |
| 1421 | June 15, 2026 | Doc. 263, at 19 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re priority issues. | 38 |
| 1422 | June 16, 2026 | Doc. 263, at 19 | MLM | Emails with Dan Ryan and Lyndie Freeman re responses to recent motions filed. Review emails between Dan Ryan and others re the same. Emails with Wes Camden re the same. Review government's motion for extension of time to respond to emergency motions. Further review of emergency motion for which today is the purported deadline to respond. | 35, 38, 40, 41 |
| 1423 | June 17, 2026 | Doc. 263, at 20 | MLM | Telephone call from Dan Ryan re recent pleadings filed in the case. Follow-up conference with BDR re the same. | 38, 40, 41 |
| 1424 | June 17, 2026 | Doc. 263, at 20 | BDR | Conference MLM re response to Defendant's recent filings; draft response. | 38 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1425 | June 17, 2026 | Doc. 263, at 20 | MLM | Continue reviewing pleadings recently filed in case. Emails with Lyndie Freeman, Dan Ryan, Andrew Cowie, Ben Bain-Creed, David Elkin, Scott Avila, Don Harer, BDR, and JWG re the same. | 38, 40, 41 |
| 1426 | June 17, 2026 | Doc. 263, at 31 | Scott Avila | Call with Julia and Andrew re; model review | 38 |
| 1427 | June 17, 2026 | Doc. 263, at 31 | Scott Avila | Call with Debt holder of PRA re: update on refinancing | 13, 38 |
| 1428 | June 17, 2026 | Doc. 263, at 31 | Julia Greeley | Call with A. Cowie to debrief on changes from PRA call | 38 |
| 1429 | June 18, 2026 | Doc. 263, at 20 | MLM | Emails and exchange messages with Walton Milam re potential new pleading from Vista. Conduct historical/factual and legal research re recent pleadings filed in the case. | 8, 38 |
| 1430 | June 18, 2026 | Doc. 263, at 20 | MLM | Emails with Luis Llach-Zuniga and Tony Jones re draft term sheet to resolve distribution issues. | 38, 52 |
| 1431 | June 19, 2026 | Doc. 263, at 20 | MLM | Telephone call from John Babcock re status NHC Holdings, LLC's efforts to administer the Specified Affiliated Companies for the benefit of victims. | 8, 36, 38 |
| 1432 | June 20, 2026 | Doc. 263, at 21 | MLM | Emails with Tony Jones, Luis Llach-Zuniga, and Andrea Farley re process for liquidating primary restitution assets. | 28, 30, 38 |
| 1433 | June 22, 2026 | Doc. 263, at 21 | MLM | Research re available historical information on employee retention credit refund received last year. Emails with John Babcock re the same. | 16, 20, 38 |
| 1434 | June 22, 2026 | Doc. 263, at 21 | MLM | Review recently-filed defendant's response in opposition to motion for extension of time filed by the government. Review defendant's counsel's emails with the court re the same. Review defendant's response in opposition to motion for extension of time filed by the special master. | 38, 40, 41 |
| 1435 | June 22, 2026 | Doc. 263, at 21 | MLM | Begin drafting final restitution order [2 hrs.]. Research re the same [1.5 hrs.]. Video conference (I participated audio only) with Nick Kajon and Dean Pourakis re the same [0.5 hrs.]. Review current iteration of potential compromise term sheet and email Nick Kajon re the same [0.3 hrs.]. | 8, 15, 38, 52 |
| 1436 | June 23, 2026 | Doc. 263, at 21 | MLM | Emails with Jason Cowley re procedure for resolving open restitution issues and related issues. | 8, 15, 38 |
| 1437 | June 23, 2026 | Doc. 263, at 21 | MLM | Emails with Constantine Pourakis re potential sale of one of the specified affiliated companies. | 28, 30, 38 |
| 1438 | June 23, 2026 | Doc. 263, at 21 | BDR | Conference MLM re response to recent filing; review of filings by Vista. | 8, 38 |
| 1439 | June 23, 2026 | Doc. 263, at 22 | MLM | Video conference (I participated audio only) with Roberto Martinez-Santiago, Andrea Farley, Luis Llach-Zuniga, and Tony Jones re status of primary restitution assets. | 38 |
| 1440 | June 26, 2026 | Doc. 263, at 22 | MLM | Telephone call from Jason Cowley status of preparation of final supplement to restitution report. Telephone call from Wes Camden re the same. Draft final supplement to restitution report. | 8, 15, 35, 38, 51 |
| 1441 | June 26, 2026 | Doc. 263, at 22 | BDR | Conference MLM re call with NCICs and other case updates. | 35, 38 |

October 5, 2026

**VIA ELECTRONIC MAIL**

Daniel Ryan, Assistant United States Attorney (Daniel.Ryan@usdoj.gov)
Benjamin Bain-Creed, Assistant United States Attorney (Benjamin.Bain-Creed@usdoj.gov)
United States Attorney's Office for the Western District of North Carolina
Lyndie Freeman, U.S. Department of Justice, Criminal Division (Lyndie.Freeman@usdoj.gov)
Jeremy Sanders, U.S. Department of Justice (jeremy.sanders@usdoj.gov)

**Re:** *United States v. Lindberg*, **Nos. 3:23-CR-48-MOC and 5:19-CR-22-MOC (W.D.N.C.) — Demand to Cease and Desist All Ex Parte Communications with the Special Master; Notice of Willful Continuation; Demand for Recusal**

Counsel:

We write on behalf of Defendant Greg E. Lindberg. This letter is a formal demand that the United States, through each of you and anyone acting with you, immediately cease and desist from all communications concerning this case with the Special Master, Joseph W. Grier, III, his counsel, Grier Wright Martinez, PA, and his financial advisor, Scott Avila and Paladin Management Group, LLC (together, the "Special Master Team"). Defendant further demands that AUSA Dan Ryan and every other Government attorney who took part in those communications recuse from this matter. It is also notice that, because the Government has been told in writing that these communications are improper, any such communication from this point on is knowing and willful. This letter concerns both *United States v. Lindberg*, No. 3:23-CR-48-MOC, and *United States v. Lindberg*, No. 5:19-CR-22-MOC (W.D.N.C.). Docket citations are to No. 3:23-CR-48-MOC, in which the Special Master's reports and fee applications are filed.

**1. Ex parte contact with the Special Master is prohibited.**

The Court referred the restitution issues in this case to the Special Master under 18 U.S.C. § 3664(d)(6) "for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court." The

Order Appointing Special Master (Doc. 56) (the "Appointment Order") requires the Special Master to "regularly update the Parties" and to "consult with the Parties," Doc. 56 ¶ 5, and to advise the Defendant "through Defendant's counsel," in writing, *id.* ¶ 8. It authorizes no ex parte communication with either party. *Cf.* Fed. R. Civ. P. 53(b)(2)(B) (an appointing order must state "the circumstances, if any, in which the master may communicate ex parte with the court or a party"). Rule 53 governs masters in civil cases; in this criminal case, where the master's findings fix criminal punishment, its protections are the minimum, not the ceiling. Because this is a criminal proceeding, Mr. Lindberg's constitutional rights, including his right to due process under the Fifth Amendment, also attach.

As attorneys for the Government, each of you is "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties." 28 U.S.C. § 530B(a). North Carolina forbids a lawyer representing a party, "unless authorized to do so by law or court order," to "communicate ex parte with the judge or other official regarding a matter pending before the judge or official." N.C. Rules of Pro. Conduct r. 3.5(a)(3). An ex parte communication is "a communication on behalf of a party to a matter pending before a tribunal that occurs in the absence of an opposing party, without notice to that party, and outside the record." *Id.* r. 3.5(d)(1). The Special Master is the official to whom the Court referred the restitution determination. No law or order authorizes the Government to communicate with him off the record.

**2. The record shows the Government's ex parte contacts with the Special Master Team.**

The Special Master's own filings and time records document the following contacts between the Government and the Special Master Team. None lists defense counsel as a participant. The communications described below are examples only; many more are referenced in the schedules to this letter.[1] The communications

1 The communications identified in this letter, Schedule A, and Appendix 1 are based on current counsel's review of the Special Master Team's own billing entries, the billing entries of Mr. Lindberg's prior counsel filed on the docket (Katten Muchin Rosenman LLP, Docs. 75-1, 87-1, 97-2, 154-2, 336-2; Wyatt & Blake, LLP, Docs. 71-1, 83-1, 98-1, 149-1, 264-1), and prior counsel's non-privileged emails to and from the Special Master Team and/or the Government, drawn from approximately 1.8 GB of prior counsel's files transferred to current counsel. The entries listed are communications that do not appear in prior counsel's non-privileged emails with the Special Master Team or the Government or in prior counsel's billing entries. The Government and the Special

between the Government and the Special Master Team disclosed in the record to date are summarized in Schedule A; every individual time entry in the Special Master Team's five fee applications that records or refers to a communication with the Government, without recording the participation of defense counsel, is listed verbatim in Appendix 1; and the Special Master's five status reports and five fee applications are listed in Schedule B:

> **December 2024.** Before the Appointment Order was entered, Mr. Martinez had "conversations with Assistant US Attorney" about the "form of motion seeking special master, and form of order appointing special master"; the Special Master sent an "email to Dan Ryan" about the "proposed motion for appointment of special master"; and on December 17, 2024, the Special Master and Mr. Martinez held a conference with AUSA Dan Ryan, Ms. Freeman, and AUSA Stout "re contents of brief in support of order appointing special master." Doc. 69, at 11–12.
>
> **February 13, 2025.** Immediately after a joint call, the Special Master and Mr. Martinez held a "[f]ollow-up phone call with D. Ryan and B. Bain-Creed re scope of special master order." Doc. 69, at 23.
>
> **July 2025.** The Special Master Team sent its billing statements to AUSA Dan Ryan before filing them and reviewed his "feedback . . . re: invoices." Doc. 81, at 22, 24.
>
> **August 20, 2025.** The Special Master held a "Teams meeting with DOJ to prepare for status hearing on 8/26." Doc. 81, at 41.
>
> **October 15, 2025.** The Special Master, his counsel, and Paladin "met with the representatives from the U.S. Attorney's office, certain state guaranty

Master Team have refused to provide the communications and the records underlying them. *See* Doc. 341; Doc. 343 ¶¶ 10, 24. Defendant therefore places this information on the record, including for purposes of his appeal to the United States Court of Appeals for the Fourth Circuit, as an approximate placeholder showing how extensive the ex parte contact was and how pervasive the issues it raises are. These entries are necessarily incomplete and approximate. For example, the Special Master's contacts are innumerable and, in the Special Master's own words, untallied: his counsel describes the Special Master Team's communications "[w]ithout having tallied each and every phone call, email, video conference, or the amount of time spent on each." Doc. 343 ¶¶ 9–10. Additionally, Mr. Lindberg is working with prior counsel to identify any entries that have slipped through and will promptly update the docket with any corrections as more information becomes available. The complete record remains with the Government and the Special Master Team.

associations, and NOLHGA" to, among other things, "discuss various issues and concerns about the calculation of restitution amounts." Doc. 94, at 6.

