**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br><br>Judge Max O. Cogburn, Jr. |

**DEFENDANT'S UPDATE IN SUPPORT OF HIS OBJECTIONS TO THE SPECIAL MASTER'S SECOND SUPPLEMENT (DOC. 281), AND FOR IMMEDIATE REMOVAL AND TO SET ASIDE THE PROCEEDING**

Defendant Greg E. Lindberg respectfully submits this Update in support of his Preliminary Response and Objection to the Special Master's Second Supplement to Report and Recommendations (Doc. 281). This Update is prompted, first and foremost, by an egregious loss to the restitution estate. A financed proposal valuing Damovo, one of the Primary Restitution Assets, at $400 million—following a $500 million offer for the same asset earlier this year—was turned away "due to timing and structure," when the timing at issue was a matter of a few months. Doc. 320 ¶¶ 3, 5; Doc. 283-1 ¶ 2; Lindberg Beckett Aff. Ex. 2. The disposition proceeding instead yields no sale proceeds to the restitution estate at all—only about $17.5 million in consent fees. Doc. 339, at 11 (citing Doc. 320-1, at 2, 5). This Update is also prompted by current counsel's receipt of communications from, and opportunity to review approximately 1.8 gigabytes of information transferred by, Defendant's prior counsel. It could not have been filed sooner. Because of the volume of material involved,

current counsel had to cross-reference, painstakingly and entry by entry, former counsel's non-privileged emails to and from the Special Master Team and/or the Government against the billing entries of former counsel and of the Special Master Team to identify the ex parte communications. Defendant is filing, contemporaneously, separate Updates in support of his Motion to Stay Disposition of the Damovo Primary Restitution Asset (Doc. 320), his Motion to Compel the Government (Doc. 331), his Motion to Compel the Special Master (Doc. 332), and his Motion for Reconsideration of the Order of August 31, 2026 (Doc. 347). The record of ex parte communications is set out in Part VI of the Update in support of Doc. 347.[1]

## INTRODUCTION

Doc. 281 documented offsets, credits, and reductions of $3,765,418,383, including $866,000,000 for the loss on the Beckett sale, against a proposed restitution figure of $1,616,175,000. Doc. 281, at 30–31. The Special Master allowed $39 million of them—about 1.3%. *Id.* at 29–30. The Government has since answered the Beckett item only with an affidavit from the acting Chief Executive Officer of NHC, filed with the statement that "the Court need not reach these factual issues." Doc. 308, at 19 n.13; Doc. 308-3. Defendant's Beckett affidavit shows that the Meghji affidavit does not rebut the loss and that the true loss is larger than Doc. 281 recorded. And the

[1] Docket citations are to this case, No. 3:23-CR-48-MOC. Filed herewith is the Affidavit of Greg E. Lindberg Regarding the Valuation of Beckett Collectibles and in Response to the Affidavit of Mohsin Meghji (Doc. 308-3) ("Lindberg Beckett Aff."), executed October 5, 2026, with its two exhibits: Exhibit 1, a summary of Beckett Collectibles Holdings, LLC's consolidated January results for 2021 through 2024; and Exhibit 2, the September 3–7, 2026 e-mail exchange between Lincoln International, the sell-side adviser for Damovo, and Twelve Seas Investment Company III, which Twelve Seas's Chief Executive Officer forwarded to Defendant on September 29, 2026, together with the draft letter of intent and the SPAC process overview Twelve Seas transmitted in that exchange.

Damovo disposition now underway would add a further loss of approximately $300 million to the same schedule.[2]

## ARGUMENT

### I. The Meghji affidavit does not rebut the Beckett loss, and the available data show that Beckett's core earnings held at the level on which it was valued at approximately $1 billion.

Three independent data points value Beckett at approximately $1 billion: Blackstone's April 2022 term sheet at an enterprise value of $800 to $900 million, or 27.5 to 30.9 times Beckett's actual 2021 adjusted EBITDA of $29 million; Cabrillo Advisors' appraisal of Beckett alone at $1,003,924,000; and the 2024 Quadro purchase agreement, which attributed approximately $1.75 billion to Beckett, Southern Hobby, and Arcane Tinmen. Lindberg Beckett Aff. ¶¶ 4–7. Beckett was sold in December 2025 for $134 million. *Id.* ¶¶ 16, 20.

The Meghji affidavit does not engage those values. It misdates the Cabrillo report, describes as a management projection a 2025 figure that Cabrillo itself extrapolated, combines Beckett's and CBCS's projected revenue without saying so, and omits that half of the Cabrillo appraisal and all of Blackstone's valuation rested on Beckett's actual trailing EBITDA rather than on projections. *Id.* ¶ 14(a)–(e). It states no EBITDA figure for Beckett for any year. *Id.* ¶¶ 14(g), 18. And every Beckett figure it does describe is consolidated with two artificial-intelligence start-ups, NoXX Technologies, Inc. and Due Dilly, which Beckett acquired in 2022 for approximately

[2] The Court has yet to determine, de novo, causation, offsets, and credits—whether on motions practice or at the hearing—which will further change the restitution determination. Defendant expressly reserves this determination.

$100 million, which added approximately $24 million a year to Beckett's consolidated expenses, and which were conveyed in the same sale. *Id.* ¶¶ 8, 11–13.