**October 27, 2025.** The Special Master Team reviewed "AUSA comments to draft status report." Doc. 95, at 18.

**March 16 and April 1, 2026.** Before the Special Master's report was filed on April 3, 2026, his team reviewed "comments to draft restitution report and redline of proposed order from DOJ," Doc. 148, at 37, and Mr. Martinez held a "[c]onference call with Dan Ryan and Andrew Cowie re specific language in various parts of the restitution report and appendices" and exchanged emails "re futher [sic] edits to draft report from the government," *id.* at 43.

**May 4, 2026.** Mr. Martinez reviewed "supplemental materials provided by Dan Ryan" concerning the responses to the Special Master's report. Doc. 263, at 9.

**May 11, 2026 — the private call on the eve of sentencing.** After an exchange about the defense's draft sentencing memorandum that included James Wyatt, Mr. Martinez placed a separate "[t]elephone call to Dan Ryan re the same and related sentencing issues." Doc. 263, at 11. No defense counsel is recorded on that call. It took place three days before Mr. Lindberg filed his sentencing memorandum and fifteen days before sentence was imposed, and it concerned Mr. Lindberg's sentence. Mr. Wyatt had invited comments on the draft memorandum by email to the Special Master Team and the Government together; that invitation did not extend to a private call between the prosecutor and the Special Master/Magistrate under the MVRA. AUSA Dan Ryan knows what was said; Mr. Lindberg does not. No prosecutor should discuss a defendant's sentencing privately with the Special Master/Magistrate under the MVRA days before sentence is imposed. Demand (c) below specifically includes AUSA Dan Ryan's notes and records of that call and every communication with the Special Master Team concerning sentencing.

**May 14, 2026.** "Emails with Dan Ryan, Lyndie Freeman, and Ben Bain-Creed re revised proposed preliminary restitution order. Revise the same." Doc. 263, at 12.

**May 20, 2026 — the cooperation statement.** While drafting the Special Master's statement concerning Mr. Lindberg's cooperation, filed two days later (Doc. 159), Mr. Martinez took a "[t]elephone call from Dan Ryan re the same." Doc. 263, at 13. No defense counsel is recorded on that call. Defense counsel were sent the draft the next day and proposed revisions, *id.*; by then the Government had already been heard privately.

**June 16, 2026.** "Emails with Dan Ryan and Lyndie Freeman re responses to recent motions filed." Doc. 263, at 19.

**June 17, 2026.** The same day as a conference call with the Court and counsel for both sides, a "[t]elephone call from Dan Ryan re recent pleadings filed in the case." Doc. 263, at 20.

**Forfeiture.** The Consent Order and Judgment of Forfeiture, signed for the Government by AUSA Benjamin Bain-Creed on the day of sentencing, sets the forfeiture money judgment by reference to "the Special Master's estimate . . . of the 'Mid' point value of the 'Primary Restitution Assets,'" and directs the Government to "coordinate with the Special Master." Doc. 160, at 1–3. AUSA Bain-Creed was a party to the Government's private contacts with the Special Master Team about "restitution liens," "asset valuation," the "Paradigm Park funds," the Special Master's report, and the "revised proposed preliminary restitution order." Doc. 69, at 24, 45; Doc. 95, at 28; Doc. 148, at 30, 37, 39; Doc. 263, at 12. The prosecutor who drafted the forfeiture order thus dealt privately with the Special Master/Magistrate under the MVRA, whose valuation fixes its amount.

**Sentencing transcript.** The Special Master relied on "a transcript of the sentencing hearing provided to the Special Master by the government." Doc. 245, at 5.

**The Government edited the Special Master's drafts.** The entries above show that the Government commented on, redlined, and edited the Special Master's status report (Oct. 27–28, 2025), his restitution report and proposed preliminary order (Feb. 23, Mar. 16, Mar. 27–31, and Apr. 1, 2026), and the revised proposed preliminary order filed with his supplement (May 14, 2026). Doc. 95, at 18–19; Doc. 148, at 30, 37, 39–40, 43; Doc. 263, at 12. Those filings went to the Court as the findings of the Special Master/Magistrate under the MVRA, and the Government now relies on them as its proof. Doc. 279, at 2. Your comments, redlines, and edits

have never been produced. Defense counsel were sent some of the same drafts; that does not make the Government's separate comments, calls, and redlines any less ex parte.

These entries are drawn from the Special Master's five status reports and five fee applications; they record only that the communications occurred, not what was said. By the Special Master Team's own account, its communications have never been "tallied." Doc. 343 ¶ 10. The time entries are also block-billed. They record the minimum that occurred, not every call or email: they are a floor, not a ceiling. The Special Master's counsel describes communicating with third parties "on a daily (or near daily) basis." Doc. 343 ¶ 9. The full extent of the Government's ex parte contact is known only to the Government and the Special Master Team.

Schedule A and Appendix 1 are the best evidence available to Mr. Lindberg of these communications. He was a party to none of them. The only parties were the Government and the Special Master Team, and the calendars, call logs, notes, and emails that would confirm or refute any entry are in your files and the Special Master Team's, not his. A challenge to one entry is not a denial of any other. If the Government disputes any entry, please identify it specifically, entry by entry, with the basis for the dispute, within the seven days provided in paragraph 5(c). Mr. Lindberg will ask the Court to treat every entry not specifically disputed as an acknowledged ex parte communication.

Every communication described in this section, and every communication listed in Schedule A and Appendix 1, also violates Mr. Lindberg's constitutional rights as a criminal defendant. The proposed findings at issue will fix the amount of a criminal punishment. The Fifth Amendment forbids depriving any person of property "without due process of law." U.S. Const. amend. V. The Sixth Amendment guarantees the accused "the Assistance of Counsel for his defence." U.S. Const. amend. VI. When the prosecution supplies information, comments, and redlines to the official charged with making restitution findings, outside the presence of defense counsel and outside the record, Mr. Lindberg cannot see, test, or answer what is being used against him, and his counsel is shut out of the very process that will determine his punishment.

The same is true of every figure the Special Master Team received from the Government, or allowed the Government to change, outside the presence of defense counsel. The Government commented on, redlined, and edited the Special Master's

status report, his restitution report and its appendices, and his proposed restitution orders. *See* Doc. 95, at 18–19; Doc. 148, at 30, 37, 39–40, 43; Doc. 263, at 12. The forfeiture money judgment, in turn, is set by reference to "the Special Master's estimate . . . of the 'Mid' point value of the 'Primary Restitution Assets.'" Doc. 160, at 1. When the Special Master/Magistrate under the MVRA receives information from the prosecution and allows the prosecution to edit the documents that carry the restitution figures and the valuations on which forfeiture depends, without defense counsel present and without any opportunity for the defense to test those figures, or any other figure or "edit" to the restitution determination, the result violates due process. It also merges two roles that must remain separate. The Special Master/Magistrate under the MVRA is to be impartial; when the prosecutor shapes the findings the Special Master submits to the Court, the Special Master and the prosecutor become one. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer." *Id.* at 137. Defendant reserves every constitutional objection arising from these communications.

**Ares.** The Government's contacts with Ares Management, L.P. in late 2018 and 2019, while Ares was conducting due diligence on the North Carolina insurers under its exclusive letter of intent, are set out in Defendant's filings. Doc. 234, Part VII & Exs. G, A15; Doc. 348 ¶ 2; Doc. 354, at 52, 58. The contemporaneous records of the Ares transaction include interview memoranda dated December 19, 2018, March 25, 2019, and June 14, 2019. Doc. 348 ¶ 2. The Government has transmitted FD-302 reports to the defense by email. *See* Doc. 345-4, at 13. Defendant now asks the Government to disclose every telephone call between AUSA Dan Ryan and Ares, and to produce the presentations referenced in those FD-302 reports and in the emails that transmitted them.

### 3. The Government has been on notice. The breach is now willful.

The Government's breach is now willful. It has been told in writing that these communications are improper, and it has not stopped.

In mid-August 2026, defense counsel served a written meet-and-confer demand on the Government and the Special Master for the data and communications underlying the restitution figure. Doc. 345-4, at 4. On August 31,

2026, Defendant moved to compel "the Government To Produce The Data Underlying The Restitution Figure It Adopted And Its Ex Parte Communications With The Special Master." Doc. 331. On September 14, 2026, Defendant asked the Special Master Team in writing to cease substantive communication with the Government except on notice to defense counsel and on the record. Each of you was copied. Doc. 345-4, at 2.

Accordingly, any ex parte communication between the Government and the Special Master Team since August 31, 2026, and any such communication after receipt of this letter, is knowing and willful. Defendant will so characterize it to the Court. The Rules of Professional Conduct also make it misconduct to violate the Rules "through the acts of another" and to "engage in conduct that is prejudicial to the administration of justice." N.C. Rules of Pro. Conduct r. 8.4(a), (d).

**4. The Government seeks punishment measured by a later law while disregarding the most basic rule of advocacy.**

The setting makes this conduct more serious, not less. In a criminal proceeding, the Government asks the Court to order Mr. Lindberg to pay more than $1.6 billion. Restitution under the Mandatory Victims Restitution Act is criminal punishment. *Ellingburg v. United States*, 607 U.S. 163, 166 (2026). The Government measures that punishment by the affiliated investments themselves: it says Mr. Lindberg "caused the victim insurance companies to invest in billions of dollars of 'illiquid' assets." Doc. 353, at 1 n.1. Those investments were lawful when they were made. Every affiliated loan at issue was originated before control of the insurers passed in October 2018, and before then limits on affiliated investment were set company by company by the regulator. Doc. 354, at 33. North Carolina first restricted affiliated investment by statute in July 2019, as the Government's own sentencing memorandum acknowledges: "North Carolina followed suit, passing a law restricting insurers from investing more than 10% of its assets in affiliated entities." Doc. 152, at 23 n.12. The Constitution forbids measuring criminal punishment by a standard adopted after the conduct occurred. U.S. Const. art. I, § 9, cl. 3; *Peugh v. United States*, 569 U.S. 530, 533 (2013). Mr. Lindberg has preserved that objection at every stage. Doc. 354, at 34.