The limited financial statements available to Defendant show that Beckett's January revenue was stable from 2022 through 2024—$3,628,000, $3,760,000, and $3,746,000—with gross margins of 85% to 90%, and that the only material change was the start-ups' overhead. *Id.* ¶¶ 12–13 & Ex. 1. Backing out those expenses, Beckett's core business likely earned approximately $25 million of EBITDA in each of 2023 and 2024, consistent with the $29,088,373 of adjusted EBITDA it earned in 2021, when Blackstone and Cabrillo valued it at approximately $1 billion. *Id.* ¶ 13. The $134 million price was approximately 5.4 times that core EBITDA, against the roughly 29 times at which Blackstone and Cabrillo valued the same earnings. *Id.* ¶ 20.

The fair value of what was sold was therefore approximately $1 billion for Beckett plus the approximately $100 million Beckett had paid for the two start-ups. *Id.* ¶ 21. Doc. 281 recorded only the first component. The $100 million acquisition cost of the start-ups is an additional loss on the same sale.

## II. The Damovo disposition would add a further loss of approximately $300 million.

Damovo carries a $400 million enterprise value on the July 31, 2026 Twelve Seas indication of interest, against approximately $100 million of debt; a Q1 2024 transaction valued it at approximately $371 million; and a buyer group offered $500 million in March 2026. Doc. 283-1 ¶¶ 2–4; Doc. 320 ¶¶ 3, 5. The disposition the Special Master has declined to oppose would pay the estate no sale proceeds, only consent

fees of about $17.5 million. Doc. 339, at 11; Doc. 334, at 3–4. Selling Damovo for its debt would forgo approximately $300 million of value net of that debt. Doc. 283-1 ¶ 3; Doc. 281, at 73. That loss belongs on the schedule now, before it is locked in.

## III. Updated schedule of offsets, credits, and reductions.

The schedule in Doc. 281, at 30–31, is updated as follows. Every other item stands as filed.

| Item | Amount | Source |
|---|---|---|
| Total minimum offsets and reductions as filed (including $866,000,000 loss on Beckett sale) | ($3,765,418,383) | Doc. 281, at 30–31 |
| Beckett sale: approximately $100 million paid in 2022 for the NoXX and Due Dilly acquisitions, conveyed in the sale without separate value | ($100,000,000) | Lindberg Beckett Aff. ¶¶ 8, 21 |
| Damovo: enterprise value forgone if sold for its debt ($400 million less approximately $100 million of debt) | ($300,000,000) | Doc. 283-1 ¶¶ 2–3; Doc. 281, at 73 |
| **Updated total minimum offsets and reductions** | **($4,165,418,383)** | |
| **Net restitution owed** | **$0** | |

*The Damovo item is stated conservatively, net of debt and using the $400 million indication of interest rather than the $500 million offer.*

The burden of demonstrating the amount of loss is the Government's. 18 U.S.C. § 3664(e).[3] On both of these items the Government has offered nothing but an affidavit it says the Court need not consider, and the documents that would quantify

[3] Defendant applies the preponderance standard of 18 U.S.C. § 3664(e) for purposes of this Update without conceding its constitutionality. Because restitution under the Mandatory Victims Restitution Act is criminal punishment, *see Ellingburg v. United States*, 607 U.S. 163, 166 (2026), Defendant contends that the Sixth Amendment requires the facts necessary to support a restitution award—including the identification of any victim and the amount of loss—to be found by a jury beyond a reasonable doubt, not by the Court by a preponderance of the evidence. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (applying *Apprendi* to criminal fines). Defendant expressly reserves and preserves this issue and does not waive any Sixth Amendment, Ex Post Facto, or related challenge to the restitution determination.

them with precision—Beckett's separate core and start-up financial statements, the financial information and J.P. Morgan fairness opinion on which NHC consented to the Beckett sale, the Beckett closing papers, and the Damovo transaction documents—are held by the Special Master, NHC, and the Government and have not been produced. Lindberg Beckett Aff. ¶¶ 24–26; Doc. 334, at 5 n.9. Defendant's motions to compel those documents (Docs. 331, 332) are addressed in Defendant's Updates in support of those motions, filed contemporaneously. If the net amount cannot be determined on this record, 18 U.S.C. § 3663A(c)(3)(B) directs that restitution be declined rather than that the proceeding be prolonged. *See* Doc. 281, at 35.

## IV. The ex parte record.

The ex parte communications between the Government and the Special Master Team, and those of the Special Master Team with third parties, are set out in Part VI of Defendant's Update in support of his Motion for Reconsideration of the Order of August 31, 2026 (Doc. 347), filed contemporaneously, together with the categories of withheld materials and the relief Defendant seeks on account of them. That record bears on the restitution figure to which the Objections are addressed as on every other matter committed to the Special Master, and Defendant relies on it here.

## CONCLUSION

For these reasons and those in Doc. 281, Defendant respectfully requests that the Court:

(1) reject the Special Master's Second Supplement and proposed Final Restitution Order as proposed;

(2) credit the offsets, credits, and reductions in the updated schedule above, which reduce net restitution to zero;

(3) in the alternative, find under 18 U.S.C. § 3663A(c)(3)(B) that determining the complex issues of fact related to the cause and amount of the losses would complicate or prolong the sentencing process to a degree that outweighs the need to provide restitution, and decline to order restitution; and

(4) grant the relief requested in Defendant's contemporaneous Update in support of his Motion for Reconsideration (Doc. 347), including removal of the Special Master, his counsel, and his financial advisor, and setting aside the restitution proceeding.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

*/s/ Vivek Ramachandran*
Vivek Ramachandran
Dhamma Law PLLC
418 Broadway, Suite N
Albany, NY 12207
Email: vramachandran@dhammalaw.com
*Admitted pro hac vice*

*Counsel for Greg E. Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: October 5, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*