While pressing that claim, the Government's trial attorneys communicated privately, for eighteen months, with the Special Master/Magistrate under the

MVRA appointed to propose the restitution figure, about the victims, the loss, the assets, his report, and the sentencing. That a lawyer may not communicate ex parte with the tribunal about a pending matter is among the first rules of professional conduct every lawyer learns, and among the most familiar to experienced federal prosecutors. N.C. Rules of Pro. Conduct r. 3.5(a)(3). It is not a technicality that a seasoned litigator could overlook.

After being told, the Government did not stop, did not disclose, and did not refer the matter for review. It blamed Mr. Lindberg. It told the Court that his "strategic decision to wait nearly 20 months to raise his complaints with the Special Master process so that he could appear cooperative at his sentencing" forecloses relief, and that he "waited too long to assert them in the hopes of gaining a strategic advantage at his sentencing." Doc. 341, at 1–2. The communications were the Government's own. Mr. Lindberg was in custody throughout, was not a party to them, and was never told what was said. Defense counsel asked at least five times in five weeks that the matter be referred to the Department's ethics office and, finally, to the Office of the Deputy Attorney General. The response was to copy the very trial attorneys whose conduct was at issue and to supply a public web link for the Office of Professional Responsibility. Doc. 345, at 25–26, 34–35. Mr. Lindberg asked the Court to direct that the Government attorneys who participated in the ex parte communications be recused. Doc. 347, at 65. Each of you remains on the case, and the attorneys whose conduct is in question continue to answer for the Government on the question of their own conduct.

The prosecutor's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). Seeking punishment measured by a later law, communicating privately with the Special Master/Magistrate under the MVRA deciding it, blaming the defendant when the communications came to light, declining to step aside, and declining to invoke the Department's own internal procedures are not consistent with that duty. Mr. Lindberg again asks that each attorney who took part in the ex parte communications withdraw from this matter, and that the Department refer this letter and the communications in Schedule A to the Office of Professional Responsibility and to the Office of the Deputy Attorney General for independent review.

**5. Demands.**

Defendant demands that the Government:

**(a) Cease immediately** all communications, oral or written, with any member of the Special Master Team concerning restitution, loss, valuation, causation, offsets, credits, forfeiture, the disposition of any Primary Restitution Asset, or any pending motion.

**(b) Preserve** all documents and electronically stored information reflecting communications with the Special Master Team, including emails, text and instant messages, call logs, calendar entries, Teams and video-conference records, and notes, held by the United States Attorney's Office, the Criminal Division, any investigative agency, or any victim-witness personnel.

**(c) Within seven days, produce, for each communication listed in Schedule A and in Appendix 1 to this letter,** the Government's notes, memoranda, and summaries of the communication; the calendar entries, call logs, and video-conference records showing its date, time, and duration and each participant; all emails, text messages, and attachments associated with it; and all documents the Government provided or received in connection with it, together with the additional items listed for that communication in Schedule A, including the "supplemental materials" of May 4, 2026 (Doc. 263, at 9).

**(d) Catch-all.** Within the same seven days, serve a log of every other communication about this case, from December 1, 2024, to the present, between any Government attorney, agent, or employee and any member of the Special Master Team (including the Special Master, Grier Wright Martinez, PA, Paladin Management Group, LLC, their personnel, and any designee of the Special Master on the board of NHC Holdings, LLC or any other Primary Restitution Asset), outside the presence of defense counsel, whether or not it appears in any filing or in Schedule A, and in whatever medium it occurred, including personal email accounts, text and instant messages, and messaging applications. The log should show the date, time, duration, participants, medium, and subject of each communication. Produce the Requested Materials for each.

**(e) State in writing** whether any such communication has occurred since August 31, 2026, and, if so, identify each one.

**(f) Disclose every telephone call** between AUSA Dan Ryan, or any other Government attorney or agent, and Ares Management, L.P. or any of its affiliates, employees, advisors, or counsel, from November 1, 2018, to the present. For each call, state the date, time, duration, participants, and subject, and produce all notes, call logs, calendar entries, emails, text messages, and FD-302 reports or other memoranda of the call.

**(g) Produce every presentation**, slide deck, term sheet, financial model, or other material provided by or to Ares at or in connection with the meetings and calls memorialized in the interview memoranda of December 19, 2018, March 25, 2019, and June 14, 2019 (Doc. 348 ¶ 2), and in any other FD-302 report the Government transmitted to the defense by email, together with every email transmitting or referring to those presentations.

**(h) For each status report and fee application listed in Schedule B to this letter,** identify every communication between the Government and the Special Master Team that the filing reflects or that occurred during the period it covers outside the presence of defense counsel, and produce the Requested Materials for each.

**(i) Forfeiture.** Produce every draft of the Consent Order and Judgment of Forfeiture (Doc. 160) and of any proposed forfeiture order, every communication with any member of the Special Master Team concerning forfeiture, the "Mid" valuation, or the coordination described in paragraph 4 of that Order, and every valuation, estimate, or calculation of the Primary Restitution Assets the Government has received from the Special Master Team.

**(j) Recuse, withdraw, and refer.** AUSA Dan Ryan, and every other Government attorney, agent, or employee who took part in the ex parte communications listed in Schedule A or Appendix 1, must recuse from this matter, including the restitution proceedings, the pending motions, and any related appeal. The attorneys whose conduct is in question are witnesses to communications whose content only they and the Special Master Team know; they cannot also act as the Government's advocates on the question of their own conduct. Confirm in writing that each such attorney has recused and

withdrawn, identify the Government attorneys who had no part in those communications and who will handle this matter going forward, and confirm that this letter and those communications have been referred to the Office of Professional Responsibility and the Office of the Deputy Attorney General for independent review.

**(k) Confirm in writing**, within three business days of this letter, that the Government will comply with paragraphs (a) through (j).

**6. Reservation of rights.**

Defendant has not consented to, and does not waive, any ex parte communication between the Government and the Special Master Team, past or future. Defendant cannot waive communications whose content has never been disclosed to him. Defendant reserves all rights and remedies, including disqualification of counsel, rejection of any recommendation shaped by ex parte input, and any other relief the Court deems appropriate. Defendant also reserves the right to place this letter, and any response or failure to respond, before the District Court and the United States Court of Appeals for the Fourth Circuit. This letter is in addition to, and does not withdraw, Defendant's pending motion to compel (Doc. 331).

We look forward to your written confirmation.

Respectfully,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC

*/s/ Vivek Ramachandran*
Vivek Ramachandran
Dhamma Law, PLLC

*Counsel for Greg E. Lindberg*

cc (via electronic mail):
Joseph W. Grier, III, Special Master (jgrier@grierlaw.com)

Michael L. Martinez, counsel for the Special Master
(mmartinez@grierlaw.com)

## SCHEDULE A

### Ex Parte Communications Between the Government and the Special Master Team Disclosed in the Record, and Materials Requested[2]

The Government is requested to produce its own Requested Materials for each communication listed, whether held by the United States Attorney's Office, the Criminal Division, any agent, or any other Government employee. For each item below, "Requested Materials" means: (1) all notes, memoranda, summaries, and recordings of the communication; (2) calendar entries, call logs, and video-conference records showing the date, start and end time, and duration of the communication and each participant; (3) any contemporaneous records of the time spent on it; (4) all emails, text and instant messages, and attachments sent or received in connection with it, including those arranging or following up on it; and (5) all documents provided, shown, or received during or in connection with it. The sixth column identifies, for each communication, the numbered categories of materials Defendant requested on August 28, 2026 (Doc. 345-2, at 8–24) to which it relates; those requests are incorporated here. Specific additional items are listed in the last column.

2 The communications identified in this letter, Schedule A, and Appendix 1 are based on current counsel's review of the Special Master Team's own billing entries, the billing entries of Mr. Lindberg's prior counsel filed on the docket (Katten Muchin Rosenman LLP, Docs. 75-1, 87-1, 97-2, 154-2, 336-2; Wyatt & Blake, LLP, Docs. 71-1, 83-1, 98-1, 149-1, 264-1), and prior counsel's non-privileged emails to and from the Special Master Team and/or the Government, drawn from approximately 1.8 GB of prior counsel's files transferred to current counsel. The entries listed are communications that do not appear in prior counsel's non-privileged emails with the Special Master Team or the Government or in prior counsel's billing entries. The Government and the Special Master Team have refused to provide the communications and the records underlying them. *See* Doc. 341; Doc. 343 ¶¶ 10, 24. Defendant therefore places this information on the record, including for purposes of his appeal to the United States Court of Appeals for the Fourth Circuit, as an approximate placeholder showing how extensive the ex parte contact was and how pervasive the issues it raises are. These entries are necessarily incomplete and approximate. For example, the Special Master's contacts are innumerable and, in the Special Master's own words, untallied: his counsel describes the Special Master Team's communications "[w]ithout having tallied each and every phone call, email, video conference, or the amount of time spent on each." Doc. 343 ¶¶ 9–10. Additionally, Mr. Lindberg is working with prior counsel to identify any entries that have slipped through and will promptly update the docket with any corrections as more information becomes available. The complete record remains with the Government and the Special Master Team.

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 1 | Dec. 4–5, 2024 | Special Master; Mr. Martinez; AUSA Dan Ryan | Mr. Martinez's "conversations with Assistant US Attorney" about the "form of motion seeking special master, and form of order appointing special master"; the Special Master's "email to Dan Ryan" on the "proposed motion for appointment of special master" | Doc. 69, at 11 | 38, 39, 40, 52 | Every draft of the motion, brief, and proposed order appointing the Special Master exchanged with the Government; all notes of the "conversations with Assistant US Attorney." |
| 2 | Dec. 17, 2024 | Special Master; Mr. Martinez; AUSAs Dan Ryan and Stout; Trial Attorney Freeman | conference "re contents of brief in support of order appointing special master" | Doc. 69, at 12 | 38, 40, 52 | Every draft of the brief in support of the order appointing the Special Master, and all comments exchanged. |
| 3 | Jan. 24, 2025 | Mr. Martinez; AUSAs Dan Ryan and Stout; Trial Attorney Freeman | emails "re indictment, factual basis" | Doc. 69, at 12 | 38, 40, 42 | All materials exchanged concerning the indictment and factual basis. |
| 4 | Jan. 23–June 23, 2025 | Special Master, Grier Law, Paladin; "stakeholders" including AUSAs Dan Ryan, Bain-Creed, Stout, and Park and Trial Attorney Freeman, liquidators, NHC/M3, insurers' counsel, and a prospective buyer | "introductory video conferences, telephone conversations, and in-person meetings," then "recurring conferences with many of these stakeholders," distinguished from the joint weekly calls | Doc. 65, at 2–4 | 32–38, 40 | A list of each conference (date, time, duration, attendees, subject) with any member of the Government team or other stakeholder outside the joint weekly calls. |
| 5 | Feb. 3, 2025 | Mr. Martinez; AUSA Dan Ryan | emails "re victim restitution issues" | Doc. 69, at 17 | 8, 15, 38, 40 | — |
| 6 | Feb. 13, 2025 | Special Master; AUSAs Dan Ryan and Bain-Creed | "[f]ollow-up phone call with D. Ryan and B. Bain-Creed re scope of special master order" | Doc. 69, at 23 | 38, 40, 52 | What was said about the scope of the Appointment Order, and any proposed language or term sheet exchanged. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 7 | Mar. 2025 (notes reviewed Mar. 4) | Scott Avila (Paladin); AUSA Dan Ryan | call on the "DOJ view on claims, distribution, priority" | Doc. 69, at 99 | 8, 15, 40 | Mr. Avila's notes of the call and any written statement of the "DOJ view" provided. |
| 8 | Mar. 6, 2025 | Mr. Martinez; AUSAs Dan Ryan, Park, Bain-Creed, and Stout | one-hour video conference "re special master rights and responsibilities clarification term sheet," separate from the joint call the same day | Doc. 69, at 35–36 | 38, 40, 52 | Every draft of the "clarification term sheet" exchanged. |
| 9 | Mar. 19, 2025 | Scott Avila (Paladin); AUSA Dan Ryan | "Call with D Ryan regarding issues" (1.5 hours) | Doc. 69, at 113 | 40 | — |
| 10 | Mar. 24, 2025 | Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman; Scott Avila; Don Harer | video conference "re asset valuation" | Doc. 69, at 45 | 1–3, 7, 38, 40 | Any valuation, model, or data presented or exchanged. |
| 11 | Mar. 26, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re special master's role and responsibilities" | Doc. 69, at 46 | 38, 40, 52 | — |
| 12 | Apr. 2, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re Fleet Assist lawsuit filed by Bo Gaddy" | Doc. 69, at 50 | 38, 40 | — |
| 13 | Apr. 8, 2025 | Special Master; Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman; counsel for the NCICs (Wes Camden, Caitlin Poe) | video conference "re documents and information requested from North Carolina insurance companies" | Doc. 69, at 53 | 10, 12, 35, 40, 52 | — |
| 14 | June 26, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re victim loss calculations" | Doc. 81, at 17 | 8, 9, 15, 38, 40 | — |
| 15 | June 27, 2025 | Special Master Team; AUSA Dan Ryan; NOLHGA | review of "NOLHGA communications to Dan Ryan" | Doc. 81, at 18 | 8, 38, 40 | The NOLHGA communications to AUSA Dan Ryan reviewed by the Special Master Team. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 16 | July 9–14, 2025 | Mr. Rhodes; AUSA Dan Ryan | Special Master Team's billing statements emailed to AUSA Dan Ryan before the fee application; review of "feedback from Dan Ryan re: invoices" | Doc. 81, at 22, 24 | 38, 40 | The billing statements sent to AUSA Dan Ryan and AUSA Dan Ryan's "feedback" on them. |
| 17 | July 19–20 and Aug. 6, 2025 | Paladin; Government | review of "DOJ Materials (VIS Forms, IRS VIS, PSA Documents)" and "VS Database documents provided by DOJ" | Doc. 81, at 66, 73 | 8, 41 | The DOJ materials and VS Database documents provided, and their transmittals. |
| 18 | July 21, 2025 | Special Master, counsel, Paladin; U.S. Attorney's Office; state guaranty associations; NOLHGA | "the state guaranty associations' concerns about the restitution process and the calculation of outstanding losses to individual policyholders of the NCICs" | Doc. 80, at 8; Doc. 81, at 26, 66–67 | 8, 15, 38, 40 | Attendee list; agenda; any presentation, data, or policyholder loss information exchanged. |
| 19 | Aug. 20, 2025 | Special Master; Mr. Martinez; Mr. Rhodes; AUSAs Dan Ryan, Bain-Creed, and Stout; Trial Attorney Freeman | "Teams meeting with DOJ to prepare for status hearing on 8/26" | Doc. 81, at 40–41 | 38, 40 | Agenda, talking points, and any outline prepared for the Aug. 26, 2025 status hearing. |
| 20 | Oct. 15, 2025 | Special Master, counsel, Paladin; U.S. Attorney's Office; state guaranty associations; NOLHGA | "the calculation of restitution amounts and the losses to the NCICs' individual policyholders" | Doc. 94, at 6; Doc. 95, at 15, 38 | 8, 15, 38, 40 | Attendee list; agenda; any presentation, data, or materials exchanged. |
| 21 | Oct. 27, 2025 | Mr. Rhodes; AUSAs | "Review AUSA comments to draft status report" (Second Status Report, filed Oct. 30, 2025) | Doc. 95, at 18 | 38, 40 | The draft status report as sent to the AUSAs and every comment received. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 22 | Nov. 7, 2025 | Paladin; Government | "documents provided by DOJ on asset vs. policyholder liabilities for damages"; "new DOJ materials regarding Ulico and Agera" | Doc. 95, at 43 | 8, 14, 16, 41 | The DOJ documents on Ulico and Agera and on asset vs. policyholder liabilities. |
| 23 | Dec. 2, 2025 | Mr. Martinez; AUSAs Bain-Creed and Dan Ryan; Paladin | emails re "Paradigm Park funds" | Doc. 95, at 28 | 16, 20, 40 | — |
| 24 | Dec. 8–11, 2025 | Paladin; Government | review of the "DOJ Victim Database" and cross-reference against the excess policyholder list | Doc. 95, at 49–50 | 8, 41 | The DOJ Victim Database as provided, and its transmittal. |
| 25 | Dec. 12, 2025 | Mr. Martinez; AUSA Dan Ryan | telephone call "re administrative expense issues" | Doc. 95, at 32 | 38, 40 | — |
| 26 | Jan. 9, 2026 | Mr. Martinez; AUSA Dan Ryan | telephone call "re restitution calculation issues and status of liquidating primary restitution assets" | Doc. 148, at 15 | 8, 15, 28, 40 | — |
| 27 | Jan. 30 and Feb. 9, 2026 | Special Master; Mr. Martinez; AUSA Dan Ryan | "Report of Examination of United Security Assurance Co of PA from D. Ryan (relevant to VISTA)"; "examination report forwarded by Dan Ryan" | Doc. 148, at 22, 25 | 8, 40 | The examination report forwarded by AUSA Dan Ryan and its transmittal. |
| 28 | Feb. 19, 2026 | Mr. Martinez; AUSAs Bain-Creed and Dan Ryan | emails re "definitions of victims and providers of compensation under the Mandatory Victim Restitution Act" | Doc. 148, at 29 | 8, 38, 40 | — |
| 29 | Feb. 23, 2026 | Special Master; Mr. Martinez; Mr. Rhodes; AUSAs Dan Ryan and Bain-Creed | one-hour conference "re special master's report" and "re restitution concepts" | Doc. 148, at 30 | 8, 15, 38, 40 | Any draft of the Special Master's report discussed or exchanged. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 30 | Feb. 27, 2026 | Don Harer (Paladin); Government | “Review Agera materials supplied by DOJ” | Doc. 148, at 75 | 8, 41 | The Agera materials supplied by DOJ. |
| 31 | Mar. 5, 2026 | Mr. Martinez; AUSA Dan Ryan | emails “re potential purhcaser [sic] of primary restitution assets” | Doc. 148, at 34 | 26–28, 40 | — |
| 32 | Mar. 16, 2026 | Special Master Team; Government | “comments to draft restitution report and redline of proposed order from DOJ” | Doc. 148, at 37 | 8, 15, 40 | The Government’s comments on the draft restitution report and its redline of the proposed order. |
| 33 | Mar. 27, 2026 | Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman | emails while “revising draft restitution report” | Doc. 148, at 39 | 8, 15, 40 | Every draft of the restitution report exchanged. |
| 34 | Apr. 1, 2026 | Mr. Martinez; Andrew Cowie (Paladin); AUSA Dan Ryan | conference call “re specific language in various parts of the restitution report and appendices”; emails “re futher [sic] edits to draft report from the government” | Doc. 148, at 43, 87 | 8, 15, 40 | The Government’s proposed language and edits to the draft report and appendices. |
| 35 | Apr. 16, 2026 | Mr. Martinez; AUSA Dan Ryan | telephone call “re status of special master’s efforts” | Doc. 148, at 47 | 38, 40 | — |
| 36 | May 4, 2026 | Mr. Martinez; AUSA Dan Ryan | “supplemental materials provided by Dan Ryan” on the responses to the report | Doc. 263, at 9 | 40, 42 | The “supplemental materials provided by Dan Ryan” and their transmittal. |
| 37 | May 11, 2026 | Mr. Martinez; AUSA Dan Ryan | separate “[t]elephone call to Dan Ryan re the same and related sentencing issues” (defense draft sentencing memorandum), placed after a joint exchange of feedback with defense counsel | Doc. 263, at 11 | 40, 42 | The feedback provided on the defense draft sentencing memorandum. |
| 38 | May 14, 2026 | Mr. Martinez; AUSAs Dan Ryan and Bain-Creed; Trial Attorney Freeman | “revised proposed preliminary restitution order” | Doc. 263, at 12 | 8, 15, 40 | Every draft of the revised proposed preliminary restitution order exchanged. |

| No. | Date | Participants (as recorded) | Subject (as recorded) | Source | Request categories | Additional items requested |
|---|---|---|---|---|---|---|
| 39 | May 20, 2026 | Mr. Martinez; AUSA Dan Ryan | "[t]elephone call from Dan Ryan re the same" (draft statement concerning Mr. Lindberg's cooperation) | Doc. 263, at 13 | 40, 42 | Notes of the call; every draft of the cooperation statement and every comment received from the Government. |
| 40 | June 16, 2026 | Mr. Martinez; AUSA Dan Ryan; Trial Attorney Freeman | "responses to recent motions filed" | Doc. 263, at 19 | 40 | All drafts of responses to Defendant's motions exchanged. |
| 41 | June 17, 2026 | Mr. Martinez; AUSA Dan Ryan | "recent pleadings filed in the case" | Doc. 263, at 20 | 40 | — |
| 42 | Not stated | Government to Special Master | "a transcript of the sentencing hearing provided to the Special Master by the government" | Doc. 245, at 5 | 40, 42 | The transcript as provided, its transmittal, and the date provided. |

## SCHEDULE B

### Status Reports and Fee Applications of the Special Master

The Special Master has filed five status reports and five fee applications in No. 3:23-CR-48-MOC, listed below. For each filing, the Government is requested to identify every communication between any Government attorney, agent, or employee and any member of the Special Master Team that the filing reflects or that occurred during the period it covers outside the presence of defense counsel, and to produce the Requested Materials (as defined in Schedule A) for each.

| Type | Title | Docket | Filed | Period covered |
|---|---|---|---|---|
| Status Report | First Status Report | Doc. 65 | July 2, 2025 | Appointment (Jan. 23, 2025) through June 23, 2025 |
| Status Report | Second Status Report | Doc. 80 | Oct. 30, 2025 | June 24, 2025 through Sept. 30, 2025 |
| Status Report | Third Status Report (Ex. A amended, Doc. 101, Jan. 8, 2026) | Doc. 94 | Dec. 18, 2025 | Oct. 1, 2025 through Dec. 15, 2025 |
| Status Report | Fourth Status Report | Doc. 147 | May 15, 2026 | Dec. 16, 2025 through Apr. 30, 2026 |
| Status Report | Fifth Status Report | Doc. 262 | July 30, 2026 | May 1, 2026 through June 30, 2026 |
| Fee application | First Interim Statement and Application | Doc. 69 | July 22, 2025 | Special Master and counsel: Dec. 4, 2024 through May 31, 2025; Paladin: Jan. 25, 2025 through June 23, 2025 |
| Fee application | Second Interim Statement and Application | Doc. 81 | Oct. 30, 2025 | Special Master and counsel: June 1, 2025 through Sept. 30, 2025; Paladin: June 24, 2025 through Sept. 30, 2025 |
| Fee application | Third Interim Statement and Application (with request for approval of retainers) | Doc. 95 | Dec. 18, 2025 | Oct. 1, 2025 through Dec. 15, 2025 |
| Fee application | Fourth Interim Statement and Application | Doc. 148 | May 15, 2026 | Dec. 16, 2025 through Apr. 30, 2026 |
| Fee application | Fifth Interim Statement and Application | Doc. 263 | July 30, 2026 | May 1, 2026 through June 30, 2026 |

# APPENDIX 1

## Every Time Entry in the Special Master Team's Fee Applications Recording a Communication With the Government

This Appendix lists, in date order, every time entry in the five fee applications filed by the Special Master (Docs. 69, 81, 95, 148, and 263) that records or refers to a communication with, or materials sent to or received from, any Government attorney, agent, or office in a transaction that names no defense counsel. Where an entry records several transactions, only the transactions that name no defense counsel are quoted; transactions that name or include defense counsel are omitted and their place is marked "[. . .]". Each entry is otherwise quoted as filed; the timekeeper, hours, rate, and amount columns are omitted. The last column identifies the numbered categories of materials Defendant requested on August 28, 2026 (Doc. 345-2, at 8–24) to which each entry relates. For each entry, the Government is requested to produce the Requested Materials defined in Schedule A. This Appendix is in addition to, and does not limit, Schedules A and B and the catch-all demand in this letter; communications not reflected in any time entry remain subject to that demand.

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 1 | Dec. 4, 2024 | Doc. 69, at 11 | JWG | Phone conference M. Martinez re his conversations with Assistant US Attorney, form of motion seeking special master, and form of order appointing special master. | 38, 40, 41 |
| 2 | Dec. 4, 2024 | Doc. 69, at 11 | MLM | Phone call with JOE re conversations with Assistant US Attorney; form of motion seeking special master and proposed form order appointing special master. | 38, 40, 41 |
| 3 | Dec. 5, 2024 | Doc. 69, at 11 | JWG | Review proposed motion for appointment of special master; email to Dan Ryan re same. | 38, 40, 41 |
| 4 | Dec. 17, 2024 | Doc. 69, at 12 | JWG | Conference D. Ryan, L. Freeman, T. Stout and M. Martinez re contents of brief in support of order appointing special master. | 38, 40, 41 |
| 5 | Dec. 17, 2024 | Doc. 69, at 12 | MLM | Conference JOE, D. Ryan, L. Freeman and T. Stout re contents of brief in support of order appointing special master. | 38, 40, 41 |
| 6 | Jan. 24, 2025 | Doc. 69, at 12 | MLM | Emails with Dan Ryan, Lyndie Freeman, Taylor Stout, JWG, and BDR re indictment, factual basis for the indictment, and counsel for various insurance companies. | 38, 40, 41 |
| 7 | Feb. 3, 2025 | Doc. 69, at 17 | BDR | Emails with Dan Ryan re: plea agreement. | 38, 40, 41 |
| 8 | Feb. 3, 2025 | Doc. 69, at 17 | MLM | Emails with Dan Ryan and BDR re victim restitution issues. Conferences with BDR re the same. | 8, 15, 38, 40, 41 |
| 9 | Feb. 13, 2025 | Doc. 69, at 23 | JWG | Follow-up phone call with D. Ryan and B. Bain- Creed re scope of special master order. | 38, 40, 41, 52 |
| 10 | Feb. 13, 2025 | Doc. 69, at 24 | MLM | Conference with JWG and BDR re call with Dan Ryan and Ben Bain-Creed. | 38, 40, 41 |
| 11 | Feb. 13, 2025 | Doc. 69, at 24 | BDR | Call with MLM, JWG, Dan Ryan, and Ben Bain- Creed. | 38, 40, 41 |
| 12 | Feb. 13, 2025 | Doc. 69, at 24 | MLM | Review email from BDR re restitution liens. Emails with Ben Bain-Creed and Dan Ryan re the same. | 38, 40, 41 |
| 13 | Feb. 14, 2025 | Doc. 69, at 24 | MLM | Conferences with BDR re potential tools available to government in enforcing victim restitution orders. | 8, 15, 38, 40, 41 |
| 14 | Feb. 19, 2025 | Doc. 69, at 88 | Scott Avila | Review and respond to various emails from DOJ, GWM and others | 38, 40, 41 |
| 15 | Mar. 4, 2025 | Doc. 69, at 99 | Amy Kirschner | Review of notes of call between S Avila and D Ryan regarding DOJ view on claims, distribution, priority and notes on implications thereof | 8, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 16 | Mar. 4, 2025 | Doc. 69, at 99 | Amy Kirschner | Call with C Urwin to review notes from S Avila's call with DOJ, quarterly report from North Carolina insurance companies, issues around claims valuation among including state guarantee fund obligations and uncovered policy holders and related issues. | 3, 7, 8, 35, 38, 40, 41 |
| 17 | Mar. 5, 2025 | Doc. 69, at 35 | MLM | Draft cover email to Dan Ryan and Ben Bain- Creed re special master clarification term sheet. | 38, 40, 41, 52 |
| 18 | Mar. 5, 2025 | Doc. 69, at 35 | BDR | Review Special Master term sheet prior to circulation to DOJ. | 38, 40, 41, 52 |
| 19 | Mar. 6, 2025 | Doc. 69, at 36 | MLM | Video conference with Dan Ryan, Julia Park, Ben Bain-Creed, Taylor Stout, and BDR re special master rights and responsibilities clarification term sheet. | 38, 40, 41, 52 |
| 20 | Mar. 6, 2025 | Doc. 69, at 36 | BDR | Call with MLM, Dan Ryan, Ben Bain-Creed, Taylor Stout, and Julia Park. | 38, 40, 41 |
| 21 | Mar. 7, 2025 | Doc. 69, at 37 | MLM | Emails with John Babcock, Jim Lanik, BDR, and JWG re depository banking issues. Emails with Steve Wilson, Bill Janvier, and Margaret Westbrook re the same. Emails with Dan Ryan and Ben Bain-Creed re the same. | 38, 40, 41, 54 |
| 22 | Mar. 14, 2025 | Doc. 69, at 42 | MLM | Emails with Dan Ryan, Ben Bain-Creed, Lyndie Freeman, Taylor Stout, Julia Park, JWG, and BDR re term sheet reactions. | 38, 40, 41, 52 |
| 23 | Mar. 19, 2025 | Doc. 69, at 113 | Scott Avila | Call with D Ryan regarding issues | 38, 40, 41 |
| 24 | Mar. 21, 2025 | Doc. 69, at 44 | MLM | Emails with Dan Ryan, Taylor Stout, Ben Bain- Creed, Lyndie Freeman, JWG, and BDR re Wes Camden's response to term sheet. | 35, 38, 40, 41, 52 |
| 25 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Emails with Dan Ryan and Ben Rhodes re victim impact statements and related issues. | 8, 38, 40, 41 |
| 26 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Video conference with Dan Ryan, Ben Bain- Creed, Lyndie Freeman, Scott Avila, Don Harer, and BDR re asset valuation. | 3, 7, 38, 40, 41 |
| 27 | Mar. 24, 2025 | Doc. 69, at 45 | BDR | Call with MLM, Scott Avila, Don Harer, Dan Ryan, Ben Bain-Creed, and Lyndi Freedman re asset valuation. | 3, 7, 38, 40, 41 |
| 28 | Mar. 24, 2025 | Doc. 69, at 45 | BDR | Conference with MLM after call with DOJ and Paladin. | 38, 40, 41 |
| 29 | Mar. 24, 2025 | Doc. 69, at 45 | MLM | Conference BDR following-up on discussion with prosecution and Paladin on overarching complexities in completing the special master assignment described in the appointing order. | 38, 40, 41 |
| 30 | Mar. 24, 2025 | Doc. 69, at 117 | Scott Avila | Call with GWM, DOJ and Michael Martinez | 38, 40, 41 |
| 31 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Telephone call to Dan Ryan re special master's role and responsibilities. | 38, 40, 41, 52 |
| 32 | Mar. 26, 2025 | Doc. 69, at 46 | MLM | Review information provided by BDR on restitution statutes and email Ben Bain-Creed and Dan Ryan re the same. | 38, 40, 41 |
| 33 | Mar. 28, 2025 | Doc. 69, at 120 | Amy Kirschner | Communication among Grier, Dan Ryan, DOJ and Scott Avila regarding status update on data request for North Carolina Insurance companies | 35, 38, 40, 41 |
| 34 | Apr. 2, 2025 | Doc. 69, at 50 | MLM | Telephone call from Dan Ryan re Fleet Assist lawsuit filed by Bo Gaddy. | 38, 40, 41 |
| 35 | Apr. 2, 2025 | Doc. 69, at 123 | Amy Kirschner | Review and edits to memo detailing data received to date from Williams Mullen as requested by the DOJ | 35, 38, 40, 41 |
| 36 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Emails with Dan Ryan re forthcoming demand to North Carolina insurance company victims. | 8, 35, 38, 40, 41 |
| 37 | Apr. 3, 2025 | Doc. 69, at 51 | MLM | Emails and telephone calls with Amy Kirschner re outstanding documents requested from the North Carolina insurance company victims. Emails with Dan Ryan re the same. Emails with Scott Avila, Don Harer, Charles Urwin, Amy Kirschner, BDR, and JWG re the same. | 8, 35, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 38 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Emails with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, Taylor Stout, JWG, and BDR re document request from North Carolina insurance companies. Revise draft demand letter. | 35, 38, 40, 41 |
| 39 | Apr. 7, 2025 | Doc. 69, at 52 | MLM | Emails with Dan Ryan, Lyndie Freeman, Taylor Stout, BDR, and JWG re Vista. | 8, 38, 40, 41 |
| 40 | Apr. 8, 2025 | Doc. 69, at 53 | MLM | Prepare for and attend video conference with Dan Ryan, Caitlin Poe, Wes Camden, Lyndie Freeman, Ben Bain-Creed, JWG, and BDR re documents and information requested from North Carolina insurance companies. Follow-up call with BDR and JWG re the same. | 35, 38, 40, 41 |
| 41 | Apr. 8, 2025 | Doc. 69, at 53 | BDR | Call with JWG, MLM, Dan Ryan, Ben Bain-Creed, Wes Camden, and Caitlin Poe re: request for information. | 35, 38, 40, 41 |
| 42 | Apr. 8, 2025 | Doc. 69, at 53 | BDR | Follow-up conference with JWG and MLM after call with DOJ and Williams Mullen personnel. | 35, 38, 40, 41 |
| 43 | Apr. 8, 2025 | Doc. 69, at 53 | JWG | Zoom call with D. Ryan, NC insurance lawyers, M. Martinez and B. Rhodes re discovery requested from NC insurance companies. | 38, 40, 41 |
| 44 | Apr. 9, 2025 | Doc. 69, at 53 | MLM | Finalize document request letter to Williams Mullen. Emails with Wes Camden, Caitlin Poe, Dan Ryan, Ben Bain-Creed, Lyndie Freeman, Scott Avila, Amy Kirschner, Don Harer, JWG, and BDR re the same. | 35, 38, 40, 41 |
| 45 | Apr. 10, 2025 | Doc. 69, at 53 | MLM | Emails with Wes Camden, Caitlin Poe, Ben Bain- Creed, Dan Ryan, Lyndie Freeman, JWG, and BDR re potential sale of ClanWilliam. [. . .] Conference BDR re the same. | 18, 28, 29, 30, 35, 38, 40, 41 |
| 46 | Apr. 15, 2025 | Doc. 69, at 126 | Amy Kirschner | Call among DOJ, Grier and Paladin to discuss Clanwilliam sale | 18, 28, 29, 30, 38, 40, 41 |
| 47 | May 6, 2025 | Doc. 69, at 64 | MLM | Review and edit draft motion to clarify special master's rights re primary restitution asset. Emails with Scott Avila and Don Harer re the same. Emails with Layne Smith, Steve Waterman, Hannah Tuttle, general counsel for primary restitution asset, JWG, and BDR re the same. Emails with general counsel for primary restitution asset, Layne Smith, JWG, and BDR re primary restitution asset sale support agreement. Emails with Dan Ryan, Taylor Stout, Ben Bain-Creed, Lyndie Freeman, JWG, and BDR re the same. Conference JWG and BDR re the same. | 28, 30, 38, 40, 41 |
| 48 | May 7, 2025 | Doc. 69, at 64 | MLM | Emails with Dan Ryan and others re primary restitution assetsupport agreement. | 38, 40, 41 |
| 49 | May 8, 2025 | Doc. 69, at 65 | MLM | Review and edit draft support agreement per feedback received from government and JWG. | 38, 40, 41 |
| 50 | May 9, 2025 | Doc. 69, at 66 | MLM | Conference BDR re Clanwilliam sale distribution proposal. Revise draft letter to Wes Camden and others re the same. Emails with JWG and BDR re the same. Conference JWG re the same. Emails with Wes Camden and Caitlin Poe re the same. Emails with John Babcock re the same. Emails with Dan Ryan, Ben Bain-Creed, Lyndie Freeman, Taylor Stout, Julia Park, JWG, and BDR re the same. | 18, 28, 29, 30, 35, 38, 40, 41 |
| 51 | May 12, 2025 | Doc. 69, at 66 | MLM | Emails with Dan Ryan re current proposal for distributing the net proceeds from the sale of the Clanwilliam group of companies. | 18, 28, 29, 30, 38, 40, 41 |
| 52 | May 12, 2025 | Doc. 69, at 66 | BDR | Email from Dan Ryan re: victim statements; review of victim statement spreadsheet and materials from Tisha Lindberg. | 8, 38, 40, 41 |
| 53 | May 12, 2025 | Doc. 69, at 130 | Scott Avila | Review information provided by DOJ, and NCICs | 35, 38, 40, 41 |
| 54 | May 12, 2025 | Doc. 69, at 130 | Scott Avila | Call with Paladin regarding new information received from the DOJ and NCIC's | 35, 38, 40, 41 |
| 55 | June 4, 2025 | Doc. 69, at 137 | | Scott Avila Review and respond to emails from DOJ regarding website claims | 8, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 56 | June 4, 2025 | Doc. 69, at 137 | | Scott Avila Email exchange with Lyndie Freeman | 38, 40, 41 |
| 57 | June 26, 2025 | Doc. 81, at 17 | MLM | Telephone call to Dan Ryan re victim loss calculations. Emails with Don Harer, Scott Avila, and Allen Soong re the same. | 8, 15, 38, 40, 41 |
| 58 | June 27, 2025 | Doc. 81, at 17 | MLM | Review edits proposed by North Carolina Insurance Companies and NHC to draft consent motion on Clanwilliam compromise to deal with tax issues. Conferences with JWG and BDR re the same. Emails with John Babcock re the same. Revise draft consent motion on Clanwilliam compromise. Emails with Dan Ryan re the same. Telephone call from John Babcock re the same. Emails with Wes Camden, David Paulson, and John Babcock re the same. | 18, 29, 35, 36, 38, 40, 41 |
| 59 | June 27, 2025 | Doc. 81, at 18 | BDR | Review NOLHGA communications to Dan Ryan. | 8, 38, 40, 41 |
| 60 | July 2, 2025 | Doc. 81, at 19 | MLM | Telephone call to Taylor Stout re filing of special master report. Conference call with Taylor Stout and Brittany Lynch re the same. | 38, 40, 41 |
| 61 | July 9, 2025 | Doc. 81, at 22 | BDR | Email to Paladin re: sending billing statement to DOJ. | 38, 40, 41 |
| 62 | July 9, 2025 | Doc. 81, at 22 | BDR | Email to Dan Ryan with billing statements. | 38, 40, 41 |
| 63 | July 14, 2025 | Doc. 81, at 24 | BDR | Review feedback from Dan Ryan re: invoices. | 38, 40, 41 |
| 64 | July 14, 2025 | Doc. 81, at 24 | BDR | Email to Dan Ryan re: invoice; conference with JWG re: same. | 38, 40, 41 |
| 65 | July 19, 2025 | Doc. 81, at 66 | Minesh Patel | Review DOJ Materials (VIS Forms, IRS VIS, PSA Documents) | 8, 38, 40, 41 |
| 66 | July 20, 2025 | Doc. 81, at 66 | Minesh Patel | Prepare a summary of key takeaways from DOJ Materials | 38, 40, 41 |
| 67 | July 21, 2025 | Doc. 81, at 26 | JWG | Conference DOJ attorneys and NOLHGA attorneys in DOJ office. | 8, 38, 40, 41 |
| 68 | July 21, 2025 | Doc. 81, at 26 | BDR | Travel to and attend conference with JWG, MLM, Dan Ryan, Taylor Stout, Scott Avila, Don Harer, Joel Glover and Katie Wade and other NOLHGA personnel. | 8, 38, 40, 41 |
| 69 | July 21, 2025 | Doc. 81, at 26 | MLM | Attend conference with Dan Ryan, Taylor Stout, Joel Glover, Katie Wade, Bill O'Sullivan, Brad Taman, John Colpean (via Zoom), Lyndie Freeman (via Zoom), Julia Park (via Zoom), BDR, and JWG re NOLHGA issues. | 8, 38, 40, 41 |
| 70 | July 21, 2025 | Doc. 81, at 66 | Donald Harer | Meeting with NOLHGA, DOJ, and Grier Law to discuss restitution | 8, 38, 40, 41 |
| 71 | July 21, 2025 | Doc. 81, at 66 | Minesh Patel | Call with Paula S. and David E. related to DOJ package, key takeaways and related emails | 38, 40, 41 |
| 72 | July 21, 2025 | Doc. 81, at 67 | Scott Avila | Meeting with the DOJ, NOLHGA and members of the GWM firm | 8, 38, 40, 41 |
| 73 | July 23, 2025 | Doc. 81, at 68 | Donald Harer | Email to DOJ inquiring into victim statement database | 8, 38, 40, 41 |
| 74 | July 24, 2025 | Doc. 81, at 28 | MLM | Telephone call to Jeff Oleynik re Conservatrix. Emails with Jeff Oleynik and Kate Giduz re the same. Emails with Dan Ryan, Julia Park, Taylor Stout, BDR, and JWG re the same. | 38, 40, 41 |
| 75 | July 24, 2025 | Doc. 81, at 68 | David Elkin | Call with D. Ryan (DOJ) on victim statement database | 8, 38, 40, 41 |
| 76 | July 31, 2025 | Doc. 81, at 72 | Scott Avila | Review data from DOJ and send victim impact statement to team | 8, 38, 40, 41 |
| 77 | Aug. 6, 2025 | Doc. 81, at 73 | Minesh Patel | Review VS Database documents provided by DOJ and summarize key points | 38, 40, 41 |
| 78 | Aug. 20, 2025 | Doc. 81, at 40 | MLM | Continue organizing concepts for upcoming status conference. Video conference with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, Taylor Stout, JWG, and BDR re the same. | 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 79 | Aug. 20, 2025 | Doc. 81, at 41 | BDR | Call with JWG, MLM, Dan Ryan, Taylor Stout, Ben Bain-Creed, and Lyndie Freeman re: 8/26 status hearing; follow-up conference with JWG and MLM re: same. | 38, 40, 41 |
| 80 | Aug. 20, 2025 | Doc. 81, at 41 | JWG | Teams meeting with DOJ to prepare for status hearing on 8/26. Follow-up conference. | 38, 40, 41 |
| 81 | Aug. 29, 2025 | Doc. 81, at 45 | MLM | Telephone call to Dan Ryan and Taylor Stout re obtaining information from NOLHGA and the North Carolina insurance companies. Conference BDR re the same. [. . .] | 8, 35, 38, 40, 41 |
| 82 | Sept. 10, 2025 | Doc. 81, at 51 | MLM | Emails with Dan Ryan, Ben Bain-Creed, Julia Park, Lyndie Freeman, Taylor Stout, JWG, and BDR re NOLHGA. Conferences with BDR and JWG re the same. | 8, 38, 40, 41 |
| 83 | Oct. 15, 2025 | Doc. 95, at 15 | JWG | Attend meeting with DOJ, NOLHGA & Paladin re case issues. | 8, 38, 40, 41 |
| 84 | Oct. 15, 2025 | Doc. 95, at 15 | MLM | Conference with Joel Glover, Jason Cowley, Kate Wade, Bill O'Sullivan, Brad Taman, John Colpean, Dan Ryan, Ben Bain-Creed, Scott Avila, Don Harer, JWG, and BDR re NOLHGA issues. | 8, 38, 40, 41 |
| 85 | Oct. 15, 2025 | Doc. 95, at 15 | BDR | Travel to/from and attend meeting with JWG, MLM, Jason Cowley, Bill O'Sullivan, Katie Wade, Joel Glover, Brad Taman, John Colpean, Scott Avila, Don Harer, Dan Ryan, and Ben Bain- Creed. | 38, 40, 41 |
| 86 | Oct. 15, 2025 | Doc. 95, at 38 | Scott Avila | Meeting NOHGLA, DOJ and GWM | 38, 40, 41 |
| 87 | Oct. 15, 2025 | Doc. 95, at 38 | Donald Harer | Meeting with NOLHGA, DOJ, and special master | 8, 38, 40, 41 |
| 88 | Oct. 27, 2025 | Doc. 95, at 18 | BDR | Review AUSA comments to draft status report. | 38, 40, 41 |
| 89 | Nov. 6, 2025 | Doc. 95, at 22 | MLM | Emails with JWG and BDR re cash management issues and outstanding administrative expenses. [. . .] Review historical documents re the same. Conferences with JWG and BDR re the same. Telephone call to Dan Ryan re the same and re victim loss calculations. Telephone call to Don Harer re the same. | 8, 15, 38, 40, 41 |
| 90 | Nov. 7, 2025 | Doc. 95, at 43 | David Elkin | Review new DOJ materials regarding Ulico and Agera | 14, 38, 40, 41 |
| 91 | Nov. 7, 2025 | Doc. 95, at 43 | Andrew Cowie | Analysis of documents provided by DOJ on asset vs. policyholder liabilities for damages. | 8, 38, 40, 41 |
| 92 | Nov. 26, 2025 | Doc. 95, at 27 | MLM | [. . .] Conferences and emails with BDR and JWG re the same. Emails with Dan Ryan, Ben Bain- Creed, Don Harer, and Scott Avila re the same. [. . .] | 29, 38, 40, 41 |
| 93 | Dec. 2, 2025 | Doc. 95, at 28 | MLM | Research re Paradigm Park funds. Emails with Don Harer, Scott Avila, Paula Sosamon, Ben Bain-Creed, Dan Ryan, JWG, and BDR re the same. | 16, 20, 38, 40, 41 |
| 94 | Dec. 8, 2025 | Doc. 95, at 49 | Minesh M Patel | Call with P. Sosamon to discuss DOJ Victim Database and identify next steps | 8, 38, 40, 41 |
| 95 | Dec. 8, 2025 | Doc. 95, at 49 | Minesh M Patel | Review and cross reference select victims from DOJ Victim Database and Policyholder List and summarize next steps | 8, 38, 40, 41 |
| 96 | Dec. 8, 2025 | Doc. 95, at 49 | Paula Sosamon | Review DOJ databases and cross-reference victims against the excess policyholder list | 8, 38, 40, 41 |
| 97 | Dec. 9, 2025 | Doc. 95, at 49 | Minesh M Patel | Review and cross reference select victims with various attributes from DOJ Victim Database and Excess Policyholder List and summarize next steps | 8, 38, 40, 41 |
| 98 | Dec. 9, 2025 | Doc. 95, at 49 | Minesh M Patel | Call with P. Sosamon to review and discuss DOJ Victim Database and identify next steps Professional Services United States v. Greg Lindberg From October 1, 2025 through December 17, 2025 Date Professional Task Description Hours Rate Amount | 8, 38, 40, 41 |
| 99 | Dec. 9, 2025 | Doc. 95, at 50 | Minesh M Patel | Call with P. Sosamon and D. Harer to review and discuss DOJ Victim Database and identify next steps | 8, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 100 | Dec. 10, 2025 | Doc. 95, at 50 | Minesh M Patel | Call with P. Sosamon to discuss action plan related to DOJ Victim Database and next steps | 8, 38, 40, 41 |
| 101 | Dec. 10, 2025 | Doc. 95, at 50 | Minesh M Patel | Review and cross reference select victims with various attributes from DOJ Victim Database and Excess Policyholder List | 8, 38, 40, 41 |
| 102 | Dec. 11, 2025 | Doc. 95, at 32 | MLM | Review revisions to draft administrative expense payment agreement proposed by Greg Lindberg. Emails with JWG and BDR re the same. Conference JWG re the same. [. . .] Emails with Dan Ryan and Ben Bain-Creed re the same. | 38, 40, 41 |
| 103 | Dec. 12, 2025 | Doc. 95, at 32 | MLM | Telephone call from Dan Ryan re administrative expense issues. | 38, 40, 41 |
| 104 | Dec. 16, 2025 | Doc. 148, at 8 | MLM | Emails with Don Harer re administrative expense procedures. [. . .] Conferences with JWG re the same. [. . .] Emails with Scott Avila re the same. Emails with Dan Ryan and Ben Bain-Creed re the same. | 38, 40, 41 |
| 105 | Dec. 18, 2025 | Doc. 148, at 10 | MLM | Revise draft third fee application. Emails with Andrew Cowie, Don Harer, Scott Avila, and JWG re the same. Emails with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, and JWG re the same. | 38, 40, 41 |
| 106 | Dec. 18, 2025 | Doc. 148, at 10 | MLM | Revise draft third status report. Emails with Kathryn Tran, Alicia Den Beste, Paula Sosamon, Scott Avila, Don Harer, and Andrew Cowie re the same. Emails with Dan Ryan, Lyndie Freeman, Julia Park, Ben Bain-Creed, JWG, and BDR re the same. Conferences with JWG and BDR re the same. | 38, 40, 41 |
| 107 | Dec. 19, 2025 | Doc. 148, at 11 | MLM | Conferences with BDR and JWG re various issues impeding the liquidation of specified affiliated companies and the existing procedure for the same. Telephone call to Dan Ryan re the same. [. . .] | 28, 30, 38, 40, 41 |
| 108 | Dec. 19, 2025 | Doc. 148, at 59 | Paula Sosamon | Call with M Patel and A Sosamon to review the results of the claims analysis filed with DOJ. | 8, 38, 40, 41 |
| 109 | Jan. 9, 2026 | Doc. 148, at 15 | MLM | Telephone call to Dan Ryan re restitution calculation issues and status of liquidating primary restitution assets. | 8, 15, 28, 30, 38, 40, 41 |
| 110 | Jan. 14, 2026 | Doc. 148, at 17 | MLM | Further review of factual documents and informational memoranda provided to special master early in case for purposes of preparing victim restitution report. Emails with Don Harer, Scott Avila, BDR, and JWG re the same. Emails with Dan Ryan and Ben Bain-Creed re the same. | 8, 15, 38, 40, 41 |
| 111 | Jan. 30, 2026 | Doc. 148, at 22 | JWG | Review Report of Examination of United Security Assurance Co of PA from D. Ryan (relevant to VISTA). | 8, 38, 40, 41 |
| 112 | Feb. 9, 2026 | Doc. 148, at 25 | MLM | Review victim impact statements from Vista and USAP. Review examination report forwarded by Dan Ryan re the same. Follow-up research re the same. Emails with Don Harer and Don Solow re the same. | 8, 38, 40, 41 |
| 113 | Feb. 13, 2026 | Doc. 148, at 27 | MLM | Emails with Eric Au, Jason Cowley, Wes Camden, and Joel Glover re policyholder data. Emails with Dan Ryan re the same. Emails with Don Harer, Andrew Cowie, David Elkin, Scott Avila, and Paula Sosamon re the same. | 8, 35, 38, 40, 41 |
| 114 | Feb. 19, 2026 | Doc. 148, at 29 | MLM | Conference BDR re definitions of victims and providers of compensation under the Mandatory Victim Restitution Act. Emails with Ben Bain- Creed, Dan Ryan, BDR, and JWG re the same. | 8, 38, 40, 41 |
| 115 | Feb. 23, 2026 | Doc. 148, at 30 | BDR | Call with JWG, MLM, Dan Ryan, and Ben Bain- Creed discussing restitution issues. | 8, 15, 38, 40, 41 |
| 116 | Feb. 23, 2026 | Doc. 148, at 30 | MLM | Conference call with Ben Bain-Creed, Dan Ryan, JWG, and BDR re restitution concepts [1.0 hrs.]. Follow-up discussion with JWG and BDR re the same [0.3 hrs.]. Second follow-up discussion with BDR re the same [0.3 hrs.]. | 8, 15, 38, 40, 41 |
| 117 | Feb. 23, 2026 | Doc. 148, at 30 | JWG | Conference D. Ryan, B. Bain-Creed, M. Martinez & B. Rhodes re special master's report. | 15, 38, 40, 41, 51 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 118 | Feb. 23, 2026 | Doc. 148, at 30 | JWG | Discussion with M. Martinez & B. Rhodes post conference with DOJ re special master report. | 38, 40, 41 |
| 119 | Feb. 23, 2026 | Doc. 148, at 30 | BDR | Follow-up conference with JWG and MLM after call with AUSAs. | 38, 40, 41 |
| 120 | Feb. 23, 2026 | Doc. 148, at 30 | BDR | Preparation for call with JWG, MLM, and AUSAs. | 38, 40, 41 |
| 121 | Feb. 24, 2026 | Doc. 148, at 30 | JWG | Review 18 USC 3664 in context of this case and ongoing discussion with DOJ. | 38, 40, 41 |
| 122 | Feb. 27, 2026 | Doc. 148, at 75 | Donald Harer | Review Agera materials supplied by DOJ | 38, 40, 41 |
| 123 | Mar. 4, 2026 | Doc. 148, at 33 | BDR | Communications with Paladin re FDIC-DOJ memo. | 38, 40, 41 |
| 124 | Mar. 5, 2026 | Doc. 148, at 34 | MLM | Emails with Dan Ryan re potential purhcaser of primary restitution assets. | 38, 40, 41 |
| 125 | Mar. 16, 2026 | Doc. 148, at 37 | BDR | Review comments to draft restitution report and redline of proposed order from DOJ; conference MLM and JWG re same. | 8, 15, 38, 40, 41, 51 |
| 126 | Mar. 16, 2026 | Doc. 148, at 37 | MLM | Emails with Lyndie Freeman, Ben Bain-Creed, Dan Ryan, JWG, and BDR re draft restitution report. Emails with Scott Avila, Don Harer, Andrew Cowie, David Elkin, JWG, and BDR re the same. Telephone call from Don Harer and Andrew Cowie re the same. Conference BDR re the same. | 8, 15, 38, 40, 41, 51 |
| 127 | Mar. 16, 2026 | Doc. 148, at 83 | Donald Harer | Call with A. Cowie and M. Martinez (Grier) to discuss DOJ comments and next steps | 38, 40, 41 |
| 128 | Mar. 16, 2026 | Doc. 148, at 83 | Andrew Cowie | Call with D. Harer (Paladin), M. Martinez (Grier) in regard to DOJ court report proposed edits. | 38, 40, 41 |
| 129 | Mar. 17, 2026 | Doc. 148, at 83 | Donald Harer | Review DOJ comments | 38, 40, 41 |
| 130 | Mar. 27, 2026 | Doc. 148, at 39 | MLM | Continue revising draft restitution report. Emails with Dan Ryan, Lyndie Freeman, Ben Bain- Creed, and JWG re the same. Emails with Andrew Cowie, David Elkin, Don Harer, Scott Avila, JWG, and BDR re the same. Video conference with Andrew Cowie and Don Harer re the same. Return several telephone calls from Chris Browning re the same. Telephone call to Jason Cowley re the same. Telephone call to Wes Camden re the same. Telephone call from Dan Ryan re the same. Emails with Dan Ryan re the same. | 8, 15, 35, 38, 40, 41, 51 |
| 131 | Mar. 30, 2026 | Doc. 148, at 40 | MLM | Continue revising draft restitution report and related appendices. Emails with Andrew Cowie, David Elkin, Don Harer, and BDR re the same. Revise draft proposed preliminary order of restitution. Emails with Ben Bain-Creed, Lyndie Freeman, and Dan Ryan re the same. [. . .] Emails with Nick Kajon, Ben Wylie, Andrew Cowie, Don Harer, David Elkin, and BDR re the same. [. . .] Emails with Luis Llach-Zuniga, Chris Browning, and Tony Jones re the same. | 8, 14, 15, 38, 40, 41, 51 |
| 132 | Mar. 31, 2026 | Doc. 148, at 40 | MLM | Emails with Andrew Cowie, David Elkin, Don Harer, and BDR re revisions to draft restitution report. Conferences with BDR re the same. Emails with Chris Browning, Tony Jones, and Luis Llach-Zuniga re the same. Emails with Dan Ryan, Ben Bain-Creed, and JWG re the same. Continue revising draft restitution report, including appendices. Telephone call from Andrew Cowie re the same. Telephone call from Jason Cowley re the same. [. . .] Follow-up conference with JWG and BDR re the same. | 8, 15, 38, 40, 41, 51 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
| --- | --- | --- | --- | --- | --- |
| 133 | Apr. 1, 2026 | Doc. 148, at 43 | MLM | [. . .] Emails with Wes Camden, Jason Cowley, Luis Llach-Zuniga, and others re draft restitution report. Continue revising the same. Conference call with Dan Ryan and Andrew Cowie re specific language in various parts of the restitution report and appendices. Emails with Dan Ryan and Andrew Cowie re the same. Emails with Dan Ryan re futher edits to draft report from the government. Review email from Nick Kajon, copying Ryan O'Neill, Constantine Pourakis, John Johnston, Ben Wylie, Marthinus Dreyer, and David Stewart re payment priority issues arising in connnection with restitution report. | 8, 15, 35, 38, 40, 41, 51 |
| 134 | Apr. 1, 2026 | Doc. 148, at 87 | Andrew Cowie | Call with D. Ryan (DOJ), M. Martinez (Grier) in regard to court report. | 38, 40, 41 |
| 135 | Apr. 16, 2026 | Doc. 148, at 47 | MLM | Telephone call from Dan Ryan re status of special master's efforts. | 38, 40, 41 |
| 136 | May 4, 2026 | Doc. 263, at 9 | MLM | Review responses to special master's report and recommendations. Review supplemental materials provided by Dan Ryan re the same. Emails with Andrew Cowie, Don Harer, and David Elkin re the same. Conferences with BDR re the same. Emails with Walton Milam and BDR re the same. | 15, 38, 40, 41, 51 |
| 137 | May 7, 2026 | Doc. 263, at 28 | Donald Harer | Review materials supplied by DOJ | 38, 40, 41 |
| 138 | May 11, 2026 | Doc. 263, at 11 | MLM | [. . .] Telephone call to Dan Ryan re the same [draft sentencing memorandum] and related sentencing issues. | 38, 40, 41, 42 |
| 139 | May 13, 2026 | Doc. 263, at 11 | MLM | Review and revise draft status report for the period covering the end of December through April 30, 2026. Emails with Scott Avila, Don Harer, Paula Sosamon, Andrew Cowie, David Elkin, and JWG re the same. Emails with Dan Ryan, Lyndie Freeman, and Ben Bain-Creed re the same. [. . .] | 38, 40, 41 |
| 140 | May 14, 2026 | Doc. 263, at 12 | MLM | Emails with Dan Ryan, Lyndie Freeman, and Ben Bain-Creed re revised proposed preliminary restitution order. Revise the same. Emails with Andrew Cowie, David Elkin, Don Harer, BDR, and JWG re the same. Emails with Luis Llach-Zuniga and Tony Jones re the same. | 8, 15, 38, 40, 41 |
| 141 | May 20, 2026 | Doc. 263, at 13 | MLM | Draft statement concerning defendant's cooperation. Conferences with JWG re the same. Continue reviewing materials in advance of sentencing hearing, including victim impact statements and Kathy Million letter in support of Greg Lindberg. Telephone call from Dan Ryan re the same. Emails with Andrew Cowie, Don Harer, David Elkin, and JWG re the same. | 8, 38, 40, 41, 42 |
| 142 | June 11, 2026 | Doc. 263, at 18 | MLM | Review recent pleadings filed by Greg Lindberg, Conservatrix, and Vista. Telephone call from the Fourth Circuit re the same. Conferences with JWG, BDR, and ASG re the same. Telephone call and emails with Jeff Oleynik re the same. Emails with Lyndie Freeman, Dan Ryan, Ben Bain- Creed, JWG, and BDR re the same. Research re writs of mandamus. | 8, 38, 40, 41 |
| 143 | June 12, 2026 | Doc. 263, at 18 | MLM | Continue review of, analysis of, and research related to recent pleadings filed on the docket by various parties this week. Conferences with JWG and BDR re the same. Emails with Dan Ryan, Lyndie Freeman, Ben Bain-Creed, JWG, BDR and others re the same. Revise draft response in opposition to petition for writ of mandamus. | 38, 40, 41 |
| 144 | June 15, 2026 | Doc. 263, at 19 | MLM | Continue reviewing recent pleadings filed by various parties, including Fourth Circuit opinion denying petition for writ of mandamus with prejudice. Conferences with BDR and JWG re the same. Emails with Jason Cowley re the same. Emails with Wes Camden and Dan Ryan re the same. Telephone call from Wes Camden re the same. | 35, 38, 40, 41 |

| No. | Date | Source (ECF page) | Timekeeper | Entry (as filed) | Request categories |
|---|---|---|---|---|---|
| 145 | June 16, 2026 | Doc. 263, at 19 | MLM | Emails with Dan Ryan and Lyndie Freeman re responses to recent motions filed. Review emails between Dan Ryan and others re the same. Emails with Wes Camden re the same. Review government's motion for extension of time to respond to emergency motions. Further review of emergency motion for which today is the purported deadline to respond. | 35, 38, 40, 41 |
| 146 | June 17, 2026 | Doc. 263, at 20 | MLM | Telephone call from Dan Ryan re recent pleadings filed in the case. Follow-up conference with BDR re the same. | 38, 40, 41 |
| 147 | June 17, 2026 | Doc. 263, at 20 | MLM | Continue reviewing pleadings recently filed in case. Emails with Lyndie Freeman, Dan Ryan, Andrew Cowie, Ben Bain-Creed, David Elkin, Scott Avila, Don Harer, BDR, and JWG re the same. | 38, 40, 41 |
| 148 | June 22, 2026 | Doc. 263, at 21 | MLM | Review recently-filed defendant's response in opposition to motion for extension of time filed by the government. Review defendant's counsel's emails with the court re the same. Review defendant's response in opposition to motion for extension of time filed by the special master. | 38, 40, 41 |